```
 1                   UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN FRANCISCO DIVISION

 4

 5

 6    UNITED STATES OF AMERICA,   )
                                  ) NO. CR-20-00249 RS
 7              PLAINTIFF,        )
                                  ) STATUS HEARING
 8       VERSUS                   )
                                  ) MARCH 8, 2022
 9    ROWLAND MARCUS ANDRADE,     )
                                  ) PAGES 1 - 13
10              DEFENDANT.        )
      _____)
11

12

13              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE RICHARD SEEBORG
14              UNITED STATES DISTRICT JUDGE

15

16
     APPEARANCES VIA ZOOM:
17   FOR THE PLAINTIFF:     U.S. ATTORNEY'S OFFICE
                            BY:  ANDREW DAWSON
18                               ROSS WEINGARTEN
                            450 GOLDEN GATE AVENUE
19                          BOX 36055
                            SAN FRANCISCO, CA 94102
20
     FOR THE DEFENDANT:     KING & SPALDING
21                          BY:  MICHAEL SHEPARD
                                 AMY HITCHCOCK
22                               LUKE RONIGER
                            50 CALIFORNIA ST., STE 3300
23                          SAN FRANCISCO, CA 94111

24   COURT REPORTER:        GEORGINA GALVAN COLIN, CSR
                            LICENSE NO. 10723
25
```

```
 1    SAN JOSE, CALIFORNIA                          MARCH 8, 2022
 2                      P-R-O-C-E-E-D-I-N-G-S
 3              (WHEREUPON, COURT CONVENED AND THE FOLLOWING
 4    PROCEEDINGS WERE HAD:)
 5              THE CLERK:  CALLING CASE 20-CR-249, UNITED
 6    STATES VERSUS ROWLAND MARCUS ANDRADE.
 7              COUNSEL, PLEASE STATE YOUR APPEARANCES.
 8              MR. DAWSON:  GOOD AFTERNOON, YOUR HONOR.
 9    ANDREW DAWSON AND ROSS WEINGARTEN FOR THE UNITED STATES.
10              THE COURT:  GOOD AFTERNOON.
11              MR. SHEPARD:  AND, GOOD AFTERNOON, YOUR HONOR.
12              MICHAEL SHEPARD WITH TWO OF MY COLLEAGUES, AMY
13    HITCHCOCK AND LUKE RONIGER, FOR THE DEFENDANT MR. ANDRADE
14    WHO IS PRESENT BY ZOOM AND CONSENTS TO PROCEED IN THAT
15    FASHION DUE TO THE PANDEMIC.
16              THE COURT:  GOOD AFTERNOON.
17              SO WE WERE LAST TOGETHER, I THINK, IN
18    DECEMBER.  AND MR. SHEPARD YOU HAD ENTERED THE CASE AND
19    NEEDED SOME TIME FOR DISCOVERY REVIEW.  AND WE SET THIS
20    MATTER FOR TODAY.  SO, LET ME START WITH THE GOVERNMENT.
21              MR. DAWSON, DO YOU WANT TO TELL ME WHERE YOU
22    THINK THINGS STAND?
23              MR. DAWSON:  OF COURSE, YOUR HONOR.  SINCE OUR
24    LAST APPEARANCE BEFORE YOU, WE HAVE CONTINUED WITH
25    PRODUCING DISCOVERY.  IN THE GOVERNMENT'S VIEW, THE
```

