1                                          PAGES 1 - 11

2                         UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4                    BEFORE THE HONORABLE RICHARD SEEBORG

5    UNITED STATES OF AMERICA,              )
                                            )
6                   PLAINTIFF,              )
                                            )
7      VS.                                  ) CASE NO. 20-CR-00249 RS
                                            )
8    ROWLAND MARCUS ANDRADE,                )
                                            ) SAN FRANCISCO, CALIFORNIA
9                   DEFENDANT.              ) VIA ZOOM VIDEOCONFERENCE
                                            ) TUESDAY, MAY 31, 2022
10   _____)

11

12                      **TRANSCRIPT OF PROCEEDINGS**

13   **APPEARANCES**:

14   **FOR PLAINTIFF**          UNITED STATES ATTORNEY'S OFFICE
                                450 GOLDEN GATE AVENUE, 11TH FLOOR
15                              SAN FRANCISCO, CALIFORNIA  94102
                           **BY:  ANDREW DAWSON, AUSA**

16

17
     **FOR DEFENDANT**          KING & SPAULDING, LLP
18                              50 CALIFORNIA STREET, SUITE 3300
                                SAN FRANCISCO, CALIFORNIA  94111
19                         **BY:  MICHAEL J. SHEPARD, ESQUIRE**

20                              KING & SPAULDING, LLP
                                500 WEST 2ND STREET, SUITE 1800
21                              AUSTIN, TEXAS  78701
                           **BY:  LUKE RONIGER, ESQUIRE**

22

23

24   *REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                  *PRO TEM OFFICIAL COURT REPORTER, USDC*
25

| | |
|---|---|
| 1 | **TUESDAY, MAY 31, 2022**                                    **2:32 P.M.** |
| 2 | **PROCEEDINGS** |
| 3 | **THE CLERK:**  CALLING CASE 20-CR-249, UNITED STATES |
| 4 | VERSUS ROWLAND MARCUS ANDRADE. |
| 5 | COUNSEL, PLEASE STATE YOUR APPEARANCES. |
| 6 | **MR. DAWSON:**  GOOD AFTERNOON, YOUR HONOR.  ANDREW |
| 7 | DAWSON FOR THE UNITED STATES. |
| 8 | **THE COURT:**  GOOD AFTERNOON. |
| 9 | **MR. SHEPARD:**  GOOD AFTERNOON, YOUR HONOR.  MICHAEL |
| 10 | SHEPARD AND LUKE RONIGER FOR THE DEFENDANT MARCUS ANDRADE.  HE |
| 11 | IS PRESENT BY ZOOM AND CONSENTS TO PROCEED IN THAT FASHION. |
| 12 | **THE COURT:**  GOOD AFTERNOON TO ALL. |
| 13 | SO THE LAST GET-TOGETHER WAS MARCH 8TH, THE RECORDS |
| 14 | TELL ME.  WHAT WE DID THEN WAS JUST SET IT FOR A FURTHER STATUS |
| 15 | HEARING.  I THINK YOU WERE RELATIVELY NEW TO THE CASE, |
| 16 | MR. SHEPARD, AT THAT POINT, WEREN'T YOU? |
| 17 | **MR. SHEPARD:**  RELATIVELY, YES, YOUR HONOR. |
| 18 | **THE COURT:**  RELATIVELY. |
| 19 | WHY DON'T I START WITH MR. DAWSON.  WHAT'S THE |
| 20 | SITUATION? |
| 21 | **MR. DAWSON:**  WELL, YOUR HONOR, SINCE WE WERE LAST |
| 22 | BEFORE YOU, WE HAVE OBVIOUSLY CONTINUED WITH DISCOVERY.  WE'VE |
| 23 | RECEIVED A SERIES OF DISCOVERY REQUESTS FROM THE DEFENSE, SOME |
| 24 | FOR REPRODUCTION, SOME FOR, YOU KNOW, ERRORS IN THE PRODUCTION, |
| 25 | SOME FOR ADDITIONAL MATERIALS.  SO WE'VE BEEN SORTING THROUGH |

