**KING & SPALDING LLP**
MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:   +1 415 318 1221
Facsimile:   +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
 kdent@kslaw.com
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:   +1 202 626 2394
Facsimile:   +1 202 626 3737

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 3:20-cr-00249-RS-LBx<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S NOTICE OF MOTION, MOTION TO COMPEL DISCOVERY, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL**<br><br>Date:   December 20, 2022<br>Time:   9:30 a.m.<br>Judge:   Hon. Laurel Beeler |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, December 20, 2022 at 9:30 a.m., or as soon thereafter as the matter may be heard, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), Defendant Rowland Marcus Andrade will bring for hearing before the Honorable Laurel Beeler, Magistrate Judge, his Motion to Compel Discovery.

Mr. Andrade's Motion seeks an order directing the government to produce documents he has requested in discovery letters dated March 3, March 7, May 10, July 15, and October 14, 2022 ("requested documents"), as detailed in the attached Memorandum of Points of Authorities.

This Motion follows a lengthy meet and confer teleconference on October 3, 2022, a detailed letter to the government on October 14, 2022, which provided the government with additional information and documents to support Andrade's position that the requested documents exist and are relevant to this case, and several follow-up emails between the government and defense counsel. In support of this motion, Mr. Andrade submits the attached Memorandum of Points and Authorities and the Declaration of Kerrie C. Dent. Mr. Andrade also submits herewith a Motion to File in Camera and Under Seal portions of the Declaration of Kerrie C. Dent and the Exhibits attached to those portions of the Declaration.

RESPECTFULLY SUBMITTED,

DATED: November 28, 2022

KING & SPALDING LLP

By: /s/ Michael J. Shepard
    MICHAEL J. SHEPARD
    KERRIE C. DENT (*Pro Hac Vice*)

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By the time the court hears this motion, this case will have been pending for 30 months, and is on its third defense counsel. In response to a series of letters from Mr. Andrade over the past year, seeking information he believes should have been produced at the outset of the case, the government has produced hundreds of gigabytes of additional data and has said it is in the process of producing more. But the government's production of documents has been incomplete and slow-moving, and needs repeated prompting.

Earlier this year, following various calls and a meet-and-confer, Mr. Andrade filed a motion to compel on July 15, 2022, seeking production of materials the government seized pursuant to searches of his home and an office two years earlier, and another office more than four years ago. The government had delayed production of those materials, attributing the delay to review of the materials by a taint team. Apart from questioning why review by a taint team could take two years, Mr. Andrade argued that while the prosecutors needed to wait for a taint team review before *they* were permitted to view the fruits of the search, there was no excuse for withholding that information from Mr. Andrade. After Mr. Andrade filed his motion, the government agreed to produce the requested material to Mr. Andrade and produced over 31,000 pages (nearly 20 GBs) on July 17, 2022. In August 2022, the government also advised defense counsel that it had discovered and planned to produce an additional 55 GB of data containing Jack Abramoff's emails in the physical file of this case; this discovery was in connection with defense counsel's continued requests for production of materials held in the physical file. To date, the government has not produced the additional 55 GBs of Abramoff's email data, or a very large drive containing the physical file discovery and a drive containing device images, which it agreed to produce in mid-November.[1]

While Mr. Andrade awaits those productions, this motion addresses the government's failure to produce documents to numerous requests in Mr. Andrade's discovery letters dated

---

[1] This case had been set for trial in August 2023, but Judge Seeborg vacated that date on November 15, 2022 after hearing about the large amounts of discovery that the government has not yet produced.

1  March 3, March 7, May 10, July 15, and October 14, 2022.  Based primarily on relevance
2  grounds, the government has refused to produce documents responsive to a number of requests
3  in Mr. Andrade's discovery letters. Following a meet-and-confer, Mr. Andrade provided a
4  comprehensive, nine-page letter to the government on October 14, summarizing the issues
5  discussed and providing even more information to the government – and in some instances citing
6  documentary evidence demonstrating the existence of responsive materials and the materiality of
7  those documents to the preparation of Mr. Andrade's defense.  At bottom, the government
8  appears to be imposing a far more narrow concept of relevance than Federal Rule of Criminal
9  Procedure 16 requires.

10     Mr. Andrade and the government are continuing to work through other discovery issues,
11 some of which may also need the court's attention.  This motion addresses only the disputes for
12 which the meet-and-confer process has been completed.  Given the slow pace of the
13 government's production, the likelihood that the discovery sought will identify additional leads
14 material to the preparation of a defense that will themselves require additional follow-up, and the
15 necessity of this discovery to enable defense experts and investigators to finish their work prior
16 to trial, Mr. Andrade needs to obtain this discovery now.

