STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ANDREW F. DAWSON (CABN 264421)
ROSS WEINGARTEN (NYBN 5236401)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7019
    FAX: (415) 436-7234
    andrew.dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MARCUS ANDRADE,<br><br>    Defendant. | CASE NO. CR 20-249 RS<br><br>OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY<br><br>Date:   December 20, 2022<br>Time:   9:30am<br>Judge:  Hon. Laurel Beeler |

    Even before the Indictment in this case was filed, Defendant Andrade was outspoken about the conspiracy he believes to be motivating the government's investigation in this case. In May 2020, Defendant Andrade sent a letter to various federal legislators alleging that the government's investigation into him was designed "to gain publicity and influence the 2020 presidential and congressional elections," and suggesting that this investigation is "politically motivated" and related to what he referred to as "the Russian Collusion Hoax." See Dawson Decl., Ex. A at 1-2. Defendant went on to claim in a *pro se* filing in a related civil forfeiture action that this case is "politically motivated" and alleging a connection to a wide array of other individuals and entities, including but not limited to Paul Erickson, Maria Butina, Michael Flynn, Landfair Capital, and Muzin Capital Partners. See Dawson Decl., Ex. B at ¶¶ 3-7.

1   Defendant's conspiracy theories have found new life in the form of discovery requests. Defendant's requests have included requests for CIA material, NSA material, documents related to Rudy Giuliani, and a request for a review of the unredacted report of Robert S. Mueller on Russian Interference in the 2016 Presidential Election.[1] As the Court will no doubt notice, many of the same names listed above—Paul Erickson, Maria Butina, etc.—are the subject of Defendant's motion to compel that is now before the Court. But conspiratorial speculation is not a proper basis for discovery in a criminal case. As explained below, the government is aware of nothing beyond such speculation justifying defendant's request. And because Defendant has submitted voluminous materials under seal, the government is unable to challenge any factual assertions therein due to their redacted nature.

For the reasons explained further below, the Court should decline to order any new discovery based on factual assertions that have not been subjected to the adversarial process. Many of the claims that have been shared with the government, for example regarding Comply Advantage, have been proved false. The Court therefore should not take on faith any further factual assertions that have been withheld from the government. While Defendant may have a limited right to keep his defense theory confidential, factual assertions in support of discovery must be subjected to the adversarial process. This Court should decline Defendant's invitation to undermine the adversarial process, to embark on a fishing expedition, and to replace the Rule 16's discovery standard with conspiratorial flights of fancy.

**I.     Legal Standard**

To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir.1984); see also *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir.1984) (same). A general description of the information sought will not suffice, nor will conclusory allegations of materiality. Rather, Defendants must present facts showing that the government is in possession of information helpful to the defense. *See Little*, 753 F.2d at 1445; *Cadet*, 727 F.2d at 1466–68; *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990); *United States v. Muniz–Jaquez*, 718 F.3d 1180, 1183 (9th Cir.2013); *United States v. Zone*, 403 F.3d 1101, 1107 (9th

---

[1] The government urges the Court to review the full breadth of the discovery requested by Defendant. *See* Dent Declaration Exhibits 6, 7, 8, and 9. The full scope of discovery requested is outrageous and far beyond what the rules would provide for. In sum, it is a fishing expedition designed either to delay or deter prosecution.

Opposition to Motion to Compel              2
CR 20-249 RS

Cir. 2005).

"Materiality is a necessary prerequisite to discovery." *United States v. USDC, Cent. Dist. of Cal., Los Angeles, CA*, 717 F.2d 478, 480 (9th Cir. 1983). Evidence is material under Rule 16 if it is "relevant to the development of a possible defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (internal quotation omitted). Materiality means "more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Barreras-Felix*, No. 19-CR-02199, 2020 WL 1074753, at *3 (D. Ariz. Mar. 6, 2020) (internal quotation omitted). Rather, disclosure of the evidence must "enable the accused to substantially alter the quantum of proof in his favor." *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976) (denying discovery motion where "[a]ny information discovered would have had a great potential for confusing the issues at trial").

