**KING & SPALDING LLP**
MICHAEL J. SHEPARD (SBN 91281)
 *mshepard@kslaw.com*
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
 *kdent@kslaw.com*
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:    +1 202 626 3737

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>        Defendant | Case No. 3:20-CR-00249-RS-LBx<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY**<br><br>DATE:        December 20, 2022<br>TIME:        9:30 a.m.<br>JUDGE:      Magistrate Judge Laurel Beeler |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................... 1

I.     THE GOVERNMENT'S DISCOVERY STANDARD IS FAR TOO
       NARROW, AND ITS CLAIM THAT MR. ANDRADE'S EX PARTE
       SUBMISSION "RE-WRITE[S] THE PRACTICE OF DISCOVERY" IS
       INCORRECT ................................................................................................ 3

II.    THE REQUESTS RELATING TO ABRAMOFF, BUTINA,
       ERICKSON AND LEVIN SHOULD BE GRANTED .............................. 4

III.   THE GOVERNMENT SHOULD BE REQUIRED TO MAKE THE
       REQUESTED PRODUCTION RELATED TO COMPLY
       ADVANTAGE ............................................................................................ 9

IV.    THE GOVERNMENT SHOULD PROVIDE ADDITIONAL
       INFORMATION ABOUT SEARCH WARRANTS AND SUBPOENAS. ............. 11

V.     THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A
       LOG OF WHAT WAS REMOVED FROM ABRAMOFF'S PHONE ................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*United States v. Alvarez*,
    2015 U.S. Dist. LEXIS 5761 (N.D. Cal. 2015) ...................................................................3

5

6
*United States v. Gomez*,
    *2014 U.S. Dist.* LEXIS *7307 (N.D. Cal 2017)* ...............................................................1, 3

7
*United States v. Hernandez–Meza*,
    720 F. 3d 760 (9th Cir. 2013) ............................................................................................3

8

9
*United States v. Lloyd*,
    992 F.2d 348(D.C. Cir. 1993) ...........................................................................................3

10

11
*United States v. Marshall*,
    532 F.2d 1279 (9th Cir. 1976) ...........................................................................................3

12

13
*United States v. Salyer*,
    2014 U.S. Dist. LEXIS 11242 (E.D. Cal. 2014) ...............................................................1

14
*United States v. Sleugh*,
    896 F.3d 1007 (2018) ......................................................................................................1, 4

15

16
*United States v. Solano*,
    No. 3:21-CR-00263-VC (N.D. Cal. 2021) ........................................................................1

17

18
*Wheeler v. Aliceson*,
    2015 U.S. Dist. LEXIS 71906 (E.D. Cal. 2015) ...............................................................1

19

**Other Authorities**

20
Rule 16 ...........................................................................................................2, 3, 5, 6, 12, 13

21

22

23

24

25

26

27

28

ii

1

## **INTRODUCTION**

2      The government's opposition brief and attachments ("Opposition") devotes substantial

3  attention to denigrating Mr. Andrade's *pro se* writings, but little focus on the viability of its own

4  arguments.  It therefore makes a series of errors that are fatal to its position:

5
- In objecting to Mr. Andrade's requests – and likely also in its many unseen
6       decisions on what discovery to produce – the government applies an outdated,
        incomplete, and far too narrow standard.  As Mr. Andrade's opening brief
7       establishes and the Opposition declines to address, discovery is material to the
        preparation of the defense and must be produced not just, as the Opposition
8       asserts, if it "enable[s] the accused to substantially alter the quantum of proof in
        his favor," Opposition at 3:7-9, but also if it "*might tend* to be materially
9       exculpatory," or, even if it falls short of meeting that lesser standard but could
        cause a defendant to abandon a defense and take a different path. Opening Brief
10      at 9:25-10:13.

