Pages 1 - 14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable LAUREL BEELER, Magistrate Judge**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. CR-20-0249 RS (LB) |
| | ) | |
| VS. | ) | Thursday, December 22, 2022 |
| | ) | |
| ROWLAND MARCUS ANDRADE, | ) | San Francisco, California |
| | ) | |
| | ) | Motion Hearing |
| | ) | |
| Defendant. | ) | |

**TRANSCRIPT OF ZOOM PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:46 a.m. - 10:00 a.m.**

**APPEARANCES:**

**For Plaintiff:**         STEPHANIE M. HINDS, ESQUIRE
                           United States Attorney
                           450 Golden Gate Avenue, 11th Floor
                           San Francisco, California  94102
                    By:    **ANDREW DAWSON,**
                           Assistant United States Attorney

**FOR DEFENDANT:**         KING & SPALDING
                           50 California Street, Suite 3300
                           San Francisco, California 94111
                    By:    **MICHAEL J. SHEPARD, ESQUIRE**

                           KING & SPALDING
                           1700 Pennsylvania Avenue, NW,
                           Suite 900
                           Washington, DC 20006
                    By:    **KERRIE C. DENT, ESQUIRE**

                           (Appearances Continued)

**Transcribed By:**        Diane E. Skillman, Transcriber

**CINDY A. DIAMOND, ESQUIRE**
58 West Portal Avenue, #350
San Francisco, California 94127

```
 1    Thursday, December 22, 2022                    9:46 a.m.
 2                        P R O C E E D I N G S
 3                                 o0o
 4         THE CLERK:  Calling Criminal Action 20-249 U.S.A.
 5    versus Rowland Marcus Andrade.
 6       Counsel, if you can please state your appearances for the
 7    record.
 8         MR. DAWSON:  Good morning, Your Honor.  Andrew Dawson
 9    for the United States.
10         MR. SHEPARD:  Good morning, Your Honor.  Michael
11    Shepard for the defendant Mr. Andrade.  I believe he's present
12    and agrees to participate by Zoom.
13         THE COURT:  I have two people in the audience raising
14    their hand.
15         MR. SHEPARD:  Those would be my --
16         THE COURT:  Mr. Andrade?
17         MR. SHEPARD:  -- esteem co-counsel hopefully Ms. Dent
18    and Ms. Diamond.
19         THE COURT:  Great.  Okay.  Elaine, promote them.
20       If it's possible, Mr. Andrade, to put yourself on video
21    that would be lovely.  Thank you.
22       Okay.  We will wait for your colleagues.  There's
23    Ms. Dent.  And there's someone else Hanna Jam (phonetic).
24       Is she part of this case?
25         THE CLERK:  No.  She put her hand down.
```

| | |
|---|---|
| 1 | **MS. DIAMOND:** Good morning, Your Honor.  Cindy |
| 2 | Diamond.  I am one of Mr. Shepard's co-counsel for |
| 3 | Mr. Andrade. |
| 4 | **THE COURT:** Yes.  I am familiar with you from your |
| 5 | declaration. |
| 6 | Okay.  So let me just quick grab my notes.  Your files are |
| 7 | too voluminous to go into my standing desk without dropping it |
| 8 | down below.  So it's a little tough. |
| 9 | Here's the thing.  You know, there's a lot of discovery in |
| 10 | the case.  I have to pull out the motions because I have some |
| 11 | questions that I think we should talk about.  And I have maybe |
| 12 | a suggestion as to process.  So let me give you my reaction to |
| 13 | how we approach the dispute potentially. |
| 14 | So, one, I think the government makes -- one, I have no -- |
| 15 | you know, I have no interest in disturbing the defense |
| 16 | strategy.  And at the same time I don't need to know a lot to |
| 17 | kind of manage what's appropriate in discovery.  So that's |
| 18 | point one. |
| 19 | I think Mr. Dawson makes a good point he ought to have |
| 20 | some, you know, a declaration with -- you know, you guys are |
| 21 | the master of what you want to say in your declaration.  There |
| 22 | are enough things I think you can probably say and you've said |
| 23 | a lot already that provides clarification. |
| 24 | Mr. Dawson says, you know some -- I am reporting from |
| 25 | memory -- always a dangerous thing -- but he says in some |

