MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
 kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:    +1 202 626 3737

CINDY A. DIAMOND (124995)
 cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Avenue, #350
San Francisco, CA 94127
Telephone:    +1 408-981-6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendants. | Case No. 3:20-CR-00249-RS-01(LBx)<br><br>**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

    A.    MR. ANDRADE IS ENTITLED TO THE DISCOVERY REQUESTED ............................................................................................. 4

        1.    Butina Documents................................................................................ 5

    B.    Mr. Andrade's Request ................................................................................. 6

        1.    Non-Privileged Items from Abramoff's Phone, Including Those Relating to Robert Abramoff ........................................................ 6

        2.    Levin's Devices Without an "Attorneys' Eyes Only" Restriction ............................................................................................ 8

        3.    Extraction Evidence from Erickson's Phone ....................................... 9

        4.    Documents Relating to the Searches and Seizures of the Devices of Levin, Erickson, and Butina ............................................. 11

        5.    Statements Made by Butina, Erickson, and Levin ............................. 12

CONCLUSION ........................................................................................................................ 13

# INTRODUCTION

Defendant Marcus Andrade submits this supplemental memorandum in support of the remaining portions of what he identified at the Court's request as his first priority among the items in his pending motion to compel discovery;[1] namely, materials related to alleged co-schemer Jack Abramoff's fellow miscreants Maria Butina, Paul Erickson, and Alexander Levin. For more than a year, the government insisted that Butina, Erickson, and Levin are irrelevant to Mr. Andrade's defense, despite defense counsel's considerable efforts in meet-and-confer sessions to demonstrate the contrary. Starting after the briefing on Mr. Andrade's motion, and continuing through last week, the government has adjusted its position, first agreeing to produce the documents found in its search of Maria Butina's home, then agreeing to produce extractions from Butina's devices that are currently stored on a hard drive, and to produce some but not all of the data on Abramoff's phone,[2] and finally agreeing to produce extractions from Levin's devices, but with the caveat that Mr. Andrade agree to an "attorneys'-eyes-only" protective order ("AEO") for those materials.

This Supplemental Memorandum asks the Court to compel the production of the remainder of the materials that Mr. Andrade identified as his first discovery priority (with two of the requests narrowed by Mr. Andrade since his original filing).[3]

1. Complete image of Abramoff's phone, to include communications with Robert Abramoff;

2. Extractions from Levin's devices, without an AEO restriction;

---

[1] Mr. Andrade's prior filings addressing these issues include: his motion to compel (Dkt #120), its supporting declaration, exhibits, and reply; the parties' joint letter to the Court on February 3, 2023; Exh. 44, which was filed under seal but not *ex parte* on February 6, 2023 (Dkt #136-3); and the short defense pleading filed on February 15, 2023 (Dkt #143).

[2] Abramoff's phone records as originally produced were incomplete in two different ways. First, all of the WhatsApp messages between Abramoff and Levin to and from Levin's Ukrainian phone number, several of which relate to Landfair Capital, AML Bitcoin, and other matters directly relevant to this case, were missing. This has now been corrected. Second, as described herein, the government withheld data based on what it concedes is an overbroad claim of privilege.

[3] These narrowed requests are, as before, made without prejudice to our returning to broader requests in light of the Court's ruling and/or further review of materials produced by the government or otherwise obtained.

3

DEF'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL DISCOVERY

CASE NO. 3:20-CR-00249-RS-01 (LBx)

3. Extraction evidence that was preserved from the deletion of Erickson's phone data in March 2022, and any reports about when and on whose authority the devices and extraction reports were destroyed, if they no longer exist;

4. 302s, search warrants and other documents relating to the searches and seizures of the Butina documents[4] and of devices from Levin, Erickson, and Butina; and

5. Statements made by Butina, Erickson, and Levin, at least as they relate to Mr. Andrade, his assets and patented technology, and/or any activity in which Abramoff engaged, either directly or through the use of Abramoff's network of companies such as Landfair, BlockChain Entertainment, and Ignition Creative.

These items are material to the preparation of Mr. Andrade's defense because they will help him show that Abramoff was scheming with others to use Mr. Andrade's company and Mr. Andrade's patented intellectual property for Abramoff's own purposes, and that Mr. Andrade was not a participant in, nor did he have knowledge of, Abramoff's activities. Abramoff engaged in these activities behind Mr. Andrade's back, with the participation of others, and through activities that constitute the very acts with which Mr. Andrade. *See, e.g.*, the Butina documents, Exh. 44 at 1, 2-4, 7-9. Mr. Andrade will use this evidence to refute the government's accusation, necessary for conviction in a fraud case, that he acted with criminal intent. Rule 16 and *Brady* therefore require production of the requested materials.

