MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
 kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Attorneys for Rowland Marcus Andrade

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division
CHRISTIAAN HIGHSMITH (CABN 296282)
ANDREW F. DAWSON (CABN 264421)
 andrew.dawson@usdoj.gov
Assistant United States Attorneys
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone:    (415) 436-7019
Facsimile:    (415) 436-7234
Attorneys for United States of America

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA | Case No. 3:20-cr-00249-RS |
|---|---|
| Plaintiff, | **JOINT STATUS REPORT REGARDING COMPLIANCE WITH DISCOVERY ORDER** |
| v. | |
| ROWLAND MARCUS ANDRADE | |
| Defendant. | |

1

On April 7, 2023, the Court issued an order granting Andrade's motion to compel with respect to five categories of documents.  (Dkt. #165, "discovery order").  The parties submit this joint status report in compliance with the Court's Order dated May 27, 2023 (Dkt. #179), which mandated that disputes about the sufficiency of the government's production pursuant to the discovery order be filed after the parties have met and conferred and in the form of a joint status report, with each dispute set forth in a separately numbered section.  The parties set forth below their positions with respect to two issues: 1) Alexander Levin's devices; and 2) Paul Erickson's phone.

**1.  ALEXANDER LEVIN'S PHONE**

Mr. Andrade's Position

Andrade requested Alexander Levin's phone more than a year ago, on July 15, 2022.  After hundreds of pages of briefing, numerous meet-and-confer sessions, a few hearings, and repeated protestations by the government that Levin has "no connection at all"[1] to Andrade's case, the Court ruled on April 7, 2023 that "the government must produce the Levin device without an [attorneys' eyes only] designation." Discovery Order (Dkt. #165) at 2.  Four months and several more meet-and-confer sessions later, the government has not produced Levin's phone.

The government produced, on May 24, four spreadsheets that appear to log some of Levin's WhatsApp chats and other communications.  When defense counsel asked the government during a meet-and-confer on June 22 why it had not produced an image of Levin's phone (as the Court had ordered), the government insisted that the phone is "irrelevant" and that "it does not have the phone and will not get the phone."  On June 23, the government further insisted it has "no access" to Levin's phone. *Id.*

The government's position that it has no access to the Levin phone in the possession of the AUSA in New York is inconsistent with what the government previously has told Andrade about the phone.  Specifically, on February 9, 2023, the government told Andrade it had "just received word that agents *ran the following search terms through the seized devices from*

---

[1] United States' Opposition to Andrade's Motion to Compel, Dkt. #124, at 7.

*Levin*: Andrade, AML Bitcoin and NAC Foundation. There were no hits on any of those terms."[2] Not until late May 2023, *after* the Court ordered the government to produce Levin's phone and *nearly a year after* Andrade requested it, did the government suggest that it had no access to Levin's phone.

Even if the government had not already demonstrated its ability to access Levin's phone, Ninth Circuit law and Rule 16 require the government to reach out to the Southern District of New York to obtain an image of Levin's phone so that it can fully comply with the discovery order because the government has knowledge of, and access to, Levin's phone. *See United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (prosecution must produce the requested agency documents if the prosecution has knowledge of and access to them and they are material to her defense); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). The United States Attorney's Office for the Northern District of California and the United States Attorney's Office for the Southern District of New York are hardly independent, unrelated entities that should be allowed to dodge discovery obligations as if they are playing a shell game.

The government's position that it has no access to Levin's phone is not credible when the case agents have run search terms (albeit only three of them) "through the seized devices of Levin." Furthermore, if there was a reason why Levin's phone cannot be produced, then it should have been raised a year ago, when Andrade requested the phone, not now, after the parties and the Court have spent a year briefing the issue, engaging in meet-and-confer sessions, having hearings on the issue, and entering orders. Andrade requests that the Court order the government to obtain an image of Levin's phone from the SDNY and produce it to Andrade.

The Government's Position

Andrade's request should be denied. The government has produced all material from the Levin phone in its lawful possession and has complied with the Court's discovery order.

Andrade seeks production of non-responsive, potentially privileged material not in the government's possession. That request must be denied. *See United States v. Balwani*, 18-cr-258

---

[2] Email from R. Weingarten to King & Spalding (Feb. 9, 2023) (emphasis added).

EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022) (Dkt. #1393) ("because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive [electronic data], it could not have been under an obligation to review or turn over that data to the defense as potential *Brady* material").

Further, Andrade paints a misleading picture of its communications with the government concerning Levin's phone. A complete picture shows that the government has complied with the discovery order. In March 2020, authorities in a different district obtained Levin's phone pursuant to a search warrant in an entirely different investigation. That district seized only what the law entitled them to seize—search hits responsive to Attachment B of that district's warrant. On December 27, 2022, Andrade's counsel requested messages between Levin's phone and Jack Abramoff. The messages were contained on Abramoff's cell phone and the government produced them. But the government went even further. On January 25, 2023, the government agreed to search for the terms "Andrade", "AML Bitcoin", and "NAC Foundation" on Levin's phone[3] and late informed Andrade's counsel that the terms did not hit against Levin's phone. The government ran those terms against what it lawfully seized search pursuant to Attachment B of the 2020 search warrant, which should have been evident to Andrade's counsel because it is well-established that the Fourth Amendment only permits the government to seize what is specifically enumerated in the search warrant. *Id.* at 8 ("in searches made pursuant to warrants[,] only the specifically enumerated items may be seized") (citing *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982)). It appears Andrade mistakenly believed the government ran the search terms against the entire Levin phone, including against non-responsive material the government was not entitled to seize, which would have been a violation of the Fourth Amendment.

Andrade then moved to compel production of Levin's phone, the Court ordered its production, and on May 24, 2023, the government produced Levin's phone. Specifically, the government produced data from Levin's phone lawfully in its possession—material specifically

---

[3] Letter from the Government to King & Spalding (Jan. 25, 2023).

enumerated in the 2020 search warrant.  Accordingly, the government has complied with the discovery order.

The government cannot seize and produce to Andrade material not lawfully in its possession.  *Id.* at 9 ("government agents involved in the investigation should be allowed to examine only the information covered by the terms of the warrant").  The Court should deny Andrade's request for additional material from Levin's phone.  To the extent the Court is willing to entertain Andrade's request, the government requests the opportunity to fully brief the issue.

<u>Mr. Andrade's Reply</u>

After multiple rounds of briefing in which it refused a request for Levin's phone based only on a supposed lack of relevance, after an order from this court requiring it to produce Levin's phone, and after months of stonewalling, the government conjures up a new rationalization for its non-compliance with the Court's April 7 Order.  Along the way, it accuses Mr. Andrade of being misleading, but in fact it is the government's story – that all the arguments to the Court were only about four spreadsheets, rather than about an image of Levin's phone – that is demonstrably incorrect.  All this leads to its new position that the phone – which based on its own prior statements the government *has* kept in its possession – is not in its *lawful* possession.  This belated claim gets it nowhere.

The government should not be heard to make its "lawful possession" argument for two reasons.  First, it waived it.  This issue was fully briefed – and re-briefed.  It was argued – and reargued.  In those arguments, there was no question that Mr. Andrade was requesting the entire phone, and the government never argued it could not produce it – only that it was not relevant. The Court ordered its production in April.  The government never sought reconsideration of the Court's April 7 order; it just stalled and refused to comply.  Despite multiple requests and meet-and-confers, it was not until *more than two months after it was ordered to produce the phone,* in a June 9, 2023, email, that the government said that it had produced the extractions from the Levin devices that it was permitted by the Fourth Amendment to have in its possession.  No litigant should get to engage in this behavior.

///

4

1       Second, and more importantly, the government has not treated the phone (including the

2   parts of the phone supposedly outside the scope of the warrant by which the government says it

3   obtained the phone) as if it has no right to access it. To the contrary, and as described in greater

4   detail below, on January 25, 2023, the government wrote to Mr. Andrade that it requested that

5   three search terms – artificially narrow ones to which Mr. Andrade objected, and which the

6   government relied upon to argue that Levin was irrelevant to Mr. Andrade's defense[4] – be run

7   "*on the devices*."  On February 9, 2023, the government reported that its agents ran the search

8   terms *through the seized devices* and there were *no hits*.  If it is a violation of Mr. Levin's rights

9   to view the phone beyond the limits of the warrant, then the government has already violated his

10  rights – when it suited its own needs.  And if, as the government now contends under *United*

11  *States v. Balwani*, 18-cr-258 EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022), the government only has

12  lawful possession of extractions of four spreadsheets, why does the government still have the

13  phone at all, over three years after it seized it?[5]  *See, e.g., In re Search of Black iPhone 4,* 27 F.

14  Supp. 3d 74, 80 (D.D.C. 2014) (requiring a revised warrant application to stipulate that

15  nonresponsive seized documents will be returned or destroyed "within a prompt period of

16  time.").   It is only when Mr. Andrade wants his own access to the same material that the

17  government searched to advance its own argument that the government claims that no one else

18  can be allowed to look at it.  The government should not be allowed to take its ball and go home.

19      Even if the government is permitted to make this argument despite its waiver and unclean

20  hands, the argument still fails.  The government should not be allowed to render impossible Mr.

21  Andrade's access to information the Court has found to be material to the preparation of his

22  defense, especially information that is potentially exculpatory for the reasons set forth in Mr.

23  Andrade's prior briefs.  To the contrary, where the government can take steps to make

24

25  [4] *See* Transcript of Proceedings before Hon. Laurel Beeler, Magistrate Judge (Feb. 9, 2023), Dkt.
26  #147 at 12-14 (government argues that search terms were run to help it understand if materials in
    the files and phones were relevant). *See also* United States' Opposition to Andrade's Motion to
27  Compel, Dkt. #124 at 6:27-8:1.

28  [5] The government concedes that the search warrant that captured Mr. Levin's phone was
    executed in March 2020.  See Government's Position, *supra* at 4:9-10.

information available to the defense, it must do so.  *See, e.g., United States v. W.R. Grace,* 401 F. Supp. 2d 1093, 1099-00 (D. Mont. 2005) (requiring the government disclose materials requested by defendant, where HIPPA allows agencies to disclose information to the prosecution if the prosecution subpoenas the information or the information is responsive to a discovery request, and the prosecution seeks a protective order, even though the documents are "of little interest to the prosecution.").  As the *W.R. Grace* Court explained, the government's discovery obligations turn on what it "appears able to obtain," at least when, as here, the request is specific and limited and is a "far cry from forcing the prosecution to 'comb the files of every federal agency.'"  *Id.* at 1100.[6]

There are various ways the government can ensure that Mr. Andrade can obtain information in its custody that is material to preparing Mr. Andrade's defense and/or evidence exculpating him.  First, if the government is correct in saying that it does not lawfully possess Mr. Levin's phone, and if Mr. Levin or his counsel is within this Court's subpoena power, the government should offer what it says it does not lawfully possess to Mr. Levin's counsel, with

---

[6] Apart from its claim that the government does not lawfully possess the phone it has held for more than three years, the government does not argue that it would be unable to obtain the phone from the United States Attorney's Office for the Southern District of New York, and any such argument would be futile.  Needless to say, unlike in *United States v. Bryan*, *supra,* a different United States Attorney's Office is not a different agency; both United States Attorneys report to the same agency official, the Deputy Attorney General, and should be working together to ensure a just result in every case prosecuted by the Department of Justice. Even if Mr. Andrade were nonetheless required to establish that the Southern District of New York has been participating in the investigation of Mr. Andrade, there are ample indications it is doing so, and numerous leads that could produce additional proof.  For starters, when Mr. Andrade's prosecutors wanted to contest Mr. Andrade's discovery motion, they worked with FBI Agents in the Southern District of New York to run three exceptionally narrow search terms through Levin's phone – an inquiry that was made and terms that were chosen without consultation with Mr. Andrade – so that the prosecutors could tell this Court that the phone is irrelevant.  Even before Mr. Andrade's discovery requests, the agents working on this case conducted interviews for this prosecution jointly with two agents from the FBI's Los Angeles counterintelligence division, inquiring into topics such as Abramoff's hand-written notes relating to his pro-Russia/anti-Ukraine lobbying, and Abramoff's other work with Congressman Rohrabacher and Ukrainian-born oligarch Igor Kolomoisky.  *See* FBI-302-0001066-67. One of those Los Angeles agents later told the Senate Committee on the Judiciary that his inquiries into the "flows of foreign money into U.S. politics," including from Ukraine, were "largely" for the benefit of the Southern District of New York.

advance notice to and cooperation with Mr. Andrade, so that he can serve a subpoena for it on Mr. Levin or his counsel before the phone is returned.[7]  Second, even if the government cannot accept a subpoena for the phone, it has already been ordered to produce the phone, so no subpoena should be needed; the government should tender the phone to the Court, the Court can inform Mr. Levin, and the Court can allow him, if the law so requires, the opportunity to object if he so chooses.   Third, as the government did with Mr. Abramoff, it can seek consent from Mr. Levin, and then pursue one of the alternatives above if he refuses.

The Court should require the government to comply with its April 7 order, by using one of these procedures or another one acceptable to Mr. Andrade, within 14 days.  There may be procedures other than those described above that would satisfy any claimed rights, but the one procedure that unquestionably does not do so is the government maintaining possession and using the phone as it desires to suit its own interests, while blocking Mr. Andrade's access to it. The government cannot be permitted to deprive Mr. Andrade of an opportunity to capture evidence found to be material to the preparation of his defense, and he should not lose out on such evidence simply because another prosecutor in the investigation of a different defendant seized the phone before Mr. Andrade asked for it.

If, despite repeated government representations to the contrary, the Levin phone no longer exists, then unredacted destruction records and other information about its destruction should be provided, along with the search warrant materials relating to the seizure of the phone, (Dkt. #165 at 12), which the government has declined to produce.[8]  For the reasons described

---

[7] If, in response to the government's offer, Mr. Levin abandons the phone, then there should be no reason the government cannot produce it.

[8] There are additional unanswered questions about Levin's devices. For example, it is not clear why Levin's iPad was seized but never accessed by the government.  In addition, Levin used not only a United States phone number, but also a Ukrainian phone number, when he communicated with Abramoff and others.  *See* FBI-302-005158 (when summarizing messages on Abramoff's phone, Mr. Andrade's case agents identified 114 messages using Levin's Ukrainian number and 73 messages using the U.S. number). None of the Ukrainian messages are included in the four spreadsheets of Levin messages produced by the government in response to the Court's April 7 order.  Mr. Andrade does not know whether Levin's Ukrainian phone was seized, or whether his seized iPad contained messages using his Ukrainian phone number.

more fully below in the discussion about discovery relating to Mr. Erickson, the government has a "duty to preserve discoverable evidence," *United States v. Grammatikos,* 633 F.2d 1013, 1019 (2d Cir. 1980), and a duty to inquire and to report on "what steps it took to identify and locate the requested information."  *See United States v. Stone,* No. 12-CR-0072 JCC-GSA, 2013 WL 4541513, at *5-9 (E.D. Cal. Aug. 27, 2013), order clarified, No. 12-CR-0072 JCC-GSA, 2013 WL 5969705 (E.D. Cal. Nov. 8, 2013)*; see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf.").

Finally, both the government's representation that it never accessed or ran searches through the entire phone, and its claim that what was in dispute was only four spreadsheets of material from the phone, as opposed to an image of the entire phone, are false. Not only did the government tell Mr. Andrade in writing on February 9, 2023, that it had "just received word that agents ran [three] search terms *through the seized devices* from Levin,"[9] but the FBI reported that the evidence that was reviewed when the search terms were run on that date by the FBI in New York City, at the request of the case agents here, was "One (1) 500GB Seagate HDD, s/n Z6E9c66L, containing the master copy of 1B83 (Alexander Levin iPhone – Serial Number: F2LZDER8N70L – IMEI: 35389910124723)."[10]  On March 20, 2023, over a month after the FBI in New York City ran search terms on a copy of Mr. Levin's phone, the case agent applied search terms to extractions from the phone – the activity the government falsely portrays as the only application of search terms.[11]

Especially in light of these facts – all of which were in the government's possession

---

[9] AUSA R. Weingarten email to Mr. Andrade's counsel (Feb. 9, 2023).

[10] FBI 302 dated February 9, 2023, written by Andrew Taff in New York City, of the FBI - New York Field Office, Squad C-14.  This 302 is not-Bates stamped, but was sent by email from AUSA A. Dawson on February 28, 2023.  Mr. Dawson said that he would have the report Bates numbered and produced, but Mr. Andrade has not received a produced version of the document.

[11] On that date, one of the case agents, Roahn Wynar, applied search terms, this time on "Microsoft excel files" described as "extractions of a cell phone belonging to Alexander Levin," which had been "provided to [the] agents by Assistant United States Attorney (AUSA) Rebekah Donaleski from the Southern District of New York."  *See* FBI-302-011731.

1   while this issue was argued earlier this year – the government's complaint that Mr. Andrade

2   (and presumably the Court) should have understood that all that was at issue was four Excel

3   spreadsheets of extractions from Mr. Levin's phone is completely untenable. There was no

4   ambiguity that Mr. Andrade was seeking the entire phone, or that the Court ordered the

5   production of that phone: during the hearing on April 6, 2023, the Court twice said to the

6   government "give over the device" (Dkt. #167 at 16),[12] the Court's April 7, 2023 order

7   described Mr. Andrade's request as one for an "image[]" of Levin's phone (Dkt. #165 at 11),

8   and the Court ordered "production of the Levin device" (Dkt. #165 at 13).[13]

9          The government imagines that Mr. Andrade (and presumably the Court) should have

10  figured out that the government had only extractions because the Fourth Amendment permits the

11  government to seize what is specifically enumerated in the search warrant, *see* Government

12  Position at 4:20-21, but this wrongly assumes that Mr. Andrade had access to that warrant.  To

13  the contrary, when Mr. Andrade inquired about the Levin warrant, the government did not

14  produce it, responding instead, in a June 22 meet-and-confer, that the warrant was "in another

15  investigation" and that it is "irrelevant to Mr. Andrade's case."  Worse still, despite the Court

16  having *ordered* the production of the warrant if it is relevant (interpreting relevance broadly to

17  include, *inter alia*, whether Mr. Abramoff was working against Mr. Andrade),[14] the government

18  *still* has not produced it – while at the same time telling the Court that Mr. Andrade should be

19  charged with knowledge of it.

20  ///

21  ///

22  ///

23  _____

24  [12]  In response to the Court's next statement, which directed the prosecutor to "tell me why I'm wrong," Dkt. #167 at 16, the government made no mention of not being in lawful possession of

25  the device or any part of it.  Rather, it argued the device was irrelevant and accused the defense of "misusing his discovery."  Dkt. #167 at 17.

26  [13]  In addition, Mr. Andrade was not told and did not know of the existence of the four

27  spreadsheets until they were produced for the first time on May 24, long after the arguments and over two months after the case agents received them.

28  [14]  April 7 Order (Dkt. 165 at 12).

### 2. PAUL ERICKSON'S PHONE

<u>Mr. Andrade's Position</u>

This Court's April 7 discovery order mandates the production of Erickson's phone or information about its destruction. Dkt. #165 at 2. As best Andrade can determine, he does not yet have either one. At most, he has a device seized from Butina. While the government claims this device belonged to Erickson, and while this device does contain some communications to and from him,[15] this production does not satisfy the Court's order: the government previously reported that Erickson devices were returned to Erickson and all Cellebrite images were deleted (only to say later it was unsure if Erickson's phone was destroyed); and the phone seized from Butina was also used by her for important communications,[16] underscoring that Erickson in all likelihood had another one, including at the time he was communicating with Abramoff. Under the Court's Order, even if the government had looked into all the previous devices used by Erickson and determined that it currently has no other Erickson devices, it owes explanations about the destruction of any other devices.

As with the Levin device, the government's ever-changing position on Erickson's phone leaves more questions than it answers – precisely what the Court's discovery order sought to avoid. The prosecution team has known of Erickson's importance to this case for more than five years and, in fact, the FBI repeatedly cross-referenced investigative steps with Erickson to its investigation of Andrade.[17] Erickson's important connection to the investigation of Andrade was underscored when Andrade requested Erickson's documents and data from the government on

---

[15] Communications between Erickson and Abramoff appear on the device seized from Butina, including several about the proposed Bitcoin reality television show that was to star Abramoff and Andrade — underscoring that, as the Court found, Erickson's communications are material to Andrade's defense.

[16] Also, on the device seized from Butina are multiple communications to Butina from an FBI case agent, wanting to speak to her about "national security matters. This suggests that Butina was using the phone repeatedly and for important matters, which means that Erickson likely had another device he was using at the time.

[17] *See, e.g.*, FBI-302-001056 (Jan. 30, 2018); FBI-302-001069 (Jan. 30, 2018); FBI-302-001064 (Feb. 28, 2018); FBI-Main-0000251 (April 2018).

March 7, 2022 and July 15, 2022.  But the government apparently took no steps to preserve any Erickson material in response to those requests.  It instead took the position that it "does not believe that the investigation into Paul Erikson is relevant to this case," and, after Andrade filed a comprehensive motion to compel production of Erickson's phone, it dismissed his request as "conspiratorial speculation." Dkt. #124 at 2.

Indeed, despite its longstanding knowledge of Erickson's importance, despite Andrade's requests, and, eventually, despite the Court's April 7 ruling, the government apparently made little or no effort to locate the phone(s) Erickson used to communicate with Abramoff (his close friend and fellow miscreants for decades) or to ensure its preservation. Instead, the government told a tale of Erickson's phone that kept Andrade guessing.  First, the government wrote that "Erickson's devices were returned to him in July 2020 and Cellebrite files were deleted when the case was closed in March 2022 as part of standard FBI procedure."[18]  When questioned about the destruction of Erickson's device, the government objected that Andrade's "discovery letters in early 2022 asked for absurdly broad categories of information" and that if defense counsel had "targeted those letters to what [they] actually wanted, we certainly could have sorted things out earlier."[19]  That mysterious thickening of the plot was followed by a complete turnaround, with the government admitting during a March 8 meet and confer that it now was not sure whether Erickson's phone had been deleted after all, and refusing for the next few months to disclose what it knew about the phone and/or its destruction. [20]   In the meantime, the government's narrative of twists and turns concluded with

---

[18] January 25, 2023, email from the government to Andrade's counsel.

[19] February 15, 2023, email from the government to Andrade's counsel.

[20] A few weeks later, the government attempted to avoid production of the phone or information about it by representing to the Court that since it had agreed to produce Abramoff's phone, Andrade "does not need devices associated with Paul Erickson." *See* Gov't Supplemental Opp. to Motion to Compel, Dkt. #158 at 3.  The government then changed its mind about producing the Abramoff phone, but after more briefs and another hearing, was ordered to produce it. *See* Order granting Andrade's Motion to Compel Production of Abramoff Phone (Dkt. #192). In any event, Abramoff's phone would not provide Andrade with information about others Erickson communicated with about Andrade, AML Bitcoin, Landfair Capital, and/or other issues material

the pronouncement, in the parties' April 25 joint status report on the government's productions since the Court's April 7 discovery order, that its April 12 production of Butina's devices had contained an extraction from Erickson's cell phone (which was seized from Butina because she sometimes used it). Dkt. #171. For the government – regardless of whether the Butina production including a phone owned by Erickson was mere happenstance – that was the end of the story.[21]

As the Court ordered, the government should determine if anyone at or working with the Department of Justice destroyed a phone belonging to Erickson, and, if so, it should provide details. Andrade also requests that the Court order the government to ask the FBI and the IRS, as well as the United States Attorney's Office in South Dakota, whether any of them seized a phone from Erickson during its criminal investigation of Erickson. If it did, Andrade requests that he be provided with an image of the phone, as ordered by the Court.

The Government's Position

The government has complied with the Court's discovery order. The government produced the Erickson extractions and explained where they came from, as the Court's order requires. The matter should be closed.

Andrade does not like the government's explanation concerning the Erickson cell phone and asks the Court to order the government to continue investigating whether it ever seized or destroyed a second Erickson phone. Andrade's request is unnecessary and unprecedented. That Andrade wishes the Erickson evidence were different is not grounds to demand an unnecessary and duplicative investigation. The government has already investigated whether an Erickson phone exists, located it, produced it to Andrade, explained where it came from, and explained

---

to Andrade's defense.

[21] The government produced destruction reports indicating that Butina's and Erickson's devices were returned to them or to their lawyers in September 2022 and/or in January 2023, during the same time period that Andrade's lawyers were meeting and conferring with the government and filing Andrade's November 2022 motion to compel production of phones and other materials from Erickson and Butina. *See* FBI-302-011887 to FBI-302-011892. These same destruction reports reflect that unspecified "digital evidence" obtained pursuant to Erickson and Butina's search warrants was destroyed during this time period.

1   that it does not have another Erickson phone.  Andrade seeks a further Court order compelling

2   the government to look for something that does not exist.

3          The government has made clear to Andrade that authorities did not seize a cell phone

4   when they executed a search warrant at Erickson's residence in South Dakota.  The government

5   also explained that devices seized as part of the South Dakota case were returned to Erickson and

6   that the FBI no longer has image copies of the electronic devices seized from Erickson—i.e.,

7   electronic devices such as computers and thumb drives.  That Andrade wishes the government

8   had seized a cell phone from Erickson in South Dakota is not grounds to order a further,

9   unnecessary, and duplicative investigation.

10         Further, the government has made clear to Andrade that the FBI seized Erickson's cell

11   phone at Butina's residence, imaged the phone, and returned it to Erickson's attorney.  The

12   government produced the image of Erickson's phone to Andrade on April 12 as part of a larger

13   production containing numerous electronic devices seized from Butina's residence.  Andrade has

14   the evidence and reports concerning the requested evidence; there is nothing more to be done.

15   Andrade insists that another Erickson cell phone exists and complains about the Erickson cell

16   phone that the FBI actually seized.  Specifically, he complains that Butina may have used the

17   Erickson cell phone and therefore another Erickson cell phone may have existed.  Andrade's

18   insistence is not grounds to order even more investigation.  The FBI seized one Erickson cell

19   phone, the government produced it, and Andrade has it.  The government did not seize a second

20   Erickson cell phone.  The government has complied with the Court's discovery order.  The Court

21   should deny Andrade's request for additional investigation.

22   Andrade's Reply

23         As with Levin, for more than a year, the government ignored discovery requests about

24   Erickson and gave them the back of its hand.  *See, e.g.*, Dkt. #158 at 6 (calling the request

25   "fantastical").  And also as with Levin, when this Court ruled against the government in April,

26   the government stonewalled and did not comply with the Court's Order.  Again repeating its

27   conduct with Levin, after it was pressed to satisfy the Court's Order, the government conjured up

28   a new reason for non-compliance, one that doesn't excuse its conduct and is inconsistent with

what it has been representing for many months.

The government's new excuse – that Mr. Andrade "seeks a further Court order compelling the government to look for something that does not exist" – is wrong because Mr. Andrade is seeking the government's compliance with the Court's April 7 order, which required an inquiry that the government has repeatedly refused to conduct. Its reliance on the fact that it "produced the Erickson extractions and explained where they came from," is no answer to what the government's obligations are as a matter of law and under the Court's April 7 Order, or to the very different representations the government made for the vast majority of time that the phone has been in issue.

Even if this Court had not directed the government to inquire into the phone or cited *Kyles v. Whitley*, the law would have independently required the government to do so. Especially given the government's contradictory reports, Mr. Andrade is "entitled to know the circumstances surrounding the decision to preserve or destroy" Erickson's data, and the government is required to "provide additional information about the policies and protocols governing the preservation or destruction of evidence that were in place at the time of [the] investigation." *Stone*, 2013 WL 4541513 at *7 (E.D. Cal. Aug. 27, 2013), order clarified, No. 12-CR-0072 JCC-GSA, 2013 WL 5969705 (E.D. Cal. Nov. 8, 2013*); see also id.* (finding that the defendant was entitled to information about the FBI's destruction of evidence because it would be "material for impeachment purposes as well as to allow Defendant the opportunity to investigate and evaluate whether a jury instruction would be warranted.") (citing *U.S. v. Giglio v. United States,* 405 U.S. 150, 154 (1972))*; U.S. v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013); *U.S. v. Laurent*, 607 F.3d 895 (9th Cir. 2010)). It is not enough for the government to state that it has no more information about Erickson's phone. It must provide information about "what steps it took to identify and locate the requested information." *Stone*, 2013 WL 4541513 at *9. The "bare assertion [that the FBI has no existing records] is inadequate." *Id.* That the Court's Order directed the government to its duty to inquire underscores the extent to which the government is refusing to fulfill its obligation.

///

In addition to being wrong on the law, the government's characterization of its purported compliance with the April 7 order – "[t]he FBI seized one Erickson cell phone, the government produced it, and Andrade has it" – inaccurately portrays what has occurred since Mr. Andrade requested an image of Erickson's phone more than a year ago, and omits any reference to, let alone explanation of, its many contradictory statements. Mr. Andrade requested materials relating to Erickson in early March 2022 and specifically requested Erickson's phone on July 15, 2022. After declining to produce the requested documents because Erickson is "not relevant,"[22] because Mr. Andrade is a conspiracy theorist,[23] and because Mr. Andrade's interest in Erickson is "based on a fantastical misreading of a few stray lines of notes," the government represented in January 2023 that "Erickson's devices were returned to him in July 2020 and that Cellebrite files were deleted when the case was closed in March 2022 as part of standard FBI procedure, so no Cellebrite files exist."[24] Weeks later, it said that maybe the phone had not been destroyed after all (but the government was not sure).[25] This means that the government returned Erickson's devices to him *a month after indicting Mr. Andrade*, even though the prosecutorial team was well aware of the connection between Erickson's and Andrade's cases, having regularly cross-referenced the Erickson and Andrade cases on 302 reports, having seized from Butina's home in July 2018 a 20-page document about AML Bitcoin with Erickson's extensive handwritten notes

---

[22] *See, e.g.,* Letter from AUSA Dawson to defense counsel (Aug. 9, 2022) ("the government does not believe that the investigation into Paul Erikson is relevant to this case"); Gov't Supp. Brief (Dkt. #158 at 6) (Erickson's case has "nothing to do with cryptocurrency, with AML Bitcoin, or with Marcus Andrade.").

[23] United States' Opp. to Andrade's Motion to Compel (Dkt. #124 at 1-2) ("[C]onspiratorial speculation is not a proper basis for discovery in a criminal case.").

[24] Email/Letter from AUSA Weingarten to defense counsel (Jan. 25, 2023). When defense counsel asked the prosecutors in a March 8, 2023 meet-and-confer whether there were any extraction reports or 302s related to the destruction of Erickson's device, the government responded that there was no report – only an entry in a database indicating that the phone was destroyed in March 2022. Mr. Andrade's counsel asked if the government would provide a screenshot of that information, but the government refused.

[25] Gov't. Supp. Brief (Dkt. #158 at 6) ("The government previously informed the defense that the extractions themselves were destroyed in March 2022, but further investigation has revealed simply that March 2022 is when the casefile was formally closed. The team has not located any records regarding when those extractions were destroyed.").

on it. *See* 1D-39 Recording of Search of Abramoff's home (Sept. 13, 2018), and having received a discovery request from Mr. Andrade relating to Erickson.

Further contradicting its prior representations, the government produced chain of custody and destruction reports on June 1, 2023, reporting that Erickson's devices were returned to his lawyer on September 16, 2022, and that unspecified digital evidence was destroyed on September 20, 2022.  FBI-302-011887-89.  Not only is this information irreconcilable with what the government told Mr. Andrade in January (that the phones were returned in July 2020), but placing the destruction and return of Erickson's devices in September 2022 would mean that it took place while Mr. Andrade was actively engaged in meet-and-confer sessions about Erickson-related discovery that resulted in Mr. Andrade filing his motion to compel in November 2022.

Even if it turns out to be true that, as the government now claims, Erickson's devices that the government lost or destroyed were devices other than a phone, this would not help the government or let it off the hook for providing an explanation for the loss or destruction.  The government has a "duty to preserve discoverable evidence," *Grammatikos*, 633 F.2d at 1019. Based on the Court's April 7 Order, there can be no dispute that Erickson's devices were discoverable evidence.  The government therefore should have preserved any other devices belonging to Erickson, and based on the authorities above it should now be required to explain how and why it did not do so.

DATED:  September 15, 2023

**KING & SPALDING LLP**

*/s/ Michael J. Shepard*
MICHAEL J. SHEPARD
KERRIE C. DENT

CINDY A. DIAMOND (SBN 124995)
*cindy@cadiamond.com*
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:      408-981-6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE


*/s/ Christiaan Highsmith*
ANDREW F. DAWSON
ROSS WEINGARTEN
CHRISTIAAN HIGHSMITH
Assistant United States Attorneys

ISMAIL J. RAMSEY
United States Attorney