ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7019
    FAX: (415) 436-7234
    christiaan.highsmith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MARCUS ANDRADE,<br><br>    Defendant. | CASE NO. CR 20-249 RS (LB)<br><br>UNITED STATES' OPPOSITION TO DEFENDANT ANDRADE'S MOTION TO COMPEL PHONE NOT IN GOVERNMENT'S POSSESSION [ECF NOS. 212 & 215]<br><br>Hearing Date; October 26, 2023<br>Court: Hon. Laurel Beeler, Courtroom B, 15th Fl. |

Defendant Rowland Marcus Andrade moves the Court to compel the United States to produce material from Alexander Levin's cell phone outside the scope of the search warrant authorizing the search and seizure of material from the Levin cell phone and therefore not in the government's lawful possession. Joint Status Report, Dkt. 212; Def.'s Supp. Br. in Support of Request for Levin's Phone, Dkt. 215.[1] Andrade's motion is contrary to law and should be denied.

//

---

[1] The defense has moved to compel production of a complete image of the Levin phone not in the government's possession via two filings—the parties' joint status report regarding discovery, Dkt. 212, and the defendant's supplemental brief, Dkt. 215. Although neither is titled as a motion to compel, the defendant is moving to compel production and the government therefore refers to Andrade's two filings as a motion to compel.

## I. Legal Standard

"As a general rule, in searches made pursuant to warrants[,] only the specifically enumerated items may be seized." *United States v. Balwani*, 18-cr-258 EJD, Order, at 8 (N.D. Cal. Apr. 8, 2022) (Dkt. 1393) (quoting *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982)). In the age of computers and voluminous electronic discovery, the Ninth Circuit has recognized "[t]he legitimate need to scoop up large quantities of data, and sift through it carefully," and that "over-seizing data is an inherent part of the electronic search process." *Id.* (quoting *United States v. Comprehensive Drug Testing, Inc.* ("*CDT III*"), 621 F.3d 1162, 1176-77 (9th Cir. 2010) (per curium), and citing *United States v. Schesso*, 730 F.3d 1040, 1046 n.3 (9th Cir. 2013).

As Judge Davila emphasized in *Balwani*, "[t]he Ninth Circuit has warned … that '[t]he process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect." *Id.* (quoting *CDT III*, 621 F.3d at 1177); *id.* (quoting *CDT III*, 621 F.3d at 1179 (Kozinski, J., concurring) ("The process of sorting, segregating, decoding and otherwise separating seizable data (as defined by the warrant) from all other data should also be designed to achieve that purpose and that purpose only.")). "Once the data has been segregated (and, if necessary, redacted), the government agents involved in the investigation should be allowed to examine only the information covered by the terms of the warrant." *Id.* at 9 (quoting *CDT III*, 621 F.3d at 1179 (Kozinski, J., concurring)).

Therefore, where "the Government never had a lawful right to maintain possession, custody, or control over the non-responsive [electronic data], it could not have been under an obligation to review or turn over that data to the defense as potential *Brady* material." *Id.* at 8 (internal citations and quotations omitted). Likewise, the government cannot produce material under Rule 16 where it "did not have lawful possession, custody, or control of it." *Id.* at 9.

## II. Factual Background

In March 2020, authorities in a different district—SDNY—obtained a search warrant for Alexander Levin's cell phone as part of an entirely different investigation. Pursuant to the search warrant, that district seized search hits responsive to Attachment B of that district's warrant.

On June 22, 2020, a grand jury in this district issued the indictment in this case following an

entirely separate investigation. Dkt. 1.

On July 15, 2022, Andrade requested that the government produce Levin's mobile device and any files extracted from it.[2] Agents searched the Levin case file for any mention of "AML Bitcoin," "Andrade", and "NAC Foundation." The search resulted in no mention of any of the terms.

On November 28, 2022, Andrade filed a motion to compel production of, among many other items, Levin's phone. Dkt. 120, at 8:10-11. The government opposed the motion. Dkt. 124. On December 27, 2022, Andrade's counsel requested messages between Levin's phone and Jack Abramoff. The messages were contained on Abramoff's cell phone and the government produced them. But the government went even further. On January 25, 2023, as part of an extensive meet-and-confer process with Andrade's counsel regarding outstanding discovery issues, the government agreed to search for the terms "Andrade", "AML Bitcoin", and "NAC Foundation" on Levin's phone. On February 9, 2023, agents in SDNY subsequently ran those terms against Levin's phone, including material from the Levin phone outside the scope of the SDNY search warrant. None of the terms hit against material in the Levin phone. The same day, February 9, 2023, government counsel informed Andrade's counsel that the terms did not hit against Levin's phone. Nonetheless, Andrade continued to demand production of the Levin phone.

On March 13, 2023, the government agreed to produce extractions from the Levin phone to Andrade under an attorneys'-eyes-only ("AEO") protective order.[3] Andrade replied via email the same day: With the hope that you will reconsider, we will plan to take the issue up with Judge Beeler when we file our supplemental brief…. We are not going to address whether you will produce the extractions from Levin's devices because we assume you are planning to do so and that the only issue is whether an attorney's-eyes-only protective order will be required."[4] Following additional briefing, on April 7, 2023, the Court ordered production of the Levin phone without an AEO protective order. Discovery Order, Dkt. 165. On May 24, 2023, the government produced four spreadsheets containing extractions from the Levin phone responsive to the SDNY search warrant.

---

[2] Letter from King & Spalding to the Government (July 15, 2022).

[3] Email from the Government to King & Spalding (March 13, 2023).

[4] Email from King & Spalding to the Government (March 13, 2023).

On May 26, 2023, the parties filed a joint status report. Dkt. 178. The government clearly stated that it had produced all non-privileged extractions from Levin's iPhone and that the government is not in possession of any additional extractions from Levin's iPhone. Dkt. 178, at 6. Andrade wrote that the government's production of four spreadsheets from Levin's phone did not comply with the Court's April 7 Discovery Order. *Id.* On September 15, 2023, the parties filed another status report, which included the parties' positions concerning production of extractions from the Levin phone. Dkt. 212. On September 26, 2023, Andrade filed a Supplemental Brief in Support of Request for Levin's Phone. Dkt. 215.

### III.  Argument

#### A.  Andrade is Only Entitled to Material from Levin's Phone Responsive to the Government's Search Warrant

The law in this district and the Ninth Circuit is clear—the government cannot produce to Andrade material from the Levin phone outside the scope of the Levin search warrant. *See United States v. Balwani*, 18-cr-258 EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022) (Dkt. 1393) ("because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive [electronic data], it could not have been under an obligation to review or turn over that data to the defense as potential *Brady* material"); *id.* at 8 ("in searches made pursuant to warrants[,] only the specifically enumerated items may be seized") (citing *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982)). The government produced to Andrade material from the Levin phone responsive to the government's search warrant. Andrade's motion to compel material from the Levin phone outside the scope of the search warrant must be denied.

*United States v. Balwani* is directly on-point and controlling. In *Balwani*, the Court rejected the defendant's claims that the government had violated *Brady* and Federal Rule of Criminal Procedure 16 and denied the defendant's motion to dismiss where the government contacted defense counsel one day before jury selection to inform counsel that approximately 21.4 terabytes (TB) of data collected during execution of a search warrant and subjected to a filter review were available for the defense. *Id.* at 5. Fifteen months earlier, the government had executed a search warrant at the residence of a non-

defendant third party, V.C., seized a large quantity of electronic data, and assigned a filter team to ensure the case team did not receive privileged material. *Id.* at 2. The filter team determined the seized devices included approximately 772 gigabytes (GB) of data within the date range of identified in Attachment B to the search warrant, which permitted seizure of five categories of records and materials from a limited time period and 21 TB that did not. *Id.*

The day before jury selection, and after a long and contentious filter review process, the government filter team informed defense counsel that all 21.4 TB, including the 772 GB responsive to the search warrant date range, were available, requested hard drives from the defense to load the material, and informed the defense that the loading all 21.4 TB would take approximately three weeks. *Id.* at 5. Balwani moved to dismiss the indictment, alleging the government violated *Brady* and Rule 16.

The Court denied Balwani's motion, ruling that the government did not lawfully control any of the material that fell outside what the search warrant authorized the government to seize, i.e., any material outside timeframe provided in Attachment B of the search warrant. *Id.* at 8-9. Because the government never had a lawful right to maintain possession, custody, or control over material outside what the search warrant authorized, the government did not violate *Brady* with regard to the non-responsive material outside what the search warrant authorized the government to retain. *Id.* at 9. Next, the Court ruled that no Rule 16 violation occurred because, as discussed in connection with the defendant's *Brady* claim, "the [g]overnment did not have lawful possession, custody, or control" of the material that did not fall within the scope of the search warrant. *Id.*

*Balwani* controls here. The government only has "lawful possession, custody, or control" of material in the Levin phone responsive to Attachment B of the Levin warrant, and the government has already produced that material. To the extent Andrade seeks material from the Levin phone beyond the scope of the Levin search warrant, the government does not have "lawful possession, custody, or control" of such material and therefore cannot produce it to Andrade. *Id.* at 8-10 ("because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive [material seized during search warrant execution], it could not have been under an obligation to review or turn over that data to the defense as potential *Brady* material.").[5]

---

[5] At the tail end of his supplemental brief, Andrade states that the government "wrongly assumes

## B. The Government is Not Stonewalling

Andrade continues to press for material he is not entitled to receive, and he accuses the government of stonewalling. Dkt. 215, at 2-3. In fact, the opposite is true. The government has made repeated efforts to accommodate Andrade's request for Levin material potentially relevant to Andrade. First, the government searched the Levin case file. Agents, however, did not find a single reference to "Andrade", "AML Bitcoin," or "NAC Foundation." Second, at Andrade's request, the government produced all messages from Jack Abramoff's cell phone between Abramoff and Levin. Third, in an effort to accommodate Andrade's request for relevant information from the Levin phone, New York agents searched the entire Levin phone—including more than just material responsive to the SDNY search warrant but not including potentially privileged material—for references to "Andrade", "AML Bitcoin," or "NAC Foundation."[6] There were no hits.

Then, in March 2023, agents assigned to the Andrade investigation obtained extractions from the Levin phone responsive to the SDNY search warrant and searched those spreadsheets for references to "Andrade," "Marcus," "NAC," "Bitcoin," "AML," "Landfair," "Abramo," "crypto," "Butina," "Erickson," and "investment." Bates No. FBI-302-011731 (FBI 302, dated March 22, 2023). Again, agents found no search hits. And on May 24, 2023, pursuant to the Court's April 7, 2023 Discovery Order, the government produced the Levin phone extractions—i.e., material responsive to the SDNY search warrant—to Andrade.

The government has been clear with Andrade that it would not produce material from the Levin phone outside the scope of the search warrant that authorized the government to seize specific items from Levin's phone because such material is not lawfully in the government's possession. *See, e.g.*, Joint Status Report, at 6 (Dkt. 178) (May 26, 2023) (explaining the government's view that it had produced non-privileged extractions in its possession and Andrade's view that the government had not

---

that Mr. Andrade had access to that warrant," presumably a reference to the SDNY Levin warrant. Dkt. 215, at 8. Andrade is wrong. The government assumes that Andrade does not have access to the SDNY warrant because it is irrelevant to Andrade's case and unresponsive to the Court's April 7 Discovery Order.

[6] The government misspoke in the Joint Status Report when it said that the government ran the three search terms only against the Levin phone material responsive to the SDNY search warrant. Dkt. 212, at 4:15-16. In fact, these three search terms were run against the entire Levin phone (except for potentially privileged material). Government counsel apologizes to the Court for this misstatement.

1   produced the full Levin device).  This is not stonewalling.  The government was attempting a reasonable
2   accommodation of defendant's requests for discovery, complying with the Court's April 7 Discovery
3   Order, and complying with the law concerning production of material outside the scope of SDNY's
4   search warrant.

### C. The Government has not Waived its Ability to Argue that it Must Comply with Fourth Amendment Law

Andrade asks the Court to order the government to violate the law.  He contends—incorrectly—that the government has waived its ability to argue that it cannot produce material not in its lawful possession.  Andrade's argument must be denied.

Andrade contends that the government's May 24 production of extractions from the Levin phone responsive to the SDNY search warrant did not comply with the Court's April 7 Discovery Order and that the government should have sought reconsideration of the Court's Order.  This ignores the facts and misstates the relevant timeline.  In November 2022, Andrade moved to compel production of the Levin phone.  Following additional briefing and numerous meet-and-confer sessions, the government, in a March 13, 2023 email, agreed to produce the Levin device extractions pursuant to an AEO order.  Andrade immediately rejected the government's proposal and filed a supplemental brief assuming the government would produce the Levin device extractions and only litigating the AEO issue.[7]  Dkt. 153, at 8-9.  Andrade did not argue that the government should produce material from the Levin phone outside the SDNY warrant and therefore outside its lawful possession.  Nor did the Court address or even contemplate that issue.  At issue was whether the extractions from the Levin phone—the material lawfully in the government's possession—should be produced with an AEO designation.  On April 7 the Court ordered production without an AEO designation and on May 24 the government produced the Levin extractions without an AEO designation.

Andrade then raised a new issue.  He asked the government to make an additional production, which included material outside the scope of the SDNY warrant and therefore not in the government's lawful possession.  Joint Status Report, Dkt. 178, at 6.

---

[7] Email from King & Spalding Government Counsel (March 13, 2023).

USA OPP. TO MOT. TO COMPEL           7
CR 20-249 RS (LB)

Regardless, given the circumstances of this case and the posture of the discovery disputes in this case, it is entirely unreasonable to claim that the government has waived its ability to argue that it must adhere to the law—that it must only produce to the Andrade what the law entitles the government to produce.

### D. Andrade is Not Entitled to Material from the Levin Device Outside the Lawful Possession of the Government

Andrade makes a series of improper claims that he is entitled to Levin device material outside the scope of the SDNY warrant and therefore not in the government's lawful possession. Dkt. 215, at 3-6. First, Andrade contends that if the government conducted a February 9, 2023 search of the Levin device beyond Attachment B of the SDNY warrant—because the government searched the Levin device for terms related to Andrade beyond what was authorized by the search warrant—then Andrade should be given complete and unfettered access to the entire Levin phone even though it is not in the government's lawful possession. *Id.* at 3-4. Andrade cites no law for this. To the extent the government searched the Levin device beyond the parameters authorized by the search warrant, Levin—not Andrade—is in a position to challenge the search. Andrade has no standing to challenge the parameters of the search of Levin's phone. And any potential overbroad search by the government does not entitle Andrade to material the government is not authorized to search and seize.

In fact, Andrade's argument is precluded by *Balwani*. Here, as in *Balwani*, the parties' dispute centers on "whether the [non-responsive electronic material collected during execution of the search warrant] contains potentially material *Brady* information." *Balwani*, Dkt. 1393, at 6:7. Andrade, like Balwani, contends that Levin's phone potentially contains Rule 16 or *Brady* material and therefore that the government must produce the entire Levin phone. "Production of *Brady* material, however, presupposes that the Government is in lawful possession, custody, or control of that material in the first instance." *Id.* at 8:2-3. And here, as in *Balwani*, where material on the Levin phone falls outside the scope of the warrant, the Government "was not authorized to seize it, much less retain it, review it, or offer it up to [Andrade]." *Id.* at 9:1. Andrade makes much of the government's potentially overbroad February 9, 2023 search of Levin's phone for three search terms relevant to Andrade. This was a good

faith effort by the government to search for potentially relevant material in an effort to accommodate Andrade as part of a long-standing, ongoing discovery process. The government did something analogous in *Balwani* when it offered to produce to Balwani and Holmes material seized from V.C.'s residence that was outside the scope of the search warrant. Judge Davila did not, as Andrade attempts to do here, paint the government's efforts as an ominous effort to subvert the defense. Instead, Judge Davila correctly characterized the government's efforts in *Balwani* and in this case: "The Government's commitment to fulfilling its discovery obligations is commendable, but it appears that commitment also blinded the Government to the threshold question of whether it should—or even could—have properly exercised possession, custody, or control over the non-responsive [material] in the first place." *Id.* at 9:8-11. Here, as in *Balwani*, the fact that the government may have exceeded what was permitted by the search warrant—by searching portions of the Levin phone beyond what was responsive to the search warrant—does not change the fact that the government is not entitled to produce material from the Levin phone outside the scope of the SDNY warrant to Andrade. *Id.*

Andrade's reliance on *United States v. W.R. Grace*, 401 F. Supp. 2d 1093 (D. Mont. 2005), is misplaced. *W.R. Grace* involved material in the government's lawful possession. *Id.* at 1099-1100. There, the Court recognized that there was no statutory or legal impediment to the prosecution's access to the medical data at issue in that case. *Id.* The Court in *W.R. Grace* recognized that the issue was "what the prosecution appears able to obtain, regardless of attempt." *Id.* at 1100. This case, on the other hand, involves material not in the government's lawful possession—in other words, what the government is not authorized to obtain. Unlike in *W.R. Grace*, the government here is not entitled to access or use the materials the defendant seeks. Andrade's motion to compel must be denied.

Finally, Andrade proposes that this Court issue a number of creative—and improper—court orders designed to circumvent the fact that the government does not lawfully possess Levin phone material outside the scope of the SDNY search warrant and therefore cannot produce that non-responsive Levin phone material to Andrade. First, Andrade suggests that this Court order SDNY to return the Levin phone to Levin "with advance notice and cooperation with Mr. Andrade." Dkt. 215, at 5:6-7. Andrade suggests that he then would serve a subpoena on Levin or his counsel to obtain the full Levin phone. Andrade cites no law in support of his request for this Court Order. Nonetheless, *Balwani*

is clear that the government cannot produce to the defense material that it is not entitled to obtain via a search warrant. Balwani, Dkt. 1393, at 9 ("because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive [search warrant returns], it could not have been under an obligation to review or turn over that data to the defense"). Andrade's proposal to evade the law is improper.

Further, Andrade asks this Court to insert itself into issues surrounding SDNY's compliance with search warrant protocols in the Southern District of New York—issues that are between that office and courts in that district and between SDNY and Levin. Andrade has no standing to ask this Court to issue orders to SDNY concerning an entirely different case and an entirely different individual's cell phone.

Second, Andrade asks this Court to order SDNY to turn over the entire Levin phone to this Court. This request is unprecedented, inappropriate, and unlawful. Again, Andrade cites no law in support of this proposal. Again, Andrade asks this Court to skirt the law, discussed in detail above, precluding the production of Levin phone material outside the scope of the SDNY warrant to Andrade. But Andrade asks the Court for more—he asks the Court to communicate with Levin, who is not a party in this case, to inform him when the Court is in possession of his cell phone. This suggestion is improper and should be denied.

Third, Andrade suggests that this Court order the government to obtain Levin's consent to search and seize his entire cell phone, including the portions not seized pursuant to the search warrant. Dkt. 215, at 5:13-14. Andrade cites no law to support what is clearly an improper court order. Levin stands in very different shoes than Abramoff. Levin is a third-party subjected to a search warrant in another district. Abramoff is a cooperating co-defendant in the Andrade case arising out of the Andrade investigation in this district. Nonetheless, the Court could not order the government to obtain Abramoff's consent to search his cell phone and the Court certainly cannot order the government to obtain Levin's consent to search and seize his entire cell phone. This improper request must also be denied.

//
//
//

**E. Derivative Use Caselaw Does Not Permit Production to Andrade of the Levin Phone Material Outside the Scope of the Search Warrant and Not in the Government's Lawful Possession**

Andrade next argues that because the government might be able to use unlawfully seized material for derivative purposes, the Court should order production of the entire Levin phone—including material not lawfully in the government's possession—to Andrade. Dkt. 215, at 5-6. This argument is contrary to law and would result in absurd outcomes.

Specifically, Andrade argues that because the government can use unlawfully seized evidence during grand jury questioning, during impeachment as part of cross examination, and against an automobile passenger when obtained in violation of the Fourth Amendment during an automobile search, the Court should order the government to violate the law and produce to Andrade material from the Levin phone outside the scope of the search warrant. Dkt. 215, at 6 (citing *United States v. Calandra*, 414 U.S. 338, 354 (1974); *United States v. Havens*, 446 U.S. 620, 627-28 (1980); *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).

None of the cases Andrade cites are on point. None of the cases Andrade cites involve evidence collected from a cell phone, a computer, or an electronic device pursuant to a search warrant. And none of the cases Andrade cites addresses the issue of how to deal with extensive electronic material collected pursuant to a search warrant that falls outside the scope of the search warrant. *Balwani* is applicable and binding here because it dealt with nearly the same situation and issue that arises in this case: the "tension between the Government's *Brady* obligations and its Fourth Amendment limitations." Dkt. 1393, at 8-9. The holding in *Balwani* precludes Andrade's tenuous derivative use argument. Here, as in *Balwani*, the government was not entitled to seize, retain, review, or offer up to Andrade data from the Levin phone outside the scope of SDNY's search warrant. Balwani, Dkt. 1393, at 8-9. Accordingly, the government is not authorized to review or turn over that non-responsive data as potential *Brady* or Rule 16 material. *Id.* at 9.

Setting aside the fact that the law precludes production of the non-responsive Levin material to Andrade, ruling as Andrade suggests would lead to an absurd result. Following Andrade's logic, any time the government seized computers, cell phone, mobile devices, and other electronics pursuant to a search warrant, the government could retain and search material outside the scope of the search warrant

if the non-responsive material might contain *Brady* or Rule 16 material for a defendant in a separate case. Given the volume of electronic discovery collected in the digital age, this would result in innumerable Fourth Amendment violations and the search and seizure of vast amounts of data never authorized for search or seizure by a warrant. Andrade seemingly asks to the Court to ignore the Fourth Amendment and order the government to engage in the unconstitutional searches that troubled the Ninth Circuit in *CDT III*, 621 F.3d 1162, 1176-79. Andrade's request must be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Andrade's motion to compel material from the Levin device not in the government's lawful possession.

DATED: October 3, 2023                    Respectfully submitted,

                                            ISMAIL J. RAMSEY
                                            United States Attorney

                                            ____/s/_____
                                            CHRISTIAAN HIGHSMITH
                                            Assistant United States Attorney