MICHAEL J. SHEPARD (SBN 91281)
  mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
  kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:     +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
  cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:     +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>    Defendant. | Case No. 3:2-cr-00249-RS-LBx<br><br>**ANDRADE'S REPLY BRIEF IN SUPPORT OF REQUEST FOR PRODUCTION OF LEVIN'S DEVICES**<br><br>Date:     October 26, 2023<br>Time:    9:30 a.m.<br>Judge:   Magistrate Laurel Beeler |

# TABLE OF CONTENTS

Page

I.   FACTUAL CORRECTIONS ................................................................................................ 2

II.  ARGUMENT .................................................................................................................... 5

      A.    The government has waived its objection ................................................................ 6

      B.    The government's argument is precluded by its own misconduct ........................... 7

      C.    The government should not be allowed to hold a device it claims not to lawfully possess, and thereby deprive Mr. Andrade of access to it .......................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
    373 U.S. 83 (1963)..................................................................................................5, 9

*Kyles v. Whitley*,
    514 U.S. 419 (1995)................................................................................................5, 10

**Statutes**

Stored Communications Act ...................................................................................................5

In eleven pages of additional briefing, the government amplifies its prior argument but does not grapple with the flaws in it that Mr. Andrade identified, and it gives the Court almost no help in resolving the challenging issues at the center of this motion.

- The government insists that it is not in lawful possession of Levin's device, but never explains why it can disclaim lawful possession while nonetheless continuing to possess the device, especially when its continued possession deprives Mr. Andrade of access to the information on the device that the Court found to be material to preparing his defense.

- The government insists that it was ordered to produce only four spreadsheets of extractions from Levin's device and therefore did not waive its objection to producing the device, but never addresses the fact that Mr. Andrade's request was for Levin's devices rather than spreadsheets, and that his motion asked for devices, not for spreadsheets. Andrade's Supp. Brief, Dkt. #215 at 2:22-25. Even more important, the government never addresses this Court's April 7 Order on Mr. Andrade's Motion, which unambiguously required "production *of the Levin device* without an AEO designation," or the Court's admonition to the government – not once but twice – during the argument on April 6 that it should "give over *the device.*" Dkt. #167 at 16 (emphases added).

- The government attempts to pass off as merely misspeaking its now admittedly false representation to the Court in the September 15, 2023 Joint Status Conference Statement, Dkt. #212 at 4:15-16, in which it asserted that it had not run search terms on the portion of Levin's phone that it says was outside of the search warrant,[1] and then compounds its prior falsity with another. In an attempt to dispute that its running of those terms on the

---

[1] Misspeaking is a charitable description. The government "misspoke" not off the cuff but as part of a carefully written brief that followed a meet-and-confer on May 24, and after being reminded as recently as May 26 of its statement on February 9 that the government had "just received word that agents *ran the following search terms through the seized devices from Levin.*" May 26, 2023 Joint Status Report, Dkt. # 178 at 6:21-23. It "misspoke" as a central piece of its argument that it has only limited access to Levin's phone – and therefore that it had run search terms only on the part of the phone it says it was authorized to search. It "misspoke" again when it accused *Mr. Andrade* of "paint[ing] a misleading picture," and it "misspoke" a third time when it wrote that Mr. Andrade was "mistakenly believ[ing] the government ran the search terms against the entire Levin phone." Sept. 15, 2023 Joint Status (Dkt. #212 at 4:7-26). However it tries to characterize its false statements, now that Mr. Andrade has called out the falsity, the government admits that it ran the search terms "against Levin's phone, *including material from the Levin phone outside the scope of the SDNY search warrant*." Dkt. #212 at 3:12-13 (emphasis added).

1

entire device was not misconduct under the *Balwani* case on which it relies, it claims that it ran those terms "in an effort to accommodate Andrade." Put gently, this claim strains credulity. Mr. Andrade did not request the searches. He was not consulted before they were run. He had repeatedly *objected* both to the use of any search terms as a substitute for producing devices, and to using the exact same crabbed search terms the government ran on the device – *including in a letter on January 27, 2023, less than two weeks before the government ran search terms and used the crabbed ones anyway*.[2] If there could be any doubt about whether the searches were designed to "accommodate Mr. Andrade," the government then used the results of the searches to which Mr. Andrade had repeatedly and specifically objected *against* Mr. Andrade's argument seeking the device.

For these and other reasons set forth below, the government has no good answer for why it is continuing to block access to a phone it contends it does not lawfully possess, let alone for why it is not working with Mr. Andrade in the interests of justice to facilitate access to information the Court has found to be material to the preparation of his defense – issues the Court need not even reach because of the government's waiver and its own self-interested misconduct.

I.  **Factual Corrections**

This Court is well familiar with the basic facts, but the government's "factual background" section contains several incorrect or misleading statements that are material to its argument and therefore require correction.[3]

- The government writes as if it went to great pains to accommodate Mr. Andrade's July 15, 2022 request for Mr. Levin's phone. *See, e.g.*, Gov't Opp. Dkt. #220 at 3:9 ("but the government went even further"). It did the opposite.
    - First, the government notes that in December, 2022 – *six months* after the request for Levin's phone was made – Mr. Andrade requested messages between Levin and Abramoff from Abramoff's phone, and the government produced them. But

---

[2] Letter from M. Shepard to AUSA Weingarten, January 27, 2023, at 1-2.

[3] Without devoting too much attention to titles, we briefly note the government's effort to retitle Mr. Andrade's Brief, seeking to call it a Motion to Compel. This is not an appropriate title because Mr. Andrade already filed and won a motion to compel the production of Mr. Levin's phone. *See* April 7 Order (Dkt. 165 at 13:14-15).

       compliance with this request was no favor to Mr. Andrade, and it was not part of a production of Levin's phone, which the government was continuing to resist and which would have far more of Levin's communications; rather, it was a required correction of the government's failure to make a full production of *Abramoff's* phone, which Mr. Andrade requested on March 3, 2022, and the government purportedly produced in full in May, 2022.  Mr. Andrade discovered -- by reviewing an FBI-302 summarizing messages from Abramoff's phone -- that the government's production was incomplete, and omitted information material to the preparation of the defense, including exculpatory messages with Levin. The government gets no credit for fixing – at best only in part – a production in which it erroneously shorted Mr. Andrade, an error that Mr. Andrade was left to discover on his own.

- o Second, the government strains to make it appear that its running of search terms was somehow "part of an extensive meet-and-confer process with Andrade's counsel," 3:10-11, and was "in an effort to accommodate Andrade as part of a long-standing, ongoing discovery process." 9:1-2.  As set forth more fully above, nothing could be farther from the truth.  Prior to the government's running search terms on Levin's device, Mr. Andrade had repeatedly objected to using search terms as a substitute for the data he requested, and specifically to the three names the government ran, which did not even include "Marcus," the name that he is most commonly called. The Opposition asserts that "the government *agreed* to search" for three terms, 3:10-11, as if this was requested by or at least agreed to by Mr. Andrade.  It was not.[4]

- Omitting entirely that Mr. Andrade's discovery letter of July 15, 2022, and his Motion to Compel of November 28, 2022 Dkt. #120 at 8) asked for the devices, and for data from

---

[4] The government's letter following the January 25, 2023 meet-and-confer referenced in the opposition does not claim that the searches were run as part of any agreement; rather, it announces that "we have requested that agents on that case run the same three search terms ("Andrade," "AML Bitcoin," and "NAC Foundation") on the devices." That these crabbed searches were run for the forensic benefit of the government, and not to benefit Mr. Andrade, is confirmed by the fact that the government trumpeted the results in its arguments to the Court.

the devices (Levin's iPhone and iPad),[5] and noting only in passing what the Court wrote in its order and stated orally twice – that the government should "give over *the device*"[6] – the government plucks statements from an email exchange on March 13, 2023 to try to make it appear that the parties were discussing only the production of extractions from the devices and not the devices as a whole.  The context of this email exchange is that in response to repeated requests for Levin's devices, the government offered to produce extractions, but only subject to an attorneys-eyes-only provision, to which Mr. Andrade objected.  In the passage cited in the Opposition, Mr. Andrade wrote to confirm that the extractions would be produced and the AEO provision would be argued with the Court.  There is nothing in this statement that withdrew Mr. Andrade's request for the devices.  In any event, Mr. Andrade's prior and subsequent briefing on his Motion to Compel, filed on November 28, 2022 (Dkt. #120),[7] left no doubt that, based on *Brady* and Rule 16,[8] he was always also seeking the devices, not just partial extractions, and the oral argument did the same.[9]  The same is true of the follow up meet-and-confer on April 24, in which Mr. Andrade asked "when will we see the devices?"

---

[5] Mr. Andrade requested Levin's iPhone and his iPad, and the Court referenced Levin's "devices" during the April 6 hearing, and at the beginning of its April 7 Order. Dkt. #165 at 2:5-6 ("Mr. Andrade moved to compel . . . images of Levin's devices") but refers to the singular Levin "device" later in the April 7 Order, Dkt. #165 at 13:14-15 ("The court orders . . . production of the Levin device without an AEO designation.").

[6] Transcript of April 6, 2023 Hearing, Dkt. #167 at 16:19-21.

[7] *See* Motion to Compel, Dkt. #120 at 10:4-8 ("Even the stricter standard for discovery under *Brady* should be interpreted liberally on the side of disclosure. *See Kyles v. Whitley*, 514 U.S. 419, 440 (1995); United States Attorney's Manual, Section 9-5.000 et seq.") and 8:9-11 ("Specifically, the defense has asked for. . . copies of his iPhone and iPad that were seized by the government").

[8] *See, e.g.*, Mr. Andrade's opening brief, Dkt. #215 at 13-20 ("The rationale for allowing Mr. Andrade to use this evidence – giving a criminal defendant access to material that the government possesses, that the defendant cannot otherwise obtain under the Stored Communications Act, and that is likely exculpatory and has been ruled material to the preparation of his defense – is more compelling than the rationales on which the government has successfully relied. *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87-88 (1963) (withholding exculpatory evidence "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice.").

[9] At the time of the March 13 emails, the government had not revealed that what it meant by "extractions" consisted only of four spreadsheets.  That fact did not become evident until six weeks after the April 7 discovery order requiring the government to produce the devices.  Pursuant to the Court's May 19 Order, Dkt. #177, the parties met and conferred with defense counsel on May 24, the government produced the four spreadsheets on May 25, and then the parties submitted a joint status report on May 26 concerning the production of discovery pursuant to the April 7 discovery order.  The government stated in the May 26 joint status report that it was "not in possession of any additional extractions from Levin's iPhone or from any other Levin device."  It did not mention that additional extractions would be outside the scope of the search warrant or that it could only produce what it was lawfully entitled to possess.

- Attempting to dispute that it has been stonewalling, the government claims that it "has been clear with Andrade that it would not produce material from the Levin phone outside the scope of the search warrant." Gov't Opp., Dkt. #220 at 6:19-20. To the contrary, the argument that the government claims "has been clear" was not articulated until long after all the briefing and the Court's April 7 ruling, not to mention several months of non-compliance thereafter. Until a June 9, 2023 email from the government to Mr. Andrade's counsel, the government made no mention of the scope of the search warrant to Mr. Andrade or to the Court in any of its many filings or the many meet-and-confers of the parties. Nor did it make that argument to the Court on April 6, when the Motion to Compel was argued – even after the Court directed the government to "give over the device" and specifically asked, "tell me why I am wrong." In fact, far from contesting Mr. Andrade's request based on limitations in the search warrant, the government did not even produce the warrant -- and still has not done so, despite the Court's ordering its production. To make matters worse, the government offers no basis for why it was not stonewalling when it had not produced the device before it raised this issue on May 26, which was six weeks after the Court ordered it to produce the phone.[10]

## II.  Argument

This Court is presented with three questions: (1) when the government possesses a device that it claims it does not possess lawfully,[11] but nonetheless has used for its own forensic benefit, can it continue to hold onto that device and thereby preclude the defendant's access to it, especially when the Court has already found the device to be material to the preparation of the defense, or should the government in the interests of justice work with the defendant to allow him lawful access; (2) has the government waived its objection to producing the devices by failing to argue that it did not lawfully possess the device, and then ignoring for months the

---

[10] This delay makes the government's claim that it was only arguing about four spreadsheets even harder to fathom. If the Court on April 7 ordered it to produce four spreadsheets, why would it take six weeks to do so?

[11] As the government has refused to comply with the Court's order to produce the search warrant materials, Mr. Andrade can neither confirm nor deny the limitations the government claims. For purposes of this brief, it assumes arguendo that the warrant does not permit access to the entire device. If Mr. Andrade had access to the warrant that the Court ordered produced, he may be able to offer additional responses to the government's arguments.

Court's order that it must produce the device; and (3) is the government's argument precluded by its own misconduct, given that it accessed the device beyond what it says was permitted by the warrant for its own forensic purposes, and given that it has continued to hold -- for over three years -- devices it contends it does not lawfully possess, in supposed reliance on a decision that expressly holds the government is *not* authorized to retain the device. The government's Opposition misses the essence of the first question, and answers the second and third questions only by presenting an incorrect version of the facts.

    A.   *The government has waived its objection*

        The government's entire response to Mr. Andrade's waiver argument was to attempt to rewrite history to make it appear that the briefing, meet-and-confers, argument, and this Court's ruling, were only about four spreadsheets – which were not even identified until well after the Court's order requiring the government to produce the device.[12] As explained in greater detail in Part I above, this is false. The request was for the devices. The motion asked for devices. The court order compelled production of the device. The Court said the same at the argument. Nothing about a line in an earlier meet-and-confer email could change that, especially a line that is consistent with Mr. Andrade's position, for the reasons explained in Part I above. Even apart from the Motion and the Order, the government never even made any argument referencing the

---

[12] In fact, after the Court ordered production of Levin devices, the government produced nothing relating to Levin for 6 weeks until Judge Beeler ordered a meet-and-confer on the issue of compliance with the order. On May 24, a few hours after the meet-and-confer, the government produced four spreadsheets that list Levin's communications with Abramoff's fellow miscreant Kolomoisky and others along with a 302 report summarizing the FBI's examination of four files "for information relevant to Marcus Andrade, the NAC Foundation, and AML Bitcoin." FBI-302-011731. The 302 indicates that redactions were made on at least one of the spreadsheets, but no basis was provided for the redactions, nor did the government explain why it was entitled to make them in the face of the Court-ordered production. In any event, as Mr. Andrade's counsel informed the government less than a week after the spreadsheets were produced, "the four Microsoft excel documents that the government produced are insufficient. The column that shows who Levin was speaking to, and their numbers, are often blank, and the content of the messages themselves is often missing." Email from K. Dent to AUSA Highsmith (May 31, 2023) (citing FBI-302-011747). The spreadsheets not only reference many communications for which the actual text or body of the message is blank, they also contain many messages with attachments and videos that are not viewable without a Cellebrite image of the phone. *See, e.g.,* FBI-302-011734 (more than 100 messages between Levin and Kolomoisky are either blank, not viewable, or reference attachments that are not accessible). The Cellebrite image should therefore be produced. Other information about Levin's devices and the government's compliance with this Court's April 7 order is also missing: the government declines to answer questions such as those posed in n. 6 of Mr. Andrade's Opening Brief. For example, the government has not addressed why it has not produced an image of Levin's iPad, which may contain the 114 messages (and possibly more) between Abramoff and Levin, using Levin's Ukrainian number, that are summarized by the case agents in FBI-302-005158.

limited scope of the search warrant and/or *Balwani,* until six weeks *after* the Court's order. The government asserts that Andrade's request for the device in a meet and confer in May was raising "a new issue," Dkt. # 220 at 7:24-26, but Mr. Andrade's moving papers, his argument, the government's own argument, and the court's order establish the contrary in black and white, and show that it is the government that raised a new objection to producing the device six weeks after it was ordered to turn it over.

Like every other litigant, the government does not get a second bite at the apple, which is all it is attempting to do here. If the Court wishes to be solicitous of any forth amendment rights of Levin, it can notify Levin of the government's unlawful possession and invite him to challenge it or otherwise participate, but it should not hear further from the government about it. The government should have complied with the Court's order months ago.

B. *The government's argument is precluded by its own misconduct*

In addition to having lost its argument due to waiver, the government's argument should be precluded by its own misconduct of accessing and retaining the device. After first falsely denying it, the government now admits that it accessed the part of the device that it says it had no legal right to access, in order to run search terms. While it claimed to do so in the interests of Mr. Andrade, at his request, or with his agreement, none of that has even a whiff of truth. Mr. Andrade requested and moved for the devices, and he steadfastly opposed the application of search terms, especially the crabbed search terms the government used on the portion of the device to which it claims it did not have lawful access. He was not consulted about the application of search terms, did not request them, and did not agree to them. The record leaves no doubt that the government took steps to which ran a crabbed set of search terms through the entire device in order to create a forensic point for its argument against having to produce Levin's device: it repeatedly argued that Levin was not material to the case, and it used the lack of search term hits to support that point.[13]

---

[13] *See, e.g.,* Feb. 9, 2023 Hearing Transcript (Dkt. 147 at 13-14) (government states that "going back to the search terms, I'm happy, happy, happy, happy to continue to meet and confer to see whether or not there are any search terms that might suggest that there are relevant materials either in the images of phones that exist or in these case files.").

7

Having accessed the device for its own litigation purposes, the government should not be heard to contest Mr. Andrade's access to the same device. The government incorrectly assumes that *Balwani* was correctly decided,[14] but even if *Balwani* is good law, it undercuts rather than helps the government here. In *Balwani,* the government was *offering* access to a device that there was no indication it had already accessed, and it did so *as part of an attempt to comply with Brady,* albeit belatedly. In this case, the government was *resisting* discovery of information the Court has determined to be material to the preparation of the defense, and it *actually accessed* the device -- not to *comply* with *Brady*, but to support its argument *against* discovery of information that would help prepare the defense. In *Balwani,* when the issue arose, the government's hands were clean (as a result of a recent wash); in this case, the government's hands are covered in dirt.

Ultimately, *Balwani* supports Mr. Andrade's position, rather than the government's. As the government quotes *Balwani,* if material is outside the warrant, the government "was not authorized the seize it, *much less retain it,* review it, or offer it up." Dkt. #220 at 8:24-26 (emphasis added). And yet the government comes to this Court, claiming that it should be protected by *Balwani,* while retaining the device in violation of *Balwani* and refusing to release the device back to Levin in a way that would allow Mr. Andrade to subpoena it, and would ensure that the data has not been deleted or altered.

C. *The government should not be allowed to hold a device it claims not to lawfully possess, and thereby deprive Mr. Andrade of access to it*

The government offers merely a passing wave at an argument about Mr. Andrade's proposal that it return the phone to Levin in a way that Mr. Andrade can subpoena it: it says it "cannot produce to the defense material that it is not entitled to obtain via a search warrant." Dkt.

---

[14] The error of *Balwani* is that it is a one-way street, going the wrong way: it limits defense access, despite the defendant's constitutional rights under *Brady,* when the government can get away with using evidence obtained in violation of the fourth amendment. As Mr. Andrade argued in his opening brief, the government – like it did here – frequently uses information it seized in violation of the fourth amendment, and courts have approved that conduct. True, as the government says, the cases Mr. Andrade cited involved "old fashioned" warrants and searches rather than warrants collecting information from electronic devices. But in both types of cases, the government gathered information in violation of the fourth amendment, and the government offers no reason to justify a different result based on the type of search or information obtained. The only material difference is that in the cases in which the government sought to use the information, the information would help the government's case, while here the government wants to keep the defendant from seeing it in violation of the defendant's constitutional rights.

# 220 at 10:1-4. But Mr. Andrade's proposal was not that the government produce it to him; rather, the proposal was that the government return the device to Levin. The government accuses Mr. Andrade of seeking to "evade the law," but it is the government that is evading *Balwani's* dictate that the government cannot retain the device, and there is nothing about a proposal that the government comply with the law that can fairly be called an evasion.

Even worse is the government's argument that Mr. Andrade is asking this Court to insert itself into the Southern District of New York, as if the United States Attorney's Office there is somehow not a part of the Department of Justice that is the same entity that is prosecuting Mr. Andrade. *See* Opening Brief at 4, n.4. While it is not entirely clear where the government is going with this argument, this Court cannot allow the government to argue here that it does not lawfully possess the phone so it cannot make it available to Mr. Andrade, while arguing in the Southern District of New York that it does lawfully possess the phone and does not have to return it to Levin – a shell game that would make the device unavailable to Mr. Andrade. This gamesmanship of using the unlawful possession argument as a shield in one district and a sword in another is inconsistent with the government's obligation to do justice, and inconsistent with the obligations of the Department of Justice not to block Mr. Andrade's access to information material to preparing his defense. *See Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (prosecutors generally must err on the side of disclosing exculpatory and impeaching evidence). If the Department of Justice contends in New York that it lawfully possesses the phone, then it should be produced to Mr. Andrade in New York.

No better is the government's response to Mr. Andrade's other two proposals. The government objects to producing the phone to the Court and notifying Levin, which would conveniently avoid letting Levin know the government is taking the position that it violated his fourth amendment rights. It bases this objection on the assertion that it would be "improper" for the Court to notify a third party that the government obtained that party's property unlawfully, and that it would also be "improper," given that the government no longer has the right to possess it, for the Court to take custody of it so that the party can assert any rights they have if they so desire. The government offers no reason why the Court taking charge could somehow be

more "improper," as opposed to a better solution, than the government keeping a phone it concedes it does not lawfully possess, or the government suppressing its violation of Levin's rights. Worse still is the government's effort to explain its refusal to ask Levin for consent: it dismisses the possibility by saying Mr. Andrade asked the Court to "order the government to obtain Levin's consent to search," 10:17-18, when all Mr. Andrade did was to observe that the government "can seek consent from Mr. Levin." 5:13-14. By mischaracterizing Mr. Andrade's suggestion, the government avoids addressing why it refuses to seek consent.

Beyond these failings, the government's argument is riddled with assertions that no case supports Mr. Andrade's position. Because the issue appears to be novel, the same can be said for the government's position. It cites only *Balwani,* which helps Mr. Andrade for its direction to the government to release the device, is easily distinguished based on the unclean hands issue, and in any event the *Balwani* court was never presented with a request like the one Mr. Andrade is making that the government, with advance notice, release the device so it could be subpoenaed and/or tender it to the Court. If, as *Balwani* holds, the government cannot retain the device, then what? *Balwani* does not answer that question, and neither does the government; Mr. Andrade has suggested two reasonable options that could protect both his rights and Levin's.

The government ends its argument with a parade of horribles that do not apply to this case. Some of what the government sees as horrible is not – defense access to exculpatory material is not horrible. But this case would not open the door to unlimited access to exculpatory information as the government fears. Among other things, in this case the government already accessed the materials for its own purposes, which hopefully is not the norm. But more tellingly, the solution to this conundrum is for the government to follow *Balwani* and return to the subject of the search the material it is not lawfully entitled to possess. This would better protect the fourth amendment rights of the subject of the search, make the information available to defense subpoena, and ensure that the government complies with *Balwani* instead of merely using it as a shield against discovery a court has ordered.

By offering no solution for how to protect Levin's rights (should he choose to appear and exercise them) while still allowing – or at least not blocking – Mr. Andrade access to information

10

the Court has found is material to the preparation of his defense, the government punts that novel question to the Court. However challenging and novel the question may be, the answer cannot be that Mr. Andrade – whose liberty is at stake – does not get the Levin phone that the Department of Justice has in its possession and that Court has found material to his defense. This Court should therefore adopt Mr. Andrade's proposal and require the prompt return of the device to Levin in a way that Mr. Andrade can subpoena it, or, in the alternative, order the production of the device to the Court and notify (or have the government notify) Levin so that he has the opportunity to appear and object within a limited period of time.[15]

                                                Respectfully submitted,

DATED: October 6, 2023　　　　　　　　　　KING & SPALDING LLP

                                        By:  /s/ Michael J. Shepard
                                             MICHAEL J. SHEPARD
                                             KERRIE C. DENT (*Pro Hac Vice*)
                                             CINDY A. DIAMOND

                                             Attorneys for Defendant
                                             ROWLAND MARCUS ANDRADE

---

[15] To allow the Court and Mr. Andrade to assess the government's argument about the scope of the warrant, and to compel compliance with the Court's April 7 order, it should also order production of the Levin search warrant.