MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
 kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:     +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
 cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:     +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>  Defendant. | Case No. 3:20-cr-00249-RS-LBx<br><br>**DECLARATION OF KERRIE C. DENT IN SUPPORT OF DEFENDANT ROWLAND MARCUS ANDRADE'S STATUS REPORT ON THE BREADTH OF CONTESTED ISSUES, AND THE VOLUME AND TIMING OF DISCOVERY AND DOCUMENT PRODUCTION**<br><br>Judge: Hon. Richard Seeborg<br>Status Conference:  November 14, 2023 |

1

I, Kerrie C. Dent, hereby declare under penalty of perjury:

1. I am one of the lawyers representing Defendant Marcus Andrade in the above captioned matter. I file this declaration to support the facts set forth in Mr. Andrade's status report. I have personal knowledge of the trial preparation that is ongoing in this case, and of the various discovery disputes, related correspondence between the government and defense counsel, and pleadings that have been filed. If called as a witness in this matter, I could competently testify to the matters stated in this Declaration.

2. The data points such as the volume of documents produced and reviewed are based on my communications with, and information I obtained from, lawyers who work in King & Spalding's discovery center in the firm's Atlanta office. The discovery center lawyers regularly assist me and other lawyers on Mr. Andrade's defense team by: working with service provider Lineal to upload the government's productions onto a Relativity database; de-duplicating and threading to reduce the number of documents to review; batching documents for review; setting up review protocols; and generally keeping track of the document review process.

3. Discovery produced to date and a reverse proffer reveal that the government is pursuing several different fraud allegations related to the wire fraud charged in the indictment, including whether Mr. Andrade knowingly participated in a schemes to overstate the development of the technology of his business, to engage in market manipulation to support the price of tokens or coins, to deceive anyone about the chances of reaching a business agreement with the Panama Canal, to deceive anyone about the chances of reaching a business agreement with the Port of San Francisco, to engage in a "false rejection" campaign relating to a Super Bowl advertisement for AML Bitcoin, or to engage in other fraudulent statements, such as in presentations made in Poland and at the Chicago-Kent Law School. In addition, the government has referenced but not yet given notice of several other uncharged frauds by Mr. Andrade.

4. The government's investigation into Mr. Andrade included the execution of nearly 100 grand jury subpoenas, dozens of search warrants (including three on properties of Mr. Andrade), over 140 witness interviews, and at least 50 efforts to gain information through contacts with Mr. Andrade and others by persons working undercover for the government, some

of which were recorded and some not.  The investigation also has included the collection of nearly 4 terabytes of data (an estimated 330 million pages), and more than 250 recordings, with requests for production and Motions to Compel still in progress.

       5.       One thread of the defense we are developing focuses on the conduct of Mr. Andrade's alleged co-conspirator, Jack Abramoff.  Mr. Abramoff is a notorious fraudster who, in addition to his guilty plea in this Court and other wrongdoing, was convicted and sentenced for conspiracy, fraud (to the tune of tens of millions of dollars), and tax evasion stemming primarily from convincing Native American tribes to pay for him to lobby in favor of permission to develop casino gambling on their reservations, and to pay for him to lobby against opposition to that request – opposition that Abramoff was performing covertly himself.  Mr. Abramoff also was convicted of defrauding lenders in the purchase of a fleet of gambling ships – including submitting bogus documents suggesting that he and his co-conspirator had put down $23 million of their own money when they had not in fact done so, and thereby taking over someone else's business. https://www.justice.gov/archive/opa/pr/2008/September/08-crm-779.html and https://www.washingtonpost.com/archive/politics/2005/08/12/abramoff-indicted-in-casino-boat-purchase/492a151d-5346-4329-ae25-9fcf0a3aae28/

       6.       We expect to show at trial that Mr. Abramoff continued his history of illegal conduct by orchestrating the wrongdoing charged in the indictment and using Mr. Andrade's business for Mr. Abramoff's own purposes and behind Mr. Andrade's back, including by engaging in money laundering, some with people in foreign countries.  As counsel to Mr. Andrade, we have devoted considerable time to uncovering, and putting Mr. Andrade in a position to demonstrate, how and why Mr. Abramoff engaged in these activities.  These efforts have led to the production of lots of data (some of which are still being reviewed), including AML Bitcoin documents found in the home of Russian spy Maria Butina that revealed one of the ways that Abramoff was working adversely to Mr. Andrade's business.  We learned of the existence of those documents by listening to a recording of the case agents discussing them as they searched Abramoff's home – the 302s did not mention finding documents relating to AML Bitcoin.

7. Even after we pointed the government to the recording and the agents' discussion of the documents in Butina's home, the government fought against producing the material, and did not produce it until ten months after we requested it.

8. The vast majority of the discovery in this case has been produced in the last year in response to discovery requests, often only after we filed Motions to Compel. Most of the nearly 4 TB of data (roughly 330 million pages) was produced by the government after November 28, 2022, when we filed our second discovery motion. Most of the discovery has been produced without individual Bates-numbers and in a non-reviewable format, which makes locating material very challenging and time consuming.

9. In response to our request for Abramoff's phone on March 3, 2022, the government made a production in May 2022, but the full phone was not produced until July 27, 2023, after Judge Beeler granted a Motion to Compel. Although purportedly a complete production, the government's May 2022 production turned out to be missing many exculpatory and material communications, which we discovered by reviewing a partial summary of the communications of Abramoff's phone prepared by the FBI case agents.

10. The missing messages included more than 100 between Abramoff and Alexander Levin, a political activist who retained Abramoff to engage in illegal lobbying and whose communications Judge Beeler has ruled are material to Mr. Andrade's defense. After we explained the issue of the missing communications to the government in December 2022, and after some back and forth by email and in meet-and-confers, in January 2023, the government produced some of the missing messages.

11. When we informed the government that there were additional messages summarized in the FBI 302s that were not on the image of Abramoff's phone produced to us, rather than explain why the image of Abramoff's phone we received was missing so many of the messages the FBI had summarized, the government said it would produce the full Abramoff phone. It promised to produce the phone in a Mach 6, 2023 email and again in a March 8 meet and confer. On March 8, when I asked AUSA Dawson when we could expect to see the production of the phone, he responded that the Cellebrite images were sitting right on his desk

4

and that we would probably receive the production in the next day or so.  More than two months after the government made those promises, it still had not produced the phone and instead announced during a meet-and-confer on May 24, 2023, that it was *not* going to produce the Abramoff phone, saying that it was not "relevant," and making a new argument about Mr. Abramoff's privacy.

12. The government requested that the Court order an addendum "to protect purely personal, private, sensitive, and irrelevant information" on Abramoff's phone.  Mr. Andrade filed a Motion to Compel and Judge Beeler ordered production of the phone this summer without any addendum to the existing protective order.  After that, our discovery center worked for weeks on de-duplication, threading, and other methods of reducing the number of files to be reviewed.  Over a year and a half after the phone was requested, we are still reviewing the 25GB of data.

13. AUSA Weingarten informed me in August 2022 that he had just discovered about 55GB of Jack Abramoff emails.  He promised to produce them promptly if we could send him a drive, which we did within several days.  But the government did not produce the data until December 8, 2022.  When it did so, it included the data under three Bates number as part of a much larger production.  Although the typically generic cover letter that accompanies the government's productions included a statement that the production included the Abramoff emails, we did not even know that we had them until after the government explained that it had produced them as part of the very large production (with only a few Bates numbers) on December 8.  Our discovery center worked with Lineal for days to locate the data.

14. The government has consumed a lot of our time unnecessarily by objecting (unsuccessfully) to the materiality of items we requested and then only later – after briefing and arguments – claiming that it had no such documents.  The government also has wasted our time by demanding additional protective orders for material that – as it turns out – had been publicly available all along.

15. Judge Beeler ordered the government to produce the phone of Paul Erickson, another Abramoff associate who had a relationship with Maria Butina and who made the handwritten notes that reflect how Abramoff and others were seeking to undermine Mr.

5

Andrade's business plan. While our motion was pending, the government gave contradictory statements about the phone. The government told us in January 2023 that the phone had been destroyed in March 2022. Several weeks later, the government told us that it was not sure whether the phone had been destroyed. And the government would not tell us for months whether the Erickson phone existed or not. Then, after the government produced a hard drive of Butina devices that the Court ordered it to produce on April 7, 2023, the government took the new position that the drive had included a phone Erickson owned (and had let Butina use) and that it had therefore complied with the Court's order to produce the Erickson phone.

16. On June 13, two months after the Court ordered the production of the Butina search warrant and affidavit, the government informed us that the affidavit is under seal and that the AUSA in D.C. requested an addendum to the existing protective order before he would disclose the search warrant. In the course of negotiating the terms of the addendum, the government acknowledged that it wanted the addendum to also apply to Abramoff's phone. Judge Beeler granted our motion to compel Abramoff's phone without an addendum to the protective order, and the parties filed a stipulation for an addendum to the protective order that applied only to the Butina search warrant. When the warrant was finally produced on September 1, 2023, five months after the government had been ordered to produce it, it turned out that the warrant was virtually identical to the arrest warrant, which has been public all along.

17. We requested production of Mr. Levin's phone (among other things) on July 15, 2022. Judge Beeler ordered production of the phone on April 7, 2023. Despite the Court's order, the government produced not the images of the devices as ordered, but four spreadsheets reflecting data from the phone; it was not until May 25, 2023, six months after Mr. Andrade's motion was filed and more than six weeks after Judge Beeler ordered the phone produced, that the government contended that under *United States v. Balwani*, 18-cr-258 EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022) (Dkt. #1393), it could not produce the phone because it only had lawful possession of the four spreadsheets summarizing some of Levin's communications.

18. The government's belated objection to Judge Beeler's Order was presented by Mr. Andrade to Judge Beeler, who asked the government to make an inquiry about the phone to

6

the Southern District of New York, which seized it from Mr. Levin. We do not yet know whether this inquiry (or subsequent orders by Judge Beeler) will allow us access to the phone or other devices as ordered by Judge Beeler. If it does, it will mean that Mr. Andrade's access to the image of the iphone alone – and its likely large volume – will have been delayed by approximately one year. If it does not, we will bring the issue to this Court. At a minimum, the government will have wasted substantial time that we could have devoted to other pretrial tasks.

19. Although hundreds of thousands of pages have been reviewed, for remaining parts of the production, our discovery center lawyers are still working on reducing the number of documents for attorney review through threading, de-duplicating, and other methods. We have one of the discovery lawyers working full-time on this case, two of the more senior discovery center lawyers working regularly on the case, and document reviewers assisting with review of the volumes of material as their schedules permit. We anticipate that, with this level of staffing, review will not be complete before the scheduled trial date, and could be delayed further depending on the volume of additional discovery.

20. To conserve CJA resources, we intended to complete the document review before doing witness interviews, but with the slow pace of discovery and the trial date set by the Court at the last status, we have deviated from that plan.

21. Because the prosecutors and the SEC worked together on the investigation the led to the charges in this case, we asked for the SEC's file. The government said it complied with that request, but it turned out that the government's production included only documents Mr. Andrade himself had produced to the SEC. We are taking to Judge Beeler the issue of the government's unwillingness to obtain additional materials from the SEC even though the two agencies have been working together on the investigation.

22. Turnberry Solutions, LLC produced documents to the grand jury through its attorneys at Jones Day, and the pages were Bates-numbered TSLLC_0000001-TSLLC_0001867. The government did not produce those pages in sequential fashion; rather, they were scattered in no identifiably logical way. We determined that the production was incomplete, and identified for the government the Turnberry Bates number for each of the approximately 1000 documents

7

not included in the government's production.  The government re-produced the Turnberry grand jury documents on September 20, 2023, but its production suffered from the same problem: more than 700 pages remain un-produced. We informed the government of the 700 missing pages on September 26, but it has not responded, and the production remains incomplete.

23. The Abramoff, Levin, and Butina materials referenced above were part of the first of several priority items the Court asked us to identify from our November 28, 2022 motion to compel, which included a total of seven issues.  We are nearly done litigating the government's compliance with Judge Beeler's order of April 7, which resolved the three issues of Erickson, Levin, and Butina in Mr. Andrade's favor, with the other requests still pending.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on November 7, 2023 in Washington, District of Columbia.

*/s/ Kerrie C. Dent*
KERRIE C. DENT