```
                UNITED STATES DISTRICT COURT

           IN THE NORTHERN DISTRICT OF CALIFORNIA

                    SAN FRANCISCO DIVISION
                  _____


United States of America,      )
                               )   No. 3:20-cr-00249-RS-1
           Plaintiff,          )
                               )
           vs.                 )   San Francisco, California
                               )   November 14, 2023
Rowland Marcus Andrade,        )   2:29 p.m.
                               )
           Defendant.          )
_____)


      BEFORE:   THE HONORABLE RICHARD SEEBORG, CHIEF JUDGE


            REPORTER'S TRANSCRIPT OF PROCEEDINGS

                 STATUS CONFERENCE VIA ZOOM
```

Official Court Reporter:
Scott M. Coniam, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2   For the Plaintiff:
         U.S. Attorney's Office
 3       By:  Christiaan H. Highsmith, Esq.
         450 Golden Gate Avenue 11th Floor
 4       San Francisco, CA 94102

 5       U.S. Department of Justice, Antitrust Division
         By:  David J. Ward, Esq.
 6       450 Golden Gate Avenue
         Room 10-0101, Box 36046
 7       San Francisco, CA 94102

 8   For the Defendant:
         King & Spalding LLP
 9       By:  Michael J. Shepard, Esq.
         50 California Street, Suite 3300
10       San Francisco, CA 94111

11       King & Spalding LLP
         By:  Kerrie C. Dent, Esq.
12       1700 Pennsylvania Avenue, NW
         Washington, DC 20006
13
         Cindy A. Diamond, Attorney at Law
14       By:  Cindy A. Diamond
         58 West Portal Avenue #350
15       San Francisco, CA 94127

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

**P R O C E E D I N G S**

(Proceedings convened at 2:29 p.m.)

THE COURTROOM DEPUTY: Calling case 20-cr-249, United States vs. Rowland Marcus Andrade.

Counsel, please state your appearances, starting with the government.

MR. HIGHSMITH: Good afternoon, Your Honor. Chris Highsmith and David Ward for the United States.

THE COURT: Good afternoon.

MR. SHEPARD: And good afternoon, Your Honor. Michael Shepard, Cindy Diamond, Kerrie Dent for the defendant, Rowland Marcus Andrade, who is present by Zoom, consents to proceed in that fashion and appreciates the court's willingness to let him do so.

THE COURT: Good afternoon.

So how are we doing headed towards the March 11th trial?

Go ahead, Mr. Highsmith.

MR. HIGHSMITH: I'm sorry, Your Honor.

The government is -- would like to proceed in the March 11th trial.

I'll represent to the court something I did not say before which is in the government's view, it's a fairly straightforward case. We anticipate five days of government presentation, so a fairly streamlined case.

1   And we -- Mr. Ward this morning shared a pretrial
2   scheduling order with the defense so that we could try to work
3   through some of the pretrial scheduling issues and so that's,
4   in a nutshell, the government's position on trial.  We're ready
5   to go forward.  We'd like to go forward.  It's been quite a
6   while since this case was charged.
7           THE COURT:  Okay.  Mr. Shepard.
8           MR. SHEPARD:  Well, we took the court's words at the
9   last status very seriously and we've been very focused on trial
10  preparation, but the status is that we're still reviewing
11  documents and we will be for a while.  And some of our trial
12  prep -- obviously we're working hard on trial prep, but some of
13  our trial prep is necessarily going to trail the completion of
14  document review.
15          And the reason that we're still reviewing documents --
16  and I realize it's been a while since the case was indicted.
17  The reason we're still reviewing documents is because of
18  belated production of those documents by the government.  And I
19  want to be clear that this is not the kitchen sink of documents
20  that we're still reviewing.  This is material at the core of
21  Rule 16.  A big hunk of it is material that was seized from our
22  client but not produced until about two and a half years after
23  indictment.  That is, it was produced in December of last year
24  and it's massive, 18, I believe, different devices of his that
25  were produced to us in December of last year.  And not because

1  it wasn't requested.  It was.  A lot -- another hunk of what
2  we're still reviewing is information found to be material to
3  the preparation of our defense by Judge Beeler after the
4  government objected to producing it.  That information, another
5  large hunk of material, was produced in many instances over a
6  year after it was requested.  Some of it we're still waiting
7  on.
8         And I would add, briefly, that when it's finally
9  produced, the material is often a mess.  It's not individually
10 Bates numbered.  It's not reviewable.  It's not searchable.
11 Sometimes it isn't even in the same page order as the original.
12        And we still have a few other discovery issues being
13 addressed by Judge Beeler and/or between the parties.  And not
14 only has our review and trial prep been delayed as a result of
15 that belated discovery, but we're spending a lot of time
16 getting material that should have been turned over to us
17 without a fight and should have actually been turned over
18 before we even came into the case.  Judge Beeler urged the
19 government several times just to turn material over and they
20 declined to do so.
21        To give you an idea of the magnitude, we're reviewing
22 nearly four terabytes of data and this is just government
23 productions.  We're not talking about anything else we may have
24 been working on, just the government productions, nearly four
25 terabytes of data.  As I say, the vast bulk of that was

1  produced after our second motion to compel which was filed a
2  little -- it was filed at the end of November of last year.
3  And that -- if we say conservatively three terabytes, I think
4  it's probably closer to four, that's about 30 million
5  documents.  And I'm not suggesting to the court that we're
6  looking at 30 million documents because obviously we're not.
7  We have an excellent discovery center at our firm in Atlanta
8  and they've devoted a lot of work and attention to this.  You
9  know, the sort of deduping and threading and running search
10 terms whenever that's appropriate and that can reduce the
11 volume so far, in our experience, down to like 4 percent,
12 sometimes a little less, but 4 percent of the total number of
13 documents, but that still leaves us 1.2 million documents and
14 some of these documents are big.
15          THE COURT:  Well, you know, you can appreciate that
16 when these type of facts are laid out to me -- and I often hear
17 these in the white collar cases, oh, there's so many documents,
18 that taken to its logical extreme, we will never go to trial.
19 That obviously is not an option.
20          The question really is not -- even if there's been
21 delay -- and I don't see any reason to jump into that pool to
22 hash that out at the moment -- the question is the time
23 remaining between now and trial to get the case ready.  There's
24 now almost six months remaining.  And, you know, I'm sure it's
25 a different case but I'm -- you know, I note that the

1   Bankman-Fried trial in New York went to trial, what, about a
2   year and it was initially characterized as the most complicated
3   thing in the Western world.  Judge Kaplan was able to get that
4   trial through in -- obviously it seemed did a fine job and got
5   it all tried.  So there's no reason why this trial can't go
6   forward as scheduled and it's my intention to have it go
7   forward as scheduled.  At the same time acknowledging the
8   extraordinary work, Mr. Shepard, you and your colleagues have
9   done in this case.  I know how much work you've put into it and
10  I'm grateful for that, but at this point, with these many
11  months remaining, I don't see any reason why the schedule
12  should be adjusted, because I think we should plan on going
13  forward in March.  You know, you're always going to be in the
14  position that there's an enormous amount of material and I --
15  as I say, if, you know, every time that is discussed, it leads
16  to another multimonth continuance, I will be long retired and
17  you will be, too, and this case isn't going to get tried.  So
18  we got to move it along.  Just have to move it along.
19          MR. SHEPARD:  I appreciate that, Your Honor, and I
20  would love to move the case along.  I don't want to move the
21  case along at a pace where I don't think I can give my client a
22  fair trial.  And --
23          THE COURT:  Well, but that's --
24          MR. SHEPARD:  -- I'm not suggesting that we never --
25  I'm sorry.  Didn't mean to interrupt the court.

1    THE COURT: Well, I'm just saying that, you know, an
2 enormous amount -- Mr. Andrade has gotten extraordinary
3 representation. You put in an enormous amount of time already,
4 you and your colleagues. At a certain point the case has to go
5 to trial. It just -- it can't stay in limbo with more and more
6 materials being examined.
7    I understand you don't -- you don't buy into the
8 government's characterization that this is a straightforward
9 case. I know your position that it's anything but. Okay.
10 But, you know, even assuming that the defense perspective is
11 going to be it's a very complicated business, it's still has
12 got to be ready to go to trial.
13    Tell me when you think this case would be able to go
14 to trial.
15    MR. SHEPARD: I think -- and I appreciate the
16 question. I'm not suggesting the case could never go to trial.
17    I think the soonest we might possibly be ready for
18 trial would be an additional four months from the scheduled
19 trial date. And by my math -- and my math is poor -- we're
20 four months away from trial and it's not -- it's not -- I don't
21 want the court just to think that it's my position that this is
22 a complicated case. A lot of this discovery was litigated in
23 front of Judge Beeler, who ruled in our favor on these -- on
24 the reasons why we think we were entitled to discovery over the
25 government's objection. She ordered the discovery. And the

1  reason why we're still here is that some of those requests
2  were -- we finally got the material over a year after we asked
3  for it.  And so the government shouldn't be allowed to delay
4  production of material that has to be produced and push the
5  case to trial and rob the defense of the ability to prepare
6  efficiently and fully.
7          THE COURT:  Your proposition I don't disagree with,
8  but the focus is and the question is not, you know, delay from
9  your perspective -- I know the government will say they didn't
10 delay or whatever.  But whatever that truth is, it's somewhat
11 irrelevant because the question going forward is how much more
12 time is needed, not how much -- you know, could it have been
13 done faster if the government had moved faster from your
14 perspective or what have you, that's water under the bridge.
15 The question now is how much time we need to have before this
16 case is ready to go to trial.  Because I think I made it pretty
17 clear that I -- it's not just a situation where I'm going to
18 have these periodic meetings and I'm going to hear how many
19 bazillion pieces of material is out there and I'm going to
20 continue it again for another enormous chunk of time.  The case
21 needs to come to its conclusion, one way or the other.  So as I
22 say, I want to proceed as scheduled.
23          Now, if the two sides -- if the government wants to
24 take you at your estimate and say, all right, you've said
25 it's -- you need three to four months more, we'll buy into

1  that, but by doing that, you know, that's going to be the end
2  of the line, it wouldn't be a bad approach for them to take and
3  give me a stipulation to do it.  But at the moment, I'm going
4  to leave things as they are.
5       I'm going to schedule another status conference
6  probably -- we'll do it in January and see where we are.  But
7  I'm loathed to move -- I'm not going to move a trial date based
8  on what I've heard today because there's several months --
9  maybe your math is right, Mr. Shepard.  I'm not questioning
10 you.  Maybe it's five.  We'll say I said six, you said four,
11 let's say five for purposes of discussion.  That still seems to
12 be a lot of time to me but, you know, we'll see where we are in
13 January.
14      MR. SHEPARD:  Understood, Your Honor.  And like I say,
15 we're moving as quickly as we can but that's not a lot of time
16 when you are talking about terabytes of data.
17      THE COURT:  No, I --
18      MR. SHEPARD:  And I don't think there's any -- there's
19 ultimately going to be any dispute about how much time there
20 has been between when we first requested these items that we're
21 still reviewing and when the government produced them.
22      THE COURT:  Right.  And as we all know, one thing is
23 quite clear, terabytes of data are not being admitted into
24 evidence.  It's going to be a lot more streamlined than that.
25      Okay.  Well, we're -- I'm going to leave things as

1  they are.
2          Ms. Lew, can we have a -- do you want it again Zoom
3  status?
4          MR. SHEPARD:  Yes, Your Honor.
5          THE COURT:  Okay.
6          MR. SHEPARD:  It's just a costly and --
7          THE COURT:  No, no.  That's fine.  And I will say --
8  and I appreciate the waiver.  I accept the waiver.  I actually
9  take the position, just so it's clear on the record, that I
10 think under the criminal rules, we can have scheduling
11 conferences without even the need for that because I think it
12 is something that can be done.
13         As you know, the CARES Act has expired so there's a
14 bit of a gray area on what can still be done by Zoom or not but
15 I think scheduling conferences can be done.  They could be done
16 even before the Covid emergency decrees, so I think we can do
17 this and I think I could just do it even without a waiver, but
18 I appreciate the waiver.  I'll take it.
19         So we'll do it by Zoom.  January Zoom date.
20         THE COURTROOM DEPUTY:  January 23rd.
21         THE COURT:  Okay.  January 23rd at 2:30.  We're going
22 to keep the current schedule as is.
23         Again, I sort of encourage Mr. Ward and Mr. Highsmith
24 to talk to you, Mr. Shepard, and, you know, if there's some
25 adjustment that you want to jointly propose with the

1  understanding that you're bringing this to a conclusion and
2  everybody expects this time it's going to go at that date, I
3  wouldn't be adverse to that.
4           Okay.  Very good.  Anything else today?
5           MR. HIGHSMITH:  We'll prepare the order to exclude
6  time.
7           THE COURT:  Oh.  Speedy trial -- pardon?
8           MR. HIGHSMITH:  We'll prepare a proposed order to
9  exclude time.
10          THE COURT:  Yes.  I assume, Mr. Shepard, you're
11 agreeable to exclude time?
12          MR. SHEPARD:  You are correct, Your Honor.
13          THE COURT:  Okay.  Yes.  Thank you, Mr. Highsmith.  If
14 you could give me that declaration.
15          Okay.  Very good.  Thank you.  Good luck.
16          MR. SHEPARD:  Thank you, Your Honor.
17          THE COURT:  See ya.
18          (Proceedings adjourned at 2:45 p.m.)

**C E R T I F I C A T E**

I, SCOTT M. CONIAM, do herby certify that I am duly appointed and qualified to act as Official Court Reporter for the United State District Court.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 14th day of December 2023.


s/Scott M. Coniam_____
    SCOTT M. CONIAM, RDR, CRR