MICHAEL J. SHEPARD (SBN 91281)
 *mshepard@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    +1 415 318 1200

KERRIE C. DENT (Admitted *pro hac vice*)
 *kdent@kslaw.com*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
 *cindy@cadiamond.com*
ATTORNEY AT LAW
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>             Defendant. | Case No. 3:20-cr-00249-RS-LBx<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S NOTICE OF MOTION AND THIRD MOTION TO COMPEL DISCOVERY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:        February 8, 2024<br>Time:        9:30 a.m.<br>Judge:       Hon. Laurel Beeler |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, February 8, 2024, at 9:30 a.m., or as soon thereafter as the matter may be heard, pursuant to Criminal Local Rule 16-2, Federal Rule of Criminal Procedure 16(a)(1)(E), and *Brady v. Maryland*, 373 U.S. 83 (1963), Defendant Rowland Marcus Andrade will bring for hearing before the Honorable Laurel Beeler, Magistrate Judge, his Third Motion to Compel.

Mr. Andrade brings this Third Motion to Compel Discovery, seeking several categories of materials, the vast majority of which were requested well over a year ago. The parties have met and conferred on the issues numerous times, and Mr. Andrade's counsel has provided the government with substantial evidence to support the requests as well as detailed explanations of why the requested documents, recordings, and other requested items are material to Mr. Andrade's defense. The government, however, has neither produced the requested materials nor provided an anticipated date for production, and Mr. Andrade therefore brings this Third Motion to Compel. In support of his motion, Mr. Andrade submits the declaration of Kerrie C. Dent and exhibits attached to it.

DATED: January 25, 2024                               KING & SPALDING LLP

                                                      By:  */s/ Michael J. Shepard*
                                                          MICHAEL J. SHEPARD
                                                          KERRIE C. DENT
                                                          CINDY A DIAMOND

                                                          Attorneys for Defendant
                                                          ROWLAND MARCUS ANDRADE

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 2

III.    DOCUMENTS AND ITEMS REQUESTED........................................................... 4

        A.      Andrade's Mobile Phones ........................................................................... 4

        B.      Trezor wallets .............................................................................................. 6

        C.      Recordings .................................................................................................... 7

        D.      Materials from the SEC's Investigation...................................................... 9

        E.      Turnberry Solutions Documents ................................................................ 13

        F.      Abramoff's Devices ................................................................................... 13

        G.      Search warrants, subpoenas, and related materials ................................... 15

        H.      Documents Relating to Abramoff's Criminal Wrongdoing....................... 16

        I.      404(b) Evidence ......................................................................................... 19

        J.      Undercover Operations .............................................................................. 20

        K.      Treasury Department Investigation............................................................ 22

IV.     CONCLUSION ...................................................................................................... 24

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Federal Cases**

4

*Admiral Ins. Co. v. U.S. Dist. Ct.*,
5
    881 F.2d 1486 (9th Cir. 1989) ........................................................................................11

6

*Brady. United States v. Santiago*,
    46 F.3d 885 (9th Cir. 1995) ...........................................................................................3
7

*Brady v. Maryland*,
8
    373 U.S. 83 (1963)..................................................................................................... *passim*

9

*Crane v. Kentucky*,
    476 U.S. 683 (1986)......................................................................................................1
10

11

*Kyles v. Whitley*,
    514 U.S. 419 (1995)......................................................................................................4

12

*U.S. v. W.R. Grace*,
13
    401 F. Supp. 2d 1069 (D. Mont. 2005).........................................................................3

14

*United States v. Andrade*,
15
    2023 WL 2838110, No. 20-CR-249 (N.D. Cal. April 7, 2023).........................3, 23

16

*United States v. Blanco*,
    392 F.3d 382 (9th Cir. 2004)........................................................................................3
17

*United States v. Bryan*,
18
    868 F.2d 1032 (9th Cir. 1989) ................................................................................2, 3

19

*United States v. Cooper*,
    983 F.2d 928 (9th Cir. 1993) ......................................................................................1
20

21

*United States v. Doe*,
    705 F.3d 1134 (9th Cir. 2013) ....................................................................................2

22

*United States v. George*,
23
    786 F. Supp. 56 (D.D.C. 1992).....................................................................................2

24

*United States v. Gupta*,
    848 F. Supp. 2d 491 (S.D.N.Y. 2012)........................................................................12
25

26

*United States v. Lloyd*,
    992 F.2d 348 (D.C. Cir. 1993) ....................................................................................2

27

*United States v. Lov-It Creamery, Inc.*,
28
    704 F. Supp. 1532 (E.D. Wis. 1989)............................................................................2

DEFENDANT MARCUS ANDRADE'S THIRD MOTION TO COMPEL       3:20-CR-00249-RS-LB

*United States v. Olano*,
   62 F.3d 1180 (9th Cir. 1995) ..................................................................................2

*United States v. Zuno-Arce*,
   44 F.3d 1420 (9th Cir. 1995)...................................................................................3

*White v. Executive Office of U.S. Attorneys, Federal Bureau of Investigation, and
   Dep't of Justice*,
   No. 18-CV-841-RJD (S.D.Ill. March 17, 2020) ..................................................18

**Other State Cases**

*United States v. Andrade*,
   April 7, 2023 Discovery Order (Dkt. #165)...........................................................13

**Other Authorities**

DOJ Press Release, *Lobbyist Jack Abramoff And CEO Rowland Marcus Andrade
   Charged With Fraud In Connection With $5 Million Initial Coin Offering Of
   Cryptocurrency AML Bitcoin* (June 25, 2020), available at
   https://www.justice.gov/usao-ndca/pr/lobbyist-jack-abramoff-and-ceo-
   rowland-marcus-andrade-charged-fraud-connection-5.........................................10

Fed. R. Crim. Proc. 16(d)(2) ...............................................................................................1

Federal Rule of Criminal Procedure 16 ...................................................................... *passim*

Federal Rule of Criminal Procedure Rule 16-2 ..................................................................1

Federal Rule of Criminal Procedure 16(a)(1)(E)(iii) .........................................................6

Federal Rule of Criminal Procedure 16 Rule......................................................................2

Federal Rule of Evidence 404(b) ..................................................................................17, 19

Hearing Transcript, Dkt. #255 (Dec. 14, 2023) ...............................................................17

Rule 16(a)(1)(B)...................................................................................................................7

Rule 16(a)(1)(E)...................................................................................................................3

Rule 404(b)(3)(A) ..............................................................................................................19

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government indicted Mr. Andrade three and a half years ago, but despite repeated requests it still has not produced a substantial amount of discovery at the core of Federal Rule of Criminal Procedure 16.  Discovery as basic as devices seized from the defendant containing communications and financial records relating to the charges against him remains unproduced. There are recordings of Mr. Andrade referenced in the government's own materials that the government still has not produced.  Production of Jack Abramoff's devices remains incomplete. The government also has not fully produced records obtained through grand jury subpoenas that are material to the preparation of Mr. Andrade's defense, or sought information in the possession of other agencies with which the government worked in this investigation.  Still other omissions are detailed below.  Some of the unproduced discovery was requested nearly two years ago, and some of it was fully briefed in Mr. Andrade's lengthy second motion to compel, filed more than a year ago on November 28, 2022 (Dkt. #120).

It is past time for the government to comply with its discovery obligations.  The Court should order the government to produce immediately all the documents and other materials described below in order to allow Mr. Andrade to prepare for his August 5, 2024 trial.  If any of the requested materials already have been produced among the disorganized ~4TB of discovery, then the government should provide the Bates numbers corresponding to the produced documents (as Mr. Andrade has requested for the items in this motion). If any of the requested materials have been destroyed, then destruction records should be provided.[1]

---

[1] The prosecutors' discovery obligations include the production of destruction reports for evidence the government claims it no longer possesses. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. . . . "); *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (destruction of laboratory equipment allegedly used by defendant to manufacture methamphetamine violated due process where evidence was destroyed in bad faith and defendant was unable to obtain comparable exculpatory evidence by other reasonably available means). To allow the defense a fair opportunity to meet the standard for a due process violation, the government cannot be allowed also to suppress the evidence around its destruction.  Regardless of a due process challenge, the defense may be entitled to an instruction allowing the jury to draw an adverse inference from the destruction. Fed. R. Crim. Proc. 16(d)(2) ("If a party fails to comply with this rule, the court may . . . enter any other order that is just under the circumstances").

1

## II.    ARGUMENT

The Court should order the government to comply with its obligations under Federal Rule of Criminal Procedure 16 Rule and *Brady v. Maryland,* 373 U.S. 83 (1963).  The government is required to produce the disputed discovery items because they are "material to the preparation of the [ ] defense" under Rule 16, and they will enable Mr. Andrade to explore possible defenses and develop his theory of the case.  *See United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995) (noting evidence is "material" under Rule 16 where it is helpful to the development of a possible defense or even abandoning a potential defense).  The materiality threshold of Rule 16 is "not a heavy burden." *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992).  It is enough if the requested material can play an important role in uncovering admissible evidence, *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993), or, even if it may lead to nothing helpful to refute the prosecution's case at all, by causing a defendant to abandon a defense and take a different path, *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (information need not be exculpatory or impeaching to be discoverable and material under Rule 16).  Courts routinely order discovery even if they are not convinced that the material requested will in fact be exculpatory; rather, it is enough if the proffered opportunity to aid the defense is "more than mere speculation." *See, e.g.*, *United States v. Lov-It Creamery, Inc*., 704 F. Supp. 1532, 1553 (E.D. Wis. 1989) (ordering production of IRS file in related investigation even though court was "not persuaded" by defendants' theory that the file contained exculpatory material because defendants made sufficient showing that their theory was "more than mere speculation").

It is not enough for the prosecution to simply say – as it often does in this case[2] – that it is not in possession of a particular item.  The prosecutorial team is "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant," *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989), and is obligated to produce all the documents of any agency participating in the

---

[2] *See* Dent Decl., ¶8, fn 5.

investigation that fall within Rule 16 and/or *Brady*.  *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). *See also United States v. Blanco*, 392 F.3d 382, 393-94 (9th Cir. 2004) ("There is no ambiguity in our law. The obligation under *Brady* and *Giglio* is the obligation of the government, not merely the obligation of the prosecutor"); *United States v. Zuno-Arce,* 44 F.3d 1420, 1427 (9th Cir. 1995) ("Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does.").

The government's obligation goes even beyond agencies participating in the investigation.  "[R]egardless of whether the agency holding the information participated in the investigation," the Ninth Circuit deems the prosecution to be in possession of that information, provided the prosecution has "knowledge of and access to" it.  *U.S. v. W.R. Grace*, 401 F. Supp. 2d 1069, 1078 (D. Mont. 2005); *Santiago*, 46 F.3d at 893-94 (rejecting the district court's finding that the government only has "possession and control" over files of agencies that participated in the investigation).  Information held by federal agencies not directly involved with the investigation is therefore discoverable under Rule 16(a)(1)(E); the touchstone remains whether the prosecution has knowledge of and access to the information and the requirements of the rule are otherwise met.  *Id.*, citing *Bryan*, 868 F. 2d at 1037.

Similarly, if a federal prosecutor has knowledge of and access to documents that are material to the preparation of the defense under Rule 16, or that constitute exculpatory information as defined in *Brady* and its progeny, but the material is outside the district, the prosecution team must disclose it to the defense. *Bryan*, 868 F.2d at 1037 (rejecting government's argument that Rule 16 and *Brady* material need not be disclosed if located outside of the district in which the prosecution was pending).

Ultimately, it is the government's obligation, and not Mr. Andrade's, to determine what documents exist, and to produce them.  *United States v. Andrade*, 2023 WL 2838110, *6, No. 20-CR-249 (N.D. Cal. April 7, 2023) ("prosecutors have 'a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case'"), quoting *Kyles v.*

3

*Whitley*, 514 U.S. 419, 433 (1995).[3]  And the government's own policies make clear that the prosecutors' "search duty" applies not only to their *Brady* obligations, but "also extends to information prosecutors are required to disclose under [Rule]16."[4] The government did not live up to those obligations, as is evidenced by the many remaining unproduced materials at the core of Rule 16 and the lack of production of any destruction reports for missing materials. Declaration of Kerrie C. Dent at ¶9 ("Dent Decl.").  The Court should ensure that the government lives up to its obligations immediately.

## III.    DOCUMENTS AND ITEMS REQUESTED

### A.    Andrade's Mobile Phones

With a trial fewer than seven months away, the government has not produced the four cell phones it seized from Mr. Andrade nearly *four years ago*.[5]  Mr. Andrade's counsel requested production of his devices on March 3, 2022, and the government responded on March 24 that it had produced them to predecessor counsel.  After numerous emails and conversations, and after conducting diligence and working with the eDiscovery vendor, King & Spalding reported on May 3, 2022 that the government had produced PDF/TIF placeholders for extractions of Andrade's devices, but there were no associated native files or images. Dent Decl. at ¶¶ 10-11. Not until after Mr. Andrade filed his *first motion to compel* on July 15, 2022 (Dkt. #97) – requesting devices that were being withheld from Mr. Andrade because some of the 18 seized

---

[3] *See also* U.S. Dept. of Justice, Justice Manual ("JM"), 9-5.001(B)(2) ("It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. Members of the prosecution team include . . .  other government officials participating in the investigation and prosecution of the criminal case against the defendant. *Kyles*, 514 U.S. at 437.").

[4] *See* JM, 9-5.002(A) (The duty to search for discovery includes information to be disclosed under Rule 16).

[5] The government reported in September 2022 that the FBI has eighteen of Mr. Andrade's devices in its possession. *See* Dent Decl. at ¶ 9, Exh. 11.

4

devices were purportedly still being reviewed by a Department of Justice ("DOJ") taint team – did the government produce anything from the devices to Mr. Andrade. Even then, despite signing a stipulation that if Mr. Andrade dismissed his motion to compel, then it would have the taint team provide Mr. Andrade's devices only to Mr. Andrade as the taint team continued its review (Dkt. #100), the government produced only a small number of documents from Mr. Andrade's Motorola G7 phone and nothing from the other three cell phones seized by the government.  Dent Decl. at ¶12.

We have since learned through discovery that while Mr. Andrade was having to file a motion to compel the production of his own Motorola G7 and other devices that supposedly were being reviewed by a taint team and therefore could not be produced, the taint review of the Motorola had been completed almost two years earlier, on August 25, **_2020_**.  On that date,  the Regional Computer Forensics Laboratory ("RCFL") reported to Special Agent Wynar that it was providing three "minimized working copies of extractions from the Motorola G7 phone, as requested by one of the case agents."  The taint review was completed for the remaining devices on December 18, 2020.  Dent Decl. at ¶13.

While the government at various times has reported that it "intends to return Mr. Andrade's devices that are currently in the government's possession to him," that it was "working to understand which of his devices in the FBI's possession" had been imaged, and that it "hopes to return these devices [the ones that had been imaged] shortly," it has not done so. Dent Dec. at ¶14.  After Mr. Andrade filed his _second discovery motion_, the government produced an index and a 3TB hard drive, which it said included "images of various devices seized during the course of the government's investigation," but after substantial and time-consuming analysis by Mr. Andrade's eDiscovery vendor, it appears that the 3TB drive produced

DEFENDANT MARCUS ANDRADE'S THIRD MOTION TO COMPEL                3:20-CR-00249-RS-LB

by the government does **not** include Mr. Andrade's four cell phones. Instead, it includes only portions of his Motorola G7 phone, including none of his WhatsApp and Skype messages with Abramoff.  Dent Decl. at ¶14.

On January 12, 2024, King & Spalding sent a detailed letter reminding the government of the history of its failure to provide Mr. Andrade with his own cell phones. The letter asked the government to immediately produce the images that were taken of Mr. Andrade's four cell phones at the time they were seized during the search of his home in March 2020, and the full Cellebrite reports that were in the possession of the forensics laboratory as it conducted its taint review.  The letter asked that, if the government believes any of this material has been produced, then it should identify the production by Bates number. The government did not respond.  *See* Dent Decl. at ¶10.  The Court should order the government to immediately produce the images and Cellebrite reports requested in the January 12, 2024 letter.

**B.    Trezor wallets**

Included among the eighteen devices taken from Mr. Andrade were four Trezor wallets containing records of digital financial transactions, seized from Mr. Andrade's Houston office on March 12, 2020. Not only is the historical financial data on the Trezors material to the preparation of the defense of an indictment that charges money laundering, but the Trezors were obtained from and belong to the defendant and therefore must be produced under Federal Rule of Criminal Procedure 16(a)(1)(E)(iii). When the government declined to produce data from the Trezor wallets, Mr. Andrade moved to compel their production on July 15, 2022 (Dkt. #97 at 3:22).  On July 18, 2022, in exchange for Mr. Andrade withdrawing his motion to compel without prejudice, the government represented to Mr. Andrade and the Court that "rather than waiting for the taint team to complete its review, it asked the taint team to make available for

production only to defense counsel all the materials being reviewed." Dkt. #100 at 1:25-28. Although the government confirmed on September 6, 2022, that Mr. Andrade's four Trezor wallets were among the eighteen devices still in its possession, and although – as set forth above – the taint team had actually completed its review *years earlier*, the government has not produced any data from the Trezors. Dent Decl. at ¶15.

Since then, multiple times – in meet-and-confers, and in emails dated August 24, September 5, September 11, and September 22, 2023 – Mr. Andrade has asked that the government either produce the images it has taken of the data on those Trezor wallets or, alternatively, to permit Mr. Andrade's counsel to send someone to inspect the Trezor wallets and make images of all of the digital currency transactional data on the wallets. Nonetheless, the government has declined to either provide the images or to permit Mr. Andrade's legal team to inspect the Trezors and make its own images of the data. Dent Decl. at ¶15. The Court should order the government to produce all of the data from the Trezors immediately.

**C.    Recordings**

Like the devices, there are many recordings in the case that the government has not produced. The government has never contested its obligation to produce the recordings, and it has, on occasion, agreed to produce the recordings, but its current position is that its "December 23, 2022 discovery letter shows that the FBI recordings have been produced." That letter shows nothing of the kind: it does *not* state that the government has produced *all* of the FBI recordings, but simply indicates in a chart that the documents Bates-numbered FBI-ITV-000001-000274 are FBI recordings. Dent Decl. at ¶16.

In letters and in meet-and-confers going back to May 10, 2022, Mr. Andrade's counsel has repeatedly pointed the government to *specific recordings referenced in the government's*

*own materials that have not been produced,* and described categories of recordings that appear to be missing. The recordings the government refuses to produce include many *of Mr. Andrade himself* that the government made using cooperating, undercover, or other witnesses. These, of course, are at the core of what Rule 16(a)(1)(B) requires the government to produce. Others include recordings of government interviews of key witnesses. These recordings are particularly important in this case because, as Mr. Andrade has previously demonstrated, for interviews in which both a recording and an FBI-302 of interviews have been produced, the FBI-302s sometimes omit exculpatory information found by listening to the recordings. Dent Decl. at ¶17.

The government also has failed to produce recordings referenced in its own emails. For example, Ben Boyer signed a recording agreement with the FBI on April 25, 2019 (or 2018).[6] On May 30, 2019, the case agents emailed Boyer and provided him with suggested questions to ask Mr. Andrade. Afterward, Special Agent Quinn informed Boyer that the call was recorded, and Boyer responds, "Big thumbs up!"  Mr. Andrade's counsel – on March 3, 2022 – specifically requested all calls Boyer recorded on the mobile application referenced in the May 30 email exchange between Boyer and the government, but the government has not produced the recording of the call Boyer had with Mr. Andrade that day.  Dent Decl. at ¶18.  In addition, if Mr. Andrade and Boyer had additional recorded calls at round that same time, then those recordings also should be produced.

Mr. Andrade's counsel has identified unproduced recordings for the government repeatedly, including on August 18, June 22, June 26, 2023. More recently, Mr. Andrade's

---

[6] The Boyer recording agreement is dated twice, with two different years: 2018 and 2019.  Although Mr. Andrade requested clarification from the government, no answer has been provided.  *See* Dent Decl. at ¶18, fn 25.

counsel learned that IRS Agent Bryan Wong recorded an interview he had with Karl Ruzicka, Mr. Andrade's accountant. The government did not produce that recording to Mr. Andrade. Mr. Andrade has no way of knowing how large the universe of unproduced recordings is, but the discovery produced to date gives strong indications that the specific recordings identified above are not the only recordings the government has failed to produce.  Dent Decl. at ¶19.

Mr. Andrade requests that the Court order the government to produce all of the FBI recordings in this case, all of which are material to the preparation of his defense, and some of which are recordings of Mr. Andrade himself.  The Court should order the government to conduct a diligent examination of what recordings were made and remain unproduced, and produce the recordings it is obligated to produce pursuant to Rule 16 as well as *Brady,* including not only those made by FBI agents, but also those made by counter-intelligence agents, Treasury Department employees, Securities and Exchange Commission ("SEC") investigators, and any others who have conducted and recorded interviews related to the investigation of Mr. Andrade.

### D.      Materials from the SEC's Investigation

The case law cited above makes clear that the government's discovery obligations extend beyond production of what is in the possession of the AUSAs.  In the spirit of well-established Ninth Circuit law, nearly two years ago, on March 7, 2022, Mr. Andrade requested that the government produce Rule 16 and *Brady* materials not only in the possession of DOJ and the prosecutorial team, but also in the possession of the Securities and Exchange Commission ("SEC").  The government responded on May 23, 2022 that it does "not have access to SEC documents."  When Mr. Andrade followed up on July 15, 2022 with more specific requests for the SEC's transcripts, memoranda, or recordings of witness statements and/or interviews, the government initially responded on August 9 that "the SEC is a separate government agency and

is not part of the trial team."  The opposite is true.  In fact, the government worked closely with the SEC in this investigation: the DOJ and the SEC conducted numerous joint interviews[7] – including interviews of some of the most important witnesses in the case – and in its press release announcing the indictment of Mr. Andrade, the government references the SEC's assistance in the government's investigation.[8]  After being reminded of these facts, the government agreed to reach out to Alice Jensen of the SEC Enforcement Division, one of the SEC officials who worked on the investigation of Mr. Andrade. Dent Decl. at ¶20.

Mr. Andrade moved to compel the SEC materials on November 28, 2022 (Dkt. # 120). The Court has not yet ruled on that request.  Mr. Andrade's counsel again reminded the government in a May 10, 2023 letter and in subsequent meet-and-confers that it still had received no SEC materials in discovery. Thereafter, *all the government produced was the 279 pages that Mr. Andrade voluntarily produced to the SEC himself on April 25, 2018.*  Dent Decl. at ¶21. With that, the government announced on September 14, 2023, that it had "already provided all SEC documents in our possession.  We will not be producing any additional SEC documents." Dent Decl. at ¶21.

The government's position is flatly inconsistent with Ninth Circuit law, which – as explained above – requires the prosecutors to produce all materials from the SEC's investigation of Mr. Andrade, consistent with its obligations under Rule 16 and *Brady*, whether the

---

[7] *See* Dent Decl. at ¶20, citing interviews of: Warren Cully of DIT Network; David Mata of Block Bits Capital; Melissa Foteh, who worked for Andrade and likely will be a government witness; Brad Grimm, who met Abramoff in a substance abuse program and later introduced him to Dillman; Hung Tran, who helped develop the AML Bitcoin token; and John Szeder, a software engineer for Block Bits.

[8] DOJ Press Release, *Lobbyist Jack Abramoff And CEO Rowland Marcus Andrade Charged With Fraud In Connection With $5 Million Initial Coin Offering Of Cryptocurrency AML Bitcoin* (June 25, 2020), available at https://www.justice.gov/usao-ndca/pr/lobbyist-jack-abramoff-and-ceo-rowland-marcus-andrade-charged-fraud-connection-5.

DEFENDANT MARCUS ANDRADE'S THIRD MOTION TO COMPEL                    3:20-CR-00249-RS-LB

government has actual possession of them or not.  At times, the government has acknowledged its obligation to obtain and produce the SEC documents: on November 8, 2022, it wrote that it was "working with SEC counsel to get their permission to produce documents related to the parallel SEC investigation into AML Bitcoin," and in June 2023, it claimed that it was "working on getting" Mr. Andrade the "SEC investigation materials."  Dent Decl. at ¶22.  But it never produced any such information.

The government's only justification for its failure to do so referenced work product: it emailed on October 29, 2022 that it had "now reached out to Alice Jensen regarding [] files in the SEC's parallel investigation, and she is considering the request. . . . Your request is so broad that it would appear to encompass SEC attorney work product, which I can only assume they will not produce.  Nor would you be entitled to it."  The government added that it has "never heard of the SEC providing a privilege log of materials withheld due to their own privilege" and that it "can't imagine they would do so."  Dent Decl. at ¶23.

These responses are wrong twice.  *First*, they fail to address the central problem with its production: that other than what Mr. Andrade gave the SEC, it has not produced *any* of the SEC's documents, regardless of whether those documents constitute work product.  The government ignored Mr. Andrade's attempt, on November 1, 2022, to provide a narrowly tailored list of some of the many types of "information from the SEC investigation that would be material to the preparation of Andrade's defense and *not* subject to privilege or work product claims, including but not limited to bank statements, interviews and/or testimony, and whistleblower complaints." Dent Decl. at ¶24. *Second*, the government's assertion that Mr. Andrade is not entitled to any of the SEC's work product is meritless.  The work product doctrine is not absolute, but rather is a "qualified immunity" that protects discovery prepared by

11

a party in anticipation of litigation and may be overcome by a showing of need. *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship.") (citing *Upjohn v. United States*, 449 U.S. 383, 401 (1981)).   In similar cases, review and possible production of SEC work product has been required, at least as necessary to fulfill the government's *Brady* obligations.  *See, e.g., United States v. Gupta*, 848 F. Supp. 2d 491, 492-94 (S.D.N.Y. 2012) (where AUSAs from the S.D.N.Y. and an attorney from the SEC conducted joint interviews, the SEC was required to turn over its memoranda relating to joint witness interviews, and the AUSAs were required to review them and produce any *Brady* material to the defendant even though SEC notes were protected work product, because Gupta's interest in having *Brady* material to prepare for the criminal case was a "substantial need" that overcomes work product protection).  As Judge Rakoff explained: "That separate government agencies having overlapping jurisdiction will cooperate in the factual investigation of the same alleged misconduct makes perfect sense; but that they can then disclaim such cooperation to avoid their respective discovery obligations makes no sense at all." *Gupta*, 848 F. Supp. 2d at 492.

SEC documents should have been reviewed by the prosecutors and produced to Mr. Andrade years ago.  Mr. Andrade requests that the Court order the government to produce the requested SEC documents immediately, consistent with its obligations under Rule 16 and *Brady*.

12

### E.    Turnberry Solutions Documents

Despite repeated requests – in meet-and-confers, a July 31, 2023 letter, and a September 26, 2023 email – the government has not made a complete production of documents from Turnberry Solutions, LLC ("Turnberry").  Dent Decl. at ¶25.  The government issued a grand jury subpoena to Turnberry on August 7, 2019, in connection with the investigation that led to the indictment of Mr. Andrade, seeking "records relating to lobbying and promotional efforts made by Turnberry Solutions regarding a product called AML Bitcoin, owned by the NAC Foundation."  Turnberry produced files through its counsel at Jones Day on September 12, 2019. As Mr. Andrade has noted in the meet-and-confers, seven hundred (700) pages of the production made by Turnberry remain unproduced.  Dent Decl. at ¶25.  The Court should order the government to produce the remaining 700 pages of Turnberry documents immediately.

### F.    Abramoff's Devices

The government also has not produced all of the devices it collected from alleged co-schemer Jack Abramoff, many of which likely include more evidence of Abramoff's criminal conduct, as well as Rule 16 and/or *Brady* material. Dent Decl. at ¶26.  The Court already has determined that the government's Rule 16 obligations in this case extend to a range of information relating to alleged co-schemer Jack Abramoff, including "whether Mr. Abramoff may have been working against Mr. Andrade, and how that affects Mr. Andrade's responsibility and scienter." *United States v. Andrade*, April 7, 2023 Discovery Order (Dkt. #165).  Because Abramoff is central to Mr. Andrade's defense, on March 3, 2022, King & Spalding provided a detailed description of ten of the devices collected from Abramoff that are referenced in various FBI documents, but for which the government had not produced images in discovery. Dent Decl. at ¶26. There may be many more devices, the identity of which Mr. Andrade has not yet learned.

13

Two of Abramoff's devices that remain unproduced are of particular interest to the defense: a) a Blu-ray disc; and b) an Oceana USB thumb drive.  King & Spalding's most recent exchange with the government regarding the Blu-Ray disc took place on July 31, 2023, when defense counsel specifically requested that the government produce "a copy of the Blu-ray disc (SVE058604) . . . that the Silicon Valley Regional Computer Forensics Laboratory provided to the case agents on September 27, 2018."[9] The government responded on September 14, 2023, that the Blu-ray disc is "a derivative of the Jack Abramoff iPhone" it produced in July 2023, and that it "may contain potentially privileged material," so it will not produce it. Dent Decl. at ¶27. That a disc "may" contain "potentially" privileged material does not release the government from its obligations under Rule 16 and *Brady* to produce the portions of the disc that are not privileged, and to provide a log of what it claims to be privileged.  In any event, the Abramoff phone produced to Mr. Andrade does ***not*** include the blue-ray disc materials, and so the Court should order the government to produce it.

The Oceana thumb drive recovered from Abramoff's home is referenced in an FBI report dated March 16, 2020.  The FBI report "memorialize[s] the continued examination" of the Oceana thumb drive.  Special Agent Wynar notes that the government was able to recover several deleted files from the drive, including documents relating to the bankruptcy of CS Mining (a company defense counsel knows to be affiliated with the Landfair Capital account Abramoff used to help his fellow miscreants purchase AML Bitcoin and to camouflage his wrongful lobbying activities by suggesting that he was doing AML Bitcoin-related work).  King

---

[9] The Blu-ray disc was created from Abramoff's phone extractions on July 16, 2019, at the direction of Special Agent Ablett, who requested a report of WhatsApp messages and text messages between Abramoff and a list of individuals (not named in the 302 report) from October 4, 2018 to July 16, 2019. Dent Decl. at ¶27.

& Spalding reminded the government in its May 10, 2023 letter addressing outstanding discovery issues, that it still had not produced an image or copy of the Oceana USB thumb drive, but the government still has not produced it. Dent Decl. at ¶28.

Mr. Andrade and his counsel do not know the full universe of Abramoff devices seized by the government, but it goes without saying that the government also should produce any of Abramoff's other devices that it is obligated to produce under Rule 16 and/or *Brady*. The Court should order the government to produce immediately all extractions from Abramoff's devices, including but not limited to those devices that were seized from his home in September 2018.

**G.    Search warrants, subpoenas, and related materials**

Mr. Andrade requested – for a list of individuals and entities – search warrants, underlying affidavits and materials, subpoenas, and fruits of subpoenas, that reference AML Bitcoin, Mr. Andrade, or NAC Foundation.  The government stated in its August 9, 2022 response that "many of the names" listed in this request are not relevant to Mr. Andrade's case. The government has never specified which individuals or entities it thinks are not relevant, and despite implicitly acknowledging that some *were* relevant, it produced nothing. There is no question that the names *are* relevant.  Addressing the government's claim that some of the information sought was irrelevant, a year ago, in his second motion to compel, Mr. Andrade provided the government with detailed information about how each of the individuals and entities is material to Mr. Andrade's defense.  Dent Decl. at ¶29 (citing Dkt. #120).

The government also issued subpoenas to additional individuals – such as David Salmon (who represented NAC Foundation and Mr. Andrade) and Peter Ferrara (who wrote articles at Abramoff's direction that are alleged to contain misrepresentations favoring AML Bitcoin) – but Mr. Andrade has not received the fruits of those subpoenas.  Furthermore, in the course of

reviewing the massive amount of discovery in this case, Mr. Andrade recently learned that the government also has informally requested documents from dozens of witnesses, through phone interviews with AML Bitcoin purchasers conducted by IRS Agent Bryan Wong. None of those documents have been produced.  Dent Decl. at ¶30.

The Court should order the government to produce all Rule 16 and *Brady* material it received in response to subpoenas to the individuals and entities named in this request, and also any documents it received from other individuals who provided documents to the government, whether voluntarily or pursuant to a subpoena.

### H.    Documents Relating to Abramoff's Criminal Wrongdoing

In response to Mr. Andrade's request for documents relating to Abramoff's criminal wrongdoing, the government objected on October 29, 2022 that the request for "all material relating to Abramoff's criminal conduct" is "enormously overbroad."  That Mr. Abramoff is such a prolific criminal that the government finds a request for materials relating to his criminal conduct "enormously overbroad" underscores the importance and materiality of those documents to the preparation of Mr. Andrade's defense. Dent Decl. at ¶31.

The information sought is not merely impeachment; rather, Mr. Abramoff's criminal conduct is a theme of Mr. Andrade's defense.  As Mr. Andrade has contended in seeking discovery, as this Court has recognized in ordering additional discovery from the government, and as Mr. Andrade's defense at trial will establish,  Abramoff was using Mr. Andrade's business and AML Bitcoin to commit the alleged criminal conduct with which Mr. Andrade is charged *and* Abramoff was doing so for purposes of engaging in schemes that were unknown to Mr. Andrade and contrary to what Mr. Andrade was seeking to accomplish.  Information about Abramoff's many schemes – especially those where he engaged in conduct that involved

16

cheating people, working behind the back of his colleagues, and/or advancing his own various

causes and interests– are material to the preparation of Mr. Andrade's defense and will be

exculpatory. The information is not merely *Giglio* material: it is Rule 16 and *Brady* material, and

Mr. Andrade is entitled to it now. Mr. Andrade has already demonstrated how and why

Abramoff's criminal conduct is part of the defense in this case, but even criminal conduct not

part of the defense could be admissible under Federal Rule of Evidence 404(b) and would be

material to the preparation of the defense. Because Abramoff's conduct by design is often

coded, disguised, and elaborate and takes time to investigate, and because the government's

production of materials, as demonstrated above and in prior filings, is regularly incomplete, and

sometimes shuffled, requiring substantial additional time. Dent Decl. at ¶32. There is no reason

to delay production of this information.

   Although the government has produced some documents relating to Abramoff's

wrongdoing, there are many documents material to Andrade's defense that have not been

produced, including but not limited to FBI summaries and 302s relating to or referencing

Abramoff and his prior wrongdoing, plea agreements, documents relating to Abramoff's

undercover work, and Abramoff's informant file.[10] By way of example, the government has

produced nothing from the investigations of Abramoff in the District of Maryland, the Southern

District of New York,[11] the District of Columbia, or the Southern District of Florida. Nor has the

---

[10] Mr. Andrade reminded the government in his May 10, 2023 discovery letter that he has not received FBI statements, notes, or paperwork relating to Abramoff's past cooperation in, or role as an informant in, this and other criminal cases, and statements the government made to Abramoff (including those made to Abramoff by, and documents created by, FBI agents to comply with the Attorney General's Guidelines Regarding the Use of Confidential Informants, III(A)).

[11] The government would have the Court believe that the investigation in the Southern District of New York is unrelated to Mr. Andrade's case. Gov't Response to Court Order, Dkt. # 237 (Nov. 9, 2023) ("Alexander Levin's cell phone [] was seized pursuant to a search warrant in the Southern District of New York in connection with an

---

DEFENDANT MARCUS ANDRADE'S THIRD MOTION TO COMPEL                    3:20-CR-00249-RS-LB

1    government produced materials from the many cases that the FBI 302 reports cross-referenced

2    with Mr. Andrade's case.[12] Dent Decl. at ¶33.  The government should produce material from the

3    cross-referenced cases consistent with its obligations under Rule 16 and *Brady*, if it is

4    exculpatory, if it relates to Abramoff's wrongdoing, or if it is material to Mr. Andrade's defense

5    for any other reason.

6           Finally, the government has not produced all of the bank statements that were used by

7    Abramoff to engage in wrongdoing. By way of example, the government has not produced

8    complete records for the four bank accounts that Landfair Capital Consulting[13] maintained

9    during the relevant time period. In addition, although the government produced a six-page

10   summary of global wire transfers related to Mr. Andrade's case, some of which relate to

11   Abramoff's wrongdoing with various "lobbying" campaigns, it has not produced bank statements

12   for the accounts from which the wires were sent and received.[14]  Dent Decl. at ¶33.

13

14

15

16

17   _____

18   entirely separate investigation") and Hearing Transcript, Dkt. #255 (Dec. 14, 2023) ("[I]t's also not my case.  This is
     a totally separate case . . . a very high-profile case."). However, newly publicized information from unsealed search
19   warrants relating to the Southern District of New York's investigation indicates that the conduct being investigated
     there is the same conduct that Abramoff and Levin were scheming about in some of the messages that were not
20   included in the first production of Abramoff's phone to Mr. Andrade. *See* Dent Decl. at ¶33, fn 56.

21   [12] The FBI "cross-references" cases "indicating that an individual, organization or subject matter is mentioned or
     referenced in a "main file" about another subject matter," and the "FBI indexes only information it considers
22   relevant and necessary for its future retrieval." *See White v. Executive Office of U.S. Attorneys, Federal Bureau of
     Investigation, and Dep't of Justice*, No. 18-CV-841-RJD (S.D.Ill. March 17, 2020).

23   [13] Case agent Wynar discussed with Abramoff, during the search of his home on September 13, 2018, that one of
     the accounts for Landfair Capital Consulting, LLC, controlled by Abramoff and his son, was referred to by the FBI
24   as the "money connection" between Abramoff's activities and AML Bitcoin, and was the same account used by
     Abramoff to fund his other conduct. 1D-37
25
     [14] For example, the government has not produced any of the bank statements for some of the entities Abramoff used
26   to engage in wrongdoing using AML Bitcoin, including: Lexington Strategies, LLC; AFH & Associates, Inc.;
     Pangea, LLC; Stonington Strategies, LLC; and Sepo Holdings, all of which Abramoff used in the course of
27   conducting his illegal lobbying and other wrongdoing. Dent Decl. at ¶33.

28                                             18

_____

DEFENDANT MARCUS ANDRADE'S THIRD MOTION TO COMPEL                    3:20-CR-00249-RS-LB

The Court should order the government to produce promptly: all materials relating to Abramoff's criminal conduct in other jurisdictions, including but not limited to 302s and recordings; complete sets of statements from bank accounts known by the government to have been used for Abramoff's wrongdoing; documents relating to Abramoff's past cooperation in, or role as an informant in, this and other criminal cases; and all documents reflecting government-authorized payments to Abramoff, whether they were made directly or through Abramoff-associated companies or representatives.

## I.      404(b) Evidence

The government has declined to respond to Mr. Andrade's request on September 11, 2023, to produce 404(b) evidence within 30 days.  This CJA case is complex, and review and analysis of the 404(b) evidence produced by the government will be time-consuming.  The government has consistently made productions in ways that require far more time to review than is ordinarily the case, including producing information in non-searchable formats and without Bates numbers, and sometimes shuffling the pages.  In addition, as is demonstrated above, the government has repeatedly failed to make complete productions of material it is obligated to produce, necessitating discovery motions to compel production – the preparation and decisions on which take time. Dent Decl. at ¶34.

Not counting any pre-indictment time, the government has had three and a half years to decide what its Rule 404(b) evidence will be. Dent Decl. at ¶35.  Rule 404(b)(3)(A) requires that the prosecutors provide Mr. Andrade and his counsel "reasonable notice" of 404(b) evidence they intend to offer at trial, "so that the defendant has a fair opportunity to meet it[.]"  There is no reason to delay the production of Rule 404(b) evidence other than to limit Mr. Andrade's time to

19

1   digest it, ensure that the production was complete, and be prepared to respond to it. The Court,

2   therefore, should order that all 404(b) evidence be produced within the next 2 weeks.

3   **J.    Undercover Operations**

4       Mr. Andrade's counsel has informed the government in several meet-and-confers and in a

5   May 10, 2023 letter that it has not received all of the responsive documents relating to AML

6   Bitcoin group chats on Telegram and Discord channels and other documents reflecting

7   undercover ("UC") operations in this case.  The government has never asserted that it is not

8   obligated to produce these materials, and the government's current position is that its November

9   17, 2022 discovery letter shows that the entire UC file, including the Telegram and Discord

10  documents, was produced. The November 17 letter – like the other letter cited by the government

11  in its June 27, 2023 email (discussed above) – shows nothing of the kind.  It does *not* state that

12  the government has produced the entire UC file, but simply indicates in a chart that some of the

13  documents being produced are records from the physical file, which includes, *inter alia*, UC

14  subfiles.  Dent Decl. at ¶36.

15      What the government has already produced from the UC file leaves little doubt there is

16  more that remains unproduced.  Mr. Andrade has provided the government with the names of

17  individuals whose undercover activities do not appear to have been produced, either in the form

18  of documents or recordings, *even though those undercover activities aimed at Mr. Andrade are*

19  *documented in the government's own records*.  For example, an FBI 302 report dated May 16,

20  2018, reflects that Joe Ortiz successfully contacted Andrade with agents present, that the call was

21  recorded, and that Ortiz agreed to record all further contacts with Andrade.  Another 302 report,

22  dated August 27, 2018, indicates that Ortiz emailed with Special Agent Ablett and agreed to ask

23  Mr. Andrade the name of the politician he was working with on his cryptocurrency. The

government has not produced the recordings of any conversations between Ortiz and Mr. Andrade, nor has it produced any recordings of Mr. Andrade speaking with Undercover Employees ("UCE") Ortiz may have introduced him to.  Dent Decl. at ¶37.

In addition, when Mr. Andrade suggested to the government that it had not produced all of the recordings involving Shailendra ("Shalu") Maheshwari, the government claimed that the prosecutors and the case agents "are not aware of any connection between . . . Shailendra Maheshwari and this case."  Yet, a quick search on the Relativity database containing the government's productions in this case reflects that he is referenced in 999 documents, including dozens of drafts and communications that reflect his role in drafting four Asset Purchase Agreements between Japheth Dillman and Ben Boyer (believed to be Purchaser-1 in the Indictment), pursuant to which Dillman was to buy back all of Boyer's AML Bitcoin.  Other documents show that Mr. Maheshwari was introduced to Mr. Andrade by David Mata, an individual who was indicted in a related case and has been cooperating with the government in this case.  Dent Decl. at ¶ 37.

Mr. Andrade also has asked the government on several occasions to produce the messages, email notifications, and other documents or videos relating to the AML Bitcoin Telegram and Discord group chats.  A UCE referred to online as ModernReboot (UCE #8148),[15] joined (or created) four AML Bitcoin group chats – one (1) on Telegram and three (3) on Discord.  One of the videos from the group chats that has not been produced is an April 2020 public zoom that Mr. Andrade conducted with members of the chat groups, demonstrating that the technology for AML Bitcoin worked and that ComplyAdvantage was monitoring

---

[15] ModernReboot's username for online covert activity was created by the FBI's Global Intelligence Task Force on March 7, 2018. Dent Decl. at ¶38.

transactions.  ModernReboot encouraged participants in the group chats to spread negative, untrue information about Mr. Andrade and AML Bitcoin.  Each time a group chat participant writes in a group chat, the members receive email notifications, but the only email notifications produced to Mr. Andrade were a handful of Discord email notifications that were part of Ben Boyer's production to the grand jury.  ModernReboot also created an email account, AMLBitcoinConcerns@protonmail.com, and put the information on the Discord and Telegram group chats so that people could easily file complaints and/or contact the authorities.  Mr. Andrade has not received the messages sent to that email address from group chat members. Dent Decl. at ¶38.

In sum, the Court should order the government to immediately produce all of the documents, recordings, videos, CHS reports, and other materials reflecting undercover operations in this case, including all of the materials described above that the government collected and analyzed during its investigation, as well as all additional items that the government is obligated to produce pursuant to Rule 16 and *Brady*.

**K.    Treasury Department Investigation**

The government has not made any production responsive to Mr. Andrade's July 31, 2023 request for information related to the Treasury Department's investigation of a civil rights complaint Mr. Andrade filed on September 4, 2019, which addresses whether alleged co-schemer Abramoff sought an IRS investigation of Mr. Andrade because Mr. Andrade was refusing to capitulate to Abramoff's escalating attempts to extort money from him.  Dent Decl. at ¶39. Special Agent Vicki Morgan at the Treasury Department's Office of Inspector General was investigating the matter.  She held a conference call with Mr. Andrade and his counsel to discuss the matter, and she requested (and received) from Mr. Andrade's counsel additional information

and supporting documentation relating to the civil rights complaint.  In April 2020, Agent

Morgan stopped communicating with Mr. Andrade and his counsel, and they never heard

anything back from Treasury, even after they inquired about the investigation.  Although the

government has not produced a single document responsive to this request, it reported on

September 14, 2023, that it has "produced the responsive documents in [its] possession,"

impliedly suggesting that it does not have any such documents.  Dent Decl. at ¶39.

That answer is insufficient because the IRS has been working for years with the

prosecutors on the investigation and prosecution of Mr. Andrade, and the government has

knowledge of and access to the Treasury Department's information about its investigation of Mr.

Andrade's civil rights complaint against Abramoff.  As set forth in detail in Ms. Dent's

declaration, IRS Special Agent Bryan Wong has participated extensively in the criminal

investigation of Mr. Andrade.  Dent Decl. at ¶40.  At a minimum, therefore, the prosecutors are

obligated to reach out to the Treasury Department to see whether there are any documents that

should be produced to Mr. Andrade pursuant to Rule 16 and *Brady*.  The Court has already ruled

that Mr. Andrade has established a connection to this case surrounding Mr. Abramoff's

involvement with fellow miscreants and that "limiting the production to references to Mr.

Andrade and AML Bitcoin is too narrow. … a broader range of information is material.  It is not

just about Mr. Abramoff or Mr. Andrade and AML Bitcoin.  It is about the larger context of the

business model for cryptocurrency, whether Mr. Abramoff may have been working against Mr.

Andrade, and how that affects Mr. Andrade's responsibility and scienter." *Andrade* at *7.

The Court should order the government to inquire with the Treasury Department about

the requested investigation documents and promptly produce all the documents relating to the

DEFENDANT MARCUS ANDRADE'S THIRD MOTION TO COMPEL          3:20-CR-00249-RS-LB

investigation of Mr. Andrade's civil rights complaint that it is obligated to produce under Rule 16 and *Brady*.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should grant Defendant's Motion to Compel and require the government to produce all of the documents described above, to provide Bates numbers for any documents it claims to have produced but that Mr. Andrade has not been able to find, and to provide destruction reports for any requested documents that have been destroyed.

Respectfully submitted,

DATED: January 25, 2024                    KING & SPALDING LLP

By: */s/ Michael J. Shepard*

MICHAEL J. SHEPARD
KERRIE C. DENT
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

24