ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7230
christiaan.highsmith@usdoj.gov
david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | CASE NO. CR 20-00249 RS (LB)<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT ANDRADE'S THIRD MOTION TO COMPEL DISCOVERY [DKT. 275]**<br><br>Hearing Date; March 7, 2024<br>Hearing Time: 10:30 a.m.<br>Court: Hon. Laurel Beeler, Courtroom B, 15th Fl. |

# TABLE OF CONTENTS

I. Introduction ....................................................... 4
II. Specific Items of Discovery at Issue ....................................................... 4
  A. Andrade's Mobile Phones ....................................................... 4
  B. Trezor Wallets ....................................................... 5
  C. Recordings ....................................................... 6
  D. Materials from SEC Investigation ....................................................... 7
  E. Turnberry Solutions Documents ....................................................... 8
  F. Abramoff's Devices ....................................................... 8
  G. Search warrants, subpoenas, and related materials ....................................................... 9
  H. Documents Related to Abramoff's Criminal Wrongdoing ....................................................... 10
  I. 404(b) Evidence ....................................................... 11
  J. Undercover Operations ....................................................... 12
  K. Treasury Department Investigation ....................................................... 13
III. Conclusion ....................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963)……………………………………………………………*passim*

*Pennsylvania v. Ritchie*, 480 U.S. 39 .......................................................................................... 10

*United States v. Barnes*, 49 F.3d 1144 (6th Cir. 1995) ................................................................ 11

*United States v. French*, 974 F.2d 687 (6th Cir. 1992) ................................................................ 12

*United States v. Giacomini*, 2022 WL 393194 (N.D. Cal. 2022) .................................................. 12

*United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012) ...................................................... 8

*United States v. Kern*, 12 F.3d 122 (8th Cir. 1993) ....................................................................... 12

*United States v. Martin*, 2009 WL 997396 (C.D. Cal. 2009) ........................................................ 12

*United States v. Mujahid*, 2010 WL 11688561 ............................................................................. 12

*United States v. Peyton*, 28 Fed.Appx. 655 (9th Cir. 2002) ........................................................... 12

*United States v. Prochilo*, 629 F.3d 264 (1st Cir. 2011) ........................................................... 10, 11

*United States v. Ramirez-Krotky*, 177 Fed.Appx. 746 (9th Cir. 2006) ......................................... 12

*United States v. Stringer*, Case No. CR 03-432-HA, at *4, 2005 WL 8167057 (D. Or. Mar. 4, 2005) ..... 8

*United States v. Vega*, 188 F.3d 1150 (9th Cir 1999) .................................................................... 11

*United States v. White*, 816 F.3d 976 (8th Cir. 2016) ..................................................................... 12

**Federal Rules**

Fed. R. Evid. 404 .......................................................................................................................... 11

Fed. R. Evid. 404(b)(3)(A) ............................................................................................................. 11

**I. Introduction**

The Court should deny Defendant Andrade's Third Motion to Compel Discovery. Dkt. 275 ("Third Mot. to Compel"). The motion is unwarranted and unnecessary. The government has been working assiduously to produce a huge amount of discovery and continues to scour files across multiple agencies at Andrade's request in an effort to locate Rule 16, *Brady*, and *Giglio* material. In some instances, the government has reproduced discovery so that Andrade can access it more readily rather than going back to previous productions. Trial in this case is set for August 5, 2024, more than five months away, yet Andrade makes premature demands for discovery, much of which is either irrelevant or has already been produced to him. Specifically, Andrade's Third Motion to Compel seeks 11 categories of material. The government addresses each in turn below.

**II. Specific Items of Discovery at Issue**

**A. Andrade's Mobile Phones**

Andrade claims the government has not produced four cell phones seized from Andrade's residence in March 2020. Third Mot. to Compel at 4. He asks the Court to order the government to produce forensic images and Cellebrite reports from the phones. *Id.* (citing January 12, 2024, King & Spaulding Discovery Letter, Exhibit 11 to Dent Decl.) ("Jan. 12, 2024, K&S Letter"). Andrade references four cell phones—two Motorola and two LG cell phones—but his argument centers around the Motorola G7 XT1955-5 cell phone, images of the cell phone, and Cellebrite reports generated from it. Andrade invents reports and images that do not exist.

As an initial matter, despite Andrade's claim that the government has not produced the cell phones to the defense, the United States in fact returned the Motorola G7 to Andrade's counsel on March 13, 2020. *See* Property Release/Return Receipt, Exhibit 1 to Decl. of AUSA C. Highsmith in Support of the United States' Oppo. to Def.'s Third Mot. to Compel ("Highsmith Decl."). And the United States will return the other three cell phones to counsel as soon as reasonably possible so that Andrade has the complete contents of those cell phones.

Regarding the images and Cellebrite reports that Andrade demands, on December 8, 2022, the government produced a 3TB hard drive containing images of devices seized from Andrade. *See* Exhibit 11 to Dent Decl., Jan. 12, 2024, K&S Letter. Andrade complains that the production contains

incomplete images and Cellebrite reports, and he is correct. The government was only able to image a limited portion of the Motorola G7 cell phone and was not able to successfully image the other cell phones, presumably because of technological constraints. With regard to the Motorola G7, the government obtained at least a partial image of the device, conducted a taint review of that image, and then created a post-taint-review image of the device. It is possible that the government produced only the post-taint review image of the Motorola G7 phone. Andrade specifically asks for a Western Digital hard drive (SVE060371), which contains an image of the Motorola G7 taken prior to the taint review. Although SVE060371 is duplicative of the Motorola G7 previously returned to Andrade, the government will produce it to counsel immediately.

Regarding the Cellebrite reports Andrade seeks, the government obtained only a limited Cellebrite report from the Motorola G7 image, which was produced previously and which Andrade does not contest. The government obtained no Cellebrite reports from the other three cell phones referenced by Andrade. Andrade demands the Cellebrite report for the Motorola G7 referenced in the document with Bates No. FBI-MAIN-0003445, but the government produced that report on December 8, 2022. Andrade is correct that the Cellebrite for the G7 report is incomplete, but that is not the government's fault; the government turned over what it successfully extracted from the cell phone. The government has no other, better Cellebrite report.

In summary, regarding the four cell phones Andrade seeks, the government returned one cell phone nearly four years ago and will return the other three cell phones shortly. The government will produce the duplicative image of the Motorola G7 cell phone (SVE060371). Andrade's motion is moot and should be denied.

**B. Trezor Wallets**

Andrade asks the government to produce four Trezor wallets seized from his Houston office on March 12, 2020. Third Mot. to Compel, at 6. He claims that the wallets contain records of digital financial transactions. *Id.* Andrade is not accurately representing a Trezor wallet. As the government has repeatedly informed defense counsel, and as a Google search reveals, a Trezor wallet stores digital currency offline and secured by a private key that is only held by the owner of the wallet. *See* https://trezor.io/. Therefore, returning the Trezor wallet, which might contain digital currency, would be

akin to the government returning a safe full of cash considered evidence and proceeds of a crime seized from a defendant's residence pursuant to a search warrant prior to the defendant's trial. In fact, one of Andrade's former employees told the FBI that Andrade had Trezor wallets which contained Bitcoin, Ethereum, and Litecoin. *See* Bates No. FBI-302-010179.

Andrade's request for images of the Trezor wallets makes no sense. Andrade—not the government—has the passwords to the wallets. Only Andrade can access the wallets and the digital currency stored inside. Similarly, Andrade's request to allow someone from the defense team to inspect the Trezor wallets and make images of them makes no sense because it would allow Andrade an opportunity to access the digital currency on the wallets. In other words, allowing the defense access to the wallets pre-trial is like allowing a defendant to access a safe full of cash seized during a search warrant as evidence of a crime and remove the cash from the safe stored in evidence before trial. The government has repeatedly told defense counsel that if they provide the passwords to the Trezor wallets the government will report back to the defense on what digital currency is contained inside those wallets. The defense has either ignored or refused the government's invitation. The Court should deny Andrade's motion to compel access to the Trezor wallets.

**C. Recordings**

Andrade asks the Court to order the government to (1) "produce all of the FBI recordings in this case," Third Motion to Compel, at 9; and (2) "conduct a diligent examination of what recordings were made and remain unproduced, and produce the recordings it is obligated to produce pursuant to Rule 16 as well as Brady, including not only those made by FBI agents, but also those made by counter-intelligence agents, Treasury Department employees, … 'SEC' investigators, and any others who have conducted and recorded interviews related to the investigation of Mr. Andrade." *Id.* Andrade's request is ridiculously overbroad and seeks material far beyond the scope of Rule 16.

As an initial matter, Andrade continues to twist the record regarding recordings. Third Mot. to Compel, at 7-8. He states that the government refuses to produce recordings of Andrade himself. *Id.* at 8. That is not true; the government has produced all recordings of Andrade in its possession, and the government will continue to look for and produce any additional recordings of Andrade that inadvertently may not have been produced. Andrade invents recordings because he thinks they might

exist and then states in letters to the government and filings to the Court that they do in fact exist.

Further, Andrade asks for an IRS recording of an IRS interview with Karl Ruzicka, Andrade's accountant. To the extent this has not yet been produced, the government will produce it immediately.

Next, Andrade's request that the Court order the government to produce all of the FBI recordings in this case makes no sense because it is overbroad and seeks information outside the scope of Rule 16. The government has produced the entire UC file and numerous recordings. The government will produce all recordings it is required to produce under Rule 16 and *Brady*. But it makes no sense—and the law does not require—that the government produce irrelevant, non-*Brady* recordings, to the extent they even exist. Further, Andrade's request that the Court order the government "to conduct a diligent examination of what recordings were made and remain unproduced," is completely unnecessary. The government has conducted a diligent examination of the recordings in this case, continues to conduct a diligent examination of recordings in the case, and will produce all recordings required by Rule 16 and *Brady* not previously produced.

Finally, Andrade asks for any recordings "made by counter-intelligence agents, Treasury Department employees, SEC investigators, and any others who have conducted and recorded interviews related to [this case]." This request is overbroad and unwarranted. Andrade's unsupported request for recordings by "counter-intelligence agents" belies the fact that his motion is a fishing expedition divorced from Rule 16 and *Brady*. The government will of course comply with its obligations to produce recordings under Rule 16 and *Brady*, but the defense seeks material without a valid basis for believing it exists and furthermore seeks information beyond the scope of Rule 16. Andrade's overbroad, unfounded, and unnecessary motion to compel recordings should be denied.

**D. Materials from SEC Investigation**

Andrade asks for SEC transcripts, memoranda, recordings of witness statements, interviews, bank statements, and whistleblower complaints. Third Mot. to Compel, at 9. The SEC does not have interview transcripts or recordings of witness statements. Without conceding that Andrade is entitled to any material in the SEC case file, the case team will review non-privileged, non-work product material in the SEC's investigative file and produce to the defense information in the file that is subject to Rule 16 and *Brady*. *See, e.g.*, *United States v. Stringer*, Case No. CR 03-432-HA, at *4, 2005 WL 8167057

(D. Or. Mar. 4, 2005) (granting SEC's motion to quash trial subpoena for SEC documents protected by attorney-client and deliberative process privilege and attorney work product doctrine after satisfactory review of SEC file for potential *Brady* material). Andrade's citation to *United States v. Gupta*, 848 F. Supp. 2d 491, 492-94 (S.D.N.Y. 2012), therefore is distinguishable because in that case the USAO refused to review the SEC file for *Brady* material in that case whereas here the government will conduct the review and produce the results of that review as required by Rule 16 and *Brady*. Accordingly, Andrade's motion regarding SEC materials is moot and should be denied.

**E. Turnberry Solutions Documents**

Andrade is correct that the government's production of materials received from Turnberry Solutions is missing approximately 700 pages. On September 12, 2019, Turnberry's counsel Jones Day made a production of documents and claimed in a letter that it had produced documents with Bates numbers TSLLC_0000001 – TSLLC_0001867. Third Mot. to Compel, at 13. However, the government does not have 700 pages in the case file, TSLLC_0001143 – 1866. The government has turned over to Andrade everything in the case file; there is nothing more to produce. Further, the government reached out to Jones Day concerning the production but has not yet received a response.

**F. Abramoff's Devices**

Andrade asks the Court to order the government to produce all extractions from Abramoff's devices including from devices seized from Abramoff's home in September 2018. Third Mot. to Compel, at 15. Andrade's request is not permitted by law, overbroad, and unnecessary.

First, as Andrade knows, the government cannot produce what it is not entitled to seize. *See* Discovery Order, Dkt. 256, at 3 ("[T]he government cannot produce information that it cannot access lawfully. Put another way, the scope of the search warrant defines the government's ability to produce information."); *United States v. Balwani*, 18-cr-258, EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022) (Dkt. #1393) ("because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive [electronic data], it could not have been under an obligation to review or turn over that data to the defense as potential Brady material"). Therefore, the government cannot produce portions of Abramoff's devices unless authorized by Attachment B of a search warrant. Put differently, the government can only produce to Andrade material from Abramoff's devices responsive to

Attachment B of the search warrant authorizing their search and seizure. To the extent Andrade seeks material from Abramoff's devices outside of what Attachment B authorizes the government to seize, the Third Motion to Compel must be denied.

Second, the government has produced all of the material seized from Abramoff's devices that it is entitled to search and seize pursuant to Attachment B of Abramoff search warrant. Andrade seeks two items "of particular interest"—a Blu-ray disc and an Oceana USB thumb drive. The government has already produced the contents of the Blu-ray disc (meaning that the disc will be duplicative of what has already been produced) and the government has already produced the Oceana USB thumb drive. Nonetheless, for the convenience of Andrade, and without waiving any arguments that Andrade is not entitled to production of the devices, the government will produce Blu-ray disc and an Oceana USB thumb drive immediately. Andrade's motion to compel should be denied.

**G. Search warrants, subpoenas, and related materials**

Andrade asks the Court to order "the government to produce all Rule 16 and *Brady* material it received in response to subpoenas and entities named in this request, and also any documents it received from other individuals who provided documents to the government, whether voluntarily or pursuant to a subpoena." Third Mot. to Compel, at 16. Andrade does not explain in his Motion what he means by "entities named in this request." Regardless, Andrade's request is overbroad. The government has produced a tremendous amount of Rule 16 material—and of course is in the process of producing *Brady* and *Giglio* material. Further, the government has a continuing obligation to produce material under Rule 16 and will make productions if additional documents that fall under Rule 16 come to the government's attention during this review and trial preparations. To the extent Andrade is seeking search warrants and related materials that reference Andrade, AML Bitcoin, or the NAC Foundation those materials have been produced.

Andrade only mentions two specific subpoenas to two individuals—Peter Ferrara and David Salmon—and states that the government never produced subpoena returns from either Ferrara or Salmon. The government never received materials from Ferrara. The government will be producing the returns from Salmon shortly.

In summary, Andrade's request is overbroad and unnecessary. The Court should deny it.

### H. Documents Related to Abramoff's Criminal Wrongdoing

Andrade seeks "all material relating to Abramoff's criminal conduct." Third Mot. to Compel, at 16. Andrade's request is overbroad, unnecessary, and premature. *See United States v. Prochilo*, 629 F.3d 264 (1st Cir. 2011) (reversing district court order granting defense motion to compel all evidence of cooperator's wrongdoing). The government will produce all documents related to Abramoff's criminal wrongdoing in compliance with this Court's April 7, 2023 Discovery Order, Rule 16, *Brady*, and *Giglio*. In cases where there are close questions about disputed material where the defense disagrees with the government's determination that material is not discoverable under *Brady* and where the defense has "articulate[d] with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and … why this evidence would be both favorable to him and material," the government will present it to the Court for *in camera* review. *See Prochilo*, 629 F.3d at 268 (citing, among other cases, *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15, 59-60).

As Andrade admits, this case is many months before trial. The government must conduct a comprehensive review of material in its possession relating to Abramoff's criminal wrongdoing and produce Rule 16, *Brady*, and *Giglio* information. "The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*." *Id.* (citing *Ritchie*, 480 U.S. at 59-60). "At least where a defendant has made only a general request for *Brady* material, the government's decision about disclosure is ordinarily final—unless it emerges later than exculpatory evidence was not disclosed." *Id.* at 268.

Here, Andrade has made an impermissibly broad and general request for all documents related to Abramoff's wrongdoing in other jurisdictions and all cooperation in, or role as a criminal informant in, other criminal cases. Third. Mot. to Compel, at 19; *see United States v. Si*, 343, F.3d 1116, 1122 (9th Cir. 2003) (magistrate judge ordered government to produce reports pertaining to cooperator's participation in unrelated and ongoing investigations, district court reversed magistrate judge's order, and Ninth Circuit affirmed district court). The government agrees that Abramoff's plea agreements, some FBI 302s, benefits received, and other information contained in FBI's files will be produced to Andrade's counsel. However, the Court should not order the government to make an overbroad production of all evidence of Abramoff's criminal conduct or role in completely separate criminal cases.

Nor should the Court impose a deadline on the government's production because a deadline is premature with trial many months away.

Andrade's motion to compel should be denied, although he has the ability to request specific materials after the government has determined that they are not discoverable and, provided Andrade makes some showing that the materials could contain favorable, material evidence the Court could hold an *in camera* review of the disputed materials. *Prochilo*, 629 F.3d at 268. At this point, however, any order that the government release the overbroad category of material related to Abramoff's criminal wrongdoing should be denied.

**I. 404(b) Evidence**

Defendant Andrade next ask this Court to compel the government to provide notice of any 404(b) evidence it intends to use at trial "within two weeks," which would be more than five months before the scheduled trial date of August 5, 2024. Defendant cites no authority for a demand for 404(b) notice this far in advance of trial.

Federal Rule of Evidence 404(b) requires the government to provide reasonable notice of its intent to introduce at trial evidence of prior crimes, wrongs, or acts. Fed. R. Evid. 404(b)(3)(A). Rule 404(b) does not specifically define what constitutes 'reasonable notice' generally; rather, it depends on the facts of each case. *See* Fed. R. Evid. 404, Advisory Committee Notes on 1991 Amendments ("no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case."); *see also United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir. 1995). Notice must simply be timely enough to "reduce surprise and promote early resolution of admissibility issues." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir 1999). A district court has broad discretion in deciding whether the Government has satisfied the Rule's notice and admissibility requirement. *United States v. Peyton*, 28 Fed.Appx. 655, 657–58 (9th Cir. 2002).

While each case presents unique facts, courts have routinely held that 404(b) notice given weeks before trial is reasonable, even in complex cases. *See United States v. Ramirez-Krotky*, 177 Fed.Appx. 746, 748 (9th Cir. 2006) (upholding admission of 404(b) evidence when disclosure and discussion occurred "at least a week before trial"); *United States v. Kern*, 12 F.3d 122, 124 (8th Cir. 1993) (upholding district court decision that disclosure of 404(b) notice was reasonable; noting that magistrate

judge ordered that 'bad act' evidence be disclosed at least 14 days before trial); *United States v. White*, 816 F.3d 976, 984 (8th Cir. 2016) (approving notice made one week prior to trial); *United States v. French*, 974 F.2d 687, 695 (6th Cir. 1992) (same).

District courts in the Ninth Circuit have also routinely upheld as adequate 404(b) notice given even weeks before trial. *See United States v. Giacomini*, 2022 WL 393194 *4 (N.D. Cal. 2022) (holding that it was "was more than sufficient notice" when government notified defendant of intent to admit 404(b) evidence 53 days before trial); *United States v. Martin*, 2009 WL 997396 *4 (C.D. Cal. 2009) (denying motion to bar admission of 404(b) evidence when government provided notice three weeks prior to trial); *United States v. Mujahid*, 2010 WL 11688561 (D. Court, Alaska) (ordering government to identify and turn over 404(b) evidence two weeks prior to trial).

Defendant cites to no authority for the general proposition that the government must provide its 404(b) notice more than five months prior to trial, or any basis on which this Court can cite as authority for such an order. Nor does defendant cite to anything specific in this case that would warrant such an extraordinarily early 404(b) notice requirement.

In fact, it is unreasonable to set a deadline now for the government to provide its 404(b) notice so far away from trial, when the government cannot be expected to have fully developed its trial strategy.

**J. Undercover Operations**

Andrade asks the Court to order the government "to immediately produce all of the documents, recordings, videos, CHS reports, and other materials reflecting undercover operations in this case … as well as all additional items that the government is obligated to produce pursuant to Rule 16 and Brady." Third Mot. to Compel, at 22. This request is overbroad and unnecessary on its face.

First, the government has already produced the entire FBI UC subfile, which contains the UC recordings in this case. The government has repeatedly told Andrade's counsel this. Nonetheless, Andrade insists that other recordings exist that in fact do not exist. For example, Andrade demands group chats, messages, email notifications, and other documents or videos relating to the AML Bitcoin Telegram and Discord group chats. *Id.* at 20, 21. He also states that an FBI undercover, Modern Reboot (UCE#8148) joined four AML Bitcoin groups chats on Telegram and Discord, including a public Zoom,

and implies that the UCE recorded these chats—the UCE did not.[1] The government has produced all Telegram and Discord material in its possession—there are not additional, unproduced chats, messages, videos, email notifications, or other documents. Nonetheless, for Andrade's convenience, the government will re-produce Discord chats and screenshots of Discord chats in its possession.[2]

Second, Andrade's correspondence with the government and his Third Motion to Compel indicate that Andrade believes recordings exist when in fact they do not or when such recordings were already produced. For example, Andrade claims that the government has recordings of Shailendra ("Shalu") Maheshwari relevant to this case. Third Mot. to Compel, at 21. The government does not have recordings of Maheshwari in its casefile. Andrade is inventing recordings that do not exist.

Further, Andrade asks for a Joe Ortiz recording that was previously produced. To ensure Andrade can readily access the recording, the government will produce it again.[3]

In summary, Andrade's motion as to UC operations is unfounded and overbroad and his motion should be denied.

**K. Treasury Department Investigation**

Andrade asks the Court to order the case team "to inquire with the Treasury Department about the requested investigation documents and promptly produce all the documents relating to the investigation of Mr. Andrade's civil rights complaint that it is obligated to produce under Rule 16 and *Brady*." Third Mot. to Compel, at 24.

First, the government case team has reached out to Treasury and will produce Treasury's 59-page Complaint Referral Memorandum to Andrade. The government does this as a courtesy and does not concede that this material is Rule 16 or *Brady*. Andrade complains that the Treasury Department investigator stopped communicating with him and his former counsel. Presumably, that is because the Treasury Department concluded that Andrade's allegations were completely unfounded and unsupported. Nonetheless, the government case team will continue speaking with Treasury

[1] Andrade further claims that UCE#8148 "spread negative, untrue information about [him] and AML Bitcoin." Andrade does not support this claim, and the government disputes his characterization.

[2] Reference number SF-2113481-UC_14 (1A-2).

[3] Reference 1A-63 (May 16, 2018, recoding of Joe Ortiz and Andrade).

investigators, requesting documents from their case file, and will turn over Rule 16 and *Brady* material. Accordingly, Andrade's motion is moot and the Court should deny it.

**III. Conclusion**

For all the foregoing reasons, the Court should deny in its entirety Defendant Andrade's Third Motion to Compel Discovery.

DATED: February 15, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

____________/s/_________________
CHRISTIAAN HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys