MICHAEL J. SHEPARD (SBN 91281)
  mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone:    +1 415 318 1200

KERRIE C. DENT (Admitted *pro hac vice*)
  kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
  cindy@cadiamond.com
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cr-00249-RS |
| Plaintiff, | |
| v. | **DEFENDANT ROWLAND MARCUS ANDRADE'S REPLY BRIEF IN SUPPORT OF THIRD MOTION TO COMPEL** |
| ROWLAND MARCUS ANDRADE, | Hon. Laurel Beeler, Magistrate Judge |
| Defendant. | Hearing: March 7, 2024, 10:30 a.m. |

1

**TABLE OF CONTENTS**

2    I.      ANDRADE'S MOBILE PHONES ......................................................................... 2

3    II.     TREZOR WALLETS. ....................................................................................... 3

4    III.    RECORDINGS ................................................................................................ 4

5    IV.     MATERIALS FROM THE SEC'S INVESTIGATION ......................................... 5

6    V.      TURNBERRY SOLUTIONS DOCUMENTS. ...................................................... 6

7    VI.     ABRAMOFF'S DEVICES. ................................................................................ 7

8    VII.    SEARCH WARRANTS, SUBPOENAS, AND RELATED
9            MATERIALS. ................................................................................................ 8

10   VIII.   ABRAMOFF'S CRIMINAL WRONGDOING ...................................................... 9

11   IX.     404(B) EVIDENCE ....................................................................................... 10

12   X.      UNDERCOVER OPERATIONS ........................................................................ 11

13   XI.     CONCLUSION .............................................................................................. 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                          3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*States v. Balwani*,
    18-cr-258, EJD, Order..................................................................................................7, 8

that the
    FBI 302 .........................................................................................................................10

*United States v. Bryan*,
    868 F.2d 1032 (9th Cir. 1989).........................................................................................6

*United States v. Budziak*,
    697 F.3d 1105 (9th Cir.2012) ..........................................................................................1

*United States v. Gupta*,
    848 F. Supp.2d 491 (S.D.N.Y. 2012)..........................................................................5, 6

*United States v. Olano*,
    62 F.3d 1180 (9th Cir.1995) ...........................................................................................12

*United States v. Si*,
    343 F.3d 1116 (9th Cir. 2003)........................................................................................10

*United States v. Stringer*,
    2005 WL 8167057 (D. Or. Mar. 4, 2005) .......................................................................6

**Court Rules**

Fed. R. Crim. Pro. 16(a)(1)(E)(iii).......................................................................................1

Rule 16........................................................................................................................ *passim*

Rule 404(b) .........................................................................................................................9, 11

**Other Authorities**

*Cryptocurrency Hardware Wallets: The Ultimate Guide to Secure Storage*,
    Medium (July 6, 2023)

    https://medium.com/coinmonks/cryptocurrency-hardware-wallets-have-
    become-an-essential-tool-for-securely-storing-digital-assets-b8a9e22376c0 ..........................4

DEFENDANT SERGIO SOLANO'S SENTENCING MEMORANDUM          3:21-CR-00263-VC

1    The government's response to the bulk of Mr. Andrade's motion is that it is "working

2    assiduously to comply with its discovery obligations, and that an order is "unnecessary" because

3    it will comply with those obligations. *See, e.g.,* Opposition at 4:4, 5:19-21; 8:6-7; 9:28; 4:2. But

4    this "trust us" mantra is long past its sell-by date: it first appeared in response to a discovery

5    motion filed by Mr. Andrade's prior counsel *over three years ago. See* Dkt. #38 at 1:16-17, and

6    yet more motions are still required to obtain core Rule 16 discovery.

7    This "trust us" mantra resurfaces here, despite that, even after dozens of meet-and-

8    confers, and more than three and a half years after indictment, Mr. Andrade had to bring this

9    motion to obtain discovery required on the face of Rule 16, such as access to some of his cell

10    phones and his four Trezor wallets that were seized from him nearly four years ago.  It resurfaces

11    here amidst government assertions that it "continues to scour files across multiple agencies at

12    Andrade's request in an effort to locate Rule 16, *Brady*, and *Giglio* material," even though,

13    despite years of requests from Mr. Andrade and years of working with the Securities &

14    Exchange Commission on this investigation, the government has produced nothing from the SEC

15    except 279 pages that Mr. Andrade himself produced voluntarily to the SEC years ago.  It

16    resurfaces here in the same filing in which the government refuses to comply with the

17    unambiguous dictates of Rule 16, which require it to make Mr. Andrade's Trezor wallets –

18    which were "obtained from [and] belong[] to the defendant," Fed. R. Crim. Pro. 16(a)(1)(E)(iii)

19    – available for inspection, regardless of its (baseless) excuse for refusal.  And it resurfaces here,

20    accompanied by claims that some of Mr. Andrade's requests are for items invented by Mr.

21    Andrade, even though Mr. Andrade's supposed "invented" requests are based on FBI

22    memoranda calling out the existence of the items.

23    Whether or not, despite all these misses, the government has "been working assiduously

24    to produce a huge amount of discovery," does not matter.  Good faith is not a defense for the

25    government's failure to live up to its discovery obligations.  *See United States v. Budziak*, 697

26    F.3d 1105, 1112–13 (9th Cir.2012) ("While we have no reason to doubt the government's good

27    faith in such matters, criminal defendants should not have to rely solely on the government's

28    word that further discovery is unnecessary."). What *does* matter is that some of the most

1

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                                     3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

1    important Rule 16 and *Brady* material in the case remains unproduced.  What also matters is that

2    given the many broken government promises detailed below, and given the volume of discovery

3    that remains to be produced and reviewed, and the need to follow up on what the production

4    reveals, the time to trust the government has expired, and the Court should order the production

5    of all the requested data immediately.

6    **I.    ANDRADE'S MOBILE PHONES**

7            The government argued *on January 8, 2021*, that the Court should deny prior counsel's

8    discovery motion for evidence seized pursuant to search warrants because the "government [was]

9    . . . processing already-seized evidence for production." (Dkt. #38) at 8.  Taking the government

10   at its word, Judge Seeborg denied Mr. Andrade's motion. (Dkt. 41, 1/26/21).  On *July 15, 2022*,

11   Mr. Andrade's current counsel filed a motion to compel discovery, seeking the materials that

12   were seized from Mr. Andrade's home and offices, which the government was refusing to

13   produce because it claimed (falsely)[1] that the materials were still being reviewed by a taint team.

14   Dkt. #97 at 3:22.  A few days later – after meet-and-confers and after Mr. Andrade filed a motion

15   to obtain materials the government had agreed to produce a year and a half earlier -- the

16   government complied with Mr. Andrade's request and "asked the taint team to make available

17   for production only to defense counsel all the materials being reviewed."  But years and many

18   meet-and-confers later the government concedes that when this motion was filed, it still had not

19   produced three of the requested mobile phones and had been able to image only a "limited

20   portion" of the Motorola G7.

21           As this reply brief was being finalized, the government delivered some devices, which

22   Mr. Andrade has not yet been able to review.  Pending that review, two issues remain.  First, the

23   government writes as if production of the hard drive (SVE060371) that contains the fourth cell

24   phone (the Motorola G7) Mr. Andrade requested – by serial number – on March 3, 2022 will be

25   "duplicative of the Motorola G7" previously returned to Mr. Andrade.  But according to the

26

27   [1] As set forth in Mr. Andrade's opening brief, while Mr. Andrade was having to file a motion to compel the
     production of his own Motorola G7 and other devices that supposedly were being reviewed by a taint team and
28   therefore could not be produced, the taint review of the Motorola had actually been completed on August 25, *2020*.
     The taint review was completed for the remaining devices on December 18, 2020. Dkt. #275 at 5:9-17.

2

1   forensics report, SVE060371 contains an **unminimized version** of the Motorola G7. *See* FBI-

2   MAIN-0003446. That version has never been produced to Mr. Andrade; the Court should order

3   the government to immediately produce the unminimized version of the Motorola G7 on the

4   SVE060371 hard drive – not the minimized images that the government already produced.

5          Second, the government asserts that it was only able to image a "limited portion of the

6   Motorola G7" and was "not able to successfully image" the three other cell phones, "presumably

7   because of technological constraints." Dkt. # 283 at 5. As set forth in his third motion to compel:

8   Mr. Andrade has been asking for the return of all 18 of his seized devices for years, and the

9   government had promised to return them – but not delivered. Dkt. #275 at 4-5. Nonetheless,

10  this is the *first time* that Mr. Andrade's counsel has been advised of "technical constraints"

11  interfering with the imaging of any of his devices. Declaration of Kerrie C. Dent iso Reply

12  ("Dent Decl.") at ¶4.

13         The Court should order the government to immediately produce the forensic reports from

14  the laboratory, any related communications between the laboratory and the government relating

15  to efforts to image Mr. Andrade's cell phones, and any destruction reports relating to the phones

16  and other devices. If the prosecutors' assumption about technical restraints is incorrect, and it

17  turns out that images of the cell phones were made, then the government should produce the

18  images and Cellebrite reports requested by Mr. Andrade in his motion. (Dkt. #275 at 11).

19  **II.    TREZOR WALLETS**

20         Writing as if Rule 16 does not exist, the government refuses access to the Trezor wallets

21  it seized from Mr. Andrade, claiming based on an internet search that wallets do not contain

22  transaction records, and that allowing access to the wallet, "which *might* contain digital

23  currency," would be like allowing a defendant "to access a safe full of cash seized during a

24  search warrant as evidence of a crime and remove the cash from the safe." This is nonsense.

25         First, the government does not dispute that Rule 16 requires defense access to the device

26  – especially if, as the government imagines, it contains evidence of a crime. Mr. Andrade did

27  not ask for an opportunity to steal any loot; rather, he asked to "inspect the Trezor wallets and

28  make images of all the digital currency transactional data on the wallets." Dkt. #275 at 7:10-11.

3

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                                    3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

1    Second, the government's internet search was insufficiently assiduous: digital hardware

2  wallets, including Trezors, can contain records of transactions.[2]  Finally, the government has

3  never made a claim, or produced any discovery suggesting, that the Trezors contain "a safe full

4  of cash" or, even if they did, that such cash was connected to the charges in this case.  But even

5  if the government had done so, that still would not turn defense counsel into a reincarnation of

6  Butch Cassidy and the Sundance Kid, in which they take any cash, leave their bar licenses

7  behind, and head to Bolivia.  The Court should order the government to give defense counsel

8  (and/or an expert) immediate access to Mr. Andrade's Trezor wallets.

9  **III.    RECORDINGS**

10   The government asserts that Mr. Andrade is inventing recordings and that it can be

11  trusted to produce all recordings required by Rule 16 and *Brady*. Dkt. #283 at 6:28, 7:12-13, but

12  the unrebutted record proves the contrary. Starting *twenty-one months ago,* Mr. Andrade has

13  repeatedly pointed the government to *specific recordings referenced in the government's own*

14  *materials that have not been produced,* and described categories of recordings that appear to be

15  missing, including recordings of Mr. Andrade himself. Not only does the government's own

16  recording index include recordings that have never been produced, but discovery shows that the

17  agents scripted a call for Ben Boyer to have with Mr. Andrade, and informed Boyer after the call

18  that it was recorded – and yet that recording, despite years of specific requests, has not been

19  produced. *See* Dent Decl. at ¶3. While the government claims it has conducted, and continues to

20  conduct, a diligent examination, these words are not accompanied by any explanation of how

21  these recordings were missed, let alone how the government has gone close to two years without

22  producing them even after their omission was called out by Mr. Andrade.

23   If the defense request appears overbroad, as the government claims, it is because the facts

24  set forth above demonstrate that the government has withheld recordings that are material to the

25  defense, and that the defense has no visibility (beyond the proof set forth above that the

26

___

27  [2] *See Cryptocurrency Hardware Wallets: The Ultimate Guide to Secure Storage*, Medium (July 6, 2023),
https://medium.com/coinmonks/cryptocurrency-hardware-wallets-have-become-an-essential-tool-for-securely-

28  storing-digital-assets-b8a9e22376c0 ("Wallet applications . . . allow users to send and receive funds, view
transaction history, and manage account settings").

4

1   production is incomplete) into how to identify the recordings that should be produced. Despite

2   characterizing Mr. Andrade's request as "ridiculous," the government implicitly acknowledges as

3   much: three and half years into the case, the government "*continues to conduct* a diligent

4   examination of recordings . . ." Dkt. #283 at 7:11-12 (emphasis added).  After two years of

5   failing to produce what the government does not dispute that it should have produced, despite

6   Mr. Andrade calling out its failure, it is time for the Court to order an immediate and complete

7   production: it should order the government (1) to conduct a diligent examination of what

8   recordings were made and remain unproduced, (2) to identify all such recordings to the defense,

9   and (3) and produce the recordings it is obligated to produce pursuant to Rule 16 as well as

10  *Brady,* whether they were made by FBI agents, counter-intelligence agents, Treasury Department

11  employees, SEC investigators, or anyone else.

12  **IV.    MATERIALS FROM THE SEC'S INVESTIGATION**

13           The only argument made by the government in opposition to Mr. Andrade's motion to

14  compel Rule 16 and *Brady* material in the possession of the SEC – an agency that actively

15  participated in the investigation of Mr. Andrade and has filed an enforcement action against him

16  for the same conduct at issue here – is that the motion should be denied as moot because the

17  government "will conduct" a review of SEC files for Rule 16 and *Brady* material.  But the

18  government's track record and current position show that an order is required.

19           Mr. Andrade has been asking for this production since March 7, 2022. In response, the

20  government has repeatedly refused, offering meritless excuses. It first falsely stated that it does

21  "not have access to SEC documents," and that "the SEC is a separate government agency and is

22  not part of the trial team." Third MTC, Dkt. #275 at 9-10.  Then the government produced the

23  279 pages that Mr. Andrade voluntarily produced to the SEC nearly six years ago and declared:

24  "We have already provided all SEC documents in our possession. We will not be producing any

25  additional SEC documents."  *Id*. at 10. Then it claimed the SEC had work product protection so

26  inviolate that the SEC could refuse to provide the material – a position that had long been

27  rejected. *United States v. Gupta,* 848 F. Supp.2d 491, 497 (S.D.N.Y. 2012) ("SEC's assertion of

28  work product protection is overcome by Gupta's substantial need for *Brady* material").

5

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                                    3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

1    Only after *two* motions to compel directed to this issue, and after reading in Mr.

2  Andrade's Opening Brief did the government change its tune (in part) and claim that no order is

3  necessary because it will review *some* of the SEC's material for Rule 16 and *Brady* material.

4  Even then, it miscites *United States v. Stringer,* 2005 WL 8167057 (D. Or. Mar. 4, 2005),

5  suggesting that the its review should be limited to non-work product material, when *Gupta*

6  expressly held to the contrary, and *Stringer* is easily distinguishable.  Although the Opposition

7  did not acknowledge it, in Stringer, unlike here, the judge determined that the prosecution was

8  *not* obligated to obtain material from the SEC,[3] and it was the SEC itself – not the prosecutors –

9  that conducted the *Brady* review.  (*4).  Also not acknowledged by the Opposition is that while

10  the SEC's production was limited to non-privileged documents, its *Brady* review was "a

11  thorough review *of the documents sought in the subpoena." Id.* (emphasis added).

12    On these facts, an order is required.  Two years of the government's intransigence should

13  be more than enough to strip the government of this Court's trust.  But in any event, still today

14  the government is refusing to do what *Gupta* requires: a lawyer's review that includes privileged

15  material, leaving the Court no choice but to order the government to meet its discovery

16  obligations.

17  **V.      TURNBERRY SOLUTIONS DOCUMENTS**

18    Despite repeated requests, the government concedes that it has not turned over 700 pages

19  of the Turnberry production.  It now claims it has nothing more to produce, but once again its

20  record provides no basis for trust: its first production was 1,000 pages short, and when Mr.

21  Andrade called out the omission, the government responded six weeks later: "We have already

22  produced all documents received from Turnberry. For your convenience, I will re-produce them

23  to you."  This "re-production for Mr. Andrade's convenience" included 300 of the 1,000 pages

24  that were not produced the first time – among them, important Jack Abramoff communications.

25  The other 700 remain missing from the government's production. Dent Decl. at ¶5. No trust is

26  warranted on this record, and the Court should order the government to do a diligent search for

27  _____

28  [3] The opinion is ambiguous on whether it so held because the SEC was not participating in the investigation, or
because it was unaware of *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).  The issue in *Stringer* arose
not on a discovery dispute but on a defense subpoena to the SEC.

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                                    3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

1  the missing 700 pages, have Jones Day re-produce the 700 pages the government claims to have

2  lost, and then produce any applicable destruction reports.

3  **VI.    ABRAMOFF'S DEVICES**

4        Mr. Andrade provided for the government on March 3, 2022, a detailed description of ten

5  of the devices collected from Abramoff that are referenced in various FBI documents, but for

6  which the government had not produced images in discovery. Dkt. #275, Dent Decl. iso Third

7  Motion to Compel at ¶26. The government does not, because it cannot, dispute that the devices

8  the government collected from alleged co-schemer Jack Abramoff likely include more evidence

9  of Abramoff's criminal conduct, as well as Rule 16 and/or *Brady* material.

10       Instead, the government returns to the same shell game it is playing with Levin's devices.

11  It claims allegiance to United *States v. Balwani*, 18-cr-258, EJD, Order (N.D. Cal. Apr. 8, 2022

12  (Dkt. #1393), and claims that it cannot produce what it does not lawfully possess.  But as with

13  Levin's devices, it defies *Balwani* by continuing to possess the devices that *Balwani* says it

14  cannot possess, which so far has allowed it to play keep away with the devices. As it did with

15  Levin until this Court ordered otherwise, its claim that it cannot produce Abramoff devices based

16  on the scope of the warrant is unaccompanied by production of the warrant itself. If the

17  government has kept Abramoff devices in its possession despite not having lawful access to

18  them, as it did with Levin, and as the *Balwani* case forbids it to do, then it should coordinate with

19  the defense the return of the devices to Abramoff so that Mr. Andrade can subpoena them.  Even

20  if *Balwani* is good law and controlling despite the government's defiance of it, the government

21  must at least produce images of the portion of the devices responsive to the search warrant,

22  which is broadly written in this case. *See* FBI-MAIN-0000695.

23       As to an unidentified set of Abramoff devices, the government claims it has already

24  produced the material it is entitled to possess.  Dkt. #283 at 9.  The defense has searched for that

25  data but has not found it.  If the government has in fact produced that information, then the

26  government should be ordered to provide the Bates numbers of its productions of the ten

27  Abramoff devices Mr. Andrade has identified, as well as for any additional devices the

28

7

1   government has seized from Mr. Abramoff. The government could have spared the court and Mr.

2   Andrade considerable time had it done so in the first place as Mr. Andrade requested.

3         The government concludes its argument by stating that it already produced the two

4   Abramoff devices that are of particular interest to the defense: a) a Blu-ray disc; and b) an

5   Oceana USB thumb drive, but that "for the convenience of Andrade" it will produce them again.

6   Dkt. #283 at 9.  As demonstrated above when the government produces things "for Mr.

7   Andrade's convenience," the productions turn out to be different from what was produced in the

8   first instance.  And if the government already produced the Blu-ray disc, why did it insist a few

9   months ago that it *will not* produce the disc because it "may contain potentially privileged

10   material"?  Dkt. #275 at 19:7-13.

11         The Court should order the government to produce immediately a copy of the Blu-ray

12   disc (SVE058604) that the Silicon Valley Regional Computer Forensics Laboratory provided to

13   the case agents on September 27, 2018, an image of the Oceana thumb drive that it said it would

14   produce, and images of the other eight Abramoff's devices identified in Mr. Andrade's March 3,

15   2022 request. And, while Mr. Andrade believes for reasons previously argued that the

16   government should not get the benefit of *Balwani* and should be ordered to produce all the

17   Abramoff devices in full, in light of this Court's prior rulings, he asks at a minimum for the

18   images of any additional Abramoff devices that are in the government's lawful possession and

19   that it is obligated to produce under Rule 16 and/or *Brady*.  It should also order, as with Levin,

20   that the government return to Abramoff what (if anything) it claims it does not lawfully possess,

21   and coordinate that return with Mr. Andrade so he can subpoena those devices from Abramoff.

22   **VII.    SEARCH WARRANTS, SUBPOENAS, AND RELATED MATERIALS**

23         The government complains that Mr. Andrade "does not explain *in his Motion* what he

24   means by 'entities named in this request,'" but this is nothing more than a semantic game, as Mr.

25   Andrade put this list in a letter when he first made the request on July 15, **2022,** repeated the list

26   (with detailed explanations) in his November 28, **2022** motion to compel, and repeated it again in

27   his letter dated May 10, **2023**.  The list of names, which is illustrative and not exclusive, also has

28

8

1  been discussed in meet-and- confers. For the government's convenience, the list is set forth in

2  the Dent Declaration at ¶ 6.

3       It is no answer, as the government asserts, that it "has produced a tremendous amount of

4  Rule 16 material." Dkt. #283 at 9.  The amount of Rule 16 material produced to date is

5  irrelevant to the question whether the government is obligated to produce more.  And more needs

6  to be produced.  By way of illustration, in his motion, Mr. Andrade asked for the material from

7  the government's subpoena to David Salmon.  Salmon was an attorney for NAC Foundation and

8  played a role in ensuring that funds from purchasers of AML Bitcoin were held in escrow until

9  tokens were issued.  The government states in its opposition that it "will be producing the

10 [subpoena] returns from Salmon shortly." Dkt. #283.  Nor has Mr. Andrade has received any of

11 the documents provided to Agent Wong after he conducted interviews of AML token purchasers

12 and requested documents from many of them. *See* Dkt. #275, Dent Decl. iso Third Motion to

13 Compel at ¶30, Exh. 45.

14      As to the rest of the names, the government's assertion that the request is overbroad

15 should be discounted, as it must have made that claim without reading the reasons for each of the

16 requests (given that it claims ignorance of the reasons for the requests).  Mr. Andrade has already

17 provided the Court and the government with the basis for its requests, and the government offers

18 no dispute to those reasons.  The Court should order the government to immediately produce all

19 Rule 16 and *Brady* material it received in from search warrants and subpoenas issued to those

20 named in this request, and also any documents it received from other individuals who provided

21 documents to the government, whether voluntarily or pursuant to a subpoena.

22 **VIII.   ABRAMOFF'S CRIMINAL WRONGDOING**

23      In requesting information about Abramoff's criminal wrongdoing, Mr. Andrade

24 demonstrated that this information is not merely impeachment, but is at the core of Mr.

25 Andrade's defense, as well as  a source of potential Rule 404(b) material.   In previously

26 ordering additional discovery about Abramoff over the government's objection, this Court

27 recognized the materiality to the preparation of the defense of facts such as that Abramoff was

28 using Mr. Andrade's business and AML Bitcoin to commit the alleged criminal conduct with

9

1  which Mr. Andrade is charged and that Abramoff was doing so for his own separate nefarious

2  purposes that were unknown to Mr. Andrade and contrary to what Mr. Andrade was seeking to

3  accomplish.  Information about Abramoff's many schemes – especially those where, as in this

4  case, he engaged in conduct that involved cheating people, working behind the back of his

5  colleagues, and/or advancing his own various causes at the expense of his colleagues – are

6  material to the preparation of Mr. Andrade's defense. The request is not "premature" because the

7  information is more than just *Giglio* material: it is Rule 16 and *Brady* material, as Mr. Andrade

8  demonstrated in his Opening Brief, without any response from the government.  That this could

9  mean the production of a substantial amount of material does not mean it is "enormously

10  overbroad;" rather, it is a reflection of how prolific a criminal Abramoff is, how complex his

11  criminal schemes are, and how the production needs to be sooner rather than later.

12        As if copying from a form response, the government attempts to dismiss these requests as

13  too "general," but in fact they are quite specific.[4]  No more helpful is the government's reliance

14  *United States v. Si*, 343 F.3d 1116, 1122 (9th Cir. 2003).[5] The Court should order the government

15  to immediately produce Abramoff's informant file and all material relating to Abramoff's

16  criminal wrongdoing, and from cross-referenced cases, and from investigations in other

17  jurisdictions, consistent with its obligations under Rule 16 and *Brady*.

18  **IX.    404(B) EVIDENCE**

19        Mr. Andrade requested that 404(b) evidence be produced now because this CJA case is

20  complex, and review and analysis of the 404(b) evidence produced by the government will be

21

22  [4] Mr. Andrade's motion sets forth which documents the government has produced, and which remain unproduced
(*e.g.,* FBI summaries and 302s relating to or referencing Abramoff and his prior wrongdoing, plea agreements,
23  documents relating to Abramoff's undercover work, and complete records for the four bank accounts that Landfair
Capital Consulting maintained during the relevant time period, bank accounts of Lexington Strategies, LLC and of
24  AFH Associates, LLC, and Abramoff's informant file (together with specific pieces to which he is entitled). Mr.
Andrade also has provided the government with the specific jurisdictions in which relevant investigations occurred
25  but have not been produced.  And Ms. Dent's supporting declaration identifies the many cases that the FBI 302
reports cross-referenced with Mr. Andrade's case, but from which the government has produced no documents. Dent
26  Decl. iso Third Motion to Compel at ¶33.
[5] The government describes *Si* as rejecting the production of reports about other investigations in which a cooperator
27  was involved, but it is nothing like this case.  First, the government produced most of the requested material — and
what was withheld were investigations in which the cooperator was an informant in investigations that were both
28  unrelated and ongoing. Second, the court described the withheld evidence as merely impeaching, and the
cooperator's credibility turned out to be unimportant.

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                    3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

1  time-consuming.  In determining how far in advance to require the production, the Court should

2  also take into account the many omissions from the government's discovery production, the

3  government's intransigence in correcting those omissions, and this Court's busy schedule — all

4  of which mean that substantial time needs to be allocated to iron out 404(b) discovery issues.

5         There is nothing on the other side of the balance.  The government claims that it "cannot

6  be expected to have fully developed its trial strategy" five months before trial, a claim that might

7  work in other cases but not in this one, in which, not counting pre-indictment time, the

8  government has had three and a half *years* to decide what its Rule 404(b) evidence will be.  On

9  these facts, the only reason to delay the production of Rule 404(b) evidence would be to limit

10 Mr. Andrade's time to digest it and to do the investigation needed to respond to it. The Court

11 should order that all 404(b) evidence be produced within the next two weeks.

12 **X.        UNDERCOVER OPERATIONS**

13        The gist of the government's response to Mr. Andrade's request for documents relating to

14 AML Bitcoin group chats on Telegram and Discord channels and other documents reflecting

15 undercover ("UC") operations in this case is that Mr. Andrade is inventing recordings and that

16 the government has produced everything. Dkt. # 283 at 12-13.  It has not, and the Court should

17 order the government to fix its omissions.

18        Prior to the filing of Mr. Andrade's third motion to compel, the government took the

19 position that it was "not aware of any connection between . . . Shailendra Maheshwari and this

20 case." Dkt. #275 at 26.  Having been informed by the motion that Maheshwari is referenced in

21 999 documents on the government's discovery database, including communications that reflect

22 his role in drafting four Asset Purchase Agreements between Japheth Dillman and Ben Boyer

23 (believed to be Purchaser-1 in the Indictment), the government has slightly changed its tune.  It

24 no longer contends that Maheshwari is unconnected with this case but instead claims – with

25 carefully chosen words – that it "does not have recordings of Maheshwari in its casefile."  Dkt.

26 #283 at 13.  It makes no mention of whether it has this information in a different case file, such

27 as the one for Dillman and Mata (both of whom are under indictment), with Mata being a

28 potential cooperator against Mr. Andrade. Mr. Andrade did not invent recordings of Maheshwari,

11

1   such as one that Mata made of him on January 23, 2000; rather, the FBI has reports showing

2   surveillance of Mata at a pub with other people, including Maheshwari, on that date (FBI-MAIN-

3   0001036), and there is a 42 second video clip (FBI-MAIN-0001039) that could only have been

4   made by Mata himself.  *See* Dent Decl. at ¶ 7.

5          The Court should order the government to produce the recordings of Maheshwari,

6   regardless of whether they are in the Andrade casefile or somewhere else, and it should also

7   order the government to immediately produce any additional recordings of conversations that are

8   with Mr. Andrade and/or material to the preparation of the defense.[6] The Court also should order

9   the government to produce all of the documents, recordings, videos, CHS reports, Discord email

10  notifications, communications to and from ModernReboot's email accounts,

11  AMLBitcoinConcerns@protonmail.com and jlern70@protonmail.com, and other materials

12  reflecting undercover operations in this case, including those described in Mr. Andrade's third

13  motion to compel, as well as all additional items relating to undercover operations in this case

14  that the government is obligated to produce pursuant to Rule 16 and Brady.

15         Treasury Department Investigation. Mr. Andrade filed a civil rights complaint based on

16  coercion with the U.S. Department of Treasury on September 4, 2019, alleging that Abramoff

17  inappropriately sought an IRS investigation of Mr. Andrade because he was refusing to

18  capitulate to Abramoff's attempts to extort him. Dent Decl. iso Third Motion to Compel at ¶39.

19  Documents relating to the Treasury Department's investigation of Mr. Andrade's allegations

20  against Abramoff are material to the preparation of Mr. Andrade's defense.[7] Given the role of

21  the IRS in investigating this case, the government is obligated, under Rule 16, and possibly

22  Brady, to produce documents relating to the Treasury Department's investigation.  The

23  government's offer to produce the 59-page Complaint Referral Memorandum (which likely

24

[6] There likely are additional unproduced recordings with several more individuals, including several: Mr. Andrade
25  had conversations with people who, at the time of the conversations, had recording agreements with the government.
*See* Dent Decl. at ¶ 8.

26  [7] The government supposes that the Treasury Department stopped communicating with Mr. Andrade's counsel
"presumably [because it] concluded that Andrade's allegations were unfounded and unsupported" (Dkt. #283 at 13),
27  but it offers no evidence in support of this conjecture.  In any event, if the conjecture is correct, the information
would be material to the preparation of the defense, and its production would put the issue to rest.  *See United States
28  v. Olano*, 62 F.3d 1180, 1203 (9th Cir.1995) (noting evidence is "material" under Rule 16 where it is helpful to the
development of a possible defense or even abandoning a potential defense).

12

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                    3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL

1  primarily consists of Mr. Andrade's complaint and multiple exhibits) does not moot Mr.

2  Andrade's request. The Court should order the government to gather the requested investigation

3  documents and promptly produce all that Rule 16 and Brady require, including interview

4  memoranda.

5  **XI.    CONCLUSION**

6        This Court should grant Defendant's Motion to Compel and require the government to

7  produce all of the documents described above, to provide Bates numbers for any documents it

8  claims to have produced but that Mr. Andrade has not been able to find, and to provide

9  destruction reports for any requested documents that have been destroyed.

10

11                                   Respectfully submitted,

12
   DATED: February 22, 2024                 KING & SPALDING LLP

13

14                                   By: /s/ Michael J. Shepard

15                                       MICHAEL J. SHEPARD
                                         KERRIE C. DENT
16                                       CINDY A. DIAMOND

17                                       Attorneys for Defendant
                                         ROWLAND MARCUS ANDRADE
18

19

20

21

22

23

24

25

26

27

28

13

DEFENDANT MARCUS ANDRADE'S REPLY BRIEF                    3:20-CR-00249-RS-LB
IN SUPPORT OF THIRD MOTION TO COMPEL