MICHAEL J. SHEPARD (SBN 91281)
mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:     +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone: +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE<br><br>Defendant. | Case No. 3:2-cr-00249-RS-LBx<br><br>**DEFENDANT MARCUS ANDRADE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT'S MARCH 17, 2024 ORDER REGARDING REVIEW OF TREZOR WALLETS**<br><br>Date:     May 2, 2024<br>Time:    10:30 am<br>Judge:   Honorable Laurel Beeler |

Despite this Court telling the government in its order that any transactional data stored on the Trezors seized from Mr. Andrade is "Rule 16 discovery and it implicates *Brady* and the duty to investigate" Discovery Order (Dkt. #272) (Mar. 17, 2024) at 2, and despite this Court telling the government at the hearing on March 7, 2024, in response to the same argument it makes here – "there's just no circumstance where a defendant gets to go in . . . and see what we can't see" – that "they do it all the time because . . .you don't always get everything," Hearing Transcript (#290) at 24:19-24 ("Tr."), the government continues to condition its compliance with the Court's March 17 Order on getting access to the Trezors, and continues to claim that Mr. Andrade has not shown that the Trezors are Rule 16 or *Brady* material. Opp. at 6. Not only are the government's arguments an effort to relitigate this Court's March 17 Order, but the Court was correct in rejecting these arguments. It is past time for the government to comply with the Court's Order.

I. **The Government's Refusal to Comply with the Court's March 17 Order, And to Attempt to Have the Court Reconsider Its Order, Is Procedurally Impermissible**

At the hearing on March 7, the Court squarely identified the issue of whether the defense would have to share anything it obtained from the Trezors with the government. *See, e.g.*, Tr. 16:19-24 ("they want access to the transactional data [and] they don't want to give you the passwords, because if there's something bad there, they don't want you to get it"). The government made the precise argument it made in its latest brief, demanding that if the defense got access to the Trezors, it would have to share any data it obtained with the government. *See, e.g.*, Tr. at 24:19-21. The Court did not agree. *See, e.g.,* Tr. at 24:23 ("you don't always get everything"). The Court then entered an order, requiring defense access to the Trezor wallets, conditioning defense access on expert examination subject to a protective order, but not on the defense sharing what it obtained with the government. March 17 Order at 2.[1] The government defied that order and is now attempting to

---

[1] Not only was the ordered access unconditional, but the Court recognized that the defense would have access, would not threaten the integrity of the evidence (by having it to themselves), and that "the government can't access [the information] in any event." Order, Dkt. #292 at 2:11-16. In an effort to implement what the Court ordered in a manner agreeable to the government, defense counsel proposed to the government that its "third party expert could export

relitigate the issue. This claim is incorrect for the reasons set forth above, but even if it were correct, the remedy was to appeal or, if permissible, to seek reconsideration – it was not to defy the Order. The time for appeal or reconsideration has expired, and it is time for compliance.

## II. Mr. Andrade's Right to Inspect and Copy His Property that Was Seized By the Government is Not Contingent on Him Providing the Government with a Copy

Contrary to the government's claim that Mr. Andrade cites no authority for this motion (Dkt. #300 at 2), Rule 16 on its face disposes of the government's argument that it is entitled to a copy of any transactional information Mr. Andrade obtains from the Trezors. There is no requirement in Rule 16(a)(1)(E) that a defendant share with the government what he inspects and copies. The Rule has a reciprocal discovery obligation, but it does not apply to the Trezors, at least not yet, because it only applies to information the defendant intends to offer in his case in chief.

In its Opposition, the government cites several out-of-district cases for its position that it does not have to permit Mr. Andrade to inspect and copy his Trezors because the government does not have "possession, custody or control" over the data on them. Dkt. #300 at 3:3-5:4. None of those cases are controlling in this Court,[2] several are outside the Rule 16 context of this case,[3] and

---

transactional history reports from the Trezor wallets," that the reports "would have no other information – nothing related to any digital currency, keys, or any of the other things that could be stored there," and that the expert "would generate the reports, save them to his laptop, and have an FBI agent unrelated to the case observing the process." Email from K&S to the government (Apr.15, 2024). The government emailed and said that it would respond to this proposal "shortly (next day or two)," but it did not do so and instead filed its Opposition.

[2] As the government noted, one of the out-of-district cases, *United States v. Case*, 2020 WL 4227554, at *3 (D. Idaho July 23, 2020), was affirmed on appeal by the Ninth Circuit. But the government failed to note that the district court in *Case* determined that none of the data being sought was Rule 16 material, and that Ninth Circuit's affirmance of the conviction did not address either the Rule 16 (or *Brady*) issue about whether the defense could get access to password-protected material without sharing that material with the government. The government also asserts that *Case* held that the defendant had no right under Rule 16 to his cellphone or its contents, which were password-protected. Opp. at 4:18-19. Not so. The only mention of Rule 16 in any portion of the decision addressing the cellphone shows why the phone did not fall within Rule 16: "the government was not under a duty to disclose the phone to the defense under Rule 16 because the government did not rely on the phone during its case-in-chief, the phone was not obtained from the defendant, and the phone was not material to forming a defense." 2020 WL 4227554, at *3.

[3] *United States v. Sullivan*, 2020 WL 5351030 (D. Haw. Sept. 4, 2020), for example, did not interpret Rule 16 either. It addressed a due process claim based on evidence on a phone that was lost or destroyed by the government. To make this claim, the Court reasoned, the defendant had to show that that the phone possessed exculpatory text messages or e-mails that were apparent before it was lost, that the government acted in bad faith, or that Defendant would not be able to obtain comparable evidence by other reasonably available means. The discussion quoted by the government was only a part of one of the two reasons given by the Court that together explained why in the court's view the defendant had

all of them are either free of reasoning or offer reasoning that cannot be reconciled with the meaning of the words in the Rule.

The featured case in the government's Opposition, and the one relied on for the language the government quotes in *Gray,* is *United States v. Young,* 2024 WL 913308 *4 (D. Minn. Mar. 4, 2024). In describing the facts relating to the defendant's motion to permit him to inspect a cellphone, the decision describes the phone as "presently in the government's custody pursuant to a search warrant issued by this Court." It nonetheless reasons that "the data it contains is not in the government possession" because it is encrypted, because Young had not provided the passcode, and because the government had not been able to break the encryption. This is wrong twice.

Rule 16 permits a defendant to "inspect *and* copy" tangible objects and data that the government obtained from defendants "if the item is within the government's possession, custody, *or* control." (emphasis added). The first fatal set of flaws in *Young* is that it never states what its definition of possession is -- and it avoids ever returning to the term custody after acknowledging the government has it, let alone defining the term custody; and whatever its implicit definition is, it comes with no reasoning or support, and unreasonably narrows accepted definitions of the term possession. *See, e.g.*, American Law Institute, Model Penal Code § 2.01 (1980) (defining possession as an act in which "the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession"). The government took the Trezors (and their data) away from Mr. Andrade against his will, pursuant to a warrant that authorized its seizure. Since then, the Trezors (and their data) have been housed at the FBI. The government does not allow anyone to access the Trezors (or their data) without its permission. These are all compelling indicia that the government has possession (and custody) of the Trezors (and their data). Perhaps the lack of passwords affects the government's *control* of the Trezors, but possession and custody must mean something more than control, or all three words

---

failed to show that she would not be able to obtain comparable evidence by other reasonably available means.

4

would not be in the Rule. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 193 (2012) (*Reading Law*) (The surplusage canon of interpretation states that "[i]f possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").[4]

*Young*'s failure to address the word custody may be even more revealing. The holding of a thing for purposes of preservation is sufficient to constitute custody, Black's Law Dictionary (10th ed. 2014), as is "temporary care." *Askew v. United States*, 229 A.3d 1230, 1246 n.28 (D.C. 2020) (evidence subject to Rule 16 disclosure includes evidence in the government's (1) "actual possession," *i.e.*, "direct physical control;" (2) "custody," *i.e.*, "temporary[ ] care;" or (3) "control," *i.e.*, when it has the "the legal right and ability to obtain the item from the other entity upon demand" (internal quotation marks omitted)), citing *Weems v. United States,* 191 A.3d 296, 301-2 (D.C. 2018).[5]

The second fatal set of flaws in *Young* lies in its insistence on parsing the item that is within the government's possession, custody, or control. Although the attempt to focus on the data rather than the Trezors fails for the reasons above, neither Rule 16 nor common definitions allow the device to be parsed in that fashion. The rule establishes that a defendant is entitled to inspect and copy tangible objects (as well as other items), "or copies or portions of any of these items, if *the item* is within the government's possession, custody, or control." A Trezor wallet is, even for the *Young* court, in the government's possession; because it is an item in the government's possession and custody, the defense is entitled to inspect and copy the Trezor *and any portion of the Trezor.*

---

[4] The Supreme Court often employs the surplusage canon of statutory interpretation. *Marx v. General Revenue Corp.*, 568 U.S. 371, 392 (2013) ("statutes should be read to avoid superfluity;" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

[5] D.C. Superior Court Criminal Rule 16(a)(1)(E) is identical to Federal Rule of Criminal Procedure 16(a)(1)(E).

Even apart from this clause in the rule, *Young's* approach of separating the outside of an object from the inside defies common understanding of the terms possession and custody. If Mr. Andrade had stolen a safe or an ATM but could not access their contents, the government would not pass on the opportunity to hold him accountable for the, as long as he intended to take the contents, as the government did here. If Mr. Andrade were in custody pre-trial, his status of being in custody would not be impacted by the fact that the government has no ability to get inside his mind by interrogating him; both he and his mind would be in custody. No common use of possession or custody separates the contents of a device from its shell, and the Court's interpretation of Rule 16 in its Order and at the argument were correct.

### III.  Mr. Andrade is Not Required to Make a Showing that Data On the Trezors is *Brady* or Material to His Defense.

The government proclaims that "in addition to Rule 16's other requirements, a defendant is required to make a specific showing that the information he seeks is material to his defense or is potential *Brady*." Opposition at 6:19. As the Court's Order reflects, Mr. Andrade has already made that showing to the Court's satisfaction. Discovery Order (Dkt. #272) (Mar. 17, 2024) at 2. But even if he had not made such a showing, it would not matter. This is another example of the government's arguments failing to reflect a reading of the words in Rule 16, which has no such requirement for items seized from the defendant like the Trezors at issue in this Motion. The subparts of Rule 16(a)(1)(E) are disjunctive, and, in contrast with Rule 16(a)(1)(E)(i), which does require materiality, no such showing is required for items that were obtained from or belong to the defendant under Rule 16(a)(1)(E)(iii).

### IV.  The Government Should Not Be Allowed To Continue To Hold the Trezors

The government attempts to defend holding the Trezors for more than four years – without any attempt to show continuing efforts to access them – but none of the cases it cites justify what it has done in this case. *See, e.g., United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) (five months); *United States v. Magana*, 2022 WL 4237547 at *5 (E.D. Cal. Sept. 14, 2022) (two years); *United States v. Sosa*, 379 F. Supp. 217, 222 (S.D.N.Y. 2019) (ten months and 15 months). At the

same time, the cases cited by the government underscore that the "reasonableness of the officer's acts" in "performing a subsequent search of seized materials remains subject to judicial review," *Magana* at *4-5, *quoting United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006); and in other contexts, other cases have been critical of the government when it is letting seized devices sit idle without taking steps to move forward. *See, e.g., United States v. Metter,* 860 F. Supp. 2d 205, 211–16 (E.D.N.Y. 2012).[6]

This is especially true in this district, where warrants are issued with far shorter limits on the length of time the government can hold seized devices. See *United States v. Kopankov,* 672 F. Supp. 3d 862 (N.D. Cal. 2023). The government's efforts to dismiss these tighter limits on retention of seized devices, on the ground that the warrant for the Trezors lacked an Attachment C, miss the point. The reasonableness of the government's retention of the Trezors for trial in a case in this district should be judged in this district, and this district's Attachment C reflects its recognition of the need for increased vigilance over the execution of warrants, including the length of time devices are retained. *See generally United States v. Comprehensive Drug Testing*, 579 F. 3d 989 (9th Cir. 2009). Unless the many judicial admonitions about the government's execution of warrants are meaningless, they should apply to a case in which the government has held the devices for more than four years, with no showing of continuing efforts to access the device – especially when the government seeks to use its delay to coerce what Rule 16 does not permit it to do. It is no answer to say, as the government does, that the only remedy is suppression of the evidence. Not only can the Court take these facts into account in recognizing that the government is in fact in possession of the Trezors, but when the government has exceeded its authority to hold a device the court should exercise its supervisory and equitable power to take control of the device, preserve it as needed, and allow defense access to it.

---

[6] The government accuses the defense of making a misrepresentation, claiming that it has never "'argued itself' that it no longer has lawful access or probable cause under the Fourth Amendment to access the Trezors." Opp. at 5:18-20 (emphasis added). This accusation is false. The defense did not represent that the government had previously argued that it no longer had lawful access to the Trezors; rather, Mr. Andrade's opening brief noted that the government "has repeatedly argued itself *as to other devices"* that it no longer has lawful access to them. Opening Brief at 5:15-17 (emphasis added). The government does not deny that this is true; it has made this argument repeatedly, including with respect to Abramoff's devices and Levin's devices.

## V.     The Government Relentlessly Refuses to Produce Core Rule 16 Material

The government ends its brief by editorializing that Mr. Andrade has filed a "relentless salvo of discovery motions and letters." We appreciate that the Court would prefer not to read about these disagreements, but as the government chose to add this editorial comment, we offer this brief response: Mr. Andrade has been forced to file discovery motions because for four years the government has relentlessly refused to give over even core Rule 16 material, despite repeated requests. This Court has repeatedly ruled that the government was wrongly denying requests for discovery. At least one of these rulings was one in which the government had already promised to make a production, but after a long delay changed its mind and had to be ordered to do so.[7] Far from changing its behavior, the government now declines to meaningfully meet-and-confer in response to requests. *See* n. 1, *supra*; *see also* Letter from AUSA Highsmith to K. Dent (Sept. 14, 2023)[8] (advising defense counsel that it "has already produced all material in accordance with its Rule 16 obligations, *Brady* and *Giglio*, and the Court's April 7 discovery order. There is no need to further discuss the letter or to meet-and-confer about it."). The referenced letter that the government refused to discuss included several items that then became the subject of Mr. Andrade's Third Motion to Compel and the subject of either agreements by the government to produce after our motion was filed, or orders from the Court to produce the information. Relentless litigation has been the result, but the record leaves no doubt where the blame lies, and it is not with Mr. Andrade.

---

[7] When Mr. Andrade determined that the version of alleged co-schemer Jack Abramoff's phone produced to him in discovery was missing hundreds of messages that were summarized in an FBI 302 report, the government promised to produce a full version of the Abramoff phone. On March 8, 2023, the government said it would produce the phone "in the next day or so," but the government changed its mind months later, and Mr. Andrade had to file another motion to compel before receiving the phone.

[8] The Letter is attached as Exhibit 9 to the Declaration of K. Dent in support of Mr. Andrade's Third Motion to Compel Discovery (Dkt. #275-1).

**CONCLUSION**

Mr. Andrade respectfully requests that the Court order the government to comply with its March 17, 2024 order no later than May 10, 2024, by arranging a time for defense counsel and its expert to meet with an FBI agent at the U.S. Attorney's office, without any requirement that passwords, images, or data reports be shared, subject to the existing protective order in the case.

Respectfully submitted,

DATED: April 26, 2024                    KING & SPALDING LLP

By: */s/ Michael J. Shepard*
    MICHAEL J. SHEPARD
    KERRIE C. DENT (PRO HAC VICE)
    CINDY A. DIAMOND

    Attorneys for Defendant
    ROWLAND MARCUS ANDRADE