```
KING & SPALDING LLP
MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted pro hac vice)
 kdent@kslaw.com
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:    +1 202 626 3737

CINDY A. DIAMOND (CA SBN 124995)
ATTORNEY AT LAW
58 West Portal Ave, # 350
San Francisco, CA 94127
408.981.6307
cindy@cadiamond.com

Attorneys for Defendant
ROWLAND MARCUS ANDRADE
```

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | Case No.: 3:20-CR-00249-RS <br><br> **DECLARATION OF ATTORNEY CINDY A. DIAMOND IN SUPPORT OF MOTION TO CONTINUE** |

I am an attorney, duly licensed to practice law in this Court, and I am one of Mr. Andrade's attorneys in this matter.

1. I write this declaration to offer my opinion, based on my work in this case, regarding

1. some of the reasons why I believe search terms through the electronic discovery provided in this case is insufficient to accomplish adequate and thorough preparation of the defense in this case. This declaration is based on my own work on Mr. Andrade's case, and on work done by Mr. Andrade's other defense attorneys and support staff where indicated.

**Searching 302 Alone is Insufficient; Review of Recordings is Needed**

2. Before I joined Mr. Andrade's defense team, my colleagues had found a key portion of an interview with alleged co-Schemer Jack Abramoff had been omitted from the 302 of that interview. Only by listening to the recording had the connection to Mr. Andrade's business been detected. From there evidence was located to link Abramoff to schemes to use Mr. Andrade's businesses for Abramoff's own purposes. Since that discovery, we have made other that indicate many of Abramoff's own activities, relevant to Mr. Andrade's defense, were omitted from the FBI reports of investigation. Evidence from the recordings themselves are statements that will help to Mr. Andrade's defense at trial, such as refutations made by witnesses that alleged material misstatements were - in fact - material. Many of the recordings in this case are approximately two hours long. Any recording of significant length with any important witness must be reviewed by Mr. Andrade's attorneys, in order for our work to be competent, considering the omissions in FBI 302s that we have identified.

**Handwritten Notes and Handwriting on Typed Documents are Relevant**

3. Some of the evidence in this case are handwritten documents. These documents cannot be searched and must be viewed by human eyes, and more closely reviewed by an attorney if the documents are potentially relevant. Since much of the handwritten material supports Mr. Andrade's defense theme that Abramoff was working for his own objectives, without Andrade's knowledge, and against Andrade's interests, all of the handwriting must be reviewed to the greatest extent possible.

4. Handwritten documents are sometimes wholly handwritten. Other times they are annotations on printed material, and thus contain a combination of searchable and non-searchable data. I have seen handwriting on printed material that contained a message for Mr. Andrade, which adds to Mr. Andrade's knowledge and thus is relevant to his state of mind. In

another example, a document did not appear to be related to Abramoff's schemes concerning Mr. Andrade's company, until the handwriting appended to printed material was reviewed. A third example suggests that Abramoff's own handwritten notes contradict a portion of his proffer to the government concerning a matter relevant to Mr. Andrade's actions as described in the indictment. We would be amiss were we not able to complete our review of handwritten material and handwritten notes on electronically scanned printed material, since these documents are evidence that we believe will help exonerate Mr. Andrade.

**Electronic Communications and The Need for Repeated Searches and Comparisons**

5. This case is largely a circumstantial evidence case, where the government seeks to rely on a series of actions or inactions to prove Mr. Andrade had the specific intent to deceive and cheat his AML Token purchasers. The usefulness of electronic communications to establish context and to prove state of mind is recognized in the government's search warrant issued to obtain Mr. Andrade's own devices. Search Warrant (3-12-2020), Items 3(b) and 3(c), p. 38. The government has obtained multiple electronic communications threads, from multiple witnesses. These communications threads are different from email; each page contains several or dozens of messages, and each threads are dozens to hundreds of pages long. I have also reviewed relevant message threads obtained from third party sources. To fight the allegation that Mr. Andrade knew about and joined Abramoff's scheme to defraud, or that Mr. Andrade designed a scheme to defraud, without a pinpointed statement of misrepresentation made by Mr. Andrade personally, I and Mr. Andrade's other attorneys must analysis the likely witnesses communications threads in detail in order to adequately and thoroughly prepare for his trial.

6. Search terms are useful but they are often insufficient to find all relevant electronic communications extracted from a lay person's phone. In my opinion, this is because communications of lay people are unlike FBI 302s in a significant way. Uniform terms for individuals or entities are not used by lay people. The same person may be referred to by name, by pseudonym, by initial, by location, or by position. Furthermore, unlike FBI agents generally, many times people using texts, chats, or short-form electronic communication of any nature will truncate or abbreviate terms, or they will simply misspell them. I have - for example - seen the

1  term "cryptocurrency" be referred to with that spelling, as "cybercurrency", spelled as "crypto
2  currency", and spelled as "crypocurrency." Without conventions to refer to people, entities,
3  dates, places, events or locations, search terms will always provide incomplete results.
4      7. Furthermore, many terms are so ubiquitous that just searching for the terms
5  themselves produce thousands of results, most of which are unlikely to have any relevancy to our
6  case. We can narrow our searches by date, and we do.  We can and do amend and re-run searches
7  pertaining to new information learned in another person's electronic communications, or a
8  specific event described in a witness's proffer. By doing so, I was able to locate messages
9  relevant to our client's state of mind, and others that provide context for messages whose
10 meaning had been unclear.  One such example is a message from our client to Abramoff, where
11 our client complained that Abramoff's high referral fees was interfering with his ability to other
12 necessary business expenses. The message would not have been found by a search alone.  It did
13 not contain the words "commission", "referral", or mention Mr. Andrade's company or product
14 names in any manner, nor did it say the words "business" nor mention "expenses". For electronic
15 communication review, search features are an aid, not an end, to our investigation and analysis of
16 the evidence in this case.
17     8. Searching only Abramoff's own communications is insufficient to locate evidence of
18 context and state of mind.  Although we were provided with a minimized and later a full version
19 of Abramoff's primary phone summary-data report, we have confidence that Abramoff's devices
20 do not show his complete communications. Abramoff told more than one of his associates that he
21 deliberately and habitually deletes material from his electronic devices, chat-threads, message-
22 apps, etc.  Fortunately, some of the surrogates and associates in communication with Abramoff
23 did not also delete their side of the communication. We have learned more about the context and
24 content of Abramoff's activities - with respect to using Mr. Andrade's company behind Mr.
25 Andrade's back - from cross-referencing several different sources of electronic communications
26 with Abramoff's own, with documents, and with material reported by the FBI's investigation.
27      9. Abramoff's own communications require a particular level of thoughtful analysis.
28 Just identifying communication from Abramoff or about Mr. Andrade and his companies would

not reveal everything related to Abramoff's state of mind. Besides scrubbing his communication, as a seasoned fraudster with prior convictions, Abramoff is practiced at using specific terms to imply other terms. His associates appear to understand his code and over time through our analysis - not just running search terms - we have learned some of the meanings of his lingo. Abramoff often uses nicknames in reference to his associates, and he addresses people he knowns by first names in most of his message-threads. Abramoff disparaged Mr. Andrade to some of his associates during a period of time when Abramoff professed great support and devotion to Mr. Andrade's ideas when communicating with our client directly. Additionally, several people assisting Abramoff have the same first name so further analysis is needed for some of these communications. (For instance there are three people involved in this case with the first name of "Alex"; one is Abramoff's son, all of whom were involved with Abramoff's scheme.) I have also seen references to Mr. Andrade without use of Mr. Andrade's name, title, or business name. For all electronic communications, but most particularly for Abramoff's, search terms will not help us locate all the relevant communication that help us show Abramoff's specific intent was different from that of Mr. Andrade's.

    10. Lastly, review of the communications provided from electronic devices is most useful when done by a member of the defense team who understands the significance of the witnesses, the schemes, Mr. Andrade's businesses, and other details relevant to show the context of Mr. Andrade's own words. There are many messages that I understood were significant only when reviewed *after* another piece of documentary evidence was analyzed. For instance, I have found a material lie in (accused fraudster) Japheth Dillman's communications Mr. Andrade. Whether Mr. Andrade had the intent to support Dillman's actions will be an issue at trial. Through analysis of several different communications threads, I have found that Dillman doubled-down on his original lie and then admitted it to another witness. Together these messages will be used to show Dillman concealed the truth of his own relevant activities from Mr. Andrade over many months. The subject matter that Dillman discussed was not evident when the communication was first read and so simply finding this message through a search would not have been sufficient to reveal the message's context. Only with consideration of

material located in other documents did the meaning of Dillman's lie become apparent.

11. We are awaiting further communications threads involving our client, as the government has yet to comply with a court order to provide us with an unminimized copy of Mr. Andrade's own cell phone obtained by the government in a search conducted in March 2020. We are also expecting to be notified about the return of Abramoff's devices to his attorney, whereupon we will be subpoenaing additional electronic communications relevant to this case.

12. I am extremely appreciative of modern electronic records and the ability to use search functions, in this case. However in my opinion, in this case where the allegations of fraud are largely circumstantial, and where certain witnesses' communications will be key in proving our client lacked a guilty mindset, careful, thoughtful, time-related human review of the lay witnesses' electronic communications must be done to provide Mr. Andrade adequate assistance of counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this 10th day of May, 2024, at San Francisco, California.

/s/

_____
CINDY A. DIAMOND
Declarant