MICHAEL J. SHEPARD (SBN 91281)
mshepard@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    +1 415 318 1200

KERRIE C. DENT (Admitted *pro hac vice*)
kdent@kslaw.com
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
cindy@cadiamond.com
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 3:20-cr-00249-RS-LBx<br><br>**DEFENDANT'S MOTION FOR AN ORDER REQUIRING THE GOVERNMENT TO PRODUCE THE MASTER COPY AND ANY OTHER IMAGES OF LEVIN'S PHONE OR SUBMIT THE LEVIN DEVICES TO THE COURT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:       July 18, 2024<br>Time:       10:30 a.m.<br>Judge:      Hon. Laurel Beeler |

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, July 18, 2024, at 10:30 a.m., or as soon thereafter as the matter may be heard, Defendant Rowland Marcus Andrade will bring for hearing before the Honorable Laurel Beeler, District Court Magistrate Judge, his Motion to Require the Government to Produce the Master Copy and any Other Images of Alexander Levin's Phone or Submit the Devices to the Court.

In support of his motion, Mr. Andrade submits herewith a memorandum of law, the declaration of Kerrie C. Dent, and the relevant portions of the record before the Magistrate Judge (included as exhibits to Ms. Dent's declaration).

DATED: June 28, 2024                                 KING & SPALDING LLP

                                                     By:   /s/ Michael J. Shepard
                                                     ───────────────────────────
                                                     MICHAEL J. SHEPARD
                                                     KERRIE C. DENT
                                                     CINDY A DIAMOND

                                                     Attorneys for Defendant
                                                     ROWLAND MARCUS ANDRADE

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

This Motion seeks relief from the government's Catch-22.  The Court has ruled that Alexander Levin's iPhone and iPad, which the government seized from him pursuant to search warrants dated February 28 and March 2, 2020, are material to Mr. Andrade's defense and should be produced.[1]  The government refuses to do so, claiming that it does not have "lawful possession of them" and cannot therefore produce them – even though it retains possession of them, has continued to do so for over four years, and ran search terms on the master copy of them, as part of a failed effort to convince this Court that Levin has no connection to this case.  The government even has refused to produce the image of Levin's phone, referred to by the government as the "master copy," despite accessing it and using it itself.

As a remedy, the Court proposed that the government submit the devices to Mr. Levin so they can be subpoenaed by Mr. Andrade, but the government now reports that Mr. Levin has left the country and that the lawyer who once represented Levin will not accept service of a subpoena for the devices.[2]  This leaves the government continuing to possess what it claims it cannot lawfully possess, and leaves the devices in a purgatory in which they are immune from production to the defense even though they have been found to be material to the defense, and the government has already accessed them.

Catch-22s make for good novels but not for just results.  As this Court has already determined when this issue arose relating to Jack Abramoff:

> It cannot be that access to Rule 16 and *Brady* material — on devices controlled solely by the government — can evade discovery, merely because (1) Mr. Abramoff — implicated in the case in various roles — presumably has not requested return of his devices (assuming that is the situation) and (2) the government cannot lawfully access the information.

---

[1] Discovery Order, Dkt. #165 at 11:9-12 (Apr. 7, 2023).
[2] Dent Decl. at ¶3.

1

Order, Dkt. #292 (Mar. 17, 2024). The government's Catch-22 can easily be resolved by the Court ordering the government to immediately produce copies of any images (*e.g.*, the master copy) or Cellebrite reports of the phone, or submit the Levin devices[3] that it cannot lawfully possess to the judicial branch, which gave the government its authority to seize the devices in the first place. This Court should then determine either that Mr. Levin has abandoned them, or, after giving notice and an opportunity to object to Mr. Levin, that the devices – or images of the devices – should be produced to the defense.

## II.     Factual Background

When Mr. Andrade first requested Mr. Levin's devices on July 15, 2022, the government asserted that "Levin is completely irrelevant to this case,"[4] and it ran three search terms "on the master copy of Levin's iPhone" in an attempt to support its decision not to comply with Mr. Andrade's request.[5] It argued a few weeks later that it need not produce Levin's devices because they are cumulative of what is on Abramoff's "soon-to-be" produced phone.[6] This Court rejected the government's arguments, ruling on April 7, 2023, that Levin's devices *are* material to Mr. Andrade's defense and ordering their production.[7]

Rather than comply with this order, in advance of a Court-ordered joint status report six weeks later, the government produced PDFs of four spreadsheets describing some of the messages on Levin's devices, and declared in the status report that it "is not in possession of any additional extractions from Levin's [devices]."[8] In its fourth filing on the issue, as part of the

---

[3] Although the government has stated that it could not access Levin's iPad and therefore has no obligation to produce it, the government made similar claims about a few of Mr. Andrade's own mobile devices, and it turned out that defense counsel had no difficulties obtaining images of the devices. Dent Decl. at ¶4. Accordingly, Mr. Andrade includes the iPad in his request to have the Levin's devices submitted to the Court.
[4] United States' Opposition to Andrade's Second Motion to Compel, Dkt. #124 at 7:5 (Dec. 5, 2022).
[5] Andrade's Reply to Govt's Response to the Court's Discovery Order, Dkt. #252 at 3:14-21 (Dec. 11, 2023).
[6] United States' Supp. Opp. to the Motion to Compel, Dkt. #158 at 5:13-22 (March 22, 2023). The government then retracted its agreement to produce Abramoff's phone, necessitating another round of briefs.
[7] Discovery Order, Dkt. #165 (Apr. 7, 2023).
[8] Status Report, Dkt. #178:7-11 (May 26, 2023). This is an odd statement given that the spreadsheets are not extractions from the phone, but rather are PDFs of spreadsheets summarizing some communications that were on Levin's iPhone.

2

September 15, 2023 status, the government first cited the *Balwani* case, and it asserted that because it "never had a lawful right to maintain possession, custody, or control over the nonresponsive [electronic data], it could not have been under an obligation to review or turn over that data to the defense as potential Brady material."[9] The Court ordered additional briefing on the issue,[10] and following another hearing, the Court stated on December 3, 2023, that its "preliminary reaction is that Mr. Andrade should be able to subpoena the [Levin] information. … Mr. Levin can always resist production, but the process in this case at minimum must preserve the status quo."[11] The Court further ordered, on December 16, 2023, that "[i]f the government returns the phone or an image of it to Mr. Levin or his designee, it must provide Mr. Andrade . . . the details of how it returned the phone or an image of it, including the person who received it and the contact information for that person. . . . In the end, a third-party subpoena to Mr. Levin will address the issue (as the court discussed during the hearing)."[12]

Although it agreed to provide defense counsel with contact information for Mr. Levin or his counsel so that a third-party subpoena could be issued, the government did not do so. On April 12 and April 28, 2024, defense counsel reminded the government that it still had not provided contact information for a lawyer who would accept service for a subpoena for Levin's devices and suggested that, if the government was not going to return the devices, then it should submit the devices to the Court. The government declined a meet-and-confer, responding that the "request to send the devices to the Court is not supported by law," and "[t]o the best of [its] knowledge, Mr. Levin is currently located outside of the United States."[13]

---

9 Joint Status Report, Dkt. #212 at 4:1-4 (citing United States v. Balwani, 18-cr-258 EJD at 9 (N.D. Cal. Apr. 8, 2022).
10 Dkt. #213 (Sept. 21, 2023).
11 Discovery Order, Dkt. #249 (Dec. 3, 2023).
12 Discovery Order, Dkt. #256 at 3:20-24 (Dec. 16, 2023).
13 Dent Decl. at ¶3, citing Email from K. Dent to AUSA Highsmith (April 12, 2024) and Letter from K. Dent to AUSA Highsmith (April 28, 2024) and Letters from AUSA Highsmith to defense counsel (April 16, 2024) and (April 30, 2024).

### III. ARGUMENT

**A. The Court Already Has Ruled that the Government Should Not Be Permitted to Deprive Mr. Andrade of Discovery to Which He is Entitled Based on the Argument that It Must Retain the Devices Because It is Not In Lawful Possession of Them**

It is not, and cannot be, the case that the government is permitted to make Levin's devices inaccessible to the defense by claiming that it does not lawfully possess them, while at the same time continuing to possess them, using them for its own purposes, passing on its opportunities to return them to Mr. Levin, and refusing to tender them to the Court. This is especially true here, where the Court ruled more than a year ago that the Levin devices are material to the preparation of the defense and that the government must produce them to Mr. Andrade.

To justify its Catch-22, despite the Court's ruling that the phone is material to the preparation of the defense, the government has relied on *United States v. Balwani*, 18-cr-258 EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022). But this Court already has rejected a reading of *Balwani* that permits the government to evade discovery obligations based on the government's purported inability to lawfully access the data. In connection with yet another set of devices that remain unproduced despite Mr. Andrade's request for them years ago – the devices of Jack Abramoff – the Court recently ruled, despite *Balwani,* that the government must return a copy of his devices to Mr. Abramoff or his lawyer:

> It cannot be that access to Rule 16 and *Brady* material — on devices controlled solely by the government — can evade discovery, merely because (1) Mr. Abramoff — implicated in the case in various roles — presumably has not requested return of his devices (assuming that is the situation) and (2) the government cannot lawfully access the information.[14]

The same is true here.

Far from permitting the government to sit on the evidence and keep it from Mr. Andrade, the *Balwani* case made clear that the case agents involved in the investigation should have

---

[14] Order, Dkt. #292 (Mar. 17, 2024).

returned the devices and destroyed or returned any images of what it had seized that was outside of its warrant. *Balwani*, at *5.  If the government had returned Levin's devices four years ago (rather than retaining "unlawful" possession of them), then it would not be faced with the dilemma it now faces of how to comply with its discovery obligations to Mr. Andrade.  In fact, the government probably could have avoided its current dilemma even if it had returned Levin's devices to him in July 2022, after Mr. Andrade requested them, or in April 2023, after the Court ordered it to produce them.

> **B. Rule 16 Requires the Government To Produce Devices Ruled Material To Mr. Andrade's Defense Regardless of Whether the Government's Possession of the Devices Is Unlawful**

The government's position that because it is unlawfully maintaining possession of the Levin devices it should not be required to comply with its discovery obligations is flatly inconsistent with Rule 16(a)(1)(E)(i), which requires the government to permit Mr. Andrade to inspect and copy data that is "within the government's possession, custody, or control" if the item is material to his defense. There is no exception to Rule 16 that excuses the government from meeting its discovery obligations if it has chosen to retain custody of material unlawfully. Regardless of how it chooses to characterize its possession, and regardless of why it has chosen to maintain possession of the Levin devices for four years if it believes its possession is unlawful, the government indisputably has custody of Levin's devices and should be ordered to produce them, consistent with Rule 16 and in compliance with this Court's April 7, 2023 discovery order.[15]

---

15 Even if Balwani is correctly decided (though Mr. Andrade believes it is not), it is distinguishable from this case based on the fact that the government already accessed for its own purposes the Levin device it claims it does not lawfully possess.  In Balwani, the government had not done so. Balwani at *5. Unlike Mr. Andrade, Balwani had failed to seek disclosure of the information in timely fashion. Balwani at *6. In addition, for the reasons described in Part IIIC below, unlike Levin, there was no indication in Balwani that the person from whom the information had been seized had abandoned their property, so that the government could easily end its assertedly unlawful possession by returning the property.

The government has offered no reason why it was able to use the master copy of the Levin phone for its own purposes[16] but cannot produce it to Mr. Andrade.[17]  Nor has the government offered any reason why handing the devices over to the judicial branch is any less lawful than hanging on to them and preventing Mr. Andrade from using the data on them to prepare his defense.  The government's objection to providing the devices to the Court is equally baseless. When Mr. Andrade's counsel requested that the government return the Levin devices to the judicial branch that issued the warrants for the devices, its objection ironically has been that the "request to send the devices to the Court is not supported by law, and puts the Court in the inappropriate position of holding third-party evidence."[18]  If there is no law supporting the return of devices unlawfully held by the government, then that is because the government does not typically unlawfully hold evidence seized from third parties for four years, even after the government has accessed the evidence, and even after the Court – after multiple rounds of briefing and multiple hearings – has ruled that it should produce it.[19]  And there is no law allowing the government to retain devices it says it does not lawfully possess.

### C. Levin Abandoned His Devices, Thereby Forfeiting His Fourth Amendment Rights

The government's suggestion that it must refrain from producing Levin's devices to protect Levin's Fourth Amendment rights[20] is baseless given that Levin has abandoned the devices.  Levin's devices were seized more than four years ago in an investigation in the

---

16 See Joint Status Report, Dkt. #212 at 8:9-17 and 24-26 (fn 10) (Sept. 15, 2023); and Andrade's Reply to Govt's Response to Court's Discovery Order, Dkt. #252 at (Dec. 11, 2023).
17 It is possible that the government's search of the master copy was lawful because the image is a post-taint image, in which case the government is in lawful possession of the master copy and should produce it.
18 Dent Decl. at ¶3.
19 Discovery Order, #165 (Apr. 7, 2023).  Even after the government raised its Balwani argument six months later, the Court maintained its position that Mr. Andrade is entitled to the devices.  See Discovery Order, #249 (Dec. 3, 2023) ("preliminary reaction is that Mr. Andrade should be able to subpoena the [Levin] information"); Discovery Order, Dkt. #256 at 3:20-24 (Dec. 16, 2023) ("In the end, a third-party subpoena to Mr. Levin will address the issue (as the court discussed during the hearing).").
20  Dent Decl. at ¶5, citing email from AUSA Highsmith to K. Dent (June 6, 2023)("We have produced the extractions from the Levin devices in our possession, i.e., the responsive, non-privileged material we are permitted by the Fourth Amendment to retain.").

Southern District of New York. If, as the government suggests, Levin has left the country, then he did so knowing he was leaving his devices behind, and he does not appear to have ever requested return of his devices.[21]

The law is clear that Fourth Amendment protection does not extend to abandoned property, and that Levin has abandoned his devices. *See United States v. Green*, 981 F.3d 945, 956 (11th Cir. 2020) (defendant abandoned his cell phone after it was lawfully seized incident to his arrest for driving with a suspended license, where release of the cell phone was authorized by law enforcement about 48 hours after defendant's arrest, and there was no evidence that defendant did anything over the next four years to maintain his interest in the phone); *United States v. Fisher*, 56 F.4th 673, 686-87 (9th Cir. 2022) (an individual abandoned his devices for purposes of the Fourth Amendment where his "words, acts, or other objective indications" indicated that he abandoned them: it did not matter that he claimed not to have *intended* to abandon the devices). The government should not be permitted to ignore its discovery obligations and this Court's April 7, 2023 order based on the purported Fourth Amendment rights of an individual who abandoned his property and left the country.

### D. If the Government Cannot Produce Images of the Devices or Submit the Abandoned Devices to the Court Because They No Longer Exist, Then It Should Produce the Destruction Reports And Related Communications

Finally, if the government has destroyed the master copy of Levin's phone or any of the other images of Levin's devices, or the devices themselves, it should be ordered to produce the reports (including forensics reports) and communications relating to that destruction. In its carefully worded response to the Court's December 3 Order, the government uses the word "retained" four times in its explanation of why four Excel spreadsheets were all that it could produce, insisting that the spreadsheets were all that "law enforcement authorities in New York identified as responsive material from Levin's iPhone, seized, *and retained*."[22] The government's

---

21 Dent Decl. at ¶6.
22 Gov't Response, Dkt. #251 (Dec. 7, 2023).

7

focus on what it *retained* raises the question whether there is Levin material it *did not retain*. The Court should order the government to produce any forensic reports relating to the devices, additional destruction reports, and communications about the destruction of any portion of Levin's devices.

## IV. CONCLUSION

For the foregoing reasons, this Court should require the government to produce the master copy of Levin's iPhone and any additional images of Levin's devices, or to submit Levin's iPhone and iPad to the Court so that Mr. Andrade can obtain the evidence that the Court has ruled is material to his defense. If the government has destroyed the any images or reports of Levin's phone or the Levin devices themselves, then it should be ordered to produce any forensic reports, destruction reports, and communications regarding that destruction.

DATED: June 28, 2024

Respectfully submitted,

KING & SPALDING LLP

By: */s/ Michael J. Shepard*
MICHAEL J. SHEPARD
KERRIE C. DENT
CINDY A DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE