MICHAEL J. SHEPARD (SBN 91281)
  *mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
  *kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: +1 2 02 626 2394

CINDY A. DIAMOND (SBN 124995)
  *cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone: +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE<br><br>Defendant. | Case No. 3:20-cr-00249-RS-LBx<br><br>**DEFENDANT MARCUS ANDRADE'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF LEVIN MASTER COPY AND OTHER IMAGES OF LEVIN DEVICES OR RETURN DEVICES TO THE COURT**<br><br>Date:       July 18, 2024<br>Time:      10:30 am<br>Judge:     Honorable Laurel Beeler |

I.      INTRODUCTION

The Opposition does not mention, let alone grapple with, the Catch-22 underlying its position: the government resists producing information material to preparing the defense by claiming it does not lawfully possess the information, going so far as to suggest that its continued retention of the information is unconstitutional,[1] but it nonetheless continues to retain possession of that same information.  By the government's account, the government's continued lawless retention of the information renders it impossible to allow the defense access because the government cannot possibly touch the information for the moments it would take to turn it over to the defense, even though the Court has determined that production of the information is required by Rule 16 and *Brady*.

Instead of offering the Court any justification for its continued lawless retention of the information, or explaining how it can avoid the requirements of Rule 16 for information in its custody, or offering the Court any assistance in resolving a Catch-22 of the government's own creation, the Opposition complains about pretty much everything else in the Opening Brief. The government's complaints even extend to defense counsel's reliance on this Court's prior ruling (with respect to Abramoff's phone) that "[i]t cannot be that access to Rule 16 and *Brady* material – on devices controlled solely by the government – can evade discovery," merely because the government could not lawfully access the information.[2]

None of the government's complaints are justified for the reasons set forth below, and one is so weak that it underscores a ready solution that does not require a resolution of the Catch-22 the government created: in response to Mr. Andrade's argument that Levin has abandoned his devices, thereby obviating the need for the government to feel constrained by the scope of the search warrants for the devices, the best the Opposition can do is to distinguish the cases in Mr. Andrade's Opening Brief on the basis that those cases were decided on standing grounds.[3]

But the reason that the subjects of search warrants in those cases lacked standing is that, by abandoning the property, the subjects of the search "lost any reasonable expectation of

---

[1] Gov't Opp., Dkt. #321 at 4:12-14 (referencing the "constitutional limit on what it can lawfully possess").
[2] Opening Brief, Dkt. #317 at 1:21-25.
[3] Gov't Opp., Dkt #321 at 6:8-12.

1

privacy in them." *United States v. Fisher*, 56 F.4th 673, 686, 687 (9th Cir. 2022), *quoting United States v. Cella*, 568 F.2d 1266, 1284 (9th Cir. 1977). Having already searched the entire device when it suited its own purposes, the government's effort to clothe in Levin's constitutional protections its refusal to comply with its Rule 16 obligations was a hard sell to begin with, but its refusal has no clothes when it cannot dispute that Levin has abandoned the phone and no longer has a reasonable expectation of privacy – or any constitutional rights – to protect. For this reason alone, and for the other reasons set forth below, the Court should order the government to produce the master copy and all other images of Levin's phone, including all destruction reports and forensic reports relating to the images.

## II.    RESPONSE TO GOVERNMENT'S "BACKGROUND"

The Court is well familiar with the background to this motion. This discussion corrects and/or puts in context two of the statements in the Background section, and other factual assertions in the Opposition.

First, the government complains that Mr. Andrade keeps asking for Levin's devices, and wrongly disputes that the Court ever ordered their production.[4] In fact, the Court ruled on April 7, 2023 that the devices are material to the preparation of Mr. Andrade's defense and *on that basis ordered that the government produce those devices.*[5] The government did not comply with the Court's order, instead producing – after more than six weeks of non-compliance – nothing more than four spreadsheets that summarize some messages from the iPhone, and declaring that it "is not in possession of any additional extractions from Levin's [devices]."[6] After five more months of non-compliance, the government argued in a status report that it did not lawfully possess portions of the devices,[7] and the Court did not require the government to produce those portions, opting instead to have the government return the devices to Levin so that Mr. Andrade

---

[4] Gov't Opp., Dkt #321 at 1:23-24, 4:18-21.
[5] Discovery Order, Dkt. #165 (Apr. 7, 2023) at 2:19 ("the government must produce the Levin device without an AEO designation") and 13:14 ("The court orders . . . production of the Levin device without an AEO designation"). The Court stated in a subsequent order that it "clarifies that its earlier orders apply to all of Mr. Levin's devices (such as his iPad) that were seized, not just his phone." Discovery Order, Dkt. #249 (Dec. 23, 2023) at 2:7-8.
[6] Status Report, Dkt. #178:7-11 (May 26, 2023).
[7] Joint Status Report, Dkt. #212 at 4:1-4 (Sept. 15, 2023).

1   could subpoena them.  As set forth in more detail in Mr. Andrade's Opening Brief,[8] this

2   alternative failed because Levin has terminated his representation by counsel and apparently left

3   the country.  The failure of the alternative triggered this motion, which is based on (among other

4   things) the pivotal new fact of Levin's abandonment of his devices, as well as this Court's

5   reasoning in resolving the same Catch-22 when it arose in Mr. Andrade's effort to access

6   Abramoff's phone.

7           Second, the government incorrectly states that "[a]t best, Andrade has shown that a

8   handful of communications between Levin and Andrade's co-conspirator Jack Abramoff about

9   an ultimately unsuccessful venture to develop a TV show about cryptocurrency may be relevant

10  to the defense."[9] Not only was Mr. Andrade's argument based on numerous facts beyond just the

11  TV show,[10] but this Court found that "Mr. Andrade has articulated a sufficient explanation"

12  about why the information on Levin's devices is material.  In addition, far from limiting its

13  acceptance of Mr. Andrade's argument to one example, the Court agreed with Mr. Andrade's

14  position that "only Mr. Levin's devices will … provide insight into what he, Mr. Abramoff, and

15  others were doing."[11] And the Court's order cited an argument in Mr. Andrade's Supplemental

16  Reply Brief in support of his second motion to compel, which detailed why it is not enough for

17  Mr. Andrade to have Levin's communications with Abramoff about the TV show.[12]

18  ///

19  ///

20  ///

21  ///

22  ///

23

24  ---

[8] Andrade's Opening Brief, Dkt. #317 at 2:16 and 3:1-20.

[9] Gov't Opp., Dkt. #321 5:8-11.

[10] Mr. Andrade provided far more information about Levin's connection to Mr. Andrade's defense than what was related to the TV show. *See* Decl. of K. Dent iso Andrade's MTC (Dkt. #120-1), ¶¶ 12, 35 - 40. Although the declaration was 30 pages long and included dozens of attachments, the Court made it clear at the April 6 hearing (the day before the Discovery Order was issued) that it considered everything in the filing. *See* Transcript, Dkt. #167 (Apr. 6, 2023) at 4:18-23; 5:9-12  ("I just set aside a ridiculous amount of time to go through everything . . . I read everything. . . And I thought about your case pretty deeply.").

[11] Discovery Order, Dkt. #165 at 11:1-12 (April 7, 2023).

[12] Discovery Order, Dkt. #165 at 8:2, fn 17 (citing Supplemental Reply Brief, Dkt. # 159 at 10-11).

3

### III.    ARGUMENT

What little the Opposition offers by way of substantive argument is easily answered.

### A.    The Claim that Not Everything on the iPhone is Material to Mr. Andrade's Defense is Meritless

Much of the Opposition rests on the complaint that Mr. Andrade has not shown that "everything" on Levin's devices is material to his defense. This is wrong in three different ways.

First, this issue was already briefed and resolved against the government. After multiple rounds of briefing and argument, this Court has ruled that Levin's devices in toto are material to the preparation of Mr. Andrade's defense: it ordered that "the government must produce *the Levin device* without an AEO designation."

Second, the government cites no authority for the proposition that defendants are required to justify access to every bit of data on a device they have not seen (or every page of a document, or every word in a recording). No discovery request can justify individually every inch of data it seeks, and such a requirement would unfairly limit discovery, given that, as the government acknowledges, nobody (probably not even Levin, and certainly not the parties or the Court) knows exactly what is on Levin's phone.[13] As Chief Justice Marshall queried long ago: "Now if a paper be in possession of the opposite party, what statement of its contents or applicability can be expected from the person who claims its production, he not precisely knowing its contents?" *United States v. Burr*, 25 F.Cas. 187, 191 (No. 14,694) (C.C.D. Va. 1807).

Rather, Rule 16 sets a low standard. *United States v. Andrade*, 2023 WL 2838110, *2-3 (N.D. Cal. Apr. 7, 2023), citing *United States v. Soto-Zuninga*, 837 F.3d 992, 1002-03 (9th Cir. 2016) ("materiality is a low threshold"). This Court has already determined that the request met that standard, and the government makes no claim that the request is unduly oppressive – in fact, turning over the entire device is far less oppressive than any alternative. If the Court thinks the discovery arguments in this case have been unduly lengthy, imagine what they would look like if the government's proposition were the law.

///

---

[13] Govt Opp., Dkt. #321 at 4:26-28.

4

1        Third, in response to Mr. Andrade's showing that the Court need not consider the

2 relevance of each bit of data on the devices because Levin has abandoned them, the Opposition

3 asserts that Mr. Andrade "has not met his burden to show this,"[14] without saying what that

4 burden or how the facts of this case do not satisfy those in the authorities cited in the Opening

5 Brief.  It adds that the cases Mr. Andrade cited are decided based on standing grounds, but that is

6 no answer because the lack of standing was based on the fact that by abandoning the property,

7 the subjects of the search "lost any reasonable expectation of privacy in them." *United States v.*

8 *Fisher*, 56 F.4th 673, 686, 687 (9th Cir. 2022), *quoting United States v. Cella*, 568 F.2d 1266,

9 1284 (9th Cir. 1977).  Given that the devices have been abandoned, there should be no basis for

10 the government to continue to insist that it cannot produce the devices because of Levin's Fourth

11 Amendment rights and the scope of the search warrants.

12     **B.**     **The Opposition's Challenges to Mr. Andrade's Proposed Remedies Are**

13                 **Meritless**

14        In response to Mr. Andrade's two alternative solutions to the government's Catch-22

15 – that the government either produce the post-taint master copy of the Levin phone and other

16 images of the devices or submit the devices to the Court – the government dismisses as

17 "inexplicable" Mr. Andrade's alternative request that the government provide the devices to the

18 Court. This dismissal is another example of the Opposition's failure to address the Catch-22.

19 That the Court possess the devices is far more "explicable" than that the government should

20 continue to possess devices that it insists it "cannot lawfully possess,"[15] especially when the

21 government's doing so deprives Mr. Andrade of information this Court has already found to be

22 material to preparing his defense.  Needless to say, the government offers no authority to justify

23 its continued possession of devices that it claims it cannot lawfully (or constitutionally) possess,

24 and the *Balwani* case on which its argument is based establishes the contrary.  Providing the

25 devices to the judiciary, which permitted their seizure in the first place, solves that problem.

26 Equally inexplicable is the government trying to present itself as the protector of Levin's rights

27

28 [14] Gov't Opp., Dkt. #321 at 2:8.
[15] Gov't Opp., Dkt. #321 at 2:3.

ANDRADE'S REPLY ISO MOTION TO COMPEL PRODUCTION OF LEVIN
MASTER COPY OR RETURN DEVICES TO COURT           CASE NO. 3:20-CR-00249-RS-LB

after (by its argument) unlawfully accessing portions of his phone, and continuing to unlawfully possess it while trying to use lack of lawful possession as a way to defy its obligations under Rule 16. Also inexplicable is the government's resisting the notion that Levin abandoned his phone, under circumstances in which the government would be claiming abandonment if it wanted access to the device rather than to deprive the defense of access.

The Opposition has no answer for the fact that Levin's phone is in its custody. Similar to this Court 's ruling requiring the government to produce Mr. Andrade's Trezors, Rule 16 requires the government to produce information in its custody that is material to preparing the defense – which this Court has already determined Levin's devices to be. Even assuming that *Balwani* was correctly decided, it is distinguishable because here, unlike in *Balwani*, the person from whom the phone was seized has since abandoned it, extinguishing his constitutional rights to its privacy. Similarly, the Opposition correctly quotes the Court that "the government cannot waive its constitutional obligations to seize only what a search warrant permits," but here the government not only seized it, but continues to possess it, and has (despite claiming they cannot do so lawfully) – holding them for so long that Levin has abandoned them, eliminating any force to the argument that they cannot be turned over to the defense.

Despite the breadth of this Court's April 7 order, the government next seeks to limit its production to Levin's iPhone on the ground that "the iPad cannot be accessed." It cites no authority suggesting that there is an exception to Rule 16 for devices that the government says it cannot access, and the Rule contains no such exception. Producing the device whether or not the government has accessed it is not a meaningless exercise: as Mr. Andrade noted in his Opening Brief (without any response in the Opposition), the government previously represented that it could not access a device of Mr. Andrade's – reporting that it could not turn on the device – and after the government returned Mr. Andrade's device to him on February 22, 2024 (after promising to do so multiple times in 2022),[16] King & Spalding's San Francisco office, which received the production, easily accessed the information on the device and had it imaged.[17]

---

[16] *See* Declaration iso Motion for Continuance, Dkt. #311-1 (May 11, 2024) at ¶13.
[17] *See* Declaration of K. Dent iso Andrade's Opening Brief, Dkt. #317-1, ¶4.

ANDRADE'S REPLY ISO MOTION TO COMPEL PRODUCTION OF LEVIN
MASTER COPY OR RETURN DEVICES TO COURT                    CASE NO. 3:20-CR-00249-RS-LB

1   Regardless of the level of the government's vigor in accessing potentially exculpatory data, the

2   Court has determined that the iPad contains information material to the defense, and Mr.

3   Andrade is entitled to see if he can access it.

4   As its final shots, the government asks "what the Court would actually do with the

5   devices once it had them." Gov't Opp. at 6:17-19. The answer is simple: it could turn the

6   devices over to Mr. Andrade to satisfy the requirements of Rule 16, *Brady* and due process. Or,

7   if it wanted further confirmation that Levin abandoned the devices – confirmation Mr. Andrade

8   believes is unnecessary – it could publish or otherwise attempt to provide notice to Levin and

9   give him the opportunity to raise any objections before determining whether to turn the devices

10  over to Mr. Andrade. Far from a "sweeping" order, this would be an order that goes no further

11  than allowing defense access to information that falls within Rule 16, and would effectuate the

12  Court's earlier orders that the devices are material to the preparation of the defense and that they

13  should be produced.

14  **C.    Much of the Government's Argument Is Beside the Point**

15  Much of what the government does argue, instead of addressing the Catch-22, is beside

16  the point and fails to dispute the materiality of the data on the Levin devices. It does not matter

17  whether the government deems the Levin investigation "unrelated to this case." Even if the

18  government's description of the scope of other investigations were not unreasonably narrow,

19  what matters is whether information that was gathered in the other investigation, which may be –

20  and in this case, based on what already has been produced, is – material to preparing Mr.

21  Andrade's defense, such as evidence of what Abramoff was doing with others behind Mr.

22  Andrade's back to engage in money laundering and other activities using AML Bitcoin in ways

23  that adversely impacted Mr. Andrade's business. If it were correct, as the government asserts,

24  that the Levin investigation is "unrelated" to this case,[18] then limiting Mr. Andrade to what the

25  [18] To be sure, the government has a poor track record in this case when it limits what is material to Mr. Andrade's

26  defense. When Mr. Andrade filed his motion to compel on November 28, 2022, the government made light of Mr.
    Andrade's requests, stating that "conspiratorial speculation is not a proper basis for discovery in a criminal case"

27  and that "the government is aware of nothing beyond such speculation justifying defendant's request." Dkt. #124 at
    1:6-8. Although the government insisted that it was not "aware of any substantive connection between" Butina or

28  Erickson and the "case against Mr. Andrade," and that it "does not believe that the investigation into Alexander
    Levin is relevant to this case," after multiple rounds of briefing and several hearings, the Court ruled that the

7

1   government accessed in a search warrant in that "unrelated" investigation would restrict him to

2   material on the phone that is, if anything, *less* likely to contain information about other conduct

3   in which Abramoff engaged with Levin, or anything else material to the preparation of the

4   defense.

5          Equally unimportant is what the government alleges about how much Mr. Andrade

6   allegedly "stole," what he did with the "stolen" funds, or whether the government charged Levin

7   with a crime.  Discovery obligations do not change based on the seriousness of the government's

8   accusations. Even if the government did not appear to be protecting Abramoff and the miscreants

9   with whom he was working, limiting discovery based on who the government charged would

10  allow the government to control the scope of discovery, and would prohibit defendants from

11  learning about others who may be responsible for the charged wrongdoing, or others who

12  engaged in wrongdoing that may otherwise provide a defense.[19]

13         No better is the attempt to dismiss what is on Levin's devices as inadmissible hearsay.

14  Gov't Opp., Dkt. # 321 at 5:27   It should go without saying that the defense is entitled to

15  discovery regardless of its potential admissibility.  In any event, proof of what Levin and

16  Abramoff were saying and doing behind Mr. Andrade's back is not hearsay; it is proof of

17  conduct that will establish a defense, and the cell phone records could be admitted not for the

18  truth of what Levin said in those communications, but rather to demonstrate, among other things,

19  what conversations Levin had with Abramoff or others, or to show that they discussed Mr.

20  Andrade's business.[20]

21         For all these reasons, not only has the Court already ruled on the materiality of the

22  devices, but none of the Opposition's argument to the contrary have any merit.

23

24  materials from all three individuals were material to the preparation of Mr. Andrade's defense. Discovery Order, Dkt. #165.

25  [19] If the government had conducted a full investigation of Abramoff, it likely would have seen the connection, added to the charges against Abramoff, and potentially Levin as well.

26  [20] *See, e.g., United States v. Boswell,* 530 Fed. Appx. 214, 216 (5th Cir. 2013) (evidence of an incoming text message on defendant's cell phone was not hearsay where it was offered to show the statement was made, not for the truth of the statement), citing Fed. R. Evid. 801(c)(2) and additional cases.  *See also United States v. Farley,*

27  2015 WL 6871920 (N.D.Cal. Nov. 9, 2015) at *8 (text messages from cell phone are admissible non-hearsay if they are offered to give context to the statements, not for the truth of the matter); *United States v. Arteaga,* 117 F.3d 388,

28  397 (9th Cir.1997) (articulating several categories of non-hearsay uses of statements).

8

## IV.    CONCLUSION

Mr. Andrade respectfully requests that the Court order the government to produce the master copy and any other images of Levin's iPhone and iPad. If the government has destroyed any images or reports of Levin's devices or the Levin devices themselves, then it should be ordered to produce any forensic reports, destruction reports, and communications regarding that destruction.

Respectfully submitted,

DATED: July 15, 2024                KING & SPALDING LLP

By:  */s/ Michael J. Shepard*
MICHAEL J. SHEPARD
KERRIE C. DENT (*Pro Hac Vice*)
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

ANDRADE'S REPLY ISO MOTION TO COMPEL PRODUCTION OF LEVIN
MASTER COPY OR RETURN DEVICES TO COURT            CASE NO. 3:20-CR-00249-RS-LB