**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )
                             )
  VS.                        )        NO. CR 20-00249 RS
                             )
ROWLAND MARCUS ANDRADE,      )
                             )
         Defendant.          )
_____)
```

San Francisco, California
Wednesday, August 7, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**   (via videoconference)

For Plaintiff:
        ISMAIL J. RAMSEY
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
   **BY:  DAVID J. WARD and MATTHEW CHOU and**
        **CHRISTIAAN HIGHSMITH**
        **ASSISTANT UNITED STATES ATTORNEYS**

        UNITED STATES DEPARTMENT OF JUSTICE
        National Security Division
        950 Pennsylvania Avenue, NW
        Washington, D.C.  20530
   **BY:  CHANTELLE DIAL, ATTORNEY AT LAW**

For Defendant:
        KING & SPALDING LLP
        50 California Street - Suite 3300
        San Francisco, California  94111
   **BY:  MICHAEL SHEPARD, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
        U.S. District Court - Official Reporter

```
 1   APPEARANCES:   (continued via videoconference)

 2   For Defendant:
                              KING & SPALDING LLP
 3                            1700 Pennsylvania Avenue, NW
                              Washington, D.C.  20006
 4                       BY:  KERRIE C. DENT, ATTORNEY AT LAW

 5                            CINDY A. DIAMOND, ATTORNEY AT LAW
                              58 West Portal Avenue - Suite 350
 6                            San Francisco, California  94127
                         BY:  CINDY ANN DIAMOND, ATTORNEY AT LAW
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Wednesday - August 7, 2024**                                    **2:29 p.m.** |

2              **P R O C E E D I N G S**

3                        ---o0o---

4      **THE CLERK:** Calling case 20-CR-249, United States
5 versus Rowland Marcus Andrade.
6      Counsel, please state your appearances starting with the
7 Government.
8      **MR. WARD:** Good afternoon, Your Honor, it's David Ward
9 for the United States. I'm joined by my colleagues Chris
10 Highsmith and Matthew Chou from the U.S. Attorney's office here
11 in San Francisco.
12      Also joining us is Chantelle Dial. Ms. Dial is a DOJ
13 attorney with the National Security Division, and she is here
14 to help advise the Court on the CIPA notice and the upcoming
15 CIPA procedures.
16      **THE COURT:** Good afternoon.
17      **MR. SHEPARD:** Good afternoon, Your Honor, Michael
18 Shepard for the Defendant, Rowland Marcus Andrade. He is
19 present by Zoom and consents to proceed in that fashion and
20 appreciates the Court's accommodation to let him do so.
21      With me are my colleagues, Kerrie Dent and Cindy Diamond.
22      **THE COURT:** Good afternoon.
23      So, this is on calendar to deal with the classified
24 information issues. I dealt with similar issues once before,
25 but I don't have a great deal of experience with CIPA.

1    So, why don't I start with you, Mr. Ward.  Tell me, you
2  know, what this is all about, what I need to know.
3        **MR. WARD:**  Your Honor, I would respectfully turn this
4  over to Ms. Dial.  We have filed a notice that we have
5  identified certain classified information and that we would ask
6  the Court to review.  But beyond that, I think Ms. Dial is best
7  positioned to advise the Court.
8        **THE COURT:**  Okay.  Go ahead.
9        **MS. DIAL:**  Good afternoon, Your Honor.
10    So, as the Court has seen the Government's Section 2, the
11  purposes of the Section 2 pretrial conference are to set a
12  schedule, to seek a CISO or Court Information Security Officer
13  to address any clearances.
14     The Government provided a proposed schedule.  I understand
15  Defense Counsel has objected to that.
16     We are proposing that the Government's Section 4 motion --
17  CIPA Section 4 motion to the Court be submitted on
18  October 25th.
19     I can say in speaking to the AUSAs, I'm aware of the trial
20  date in this matter.  I'm aware that the trial date needs to
21  stick.  My supervisors are.  The entity holder of the
22  classified information is, and we intend to stay within the
23  confines of the Court's current schedule.
24        **THE COURT:**  From the Government's perspective, does
25  this all lead to -- if I agree or am comfortable with doing it

the way you proposed, this leads to -- culminates in my review of material? Is that what happens in this instance?

**MS. DIAL:** Yes. And I have in front of me the things that I am allowed to say and the things that I am not allowed to say. There's a lot I can't say right now.

But what happens is in the Section 4, the Government will provide a thorough background on what classified information there is.

I can say that there is a limited universe of information. We don't expect that there will be any litigation necessary after the Section 4 and that will all be thoroughly explained in the Section 4 filing.

**THE COURT:** Which is under seal to me?

**MS. DIAL:** Yes, it is, Your Honor.

**THE COURT:** Okay.

(Pause in proceedings.)

**THE COURT:** Okay. All right. Mr. Shepard, what's -- what is your view on this?

**MR. SHEPARD:** So, we had no objection to the Government's original proposed order which said let's start a CIPA procedure and let's appoint a security officer.

The Government sent us a proposed scheduling order on July 31st. Asked if we would stipulate to the order. We responded to it. Offered to meet and confer. Provided them with a short letter setting forth several reasons why we

1    couldn't agree starting with the Government giving itself until
2    October 25 for the initial Section 4 filing.
3         And the Government then did not meet and confer with us
4    but posed -- sent their proposed order with the October 25 date
5    to the Court last night.
6         I would submit that the Court should not accept the
7    Government's proposal to allow it until October 25th to make
8    its Section 4 filing.
9         It's not entirely clear to anyone at this point how this
10   will all play out, but my concern is that this is going to
11   squeeze the time the Court needs and the time that we would
12   need to prepare for a February trial.  If information is
13   provided to us, we need to get it, review it, follow up on it.
14        If, as sometimes I understand is the case, we would need
15   to get security clearance to seize certain items.  That takes a
16   substantial amount of time.
17        And so from my perspective, there is no reason to give the
18   Government until October 25th.  Ms. Dial says it's a limited
19   universe of information.  We're talking about a hundred days --
20   October 25th would be a hundred days since the Government filed
21   its CIPA motion.
22        It will be two years since we were asking if CIPA
23   procedures needed -- would be needed in response to some of our
24   discovery requests.
25        So, giving the Government until October 25th seems like a

1   mistake to me.  I would ask the Court to set a much shorter
2   deadline and that any CIPA schedule should also include
3   reasonable time for Defense Counsel to -- to make an ex parte
4   submission on our theory of the case to help you make the
5   decisions that you need to make in response to the Government's
6   filing.
7       You know, they -- Ms. Dial has said there isn't a lot of
8   classified material, and I think Mr. Ward said that the
9   Government filed a notice with certain classified information.
10      We don't know what this is about, and the Government has
11  given us no information about why CIPA is now needed, what the
12  volume of material is going to be other than what Ms. Dial just
13  said, and the types of data involved including, like, what
14  agency -- what is the issue.  We know nothing about it.
15      Makes it hard to say anything other than that we
16  appreciate that we need to go through the CIPA process but not
17  on a schedule which would only serve to reward the Government
18  for delaying the process.
19          **THE COURT:**  You know, can't you all pursue further the
20  meet-and-confer process?  I mean, you know, it does seem like
21  it's a long period of time particularly in light of the fact
22  that we have gotten some inkling that it is not a great deal of
23  material.
24      But, you know, to ask me to mandate a schedule when I know
25  nothing about what this is all about is -- really makes no

sense.  You -- the parties need to meet and confer and come up with a schedule.

I mean, I don't know the answer to this.  It is not written in the stars.

So, you know, I totally understand why the Government has to be careful about what it says, but at the same time you can't expect me to just say "we can't tell you anything but trust us, this is the right schedule."

The parties have to work together and come up with something that makes sense to both sides and let me -- you know, is there further -- from -- to the Government, because apparently the Government didn't take up the invitation to do further meeting and conferring, I guess my question is why not?

**MS. DIAL:**  And I think I will -- I know that Mr. Ward -- AUSA Ward can best address that.  I would like at some point, Your Honor, to be able to explain a little bit more why we have set October 25th but I can defer --

**THE COURT:**  Go ahead.

**MS. DIAL:**  -- to Mr. Ward.

**THE COURT:**  Who is stopping you?  Go ahead.  Tell us.

**MS. DIAL:**  All right.  Thank you, Your Honor.  So the October 25th -- and to clarify, the Government has not said that it's not a lot of classified information, just that it's a limited universe.  I understand we are parsing words, but we -- the things that cannot be said --

1          **THE COURT:**  I have to tell you, Ms. Dial -- I'm sure
2    you hear this from other people when you have these cases --
3    the difference between a limited universe and not a lot of -- a
4    limited universe but I'm not saying it's not a lot of material
5    leaves me completely in the dark.
6          And I understand why it may be that way, but you can't
7    expect me then to draw any conclusions from what you have just
8    told me because you have essentially said, "I can't tell you
9    anything."
10         Okay.  But then I'm not going to draw some conclusion, oh,
11   well, therefore, you are right.  October 25th makes sense.  I
12   mean, I don't know.
13         **MS. DIAL:**  I understand which is why I think I could
14   have done better at the beginning explaining some of the next
15   steps that happen in the process.
16         And I understand and appreciate the Court's frustration.
17   So I am limited in saying the origins of the classified
18   information, who owns the information, the classified level,
19   and how much there is.
20         What I can say is that the U.S. Attorney's Office
21   conferred with CES.  We determined that CIPA proceedings were
22   going to be necessary.
23         The reason for the October 25th is not because of the
24   universe of information that we are talking about.  It's
25   because of the procedures that have to happen particularly in

1  the Ninth Circuit.
2       So, there is -- and in our -- in our filing we referenced
3  this, but there is a number of steps that the Government now
4  has to take in order to submit its Section 4.
5       So what happens internally here is I draft up the
6  Section 4.  I'm currently working with the entity holder of the
7  information; already working with those attorneys.  Those
8  attorneys have to draft a summary saying why the information
9  that is at issue here is privileged.
10      That summary has to be signed by the head of the
11 department.
12          **THE COURT:**  Okay.  Let me stop you.  I know there are
13 going to be 85 different steps you have to go through.  I
14 understand.
15      Why is this cropping up now?  I mean, this case has been
16 going on forever.  I want this case out of here, and it's gone
17 on forever.
18      So, now, when we have a trial date, February, you know,
19 that's when it's going to happen.  Why now is this all cropping
20 up?  Why didn't this happen before?
21          **MS. DIAL:**  I --
22          **THE COURT:**  Did something new happen that I was
23 unaware of that suddenly creates this whole world of
24 confidential or classified information that we were otherwise
25 unaware of?

1       **MS. DIAL:** I am limited in what I can say. We will
2  explain the timeline entirely in the Section 4 and why it came
3  to light now.
4       **THE COURT:** Okay. Well, let me go to Mr. Ward. Is
5  there -- is there -- is there an opportunity to pursue some
6  further meeting and conferring to come up with a schedule that
7  is going to work for everybody?
8       I mean, Mr. Shepard has specific concerns about the
9  crunching of the schedule in certain ways. And, you know, at
10 the very least, can't you all hash that out?
11      And perhaps your explanation to him will alleviate his --
12 he will then understand why the schedule is the way that it is
13 being proposed.
14      But, otherwise, it effectively is a Government mandate to
15 sign this because this is what we tell you we need. And maybe
16 it's right -- maybe that's true -- but I understand why
17 Mr. Shepard wants some meeting and conferring on this issue.
18      **MR. WARD:** Your Honor, I understand. And we have not
19 had great success with meeting and conferring overall with
20 Mr. Shepard and his colleagues.
21      In this case we will attempt to have further discussion
22 with them.
23      We are severely limited in that many of the questions that
24 he wants answers to -- like, why now, how much is involved,
25 what is the classified information, is just information we

1  can't provide.  It's because it's classified.
2      I understand that Mr. Shepard may want the answers to
3  them, but it's not something that we can provide.
4      We are trying to work within the confines of classified
5  information.  And as Ms. Dial said, we can present that to the
6  Court.
7      I'm happy to have a discussion in an attempt with
8  Mr. Shepard to compress the schedule.  I understand his
9  concern, and I certainly understand the Court's concern and the
10 Government -- it is shared by the Government.
11     We want this off your calendar too.  We want this case to
12 go to trial, and we expect this case is going to go to trial on
13 February 10th.
14     We don't expect that this issue will derail it even with
15 the Government's proposed schedule.  I'm happy to have a
16 further discussion with Mr. Shepard.
17     As Ms. Dial said, there are approval timelines and
18 presenting the Court with classified information that takes
19 time to work its way up.
20     The Ninth Circuit is particularly strict about the
21 approvals for that.  We are working diligently.  This is not
22 something that came up --
23         **THE COURT:**  When you --
24         **MR. WARD:**  -- and we sat on.
25         **THE COURT:**  When you say the Ninth Circuit is

1  demanding of this, I'm not sure what you are talking about.  Is
2  this case law or what?
3          **MR. WARD:**  Yes -- and Ms. Dial can correct me -- but
4  it is a case that Alahmedalabdaloklah, roughly, which sets up a
5  procedure for which level of department head must approve CIPA
6  filings.  And in this case it requires a declaration from the
7  political head of the department, which we understand to be --
8  well --
9          **MS. DIAL:**  Factually can't --
10         **MR. WARD:**  We can't say what department but the --
11         **THE COURT:**  Whatever.  I don't --
12         **MR. WARD:**  We will work through it, Your Honor.
13         **THE COURT:**  Yeah.
14         **MR. WARD:**  If we can tighten the schedule, we will --
15 I will speak with Ms. Dial.  I'm happy to try to accommodate to
16 a point Mr. Shepard.  His request was that we file this next
17 week.  It's not -- it's not workable.
18         **THE COURT:**  It's not workable.  I understand.  That's
19 fine.
20         **MR. WARD:**  But we will --
21         **THE COURT:**  Okay.  Do make another effort.  And I will
22 say to, Mr. Shepard, at the end of the day because of the
23 nature of this and because -- for understandable reasons -- I'm
24 not going to have the full explanation that we would all want,
25 I'm going to have to err on the side of what the Government is

proposing.

So it is in -- you should be incentivized to try to come up with something that is workable. It may not be perfect from your scheduling perspective; but if it comes down to -- because of the nature of this the -- you know, don't agree to do what the Government wants you to do, I'm going to be in a pretty difficult position because I -- you know, the nature of this stuff.

So, it's not your standard just, you know, back-and-forth. They are in a unique position with respect to classified materials, and we just have to recognize that.

So, I do want them to try another meet and confer; but I want you to be incentivized to try to come up with some understanding, which may not be a perfect world from your perspective.

**MR. SHEPARD:** I understand. I appreciate that, Your Honor.

**THE COURT:** Okay.

**MR. SHEPARD:** I just -- I'm having trouble getting my arms around the notion that given that we have a February trial date that we all want to keep, that it takes over a hundred days to get these approvals.

I mean, if somebody actually knew that the trial date was important and we are all working for it, I just -- I find it hard to imagine why a hundred days is needed for the approvals.

```
 1   I understand the approvals are needed.
 2            THE COURT:  Well, right.  We think the trial is
 3   important and it's high on our priority list; but for some of
 4   these approving authorities, they may not find it quite as
 5   compelling as we do.
 6       So, the further up the chain you go, the harder it is
 7   for -- I understand that there are complications when you have
 8   to get sign-offs from high-level officials.  But see what you
 9   can do.
10       Tell me and report back if you have got some stipulated
11   proposal for me in the next week.
12       If you don't, then each side can just tell me one final
13   submission -- no more than four pages -- just tell me what your
14   position is, and then I will decide if I'm going to sign this
15   or not.  Okay.
16            MR. WARD:  Thank you, Your Honor.
17            MR. SHEPARD:  Understood, Your Honor.  Thank you.
18            MR. WARD:  We will do that.
19            THE COURT:  Anything else?  Was this set as a general
20   status conference or just on this issue?
21            MR. SHEPARD:  I think you had originally --
22            MR. WARD:  Just --
23            MR. SHEPARD:  I'm sorry.  Go ahead.
24            MR. WARD:  I believe, Your Honor, it was set for a
25   general status agreement.  I think beyond the CIPA filings, we
```

are anticipating and moving towards a February 10th trial.

I am sure Mr. Shepard may have issues he wants to raise; but from our perspective, we are working diligently.

We have produced an enormous amount of discovery in our view, far beyond what is required, and we continue to try where we can to accommodate the Defendants or -- it hasn't always been successful but we are working on it. And it's the Government's expectation that this case will go to trial on February 10th.

**THE COURT:** Okay. Good. All right. Anything else?

**MR. SHEPARD:** Should I respond to a couple of those shots that were taken at me?

**THE COURT:** Go ahead.

**MR. SHEPARD:** First of all, I don't think the Government has really given us far beyond what is required.

I would say that we have had to take them kicking and screaming to Judge Beeler on a number of occasions, and Judge Beeler has ruled in our favor on a number of occasions; and that has slowed the discovery process down.

Even when the Government says they will produce things, it doesn't really happen. To give you just one example of that, the Government told us on June 7 that it had Abramoff material in boxes that it would make available for us to review. It is a large quantity of material. The index is a hundred pages long. We reached out to them in early July in the hopes of

1  reviewing that material.  It's hard copy material.  It needs to
2  be reviewed in person.  We were hoping to do that when Ms. Dent
3  was out here in July.
4      The Government did not respond for a week until after she
5  had already arrived in San Francisco and said that the
6  documents would not be available until next week at the
7  earliest.  That was over three weeks ago.  We still have not
8  heard back from the Government on when we are going to be able
9  to review those.
10      And I could go on and on with other examples of this.  We
11 asked to meet and confer.  Usually the Government just declines
12 to meet and confer with us.
13      And so it's just taking much more time than I would have
14 wanted.  We are still working very diligently to be ready on
15 February 10th, but we need some help from the Government to do
16 that.
17          **THE COURT:**  Go ahead, Mr. Ward.
18          **MR. WARD:**  Well, in terms of the boxes, these are
19 boxes of hard copy materials from a 2005 case involving Jake
20 Abramoff.  We have had to have them shipped out here.  We will
21 make them available for their review.  We will provide them
22 with a schedule.  I haven't been able to do it, but we will do
23 that today or tomorrow.
24      We don't believe that any of this is Rule 16 or *Giglio*,
25 but it is -- out of an abundance of caution we are making

documents from a 20-year-old case available for them.

We have also, as I have said, you know, making significant efforts to meet the Defendants' discovery requests. They often request things that have been produced. We have reproduced them for them when they can't find them or have been produced to former counsel.

It seems in the Government's view a somewhat relentless set of discovery demands. To cite one example for the Court, just in 2024, we have received 13 discovery letters from the Defense. They would total together 36 pages and add up to approximately 101 requests.

Now, some are repeated. Some are dropped. Some are raised again, but it is a somewhat relentless barrage of discovery requests, many of which we believe are beyond Rule 16, *Brady* and *Giglio*.

But, nonetheless, we are working to do what we can, and we will continue to do what we can within reason. We will litigate it -- and we have in front of Judge Beeler -- if we feel the requests are beyond our obligations, but we are trying.

**THE COURT:** All right. One week from today tell me where things stand on this CIPA issue, and either I -- well, what I would hope to get is some stipulation; but if I don't have a stipulation, then each side no more than four pages as to what you think I ought to do and I will do something. Okay.

```
1    Very good.
2            MR. WARD:  Thank you, Your Honor.
3            THE COURT:  See you later.
4            MR. SHEPARD:  Thank you, Your Honor.
5            THE COURT:  Thank you.
6               (Proceedings adjourned at 2:54 p.m.)
7                         ---oOo---
```

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   August 12, 2024

_____*Marla Knox*_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter