ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7230
    christiaan.highsmith@usdoj.gov
    david.ward@usdoj.gov
    matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | NO. CR 20-00249 RS (LB) <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT ANDRADE'S FOURTH MOTION TO COMPEL DISCOVERY [DKT. 374]** <br><br> Hearing Date; November 7, 2024 <br> Hearing Time: 10:30 a.m. <br> Court: Hon. Laurel Beeler, Courtroom B, 15th Fl. |

## I. INTRODUCTION

The Court should deny Defendant Andrade's Fourth Motion to Compel Discovery. *Dkt. 374*. The motion is unwarranted and unnecessary. *First*, Andrade asks the Court to order the government to confirm co-schemer Jack Abramoff's status as an informant and produce any informant file for Abramoff. The government has already produced all *Brady*, *Giglio*, and Rule 16 material related to cooperating defendant Abramoff. The government's productions have been

voluminous and extensive. As is clear from the discovery, the government is not aware of Abramoff being an "informant" against Andrade, or cooperating against Andrade, beyond what is outlined in the discovery which it has produced. This includes Abramoff's cooperation plea agreement in which he pled guilty to the cryptocurrency fraud scheme alleged in this case, prior plea agreements, numerous 302s and interview reports, and thousands of pages of related documents. There is nothing else the government is required to produce.

*Second,* Andrade asks the Court to order the government to conduct a sweeping search for any federal search warrant, or affidavit, or grand subpoena, as well as all of the fruits of those subpoenas or search warrants, related to a list of 32 entities and individuals. Andrade's motion does not specify any limits to this request, but demands that the government, for starters, search for these items in any FBI office in the United States, any U.S. Attorney's Office, any Internal Revenue Service Office and any Securities and Exchange Commission office, as well as in the files at the Central Intelligence Agency and the National Security Agency.

The government has already produced any information in its investigative case files and for those of two related individuals for the entities and individual's on Andrade's list, as well as additional information related to prior cases against Abramoff, and of documents ordered produced by the Court. Any demand that the government conduct a speculative search beyond that exceeds what is required by Rule 16, *Brady*, or *Giglio*.

## II.  ARGUMENT

### A.  The Government Has Already Produced All Abramoff Material Required by *Brady, Giglio,* and Rule 16; Andrade's Motion to Compel Additional Abramoff Material is Unnecessary

Andrade's motion to compel the government to disclose Jack Abramoff's informant status is unnecessary because the government has produced all Abramoff material required by *Brady*, *Giglio*, and Rule 16. The government's voluminous Abramoff productions include, but are not limited to: Abramoff's plea agreements, cooperation addenda to Abramoff's plea agreements, charging documents against Abramoff, thousands of pages of material related to Abramoff's cooperation with law enforcement, including on topics unrelated to Andrade, law enforcement reports that mention Abramoff, as well as records from the government's criminal prosecutions of

1  Abramoff, including thousands of pages of physical material from the government's nearly 20-
2  year-old case against Abramoff.  As the discovery makes clear, Abramoff has been charged in the
3  same cryptocurrency fraud scheme as Andrade, Abramoff is a cooperating defendant in the
4  government's prosecution of Andrade, and Abramoff cooperated with the government in separate
5  cases unrelated to Andrade.

6       Andrade seems to think that Abramoff was an informant against him during commission
7  of the crimes charged in this case and that the government is withholding such information. *Dkt.*
8  *374* at 4 ("Did the FBI authorize Abramoff to engage in conduct that Abramoff then encouraged
9  Mr. Andrade to engage in?").  Andrade's theory is wrong, and it is not supported by the evidence.
10 The government has already provided all the Abramoff-related discovery required by Rule 16.
11 Andrade supports his conspiracy theory by citing, for example, a 2013 FBI 302 discussing
12 Abramoff's past dealings regarding the country of Gabon.  *Id.,* Ex. L to *Decl. of Kerrie Dent in*
13 *Support of Def. Andrade's Fourth Mot. to Compel* ("Dent Decl.").  The 302 makes clear that
14 Abramoff's involvement in Gabon far predates the events at issue in this case and is irrelevant to
15 Andrade's case.  The two-page 302 in no way indicates that Abramoff had authority to engage in
16 otherwise illegal activity or that he then encouraged Andrade to engage in any illegal activity.

17      Andrade next cites a 2016 Albuquerque NM FBI training speech with Special Agent
18 Leanne Saler, *Id.* (Ex. M to Dent Decl.), but mischaracterizes it as "speech training" in an attempt
19 to support his theory that Abramoff was an informant against him. *Id.* at 5.  The evidentiary
20 record shows that Special Agent Saler worked the criminal investigation that resulted in the 2006
21 criminal case against Abramoff and that, seven years later, in 2013, Abramoff and Special Agent
22 Saler participated in white collar crime training speeches based on the prior criminal case.[1]  The
23 government is aware of no additional information about Abramoff being an informant against
24 Andrade or cooperating against him beyond what has already been produced in discovery, which
25 includes Abramoff's plea and cooperation agreements.

26

27     [1] Andrade quotes Abramoff as telling agents in September 2018 during search warrant execution at his house that SA Saler was "on his case."  Mot. to Compel, at 4 n.4.  This is entirely
28 consistent with SA Saler being a case agent for Abramoff's earlier criminal case – to which he pled guilty – and thereafter educating agents and others about white collar crime.

OPP. TO MOTION FOR DISCOVERY           3
CR 20-00249 RS

1    Next, Andrade claims that he needs to know Abramoff's informant status in order to
2    evaluate whether to file notice of a public authority defense. *Dkt. 374*, at 3 (citing Fed. R. Crim.
3    P. 12.3). The language of Rule 12.3 does not support his claim. Rule 12.3 simply governs the
4    notice requirements when a defendant plans to assert a public authority defense. Per the
5    requirements of Rule 12.3, Andrade can assert a public authority defense and the government
6    "must admit or deny that the defendant exercised the public authority identified in the defendant's
7    notice." Rule 12.3(a)(3). Andrade has all the Abramoff-related evidence he possibly needs to
8    evaluate whether to assert a public authority defense. Andrade makes no showing whatsoever
9    that additional information above what the government has already produced – i.e., all relevant
10   and potentially relevant Abramoff material – is material to his defense.

11   Andrade next argues that the government should be required to disclose a negative – that
12   Abramoff was not an informant. Andrade concludes that such information "might impact [his]
13   choice of defenses," but Andrade makes no showing whatsoever how such information might be
14   helpful to his defense. *Dkt. 374*, pg. 4. In fact, Andrade cites no case whatsoever where the Court
15   orders the government to disclose that an already identified witness is not a government
16   informant. Andrade's citation to *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995), does
17   not support his claim. Instead, *Olano* supports the government.

18   In *Olano*, the government proceeded to trial against Olano and his co-defendant,
19   Kalterman, on fraud charges. *Id*. During Kalterman's cross-examination, the government
20   introduced into evidence a scrambler telephone used by Kalterman to block electronic
21   surveillance of telephone conversations. *Id*. Olano asserted that the government violated Rule 16
22   when it gave pre-trial notice of the scrambler to Kalterman but not to Olano. *Id*. The Ninth
23   Circuit upheld the district court's denial of Olano's Rule 16 claim because Olano failed to make a
24   prima facie showing of materiality. Specifically, Olano had not met his burden of demonstrating
25   "how prior notice of the [scrambler] would have benefitted his defense, nor what he would have
26   done differently at trial had he been aware of it." *Id*. So too here. As in *Olano*, Andrade fails to
27   demonstrate how additional information regarding Abramoff's informant status – beyond the
28   thousands of pages previously produced material the government has already deemed relevant or

OPP. TO MOTION FOR DISCOVERY                4
CR 20-00249 RS

potentially relevant material – would be helpful to Andrade's defense.

Finally, Andrade asserts that the government cannot avoid disclosure based on the informant's privilege. *Dkt. 374.* But Andrade already knows that Abramoff is a cooperating defendant charged in the same fraud scheme. Rather than protecting Abramoff's identity, the government has fully disclosed Abramoff's cooperation against Andrade, the government's investigative files against Abramoff from his previous cases, and hundreds of files in which Abramoff provided information to the government or other individuals provided information about Abramoff. Andrade's citation to *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000), is misplaced because *Henderson* dealt with the government's "limited privilege to withhold an informant's identity." *Id.* In *Henderson*, the defendant challenged the district court's denial of his motion to require the government to disclose the identity of an FBI tipster unknown to the defendant. *Id.* The facts here are completely distinguishable. Andrade already knows that Abramoff is a cooperating defendant, and Andrade already has all relevant and potentially relevant Abramoff-related discovery related to Abramoff's criminal wrongdoing. The government has produced all evidence of Abramoff's wrongdoing and all relevant evidence concerning Abramoff. Andrade's motion to compel must be denied.

### B. The Government Does Not Have Knowledge of or Access to Information Andrade Seeks

Defendant Andrade asks the Court to compel the government to identify, search for, and then produce, from wherever they may exist, "search warrants, including their underlying applications and affidavits, and all subpoenas and the fruits of all subpoenas that reference Mr. Andrade, the NAC Foundation, or AML Bitcoin," that he speculates may have been issued to 32 individuals or organizations. *See Dkt. 374,* fn. 1. Andrade does not specify the exact scope of his search demand, but claims that for starters, the government must search the files of any investigative agency involved in the investigation of the defendant, or any other government agency for which the government has access to and knowledge of the information sought. *Id.* Even if the government is unaware of this information, Andrade claims that "the government has a duty to ask" *Dkt. 374.* In a discovery demand letter previewing this motion, Andrade demands

of the government that "if you do not have in your own files any Rule 16 or Brady materials obtained from subpoenas or search warrants related to these individuals, then please check with other districts (including SDNY and South Dakota) as well as other agencies, including the SEC, NSA, and CIA." *Dkt. 374* (Ex. D, Dent. Decl., April 1, 2024 letter from Dent).

      a.    <u>Legal Standard</u>

Under Rule 16, the government must allow a defendant to inspect and copy materials that are "within the government's possession, custody or control, if those items are 1) material to preparing the defense, 2) the government intends to is the item in its case-in-chief at trial, or 3) if the item was obtained from or belongs to the defendant." *Fed. R. Crim. P. 16(a)(1)(E)*. *Brady* requires the government to produce information that may be favorable to the accused, regardless of whether the defendant has requested it under Rule 16. As a starting point, *Brady* or Rule 16 require the government to produce only that information over which it has "knowledge of and access to" and makes clear that the government has no obligation to produce materials it does not have in its possession or is not aware of. *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989); *Sanchez v. United States,* 50 F.3d 1448, 1453 (9th Cir. 1995) ("we find that the government was not aware of the alleged *Brady* material. The government has no obligation to produce information which it does not possess or of which it is unaware.")

Knowledge and access are presumed "if the agency participates in the investigation of the defendant." *Id.*; *see also United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019). But "a federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under [Rule 16]". *Id. citing Kyles v. Whitney*, 514 U.S. 419, 437 (1995) ("we have never held that the constitution provides an open file policy…"); *see also United States v. Lankford*, 2013 WL 2295988 (E.D. Cal. 2013), *citing United States v. Santiago*, 46 F.3d at 894, 893-94 (9th Cir. 1995) (there is "no obligation to turn over documents maintained by independent third parties who are not part of the investigation team."). As the Ninth Circuit in *Bryan* cautioned, "giving 'government' its broadest reading by expanding it to include all federal agencies (such as the IRS) would not only wreak havoc, but would give the defense access to information not readily available to the prosecution." 868 F.2d.

OPP. TO MOTION FOR DISCOVERY       6
CR 20-00249 RS

1032 (9th Cir. 1989); *see also United States v. Lacey*, 2020 WL 3488615 (D. Ariz. 2020), *citing Sanchez*, (holding that *Brady* does not extend to information the government does not possess or is unaware of).

While the Ninth Circuit has held that, in some limited instances, the prosecution must search and produce information from a federal agency not directly participating the investigation of the defendant, it has necessarily limited that to instances where the government had knowledge of and access to the information, such as, for example, if the agency has some connection to the investigation or prosecution of the defendant, or had some role in regulating the defendant. *See, e.g.*, *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (holding that an "agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute").

Even *United States v. W.R. Grace*, an out of district court case cited by defendant, notes this limitation. 401 F. Supp. 2d 1069, 1078 (D. Mont. 2005). In *W.R. Grace*, the information that the court held should have been turned over to the the defendant was information held by government agencies that had dealt with the defendants directly, and that these interactions were known to the government during its investigation. *Id.* at 1077. Further, these agencies, including the Mine Safety Health Administration (MSHA) and the Occupational Safety and Health Administration (OSHA), all dealt with the defendants (a mine operator and its executives) with respect to their mining operations—the same operations and time period charged in the criminal case. *Id.* Additionally, in *W.R. Grace*, the government conceded that he had worked with the agencies during the investigation, and had received documents from them, some but not all of which they produced. The district court in *W.R. Grace* held that in those circumstances, the government was obligated to review the agencies' files, but holding, as Ninth Circuit caselaw makes clear, that "a federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant." *Id., citing United States v. Zuno-Arce,* 44 F.3d 1420, 1427 (9th Cir. 1995).

  b. <u>The Government Has Already Produced All Information Related to Andrade's list of 32 Individuals and Entities to Which Defendant is Entitled to</u>

To date, the government has already produced to the defendant any information related to the 32 individual and entity names on Andrade's list that he is entitled to under Rule 16, *Brady*, or *Giglio*. Specifically, the government has produced everything relevant within the files of the FBI and IRS offices that participated in the investigation of Andrade, as well as its own files. Additionally, it has searched the files of the FBI and its own files and produced any information to which defendant Andrade is entitled to under Rule 16, *Brady*, or *Giglio*, from the case files related to the investigation of David Mata or Japheth Dillman, who were both investigated and charged with a separate but related fraud scheme involving a cryptocurrency investment dubbed "Blockbits." *See United States v. Japheth Dillman*, Case No. 23-cr-140 JD; *United States v. David Mata*, Case No. 22-cr-171 RS. Additionally, as described above, the government has turned over all information required under *Brady, Giglio*, Rule 16 and the Jencks Act as it relates to co-schemer Jack Abramoff. This discovery goes far beyond the government's obligation to turn over information in the possession of agencies participating in the investigation. The government also produced relevant material from separate investigations into Paul Erickson and Maria Butina, per the Court's April 7, 2023 Discovery Order. *Dkt. 165*.

  c. <u>The Government Does Not Have Access to and Knowledge of Additional Documents Sought by Defendant Andrade</u>

The government does not have knowledge of or access to the information Andrade demands that it has not already produced. Andrade's motion is vague, but in essence, what Andrade is asking the Court to do is to issue an Order that holds that the prosecution in this case is deemed to have "knowledge of and access to" information, at a minimum, held by any U.S. Attorney's Office, or FBI office, or SEC office, even when those offices had no connection or participation in the investigation of Andrade. The defendant is arguing in essence that the government is obligated to search for, obtain, review, and then produce to the defense, information in any case file of any of these federal agencies, anywhere in the country, seeking information related to any of the 32 individuals or entities on its list. And not just some

information. Andrade asks the Court to demand that the government be required to search for, review, and then produce, all "search warrants, including their underlying applications and affidavits, and all subpoenas, and *the fruits of all subpoenas* that reference Mr. Andrade, the NAC Foundation, or AML Bitcoin." *Dkt. 374*, pg. 5 & n.6 (emphasis added).

      As the Court well knows, the U.S. Attorney's Office in the Northern District of California does not have *de facto* knowledge of investigations by other U.S. Attorney's offices, nor does it have access to grand jury subpoenas or search warrants, or their returns, collected by other offices. And of course, the U.S. Attorney's Office does not have knowledge of or access to the files of the SEC or IRS when they are conducting independent investigations.

      Defendant cites several examples of "places to check" for information, but none of his specific examples are from files that the government has knowledge of and access to. For example, Andrade states that "another place to check for warrants and subpoenas is with prosecutors in the Central District of California, where the SEC filed a complaint against ICO Box and its CEO Nick Evdokimov (both of whom are included in Mr. Andrade's discovery request) on October 18, 2019." *Dkt. 374.* Andrade cites to no evidence that the U.S. Attorney's Office in the Central District has, or ever had, an investigation into ICO Box; he merely cites to a 2019 press release announcing civil SEC charges against ICO Box for securities violations wholly unrelated to the Andrade investigation. *Dkt. 374,* Dent Decl., ¶ 10. The prosecution in this case has no knowledge of, or access to, information held by the SEC in Los Angeles related to this case. Nor does the prosecution here have access to, or even knowledge of, any investigation by the USAO in the Central District of California into ICO Box. There is no basis for Andrade to demand that the Court essentially order the government here to learn whether the U.S. Attorney in the Central District had an investigation, then demand access to their files, review them (if they exist) for any subpoenas or search warrants related to Andrade, AML Bitcoin, or the NAC Foundation, and then produce all of this, along with the fruits of these search warrants and subpoenas, to the defendant. Nothing in Rule 16 or *Brady*, or *Giglio* or Ninth Circuit caselaw places such a sweeping obligation on the government.

Andrade next cites to the investigation by the Southern District of New York into Alexander Levin. *Dkt. 374*. Andrade describes this as "a related investigation." *Id.* As the Court knows, the SDNY conducted a separate, *unrelated* investigation into illegal lobbying by Ukrainian and U.S. officials, an investigation that the prosecutors here had no participation in. Andrade again misstates the record by claiming that the NDCA and SDNY "worked together on the investigation, most notably in the search of Levin's device." Dkt. 347, at 7. As Andrade knows, prosecutors in the Andrade case became involved with the SDNY investigation years later because of Andrade's demand the government produce Levin's cell phone. The Levin phone was produced to the defendant, not because NDCA and SDNY were working any investigation together – it's clear they were not - but only because this Court ordered that the SDNY be compelled to produce them. *See Dkt. 359* (Discovery Order, September 15, 2024).

Nothing in Rule 16, *Brady,* or Ninth Circuit caselaw, requires the government to go back to the SDNY, demand open access to their files from an investigation unrelated to Andrade, search them for any search warrants or subpoenas to any of the 32 individuals and entities on Andrade's demand list, and then, assuming that such documents exist, search and produce any all of the information obtained from them. Andrade offers no reasonable evidence or argument – and the government knows of none – to support his claim that the Levin casefile contains information in any way material to his defense.

    d.    <u>Defendant Andrade Has Not Demonstrated How the Information he Seeks is Material to Preparing his Defense</u>

Finally, defendant Andrade has not shown how the information he seeks is material to his defense, as he must under Rule 16. Andrade's motion and accompanying declarations describe, for some of the individuals on his list of 32 entities, a brief or tangential connection to this case, but does not describe how requiring the government to search for materials that may or may not exist, somewhere, is material to Andrade's defense.

For example, several individuals interviewed as part of separate investigation into co-defendant Abramoff's illegal lobbying mention Ghost Management Group (GMG). Dkt. 374 (Declaration of Kerrie Dent, ¶ 8(b)(iii)), GMG produced a small number of documents to the

government, all of which were produced to Andrade, as were three FBI interviews where one of the witnesses mentioned GMG. Andrade provides no explanation how the information he has already obtained is material to his defense. From there, he must state specifically how the information he has already obtained justifies a speculative demand that the government then search through the files of agencies for information that may or may not exist. *See, e.g.*, *United States v. Jordan*, 316 F.3d 121, 135 (11th Cir. 2003), *citing United States v. Marshall,* 132 F.3d 63, 67–68 (D.C. Cir. 1998) ("a general description is insufficient; rather, the defendant must provide a specific explanation of how the evidence will be 'helpful to the defense'")

    e.    <u>Andrade Is Abusing His Discovery Rights to Further Delay Trial</u>

This is Andrade's fourth motion for discovery. In 2024 alone, Andrade's counsel have sent the government 15 discovery demand letters, totaling 41 pages, with approximately 115 requests, some overlapping, some repeated or restated. Andrade sent a similar number of discovery letters the prior year, and the year prior to that. The government is concerned that throughout this process, Andrade is seeking to misuse the discovery process to delay the trial.

Defendant Andrade was indicted in 2020. The trial date in this case has been set, and then vacated, on two separate occasions; in early 2024, again in July 2024. It is currently set for February 10, 2024, the third trial date. Andrade's latest discovery demands here appear to be nothing more than another effort to place an undue burden on the government, and to further delay the trial -- to the detriment of victims, witnesses, and society's interest in the timely administration of justice. Defendant's motion should be denied.

DATED: October 30, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
CHRISTIAAN HIGHSMITH
DAVID WARD
Assistant United States Attorneys
MATTHEW CHOU
Special Assistant United States Attorney