UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 20-cr-00249-RS (LB)<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 381 |

# INTRODUCTION

The defense has moved to compel the government to identify the names of eight persons who have provided information, not just in this fraud prosecution, but also in the fraud investigations of co-schemer Jack Abramoff and two others: Japeth Dillman and David Mata. To support the request, the defense submitted a public-record declaration and an under-seal filing (to maintain the privacy of the defense) with more information.[1] "The theme of the defense is that is that using his own plans and personnel, Mr. Abramoff, and not Mr. Andrade, had the intent to defraud."[2] The government responded that seven of the eight are FBI employees who work undercover (one

---

[1] Mot. – ECF No. 381 at 4; Addendum – ECF No. 409. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 381 at 4 (cleaned up).

ORDER – No. 20-cr-00249-RS (LB)

online) and the last is a confidential source.[3] The court held a hearing on December 12, 2024, and denies on this record the motion to compel the disclosure. Looking at the issue strictly in the context of the discovery referral, identity gives the defense nothing useful. The issue really is about whether the witnesses can testify pseudonymously at trial. That issue is for the trial judge to decide, can be addressed at the pretrial conference, and is premature, given that the government may decide that it will not ask for the witnesses to proceed pseudonymously.

## ANALYSIS

The Supreme Court has recognized that where an informant will not be called as a witness at trial, the government may withhold the identity of that person. This so-called privilege also extends to information that would tend to reveal the identity of that individual. *Roviaro v. United States*, 353 U.S. 53, 59–60 (1957). The privilege about disclosure is limited. Disclosure is required "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused . . . ." *Id.* at 60–61. The defendant has the burden of showing a need for disclosure. *United States v. Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006).

The cases apply a case-by-case balancing approach: the trial court must balance the public interest in the identity of the informant against the need for disclosure to prepare an adequate defense. *Roviaro*, 353 U.S. at 61–62; *United States v. Rowland*, 464 F.3d 899, 909 (9th Cir. 2006). Factors include "(1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in non-disclosure." *United States v. Connor*, No. 15-cr-00296-HSG, 2015 WL 8482205, at *3 (N.D. Cal. Dec. 10, 2015) (citing *Roviaro*, 353 U.S. at 62)). "Other relevant factors include consideration of the informant's safety following disclosure." *Id.* (cleaned up) (quoting *United States v. Si Keung Wong*, 886 F.2d 252, 255–56 (9th Cir. 1989)). "Where an informant is a participant in the events critical to the prosecution's case, no claim may be raised under *Roviaro* that

---

[3] Opp'n – ECF No. 385.

the informant's identity can be lawfully withheld from the [defendant] — disclosure is inherently "relevant and helpful." *Barajas v. Wise,* 481 F.3d 734, 739 (9th Cir. 2007).

A trial court has the discretion to withhold the identity of testifying agents at trial. The cases generally involve a threat to the agents' safety. *See, e.g.*, *United States v. Chow*, 772 F. App'x 429, 431 (9th Cir. 2019) (upholding withholding of agents' identity, which was classified, on grounds "strongly suggesting that disclosure of the agents' identities would threaten their safety. Balancing this concern against Chow's interest in discovery of the agents' identities, we hold that the district court did not abuse its discretion by ordering the agents' identities withheld."); *United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995) ("The decision to deny disclosure of an informant's identity is reviewed for abuse of discretion."). *Chow*, for example, involved racketeering, murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, money laundering, and conspiracy to sell stolen liquor and cigarettes across state lines. 772 F. App'x at 431. The court reviewed the evidence about safety in camera and upheld the non-disclosure of their identities. *Id.* Other cases allowing pseudonymous testimony of informants also involve the informant's personal safety. *See, e.g.*, *United States v. Rangel*, 534 F.2d 147, 148 (9th Cir. 1976) (in case involving distribution of heroin, informant's life had been threatened, causing him to relocate his family; the trial court had an in camera hearing to evaluate the government's representations); *United States v. Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012) (decision to allow testimony under a pseudonym for El Salvadorian officers who testified against MS-13 members was not an abuse of discretion).

There are two categories here: (1) seven FBI undercover employees and (2) one civilian who has provided confidential information.

### 1. Undercover FBI Employees

The following sections analyze the issues by FBI employee.

**1.1 UCE-8026 a/k/a Mason Wong**

Mr. Andrade offers the following need for disclosure of the undercover employee's identity:

>   Posing as Mason Wong, UCE-8026 had a telephone conversation with Mr. Andrade during his public AML Token sales. Wong can testify that Mr. Andrade personally and immediately clarified misconceptions regarding the nature of his AML Token sale to a customer of his public-ICO sale of AML Tokens, as a follow-up to a complaint. Wong's testimony would be the only way to present this exculpatory conversation to the jury since there is no recording of his conversation with Mr. Andrade.
>
>   Wong was quoted in each of the four search warrants relevant to a potential *Franks* motion, as well, but large portions of his conversation with Mr. Andrade were omitted. Wong's testimony may be relevant to the issue of whether the affiant requesting the search warrants acted with reckless disregard of the true nature of the conversations Wong had with Mr. Andrade.[4]

Boiled down, the need is to have Mr. Wong's testimony about this allegedly exculpatory statement (that was not recorded) and to evaluate a potential *Franks* challenge to the four Andrade search warrants. The government counters that the identity is irrelevant because Mr. Andrade can subpoena the agent as a witness at trial or cross examine him under his undercover name, and his name is irrelevant to the *Franks* challenge.[5]

It is hard to see the need for the true name of the FBI witness. As the government concedes, Mr. Andrade can subpoena the agent, who can testify at trial. By contrast, if non-law-enforcement informants are at issue, information about their identity is needed to locate them. *See, e.g.*, *United States v. Williams*, No. C 10-00230 SI, 2010 WL 3447704, at *2 (N.D. Cal. Aug. 30, 2010) (in a case charging the crime of a felon in possession of a firearm, the confidential informant had testimony that was valuable to the defendant's entrapment defense because the interactions between the informant and the defendant were not recorded). The government is not resisting the agents' testimony at trial: it merely offers that the ordinary process is a subpoena.[6] There is no issue about disclosure of relevant

---

[4] Mot. – ECF No. 381 at 10–11.

[5] Opp'n – ECF No. 385 at 9–10.

[6] The parties dispute the import of the *Touhy* regulations. The United States says that the defense must subpoena witnesses and that under the *Touhy* regulations, FBI employees and former employees will not speak with defense counsel absent a subpoena. Opp'n – ECF No. 385 at 7 (citing *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951)). Mr. Andrade responds that *Touhy* does not bind the court in its determination about whether to order disclosure. Reply – ECF No. 388 at 10–11 (citing *United States v. Bahmonde*, 445 F.3d 1225, 1229, 1331 (9th Cir. 2005)); *see Bahmonde*, 445 F.3d at 1228–31 (case agent in border drug-smuggling case was listed as a witness and sat at the prosecution table during trial; trial court denied the defendant's request to call the agent as a witness because defense counsel knew about, and did not follow, the agency regulation — 6 C.F.R. 5.45(a) — requiring the party demanding testimony to set forth the nature and relevance of the official information sought; reversed as a due-process violation and for failure to balance the countervailing interests).

information: the government must comply with its discovery obligations under *Brady*, *Giglio*, and Rule 16, regardless of whether its agent witnesses testify pseudonymously. The same analysis applies to the *Franks* argument: this is not the standard *Franks* issue where the government relies on a confidential informant. These are agents, which means the government's disclosure obligations and the defendant's discovery tools are the same, regardless of whether the agent's identity is disclosed.

The only issue is the disclosure of the agent's name. As discussed at the hearing, from a discovery perspective, disclosure of the agent's name gives the defense no tools to get more information. What really is at stake here is whether the witnesses can testify pseudonymously. That is an issue for the trial judge. The court adds that the government has not proffered information about why its interests are in pseudonymous testimony: it contended only that the defendant did not meet the threshold standard for disclosure and that the issue of pseudonymous testimony is premature and can be addressed at the pretrial conference.

**1.2 UC-7410 a/k/a Bryant Lee**

Mr. Andrade offers the following:

> Posing as Bryant Lee, UCE-7410 bought AML Tokens through Mr. Andrade's public-ICO, online. Months later, Lee was introduced to Mr. Andrade through an associate of Abramoff's (requested informant # 4, below). Lee and Mr. Andrade discussed about a potential AML Token purchase that did not come to fruition.
>
> Two relevant conversations Lee had with Mr. Andrade were recorded, at least one of them included a man posing as James P. Wood, (another informant, request # 3 below). Mr. Andrade made statements during his conversation with Lee that the jury may find to be exculpatory. For instance, Mr. Andrade explained his terms of sales to Lee and when Lee told him he was comparing some notes he had taken at a presentation given by Dillman, Mr. Andrade replied, "And that's what concerns me. All due respect . . . I have a call into [Dillman] already . . . I need to be able to see what all presentations he sending out." [This quotation is from FBI-0006094.mov from 12:35–13:29.] Lee is needed to authenticate the recording of or testify about his conversation with Mr. Andrade.

---

The government does not cite any cases to support its purported application of the *Touhy* regs to the disclosure issue here. Indeed, typically *Touhy* issues arise in (1) state criminal cases, (2) state or federal cases relating to a federal criminal investigation or a parallel civil proceeding, or (3) a federal civil case where a federal agent is a party, and private counsel's subpoenas for documents from another federal agency that is not a party to the case. But the government's point can be seen as a practical one: the defense has its ordinary remedies to compel the testimony of an agent, and proceeding under a pseudonym does not affect those remedies.

Lee can also lead to evidence helpful to a *Franks* motion, for the fact that Lee purchased AML Tokens through the public ICO was included in the affidavits for search warrants, but nothing more. Exonerating portions of Lee's conversations with Mr. Andrade were omitted from the search warrant affidavits. Lee's testimony may be relevant to the issue of whether the affiant requesting the search warrants acted with reckless disregard of the true nature of the conversations Lee had with Mr. Andrade, depending upon how much of Lee's undercover work was relayed to the search warrants' affiants.[7]

The issue here is the authentication of the recordings. The agent's actual identity is not demonstrably relevant to that inquiry. As to the *Franks* motion, the complete recordings can be considered.

**1.3 OCE-8149 a/k/a James P. Woods**

Mr. Andrade offers the following:

When Lee (UCE-7410) spoke to Mr. Andrade the second time, their conversation started on the telephone and then it moved to a video-conference. Woods was on the videoconference call. Thus, if Lee is not available, or if he is unwilling to speak to the defense, Woods can testify about Lee and Mr. Andrade's conversation. Woods can authenticate the recording and can testify about the relevant facts discussed between Lee (and Woods), and Mr. Andrade.

Woods is also a potential witness to the *Franks* motion, for, having been part of the conversations Lee had with Mr. Andrade, he may have some knowledge about how and how much of the substance of Lee's conversation had been relayed to the search warrant's affiants.[8]

Again, authentication does not depend on the identity of the FBI agent. The *Franks* issue is the same: the identity does not matter to any *Franks* motion.

**1.4 UCE-4473 a/k/a Ravi Gupta**

Mr. Andrade offers the following:

An informant posing as Ravi Gupta (UCE-4473) was brought into Abramoff's trusted circle of associates during April, May, and June, 2017, when Abramoff was planning his own schemes, immediately prior to Abramoff's initiation of work with Mr. Andrade on AML Token sales. Gupta was still working closely with Abramoff in the summer of 2018, when Gupta was the conduit between Abramoff's and Mr. Andrade's communications with Lee (UCE-7410, request # 2 above).

Abramoff made admissions and statements about his own plans regarding raising money surreptitiously to Gupta, in several conversations that were recorded.

---

[7] Mot. – ECF No. 381 at 11 & n.3.

[8] *Id.* at 11–12.

ORDER – No. 20-cr-00249-RS (LB)   6

> However, two recordings, occurring the week that Abramoff began to work with Mr. Andrade on the AML Token project — amounting to about an hour of conversation — are fully intelligible due to background noise in an automobile where they were recorded. These recordings occurred on dates in-between other communications between Gupta and Abramoff, where Abramoff's financial plans were under discussion.
>
> Gupta's knowledge gained from personally working with Abramoff for over a year may lead to admissible evidence tending to impeach Abramoff, or any of Abramoff's other trusted associates, regarding their purposes and claims about the AML Token project. Gupta can not only authenticate documents and recordings involving himself and Abramoff, but he can also provide the content of conversations that pertained to AML Tokens or AML Bitcoin, to which Mr. Andrade was not privy.[9]

This disclosure issue also is about authenticating documents and testimony about conversations that are unintelligible. The name of the FBI employee is not obviously relevant.

**1.5 UCE-7780**

Mr. Andrade offers the following:

> The informant identified only as UCE-7780 recorded the two unintelligible recordings of Gupta (requested informant # 4) and Abramoff. Thus if Gupta is not available and/or is unwilling to speak to the defense, this informant can provide first-hand knowledge about Abramoff's and Gupta's conversations.[10]

Again, this is about testimony: the government does not resist it. The issue is only whether the FBI employee's identity is discoverable. For the reasons set forth above, this is not a discovery issue and instead is an issue about whether the trial judge will allow pseudonymous testimony.

**1.6 UCE-7180 a/k/a Leena Ahmed**

Mr. Andrade offers the following:

> Posing as Leena Ahmed, UCE-7180 claimed to be the principal of a pharmaceutical company seeking to use Mr. Andrade's patented technology for identification purposes related to HIPAA compliance. Over the period of several months in the summer of 2018, Ahmed had multiple conversations with personnel from a British company, linked to Mr. Andrade, which was both trying to merge Mr. Andrade's patented design with AML Bitcoin, and to make the identification verification useful as a standalone tool. Ahmed, along with her "technical" person (rather: another informant posing as such) discussed the development of the identification technology in detail, over several hours' time. Ahmed's conversations with a witness to whom the

---

[9] *Id.* at 12.

[10] *Id.* at 12–13.

ORDER – No. 20-cr-00249-RS (LB)                    7

government has given a trial subpoena, as well as his co-workers from the British company, were recorded between mid-July and the end of September, 2018.

It is anticipated that one of the people in the British company may be called by the government at trial to testify about the state of the development of Mr. Andrade's technology. Ahmed's identity and relevant disclosures will be helpful, because she can testify about relevant conversations or authenticate the recordings regarding the state of the identity verification software in the summer of 2018.

Finally, Ahmed was quoted in the four search warrants relevant in this case, but the quote was out of context, misleading, and failed to contain relevant portions of her conversations that would have affected the probable cause assessment. How the search warrants' affiants got Ahmed's information is unknown to the defense. Ahmed's disclosures may help Mr. Andrade determine whether the misrepresentations or omissions *by the affiants* were recklessly or intentionally made, a necessary precursor to preparation of Mr. Andrade's potential *Franks* motion.[11]

Again, the government does not resist the defense's ability to compel trial testimony. The issue is only the FBI employee's name. From a discovery perspective, it is not obviously relevant.

**1.7 UCE-8148**

This former employee has been named as a trial witness. The issue here is whether he can testify anonymously.[12] The analysis is the same: from a discovery perspective, the name is not relevant.

**2. Civilian Informant**

Mr. Andrade offers the following:

An informant, who introduced himself as "Brad Morgan," who was called CHS Spindle or CHS-21879 by FBI agents, posed as technology consultant for Ahmed (requested informant #6) in her conversations with personnel from the British company working on developing Mr. Andrade's patented design for biometric identification software into useable technology. Brad personally asked all the questions regarding technical specifications and architectural details of the software. His testimony could be used to authenticate the recordings and to testify about relevant technical details mentioned in his conversations.

Furthermore, as with Ahmed, "Brad" may have some knowledge relevant to what information known to him was told to the search warrants' affiants, which in turn is

---

[11] *Id.* at 13.

[12] Addendum – ECF No. 409 at 2.

relevant to whether they recklessly or intentionally misrepresented the nature of their conversations in the search warrant applications.[13]

This request is about authentication of recordings and testimony about relevant technical details or a possible *Franks* challenge. Again, the true name of the witness is not relevant. At the hearing, the government mentioned that the informant was an unpaid volunteer. As discussed at the hearing, the government has the obligation to provide the customary information about the informant.

### CONCLUSION

In sum, the court denies discovery into the identity of the undercover witnesses. Any issues about pseudonymous testimony must be addressed in the pretrial filings.

This resolves ECF No. 381.

**IT IS SO ORDERED.**

Dated: December 14, 2024

LAUREL BEELER
United States Magistrate Judges

---

[13] Mot. – ECF No. 381 at 13–14.