MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    +1 415 318 1200

KERRIE C. DENT (Admitted *pro hac vice*)
 kdent@kslaw.com
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
 cindy@cadiamond.com
58 West Portal Ave #350
San Francisco, CA 94127
408.981.6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　vs.<br>ROWLAND MARCUS ANDRADE,<br>　　　　Defendant. | Case No. 3:20-cr-00249-RS<br><br>APPENDIX A TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ALLEGATIONS AND EVIDENCE OF UNCHARGED BAD ACTS (ECF # 425)<br><br>No. 3:20-cr-00249-RS |

Defendant Andrade hereby sumbits "Appendix A," attached hereto, which was inadvertently omitted from the e-filing of docket number 425, Mr. Andrade's Motion in Limine to Exclude Allegations and Evidence of Uncharged Bad Acts.

Dated: January 7, 2025  Respectfully submitted,

KING & SPALDING LLP

By: /s/ Michael J. Shepard
MICHAEL J. SHEPARD
KERRIE C. DENT
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# APPENDIX A



U.S. Department of Justice

United States Attorney
Northern District of California

*11th Floor, Federal Building*     (415)436-7200
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*     FAX: (415)436-7234

September 13, 2024

Michael Shepard
Kerrie Dent
King & Spalding LLP
*mshepard@kslaw.com*
*kdent@kslaw.com*

Cindy Diamond
Law Offices of Cindy Diamond
*cindy@cadiamond.com*

*Via email*

      Re:     *United States v. Rowland Marcus Andrade,* 20-cr-249 RS

Dear Counsel:

In anticipation of the February 10, 2025 trial in *United States v. Rowland Marcus Andrade*, the United States provides this notice pursuant to Federal Rule of Evidence 404(b) of other acts evidence it may introduce at trial.

Fed. R. Evid. 404(b) requires, upon a defendant's request, that the Government provide reasonable notice of the nature of evidence of other crimes, wrongs, or acts that it intends to introduce. The notice requirement, like Rule 404(b), does not extend "where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard,* 354 F.3d 850, 854 (9th Cir. 2003); *accord* Fed. R. Evid. 404(b), Advisory Committee Note to the 1991 Amendment (explaining that the rule "does not extend to evidence of acts which are 'intrinsic' to the charged offense").

By providing this notification, the government does not concede that all the categories of evidence below are "other acts" within the meaning of Fed. R. Evid. 404(b). To the contrary, the government believes that the evidence described below related to both the Atencoin and Biogreen investment schemes is properly introduced as evidence inextricably intertwined with the charges in this case. Even if some of it is not inextricably intertwined with the charged offenses in this case, all of the evidence is properly admitted under Fed. R. Evid. 404(b) as evidence of defendant's motive, plan, preparation, intent, and lack of mistake or accident as it relates to the charged offenses.

The government reserves its right to supplement or revise this notice. Additionally, all of the categories of evidence listed below may be admissible in cross-examination of the defendant or other defense witnesses, including any defense expert witnesses.

At trial, the government may offer the following into evidence:

1. <u>Documents and Testimony Regarding Defendant Andrade's Marketing and Sale of Investments in Atencoin, also known as "Black Gold Coin"</u>

The government intends to introduce evidence, including documents and witness testimony that, beginning in 2014, defendant Andrade, personally and through a network of sales agents, began pitching investments in a cryptocurrency he dubbed "Atencoin." The evidence the government will introduce will demonstrate that Andrade, personally and through others, collected hundreds of thousands of dollars in investments.

Andrade claimed that Atencoin was a cryptocurrency similar to bitcoin but had built-in technology that made the currency know-your-customer and anti-money laundering compliant, which investors were told made it safer than bitcoin, and would speed widespread development and use of the cryptocurrency. And it would enrich early investors. This pitch was identical to the pitch that Andrade would use to market and sell AML Bitcoin. And the pitch to both Atencoin and AML Bitcoin investors was false in the same way – neither of Andrade cryptocurrencies in fact had the technological features he claimed.

As further part of the Atencoin investment pitch, Andrade claimed that the NAC Foundation, an entity owned and controlled by Andrade, owned an oil well, and that the oil industry, including oil wells and oil refineries, would be adopting Aten Coin as a means of simplifying payment. According to Andrade and his sales team, eventually Atencoin would become the default payment used in the oil industry. This pitch is nearly identical to the pitch Andrade used to promote AML Bitcoin – that major shipping ports and governments would be adopting AML Bitcoin as a means of simplifying payment. Further, Andrade's NAC Foundation, which he owned and controlled, played the same overarching role for both Atencoin and AML Bitcoin.

Like he claimed with AML Bitcoin, Andrade and his sales associates claimed that Atencoin would be traded publicly, and that this trading activity would cause its price to surge. Like with AML Bitcoin, Andrade claimed that various European companies and banks would be adopting Atencoin.

Andrade claimed to be working with a company called "Atenverify" to develop biometric identification technology that could be imbedded into the Blockchain, and would allow purchasers and sellers of Atencoin to know the true identities of their counterparties. Atenverify would eventually become Cross Verify, which Andrade claimed was working to develop the same technology for AML Bitcoin.

The government will show that Andrade used the same boiler-room type salespeople, working on a sales-commission payment structure, to sell both Atencoin and AML Bitcoin.

The evidence the government intends to introduce will show that, like AML Bitcoin, there was never a working version of Atencoin that had been adopted by the oil industry or anyone else. The evidence will show that in 2017, after failing to develop any markable cryptocurrency as he promised investors, Andrade simply rebranded Atencoin as AML Bitcoin. According to a NAC Foundation press release, investors in Atencoin could swap their Atencoins for AML Bitcoin tokens.

The evidence will show Andrade used funds from Atencoin investors to personally enrich himself, including cash withdrawals, car purchases, and entertainment and travel expenses.

The evidence will show that, like he has done in multiple instances during the AML Bitcoin fraud, Andrade sued investors and employees of Atencoin. Specifically, after a falling out with Brandi and Corey Jodoin, two of the largest investors in Atencoin, Andrade brought a frivolous and malicious lawsuit against them. The lawsuit was ultimately abandoned, but not before the Jodoins would spend over $100,000 defending against Andrade's baseless claims. Andrade pursued nearly identical legal tactics when confronted by AML Bitcoin investors who realized that AML Bitcoin did not have the technology or business Andrade claimed. And, as described below, Andrade employed the same legal tactics earlier during the Biogreen investment scheme.

The Atencoin evidence is inextricably intertwined with the charged offenses, as it provides a coherent explanation for Andrade's fraudulent acts marketing and selling AML Bitcoin. As the Tenth Circuit explained in *United States v. Irving*: "intrinsic evidence is that which is 'directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." 665 F.3d 1184, 1213 (10th Cir. 2011), *quoting United States v. Parker*, 553 F.3d, 1309, 1313 (10th Cir. 2009).

Here, the Atencoin investment scheme is literally intertwined with the AML Bitcoin investment fraud. In fact, Atencoin was simply an earlier iteration of the same fraud, with the same fraudulent representations, from the potential adoption of Atencoin, to its anti-money laundering capabilities. When Atencoin failed to gain traction, Andrade simply rebranded it as AML Bitcoin.

Further, the Atencoin fraud provides background and context for the AML Bitcoin fraud. It explains how Andrade came to develop AML Bitcoin, how he lured investors into purchasing AML Bitcoin (many had been Atencoin investors), and it provides clear background and context for the fraudulent representations Andrade would make about AML Bitcoin because in many instances they were the same misrepresentations he made regarding Atencoin.

The Atencoin evidence is also properly admitted under Fed. Rule. Evid. 404(b). Evidence of the same or similar *modus operandi* in a prior bad act as to acts charged can be admissible under Rule 404(b) to prove defendant's intent, and to show lack of mistake or accident. *See United States v. Hinton*, 31 F.3d 817, 822-23 (9th Cir. 1994); *United Staes v. Vacaro*, 816 F.2d 443, 452-53 (9th Cir. 1987) ("the evidence was clearly admissible under Rule 404(b) as proof of a plan or scheme or to show *modus operandi*)

3

The Atencoin fraud evidence is admissible 404(b) evidence of Andrade's intent - that Andrade's fraudulent representations regarding AML Bitcoin were intentional misstatements designed and intended to defraud, not mistake or accident. Many of the charged misrepresentations that Andrade is charged with making in connection with Atencoin, from the coin's alleged AML/KYC compliance technology, to the imminent wide spread adoption of the cryptocurrency, were the same representations he would later make regarding AML Bitcoin. Simply put, Andrade knew his misrepresentations about Atencoin were false, so he simply rebranded it as AML Bitcoin so he could *knowing and intentionally* continue the same misrepresentations.

Further, the evidence regarding Atencoin above demonstrates Andrade's plan and preparation for the AML Bitcoin fraud. Atencoin was the original version and predecessor to AML Bitcoin, and its marketing and sale were remarkably similar. Andrade's work with Atencoin clearly demonstrates how he planned and prepared for the AML Bitcoin fraud.

Finally, the Atencoin investment scheme is evidence of defendant Andrade's motive in engaging in the charged AML Bitcoin fraud. Specifically, the shift from Atencoin to AML Bitcoin was in part to keep investors in Atencoin from complaining or demanding their investment back, and for Andrade to lure in new investors.

2. Documents and Testimony Regarding Andrade's Marketing and Sale of Investments in Biogreen International

The government provides notice that it intends to introduce at trial evidence that, in 2009, defendant Andrade registered in Texas a company originally called Global Algae Royalties Inc. (GAR), then changed the name to Biogreen International Inc. The government intends to introduce evidence at defendant Andrade's trial that in 2009 and 2010, Andrade raised hundreds of thousands of dollars from investors based on false and fraudulent representations that Biogreen was in the renewable energy sector and would soon begin mass producing algae, from which an FDA-approved compound called Astaxanthian could be extracted. According to Andrade, the company would profit by selling Astaxanthian as a food supplement, and for other medical and cosmetic uses.

The government intends to introduce evidence that, like with Atencoin and AML Bitcoin, Andrade used a network of boiler-room type sales agents working on sales commission to raise funds from investors in Biogreen. Like with Atencoin and Bitcoin, Andrade and his sales agents (falsely) assured investors that they could easily and at any time receive their investments back. For example, one investor (Carl Ueland) was told that he would begin seeing returns in six to nine months, and that he would receive three to five times his initial investment in a short period of time. Ueland invested $12,500 after speaking with Andrade. Uelend never received any return on his investment, and never received his initial investment back.

Another investor, Jeff Fraser, stated that he was told by Andrade that Andrade had a patent on the equipment used to extract a rare chemical from algae. Andrade would use similar claims about patents to pitch AML Bitcoin.

4

Andrade claimed that he was an expert in the field of extracting the chemical from algae. Andrade told Fraser and other investors that the extract was extremely valuable, and that investors could expect a minimum of six percent annual return on an investment in Biogreen. Fraser was also told that he would receive a bonus of GAR/Biogreen stock if he invested a minimum of $250,000. Like other investors, Fraser was defrauded; he invested $250,000, none of which was ever returned.

The government intends to introduce evidence that Andrade, along with a lawyer named Benito Garza, created a company called Stewart Investments, that Andrade and Garza told investors that Stewart Investments could guarantee that investors' funds would be protected. In fact, the evidence will show that Stewart Investments had only one employee (Garza), and that much of the information in its marketing materials was inaccurate.

Like with Atencoin and AML Bitcoin, the government intends to introduce evidence that Andrade used Biogreen investor funds to personally enrich himself, including cash withdrawals, and payments for entertainment, travel, and vehicles.

And like with Atencoin and AML Bitcoin, Andrade would use frivolous and malicious legal tactics to deflect blame for the fraud, and delay accountability. In 2012, Andrade sued his business partner Garza, and used that lawsuit as a pretext to not return investor funds. According to the Texas State Securities Board, which investigated Andrade and Biogreen, "it appears that Andrade is using the lawsuit as an excuse to buy time and discourage investors from complaining to authorities."

The Biogreen investment scheme evidence is inextricably intertwined with the charged offenses, as it provides a coherent explanation and background for Andrade's fraudulent acts marketing and selling AML Bitcoin. Like he would do with Atencoin and AML Bitcoin, Andrade would lure investors with outlandish and ultimately false claims, collect investments, divert the funds for his personal use, and then leave investors with losses, sometimes in the thousands or tens of thousands of dollars.

The Biogreen investment fraud evidence is also properly admitted under Fed. Rule. Evid. 404(b). Evidence of the same or similar *modus operandi* in a prior bad act as to acts charged can be admissible under Rule 404(b) to prove defendant's intent, and to show lack of mistake or accident. The Biogreen fraud evidence is admissible 404(b) evidence that demonstrates that, like his similar or identical claims regarding Biogreen, Andrade's fraudulent representations regarding AML Bitcoin were intentional misstatements designed and intended to defraud, not mistake or accident. Further, the evidence regarding Atencoin above demonstrates Andrade's plan and preparation for the AML Bitcoin fraud. The similarities in the marketing and misrepresentations between Biogreen, Atencoin, and AML Bitcoin, make evidence of the Biogreen investment scheme admissible to show plan and preparation, and lack of mistake.

Please contact us if you have questions or require additional information.

> Very truly yours,
>
> ISMAIL J. RAMSEY
> United States Attorney
>
> _/s/ David Ward_
> DAVID WARD
> CHRISTIAAN HIGHSMITH
> Assistant United States Attorneys
>
> MATTHEW CHOU
> Special Assistant United States Attorney