MICHAEL J. SHEPARD (Bar No. 91281)
 *mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
 *kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:    +1 202 626 3737

CINDY A. DIAMOND (SBN 124995)
 *cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Avenue, #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-CR-00249-RS |
| Plaintiff, | **DEFENDANT MARCUS ANDRADE'S MOTIONS IN LIMINE ##1-7** |
| v. | |
| ROWLAND MARCUS ANDRADE, | Judge:    Hon. Richard Seeborg |
| Defendant. | Dept.:    Courtroom 3 – 17th Floor |

1

**TABLE OF CONTENTS**

2
**Page**

3    FACTS COMMON TO ALL MOTIONS ........................................................................ 1

4    LEGAL ANALYSIS COMMON TO ALL MOTIONS .................................................. 1

5    MOTION IN LIMINE #1    Motion to Exclude Argument and Evidence Regarding The
6                             Super Bowl "Rejection Campaign" .................................. 3

7    MOTION IN LIMINE #2    Motion to Exclude Victim Testimony ............................. 7

8    MOTION IN LIMINE #3    Motion to Exclude Argument and Evidence Regarding
9                             Misrepresentations Directed to Non-Purchasers ........................... 10

10   MOTION IN LIMINE #4    Motion to Exclude Argument and Evidence Regarding
                             Mr. Andrade's Failure to File Tax Returns ................................... 13

11   MOTION IN LIMINE #5    Motion to Exclude Argument and Evidence of Civil
12                             Litigation Pursued by Mr. Andrade ............................... 15

13   MOTION IN LIMINE #6    Motion to Exclude Argument and Evidence Regarding
                             Market Manipulation........................................................................ 18
14
15   MOTION IN LIMINE #7    Motion to Exclude Argument and Evidence Regarding
                             Foteh's Self-Diagnoses of Her Medical or Psychological
16                             Conditions ................................................................................... 22

17   CONCLUSION.................................................................................................................. 24

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Berry v. Gates*,

5
   No. 90-55887, 1992 U.S. App. LEXIS 4012 (9th Cir. Feb 28, 1992) ................................... 19

6

*United States v. Gomez*,

7
   763 F.3d 845 (7th Cir, 2014)................................................................................................... 20

*Lucas v. Bechtel Corp.*,

8
   800 F.2d 839 (9th Cir. 1986)................................................................................................... 13

9

*Old Chief v. United States*,

10
   519 U.S. 172 (1997) ........................................................................................................ *passim*

11

*Ouhrabka, v. Exeltis USA, Inc.*,
   2021 WL 3215121 (E.D. Tex. June 28, 2021) ....................................................................... 11

12

*Sanchez v. County of Graham*,

13
   No. CV-21-00073-TUC-JCH, 2023 WL 3022467 (D. Ariz. Apr. 20, 2023)......................... 23

14

*Sanchez v. Master Protec., LP*,

15
   No. CV 20-8472 PSG, 2022 WL 2092995 (C.D. Cal. May 4, 2022) ..................................... 23

16

*Tennison v. Circus Enterprises Inc.*,
   244 F.3d 684 (9th Cir. 2001)................................................................................................... 24

17

*U.S. Haischer*,

18
   780 F.3d 1277 (9th Cir. 2015)................................................................................................. 23

19

*U.S. v. Anderson*,

20
   741 F.3d 938 (9th Cir. 2013)..................................................................................................... 3

21

*U.S. v. Neuman*,
   621 Fed. Appx. 363 (9th Cir. 2015) ....................................................................................... 15

22

*U.S. v. Ramirez-Jiminez*,

23
   967 F.2d 1321 (9th Cir. 1992).................................................................................................. 2

24

*U.S. v. Vizcarra-Martinez*,

25
   66 F.3d 1006 (9th Cir. 1995)................................................................................... 2, 3, 16, 21

26

*United States v. Arambula-Ruiz*,
   987 F.2d 599 (9th Cir. 1993) .............................................................................................. 19, 20

27

*United States v. Bailey*,

28
   696 F.3d 794 (9th Cir. 2012)................................................................................................... 20

*United States v. Blixt,*
    548 F.3d 882 (9th Cir. 2008).........................................................................................16

*United States v. Bradley,*
    5 F.3d 1317 (9th Cir. 1993)......................................................................................13, 14

*United States v. Brooke,*
    4 F.3d 1480 (9th Cir. 1993)........................................................................................9, 17

*United States v. Brown,*
    880 F.2d 1012 (9th Cir. 1989)..................................................................................15, 17

*United States v Carroll,*
    73 Fed. Appx 222 (9th Cir, 2003) .............................................................................8, 9

*United States v. Chang,*
    207 F.3d 1169 (9th Cir. 2000).....................................................................................19

*United States v. Charley,*
    1 F.4th 637 (9th Cir. 2021) .............................................................................2, 3, 19, 20

*United States v. Espinoza-Baza,*
    647 F.3d 1182 (9th Cir. 2011).....................................................................................6, 12

*United States v. Giacomini,*
    2022 WL 393194 (N.D. Cal. 2022).............................................................................3, 16

*United States v. Gonzalez-Flores,*
    418 F.3d 1093 (9th Cir. 2005)..............................................................................*passim*

*United States v. Hall,*
    858 F.3d 254 (4th Cir. 2017).......................................................................................20

*United States v. Hill,*
    953 F.2d 453 (9th Cir. 1991).........................................................................................2

*United States v. Hitt,*
    981 F.2d 422 (9th Cir. 1992)................................................................................*passim*

*United States v. Hodges,*
    770 F.2d 1475 (9th Cir. 1985).......................................................................................2

*United States v. Kail,*
    No. 18-CR-00172-BLF-1, 2021 WL 261135.................................................................16

*United States v. Mayans,*
    17 F.3d 1174 (9th Cir. 1994).........................................................................................2

*United States v. Milheiser,*
    98 F.4th 935 (9th Cir. 2024)....................................................................................4, 5, 6

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020).............................................................................. 5

*United States v. Orozco-Viveros*,
  No. 95-50045, 1996 U.S. App. LEXIS 35766 (9th Cir. Feb 12, 1996) ................................. 19

*United States v. Rojas*,
  2014 WL 12695689 (N.D. Iowa Oct. 15, 2014) ..................................................... 11

*United States v. Shellef*,
  507 F.3d 82 (2d Cir. 2007)................................................................................. 4

*United States v. Smith*,
  725 F.3d 340,345 (3d Cir. 2013)....................................................................... 20

*United States v. Sparks*,
  No. 21-cr-00281-VC-1 2022 WL 17074850 (N.D. Cal. Nov. 18, 2022)............................... 23

*United States v. Starr*,
  816 F.2d 94 (2d Cir. 1987)............................................................................... 6

*United States v. Takhalov*,
  827 F.3d 1307 (11th Cir. 2016).................................................................... 5, 6

*United States v. Thomas*,
  32 F.3d 418 (9th Cir. 1994)........................................................................ 9, 10

*United States v. Utz*,
  886 F.2d 1148 (9th Cir 1989)........................................................................... 8

*United States v. Waters*,
  627 F.3d 345 (9th Cir, 2010)...................................................................... 12, 17

*United States v. Wells*,
  879 F.3d 900 (9th Cir. 2018)........................................................................ 16

*United States v. Williams*,
  989 F.2d 1061 (9th Cir. 1993).................................................................... 3, 21

*United States v. Yazzie*,
  59 F.3d 801 (9th Cir. 1995).......................................................................... 23

**Statutes**

18 U.S.C. §§ 1343 ........................................................................................ 13

18 U.S.C. § 1956(a)(1)(A)(i).......................................................................... 13

18 U.S.C. § 1956(a)(1)(B)(i).......................................................................... 13

26 U.S.C. § 7203 ................................................................................................................ 14

**Court Rules**

Federal Rule of Criminal Procedure 12(b) ........................................................................ 1

Federal Rules of Evidence
    401 .................................................................................................................... 22, 23
    402 ........................................................................................................................ *passim*
    403 ........................................................................................................................ *passim*
    404(b) .................................................................................................................... *passim*
    404(b)(2) ...................................................................................................................... 13
    701 .................................................................................................................... 22, 23
    701 ............................................................................................................................ 23
    702 ............................................................................................................................ 22

**Other Authorities**

Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 104.02[9] (13th
    ed. 2024) .................................................................................................................. 19

Defendant Rowland Marcus Andrade moves the Court to exclude evidence on the eight topics below pursuant to Federal Rule of Criminal Procedure 12(b).  This collection of motions begins with a brief statement of the facts that are common to each motion, followed by a brief statement of the law that is common to the motions. Each motion is then addressed separately, adding facts specific to that motion and presenting the legal argument in support of the request.

## FACTS COMMON TO ALL MOTIONS

Defendant Rowland Marcus Andrade is a blockchain patent inventor who created a cryptocurrency called, "AML Bitcoin," which he sold, mostly but not entirely through an Initial Coin offering, from October 6, 2017 to February 15, 2018.  Once developed, AML Bitcoin would a patented technology owned by Mr. Andrade that would use biometrics to confirm the identities of participants in transactions to achieve optimal anti-money laundering and know-your-customer compliance.[1]

The indictment charges Mr. Andrade with wire fraud and money laundering arising out of his AML Bitcoin business.  As to wire fraud, the indictment alleges that Mr. Andrade, his co-schemer Jack Abramoff, and others, engaged in a scheme to defraud purchasers of AML bitcoin by means of material misrepresentations.[2]  The misrepresentations identified in the indictment are misstating the development of the technology, orchestrating a "false rejection campaign" based on a potential Super Bowl advertisement, and overstating the company's progress toward reaching agreements, including with the Panama Canal.  The money laundering charge alleges that Mr. Andrade intended to hide the source of illegal proceeds from the scheme in Count One when he purchased a cashier's check in the amount of $600,000; the indictment suggests that these funds were from the business and used to purchase real estate for Mr. Andrade.

## LEGAL ANALYSIS COMMON TO ALL MOTIONS

A theme common to most of the motions is that the charges in the indictment present a coherent whole, the proof and defense of which will consume substantial trial time.  In the course of investigating those allegations, the discovery reflects that the government collected a wide

---

[1] Dkt. #1 at 3-4.
[2] *Id.* at 3-5.

DEFENDANT ANDRADE'S MOTIONS *IN LIMINE* ## 1-7                    CASE NO. 3:20-CR-00249-RS

1    variety of complaints about Mr. Andrade.  Those complaints do not bear on the issues the jury

2    will be asked to decide – other than to try to suggest a propensity to engage in wrongdoing -- and

3    will only serve to unduly prejudice the jury against Mr. Andrade and bog the trial down in

4    contested mini-trials.

5         The Ninth Circuit has repeatedly emphasized that extrinsic act evidence is not looked

6    upon with favor.  *See United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985) ("Under our

7    system, an individual may be convicted only for the offense of which he is charged and not for

8    other unrelated criminal acts which he may have committed . . . guilt or innocence of the accused

9    must be established by evidence relevant to the particular offense being tried, not by showing that

10   the defendant has engaged in other acts of wrongdoing."); *see also United States v. Hill*, 953 F.2d

11   453, 457 (9th Cir. 1991); *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994). As the

12   Ninth Circuit has instructed, district courts, "as gatekeepers of evidence, are tasked with ensuring

13   that a jury convicts a defendant based only on his alleged conduct and mental state underlying the

14   charged crime, not based on his generalized disposition or tendency to act in a particular way."   ,

15   1 F.4th 637, 640 (9th Cir. 2021) (emphasis added).

16        There are limited circumstances in which evidence of prior bad acts is considered

17   "inextricably intertwined" with "the crime charged" such that the "policies supporting the

18   exclusion of evidence under Rule 404(b) are inapplicable. *U.S. v. Ramirez-Jiminez*, 967 F.2d

19   1321, 1327 (9th Cir. 1992).  There are two categories of inextricably intertwined evidence that are

20   admissible without meeting the requirements of Fed. R. Evid. 404(b):  evidence that "constitutes a

21   part of the transaction that serves as the basis for the criminal charge" and evidence that is

22   necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the

23   commission of the crime" by "explain[ing] either the circumstances under which particular

24   evidence was obtained or the events surrounding the commission of the crime." *U.S. v. Vizcarra-*

25   *Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).

26        For evidence to be inextricably intertwined with a charged transaction, it must be part of a

27   "'single criminal episode'" where "it is clear that particular acts of the defendant are part of, and

28   thus inextricably intertwined with a single criminal transaction," such as multiple

contemporaneous drug sales where the defendant is charged with one of the sales. *Id.* at 1012 (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)). In other words, the conduct must be "near contemporaneous acts of the defendant in other criminal conduct within the same scheme." *United States v. Giacomini*, 2022 WL 393194 at *9 (N.D. Cal. 2022). The proffered evidence cannot be "far removed in time from the charged transaction." *U.S. v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (finding that a fraudulent sale of software occurring six months after the charged conduct occurred was "too far removed in time to constitute a part of the charged transaction").

In addition, evidence of conduct that is neither charged nor inextricably intertwined with the allegations in the indictment can only be admitted if its rationale for admission is based on a "propensity-free chain of reasoning between the prior incidents and the charged offense." *United States v. Charley*, 1 F.4th 637, 650 (9th Cir. 2021). Even if the proffered evidence could meet those strict standards – and qualify under the Ninth Circuit's admonition that "[c]ourts, as gatekeepers of evidence, are tasked with ensuring that a jury convicts a defendant based only on his alleged conduct and mental state underlying the charged crime, not based on his generalized disposition or tendency to act in a particular way," *id.* at 640 – any probative value of the evidence would be substantially outweighed by its prejudicial value or by its consumption of time. *See, e.g., United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005) (excluding prejudicial evidence that, rather than addressing any of the elements of the charged offense, likely triggered an emotional response from the jury, thereby having "an undue tendency to suggest decision on an improper basis"). Rather than advance the trial, the government's proposed massive, schedule-disrupting diversions will merely pollute the trial with moldy, dubious and impermissible propensity evidence.

### MOTION IN LIMINE #1
#### Motion to Exclude Argument and Evidence
#### Regarding The Super Bowl "Rejection Campaign"

Mr. Andrade moves pursuant to Federal Rules of Evidence 402 and 403 for an Order excluding argument and evidence regarding the Super Bowl advertisement "rejection campaign" alleged in the government's indictment.

- 3 -

1

**Introduction**

2   　　The indictment charges that Mr. Andrade "orchestrated and approved a false 'rejection

3   campaign' regarding a purported advertisement that [Mr. Andrade] and his associates stated was

4   going to be aired during the 2018 Super Bowl." Specifically, the indictment alleges that

5   Mr. Andrade "claimed that the advertisement would have aired during the Super Bowl if the

6   television network airing the Super Bowl and the National Football League had not rejected the

7   advertisement as being too controversial." According to the indictment, such statements were

8   "false" because "the NAC Foundation," the entity that developed and managed AML Bitcoin,

9   "did not have the funds to purchase the advertising time, and the advertisement was never

10  reviewed or rejected by the network or the NFL."[3]  Some witnesses claim that they were misled

11  by the false rejection campaign because they thought doing a Super Bowl ad meant the company

12  was well-funded. Other witnesses, however, told the government that the ad was "a good idea,"

13  that "additional exposure for AML Bitcoin should increase the values," and that it was simply "a

14  public relations stunt."[4] [insert from email to MS]

15  **Argument**

16  　　A misrepresentation can support a conviction for wire fraud only if it "go[es] to the nature

17  of the bargain." *United States v. Milheiser*, 98 F.4th 935, 944 (9th Cir. 2024). As the Ninth

18  Circuit has explained, "[a] misrepresentation will go to the nature of the bargain if it goes to price

19  or quality, or otherwise to essential aspects of the transaction." *Id.* at 944; *see also United States*

20  *v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007). "The nature of the bargain requirement properly

21  excludes from liability" misrepresentations "about collateral matters," even where such

22  misrepresentations "may have led to the transaction." *Id.* The Super Bowl advertisement

23  "rejection campaign" alleged in the indictment falls squarely within this exclusion, and the Court

24  should exclude it pursuant to Federal Rules of Evidence 402 and 403.

25

26

27

28

---

[3] *Id.* at 4.
[4] Dent Decl. at 3 (citing IRS-MEMOS-00000001 and IRS-MEMOS-00000017).

DEFENDANT ANDRADE'S MOTIONS *IN LIMINE* ## 1-7          CASE NO. 3:20-CR-00249-RS

1      **1.    The Government's Wire Fraud Charge Must Be Predicated On Misrepresentations That Go To The Nature Of The Bargain**

2

3      In the Ninth Circuit, federal wire fraud must be predicated on a misrepresentation that

4      "go[es] to the nature of the bargain." *Milheiser*, 98 F.4th at 944 ("We agree with the Second,

5      Eleventh, and D.C. Circuits that not just any lie that secures a sale constitutes fraud, and that the

6      lie must instead go to the nature of the bargain."); *see also United States v. Takhalov*, 827 F.3d

7      1307, 1313 (11th Cir. 2016) ("Thus, a 'scheme to defraud,' as that phrase is used in the wire-

8      fraud statute, refers only to those schemes in which a defendant lies about the nature of the

9      bargain itself.").

10     In *Milheiser*, defendants were convicted of mail fraud[5] in connection with a scheme to sell

11     printer toner to businesses by insinuating that they were representatives of the businesses' typical

12     toner supplier. *Id.* at 938. On appeal, the Ninth Circuit vacated defendants' convictions, rejecting

13     the government's argument that federal mail fraud requires "only that a defendant make a false

14     statement that would be expected to and did cause someone to turn over money." *Id.* at 945.

15     Instead, the Ninth Circuit held that "to support a conviction for fraud, a false statement must

16     directly or indirectly deceive the victim *about the nature of the bargain*." *Id.* (emphasis added).

17     "The nature of the bargain requirement [thus] properly excludes from liability cases in which a

18     defendant's misrepresentations about collateral matters may have led to the transaction but the

19     buyer still got the product that she expected at the price she expected." *Milheiser*, 98 F.4th at

20     944.

21     **2.    The Alleged "Rejection Campaign" Does Not Go To The Nature Of The Bargain**

22     Under *Milheiser*, the alleged "rejection campaign" cannot support the government's wire

23     fraud charge because the alleged misrepresentation do not go to benefit of the bargain. The

24     "bargain" between the NAC Foundation and purchasers of AML Bitcoin tokens was that the

25     purchasers would receive AML Bitcoins that were compliant with anti-money laundering and

26     _____

27     [5] Although *Milheiser* specifically addressed a conviction for mail fraud, its holding applies equally to wire fraud charges. *See Milheiser*, 98 F.4th 935, 942 n. 4 (9th Cir. 2024) ("'Because the bank, mail, and wire fraud statutes all use highly similar language,' we reference caselaw on federal bank, mail, and wire fraud interchangeably.") (quoting *United States v. Miller*, 953 F.3d 1095, 1102 n.7 (9th Cir. 2020).

28

1  know-your-customer regulations in exchange for money.[6]   The alleged "rejection campaign"

2  misrepresentations regarding a potential Super Bowl advertisement relate to neither the "price"

3  nor "quality" of AML Bitcoins, nor do they relate to any other "essential aspect" of NAC

4  Foundation's transactions with purchasers.  *See Milheiser*, 98 F.4th 935 at 944.  Instead, the

5  alleged misrepresentations go to precisely the type of "collateral matters" that are insufficient to

6  support federal wire fraud liability under *Milheiser*.  *Milheiser*, 98 F.4th at 944; *see also*

7  *Takhalov*, 827 F.3d at 1310 ("That a defendant merely 'induced the victim to enter into a

8  transaction' that he otherwise would have avoided is therefore 'insufficient' to show wire fraud.")

9  (quoting *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) (alteration omitted)).

### 3.    The Court Should Exclude Evidence And Argument Relating To The "Rejection Campaign" Under Rule 403

12          Because the alleged misrepresentations regarding the Super Bowl advertisement do not go

13  to the "nature of the bargain" between NAC Foundation and purchasers, the Court should exclude

14  evidence and arguments regarding the Super Bowl advertisement under Federal Rules of

15  Evidence 403.

16          Evidence of the alleged "rejection campaign" would be a waste of time and would mislead

17  the jury into believing that such a marketing ploy somehow demonstrated specific intent to

18  commit a crime.  Under Rule 403, the Court has discretion to exclude evidence "if its probative

19  value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

20  misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

21  of cumulative evidence."  *United States v. Espinoza-Baza,* 647 F.3d 1182, 1189 (9th Cir. 2011)

22  (citing Fed. R. Evid. 403).  "As to a criminal defendant, 'unfair prejudice' refers to 'the capacity

23  of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground

24  different from proof specific to the offense charged.'"  *United States v. Gonzalez-Flores*, 418 F.3d

25  1093, 1098 (9th Cir. 2005) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)); *see*

26  *also id.* ("[U]nfairly prejudicial evidence is that having 'an undue tendency to suggest decision on

27  an improper basis.'")  On the other side of the ledger, "[t]he probative value of evidence against a

28

[6] Dkt. 1 at 3-4.

1  defendant is low where the evidence does not go to an element of the charge." *Gonzalez-Flores*,

2  418 F.3d at 1098.  In circumstances "[w]here the evidence is of very slight (if any) probative

3  value, it [i]s an abuse of discretion to admit [the evidence] if there [i]s even a modest likelihood

4  of unfair prejudice or a small risk of misleading the jury.  *United States v. Hitt*, 981 F.2d 422, 424

5  (9th Cir. 1992).

6         As set forth above, evidence relating to the Super Bowl advertisement "rejection

7  campaign" does not go to any element of the government's wire fraud charge because the alleged

8  misstatements do not relate to the nature of the bargain between the NAC Foundation and

9  purchasers of AML Bitcoin tokens.  Accordingly, the probative value of such evidence—if any—

10  is "low."  *Gonzalez-Flores*, 418 F.3d at 1098.  On the other hand, such evidence presents a

11  substantial risk of both undue prejudice and misleading the jury because it risks luring the jury

12  into a conviction on an "improper basis"; namely, the risk that the jury might convict

13  Mr. Andrade based on alleged misrepresentations that cannot support a conviction for wire fraud

14  as a matter of law.  *See Gonzalez-Flores*, 418 F.3d at 1099 (quoting *Old Chief*, 519 U.S. at 180).

15  Because evidence relating to the "rejection campaign" is irrelevant to the elements of the charged

16  offenses and presents far more than a "modest" risk of conviction on an improper basis, the Court

17  should exclude such evidence under Rules 402 and 403.

18                    **MOTION IN LIMINE #2**
   **Motion to Exclude Victim Testimony**
19
20         Mr. Andrade moves for an Order excluding testimony from any victims who say they

21  relied on allegedly materially false and misleading statements when they purchased AML Bitcoin

22  and that they suffered losses as a result.

23  **Introduction**

24         At trial, based on discovery showing solicitation by the government of such statements,

25  the defense anticipates that the government will offer testimony of one or more of Mr. Andrade's

26  purported victims to show that they relied on allegedly materially false and misleading statements

27  made by Mr. Andrade and, as a result of this reliance, suffered losses when they purchased AML

28  Bitcoin. The Court should exclude this testimony.  Not only would it not be directed to any

- 7 -

element of the offense the government is required to prove, but the supposed justification for its admission – that the impressions of and/or reliance by the alleged victims on the charged misrepresentations bears on Mr. Andrade's intent, s*ee, e.g., United States v Carroll*, 73 Fed. Appx 222 (9th Cir, 2003) – is an especially weak reflection of the defendant's intent on the facts of this case.  The little or no probative value of this testimony is substantially outweighed by the unfair prejudice of presenting victims and their damages to prove an offense that requires no victims and no losses.

**Facts Specific to this Motion**

At least one alleged victim has told the government that he was misled by the AML Bitcoin's statements that its advertisement, which it sought to air during the Super Bowl, was rejected by NBC and/or the NFL.  This is the so-called "rejection campaign" alleged in the indictment.  Based on the company's statement that the advertisement was rejected, according to the government's reports, this alleged victim was led to believe that AML Bitcoin had a lot of money.  While that may have been his interpretation, several other allegd victims viewed it differently, thinking that if there was a rejection campaign, it was "a good idea" (IRS-MEMOS 00000003) – an inexpensive way to supply potentially viral publicity.

**Argument**

A wire fraud does not require proof of a victim or of loss; proof of a scheme to defraud and the use of a wire to execute the scheme is sufficient.  *United States v. Utz,* 886 F.2d 1148 (9th Cir 1989).  As a result, the starting place for analysis of admission of victim statements is that "[t]he probative value of evidence against a defendant is low where the evidence does not go to an element of the charge."  *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005) (evidence of heat stroke improperly admitted in alien smuggling case because such evidence "d[id] not go to any of the elements" of the charged offense, but instead likely triggered an emotional response from the jury, thereby having "an undue tendency to suggest decision on an improper basis").

The facts of this case further reduce any probative value.  The supposed justification for admitting victim testimony in cases in which no victim or loss is required is the proposition that if

- 8 -

1   someone claims to have been misled by a statement, the author of statement (or someone whom

2   the government claims is vicariously responsible for it) intended to deceive them. *See United*

3   *States v. Carroll,* 73 Fed Appx. 222 (9th Cir, 2003).  –That proposition has no reasonable

4   application to the facts of this case.  First, there was no express misrepresentation: no one said the

5   company had a lot of money.  Rather, the alleged misrepresentation is an implication of a

6   statement (that the Super Bowl advertisement was rejected); as a mere implication, the likelihood

7   that the responsible author of the statement intended to convey the supposedly false implication is

8   less than if the misrepresentation were express.  Second, as the reaction of other witnesses

9   reflects, if it is possible to infer intent from the reaction of victims, the responsible author of the

10  statement could easily have intended only to get some inexpensive publicity, rather than to

11  deceive people into believing that the company had a lot of money.[7]

12      The government's victim testimony should therefore be evaluated under the Ninth Circuit

13  direction that "where the probative value of the evidence is 'very slight,' the court should

14  exclude it 'if there's even a modest likelihood of unfair prejudice.'"  *United States v. Brooke*, 4

15  F.3d 1480, 1486 (9th Cir. 1993) (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.

16  1992)).  Because there is far more than a modest likelihood of unfair prejudice, victim testimony

17  should be excluded. Parading one or more victims into court, and laying out their losses, cannot

18  help but appeal to the jury's sympathies for the witnesses – and its prejudice against Mr. Andrade.

19  *See, e.g., United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005).  In addition,

20  the proffered evidence will only serve to confuse and mislead the jury as to whether Mr. Andrade

21  is guilty of either wire fraud or money laundering (the actual charges in the indictment) or

22  causing loss or harm to purchasers  (not an element of the charges in the indictment), and will

23  needlessly fill trial time with dueling testimony from different purchasers of AML Bitcoin who

24  either did or did not find the "rejection campaign" to be misleading about the company's

25  finances.

26  _____

27  [7] In the event the Court admits the challenged testimony, it should allow Mr. Andrade to rebut it
    by calling AML Bitcoin purchasers who did not find the alleged misrepresentation to be a
    misleading suggestion that AML Bitcoin had a lot of money, but rather viewed it as good

28  business.  *See United States v. Thomas,* 32 F.3d 418, 420–21 (9th Cir. 1994).

1
2

**MOTION IN LIMINE #3**
**Motion to Exclude Argument and Evidence Regarding**
**Misrepresentations Directed to Non-Purchasers**

3      Mr. Andrade moves for an Order excluding argument and evidence regarding

4  misrepresentations directed to non-purchasers alleged in the government's indictment pursuant to

5  Federal Rules of Evidence 402 and 403.

6  **Factual Background**

7      The wire fraud charge is about purchasers of AML Bitcoin. The indictment alleges that

8  Mr. Andrade engaged in a scheme to defraud *purchasers* of AML Bitcoin by means of material

9  misrepresentations and that he misappropriated money he obtained through the sale of AML

10  Bitcoin to such purchasers.[8]  All the specifics in the indictment are about purchasers:  the

11  indictment alleges that Mr. Andrade: (1) "made public statements and statements to potential

12  *purchasers* of AML Bitcoin tokens that misrepresented the state of the development of the

13  technology and the viability and timeline for the final release of the functional AML Bitcoin

14  cryptocurrency"; (2) "made statements that falsely stated and implied that the NAC Foundation

15  had reached or was about to finalize agreements with various government agencies for the use of

16  AML Bitcoin or AML Bitcoin technology (calling out statements about the Panama Canal and an

17  unnamed California official), in order make prospective *purchasers* believe that the

18  cryptocurrency was progressing toward widespread adoption"; and (3) "misappropriated money

19  he obtained through the sale of AML Bitcoin" when "[p]rospective *purchasers* believed that

20  money paid to purchase AML Bitcoin tokens would be spent to develop the technology and for

21  business operations."[9]  The indictment thus alleges a scheme directed specifically to purchasers of

22  AML Bitcoin and does not charge Mr. Andrade with seeking to defraud any non-purchasers.

23  **Argument**

24      Notwithstanding that the indictment alleges a scheme directed *specifically* to potential

25  purchasers of AML Bitcoin, discovery produced by the government suggests that, to paint

26  Mr. Andrade as a liar, the government has gone about collecting claims from individuals of

27

28  [8] *Id.* at 3-5 (emphasis added).
   [9] *Id.*

- 10 -

1   varying repute that Mr. Andrade made misrepresentations that were *not* directed to potential

2   purchasers.  In the Raiders of the Lost Ark warehouse-sized repository of digital and hard copy

3   discovery ultimately produced by the government, there are too many non-purchaser

4   misrepresentations to list here, or even to identify all of them with certainty.  Included are

5   claimed misrepresentations in financial applications, promises made to an employee of a new car

6   in return for her hard work, failure to follow through with agreements to meet financial

7   obligations in a timely manner, and random assertions about having made money in oil and gas;

8   the alleged recipients of misrepresentations range from banks to employees to government

9   officials.[10]  Various acts of unfulfilled promises, unpaid financial obligations, and meaningless

10  braggadocio go well beyond the scope of an indictment charging that purchasers were  being

11  misled when they purchased cryptocurrency.

12          While the defense cannot predict which of the various claims the government will seek to

13  introduce, the Court can and should prevent the government from offering any claimed

14  misrepresentations that go beyond the scheme of lying to purchasers that is alleged in the

15  indictment.  Evidence of alleged misrepresentations that are *not* directed to potential purchasers

16  has minimal (if any) probative value to proving the elements of the charged offenses.  On the

17  other hand, such evidence creates a substantial risk of undue prejudice because it risks "lur[ing]

18  the [jury] into declaring guilt on a ground different from proof specific to the offense charged."

19  *Gonzalez-Flores*, 418 F.3d at 1099 (quoting *Old Chief*, 519 U.S. at 180).   Such evidence would

20  encourage the jury to see Mr. Andrade as a serial liar, and fuel the impermissible inference that he

21  "must have" lied to potential purchasers as well.  The Court should reject that effort and require

22  the government to prosecute its case based on the actual scheme charged.  *See Ouhrabka, v.*

23  *Exeltis USA, Inc.*, 2021 WL 3215121, at *3 (E.D. Tex. June 28, 2021) ("The [evidence] has little

24  probative value to the claims in this case and, to the extent that Defendant wishes to imply that

25  because Plaintiff lied about something completely unrelated she is lying about this case, any

26  probative value is substantially outweighed by the potential prejudice."); *United States v. Rojas*,

27  2014 WL 12695689, at *1 (N.D. Iowa Oct. 15, 2014)  ("Evidence of Rojas's use of false

28

---

[10] Dent Decl. at 4.

1    identification in other circumstances and for other purposes is of relatively little probative value

2    to his guilt on the charged offenses. Furthermore, it would be quite prejudicial, because it might

3    invite the jurors to decide his guilt or innocence . . . on the improper, emotional basis of his

4    purported propensity to engage in the use of false identification, rather than on the basis of

5    evidence demonstrating his guilt on the charged offenses.").

6         The prejudice created by admitting alleged lies that go beyond the indictment requires

7    exclusion under Rule 403. The Court has broad discretion to exclude evidence "if its probative

8    value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

9    misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

10   of cumulative evidence." *United States v. Espinoza-Baza,* 647 F.3d 1182, 1189 (9th Cir. 2011)

11   (citing Fed. R. Evid. 403).  "The probative value of evidence against a defendant is low where the

12   evidence does not go to an element of the charge."  *United States v. Gonzalez-Flores*, 418 F.3d

13   1093, 1098 (9th Cir. 2005); *see United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where

14   the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if

15   there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.").  For

16   a criminal defendant, unfair prejudice. refers to "the capacity of some concededly relevant

17   evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the

18   offense charged." *Gonzalez-Flores*, 418 F.3d at 1098 (quoting *Old Chief v. United States*, 519

19   U.S. 172, 180 (1997)); *see also id.* ("[U]nfairly prejudicial evidence is that having 'an undue

20   tendency to suggest decision on an improper basis.'")

21        In addition to the prejudice, admitting alleged misrepresentations to non-purchasers will

22   turn the trial into a series of minitrials. These minitrials  will waste the Court's time and create

23   delay, confusion, and undue prejudice that far outweighs any  minimal probative value of alleged

24   lies to non-purchasers. See United States v. Waters, 627 F.3d 345 (9th Cir. 2010) (excluding

25   evidence based on the risk of creating a mini trial).

26

27

28

1
2

**MOTION IN LIMINE #4**
**Motion to Exclude Argument and Evidence**
**Regarding Mr. Andrade's Failure to File Tax Returns**

3    Mr. Andrade moves for an Order excluding argument and evidence regarding the

4    Mr. Andrade's failure to file tax returns pursuant to Federal Rules of Evidence 402, 403, and

5    404(b).

6    **Argument**

7    The Court should reject any attempts by the government to admit evidence of

8    Mr. Andrade's uncharged acts, including evidence relating to his failure to file tax returns.

9    Under Federal Rule of Evidence 404(b), "evidence of other crimes or bad acts [is]

10   admissible only when offered for purposes other than 'to prove the character of a person in order

11   to show action in conformity therewith.'" *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir.

12   1993). As to permitted uses of "other act[s]" in criminal cases, Fed. R. Evid., 404(b)(2) states,

13   "This evidence may be admissible for another purpose, such a proving motive, opportunity,

14   intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." While

15   such evidence is allowed, in order for it to be admitted under Fed. R. Evid. 404(b), pursuant to

16   *Bradley, supra,* at 1320, the evidence must satisfy a four-part test: (i) sufficient evidence must

17   exist for the jury to find the defendant committed the other acts; (ii) the other acts must be

18   introduced to prove a material issue in the case; (iii) the other acts must not be too remote in time;

19   and (iv) if admitted to prove intent, the other charged acts must be similar to the offense charged.

20   Further, even if otherwise admissible under 404(b), the evidence must still be excluded

21   under Fed. R. Evid. 403 "if its probative value is substantially outweighed by the danger of . . .

22   unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

23   needlessly presenting cumulative evidence." Rule 403 recognizes that as the probative value of

24   the evidence decreases, the potential increases for it to be substantially outweighed by the dangers

25   identified in the rule. *See Lucas v. Bechtel Corp.*, 800 F.2d 839, 834 (9th Cir. 1986).

26   Defendant is charged in the Indictment with a violation of 18 U.S.C. §§ 1343 – Wire

27   Fraud (Count One) and 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering

28

- 13 -

(Count Two).  As to each of these counts, the government has alleged that Defendant engaged in a scheme to defraud beginning not later than July 2017 through on or about October 2018.  Based on the scope of the Indictment, the government cannot satisfy the *Bradley* test.  *First,* evidence of Defendant's failure to file tax returns is not relevant or material to any issues or charges in the present case.  *Second*, any illegal conduct engaged in by Defendant well outside the time period of the alleged fraud scheme is too remote in time to be relevant here.  *Third,* failure to file a tax return is a completely separate type of crime from that of wire fraud and money laundering, which are the charges at issue in this case.  *See e.g.,* 26 U.S.C. § 7203.  The uncharged act of failing to file tax returns is not similar to the offenses charged, and any evidence of Defendant's failure to file tax returns must be excluded at trial under Rule 404(b).

Even if the Court found this evidence admissible under Rule 404(b), Rule 403 provides independent and separate grounds for excluding this evidence.  Any evidence that Defendant failed to file his tax returns has little, if any, correlation or probative value to the present charges of wire fraud and money laundering, nor does it make an element of the charged offenses more likely to have occurred.  Moreover, admitting any of the government's evidence relating to Defendant's tax returns will result in confusion of the issues in the present case, unnecessarily burden the jury with facts beyond those charged in the Indictment, and lead to an undue consumption of time.

Finally, even if the evidence had any probative value, that minimal value would be "substantially outweighed by the danger of unfair prejudice," Fed. R. Evid. 403, and therefore the evidence must be excluded.  *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.")  The Ninth Circuit's finding in *U.S. v. Newman* is particularly instructive.  In that case, the Court held that the district court did not abuse its discretion in precluding evidence related to defendants' business tax return in a money laundering and mail fraud case.  The Court explained: "Defendants were charged and convicted of wire fraud and money laundering, not tax fraud. . . . under Federal Rule of Evidence 403, the marginal probative value of the evidence was outweighed by the

- 14 -

1    danger of unfair prejudice to the government and the risk that jurors may give it undue weight or

2    misapply its significance." *United States v. Neuman*, 621 Fed. Appx. 363, 365 (9th Cir. 2015).

3    Thus, to the extent that evidence of Mr. Andrade's prior misrepresentations on a car financing

4    application might be tangentially relevant, its probative value is outweighed by its potential of

5    unfair prejudice and serious risk of misleading the jury or causing jurors to confuse the issues.

6                                   **MOTION IN LIMINE #5**
                              **Motion to Exclude Argument and Evidence of**
7                             **Civil Litigation Pursued by Mr. Andrade**

8            Mr. Andrade moves for an Order excluding argument and evidence of civil litigation

9    pursued by Mr. Andrade pursuant to Federal Rules of Evidence 402 and 403.

10   **Introduction**

11           Regardless of whether the Court allows the introduction of the Government's proffered

12   Rule 404(b) evidence, the Government's Rule 404(b) Notice and other material gathered by the

13   government and produced in discovery suggests that  the Government will offer evidence of

14   previous lawsuits either filed by or against Mr. Andrade.  Exactly why these lawsuits are evidence

15   of criminality is not described in the Rule 404(b) Notice or elsewhere, but the Notice hints that

16   the litigation is abusive, fraudulent, and/or inextricably intertwined with the allegations of the

17   indictment. None of these hints justify the introduction of evidence about the litigation, and even

18   if a justification exists the evidence should be excluded under Rule 403 as a substantial waste of

19   the Court's time that is unduly prejudicial to Mr. Andrade.  *See, e.g., United States v. Brown*, 880

20   F.2d 1012, 1014 (9th Cir. 1989) (explaining that Rule 404(b) is "designed to avoid a danger that

21   the jury will punish the defendant for offenses other than those charged, or at least that it will

22   convict when unsure of guilt, because it is convinced the defendant is a bad man deserving of

23   punishment").

24   **Factual Background**

25           Nowhere in the indictment does the government reference Mr. Andrade's engagement in

26   other litigation in support of either the money laundering or wire fraud charges. To the extent the

27   defense can identify the litigation the government will seek to introduce, it relates to claims of

28

1    fraud by purchasers against Mr. Andrade, claims by Mr. Andrade that people on social media
2    commenting on AML Bitcoin were making false statements, or similar litigation.  Some of that
3    litigation was resolved in Mr. Andrade's favor.  *See* Dent Decl. at 2.

4        In a fraud case, "[w]hat is important is the intent of the person making the statement that it
5    be in furtherance of some fraudulent purpose." *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir.
6    2008).  No litigation in which Mr. Andrade was engaged bears on his intent in making the
7    fraudulent statements charged in the indictment.  It merely shows that claims that may be
8    somewhat similar to the charges in the indictment were the subjects of previous litigation.
9    Needless to say, the outcome of such cases – some of which were in favor of Mr. Andrade – are
10   hearsay, and rehashing those cases would not add to the admissible evidence to be presented at
11   trial.

12       Nor is this litigation is "inextricably intertwined" with the allegations in the indictment.
13   *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012(9th Cir. 1995) (emphasis added).
14   To qualify as "inextricably intertwined," the evidence must constitute[] a part of *the transaction*
15   that serves as the basis for the criminal charge." The transactions on which the charges in this
16   case are based are purchases of AML Bitcoin, and subsequent civil litigation  is not part of those
17   transactions, and is a far cry from the "single criminal transaction" required by *Vizcarra-Martinez*
18   to qualify as "inextricably intertwined. *Id.* at 1012..  Nor does litigation qualify as "near
19   contemporaneous acts of the defendant in other criminal conduct within the same scheme."
20   *United States v. Giacomini*, 2022 WL 393194 at *9 (N.D. Cal. 2022). The litigation also cannot
21   be said to be "necessary for the government to offer a coherent and comprehensible story at trial,"
22   *see United States v. Kail*, No. 18-CR-00172-BLF-1, 2021 WL 261135, at *4 (N.D. Cal. Jan. 26,
23   2021, especially given that "[i]n determining whether particular evidence is necessary to the
24   prosecution's 'coherent and comprehensible story,' we ask whether the evidence bears directly on
25   the charged crime." *United States v. Wells*, 879 F.3d 900, 928-29 (9th Cir. 2018) (emphasis
26   added).

27       As a result, evidence of litigation should be excluded.  It has little or no probative value,
28   let alone value that goes to an element of either of the charged offenses. *See United States v.*

- 16 -

1   *Gonzalez-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005) (explaining that "[t]he probative value

2   of evidence against a defendant is low where the evidence does not go to an element of the

3   charge," and holding that evidence of heat stroke was improperly admitted in alien smuggling

4   case because such evidence "d[id] not go to any of the elements" of the charged offense, but

5   instead likely triggered an emotional response from the jury, thereby having "an undue tendency

6   to suggest decision on an improper basis"); *United States v. Brooke*, 4 F.3d 1480, 1486 (9th Cir.

7   1993) (where the probative value of the evidence is "very slight," the court should exclude it "if

8   there's even a modest likelihood of unfair prejudice.") (quoting *United States v. Hitt*, 981 F.2d

9   422, 424 (9th Cir. 1992)).

10          If the government succeeds in its proof about the litigation by establishing that

11  Mr. Andrade engaged in abusive or "frivolous and malicious legal tactics" (Gov't 404(b) Notice

12  at 3) – a result Mr. Andrade will contest – it will be highly prejudicial, inviting the jury to find

13  Mr. Andrade guilty because it believes that his litigation history means he is a bad man who could

14  not have operated AML Bitcoin in good faith. *See generally United States v. Brown*, 880 F.2d at

15  1014 (calling out the danger of evidence that causes a jury to "punish the defendant for offenses

16  other than those charged, or at least that it will convict when unsure of guilt, because it is

17  convinced the defendant is a bad man deserving of punishment").

18          Regardless of whether the jury agrees with the government or Mr. Andrade about the

19  merits of the prior litigation, bringing that litigation into this case will be a waste of considerable

20  time as the parties parse the issues and results of those cases.  This alone justifies exclusion under

21  Rule 403. Fed. R. Evid. 403 permits the court to "exclude relevant evidence if its probative value

22  is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the

23  jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See United*

24  *States v. Waters*, 627 F.3d 345 (9th Cir, 2010) (excluding evidence based on "the risk of creating a

25  mini-trial").

26

27

28

- 17 -

1

2

**MOTION IN LIMINE #6**
**Motion to Exclude Argument and Evidence**
**Regarding Market Manipulation**

3      Mr. Andrade hereby moves the Court pursuant to Federal Rules of Evidence 402 and 403

4  to enter an Order excluding evidence of alleged efforts by Mr. Andrade to manipulate the price or

5  volume of the AML Bitcoin token on cryptocurrency exchanges.

6  **Introduction**

7      The government, while not raising allegations of market manipulation in its indictment,

8  has discussed allegations of market manipulation with witnesses and has cited to market

9  manipulation in its search warrant affidavits. Based on those materials, the defense anticipates

10  that the government will assert Mr. Andrade coordinated with Jack Abramoff, Richard Naimer,

11  and Abramoff acolyte John Bryan to generate artificial trading volume and pricing on a

12  cryptocurrency exchange. The government will assert that John Bryan, and potentially others,

13  outlined a plan to maintain the AML Bitcoin token's price and trading volume through active

14  trading, the creation of fake token purchase deals with fake companies, the hiring of influencers

15  to endorse the token, and the establishment of a Philippines-based call center. The government

16  may claim that others took similar steps, allegedly with Mr. Andrade's approval.  The defense

17  anticipates that the evidence the government will offer to support these claims will be muddled,

18  inconsistent, and without any statistical support (e.g., exchange trading data). The presentation of

19  the evidence would presumably necessitate testimony from multiple witnesses and the

20  introduction of near-inscrutable documentary evidence likely to be contradicted by testimony.

21      Mr. Andrade's response to the government's evidence will necessarily depend on what the

22  government seeks to introduce – should it be granted the opportunity – but the defense

23  anticipates, at minimum, the introduction of expert testimony on cryptocurrency market making

24  standard practices within the industry and lengthy diversions into cross examinations to contest

25  the government's evidence..

26

27

28

- 18 -

1    **Argument**

2        This Court should exclude evidence of alleged market manipulation as inadmissible under

3    Fed. R. Evid. 403 and 404(b). The indictment charges Mr. Andrade with engaging in a scheme to

4    defraud (Dkt. #1 at 4-5). Broadly, the alleged scheme involved Mr. Andrade selling AML Bitcoin

5    tokens to purchasers using false representations about the state and timeline of his technological

6    and business development and then misappropriating the resulting funds for his personal use.

7    Nowhere in the indictment is Mr. Andrade accused of market manipulation. This evidence would

8    amount to uncharged other acts – lacking a "propensity-free chain of reasoning" connecting them

9    to the charged offenses, *United States v. Charley*, 1 F.4th 637, 650 (9th Cir. 2021) – the

10   introduction of which would consume inordinate time and generate unfair prejudice substantially

11   outweighing any purported probative value. "Courts, as gatekeepers of evidence, are tasked with

12   ensuring that a jury convicts a defendant based only on his alleged conduct and mental state

13   underlying the charged crime, not based on his generalized disposition or tendency to act in a

14   particular way." *United States. v. Charley*, 1 F.4th 637, 640 (9th Cir. 2021).

15       The government, as the proponent of the evidence of market manipulation, bears the

16   burden of demonstrating its admissibility. *See United States v. Chang*, 207 F.3d 1169, 1176-77

17   (9th Cir. 2000) (stating that the proponent of evidence has the burden of proving the foundational

18   requirements for its admission by a preponderance of the evidence); *United States v. Orozco-*

19   *Viveros,* No. 95-50045, 1996 U.S. App. LEXIS 35766, at *5 (9th Cir. Feb 12, 1996) ("the federal

20   rules as they now stand . . . place the burden of demonstrating admissibility on the proponent of

21   the evidence at trial."); *Berry v. Gates,* No. 90-55887, 1992 U.S. App. LEXIS 4012, at, *2 (9th

22   Cir. Feb 28, 1992) ("An offering party has the burden of showing the relevance and probative

23   value of the proffered evidence in order to permit the weight process required under Rule 403.");

24   *see also* Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 104.02[9] (13th ed.

25   2024) ("the moving party has the burden of proving admissibility requirements . . . by a

26   preponderance of the evidence."). This is true for Rule 404(b) evidence as well: "The [proponent]

27   has the burden of proving that the evidence meets all of the [Rule 404(b) and Rule 403]

28   requirements." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602-603 (9th Cir. 1993).

- 19 -

1   Evidence of uncharged market manipulation is not probative of any material point in this

2   case and is nothing like the fraud scheme alleged by the government. Under Rule 404(b), the

3   government first must faces a four-part test for the admissibility of this evidence which it cannot

4   pass. The government must show that it's evidence of market manipulation (1) tends to prove a

5   material point; (2) is not too remote in time; (3) is sufficient to support a finding that Mr. Andrade

6   committed market manipulation; and (4) – depending on the government's asserted non-

7   propensity purpose – is similar to the offense charged.  *See United States v. Bailey,* 696 F.3d 794,

8   799 (9th Cir. 2012). The government bears the burden of proof – and cannot meet it -- with

9   respect to each of these requirements. *See Arambula-Ruiz*, 987 F.2d at 602-603.

10   Even if it passes those tests, the Ninth Circuit and other courts are increasingly employing

11   a more demanding approach grounded in Rule 404(b) itself, which requires the district court to

12   "not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but

13   *how* exactly the evidence is relevant to that purpose—or  more specifically, how the evidence is

14   relevant without relying on a propensity inference."  *United States v. Gomez*,

15   763 F.3d 845, 856 (7th Cir, 2014) (internal citations omitted) (emphasis in original); *see also*

16   *United States v. Charley*, 1 F.4th 637, 650 (9th Cir. 2021) (holding that "[b]ecause the

17   Government fails to articulate a propensity-free chain of reasoning between the prior incidents

18   and the charged offense, the evidence is inadmissible under Rule 404(b)) (internal citations

19   omitted); *United States v. Hall*, 858 F.3d 254, 277 (4th Cir. 2017) ("[U]nder Rule 404(b),

20   evidence of a defendant's prior bad acts is generally inadmissible, properly coming into evidence

21   only when the government meets its burden to explain each proper purpose for which it seeks to

22   introduce the evidence, to present a propensity-free chain of inferences supporting each purpose,

23   and to establish that such evidence is relevant, necessary, reliable, and not unduly prejudicial");

24   *United States v. Smith*, 725 F.3d 340,345 (3d Cir. 2013) ("[T]he proponents of Rule 404(b)

25   evidence must do more than conjure up a proper purpose—they must also establish a chain of

26   inferences no link of which is based on a propensity inference").

27   Nor is alleged market manipulation admissible as "inextricably intertwined."  It and the

28   sale of AML Bitcoin tokens are not "a single criminal *transaction*," such as multiple

- 20 -

DEFENDANT ANDRADE'S MOTIONS *IN LIMINE* ## 1-7                    CASE NO. 3:20-CR-00249-RS

1    contemporaneous drug sales where the defendant is charged with one of the sales.  *U.S. v.*
2    *Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) (quoting United States v. Williams, 989
3    F.2d 1061, 1070 (9th Cir. 1993)) (emphasis added).  Evidence of market manipulation also is
4    unnecessary for the government to tell "a coherent and comprehensible story" about fraud in the
5    sale of AML Bitcoin tokens.  The government's allegations of lies about the technology, the
6    Super Bowl advertisement, and the company's prospects for getting government agencies to
7    accept AML Bitcoin can be told without reference to market manipulation, and are in no way
8    similar to "cases in which the defendant is charged with being a felon in possession of a firearm"
9    where the government may need to provide context for why the defendant had a gun or rebut a
10   defense such as self-defense.  *U.S. v. Vizcarra-Martinez*, 66 F.3d at 1013 (*clai* 974. F.2d 1215,
11   1216 (9th Cir. 1992)).

12        In the unlikely event that the evidence clears all of these hurdles, "the court must then
13   decide whether the probative value is substantially outweighed by the prejudicial impact under
14   Rule 403." *Id.* at 799. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the
15   capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a
16   ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S.
17   172, 180 (1997).  Where market manipulation has not been charged and nothing in the indictment
18   relates to or is dependent upon market manipulation, it follows that it is not "proof specific to the
19   offense charged" and will only serve to unfairly prejudice Mr. Andrade. Moreover, rebuttal of this
20   evidence is anticipated to necessitate expert testimony on the complicated landscape of
21   cryptocurrency market making in the charged timeframe, the differences between traditional
22   securities market making and cryptocurrency market making, and typical cryptocurrency industry
23   practices. This testimony and the examination of relevant witnesses will launch the Court on a
24   lengthy diversion into complicated matters unrelated to the charges, both confusing the jury and
25   wasting the Court's time.

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MOTION IN LIMINE #7
**Motion to Exclude Argument and Evidence**
**Regarding Foteh's Self-Diagnoses of Her Medical or**
**Psychological Conditions**

Mr. Andrade moves for an Order excluding argument and evidence regarding Melissa Foteh's self-diagnoses of medical or psychological conditions pursuant to Federal Rules of Evidence 401, 402, 403, and 701.

### Introduction

The government's pleadings and productions signal its intention to prove its allegations against Mr. Andrade, at least in part, through the statements of other individuals affiliated with AML Bitcoin, including Melissa Foteh. Ms. Foteh is a former employee of the NAC Foundation and began working with Mr. Andrade after being hired to manage a Google Ads campaign for NAC. At trial, the defense anticipates that the Government may seek to proffer evidence that Ms. Foteh's time working for Mr. Andrade at NAC Foundation caused Ms. Foteh to suffer from post-traumatic stress disorder ("PTSD") and/or other medical and psychological conditions. For the reasons set forth below, such evidence should be excluded[11].

### Argument

     **1.**     **Evidence Rule 701 Precludes Ms. Foteh From Offering Self-Diagnoses**
                **About Her Medical and Psychological Conditions**

As a lay witness, Ms. Foteh is not qualified to offer opinions about her PTSD or the cause of her PTSD. Rule 701 of the Federal Rules of Evidence limits lay witness testimony to opinions "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) *not based on scientific, technical, or other specialized knowledge within the scope of Rule 702*. Fed. R. Evid. 701 (emphasis added). Specifically, within the Ninth Circuit, courts have found that a lay witness "cannot self-diagnose himself with – or testify as to the symptoms – of depression, anxiety, and insomnia. Such testimony would stray too far into matters of 'scientific, technical, or other specialize knowledge'

---

[11] This motion is limited to the specific claim that Ms. Foteh has PTSD caused by Mr. Andrade, and does not seek to exclude the wide variety of other odd accusations she may make against Mr. Andrade and/or the government.

1    prohibited by Rule 701." *Sanchez v. Master Protec., LP,* No. CV 20-8472 PSG (RAOx), 2022

2    WL 2092995, at *2 (C.D. Cal. May 4, 2022).  Ms. Foteh is not qualified to render medical or

3    psychological self-evaluations, and any testimony as to any diagnosis that she received from any

4    qualified medical professional would be hearsay if offered through Ms. Foteh's testimony.

5    Moreover, Ninth Circuit courts have held that a lay witness cannot testify "regarding the

6    causation of any specific diagnoses or condition."  *Sanchez v. County of Graham*, No. CV-21-

7    00073-TUC-JCH, 2023 WL 3022467, at *3 (D. Ariz. Apr. 20, 2023).  Thus, the Court should

8    preclude any evidence regarding: Ms. Foteh's claims that she suffers from PTSD or other medical

9    and psychological conditions that are attributable to Mr. Andrade, and the implications and

10   effects of the PTSD or other medical and psychological conditions allegedly caused by

11   Mr. Andrade.[12]  *See* Fed. R. Evid. 701; *United States v. Sparks*, No. 21-cr-00281-VC-1 2022 WL

12   17074850, at *2 (N.D. Cal. Nov. 18, 2022) (granting the Government's motion *in limine* to

13   exclude self-diagnosis of physical or mental conditions).

### 2.    Evidence regarding Ms. Foteh's alleged PTSD is not relevant to the charges against Mr. Andrade and is highly prejudicial.

16           Whether Ms. Foteh suffers from PTSD and whether Mr. Andrade did or did not cause any

17   such PTSD has no bearing on the issues of this case. Evidence is relevant if "(a) it has a tendency

18   to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

19   consequence in determining the action."  Fed. R. Evid. 401.  If evidence does not meet this

20   threshold, it is inadmissible.  Fed. R. Evid. 402.  Furthermore, even if the evidence were relevant,

21   it must be excluded because its "probative value is substantially outweighed by a danger of . . .

22   unfair prejudice, confusing the issues, misleading the jury . . . [or] wasting time."  Fed. R. Evid.

23   403.  Evidence is unfairly prejudicial when "it makes a conviction more likely because it

24   provokes an emotional response in the jury or otherwise tends to affect adversely the jury's

25   attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the*

26   *crime charged*."  *U.S. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (quoting *United States v.*

---

27   [12] Mr. Andrade does not seek to exclude evidence of the underlying facts that Ms. Foteh alleges
28   and relies on to support her self-diagnoses, but rather seeks only to exclude her conclusions about
     what medical and psychological conditions she alleges they caused.

DEFENDANT ANDRADE'S MOTIONS *IN LIMINE* ## 1-7                    CASE NO. 3:20-CR-00249-RS

1    *Yazzie*, 59 F.3d 801, 811 (9th Cir. 1995) (emphasis in original).  The Government seeks to

2    introduce emotional anecdotal evidence of Ms. Foteh's PTSD allegedly caused by Mr. Andrade.

3    These anecdotes will inflame the jury against Mr. Andrade for alleged actions that are completely

4    unrelated to the charges in this case (*i.e.*, wire fraud and money laundering).  Accordingly, such

5    evidence presents a serious risk of the jury rendering a "decision on an improper basis, . . . an

6    emotional one."  Fed. R. Evid. 403 advisory committee notes.

7         Moreover, testimony related to the cause of Ms. Foteh's PTSD would be a source of

8    confusion and speculation.  Members of the jury could draw unwarranted inferences from the

9    testimony.  In addition, to minimize the risk of unfair prejudice, Mr. Andrade would be compelled

10   to contextualize the evidence, requiring defense counsel to define the meaning and significance of

11   PTSD in this case.  This would result in the parties spending precious time parsing this issue, as

12   opposed to focusing the jury's attention to the core issues implicated by the indictment.  In short,

13   admitting evidence of Ms. Foteh's PTSD would "result[ ] in a 'mini trial'" which "would be an

14   inefficient allocation of trial time."  *Tennison v. Circus Enterprises Inc.*, 244 F.3d 684, 690 (9th

15   Cir. 2001).  Thus, Ms. Foteh's testimony should be excluded.

### CONCLUSION

17        For the foregoing reasons, the Court should grant Mr. Andrade's motions in limine.

19   Dated: January 10, 2025                    **KING & SPALDING LLP**

21                                              By:  _/s/ Michel J. Shepard_
                                                   MICHAEL J. SHEPARD
22                                                 KERRIE C. DENT

23                                                 Attorneys for Defendant
24                                                 ROWLAND MARCUS ANDRADE

- 24 -