```
 1    AFFIRMATIVE PRODUCTION OF DISCOVERY IS LARGELY COMPLETE.
 2    WE HAVE BEEN IN DISCUSSIONS WITH DEFENSE COUNSEL ABOUT
 3    ADDITIONAL MATERIALS.  THERE'S SOME MATERIALS IN THE
 4    PHYSICAL FILE THAT WE ARE WORKING ON ARRANGEMENTS FOR
 5    DEFENSE COUNSEL TO HAVE ACCESS TO AND TO REVIEW.  THERE IS
 6    AN ONGOING PRIVILEGE REVIEW PROCESS BUT THESE, I THINK, IN
 7    THE GOVERNMENT'S VIEW ARE RELATIVELY SMALL NEGOTIATIONS.
 8              WE HAVE ALSO BEGUN DISCUSSIONS ON WHETHER OR
 9    NOT THIS MATTER MAY BE ABLE TO RESOLVE THROUGH
10    NEGOTIATIONS.  WE ANTICIPATE, IN THE GOVERNMENT'S VIEW,
11    THOSE NEGOTIATIONS WILL EITHER BE FRUITFUL OR NOT.  AND WE
12    SHOULD KNOW THAT WITHIN THE NEXT 30 DAYS IS OUR VIEW.  I
13    KNOW MR. SHEPARD HAS A DIFFERENT VIEW ON EXACTLY WHERE TO
14    GO FROM HERE SO I'LL LET HIM SPEAK FOR HIMSELF, OF COURSE.
15              IN THE GOVERNMENT'S VIEW, ONCE WE HAVE
16    ASSESSED WHETHER OR NOT THE MATTER IS AMENABLE TO
17    RESOLUTION THROUGH A PLEA AGREEMENT, IF IT IS NOT, WE
18    THINK THE COURSE THEN IS TO SET A TRIAL DATE.  THE MATTER
19    HAS BEEN PENDING FOR COMING UP ON TWO YEARS.  OBVIOUSLY,
20    DELAYS HAVE BEEN UNDERSTANDABLE.  MR. SHEPARD WAS
21    APPOINTED, ALONG WITH HIS FIRM, APPROXIMATELY SIX MONTHS
22    AGO.
23              SO OUR PROPOSAL WOULD BE A CONTINUANCE OF 30
24    TO 45 DAYS TO SEE WHETHER A RESOLUTION IS IN THE OFFING.
25    AND THEN A TRIAL SETTING HEARING AFTER THAT.  ALTHOUGH, I
```

```
 1   KNOW MR. SHEPARD HAS A SLIGHTLY DIFFERENT VIEW.  SO I CAN
 2   LET HIM EXPLAIN WHERE HE'S COMING FROM.
 3              THE COURT:  OKAY.  MR. SHEPARD?
 4              MR. SHEPARD:  THANK YOU, YOUR HONOR.  YES, I
 5   DO HAVE A DIFFERENT VIEW.  MY VIEW IS WE NEED MORE TIME.
 6   I WOULD SAY A MINIMUM OF 90 DAYS, MORE LIKELY 120 DAYS.
 7   AND THEN WE CAN COME BACK AND HOPEFULLY BE READY TO MAKE
 8   SOME PROGRESS.
 9              THE REASON WHY I SAY THAT IS, FIRST, THERE'S A
10   HUGE VOLUME OF INFORMATION.  SECOND, WE DON'T EVEN HAVE IT
11   ALL YET.  AND, SOMEWHAT DISAGREEING WITH MR. DAWSON,
12   THERE'S SOME MATERIAL INFORMATION THAT WE DON'T HAVE.
13   AND, THIRD, THAT'S NOT FOR LACK OF RESOURCES OR EFFORT.
14   WE'VE BEEN THROWING A GREAT DEAL OF EFFORT TO THIS, IT'S
15   JUST A HUGE VOLUME OF STUFF TO GET OUR ARMS AROUND.  AND,
16   YES, THE CASE HAS BEEN PENDING FOR TWO YEARS, BUT OF
17   COURSE WE'VE ONLY BEEN IN IT SINCE THE END OF SEPTEMBER.
18   AND WE ONLY FIRST GOT DISCOVERY FOUR MONTHS AGO.  AND, AS
19   I'LL DETAIL, THE VOLUME OF THAT IS JUST HUGE.  AND IS
20   STILL, STILL COMING.
21              JUST TO GIVE YOU A FLAVOR OF THE VOLUME, IT'S
22   347 PAGES OF -- 347,000 PAGES OF DISCOVERY.  AND THAT
23   DOESN'T EVEN INCLUDE ABOUT 100 HOURS OF RECORDINGS THAT
24   ARE UNTRANSCRIBED.  THERE ARE MULTIPLE DIFFERENT FRAUDS
25   ALLEGED.  AND EACH ONE HAS A SET OF WITNESSES, AND A SET
```

```
 1    OF DOCUMENTS.  THERE ARE, BY MY COUNT, 186 DIFFERENT 302
 2    FILES FOR 118 DIFFERENT WITNESSES.  THERE ARE 11, BY OUR
 3    COUNT, DIFFERENT SEARCH WARRANTS.
 4            AND THEN THERE'S JUST A WHOLE LOT OF
 5    COMPLICATED TECHNOLOGY TO UNDERSTAND, BECAUSE THE
 6    GOVERNMENT ALLEGES THAT MR. ANDRADE DIDN'T HAVE ANY
 7    TECHNOLOGY, AND HE SAYS HE DOES.  SO, GOT TO, GOT TO
 8    UNDERSTAND ALL THE TECHNOLOGY.  A NUMBER OF OTHER EXPERTS
 9    THAT WE NEED TO ENGAGE, WHICH CAN BE SOMEWHAT OF A
10    CHALLENGE IN A WHITE COLLAR CASE AT CJA RATES BECAUSE THEY
11    HAVE COMPETITIVE ENDEAVORS WHERE THEY CAN MAKE MORE MONEY,
12    SO THAT'S KIND OF SLOW SLOGGING AS WELL.
13            AND WE'RE ONLY BEGINNING TO ASSESS POTENTIAL
14    MOTION WORK.  WE'RE ONLY BEGINNING BECAUSE, FROM MY MIND,
15    IN ORDER TO MAKE DETERMINATIONS ABOUT THAT YOU REALLY HAVE
16    TO UNDERSTAND THE WHOLE CASE AND WE'RE NOT QUITE THERE
17    YET.  BUT WE CAN ALREADY SEE SOME POTENTIAL MOTIONS TO
18    BRING.  FOR EXAMPLE, WE HAVE SEEN, IN THE GOVERNMENT'S
19    PRODUCTION, SOME ATTORNEY-CLIENT PRIVILEGE MATERIAL, OR AT
20    LEAST MATERIAL WE BELIEVE IS ATTORNEY-CLIENT PRIVILEGE, SO
21    THERE'S A WHOLE WORK STREAM THERE FOR US TO DEAL WITH.
22            AND SOME OF THOSE 11 SEARCHES THAT I MENTIONED
23    WERE SEARCHES OF MR. ANDRADE'S BUSINESSES, AND SO THERE
24    ARE POTENTIAL FRANKS MOTIONS AND MOTIONS TO SUPPRESS THAT
25    WE NEED TO CONSIDER FOR THOSE.  AND THERE'S JUST A
```

```
 1    TREMENDOUS NUMBER OF DIFFERENT WORK STREAMS AND MATERIAL
 2    THAT WE NEED TO GET OUR ARMS AROUND.  AND AT THIS POINT WE
 3    DON'T EVEN HAVE IT ALL.
 4              AND I DON'T MEAN THAT AS A CRITICISM OF
 5    MR. DAWSON OR MR. WEINGARTEN BECAUSE THEY HAVE BEEN VERY
 6    COOPERATIVE AND HELPFUL WITH US.  BUT AS MR. DAWSON
 7    ASSERTED TO, THE GOVERNMENT HAS TOLD US THAT MATERIAL FROM
 8    ONE OF THE SEARCH WARRANTS, APPARENTLY ONE OF SOME
 9    PROPERTY OF MR. ANDRADE'S IS STILL BEING REVIEWED BY A
10    TANK TEAM.  AND I KNOW, I HEARD THAT IT'S BEEN TWO YEARS
11    SINCE THE INDICTMENT, I DON'T HAVE ANY INSIGHT INTO WHY
12    THERE'S MATERIAL STILL BEING REVIEWED BY A TANK TEAM, BUT
13    OBVIOUSLY THAT'S IMPORTANT MATERIAL FOR US, AND WE DON'T,
14    WE DON'T HAVE IT YET.
15              WE SENT THE GOVERNMENT, LAST WEEK, A LIST OF
16    MATERIAL THAT IT APPEARED TO US THAT SHOULD BE IN THE
17    DISCOVERY BUT WAS NOT IN THE DISCOVERY.  AND IT SOUNDS,
18    AND IT COULD BE THAT SOME OF THAT IS JUST IN THE
19    UNSEARCHABLE MATERIAL.  ABOUT, I DON'T KNOW, 100,000 OF
20    THOSE PAGES ARE NOT SEARCHABLE.  THEY'RE JUST SORT OF LIKE
21    SCREEN SHOTS, AND DIFFERENT THINGS LIKE THAT THAT WE CAN'T
22    EVEN SEARCH.  SO IT'S POSSIBLE SOME OF THAT MATERIAL IS IN
23    THE UNSEARCHABLE PORTION OF DISCOVERY.  BUT IT SOUNDED
24    LIKE, FROM THE PROMPT RESPONSE WE GOT FROM MR. DAWSON, A
25    LOT OF IT IS MATERIAL THAT WE DON'T ACTUALLY HAVE YET.
```

```
 1                AND AMONG THE MATERIAL THAT WE DON'T HAVE YET,
 2    I BELIEVE, ARE, IS CELLEBRITE DATA FOR OUR CLIENT'S PHONE
 3    AND DEVICES, AND FOR THE DEVICES OF HIS ALLEGED
 4    CO-SCHEMER, I BELIEVE THAT'S WHO HIS ALLEGED CO-SCHEMER
 5    IS, MR. ABRAMOFF.  AND MY UNDERSTANDING IS THERE A WHOLE
 6    LOT OF TEXTS BETWEEN THE TWO OF THEM.  THOSE ARE OBVIOUSLY
 7    IMPORTANT, AND WE DON'T HAVE THOSE YET EITHER.  SO,
 8    THERE'S A WHOLE LOT OF MATERIAL THAT WE DON'T HAVE YET.
 9    IN ADDITION TO ALL THE MATERIAL THAT WE DO HAVE, THAT
10    WE'RE STILL TRYING TO GET OUR ARMS AROUND.
11                AND, AS I SAY, IT'S NOT, IT'S NOT FOR LACK OF
12    EFFORT.  WE NOW HAVE SEVEN PEOPLE WORKING ON THIS CASE.
13    AND WE'VE HAD SEVEN PEOPLE WORKING ON IT FOR A WHILE NOW.
14    AND, SO, WE'RE CONTEMPLATING ADDING SOME MORE TO MAKE SURE
15    WE CAN GET THROUGH ALL THIS ON THE 90 TO 120 DAYS THAT I
16    THINK IS NEEDED.  BUT THAT'S WHY I THINK IT'S NEEDED.
17                THE COURT:  WELL, I HOPE, WHEN YOU SAID THAT,
18    AS I KNOW YOU DID COME INTO THE CASE FAIRLY RECENTLY, BUT
19    I HOPE YOU GOT SOME BENEFIT FROM THE WORK THAT YOUR
20    PREDECESSORS IN THE CASE DID.  BECAUSE THEY CERTAINLY
21    DIDN'T -- THEY CERTAINLY WERE SPENDING TIME ON THE CASE, I
22    KNOW THAT MUCH.  PROBABLY EXPENDED QUITE A BIT OF
23    ATTORNEYS' FEES IN THE PROCESS, SO I HOPE THEY DID
24    SOMETHING OF VALUE FOR MR. ANDRADE.
25                BUT IT'S MORE AN OBSERVATION THAN A COMMENT OR
```

1  A QUESTION.  BUT I DO HOPE THAT YOU DID GET SOME, SOME
2  WORK PRODUCT THAT WAS OF SOME VALUE TO YOU.  BUT ON WHAT --
3           MR. SHEPARD:  I'D BE HAPPY TO ADDRESS THAT.
4  YES, I'D BE HAPPY TO ADDRESS THAT, IF YOU'D LIKE.
5           THE COURT:  WELL, I AM SOMEWHAT CURIOUS ABOUT
6  IT.  BECAUSE THEY, THERE WAS -- IT WAS A BIT OF AN ARMY
7  THERE AT ONE POINT WORKING ON THIS MATTER.  AND I GOT SOME
8  UNUSUAL MOTION PRACTICE IN IT.  SO I'M SORT OF WONDERING
9  WHAT HAPPENED?  NOT -- I KNOW YOU CAN'T SHARE ANYTHING
10 MUCH, BECAUSE IT'S OBVIOUS YOU DON'T WANT TO --
11 INAPPROPRIATE FOR YOU TO DISCLOSE ANY PRIVILEGED OR
12 PROTECTED INFORMATION.
13          BUT, JUST ON THE QUESTION OF WHETHER OR NOT
14 WE'RE STARTING FROM GROUND ZERO OR IF THERE WAS SOME VALUE
15 UNDERTAKEN, I WOULD BE CURIOUS WHAT THE COMMENT IS YOU'VE
16 GOT ON THAT.
17          MR. SHEPARD:  YEAH.  SO OBVIOUSLY I NEED TO BE
18 CAREFUL BECAUSE --
19          THE COURT:  SURE.
20          MR. SHEPARD:  -- IT'S A LOT OF PRIVILEGED
21 COMMUNICATIONS, BUT I WOULD GUESS THAT THE BOTTOM LINE IS
22 LESS VALUE THAN YOU THINK.
23          THE COURT:  OKAY.
24          MR. SHEPARD:  AND THAT'S, IT'S NOT BECAUSE OF
25 LACK OF EFFORT ON OUR PART.  SOME OF IT, WHICH WOULD NOT

1    BE PRIVILEGED, FOR EXAMPLE, IS THAT I THINK THERE WAS SOME
2    EFFORT TO SET UP DATABASES AND THINGS LIKE THAT, AND TO
3    TAG DOCUMENTS IN DATABASES AND THINGS LIKE THAT.  BUT
4    THOSE WERE DONE THROUGH VENDORS AND THOSE VENDORS WERE NOT
5    FULLY PAID.  SO THOSE VENDORS HAVE NOT BEEN WILLING TO
6    COOPERATE WITH US.  SO -- JUST AS AN EXAMPLE OF WHY IT'S
7    NOT AS MUCH AS YOU WOULD THINK AND I WOULD HAVE HOPED.
8              THE COURT:  OKAY.  WELL, THE IMMEDIATE
9    QUESTION IS NOT NECESSARILY, DOESN'T NECESSARILY REQUIRE
10   ME TO EMBRACE THE TALE OF TWO CITIES HERE THAT I HAVE IN
11   TERMS OF WHAT THE CASE, WHERE THE CASE IS AND WHERE IT'S
12   GOING.  I DON'T SEE ANY REASON WHY WE SHOULDN'T HAVE A
13   FURTHER CASE MANAGEMENT CONFERENCE, STATUS CONFERENCE IN
14   60 DAYS, JUST TO KNOW WHERE THINGS ARE.  I'M NOT SETTING
15   ANY DATES AS OF NOW.  WHETHER OR NOT WE WAIT 90 TO 120 OR
16   30 TO 45 AS MR. DAWSON SUGGESTS, I DON'T THINK WE HAVE TO
17   SWEAT TOO MUCH OVER THAT DECISION.
18             I JUST, I WANT TO CHECK IN WITH YOU AND SEE
19   WHERE THINGS ARE, AND 60 DAYS SEEMS LIKE A REASONABLE TIME
20   TO DO THAT.  AND WE'LL SEE AT THAT POINT IF MR. DAWSON IS
21   RIGHT AND THERE'S, YOU KNOW, EITHER SOME POSSIBLE
22   DISPOSITION, OR THINGS HAVE REALLY GOTTEN PACKAGED UP TO
23   MOVE FORWARD WELL, OR IF MR. SHEPARD IS RIGHT THAT WE'RE A
24   WAYS TO GO, AND, BUT I DON'T THINK I HAVE TO PICK ONE OF
25   THE TWO.  I THINK I CAN JUST DO IT THE 60-DAY IS THE NEXT

```
 1   CHECK IN WITH EACH OTHER.
 2           MR. DAWSON:  AND, YOUR HONOR, IF I MAY, JUST
 3   TO BE CLEAR, I DID NOT INTEND TO SUGGEST I WAS SEEKING A,
 4   YOU KNOW, A QUICK TRIAL THAT MIGHT PUT MR. SHEPARD IN A
 5   DIFFICULT POSITION.  MY INTEREST, AND THE GOVERNMENT'S
 6   INTEREST, IN GETTING A TRIAL DATE AT THE NEXT HEARING,
 7   WHICH IS MY WAY OF FORESHADOWING AND I DO ANTICIPATE WE'D
 8   BE ASKING FOR, IS SIMPLY TO HAVE THE DISCIPLINING FACT OF
 9   A TRIAL DATE.
10           THE COURT:  SURE.
11           MR. DAWSON:  BUT BUILDING IN ADEQUATE TIME,
12   MR. SHEPARD HAS MENTIONED THE POTENTIAL MOTIONS PRACTICE,
13   OBVIOUSLY WE WOULD BUILD IN TIME FOR THAT.  AND SO I THINK
14   I'M NOT SEEKING TO JAM DEFENSE COUNSEL BY ANY STRETCH BUT
15   ONLY TO HAVE A SORT OF SCHEDULE IN PLACE TO GUIDE US AS WE
16   NEGOTIATE DISCOVERY, AND MAKE SURE THAT EVERYTHING MOVES
17   SMOOTHLY ON BOTH SIDES, IT'S BEEN MY EXPERIENCE A HELPFUL
18   THING TO HAVE.
19           THE COURT:  WELL, I THINK WE SHOULD -- I'M
20   GOING TO SET ANOTHER STATUS IN 60 DAYS.  WE SHOULD, YOU
21   SHOULD BE PREPARED TO AT LEAST DISCUSS WHAT, IF WE'RE IN A
22   POSITION WHERE WE CAN SET A TRIAL DATE WHATEVER THAT MAY
23   BE, BUT I DO WANT TO TALK ABOUT IT IN 60 DAYS.  I'M NOT
24   SAYING I'M GOING TO SET ONE IN 60 DAYS.  BUT I THINK THERE
25   IS SOME VALUE, AS MR. DAWSON SUGGESTS, ON MAKING A STAB AT
```

```
 1    IT, AND PARTICULARLY THESE DAYS WHERE WE HAVE SO MUCH OF A
 2    BACKLOG PROBLEM.  ALTHOUGH, HOPEFULLY THAT'S GOING TO
 3    START TO GET BETTER.  MAYBE, MAYBE NOT.
 4              SO, LET'S DO ANOTHER STATUS IN ABOUT 60 DAYS.
 5    MS. LEW, YOU WANT TO GIVE ME A SUGGESTION?
 6              THE CLERK:  THE 24TH, I THINK YOU HAVE VISHAWN
 7    ON THAT MONDAY, SO MAYBE THE FOLLOWING, MAY 31ST?
 8              THE COURT:  OKAY.  AND THAT WOULD BE AT 2:30?
 9              THE CLERK:  2:30, CORRECT.
10              THE COURT:  RIGHT.  AND WE'LL ASSUME IT'S BY
11    ZOOM.  AND, OKAY, HOW ABOUT THAT?
12              MR. DAWSON:  THAT WORKS FOR THE GOVERNMENT.
13              MR. SHEPARD:  MAY 31ST IS A TUESDAY?
14              THE COURT:  (NODS HEAD UP AND DOWN)
15              MR. SHEPARD:  THAT, THAT WORKS.  THANK YOU,
16    YOUR HONOR.
17              THE COURT:  2:30.  AND THE SPEEDY TRIAL
18    SITUATION, MR. DAWSON?
19              MR. DAWSON:  IN THE GOVERNMENT'S VIEW, GIVEN
20    THE ONGOING DISCOVERY, NEGOTIATIONS, ADDITIONAL MATERIALS
21    TO PRODUCE, WE THINK AN EXCLUSION OF TIME FOR EFFECTIVE
22    PREPARATION WOULD BE APPROPRIATE.
23              MR. SHEPARD:  NO OBJECTION TO THAT, YOUR
24    HONOR.
25              THE COURT:  OKAY.  IF YOU COULD GIVE ME A
```

1   PROPOSED EXCLUSION ORDER, MR. DAWSON?

2           MR. DAWSON:  OF COURSE.

3           THE COURT:  AND WE'LL SEE YOU IN ABOUT 60
4   DAYS.

5           MR. DAWSON:  AND, YOUR HONOR, IF I MAY JUST
6   ASK A --

7           THE COURT:  YEAH.

8           MR. DAWSON:  -- QUICK QUESTION, BECAUSE THIS
9   CAME UP AS WE DISCUSSED WITH DEFENSE COUNSEL, AND I'VE
10  BEEN CURIOUS.  DOES YOUR HONOR PREFER A STIPULATION AND
11  PROPOSED ORDER, OR JUST A PURE PROPOSED ORDER BASED ON THE
12  RECORD OF THE HEARING TODAY?

13          THE COURT:  YOU KNOW, I WANT YOU TO SEND IT BY
14  MR. SHEPARD, BUT IT DOESN'T NEED TO BE A STIPULATION.
15  HE'S ON THE RECORD SAYING HE DOESN'T HAVE A PROBLEM WITH
16  IT.  IT'S -- I'LL -- I DON'T HAVE A STRONG VIEW.  I GET
17  THEM IN BOTH VERSIONS.  BUT I -- WHATEVER IS THE MOST
18  CONVENIENT WAY TO DO IT.  I THINK THE RECORD IS PRETTY
19  CLEAR.

20          CERTAINLY, IF IT'S A SITUATION WHICH THERE'S
21  AN OBJECTION BY ONE SIDE OR THE OTHER, I WANT THAT
22  REFLECTED IN THE PROPOSED ORDER.  BUT HERE, MR. SHEPARD
23  HAS INDICATED HE DOESN'T OBJECT.  SO I, IT DOESN'T MATTER
24  TO ME.

25          MR. DAWSON:  UNDERSTOOD.  I APPRECIATE IT.

```
 1              THE COURT:  OKAY.  ALL RIGHT.  ANYTHING ELSE?
 2    VERY GOOD.  ALL RIGHT.  THANK YOU.
 3              MR. SHEPARD:  THANK YOU, YOUR HONOR.
 4              MR. DAWSON:  THANK YOU, YOUR HONOR.
 5              MR. WEINGARTEN:  THANK YOU, YOUR HONOR.
 6              THE COURT:  THANK YOU.
 7              (WHEREUPON, PROCEEDINGS WERE CONCLUDED.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    CERTIFICATE OF REPORTER
 2
 3
 4
 5            I, GEORGINA GALVAN COLIN, PRO TEMP COURT
 6   REPORTER FOR THE UNITED STATES DISTRICT COURT FOR THE
 7   NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET,
 8   SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:
 9            THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE
10   AND CORRECT TRANSCRIPT OF THE PROCEEDING HAD IN THE ABOVE
11   ENTITLED MATTER, THAT I REPORTED THE SAME IN STENOTYPE TO
12   THE BEST OF MY ABILITY, AND THEREAFTER HAD THE SAME
13   TRANSCRIBED BY COMPUTER-AIDED TRANSCRIPTION AS HEREIN
14   APPEARS.
15
16
17
18
19              /S/ GEORGINA GALVAN COLIN
                GEORGINA GALVAN COLIN, CSR
20              LICENSE NUMBER 10723
21
                DATED: MAY 31ST, 2022
22
23
24
25
```