1    THOSE.

2            YOU KNOW, IT'S AN ONGOING PROCESS.  I DON'T KNOW.

3    THERE COULD BE SOME AREAS WITHIN THERE WHICH MAY MATURE INTO

4    MOTION PRACTICE BEFORE YOUR HONOR.

5            THERE WAS A PRODUCTION THAT WENT OUT AT THE END OF

6    LAST WEEK THAT WAS RELATIVELY SUBSTANTIAL, AND SO WE CONTINUE

7    TO WORK OUT WHERE THERE ARE AREAS OF AGREEMENTS AND PRODUCTIONS

8    ARE ONGOING, AND THEN AREAS OF DISAGREEMENT MAY BE, HOPEFULLY,

9    DISTILLED OVER TIME.

10            FROM THE GOVERNMENT'S PERSPECTIVE, I THINK AT THIS

11    POINT THE CASE IS NOT GOING TO RESOLVE BY NEGOTIATED AGREEMENT.

12    SO WE HAVE SORT OF EYES SET TOWARDS TRIAL.  OUR VIEW REMAINS AS

13    IT WAS LAST TIME, THAT SETTING A TRIAL DATE AT THIS POINT WOULD

14    BE APPROPRIATE AND MOTIONS DATE PRIOR TO THAT, OBVIOUSLY,

15    SPREADING OUT OVER MONTHS.

16            I THINK GIVEN TRIAL SCHEDULES AND CALENDARS IN THIS

17    DISTRICT, AS YOUR HONOR IS AWARE OF -- I KNOW I HAVE A TRIAL

18    BEFORE YOUR HONOR NEXT MARCH.  I HAVE A SERIES OF OTHER TRIALS

19    BEFORE THAT.

20            WE'RE NOT SEEKING A QUICK TRIAL.  WE ARE NOT SEEKING

21    TO JAM UP MR. SHEPARD OR TO SHORTEN THE TIMELINES.  I'M

22    ENVISIONING, BASED ON THAT CALENDAR, SUMMER OF 2023.  I JUST

23    GET CONCERNED IF WE WAIT TOO MUCH LONGER TO SET A DATE, IT WILL

24    JUST GET PUSHED EVEN FURTHER OUT.

25            AND I WOULD ANTICIPATE THAT ANY DISCOVERY MATTERS,

1    OTHER MOTION PRACTICE COULD ALL BE ADDRESSED IF TRIAL WERE TO

2    BE SET IN SUMMER OF 2023.

3          **THE COURT:**  HOW LONG DO YOU THINK THIS TRIAL COULD

4    BE?

5          **MR. DAWSON:**  IT COULD BE RELATIVELY LENGTHY.  I THINK

6    THREE TO FOUR WEEKS FOR THE GOVERNMENT, WOULD BE MY GUESS.  WE

7    HAVEN'T BEEN DIALING IN ON WITNESSES YET, BUT THAT WOULD BE MY

8    EDUCATED GUESS BASED ON WHERE WE STAND TODAY.

9          **THE COURT:**  OKAY.  MR. SHEPARD?

10         **MR. SHEPARD:**  SO, I GUESS I WOULD SAY I AGREE WITH

11   THE VAST MAJORITY OF WHAT MR. DAWSON SAID, RIGHT UP TO THE

12   POINT WHEN HE STARTED TALKING ABOUT SETTING A TRIAL DATE.

13   THAT'S WHERE I DON'T AGREE, AND THE REASON I DON'T AGREE IS

14   THAT WE'RE MAKING A LOT OF GOOD PROGRESS WITH HIS HELP, BUT WE

15   NEED MORE TIME TO SAY WHAT A REASONABLE DATE WOULD BE FOR HOW

16   LONG A TRIAL WOULD BE.

17         I SAY THAT BECAUSE, FIRST OF ALL, WHILE WE'RE WORKING

18   THIS VERY HARD, WE'RE NOT YET DONE REVIEWING WHAT WE HAVE FROM

19   THE GOVERNMENT, AND I'LL EXPLAIN WHY.  BUT, SECOND, THROUGH

20   THAT WORK WE NOW KNOW WE DO NOT HAVE SUBSTANTIAL QUANTITIES OF

21   WHAT WE EXPECT IS MATERIAL INFORMATION FROM THE GOVERNMENT.

22         AND, FINALLY, EVEN WHEN WE GET EVERYTHING FROM THE

23   GOVERNMENT, THAT, IN MANY WAYS, IS JUST THE START OF WHAT WE

24   NEED TO BE DOING TO ASSESS OUR DEFENSE.

25         SO, FROM MY PERSPECTIVE, AT THE LAST APPEARANCE WE

1    ASKED FOR, I THINK, 90 TO 120 DAYS TO PUT IT OVER.  THE COURT

2    PUT IT OVER FOR 60 DAYS TO SET A DATE AND SEE IF WE WOULD BE IN

3    A POSITION TODAY TO SET A TRIAL DATE.  I DON'T THINK WE ARE.  I

4    PROPOSE WE DO THE SAME THING AGAIN, WHICH IS SET IT OVER FOR 60

5    DAYS AND COME BACK, AND, PERHAPS, HOPEFULLY, WE'LL BE IN A

6    POSITION TO SET A TRIAL DATE THEN.

7            TO PUT A LITTLE MEAT ON THE BONES OF WHAT I JUST

8    SAID, YOUR HONOR, IF I MAY, WHEN WE WERE LAST BEFORE YOU, WE

9    HAD SEVEN PEOPLE WORKING ON THIS CASE.  WE NOW HAVE TEN.  WHAT

10   WE CURRENTLY HAVE -- AND THIS IS WHAT WE HAVE, AS OPPOSED TO

11   WHAT WE DON'T HAVE, IS ABOUT 52,000 DOCUMENTS CONSISTING OF

12   JUST UNDER 350,000 PAGES, AND WE'RE MORE THAN HALFWAY THROUGH

13   IT, BUT STILL WORKING THROUGH IT.  AND IT'S SLOW GOING, IN PART

14   JUST BECAUSE OF THE VOLUME, BUT IN PART BECAUSE A MATERIAL

15   PERCENTAGE OF THE DOCUMENTS -- I THINK I'D ESTIMATE ABOUT 20

16   PERCENT -- ARE NOT TEXT SEARCHABLE.  THEY'RE JUST JPEGS.

17   THEY'RE PHOTOGRAPHS.  SO WE CAN'T USE E-DISCOVERY TOOLS.  I

18   HAVE TO HAVE SOMEONE READ EACH ONE.

19           AND WE HAVE A NUMBER OF DOCUMENTS THAT WERE PRODUCED

20   IN RANDOM ORDER.  FOR EXAMPLE, THERE'S A BINDER TAKEN FROM

21   MR. ANDRADE IN ONE OF THE SEARCHES.  YOU KNOW, IT WAS A BINDER,

22   ALL PUT TOGETHER NICELY.  THE PAGES PRODUCED TO US ARE IN

23   RANDOM ORDER, SO IT'S VERY HARD TO READ AND MAKE SENSE OF THEM.

24   AND THERE ARE OTHER -- THAT'S NOT THE ONLY -- THE BINDER IS NOT

25   THE ONLY EXAMPLE OF THAT.

1          EVEN MY TOTAL OF 350,000 PAGES DOESN'T INCLUDE NATIVE

2     FILES PRODUCED SEPARATELY LIKE AUDIO RECORDINGS.  OUR ESTIMATE

3     IS THERE ARE 383 AUDIO AND VIDEO RECORDINGS, AND WE WOULD

4     ESTIMATE ABOUT A HUNDRED HOURS OF REVIEW THERE.

5          SO, BOTTOM LINE, WE'RE PLOWING THROUGH A LOT OF THIS

6     MATERIAL.  THERE'S STILL A LOT MORE TO DO WITH THE MATERIAL WE

7     HAVE.

8          BUT IT'S CLEAR TO US NOW, AS WE'VE PLOWED THROUGH

9     WHAT WE HAVE GONE THROUGH -- AND WE'VE TRIED TO KEEP THE

10    GOVERNMENT ABREAST OF THE THINGS THAT WE ARE SEEING THAT WE

11    NEED, AND I THINK MR. DAWSON REFERRED TO THAT EARLIER.  AND HE

12    DID SEND US -- HE SENT US A LETTER TODAY SAYING WE HAVE MORE

13    MATERIAL COMING.  WE HAVEN'T SEEN IT YET, BUT I'M SURE WE'LL

14    GET IT SHORTLY.

15         AMONG THE THINGS WE DON'T HAVE, AND, JUDGING FROM HIS

16    LETTER, WE STILL WON'T HAVE EVEN AFTER THE PRODUCTION THAT

17    WE'RE ABOUT TO GET, ARE DEVICES OF MR. ABRAMOFF AND

18    MR. ANDRADE.  WE ASKED FOR THOSE SHORTLY BEFORE THE LAST

19    STATUS, I THINK IN EARLY MARCH.

20         THERE ARE 17 DEVICES THAT WE KNOW OF, LIKE COMPUTERS,

21    EXTERNAL HARD DRIVES, OTHER SMALLER DEVICES.  THE GOVERNMENT

22    TOLD US THOSE HAD BEEN PRODUCED, BUT OUR PRODUCTION CONTAINED

23    ONLY A ONE-PAGE .PDF SLIP SHEET, AND SO WE DON'T, AND STILL DO

24    NOT HAVE THE FILES TO BE REVIEWED.  THESE ARE CONTEMPORANEOUS

25    COMMUNICATIONS OF THE ALLEGED CO-CONSPIRATORS, SO THEY'RE,

1    OBVIOUSLY, REALLY IMPORTANT DOCUMENTS.

2              AND IT MAY BE -- I DON'T KNOW.  IT MAY BE THAT SOME

3    OF THESE WERE PRODUCED TO OUR PREDECESSOR COUNSEL, BUT IT'S OUR

4    UNDERSTANDING THAT NOT ALL OF THEM WERE, AND, IN ANY EVENT, AS

5    I THINK WE SAID AT THE LAST STATUS, WE CAN'T ACCESS THOSE

6    BECAUSE OF THE FINANCIAL ISSUES THAT MR. ANDRADE HAD WITH HIS

7    PRIOR DISCOVERY VENDOR.  HE JUST RAN OUT OF MONEY.  SO THEY

8    HAVE -- THEY MAY HAVE INFORMATION, BUT WE'RE NOT GETTING IT

9    FROM THEM.

10             THERE ARE OTHER ITEMS IN THE GOVERNMENT'S PHYSICAL

11   FILE THAT WE DON'T HAVE.  FOR EXAMPLE, A THUMB DRIVE FROM THE

12   COMPUTER OF THE JODOINS, ACCORDING TO THE GOVERNMENT'S

13   AFFIDAVIT IN THEIR SEARCH WARRANT.  THE JODOINS -- IT'S A

14   COUPLE -- ARE PURPORTED VICTIMS, AS WELL AS FORMER EMPLOYEES OF

15   MR. ANDRADE'S.  THE AFFIDAVIT SUGGESTS THESE -- WHAT'S ON THAT

16   THUMB DRIVE ARE GOING TO BE RELEVANT TO THE -- AMONG OTHER

17   DEVELOPMENTS, THE STATE AND THE DEVELOPMENT OF MR. ANDRADE'S

18   TECHNOLOGY, WHICH IS ONE OF THE ESSENTIAL ISSUES IN THE CASE.

19   WE ASKED FOR THAT ON MARCH 3RD.  WE STILL DON'T HAVE IT.  I

20   COULD LIST FIVE OR SIX MORE ITEMS LIKE THAT.

21             **THE COURT:**  I GET THE PICTURE, I THINK, THAT THERE'S

22   A GREAT DEAL LEFT, AND I KNOW IT'S A COMPLICATED -- COMPLICATED

23   BACKGROUND IN THIS CASE.  THE PROBLEM -- THE CONCERN I HAVE

24   ABOUT JUST NOT SETTING ANYTHING IS THE NATURE OF THE BACKLOG

25   AND THE CALENDAR IS THAT, YOU KNOW, IF WE DON'T EVEN GET A

1    PLACEHOLDER, WE'RE REALLY WAY BACK, BECAUSE I HAVE -- I AGREE

2    WITH YOU I HAVE A CASE WITH YOU, MR. DAWSON, IN MARCH, BUT THEN

3    TOWARD THE END OF MARCH I HAVE AN MS-13 FOUR OR FIVE DEFENDANT

4    CASE, AND THAT WILL GO ON FOR MONTHS.  SO IF I DON'T GET, YOU

5    KNOW, YOU IN THE QUEUE, I MEAN, WE'RE REALLY BACKING UP.

6           AND WHAT I'M INCLINED TO DO IS, WITH ALL THE CAVEATS

7    THAT YOU HAVE INDICATED, MR. SHEPARD, IS TO -- IS TO GO AHEAD

8    WITH A TRIAL DATE, BUT WITH THE UNDERSTANDING IT MAY WELL HAVE

9    TO BE ADJUSTED BACK.  BUT I'M CONCERNED IF I DON'T EVEN GET YOU

10    ON THE BEGINNING OF THE LIST, IT'S REALLY GOING TO BE --

11    BECAUSE WE'RE ALREADY TALKING ABOUT MORE THAN A YEAR FROM NOW.

12    AND THEN, YOU KNOW, I'M NOT REALLY OPTIMISTIC IT WILL BE ABLE

13    TO GO THEN.

14           SO I JUST WANT TO GET -- YOU KNOW, THERE'S THE LIST

15    OF MATTERS THAT HAVE AT LEAST THEORETICAL TRIAL DATES AND THE

16    ONES THAT DON'T.  WHEN WE START MOVING AROUND THE THEORETICAL

17    TRIAL DATE, PEOPLE MAYBE HAVE A LITTLE BIT OF A STEP UP FROM

18    THE PEOPLE THAT DON'T EVEN HAVE THAT.  SO I'M INCLINED TO GET

19    YOU ON THE LIST, BUT WITH THE UNDERSTANDING THAT IT'S NOT ONE

20    OF THOSE:  THIS IS YOUR TRIAL DATE, AND COME HELL OR HIGH WATER

21    THIS IS WHEN IT'S GOING TO GO.  I COULD SEE IT HAS TO BE

22    ADJUSTED.

23           I AM INCLINED TO THINK, IF WE ARE TALKING ABOUT

24    SUMMER OF 2023, I OUGHT TO JUST HAVE A DATE WE COULD AT LEAST

25    START TO SHOOT FOR, AND MAYBE WE CAN START, YOU KNOW, BUILDING

1    BACK A LITTLE BIT.

2              SO I'M NOT SURE IT'S REALLY INCONSISTENT WITH YOUR

3    VIEW, MR. SHEPARD, BECAUSE -- IT'S MORE OF AN ADMINISTRATIVE

4    MARKER SO THAT THE CASE, YOU KNOW, HAS GOT SOME CURRENT HOME,

5    IF YOU WILL.

6              **MR. SHEPARD:**  I UNDERSTAND THAT, YOUR HONOR.  I

7    APPRECIATE THAT.  OBVIOUSLY, THE COURT KNOWS THIS MUCH BETTER

8    THAN I DO.  BUT I FEAR THAT THE SUMMER MAY BE A LITTLE EARLY,

9    AND THEN THE QUESTION IS, IF THAT'S THE TRIAL DATE THAT WE HAVE

10   BECAUSE WE'VE SET IT NOW, WOULD THAT PREJUDICE US, SAY, FROM

11   GETTING SOME TRIAL DATE IN --

12             **THE COURT:**  EARLIER?

13             **MR. SHEPARD:**  -- THE LATE FALL.  NO, NO, NOT EARLIER,

14   BUT THE LATE FALL OF NEXT YEAR, BECAUSE, YOU KNOW, IN 60 DAYS,

15   WE MIGHT BE IN A BETTER POSITION TO PIN THAT DOWN.

16             **THE COURT:**  I ACTUALLY THINK -- LET'S ASSUME FOR THE

17   HYPOTHETICAL THAT THIS ENDS UP IN LATE FALL DATE, I THINK YOU

18   WOULD BE BETTER OFF, FRANKLY -- IF YOU HAVE AN EARLIER TRIAL

19   DATE AND I'VE SET THINGS FOR, SAY, IN THE FALL AND SOMEBODY IN

20   THE EARLY -- OR IN THE SUMMER NEEDS TO MOVE, THAT ONE GETS

21   PREFERENCE OVER THE ONE THAT WAS SET FOR THE FALL.  THAT ONE

22   WILL HAVE TO MOVE.

23             SO I THINK YOU ARE BETTER OFF, FRANKLY -- I WAS

24   THINKING -- THE OTHER PROBLEM WITH SUMMER, QUITE CANDIDLY,

25   JULY, FOR EXAMPLE, IS ALWAYS A CONFERENCE MONTH, AND WE'VE GOT

```
1    THE NINTH CIRCUIT CONFERENCE IS ALWAYS IN JULY, AND I'VE GOT A

2    CHIEF JUDGES THING THAT'S ALWAYS AROUND THE SAME TIME.  THEN

3    YOU HAVE TO CHOP IT UP, WHICH I DON'T PARTICULARLY WANT TO DO.

4         WHY DON'T WE SET IT FOR AUGUST OF 2023 SO WE HAVE

5    SOMETHING SITTING THERE, AND I WILL -- YOU CAN REMIND ME OF OUR

6    CONVERSATION IF I SAY TO YOU -- AND I THINK WE'LL DO BOTH.  I

7    THINK I'LL SET A FURTHER STATUS IN 90 DAYS FROM NOW, AND I'LL

8    SET A TRIAL DATE IN AUGUST OF 2023.

9         SO, MS. LEW, CAN YOU GIVE US AN AUGUST DATE IN 2023?

10        THE CLERK:  AUGUST 7TH.

11        THE COURT:  AUGUST 7TH, THAT'S THE CURRENT DATE.  AND

12   HOW ABOUT IN ROUGHLY 90 DAYS, IT DOESN'T HAVE TO BE EXACT,

13   FURTHER STATUS BY VIDEO?

14        THE CLERK:  OKAY.  AUGUST 30TH.

15        THE COURT:  OKAY.  YEAH.  WELL, YEAH, OKAY.  THAT'S

16   WHEN THE MARCUS TRIAL WILL BE GOING, AND I LEAVE THE DAY -- I

17   LEAVE THAT WEEK, BUT THAT'S ALL RIGHT.  THAT'S ALL RIGHT.

18   WE'LL HAVE THIS AS A STATUS.

19        OKAY.  WHAT'S THE TRIAL, MR. DAWSON, I HAVE WITH YOU

20   IN MARCH?

21        MR. DAWSON:  IT'S A DRUG DIVERSION TRIAL.  STEPHEN

22   SILVERMAN IS THE DEFENDANT.

23        THE COURT:  OH, YEAH, YEAH.

24        MR. DAWSON:  AND MR. OVASAPYAN, AND A VARIETY OF

25   DEFENDANTS, ONE LEFT FOR TRIAL.
```

1          **THE COURT:**  CAN'T YOU GET THAT THING RESOLVED?

2          ALL RIGHT.  VERY GOOD.  THAT'S NOT MR. SHEPARD'S

3   PROBLEM, SO WE WON'T BURDEN HIM WITH THAT.

4          OKAY.  ANYTHING ELSE?

5          **MR. DAWSON:**  WELL, I THINK, YOUR HONOR, WITH THE KIND

6   OF TENTATIVE PLACEHOLDER TRIAL DATE, IT MAY MAKE SENSE TO

7   EXCLUDE TIME THROUGH THAT DATE, WHICH WOULD COVER US FOR

8   INTERIM CASE MANAGEMENT CONFERENCES, OR WE CAN PROCEED ON KIND

9   OF A CASE MANAGEMENT TO CASE MANAGEMENT BASIS.

10          **THE COURT:**  I THINK THE RECORD IS BETTER WHEN WE DO

11   CASE MANAGEMENT TO CASE MANAGEMENT.  LET'S DO THE EXCLUSION --

12   ASSUMING MR. SHEPARD AGREES, WE'LL DO THE EXCLUSION THROUGH TO

13   AUGUST 30TH.  THEN IF I HAVE TO MOVE THAT CMC, YOU CAN REMIND

14   ME AND WE CAN JUST ADJUST THE TIME.

15          MR. SHEPARD, ANY PROBLEM EXCLUDING TIME THROUGH

16   AUGUST 30TH?

17          **MR. SHEPARD:**  NO OBJECTION, YOUR HONOR.

18          **THE COURT:**  ALL RIGHT. OKAY.  WELL, WE'LL SEE YOU IN

19   AUGUST.

20          **MR. SHEPARD:**  THANK YOU, YOUR HONOR.

21          **MR. DAWSON:**  THANK YOU, YOUR HONOR.

22          **THE COURT:**  THANKS.

23          (PROCEEDINGS ADJOURNED AT 2:51 P.M.)

24

25

1    STATE OF CALIFORNIA     )

2                            )    SS

3    COUNTY OF CONTRA COSTA )

4

5          I HEREBY CERTIFY THAT THE FOREGOING IN THE

6    WITHIN-ENTITLED CAUSE WAS TAKEN AT THE TIME AND PLACE HEREIN

7    NAMED; THAT THE TRANSCRIPT IS A TRUE RECORD OF THE PROCEEDINGS

8    AS REPORTED BY ME, A DULY CERTIFIED SHORTHAND REPORTER AND A

9    DISINTERESTED PERSON, AND WAS THEREAFTER TRANSCRIBED INTO

10   TYPEWRITING BY COMPUTER.

11         I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

12   OUTCOME OF THE SAID ACTION, NOR CONNECTED WITH, NOR RELATED TO

13   ANY OF THE PARTIES IN SAID ACTION, NOR TO THEIR RESPECTIVE

14   COUNSEL.

15         IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

16   1ST DAY OF JULY, 2022.

17

18

19   _____

20         JOAN MARIE COLUMBINI, CSR NO. 5435

21         STATE OF CALIFORNIA

22

23

24

25