17 **II.   STATEMENT OF FACTS**
18     **A.   Overview**
19     Defendant Marcus Andrade is a blockchain patent inventor and the founder and principal
20 of NAC Foundation, LLC, which developed, and marketed a new cryptocurrency called "AML
21 Bitcoin."  In a two-count indictment filed on June 22, 2020, the government charged Mr.
22 Andrade with (1) wire fraud in violation of 18 U.S.C. §1343 and (2) money laundering in
23 violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i), alleging that, among other things, he
24 misrepresented the state of development of AML Bitcoin cryptocurrency and misappropriated
25 funds.
26     Starting early this year, Mr. Andrade sent the government a series of letters setting forth
27 what he identified as gaps in the government's production.  The letters identifying gaps were sent
28 on March 3, March 7, May 10, July 15, and October 14, 2022 (attached as Exhs. 6-9, and 4).

With some of these requests dating back eight months, the prosecutors and defense counsel have had ongoing discussions concerning the timing of their production of documents, the schedule for responding to our requests and letters, and related discovery issues.

These discussions included a lengthy meet and confer telephone conference on October 3, 2022. During that call, the prosecutors requested that defense counsel send them a letter summarizing the issues discussed in the October 3 call. Defense counsel sent the prosecutors an additional comprehensive nine-page letter on October 14, 2022, which summarized the issues discussed during the October 3 call and outstanding discovery requests from previous letters. Exh. 4. For many of the disputes, defense counsel explained in considerable detail their view that requested materials exist and are material, going so far as to reference approximately 15 specific documents (produced by the government) to support their contentions. The letter from defense counsel asked for a response by October 21, 2022. The government responded by e-mail on October 29, 2022 (Exh. 5) and November 8, 2022 (Exh. 33).

Through this process, a few of the issues the parties discussed during the October 3rd call have been resolved, while others remain disputed. As a result of our letters and conversations, the government agreed to produce a substantial amount of material, including: certain statements made by Jack Abramoff relating to the NAC Foundation, AML Bitcoin, and Mr. Andrade in this case; FBI investigative files related to two prior investigations regarding Mr. Andrade; materials from the parallel SEC investigation;[2] Telegram and Discord channels and accounts; UC operations material to the preparation of Mr. Andrade's defense; and 55 GB of Abramoff emails that the prosecutors reported discovering in August 2022.

///

---

[2] The agreement to produce materials from the parallel SEC investigation at this point remains somewhat equivocal. AUSA Dawson informed us that he has reached out to Alice Jensen, the member of the SEC Enforcement Division's Market Abuse Unit who worked with DOJ on the investigation of Mr. Andrade. If AUSA Dawson is unable to obtain the requested documents from the SEC, then the Court should compel their production. There is no question that the SEC and the DOJ worked together on this investigation. Numerous 302s produced by the government confirm the close working relationship, which included conducting interviews jointly. *See, e.g.*, Exhs. 1-3; FBI-302-005197; FBI-302-010013; and FBI-302-005224.

The issues that the parties cannot agree on, and which are now ripe for a motion to compel, stem from the discovery letters dated March 3, March 7, May 10, July 15, and October 14, 2022.  The requests and the government's responses are summarized below. Given the extent to which Mr. Andrade has already laid out his reasons for the request, and the fact that any further explanations would require him to reveal his defense and strategies, his justifications for the requests in light of the government's responses are contained in the Dent Declaration:

(a)   **Jack Abramoff documents** (3/7/22 Letter, Reqs. 1 & 2; 3/7/22 Letter, Req. #5; 7/15/22 Letter, Req. #15); 10/14/22 Letter, at 3-4).  Jack Abramoff, a Republican pro-Russia lobbyist, twice-convicted felon, and, in the government's view, a co-schemer in the charged conduct, is at the center of this case. The defense has requested, among other things, material regarding Abramoff's wrongdoing and his business activities contemporaneous with the government's allegations in this case, including with investors and potential investors in AML Bitcoin, with those working with AML Bitcoin, and with those who had funds in an account used to invest in AML Bitcoin; his statements about this case, the NAC Foundation (Mr. Andrade's company that developed the blockchain-based digital token called AML BitCoin), AML Bitcoin, and Andrade; any FISA applications or related materials; and, to the extent not otherwise covered, FBI Agent Leana Saler's 302s relating to Abramoff and/or AML Bitcoin in this district, and in other districts.  The government has agreed to provide only reports of Abramoff's statements from his prior prosecution, and transcripts of any testimony related to that prior prosecution.  The government has declined to produce FBI reports and other documentation of Abramoff's business activities or other conduct contemporaneous with the allegations in the indictment, arguing that this can only be impeachment material, and that the defense request is premature.  The government has not provided any FISA applications or related documents. The government also has declined to produce any of Agent Leana Saler's 302s, asserting that she has no role in the present investigation.

(b)   **Maria Butina documents** (3/7/22 Letter, Req. #3; 7/15/22 Letter, Req. #3; 7/15/22 Letter, Req. #15).  Maria Butina participated in what the government has called the "money connection" to AML Bitcoin: she kept money in a bank account for Landfair Capital

Consulting, Inc. ("the Landfair Capital account"), which was controlled by Jack Abramoff's son and used by several individuals related to the AML Bitcoin project, including Butina's then-boyfriend and convicted money launderer Paul Erickson, Jack Abramoff, NAC, and others. The account was used for, *inter alia*, purchasing AML Bitcoin. FBI agents seized documents relating to AML Bitcoin from Butina's home in April 2018 during a raid that resulted in her being charged with, and pleading guilty to, conspiracy and acting as an agent of a foreign government, and when she was interviewed by the FBI, Butina made statements about AML Bitcoin.[3]

The defense has requested: statements made by Butina, or any documents provided by or taken from Butina, relating to Abramoff, the NAC Foundation, AML Bitcoin, and/or Andrade; relevant materials from her phone; and FISA materials relating to or referencing her. Although the government has agreed to provide copies of the AML Bitcoin related materials found in Butina's apartment, the government has not agreed to provide a copy of all the statements made by Maria Butina relating to AML Bitcoin or any other requested material, including materials from her phone and the aforementioned 302.

**(c)    Paul Erickson documents** (3/7/22 Letter, Req. #4; 7/15/22 Letter, Reqs. #15&16). Paul Erickson is Abramoff's longtime friend, political ally, and business partner. He is a convicted felon and former boyfriend of Butina. Erickson also was a participant in what the government has called the "money connection" to AML Bitcoin. He kept money in (and received money from) the same Landfair Capital account as Butina, Abramoff, NAC, and others which was used for, *inter alia*, purchasing AML Bitcoin. The defense has requested: statements made by Erickson, or any documents provided by or taken from him, relating to Abramoff, the NAC Foundation, AML Bitcoin, and/or Andrade; relevant materials from his phone; and any potential FISA materials relating to or referencing him, given his relationship with Butina. The government has declined to produce any statements made by Erickson, or any documents provided by or taken from Erickson, relating to Abramoff, the NAC Foundation, AML Bitcoin, and/or Andrade, contending that it does not believe that Erickson is relevant to the case.

---

[3] *See* Dent. Decl. Exh. 5, Email from AUSA Dawson to King & Spalding.

**(d)    Alexander Levin documents** (7/15/22 Letter, Req. #2). Alexander Levin is a pro-Russia, Ukrainian-American businessman who retained Abramoff as a consultant to assist him with, among other things, efforts to interfere with U.S. and Ukrainian politics based on a pro-Russia agenda. One 302 produced by the government indicates that Levin communicated with Abramoff frequently during the timeframe relevant to this case regarding Ukrainian politics and through those discussions, Abramoff introduced Levin to AML Bitcoin and discussed cryptocurrency. Exh 11, FBI-302-005158, at 2. Additionally, the 302 shows that Levin's payments to Abramoff for his consulting services were paid into the Landfair Capital account and were described as services for cryptocurrency consulting. *Id.* at 10. Specifically, the defense has asked for: relevant materials from Levin's mobile devices, or copies of his iPhone and iPad that were seized by the government sometime between October 2019 and April 2020.

**(e)    ComplyAdvantage documents** (5/10/22 Letter, Req. ##5-6). ComplyAdvantage is a RegTech company that provides anti-money laundering technology and, among other things, performs monitoring of transactions for cryptocurrency companies to help ensure they are in compliance with regulations and to counteract financial crime. ComplyAdvantage monitored all of the AML Bitcoin transactions. Defense counsel has informed the government that the ComplyAdvantage employee who was responsible for AML Bitcoin's account – Angela Generosa – had been contacted by FBI Special Agent Wynar. Defense counsel, in its October 14 letter to the government, also pointed out that records seized from Mr. Andrade's office include an agreement between Mr. Andrade and Ms. Generosa, and a Comply Advantage agreement regarding its work for the AML Bitcoin project. The defense has asked for agreements, 302s, transaction data, recordings, or other documents relating to ComplyAdvantage's monitoring of AML Bitcoin transactions. The government responded that the name Generosa does not appear in the case file.

**(f)    Search warrants, subpoenas, and related documents.** (7/15/22 Letter, Req. #12). The defense requested search warrants, including underlying applications and affidavits, subpoenas, and the fruits of all subpoenas that reference Andrade, the NAC Foundation, or AML Bitcoin, issued to any of the approximately thirty listed individuals and entities. The government

responded that "many" of the listed entities and individuals on the list were not "even relevant" – despite not specifying who they believed were not relevant – and has taken the position that there are no search warrants in the case file *for this case* that were issued to the parties listed in Request #12 and that any search warrants issued to those individuals in other investigations are unrelated to AML Bitcoin.

**(g)     Privilege Log** (5/10/22 Letter, Brady Req. #2). The first page of the Cellebrite file containing Abramoff's phone, as produced by the government, indicates that Special Agent Ethan Quinn removed items that were "potentially privileged." *See* Exh. 18 (screenshot of the Cellebrite file of Abramoff's phone). It is not clear why the removal of privileged material was not done by a taint team. Defense counsel has requested, but have not received, a privilege log for the items that were removed from Abramoff's phone before it was produced, or any itemization of what was removed. The government previously claimed that no privilege log existed.

## III.    ARGUMENT

This Court should compel the government to produce the disputed discovery items described herein because they are "material to the preparation of the defense" under Federal Rule of Criminal Procedure 16, and will enable Mr. Andrade to explore possible defenses and develop his theory of the case. *See United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995) (noting evidence is "material" under Rule 16 where it is helpful to the development of a possible defense or even abandoning a potential defense); *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (explaining that information need not be exculpatory or impeaching to be discoverable and material under Rule 16). The material should also be produced as exculpatory. *See also Brady v. Maryland*, 373 U.S. 83, 87–88 (1963) (establishing that the prosecution must turn over all exculpatory evidence to the defense).

The threshold for discovery under Rule 16 is "much broader" than *Brady, United States v. Conder*, 423 F.2d 904, 911 (6th Cir. 1970), and the materiality threshold of Rule 16 is "not a heavy burden." *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992). It is enough if the requested material can play an important role in uncovering admissible evidence, *United States*

1  *v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993), or, even if it may lead to nothing helpful to refute
2  the prosecution's case at all, by causing a defendant to abandon a defense and take a different
3  path. *Doe*, 705 F.3d at 1151.

4    Even the stricter standard for discovery under *Brady* should be interpreted liberally on the
5  side of disclosure. *See Kyles v. Whitley*, 514 U.S. 419, 440 (1995); United States Attorney's
6  Manual, Section 9-5.000 et seq. Courts routinely order discovery even if they are not convinced
7  that the material requested will in fact be exculpatory; rather, it is enough if the proffered
8  opportunity to aid the defense is "more than mere speculation." *See, e.g.*, *United States v. Lov-It*
9  *Creamery, Inc.*, 704 F. Supp. 1532, 1553 (E.D. Wis. 1989) (ordering production of an IRS file in
10 a related investigation even though the court was "not persuaded by defendants' theory that the
11 IRS file necessarily contains exculpatory material" because defendants "*made a sufficient*
12 *showing that their theory is more than mere speculation*") (emphasis added); *Lloyd*, 992 F.2d at
13 351 (granting tax preparer's request for discovery of tax returns of the government's taxpayer
14 witnesses because there were "two ways in which the taxpayers' prior returns *might tend to be*
15 *materially exculpatory*") (emphasis added).

16   The accompanying Declaration of Kerrie C. Dent in Support of Andrade's Motion to
17 Compel Discovery and the documents attached to it more than meet these standards. Because
18 the defense has already explained the materiality of the requested materials to the government in
19 considerable detail, and because any further explanation would require revealing defenses and
20 defense strategies, that Declaration is filed with a request to keep portions of it, and Exhibits
21 attached to those portions, under seal. Especially in the context of this complex case involving a
22 web of unsavory players with differing interests and motives, the Dent Declaration demonstrates
23 that the government has in its possession, custody or control information that is material because
24 it will either lead to evidence that adds to Mr. Andrade's defenses, or, at worst, would help him
25 discount potential lines of defense. In the face of these specific and appropriate discovery
26 requests pursuant to Rule 16, the prosecution must respond by turning over materials directly to
27 the defense or the trial judge. *See United States v. Agurs*, 427 U.S. 97, 106 (1976). The failure
28 to do so "is seldom, if ever, excusable." *Id.*

|  |  |
|---|---|
| | RESPECTFULLY SUBMITTED, |
| DATED: November 28, 2022 | KING & SPALDING LLP |
| | By: */s/ Michael J. Shepard*<br>MICHAEL J. SHEPARD<br>KERRIE C. DENT (*Pro Hac Vice*) |
| | Attorneys for Defendant<br>ROWLAND MARCUS ANDRADE |