**II.     Argument**

**A.     This Court should not grant discovery based on factual allegations not shared with the government and thus not subject to adversarial testing.**

Defendant seeks to re-write the practice of discovery by moving for discovery while refusing to share with the government the basis for that discovery. This Court should not permit such an end-run around the adversarial process.

The only basis for Defendant's novel approach to discovery—that is, a claimed entitlement to avoid ever explaining to the government the basis for that discovery—is the general principle that a defendant need not disclose his defense strategy. And so much is true. But a defendant should not be permitted to submit untested factual claims to a court in support of broad discovery requests without ever having the basis of those claims tested. If such a strategy is permitted, it will be deployed in every criminal case and courts will be obligated to vet factual claims without the benefit of adversarial testing, which is of course both unfair to the government and an impossible task for the court.

The danger of his approach is neatly illustrated by Defendant's request for materials related to Comply Advantage. *See* Motion at 8. Defendant's motion claims that a witness associated with Comply Advantage, Angela Generosa, was previously contacted by one of the case agents with regard to AML Bitcoin, and further that Comply Advantage "monitored all of the AML Bitcoin transactions." *Id.* In the course of meeting and conferring, the government informed Defendant that we did not believe that

1  employee was ever interviewed by the FBI, but Defendant persisted in his claim to the contrary. The
2  motion now requests production of any "agreements, 302s, transaction data, recordings, or other
3  documents relating to Comply Advantage's monitoring of AML Bitcoin transactions." *Id.*

4        As described in more detail below, since the filing of Defendant's motion, the FBI reached out to
5  Ms. Generosa and confirmed that, contrary to Defendant's repeated assertions to the contrary, she had
6  never previously spoken to the case agent. *See* Dawson Declaration at ¶ 5. She also flatly contradicted
7  Defendant's claim that Comply Advantage "monitored all of the AML Bitcoin transactions." *Id.* ¶ 6.

8        For these reasons and others described more thoroughly below, Defendant's requests for
9  documents related to Comply Advantage should be denied as factually unsupported. But more
10 importantly, it illustrates the danger of permitting Defendant to seek discovery based on factual
11 assertions have been withheld from the government and thus are untested. The flaw in Defendant's
12 Comply Advantage requests has only been made apparent because the government had the opportunity
13 to challenge those claims. But no such opportunity has been afforded with regard to the voluminous
14 redactions in Defendant's motion. The government requests that this Court reconsider its order
15 authorizing such broad redactions and exclude such factual claims from the sealing order. In the
16 alternative, the government requests that the Court decline to order any discovery premised on factual
17 claims that have been withheld from the government.

18       **B.    Jack Abramoff Documents**

19       Defendant's first category of requests relates to Jack Abramoff, but it is not at all clear what
20 specifically Defendant is moving to compel. Defendant's motion speaks broadly about "material
21 regarding Abramoff's wrongdoing and his business activities contemporaneous with the government's
22 allegations in this case . . . ." Motion at 6. And, indeed, the government has produced voluminous
23 evidence related to Abramoff's business activities. This includes multiple sets of search warrant
24 seizures, bank records, and reports of interview. At least at this high level of abstraction, it is unclear
25 what else Defendant is asking for.

26       The two more specific subsets identified by Defendant in his motion are FISA applications and
27 302s authored by FBI Special Agent Leana Saler. *First*, as for FISA applications, and as the
28 government has previously informed defense counsel, the government is not aware of any FISA

applications relevant to this case. Dent Declaration, Exhibit 37 at ¶ 15. The government invited defense counsel to provide any information in its possession in the event the government was incorrect, but of course Defendant has repeatedly declined to offer any such clarifications, presumably on the theory that any such communication would somehow disclose the defense strategy. This is a classic fishing expedition. The government notes as well that Defendant's request seeks not only any FISA application *targeting* Abramoff, he also seeks any such application that "references" Abramoff (or a variety of other entities). Mere passing reference to Abramoff is insufficient to entitle Defendant to production of such a document (if one even exists, of which the government is unaware).

*Second*, as to 302s authored by SA Saler, the government previously explained to the defense that SA Saler did not play a role in this investigation, but rather was assigned to the Department of Justice's previous investigation into Abramoff regarding completely unrelated conduct nearly 20 years ago. *See* Dent Declaration, Exhibit 4, at 4. As the Court may recall, Abramoff's guilty plea in that case was entered in January 2006.[2] Defendant Andrade has never explained how 302s relating to conduct dating back nearly 20 years would be relevant to the pending charges. In meet and confer sessions, Defendant has noted that Abramoff tried to call SA Saler when agents were executing a warrant at his house. *See id.* This, of course, is immaterial. Whether Abramoff sought to call her has no bearing on whether she had any involvement in this investigation. Similarly, Abramoff's statement that SA Saler was "on his case" is clearly a reference to Abramoff's *prior* prosecution. *See id.* Abramoff, in the midst of having his home searched, would have no way of knowing who from the FBI was assigned to *this* investigation. In sum, Defendant has articulated no basis to believe that Saler's 302s have any bearing on this case, and his request for production is yet another transparent fishing expedition. To the extent Defendant proffered further facts in support of his request in the sealed portions of his papers, the government urges this Court to unseal those portions and to permit the government to respond directly.

C.  **Documents relating to Maria Butina and Paul Erickson**

As demonstrated by Defendant's pre-indictment letter requesting a Senate inquiry into this investigation, he has long been convinced that he is the target of an FBI conspiracy involving what he

---

[2] *See* Department of Justice Press Release (January 3, 2006) https://www.justice.gov/archive/opa/pr/2006/January/06_crm_002.html.

refers to as the "Russian Collusion Hoax." *See* Dawson Declaration, Exhibit A. More specifically, Defendant has alleged elsewhere that the connection to this "Russian Collusion Hoax" is demonstrated in part by the alleged relationship between his case and the cases against two other criminal defendants: Maria Butina and Paul Erickson. *See id.*, Exhibit B, ¶¶ 4 & 5. Neither Butina nor Erickson was charged with anything relating to AML Bitcoin or Defendant Andrade, which it appears Defendant does not dispute. Defendant has nevertheless rejected the government's explanation that neither Butina nor Erickson have a direct relationship with the charges against Defendant Andrade. At Defendant's request, the government has reviewed 302s relating to interviews of Butina and Erickson. Neither individual referenced Defendant Andrade at all, and Butina made only a glancing reference to AML Bitcoin, essentially disclaiming any knowledge of it. Dent Declaration, Exhibit 5 (responses to Requests 3 and 4 in 3/7/22 letter). Given the lack of any substantive references to Andrade or AML Bitcoin, there is no basis to produce the reports in their entireties. The government is not aware of any evidence that either Erickson or Butina ever actually purchased AML Bitcoin or its associated token. Nevertheless, the government has agreed to produce the limited documentation in those files that relate to AML Bitcoin—which amount to marketing materials. Any production beyond what the government has already agreed to do would be unjustified.

Defendant's motion rejects this explanation and resorts to speculation. Defendant argues that Butina "kept money in a bank account for Landfair Capital Consulting." Motion at 7. The government is unaware of any such evidence, and it has previously noted to the defense that money being transferred into an account does not necessarily reflect "keeping" money in that account. Moreover, the Landfair Capital Consulting account was used for various purposes unrelated to AML Bitcoin or Andrade, and to presume such a link is naked speculation. The fact that Erickson and Abramoff are associates, and that Butina and Erickson were associates, does not entitle Defendant to rummage through unrelated casefiles. And again, to the extent Defendant has proffered further facts to the Court in support of this request, the government urges this Court to unseal those portions and to permit the government to respond directly.

### D.   Alexander Levin Documents

Next, Defendant requests documents related to an individual named Alexander Levin. Specifically, Defendant seeks "relevant materials" from any searches of Levin's mobile devices, or in

the alternative, entire copies of Levin's mobile devices that Defendant believes were seized and searched by the government at some point. According to Defendant, these materials are supposedly relevant to this investigation because, at some undetermined time, Abramoff "introduced Levin to AML Bitcoin and discussed cryptocurrency." Motion at 8. Defendant makes no other factual allegation to connect Levin to this case, which is unsurprising because Levin is completely irrelevant to this case.

To begin, records from Abramoff's phone, which was seized and searched as part of this investigation, have been produced in discovery, so Defendant has access to any communications between Abramoff and Levin from Abramoff's phone that Defendant believes are relevant to this case. To the extent they occurred, any law enforcement actions taken in connection to Levin's mobile devices were part of a completely separate investigation involving different law enforcement agents, different allegations, different conduct, and different individuals. Thus, Defendant's discovery request is overly broad and amounts to nothing more than a fishing expedition. The 302 cited by Defendant in his Motion describes some communications between Abramoff and Levin and mentions only that Abramoff sent Levin a document about cryptocurrency. Def. Ex. 11, FBI-302-005158 at 10. There is no mention at all of Defendant or AML Bitcoin. Defendant writes in his Motion that "Abramoff introduced Levin to AML Bitcoin" but there is no evidentiary support for this at all, at least not in the document cited by Defendant. Just to be sure the two investigations were separate, agents searched for "AML Bitcoin," "Andrade" and "NAC Foundation" in the Levin case file and found no mention of any of those terms. *See* Dent Declaration Exhibit 33 (at page 69 of ECF document). In other words, there was absolutely no reference to Defendant, his business, or his purported cryptocurrency at all in the investigation of Levin.

Similar to other discovery requests, Defendant is asking the Court to allow a fishing expedition into an individual, Levin, with at most a tangential connection to Abramoff but no connection at all to the conduct alleged here. It simply cannot be—and Rule 16 does not allow—that relevant and discoverable materials exist simply because Abramoff had a conversation with someone, even if that conversation mentioned cryptocurrency. Again, the government has requested any information Defendant has suggesting that Levin is in any way connected to the allegations in this case, and, if there are materials that are discoverable pursuant to Rule 16 or any other rule or obligation, they will be produced. Unfortunately, to the extent he has any such evidence, Defendant has chosen to file it under

seal and thus the government cannot respond. Accordingly, the Court should deny this request.

### E. Comply Advantage Documents

As described above, Defendant also seeks discovery related to a company called Comply Advantage, which Defendant describes as "perform[ing] monitoring of transactions for cryptocurrencies." Motion at 8. Specifically, Defendant seeks "agreements, 302s, transaction data, recordings, or other documents" relating to ComplyAdvantage's monitoring of AML Bitcoin's transactions. To support the argument that this discovery exists and is being withheld by the government, Defendant has alleged repeatedly, and states as fact in his Motion, that an employee at Comply Advantage who was responsible for AML Bitcoin's account named Angela Generosa was previously contacted by FBI Special Agent Wynar, one of the agents working on this investigation. To be more precise, the declaration in support of the motion states: "During our October 2 meet and confer, we told the prosecutors that *we know* that FBI Special Agent Wynar contacted Angela Generosa regarding Mr. Andrade's case," and that the government should at a minimum produce notes of that interview. Dent Decl. ¶ 41 (emphasis added). The government previously informed Defendant that it is not aware of any documents regarding agreements, transaction monitoring data, or other discoverable documents relating to Comply Advantage. *See* Dawson Decl., Ex. C at 2.

In response to Defendant's request, SA Wynar searched for any memoranda memorializing a conversation with Ms. Generosa. None exists. He searched for any notes or other documents memorializing a conversation, or even an attempt to contact her. None exist. In fact, on December 1, 2022 and in response to Defendant's Motion, SA Wynar contacted Ms. Generosa for the very first time and asked her whether they had ever spoken previously. She said they had not, and that she had not had any conversation with any FBI personnel about Andrade prior to December 2022. *See* Dawson Decl. ¶ 5. As discussed above, this is a clear example of Defendant making a factual claim—in this case, that SA Wynar spoke to Ms. Generosa and took notes of the conversation—that is not true, and then seeking discovery on the back of that claim. In this case, because the case agent reached out to the witness, the government was able to rebut the claim. For others, that is impossible as Defendant has chosen to shield his claims from scrutiny by filing under seal. The Court should deny that request.

The government notes finally that it has now, in December 2022 and based on Defendant's

discovery request, interviewed Ms. Generosa and will produce the 302 from that interview when it is finalized. That interview demonstrates that many of Andrade's claims in support of his requested discovery are false. Generosa explained that she worked at Comply Advantage and, while she was the lead on Andrade's account, it is not true that Comply Advantage monitored all of AML Bitcoin's transactions. Dawson Decl. ¶ 6. In fact, Generosa had never even *heard* of the name "AML Bitcoin" until she was asked about it by the FBI in December 2022. *Id.* Generosa told the FBI that Comply Advantage was never able to deliver a functional product to Andrade while she worked on the project and that Andrade had a contract with Comply Advantage that was never fulfilled. *Id.* ¶ 7. According to Ms. Generosa, Andrade broke his contract in less than six months, and she suspects he did not pay. *Id.*

### F.  Search Warrants and Subpoenas

Next, Defendant seeks search warrant materials and the "fruits of all subpoenas" that reference Andrade, the NAC Foundation, or AML Bitcoin, issued to any of the 31 individuals and entities listed at Request 12 in their July 15, 2022 Discovery Letter, attached to their Motion as Ex. 9. The government has reviewed this list, and is aware who some of these individuals are, while the identities and relevance of others remains a mystery. This request should be denied as woefully overbroad and reflects Defendant's longstanding view that he is caught up in a larger conspiracy. Defendant has made no showing as to the relevance to this investigation of any of these individuals or requests. Defendant's requests any materials "that reference Andrade, the NAC Foundation, or AML Bitcoin," yet offers no evidence or reason to believe those materials exist. The government has produced all relevant search warrants and subpoenas that are part of this investigation, and it is unaware of any previously undisclosed federal or state law enforcement investigation into Andrade, the NAC Foundation, or AML Bitcoin. *See* Dawson Decl., Ex. C (August 1, 2022 Letter to Defense Counsel, at 2).

Moreover, there is a procedural issue with Defendant's request as well. Defendant's request seems to suggest a belief that there is a global, law enforcement database that allows the government to search for any search warrants or subpoenas to any individuals, anywhere, by any law enforcement agency, state or federal. No such database exists. The government cannot simply search for any warrants or subpoenas to the more than 30 individuals or entities listed in the Defendant's letter. Defendant argues that the government should be able to identify any search warrant or subpoena to any

of these individuals or entities, from any law enforcement agency about an investigation of any kind, and search for references to the Defendant or his company. That is impossible, in large part because the agents on this investigation have no idea who many of these individuals are. Again, the Defendant offers no support for the premise that any of these supposed warrants or subpoenas (even if they do exist) would mention the Defendant, his company, or his fraudulent cryptocurrency. As the government has previously communicated, if the Defendant wishes to provide the government with information suggesting a connection between the allegations in this case and any of the entities listed, the government will do everything it can to track down any information that is discoverable and produce it. *See* Def. Mot., Decl. of Kerrie Dent, Ex. 37 at 2. Yet the Defendant has repeatedly declined to do so, despite multiple requests by the government, and instead chose to hide whatever evidence he has from the government in under seal filings.

### G. Privilege Log

Finally, Defendant seeks a privilege log for any items removed from Abramoff's phone when it was searched. The government has informed Defendant that no privilege log exists, and that remains true. Instead, when Abramoff's phone was searched, agents provided the FBI Unit that images phones ("the RCFL") with the names of one law firm and two lawyers that agents believed at the time communicated with Abramoff and thus might have had privileged communications with him. The RCFL then ran a keyword search for that law firm and those individuals, and deemed any documents that hit on those terms as *per se* privileged. The RCFL then segregated any documents that hit on those terms from the trial team. This was done in an attempt to be overly cautious and broad when identifying privileged documents. As the Court well knows, not every document that mentions a law firm or lawyer is privileged, and there are likely numerous communications on Abramoff's phone that hit on those terms that are not privileged. Nevertheless, the RCFL segregated any document that hit on those three terms, and then gave case agents an image of the phone that excluded those documents. That image has been produced to the defense in this case. The trial team has still not seen the documents that were segregated. No privilege log was ever made, and thus there is no privilege log to produce.

### III. Conclusion

For the foregoing reasons, Defendant's motion should be denied.

DATED: December 5, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

_____/s/_____
ANDREW F. DAWSON
ROSS WEINGARTEN
Assistant United States Attorney

Opposition to Motion to Compel
CR 20-249 RS

11