11

12
- Despite the Opposition's complaint – repeated in at least as many lines as its
        pejorative comments on Mr. Andrade's *pro se* writings[1] – that the Court should
13      not consider Ms. Dent's declaration because the government has not seen it and it
        would be a "re-write of the practice of discovery," Opposition at 3:13, courts
14      regularly accept *ex parte* filings on non-case dispositive issues such as discovery,
        as long as good cause is provided for the sealing. *Wheeler v. Aliceson*, 2015 U.S.
15      Dist. LEXIS 71906 (E.D. Cal. 2015), *citing Pintos v. Pac. Creditors Ass'n*, 605
        F.3d 665, 678. (9th Cir. 2010); *United States v. Solano*, No. 3:21-CR-00263-VC
16      (N.D. Cal. 2021) (permitting criminal defendant to file declaration in support of
        contested discovery motion under seal to prevent disclosure of defendant's trial
17      strategy).[2]  Good cause is present here because, as the government acknowledges,
        the defendant has a right not to disclose his defense pre-trial, see Opposition at
18      2:14-15; *see United States v. Sleugh*, 896 F.3d 1007, 1017 (2018) (recognizing
        that the prospect of undermining the confidentiality of a criminal defendant's
19      defense strategies justifies sealing materials), and his defense theories are
        inevitably revealed when he explains, as the Opposition insists he must, *e.g.,*
20      Opposition at 2:19-23, that the requested information is material to the
        preparation of his defense. This Court can review Ms. Dent's declaration and
21      make its own determination of whether it is "a conspiratorial flight[] of fancy,"
        Opposition at 2:16-17, or whether it is carefully documented, complete with
22      citations to sufficiently reliable sources.  This exercise of the court's discretion
23

24

25
---
[1] The government attaches Mr. Andrade's plea for help that he wrote to several U.S. Senators, asking them to look
26  into the situation in which he found himself in after meeting and working with Abramoff from 2017-2019.  The
    government also attaches Mr. Andrade's pro se Answer to a civil forfeiture complaint, in which he explains his
27  belief that the investigation is politically motivated.

28  [2] The government itself makes *ex parte* filings on criminal discovery issues in this district. *United States v. Gomez*,
    *2014 U.S. Dist. LEXIS 7307 (N.D. Cal 2017).*

DEFENDANT ANDRADE'S REPLY BRIEF ISO                              CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

best balances the interests of the parties; the government's alternative – that the defendant must lay out his defense in a public filing – would reward the government for refusing to produce discovery by making defendants reveal their defense theories in order to make the government live up to its discovery obligations.[3]

- Nowhere in addressing the heart of Mr. Andrade's requests about Abramoff, Butina, Erickson and Levin does the Opposition claim that the requested discovery would be burdensome, that it would place anyone in danger, or that it would compromise confidential processes or information. Rather, the objection to those requests is based solely on the government's erroneous standard of what constitutes information material to the preparation of the defense. Compounding this error, the government asserts that it has no discovery obligations to provide material from a "separate investigation." Opposition at 7:10. But the issue is not whether the agents consider the investigations separate (and Rule 16's obligations are not limited based on how investigators separate their investigations); rather, the issue is whether there is a sufficient chance that information will be material to the preparation of Mr. Andrade's defense, even if that information might be in a separate investigation.

- The Opposition suggests that Mr. Andrade's discovery requests are "designed to delay or deter prosecution," Opposition at 2 n.2, but it is the government rather than Mr. Andrade that has slow-walked the discovery process. The government indicted Mr. Andrade two and a half years ago, but the government did not provide core discovery such as returning Mr. Andrade's iPhones and computers until his current defense counsel filed a motion to compel this summer, two years after the devices were seized; and the government still has not produced 55GB of Jack Abramoff's emails that "came to their attention" following a discovery request in August of this year[4] or considerable additional data from the physical file.[5] Now, in response to Mr. Andrade's motion to compel the production of a limited number of specific categories of discovery, the materiality of which defense counsel has supported with written and documentary evidence in a meet-and-confer and a follow-up letter, the government continues to resist making discovery.

- Rather than address some of Mr. Andrade's discovery requests on the merits, the government accuses Mr. Andrade of getting the facts wrong. All of these accusations are false.

---

[3] The government had the chance to file an opposition to our motion to seal, and instead, decided to express their dissatisfaction with the ex parte filing in this motion.

[4] On August 20, 2022, AUSA Weingarten reported that it had come to his attention that there were huge PST files containing 55GB of Abramoff's emails. He said that, if we provided a drive, he would "be happy to get [us] the massive files relatively quickly." We provided a drive to the government on September 2, 2022. Nearly five months later, the government still has not produced the 55GB of Abramoff emails.

[5] On November 8, 2022, AUSA Dawson reported that they are preparing a large production of more materials from the physical file. Defense counsel has received portions of that since then.

DEFENDANT ANDRADE'S REPLY BRIEF ISO
MOTION TO COMPEL DISCOVERY

CASE NO. 3:20-CR-00249-RS-LBx

1    No matter what the government thinks of two *pro se* writings by Mr. Andrade from May

2    2020, Mr. Andrade is entitled to evidence that is material to the preparation of his defense.  This

3    motion turns not on old pro se filings but on whether the government has met its obligations

4    under Rule 16 and *Brady*.  It has not.

**I.    The Government's Discovery Standard is Far Too Narrow, and Its Claim That Mr.
        Andrade's Ex Parte Submission "Re-Write[S] the Practice of Discovery" is
        Incorrect**

8    The Opposition is premised on an outdated and incorrect discovery standard; current law

9    is far more accommodating to a defendant's requests for discovery.  The government relies on

10   *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976) for the proposition that the

11   requested discovery must enable the defendant to "substantially alter the quantum of proof in his

12   favor."  Opposition at 3.  The materiality standard has been expanded and made more easy to

13   satisfy  --  understandably so, given the challenges of proving, as the government would have it,

14   that a document the defense by definition has not yet seen "would substantially alter the quantum

15   of proof in his favor."  Opposition at 3:8-9.  Instead, it is now beyond dispute that materiality is a

16   "low threshold," *United States v. Hernandez–Meza*, 720 F. 3d 760, 768 (9th Cir. 2013), and "not

17   a heavy burden."  *United States v. Lloyd,* 992 F.2d 348, 351(D.C. Cir. 1993).  Far from being

18   limited to information "substantially alter[ing] the quantum of proof in [the defendant's] favor,"

19   it is sufficient if there is a strong indication that the requested information will play an important

20   role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or

21   assisting impeachment or rebuttal, *id.,* or "even if it simply causes a defendant to completely

22   abandon a planned defense and take an entirely different path."  *Hernandez–Meza*, 720 F. 3d at

23   768.

24   That Mr. Andrade used an *ex parte* filing to set forth the explanation of why his

25   discovery requests are material to the preparation of his defense is not a "re-write the practice of

26   discovery."  Opposition at 3:13.   It is how the government frequently proceeds.  *See, e.g., United*

27   *States v. Alvarez*, 2015 U.S. Dist. LEXIS 5761 (N.D. Cal. 2015); *United States v. Gomez*, 2014

28   U.S. Dist. LEXIS 7307 (N.D. Cal 2017) (*ex parte* discovery proceedings are "peculiarly within

3

1   the discretion of the court").  An ex parte filing is the only way to vindicate a defendant's right to

2   pretrial discovery while not forcing him to give away the protection of his theory of defense.  *See*

3   *United States v. Sleugh*, 896 F.3d 1007, 1017 (9ᵗʰ Cir. 2018).

4         Far from "a conspiratorial flight[] of fancy," Opposition at 2:16-17, Ms. Dent's

5   Declaration is carefully and reliably documented, and the Court's review of it can protect the

6   government from any unwarranted discovery while not forcing the defendant to choose between

7   his right to discovery and his right to protect this defense theories from the government.  In any

8   event, as set forth in Ms. Dent's Declaration in support of the motion to compel, Mr. Andrade

9   has disclosed a substantial amount of information to the government to justify his discovery

10  requests – stopping just short enough to protect his defense.  This Motion followed a lengthy

11  meet-and-confer teleconference on October 3 and a detailed letter from defense counsel to the

12  government on October 14, 2022, which provided the government with substantial information

13  and documents to support Mr. Andrade's position that the requested documents exist and are

14  material to his defense.[6]  Among other things, the defense explained to the prosecutors that the

15  case agents themselves view the Landfair Capital account – information about which Mr.

16  Andrade seeks discovery about Abramoff, Butina, Erickson and Levin – as the "money

17  connection" to Mr. Andrade's AML Bitcoin.

18

19  **II.    The Requests Relating to Abramoff, Butina, Erickson and Levin Should Be Granted**

20         The detailed declaration, filed under seal in order to protect the government from learning

21  Mr. Andrade's trial strategy, amply justifies Mr. Andrade's requests relating to Abramoff,

22  Butina, Erickson and Levin.  Even without those justifications (which we do not repeat here and

23  which are sufficient by themselves to justify the requested discovery), the Opposition engages in

24  nothing more than hand waiving and does not cast meaningful doubt on the materiality of Mr.

25  Andrade's discovery requests to the preparation of his defense.

26

27  ─────────────

28  [6] See Declaration of Kerrie C. Dent in Support of Defendant Andrade's Motion to Compel Discovery ("Dent Decl."), ¶¶8-10.

DEFENDANT ANDRADE'S REPLY BRIEF ISO                    CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

**Abramoff.** While the Opposition professes an inability to understand Mr. Andrade's requests relating to Abramoff, he laid those requests out in letters, in the meet-and-confer, and in his motion to compel, including requests for information about Abramoff's other wrongdoing and his business activities contemporaneous with the government's allegations in this case, such as with investors and potential investors in AML Bitcoin, with those working with AML Bitcoin, and with those who had funds in an account used to invest in AML Bitcoin. Memorandum at 6:10-14. The government offers no reason why all these requests are not on their face material to the preparation of a defense.[7] Rather, as to the bulk of Mr. Andrade's requests relating to Abramoff, the government merely responds that it "has produced voluminous evidence" already. Opposition at 4:22-23. Needless to say, the government's obligation to provide Mr. Andrade with documents material to the preparation of his defense does not stop because a certain number of documents have been produced.

In its only other response in the Opposition about the Abramoff requests, the Opposition addresses two smaller requests: FISA applications, and 302s authored by FBI Special Agent Leana Saler. As to the FISA applications, the Opposition answers only that the prosecutors aren't aware of any applications. There is no mention of whether they took any steps to find out, and whether any such steps were limited to the local United States Attorney's and FBI Office. As to Ms. Saler, the government's argument that she did not play a role in this investigation is addressed in Ms. Dent's Declaration, but it is beside the point even if true. If, as Mr. Andrade contends and justifies in Ms Dent's Declaration, he is entitled to information about Abramoff's other wrongdoing and to Abramoff's business activities contemporaneous with the government's allegations in this case (such as with investors and potential investors in AML Bitcoin, with those working with AML Bitcoin, and with those who had funds in an account used to invest in AML Bitcoin), then this would include 302s from Special Agent Saler regardless of whether the government considers those 302s to be part of the investigation of Mr. Andrade or not. There is

---

[7] Paragraphs 12 -27 of the Dent Declaration in support of Mr. Andrade's motion to compel detail numerous reasons that Abramoff is material to Mr. Andrade's defense, and why there is reason to believe that there are more documents that the government is obligated to produce pursuant to its obligations under Rule 16 and Brady.

1    nothing about the government's obligations under Rule 16, *Brady,* or *Giglio* that is in any way

2    limited based on what the government considers to be a part of its current investigation.

3        **Butina and Erickson**.  The Opposition's careful statements about Butina and Erickson

4    do not justify its refusal to provide discovery about them.  It starts with the proposition that

5    neither of them was "charged with anything relating to AML Bitcoin or defendant Andrade,"

6    Opposition at 6:4-5, but this says nothing about whether they have information material to the

7    preparation of Mr. Andrade's defense, as most people who were involved in or have knowledge

8    about AML Bitcoin and Mr. Andrade were not charged either.  The Opposition then states only

9    that neither Butina nor Erickson had a "*direct* relationship with the charges," Opposition at 6:7, a

10   highly qualified statement that suggests they had at least some relationship or connection to

11   AML Bitcoin and/or to Mr. Andrade (and to the indictment) that Mr. Andrade should be entitled

12   to explore.

13       No better are the Opposition's claims that Mr. Andrade is not mentioned in the 302s of

14   Butina or Erickson, and that Mr. Andrade's showing establishes only that Butina transferred

15   money into the Landfair Capital account known as the "money connection" to AML Bitcoin, as

16   opposed to keeping money in that account.  For starters, even these claims are qualified, as the

17   Opposition notes that Butina's 302 contains a "*glancing reference* to AML," in which, the

18   government says, she was "*essentially* disclaiming knowledge" (emphases added), Opposition at

19   6:9-10, and the Opposition, in an exercise in hair splitting, notes that putting money into an

20   account "does not *necessarily* reflect 'keeping' money in that account.  Opposition at 6: 19-20

21   (emphasis added).

22       The exact meaning of the government's characterizations about Butina's statements is

23   unknown, as the government is unwilling to produce the 302 and provide context for the AML

24   reference,[8] and the defense does not have the bank records for the Landfair Capital account.  But

25

26   ───────────────
     [8] In a meet-and-confer email dated October 29, 2022, the government describes Butina's conversation with the
27   agent regarding AML Bitcoin in a different way: "Her only statement in a 302 about AML Bitcoin was that she was
     aware that Erickson had meetings with Abramoff regarding AML Bitcoin.  She asked Erickson if she should meet
28   Abramoff since she had an interest in bitcoin, but Erickson said she did not need to meet him."  Dawson email to
     King & Spalding (Oct. 29, 2022) at 2.

DEFENDANT ANDRADE'S REPLY BRIEF ISO                    CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

1   especially in light of the fact that AML Bitcoin marketing materials were found in the search of

2   Butina's home and that Erickson went to the trouble to make notes about those materials,[9] the

3   takeaways from the Opposition's careful statements are that Butina and Erickson had at least

4   some interaction or relationship with Mr. Andrade and/or AML Bitcoin, and that they used the

5   "money connection" to AML Bitcoin.  The fact that the 302s may contain only a "glancing

6   reference" is merely a reflection of what the agents investigating Butina and Erickson chose to

7   ask and to write down, as opposed to any indication of how whether Butina and Erickson (and

8   their statements, as well as documents, phones and other materials taken from them) are material

9   to Mr. Andrade's defense, and the existence of a "glancing reference" to Mr. Andrade and his

10  company (and the likelihood that there was a question by the FBI that prompted such a

11  reference) belies the government's claim that there is no relationship between what Butina and

12  Erickson were doing on the one hand and Mr. Andrade and AML Bitcoin on the other.

13          Similarly, the fact that the "money connection" account, in the government's telling, has

14  uses other than for AML Bitcoin raises questions about why the funds are comingled in the same

15  account used to fund and purchase AML Bitcoin, and whether there is a relationship between

16  AML Bitcoin and the other uses of the funds.  And the fact that, in the government's view,

17  transferring money into an account is different from keeping it there just underscores the

18  inference that can be drawn from the fact that, of all the possible bank accounts, the money

19  happened to go into this one – as well as raises questions about how long the money stayed in

20  that account (even if only for a nanosecond as the government seems to suggest), and where it

21  went afterwards.  The defense theory about the answers to all these questions can be found in

22  Ms. Dent's Declaration, but even without that theory the government's own qualified answers

23  fail to cast doubt on the materiality of the information to the preparation of Mr. Andrade's

24  defense as that standard is properly applied.

25          **Levin.**  The portion of the Opposition addressing Mr. Andrade's requests for information

26  relating to Levin incorrectly minimizes Levin's connection to AML Bitcoin and offers non-

27

28  [9] Dent Decl., Exh. 5.

DEFENDANT ANDRADE'S REPLY BRIEF ISO              CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

1    solutions to the requests.  While the Opposition claims that the only proffered connection

2    between Levin and this case is that Abramoff "introduced Levin to AML Bitcoin and discussed

3    cryptocurrency," Opposition at 7:3-4, Mr. Andrade also informed the government that the

4    government's own discovery shows that Levin and Abramoff communicated frequently,

5    including about AML Bitcoin.  As set forth in defense counsel's October 14, 2022 letter,[10] and as

6    reflected in Mr. Andrade's Motion, Levin was paying Abramoff for "cryptocurrency consulting,"

7    which, if an accurate characterization of the services, would likely relate at least in part to AML

8    Bitcoin given Abramoff's involvement with AML Bitcoin.[11]   And the government's discovery

9    shows that it is wrong in disputing Mr. Andrade's statement that Abramoff introduced Levin to

10   AML Bitcoin, Opposition at 7:15-17:  an FBI summary of text messages between Abramoff and

11   Levin reports that Abramoff sent Levin a video that is an introduction to AML Bitcoin.[12] As a

12   result, the government's own discovery shows that its protestation that "Levin is completely

13   irrelevant to this case,"[13] is wrong.

14         Despite Levin's relevance on the face of what the government has produced, the

15   government has refused to provide any of the requested discovery about him.  Its excuses for not

16   doing so fall flat. It first suggests that Mr. Andrade does not need materials from Levin's phone

17   because he already has access to Levin's communications with Abramoff from Abramoff's

18   phone, which the government produced.  Opposition at 7:6-8.  But discovery shows that

19   Abramoff may have been deleting messages from his phone,[14] which underscores that one phone

20   will not always contain all messages that the phone of a correspondent may retain.[15]  Even if

21   Abramoff's phone had all the messages, those messages would not tell the whole story of

22

23   [10] Dent Decl., Exh. 4 at 7.

24   [11] Dent Decl. at ¶¶12-27.

     [12] *See* Dent Decl. Exh. 11, FBI-302-005158 at 12.

25   [13] Opposition at 7.

26   [14] See Dent Decl. at

27   [15] As another potential example, defense counsel is having difficulty locating some of the group chats with Levin
     and Abramoff in the Cellebrite file of Abramoff's mobile phone that was produced by the government.  Some of the
     chats described in the agents' 302s summarizing materials on Abramoff's phones appear to be missing from the
28   Cellebrite, including some that relate to AML Bitcoin.  Before filing this reply, on December 9, 2020, the defense
     raised this issue with the government by email. The government responded that it would look into the issue.

DEFENDANT ANDRADE'S REPLY BRIEF ISO            CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

1  Levin's AML Bitcoin-related conduct.  Only Levin's phone can help show what Levin said and

2  did after he communicated with Abramoff about AML Bitcoin or cryptocurrency consulting.

3      Equally unhelpful is the government's insistence that "any law enforcement actions taken

4  in connection to Levin's mobile devices were part of a completely separate investigation

5  involving different law enforcement agents, different allegations, different conduct, and different

6  individuals."  Opposition at 7: 10-12.  Especially if the agents conducting the interview

7  considered the Levin investigation unrelated to Mr. Andrade (or, more likely were not thinking

8  about the Andrade investigation at all), then the fact that the 302 does not mention Mr. Andrade

9  or AML Bitcoin does not establish that Levin's phone has no information material to Mr.

10  Andrade's defense – it just establishes that those agents may not have been interested in Mr.

11  Andrade.  The issue is not whether the agents consider the investigations separate; it is whether

12  there is a sufficient chance that something in the Levin investigation (such as his phone) is

13  material to Andrade's defense.  Given how wrong the government was about Levin's

14  connections to AML Bitcoin and Abramoff's "cryptocurrency consulting," those chances are

15  very high.

16      Flawed for the same reason is the government's contention that because the "agents

17  conducted electronic searches of a case file related to Alexander Levin for any references to

18  Andrade, NAC Foundation, or AML Bitcoin"  and found "no hits,"  there is "no basis" to justify

19  a search of any of Levin's devices.[16]  Whether Andrade is mentioned in a file on a case against

20  Levin that the government claims is unrelated does not say anything about whether  Levin's

21  phone or other devices has information material to Mr. Andrade's defense.  For the reasons

22  stated above and in Mr. Andrade's motion and supporting papers, materials from Levin's phone

23  and other devices are material to the preparation of Mr. Andrade's defense.

24

25  **III.    The Government Should Be Required to Make the Requested Production Related to
         ComplyAdvantage**

26

27      As with Alexander Levin, ComplyAdvantage is an instance in which the government

28

---

[16] Email from AUSA Dawson to King & Spalding (Nov. 8, 2022); Opposition at 7:17.

DEFENDANT ANDRADE'S REPLY BRIEF ISO                    CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

accuses the defense of having the facts wrong (and makes all kinds of grand but unfounded

assertions about Mr. Andrade's motion as a result), when in fact it is the government that has it

wrong.  Once the facts are cleaned up, the only remaining question (in light of some of the other

assertions in its Opposition) is whether the government has sufficiently searched for all the

information in its possession from Comply Advantage that is responsive to Mr. Andrade's

requests.

        The saga of this request began when the defense sought discovery from the government

about Comply Advantage.   Before the launch of his AML Bitcoin, Mr. Andrade engaged

ComplyAdvantage to build out software that monitors and detects suspicious activity relating to

cryptocurrency transactions. Mr. Andrade therefore requested that the government provide

agreements, 302s, transaction monitoring data, and other documents from ComplyAdvantage.

*See* Declaration of Kerrie C. Dent in Support of Reply Brief ("Reply Decl."), ¶ 2.  Although the

government had produced some information relating to Comply Advantage, it resisted the

request, claiming that it was "not aware at this time" of any transaction monitoring data, 302s or

other documents related to ComplyAdvantage.  In an effort to assist the government in

determining whether it had any additional material from ComplyAdvantage, the defense

provided the government with the name of Angela Generosa, the person associated with Comply

Advantage to whom the FBI had reached out in 2019. Reply Decl. at ¶ 3.  The most the

government would say in response to Mr. Andrade's request was that it "is not aware at this time

of any documents regarding agreements with Comply Advantage."  It did not address other

portions of the defense request.  *Id.* at ¶4.  Rather than search for and produce any of the

requested ComplyAdvantage documents in its possession, before filing its Opposition, the

government tracked down and interviewed Angela Generosa.  It muddies its Opposition with

statements it attributes to Ms. Generosa on the merits of the case that have no bearing on the

merits of this motion, and adds a very carefully worded report reflecting that the FBI reached out

to Ms. Generosa on December 1 and 2, 2022, and that Ms. Generosa told the agents that "she had

never *spoken with* any representative of the FBI about Andrade or the investigation into him until

DEFENDANT ANDRADE'S REPLY BRIEF ISO
MOTION TO COMPEL DISCOVERY

CASE NO. 3:20-CR-00249-RS-LBx

1  December 2022."[17] (emphasis added).  What apparently happened – as the defense learned

2  through a conversation Ms. Generosa had with a defense investigator after the Opposition was

3  filed – is that the FBI agents had in fact contacted Ms. Generosa in 2019 as defense counsel had

4  advised the government (both by phone and by email), but that she had not returned the call or

5  the email at that time.  In her post-Opposition call with the defense investigator, Ms. Generosa

6  also denied some (but not all) of the statements attributed to her by the FBI in the calls on

7  December 1 and 2, 2022.  *Id.* at ¶5.

8      The government's incorrect accusation should not divert the Court from the discovery

9  issue that remains:  in the meet-and-confer process, the government has not responded to

10  portions of the defense request about ComplyAdvantage, and as to the portion of the request to

11  which it did respond (the part relating to agreements with ComplyAdvantage), it says only that it

12  is not aware of any at this time, without affirming that it looked diligently.  Ms. Generosa was

13  not the only person associated with ComplyAdvantage who could have been contacted, and as

14  noted above, the defense has confirmed that the FBI was trying to gather information relating to

15  Comply Advantage in 2019.  Unless it just dropped the ball completely after Ms. Generosa did

16  not respond, it is reasonable to expect that the FBI may have gathered some information.  The

17  defense request is therefore one that the government should be required to answer in full.

18  **IV.  The Government Should Provide Additional Information About Search Warrants and Subpoenas.**

19

20      The government objects to providing anything in response to Mr. Andrade's request for

21  search warrants, related materials, and the fruits of subpoenas to a list of individuals and entities,

22  relating to Mr. Andrade, NAC Foundation or AML Bitcoin. It attempts to justify this total veto

23  by complaining that while it is aware of some of the names, "the relevance of others remains a

24  mystery," Opposition at 9:14-15; similarly, during the meet-and-confer process, it noted that

25  "many" of the listed entities and individuals were "not relevant,"[18] implicitly acknowledging that

26  some of them were.  It further claims that it cannot be expected to inquire because "the agents on

27

28  [17] Opposition, Dawson Decl. at 5.
   [18] Dent Decl., Exh. 37 at 2.

DEFENDANT ANDRADE'S REPLY BRIEF ISO
MOTION TO COMPEL DISCOVERY                           CASE NO. 3:20-CR-00249-RS-LBx

1    this investigation have no idea who many of these individuals are" and because it lacks a global

2    database to track searches and subpoenas.  Opposition at 9:23-10:3.

3        These excuses do not justify producing nothing.   The government's phrasing reflects that

4    it knows a number of the names on Mr. Andrade's list and that it acknowledges their relevance to

5    the case.  In fact, the government already has provided information connecting some of these

6    entities and individuals to AML Bitcoin, and his co-schemer's control of AML Bitcoin's

7    marketing plans for its fundraising, and its funds.  And defense counsel provided the government

8    with information about the individuals on the list in its October 14 letter that followed

9    discussions during the October 3 meet-and-confer.[19]

10       Even more confounding is the government's professed inability (or refusal) to learn

11   anything about what searches have been conducted or subpoenas issued.  Like those that are

12   based on the constitution, Rule 16's obligation to produce information material to the preparation

13   of the defense is imposed on the *government,* rather than on the two prosecutors assigned to the

14   case, the case agents, and whomever they might happen to encounter picking up food at the

15   second floor cafeteria before responding to the discovery request. While the defense expects

16   agencies like the FBI have databases that would allow canvassing of a good portion of the

17   information the Opposition claims to have no ability to capture,[20] this is beside the point. If the

18   Department of Justice sought material from a company and that company responded that the few

19   specific individuals handling the matter had no idea who some of the people were whose

20   information was being requested, and that the company lacked any database to figure out if it had

21   any responsive information, it is not hard to imagine how the Department would respond and

22   what penalties would be imposed.  Rule 16 requires no less of the Department itself.

23   ///

24   ///

25   ///

26   ///

27   _____

[19] Dent Decl., Exh. 4 at 8.

28   [20] We do not see state subpoenas and warrants from the government.

DEFENDANT ANDRADE'S REPLY BRIEF ISO                    CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY

## V.   The Government Should Be Required to Provide a Log of What Was Removed from Abramoff's Phone

Mr. Andrade requested that the government produce a privilege log of materials removed from Abramoff's cell phone because the cellebrite file containing the phone stated that Special Agent Quinn had removed items that were "potentially privileged."[21]  The government explains in its Opposition, for the first time, that  a special unit of the FBI imaged the phone, ran the names of one law firm and two lawyers whom the agents believed had communications with Abramoff, and segregated material that hit on those names "in an attempt to be overly cautious and broad." Opposition at 10:13-26.  It then reports that "no privilege log was ever made, and thus there is no privilege log to produce."  *Id.*

While it is hard to dispute that at present there is no privilege log to produce, this is not a satisfactory answer to Mr. Andrade's request.  The government essentially concedes that the image produced to Mr. Andrade had communications removed that may not have been privileged at all (but just happened to have hit on the search for the law firm name and the two lawyers' names).  The government does not and cannot justify how an "overly cautious and broad" method of removing privileged documents from Abramoff's phone that it apparently employed for its own convenience and/or protection should limit what Mr. Andrade is entitled to in discovery, or potentially deprive him of non-privileged information material to the preparation of his defense.  Nor does the government explain why, at a minimum, it should not be required to prepare and produce a log to Mr. Andrade of what was removed, whether that log would qualify literally as a "privilege log" or not.  Mr. Andrade is entitled to a log of materials were moved by Quinn, as well as those removed by the special FBI unit, and he should be provided with non-privileged materials that were removed.

///

///

///

///

---

[21] Dent Decl., Exh. 18 (screenshot of Cellebrite file of Abramoff's phone).

DEFENDANT ANDRADE'S REPLY BRIEF ISO
MOTION TO COMPEL DISCOVERY

CASE NO. 3:20-CR-00249-RS-LBx

1    For all of the foregoing reasons, and for the reasons set forth in Mr. Andrade's motion to

2  compel discovery and the declaration in support of that motion, Mr. Andrade respectfully

3  requests that the Court grant his motion and order the government to conduct a thorough search

4  for the requested documents and produce any responsive documents promptly.

5

6                                        Respectfully submitted,

7  DATED: December 9, 2022              KING & SPALDING LLP
                                        By:    /s/ Kerrie C. Dent
8

9                                       MICHAEL J. SHEPARD
                                        KERRIE C. DENT (*Pro Hac Vice*)
10

11                                      Attorneys for Defendant
                                        ROWLAND MARCUS ANDRADE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ANDRADE'S REPLY BRIEF ISO                          CASE NO. 3:20-CR-00249-RS-LBx
MOTION TO COMPEL DISCOVERY