1  situations he has been able to test, you know, what you said,
2  and then you come and either worked it out or whatever.  So
3  that's sort of point one.
4      Point two is, you know, you guys gave me in great
5  civil-lawyer tradition, a ton of stuff.  And I don't know, as
6  I said, I have 27 matters on calendar today.  So one of the
7  issues is, you know, what does the business model permit for
8  me to get involved in your dispute.
9      When I look at the motions, I say to you, Mr. Dawson, for
10 some of it, you know, some of it I get and some of it I always
11 wonder why do you care.
12     So, you know, and because -- because part of it is, you
13 have like let's just take the SEC as an example.  And I know
14 you've agreed to produce this information so I know you
15 understand this.  In a government investigation, for example,
16 it is all fair.  You've got to review notes.  You've got to
17 review for *Brady*.  All of that kind of stuff.
18     And, you know, along the lines of the *Skilling* case, boy
19 do you spare yourself a lot of work if you just turn it over,
20 and who cares.  And then that kind of goes into the burden
21 argument.
22     And then you've got good lawyers who are knocking
23 themselves out on the defense side.  I know you are knocking
24 yourself out on the prosecution side, too, so it's not that,
25 but every good lawyer wants to make sure they're not leaving a

1   stone unturned.
2       Now I get it's not possible in civil or criminal
3   litigation, but it does seem to me that there's a certain
4   utility of just going through and say, do I have to do it?
5   That's question one. And then question two is, do I care?
6   It's kind of like making an objection at trial. Can I do it?
7   Sure, maybe. Do I want to do it? Maybe not.
8       So that was one reaction I had to it. I was literally
9   writing down on some of it, why do you care? Why do you care?
10  Why do you care? Burden could be, you know, one issue. I get
11  that. If it goes too far afield, it may be too much.
12      And then so that was an overall reaction to it. And --
13  and -- so I thought of two things that we could do today.
14  One -- I mean, I can learn your case. It will take me more
15  time than just digesting. It's not that hard. I've done
16  these cases myself. I have managed criminal discovery in
17  other cases. Probably need a day or so to kind of like look
18  at the indictments, think about it, work through all the
19  papers. It's not going to happen today.
20      So I thought that -- so what I was going to suggest today
21  is, one, I think the defense ought to rethink its declaration.
22  I thought today illustratively we could each -- I've got your
23  papers here, to illustrate the issues, the defense team could
24  pick one thing they really want, and we can talk about it.
25  And then the prosecution could pick one thing it really

1  doesn't want to do, and those two things might illustrate,
2  might be the bookends for your dispute.
3      Then I thought you have your next date before Judge
4  Seeborg in February. I thought a date in January, we can
5  schedule a little bit more time on the case -- I thought we
6  should maybe -- you can tell me. You guys have talked a lot
7  so I get it, so depending on how our conversation goes on
8  those two illustrative things that you want, we could decide
9  whether maybe it makes sense to just get together and talk
10 them through slowly and give it a couple of hour chunk right,
11 in January. It's not going to happen today.
12     I thought that is what was sort of reasonable for us to
13 accomplish today. Your papers themselves were fairly high
14 level. Obviously the Dent declaration -- thank you,
15 Ms. Dent -- was very thorough and lots of exhibits attached to
16 it so all that part's good.
17     So that's my proposal to you. One, reaction to it; two,
18 do you have an illustrative thing, one thing you want to talk
19 about today given there are 26 other matters still on
20 calendar.
21     I'm going to start, because it's your motion, I will start
22 with the defense.
23         **MR. SHEPARD:** So thank you, Your Honor. We
24 appreciate that. We've given you a whole lot of information.
25     We're happy to try do it the way you would like us to do

1  it.

2  **THE COURT:** That was just, boiled down, I would like
3  Mr. Dawson to reconsider what he doesn't want to do, and have
4  built -- a meet and confer with you not in early January, but
5  let's say not the week after New Year's, but the second week.

6  And then today to illustrate, at least a point, one point
7  for each of you that we come back in mid January for a more
8  extensive hash through of what you actually disagree with --
9  about.

10  **MR. SHEPARD:** I think the bulk of this for us, if you
11  are asking me to identify that, is the whole set of Abramoff,
12  Butina, Erickson, Levin.

13  **THE COURT:** And I know the government doesn't think
14  it's relevant but that was why I wrote down why do you care so
15  much, Mr. Dawson?

16  And if it exists and it's producible and it can be given
17  without a ton of burden under protective order, you know how
18  it is.  But when you go to trial, if you guys go to trial,
19  it's going to boil down to about a hundred things that are
20  relevant for the trial.  It's not going to be the sun, the
21  moon, and the stars because it's just not going to be.

22  So, you know, that's the main bulk of what they want.  So
23  why do you care so much?

24  **MR. DAWSON:** I would be happy to answer that
25  question.  I think the government's concern is not that

1   particular request.  It is the dozens and dozens and dozens of
2   requests behind it.
3       In my seven years as an AUSA, I've never had to litigate a
4   motion to compel because I could not agree more with Your
5   Honor, why would I care.  In this case I care because if I
6   were to try and comply with Mr. Shepard's request, first of
7   all, it would be impossible.  Second of all, it would take
8   years.  He has requested that we review the unredacted Muller
9   report on Russian interference.
10          **THE COURT:**  I get that part of it.  That's easier.
11  We can sit down and hash those things out.
12      If you don't care so much about the three things that
13  Mr. Shepard identified, maybe the idea is, one, start there.
14  Two, what's the reasonable time to produce.  Three, once, you
15  know, then, again, you don't have a trial date.  You have a
16  CMC upcoming in February, a status conference.
17      You know, then from the defense side, what else do you
18  want?  What else do you really want?  Do you want to talk
19  through it now?  Not today now, but mid January now, or do you
20  want to start with the important -- you know, as Judge Spero
21  always says, let's start here.
22      Let's get you the bulk of what you want and see what
23  illumination that might give you, what Mr. Dawson I think
24  categorizes the conspiracy theory of the government.  I'm not
25  going to order, you know, the government to review the

1    unredacted portion of the Muller report on this record, but
2    that might be a place to start.
3            **MR. DAWSON:**  And, Your Honor, if I may --
4            **THE COURT:**  One more thing before you say that,
5    Mr. Dawson.
6        Then what I would suggest, we should chew up your dispute
7    a little bit.  If we are going to take an hour, you know,
8    after -- you know, Mr. Dawson agrees it will produce the stuff
9    he doesn't care about, then pick your next five things, then
10   let's have an hour to talk about it.
11           **MR. DAWSON:**  I think it may be helpful to respond --
12   to illustrate some of the challenges even on that narrow
13   request.
14           **THE COURT:**  Yes.
15           **MR. DAWSON:**  As to Ms. Butina and Mr. Erickson, we
16   have, in fact, already done the vast majority of the review
17   that Mr. Shepard has requested.  That review for the most part
18   came up completely negative.
19       There is one statement that we communicated in a letter to
20   Mr. Shepard in an interview with Ms. Butina.  We have
21   discovered nothing in the case file regarding Mr. Erickson.
22       So, in part, our concern is what remains here would
23   apparently be a granular review of search warrant, returns
24   from electronic devices, which as Your Honor knows can be
25   gigabytes and gigabytes.

1         There's also the concern that in other areas we have had
2    disputes with the defense about the difference between things
3    that are seized pursuant to a search warrant and we -- a
4    device oftentimes that process will entail the creation of an
5    image.
6            **THE COURT:**  Right.
7            **MR. DAWSON:**  That image is not something we are
8    entitled to look at once the search warrant expires, but it
9    remains in certain cases in the possession of the FBI.
10        Mr. Shepard has requested that as to certain people
11   involved in our case, and have we produced that and we have
12   agreed to.
13        But when it comes to other individuals who are potentially
14   relevant in other cases, we don't necessarily know that the
15   images exist.  But it's another step to say that we would have
16   to produce images of a device seized from somebody else in a
17   different investigation.  A, because there's no search warrant
18   authorizing us to do it, and it's honestly a privacy concern
19   for the individual who may or may not have been subject to a
20   search warrant and suddenly Mr. Andrade with a tenuous
21   connection at best, is able to rummage through a complete
22   image of a device that may have intimate details about their
23   life, that's where our concern is.
24        In terms of reviewing 302s and producing statements,
25   documents seized that are relevant, that's perfectly fine.

1           **THE COURT:**  I think we should start -- if you've done
2    that under -- I mean, I would say from the defense side, you
3    at least have an obligation to undertake a review of those
4    things and they say what else from those investigations that
5    you really want.
6           I think privacy issues can be addressed, but usually the
7    way we address them is we address them through -- you're not
8    entitled to all the stuff that's not -- you are entitled to --
9    you may or may not be entitled to any of it, but you are not
10   entitled to private stuff that has nothing to do with the
11   investigation.  And, you know, that stuff is not necessarily
12   segregable.  So that's why we rely on 302s to reveal what's
13   been, you know, what's been identified.  And the government
14   hasn't always done that review.
15          I don't think that the -- the more attenuated discovery
16   gets to the actual charges, I don't think it gets you having
17   the government undertake a discovery review.  I mean, they
18   have their *Brady* obligations for all information within their
19   control that they have to deal with, but I don't think it
20   necessarily entitles you to that.
21          To me it seems like, you know, if you identify the three
22   or five most important things that you don't have, Mr. Shepard
23   pointed to the Abramoff investigation, Mr. Dawson says it's
24   really mostly been produced, if there are specific things that
25   you can identify that you want and that you didn't get, I

1    think you need to talk about it first, and then you schedule a
2    meeting with me.  It's not that hard.  I am available every
3    Thursday and I can work out a case management conference
4    that's a reasonable amount of time for let's say five
5    disputes, not 37, and not -- and you've got to prioritize it.
6        And so I think that that's -- you know, that's sort of the
7    best I think I can do today.  But so my -- what I think that
8    you ought to do is I think you ought to sit down, you know, by
9    not the first week in January, but that second week in
10   January, I think you ought to prioritize your top five things
11   on your list.  You have to start somewhere; you can't deal
12   with all of them.  Have a conversation at least by telephone
13   with the team, not just by email.  You can queue it up by
14   email.  You've got to talk it through.
15       Then submit a very short, you know, update about the
16   things that you want to discuss.  I think the defense team
17   should reconsider its affidavit -- its declaration to see if
18   there's any more detail you are able -- your call, do what you
19   want to do.
20       I may or may not be able to rely entirely on what you say
21   under seal, but I think we can have a productive on-the-record
22   conversation about what you want.  So I mean that's given the
23   big chunks of stuff that you gave me, volumes of it, I have to
24   learn your case a little bit better, and I can do that.
25       My suggestion is, if you meet that week of January, I

1   believe it's January 8th, if you give me an update, a joint
2   update, kind of like a CMC statement by say January, I think
3   that first -- that next Thursday is the 11th, if you at that
4   point want to identify on the 11th, by the 11th or later, it
5   doesn't have to be that date, I need at least a week's advance
6   notice of the five things you want to talk about so I can
7   spend some time doing it.
8       I will tell you that I am booked that Thursday, Friday,
9   and the following Monday is a holiday, but I can allot some
10  time to it.  So -- and then I can put it on a Thursday
11  calendar, you know, for some chunk of time where you kind of
12  aren't interrupted by other people.
13      So I think that's what I've got for today.  I will issue a
14  very short order to that effect.  And I think that if you can
15  try to narrow your disputes and queue them up serially for me,
16  I think we have a better shot of working through them.
17      Okay.  So I think with that, that's what I've got for you
18  today.
19          **MR. DAWSON:**  Thank you, Your Honor.
20          **MS. DIAMOND:**  Thank you.
21          **THE COURT:**  All right.
22
23              (Proceedings concluded at 10:00 a.m.)
24
25

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____

DIANE E. SKILLMAN, TRANSCRIBER

Tuesday, February 28, 2023