## ARGUMENT

### A.  MR. ANDRADE IS ENTITLED TO THE DISCOVERY REQUESTED

Because the Butina documents were not produced until after the briefing on this motion was completed, this Court at the hearing on February 9, 2023 offered that Mr. Andrade may want to rework his arguments.[5] With the benefit of the Butina documents, as well as Exhibits 11, 21, and 34, this Supplemental Memorandum first shows the Court where many of the requested materials fit in the context of the government's allegations and Mr. Andrade's potential defenses, and then addresses each of the remaining requests. All of the cited exhibits were identified with

---

[4] The "Butina documents" (Exh. 44) refer to the 20 pages of AML Bitcoin documents and handwritten notes that were seized by the government from Butina's home on July 15, 2018 and produced to Mr. Andrade on January 4, 2023.

[5] *See* Transcript, Feb. 9, 2023, at 29:20-22 ("[T]he question is, is whether you want to, and it's up to you, whether you want to rework your arguments in the form of [a] brief or not").

4

particularity to the government and discussed with the government, often in considerable detail, during the many meet-and-confer sessions. See Joint Letter, February 3, 2023, at 5-6.

1. **Butina Documents**

Twenty pages found in Butina's residence during an FBI search on July 15, 2018 (the Butina documents) – requested over a year ago and produced on January 4, 2023, after this motion was first argued – show that Abramoff, without Mr. Andrade's knowledge, was discussing with Erickson (and likely also Butina, as the two were engaged and their finances comingled) not only the marketing of Mr. Andrade's business but also the use of his technology for other purposes that appear antithetical to their use for Mr. Andrade's businesses. The twenty pages contain extensive handwritten notes (attributed to Erickson by the government) that appear to have been written on multiple occasions over a substantial period of time. The pages include a multi-platform campaign to promote the deregulation of the cryptocurrency industry – the opposite of Mr. Andrade's approach, which was to sell AML Bitcoin as the only cryptocurrency that would be compliant with regulations such as anti-money laundering and "know your customer."

Among other things, Levin is connected to this scheming by Abramoff, Butina and Erickson through his participation in the development and funding of a television show. References to that show, controlled by Abramoff, starring Abramoff and Mr. Andrade, and produced by Blockchain Entertainment and Ignition Creatives, were included in the Butina documents and were the subject of some of the handwritten notes. When interviewed by the FBI, Abramoff reluctantly indicated that he had discussed Mr. Andrade's cryptocurrency with Levin, and that they discussed working together to change cryptocurrency policy – likely a reference to deregulation. Levin asked that his involvement "not be exposed," Exh. 34 at 7, 10-11. Abramoff appeared to comply by sending Levin an invoice – in the amount of $750,000 and through the Landfair Capital account also used for funding Mr. Andrade's business – and then prevaricating when asked about the invoice during his proffer to the FBI. As a result, Abramoff dodged explaining what he and Levin were planning to do with Mr. Andrade's business and why

they needed to keep Levin's involvement hidden.

There is a wealth of other information material to Mr. Andrade's defense in the Butina documents, as well as in Exhibits 11, 21, and 34, and their contents show the wisdom of the government's eventual agreement to produce the Butina documents, rather than to continue to claim that Butina, Erickson and Levin are irrelevant and that requests about them were just conspiracy theories. These same materials also underscore the materiality of Mr. Andrade's remaining requests.

### B. Mr. Andrade's Request

#### 1. Non-Privileged Items from Abramoff's Phone, Including Those Relating to Robert Abramoff

In response to a discovery request from Mr. Andrade on March 7, 2022, the government produced a Cellebrite image of Abramoff's phone on May 26, 2022. The first page of the image of the phone contained an imbedded notation stating: "Potentially privileged items removed." Defense counsel requested a privilege log on May 10, 2022,[6] but were told there was no log. Despite follow up requests from the defense,[7] the government has never provided an item-by-item log of what it refuses to produce; rather, the government explained in its opposition to Mr. Andrade's motion to compel (dated Dec. 5, 2022) that it would remove from Abramoff's phone image all documents that hit on search terms for two lawyers and one law firm, regardless of whether they were actually privileged, and on March 8, 2023,[8] it identified those lawyers/firm as "Arent Fox LLP," "Peter Zeidenberg," or "Robert Abramoff." The government admits that this

---

[6] *See* Decl. at pars. 45-48.

[7] *See, e.g.*, October 14, 2022 letter to the government; Declaration of K. Dent in Support of Motion to Compel, ¶47.

[8] This was not the only information from the phone that the government withheld. Defense counsel discovered in early December 2022 – after the motion to compel was filed – that the Cellebrite image they received was missing not only "potentially privileged" materials, but also the WhatsApp messages between Abramoff and Levin's Ukrainian phone number, many of which were described in an FBI 302 report summarizing messages from Abramoff's phone (Exh. 11 at 2-8). The missing messages included messages related to the $750,000 invoice from Abramoff to Levin for cryptocurrency consulting and the transmission of an AML Bitcoin promotional TV show video starring Mr. Andrade and Abramoff. After defense counsel exchanged emails with the prosecutors about the missing Levin messages, the government then produced the missing Levin messages, without explanation of why they were not on the image produced to defense counsel.

process will result in non-privileged communications being withheld. *See* Gov't Opp. to Motion to Compel, Dkt. #124, at 10:21-23 ("As the Court well knows, not every document that mentions a law firm or lawyer is privileged, and there are likely numerous communications on Abramoff's phone that hit on those terms that are not privileged.").

The process of having a taint team review all of the messages that hit the government's search terms might be time-consuming, but this is no reason to refuse to produce information required by Rule 16 and/or *Brady*. As an accommodation, Mr. Andrade proposes that for now a taint team be used to review only the messages that contain the search term "Robert Abramoff,"[9] who participated in several key activities and apparently did so in non-legal roles.

Abramoff's communications with and about his brother Robert are important because Robert was involved in Landfair Capital (the company with the bank account that was used by Abramoff to get himself paid for various "consulting" projects, to assist his friends and business associates in purchasing AML Bitcoin, and to engage in other activities that defense counsel is still working to understand). Robert Abramoff, who was not only a lawyer but an experienced movie producer, was also connected to Blockchain Entertainment, the company connected with his brother that was behind the promotional video for the AML Bitcoin TV show,[10] and Robert Abramoff also created one of Mr. Andrade's companies, NAC Payroll, the finances for which were comingled with the money his brother used to engage in the activities to which he has pleaded guilty. Robert Abramoff's name should therefore appear in relevant communications that are unlikely to constitute the provision of legal advice, and his communications should at a minimum be reviewed by a taint team to determine what information must be produced.

///

///

///

---

[9] Mr. Andrade agrees to forego a taint team review of documents that hit on the other two search terms without waiving his right to revisit the issue later.

[10] *See* Exh. 34 at 11-12.

### 2. Levin's Devices Without an "Attorneys' Eyes Only" Restriction

After much briefing and several lengthy conferences requesting the data taken from Levin's devices, the government has agreed to produce a copy of the data from those devices under the terms of an AEO protective order.[11] The proposed AEO condition should be rejected because there is no basis to deny Mr. Andrade access to the evidence relating to his own defense in this complex criminal fraud case, and strong reasons to permit him to review the evidence.[12]

Even in civil cases where constitutional protections are not implicated, AEO restrictions are an "extreme measure," *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F.Supp.3d 1079 at 1084, 1085, 1092 (N.D. Ill. 2015), that should be used "as sparingly as possible." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2006 U.S. Dist. LEXIS 89546 at 6 (S.D.N.Y. 2006). See also, *No Spill, LLC v. Scepter Canada, Inc.*, 2022 U.S. Dist. LEXIS 207405 (D. Kan. 2022) ("counsel needs to be able to share these documents with its client" and access to the documents "will also better facilitate the mediation process and provide the client with a better understanding of the case as it proceeds"), *id*., at 8; *Ragland v. Blue Cross Blue Shield of N.D.*, 2013 U.S. Dist. LEXIS 99369, at 4 (D.N.D. 2013) (because an AEO designation limited the ability of a party to provide assistance to counsel, its use "should be reserved for only those rare instances in which it is truly justified, i.e., when there is a real expectation and entitlement to confidentiality under the law that has been preserved and not waived and there is no other effective alternative"). Given that the government has the burden to show good cause for a protective order, and "this showing must be 'particularized' and 'specific,'" *United States v Cudd*, 534 F.Supp.3d 48. 53 (D.D.C. 2021), the government is nowhere near establishing the need for an AEO restriction.[13]

---

[11] This offer was made by AUSA Dawson by email dated March 13, 2023.

[12] The parties met and conferred about the AEO issue by phone on March 13, 2023.

[13] In the Ninth Circuit, AEO restrictions have been approved in cases in which there are "highly sensitive" materials for government "intelligence collection efforts" and in which disclosure would jeapordize the safety of law enforcement personnel and the integrity of the nation's borders. *Alderstein v. United States Custom and Border Prot.*, 2021 U.S. Dist. LEXIS 242329 at 829 (D. Ariz. 2021). The government has not asserted that this exception applies here.

Not only are these communications material to the defense for the reasons described above, but understanding them requires knowledge of the context of Abramoff and Levin's activities, as well as parsing the language of Levin and Abramoff, who were involved with covert agents, and purposely (at Abramoff's direction) used code words to confuse others who might be trying to understand their messages. Mr. Andrade will be able to penetrate the context and recognize and interpret Mr. Abramoff's code words, code names, initials, and the identity of individuals on recordings far more accurately than his lawyers ever could. The subject matter, people and entities involved, and the timing of events are all well-known to Mr. Andrade, who has been fighting allegations related to this matter -- civilly and criminally -- since 2018. In addition, the volume of materials being reviewed is so massive that he is needed to assist his CJA lawyers. His attorneys find Mr. Andrade's daily, meticulous assistance with review of discovery in this case to be vital to his defense.

At this point in the case, there is a track record of Mr. Andrade's access to a large quantity of often-sensitive discovery material, pursuant to the existing protective order. Mr. Andrade has already reviewed and analyzed hundreds of thousands of pages of discovery, has been invaluable to his counsel in assisting with understanding various communications and other documents, and has never been accused of violating the protective order or of having done anything to put anyone at risk. Given the requirements of Rule 16 and *Brady*, Mr. Andrade's compliance with the existing protective order, the extent to which AEO restrictions are disfavored, and Mr. Andrade's badly needed review of communications of a key participant in the case, imposing an AEO restriction would constitute a violation of his constitutional rights, including those guaranteed by the Sixth Amendment.

### 3. Extraction Evidence from Erickson's Phone

The prosecution team has known of Erickson's importance to this case for more than five years: the case agents were present for the search of Butina's home when the Butina documents and the notes on them that the government attributes to Erickson were discovered; when the FBI interviewed Mr. Andrade's alleged co-schemer Abramoff on September 13, 2018, the agents

showed him only three photos, one of Mr. Andrade, one of Erickson, and the third of Butina;[14] and the FBI repeatedly cross-referenced investigative steps with Erickson to its investigation of Mr. Andrade.[15] Erickson's important connection to the investigation of Mr. Andrade was underscored when Mr. Andrade requested Erickson's documents and data from the government on March 7, 2022 and July 15, 2022.[16] Despite its longstanding knowledge of Erickson's importance, the government reportedly destroyed the data from Erickson's phone on an unspecified date in March 2022 – a fact disclosed to the defense for the first time on January 25, 2023, with the claim that this was "part of standard FBI procedure." Joint Letter at 2.

In light of the government's destruction of information that it knew to be relevant and requested, Mr. Andrade asks the Court to compel the production of extraction evidence that was preserved when the government deleted its image of Erickson's phone, or, if that evidence does not exist, information about when and on whose authority the devices and extraction reports were destroyed, and about whether the case agents or anyone else took any steps to preserve the evidence and if not, why not. The prosecutors offer only to ask whether any additional documentation of the destruction exists. The government's failure to live up to its "duty to preserve discoverable evidence," *United States v. Grammatikos*, 633 F.2d 1013, 1019 (2d Cir.

---

[14] Exh. 21, recording of FBI interview of Abramoff during the search of his home on September 13, 2018.

[15] *See, e.g.*, FBI-302-001056 (Jan. 30, 2018) (FBI cross-referenced Mr. Andrade's case when they interviewed filmmaker Ezekiel Hanson in South Dakota regarding his relationship with Paul Erickson, including Erickson's habit of borrowing money. Hanson told the FBI he had met Erickson's girlfriend, Maria, from Siberia (i.e., Maria Butina); FBI-302-001069 (Jan. 30, 2018) (FBI cross-referenced Mr. Andrade's case on report relating to their interview of a retired Air Force Brigadier General in South Dakota relating to Paul Erickson); FBI-302-001064 (Feb. 28, 2018) (FBI cross-referenced Mr. Andrade's case when they recorded a call between Erickson and CHS [Confidential Human Source] Vespa); FBI-Main-0000251 (April 2018) (Mr. Andrade's case was cross-referenced in connection with an operation involving an FBI undercover employee renting a covert vehicle for UCE operational use and driving from San Francisco to South Dakota to meet with Erickson and others). The case agents also have long been aware of the connections between the cases of Mr. Andrade and Butina, as evidenced by the fact that Butina's case agent FBI agent Kevin Helson was present during the search of Abramoff's residence in September 2018.

[16] On March 7, 2022, Mr. Andrade requested statements made by Erickson, and any documents provided by or taken from him relating to Abramoff, the NAC Foundation, AML Bitcoin, and Mr. Andrade. On July 15, 2022, Mr. Andrade further requested: a copy of the data seized from Erickson's mobile phone in April 2018 and July 2018; any documents taken from him referencing NAC, Aten Coin, AML Token, AML Bitcoin, or Mr. Andrade; and any information showing any wrongdoing by Erickson.

1980); *see* American Bar Ass'n, Criminal Justice Standards for the Prosecution Function 3-5.4, requires far more: the government should not be allowed to suppress the facts surrounding the destruction when the question of whether sanctions for the destruction are appropriate depends on a case-by-case assessment of the facts. *Grammatikos*, at 1019.

### 4. Documents Relating to the Searches and Seizures of the Devices of Levin, Erickson, and Butina

Mr. Andrade has requested FBI 302 reports, search warrants and their affidavits, and other documents relating to the searches and seizures of the Butina documents, as well as the devices seized from, Levin, Erickson, and Butina. The government's refusal to provide any seizure reports relating to the devices, or any other documents reflecting the basis for the searches, deprives the defense of the necessary evidence to admit the exculpatory fruits of the searches, and to be able to fully understand and utilize the significance of what was found in the searches and other items the government has agreed to produce. For instance, with respect to the documents found in Butina's home in Erickson's presence (Exh. 44), information about whether the documents were comingled with other items, and whether the pages were stored separately or together, would provide defense counsel with critical information for the use of the Butina documents at trial.

No longer claiming irrelevance, the government's new objection—that the 302s and other reports relating to Butina's device are classified—does not relieve the government of its obligation to produce the materials. This objection does not appear to apply to Erickson or Levin, but in any event is not a reason to deny production but at best is a reason to require that applicable CIPA procedures be followed.[17]

///

---

[17] Mr. Andrade and his counsel are prepared to comply with the applicable CIPA procedures, which do not detract from the substantive rights of Mr. Andrade and his legal team or the discovery obligations of the government. The procedure for making these determinations is different in that it balances the right of a criminal defendant with the right of the sovereign to know in advance of a potential threat from a criminal prosecution to its national security. *See, e.g.*, *United States v. Anderson*, 872 F.2d 1508, 1514 (11th Cir. 1989); *United States v. Collins*, 720 F.2d 1195, 1197 (11th Cir. 1983); *United States v. Lopez-Lima*, 738 F. Supp. 1404, 1407 (S.D.Fla. 1990).

### 5. Statements Made by Butina, Erickson, and Levin

At the same time that Abramoff was engaging in misconduct with Butina, Erickson, and Levin relating to AML Bitcoin, the government investigated Butina, Erickson, and Levin (and convicted Butina and Erickson). In so doing, the government obtained records of their communications and money connections through Abramoff's Landfair bank account and took statements from them.

Given the significance of Butina, Erickson, and Levin to Abramoff's scheming behind Mr. Andrade's back about Mr. Andrade's businesses and technology in ways that will provide a defense to the charges against Mr. Andrade for the reasons described above, their statements, communications and records gathered in the course of government investigations are material to the preparation of Mr. Andrade's defense. This information will shed light on their activities, which will help explain how and why they were working behind Mr. Andrade's back and for purposes adverse to AML Bitcoin.

Even if it were correct, the government's opposition to this request, which is largely to say – contrary to what productions of the Butina documents have revealed – that there is nothing to see here, would justify the requested discovery. If the discovery in fact showed that there was nothing to see, and therefore caused the defendant to abandon a potential defense, this by itself is sufficient to meet the "low threshold" established by the Ninth Circuit for what is material to the preparation of Mr. Andrade's defense. *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013); *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (declaring that "[m]ateriality is a low threshold" and that "information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'").

///
///
///
///
///

DEF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY                    CASE NO. 3:20-CR-00249-RS-01 (LBx)

## CONCLUSION

For the reasons set forth above, there is no reason to permit the government to have unfettered access to these docum

Respectfully submitted

DATED:  March 15, 2023                    KING & SPALDING LLP

By: */s/ Michael J. Shepard*
    MICHAEL J. SHEPARD
    KERRIE C. DENT
    CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE