MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
 kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
 cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>　　　Defendant. | Case No. 3:2-cr-00249-RS<br><br>**REPLY TO UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNCHARGED BAD ACTS**<br><br>Judge: Hon. Richard Seeborg, Chief Judge |

Defendant Rowland Marcus Andrade files this Reply to the government's Opposition to Defendant's Motion in Limine to Exclude Evidence of Uncharged Bad Acts.

1

Reply to United States' Opposition to Defendant's
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

Case Number:  3:20-cr-00249-RS

TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 4

II. REPLY TO FACTUAL BACKGROUND ............................................................................. 5

    A. The Facts in the Opposition Do Not Establish the Claimed Similarities or the Government's Ability to Prove Them in a Narrowly Circumscribed and Narrow Fashion .................................................................................................. 5

    B. The Facts in the Opposition Do Not Demonstrate That The Story of AML Bitcoin Would Be Incoherent or Incomprehensible If Told Without AtenCoin .......................................................................................................... 8

    C. Global Algae Royalties, a/k/a Biogreen ............................................................ 8

III. REPLY TO ANALYSIS ......................................................................................................... 9

    A. The Government Fails to Establish That the Biogreen and AtenCoin Evidence is "Part of the Same Transaction" or "Necessary…to Offer a Coherent and Comprehensible Story." ................................................................ 9

    B. The Government Fails to Provide a Propensity-Free Chain of Reasoning for Why the Biogreen and AtenCoin Evidence Should Be Admitted Under Fed. R. Evid. 404(b) ....................................................................................... 11

    C. The Government Refuses to Engage with Concerns Regarding Availability of Evidence. ................................................................................................... 12

    D. The Government's Proffered Evidence Fails the Rule 403 Balancing Test .......... 13

1

Reply to United States' Opposition to Defendant's          Case Number: 3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*American Home Assur. Co. v. American President Lines, Ltd.*,
    44 F.3d 774 (9th Cir. 1994) ...................................................................................................11

*Michaelson v United States*,
    335 U.S. 469 (1948) ...............................................................................................................14

*Old Chief v. United States*,
    519 U.S. 172 (1997) ...............................................................................................................14

*Parker v. United States*,
    400 F.2d 248 (9th Cir. 1968) ............................................................................................4, 12

*United States v. Archer*,
    910 F.3d 854 (6th Cir. 1994) .........................................................................................14, 15

*United States v. Barket*,
    530 F.2d 189 (8th Cir, 1976) ................................................................................................12

*United States v. Biswell*,
    700 F.2d 1310 (10th Cir. 1983) ............................................................................................15

*United States v. Charley*,
    1 F.4th 637 (9th Cir. 2021) .....................................................................................4, 11, 13

*United States v. Cuenca*,
    692 F. App'x 857 (9th Cir. 2017) .........................................................................................10

*United States v. Giacomini*,
    2022 WL 393194 (N.D. Cal. 2022) .........................................................................................9

*United States v. Mehrmanesh*,
    689 F.2d 822 (9th Cir. 1982) ................................................................................................14

*United States v. Smothers*,
    652 F.Supp.3d 271 (E.D.N.Y. 2023) ....................................................................................10

*United States v. Vizcarra-Martinez*,
    66 F.3d 1006 (9th Cir. 1995) ..................................................................................................9

2

Reply to United States' Opposition to Defendant's
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

Case Number:  3:20-cr-00249-RS

**Other Authorities**

Fed. R. Evid. 404(b)............................................................................................................. *passim*

Mr. Andrade *regarding AML Bitcoin* ...................................................................................10

Rule 403 ...............................................................................................................4, 10, 11, 13

3

Reply to United States' Opposition to Defendant's  Case Number: 3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

## I. INTRODUCTION

The government's Opposition is long in its recitation of pejorative facts that will be contested, but short in even attempting to answer the arguments in Mr. Andrade's motion.

- It rushes through the Fed. R. Evid. 404(b) checklist but never addresses the requirement in *United States v. Charley,* 1 F.4th 637, 650 (9th Cir. 2021) that the government "articulate a propensity-free chain of reasoning between the prior incidents and the charged offense."
- It does not acknowledge, let alone show how it will satisfy *Charley's* direction that "the use of such evidence must be narrowly circumscribed and limited." *Id.* at 647, *quoting United States v. Bailleaux,* 685 F.2d 1105, 10109 (9th Cir, 1982).
- It offers a mere eleven unsatisfying words, in an attempt to meet the standards for its "inextricably intertwined" claim, as its explanation for why its AML Bitcoin story would be incoherent or incomprehensible absent proof of the alleged AtenCoin fraud.
- It claims that AtenCoin and AML Bitcoin used the same modus operandi, but it makes no effort to show the two businesses (among many cryptocurrencies being marketed) meet the Ninth Circuit's requirement that the common conduct must be "peculiar, unique or bizarre." *Parker v. United States,* 400 F.2d 248, 252 (9th Cir. 1968).
- It fails to acknowledge how much of the evidence Mr. Andrade would need for his defense has been lost due to the government's strategic decision to wait to use these accusations as Rule 404(b) evidence, or to address the due process issues raised by that lost evidence.

As for the few of Mr. Andrade's arguments it does address, the government offers little support for its claimed similarities between AtenCoin and AML Bitcoin, much of which does not withstand scrutiny, and what it says about Rule 403 undermines rather than supports its position. Mr. Andrade's Motion in Limine should therefore be granted.

4

Reply to United States' Opposition to Defendant's                    Case Number:  3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

## II. REPLY TO FACTUAL BACKGROUND

The Opposition offers a statement of facts mostly addressing AtenCoin and AML Bitcoin, the focus of which is to present its conception of fraud in the sale of AtenCoin, followed by its conception of fraud in the sale of AML Bitcoin. Along the way it identifies what it sees as similarities between the two alleged frauds, and suggests that they were "intertwined" in that the AtenCoin was rebranded as AML Bitcoin, and in that some purchasers rolled their purchases in AtenCoin into AML Bitcoin.[1]

What is missing from the Opposition's statement of facts is, first, sufficient evidentiary support to establish the claimed similarities or the government's ability to prove those similarities in a way that is "narrowly circumscribed and limited," and, second, any basis to suggest that the AML Bitcoin story would be incoherent or incomprehensible without the AtenCoin story. Rather, the claimed similarities between AtenCoin and AML Bitcoin appear to be put together in a way to demonstrate propensity, suggesting that Mr. Andrade must have defrauded ALM Bitcoin purchasers because he defrauded AtenCoin purchasers. As the government describes it, Mr. Andrade "and his co-schemers" in AML Bitcoin have done the things he has been charged with, "just as they did with AtenCoin."[2]

### A. The Facts in the Opposition Do Not Establish the Claimed Similarities or the Government's Ability to Prove Them in a Narrowly Circumscribed and Narrow Fashion

Regardless of whether the factual assertions in the Opposition could satisfy the standards of admissibility, the Opposition fails to offer sufficient factual support for them. For example, the government claims Mr. Andrade "repeatedly referenced 'patents' in his description of the value of both AtenCoin and AML Bitcoin," while citing to a single, undated slide saying nothing

---

[1] The Opposition asserts that AtenCoin purchasers were pressured into trading their AtenCoins for AML Bitcoin tokens. *See* Gov't Opp. (Dkt. 441 at 3:10. But the material cited as support says nothing about pressure, and given the government's assertion that AtenCoin was "worthless" at the time, *see* Gov't Opp. at 3:11, it is hard to imagine why anyone would have needed to be "pressured" to trade it for AML Bitcoin.

[2] Gov't Opp. at 5:22-23.

5

Reply to United States' Opposition to Defendant's       Case Number:  3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

about the existence of patents for AtenCoin, but correctly stating that NAC's [AML Bitcoin's] products *were* protected.[3] To support its claim that both AtenCoin and the AML Bitcoin projects employed "boiler-room salespeople," the government cites the anticipated testimony of one former boiler-room salesperson who sold AtenCoin, but *never* sold AML Bitcoin.[4] The government cites only the indictment to state that Mr. Andrade "and his co-schemers" have done the things he has been charged with, "just as they did with AtenCoin," but has not presented to the Court corresponding evidence of what Mr. Andrade is supposed to have done with AtenCoin.[5] Towards the end of its factual recitation, the government provides two pages of factual assertions without citation.[6]

The little evidence that the government does offer starts with its noting that AtenCoin, like AML Bitcoin, advertised itself as AML/KYC compliant, but the government has provided only some short interview summaries in support of the proposition that it was not compliant, from people with little foundation for saying so.[7] As articulated in Mr. Andrade's Motion in Limine, the defense will heavily contest this claim.[8] While the government correctly states that "AML Bitcoin possesse[d] all the unique properties of AtenCoin, including anti-money laundering, anti-terrorism, and theft resistance," there were key features of AML Bitcoins which were not included in AtenCoins and which would be the subject of lengthy testimony (potentially including experts) and documentary evidence at trial.[9] The government has outlined some

---

[3] Ward Decl. (Dkt. 441-1) at ¶ 6, Exh. F, containing a claim that "Multiple aspects of NAC's novel solutions are IP protected, in the form of US and international patent applications & trademarks."

[4] Gov't Opp. at 4:26-5:21. The Opposition makes character-focused inclusions of B.D.'s involvement in a prior, unrelated "boiler-room" operation, his associated fraudulent gains, conviction, and sentence, and his speculation regarding the basis for AtenCoin's "rebranding."

[5] Gov't Opp. at 5:22-6:3, citing to the indictment only.

[6] Gov't Opp. at 5:22-7:8, no citations to AtenCoin-related evidence.

[7] Ward Decl. at ¶ 3, Exh. C (wherein R.A. never directly addresses AML/KYC compliance); ¶ 4, Exh. D (wherein C.J. claims the company "didn't even have any legal structure set up" for AML compliance, while inconsistently complaining that the company had hired a third-party company to verify Aten Coin holders), and ¶ 5, Exh. E-1 (wherein B.D. stated he personally "did not . . . know if Aten Coins actually had any AML/KYC features," and "had no idea what the concepts of AML/KYC compliance really meant.").

[8] Stefan Decl. (Dkt. 425-2) at ¶ 19; Exhs. X, Y, Z, AA, BB, Y, CC, HHH, DDD, M, III, QQQ.

[9] Stefan Decl. at ¶¶ 19.b.-19.d.

---

6
Reply to United States' Opposition to Defendant's    Case Number: 3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

anticipated testimony[10] from C.J. and B.J. pertinent to alleged similarities between AtenCoin and AML Bitcoin which will be the subject of robust, document-laden, time-consuming defense confrontation,[11] as will the government's claims regarding any similarities between alleged statements to R.A. (or others) concerning AtenCoin trading and statements made to AML Bitcoin purchasers.[12]

Despite Mr. Andrade having flagged the issue of the amount of time that proof and defense of the alleged AtenCoin fraud would consume, the government has provided no indication of the volume of evidence it intends to produce, the period over which that evidence will stretch, or the number of witnesses it will call to testify. In acknowledging that AtenCoin sales began in February 2014 and ended in June 2016, over a year prior to the initiation of the AML Bitcoin ICO,[13] the government has conceded that the AtenCoin evidence it seeks to admit covers a larger timeframe than the charged July 2017 to December 2018 period on which the indictment focuses.[14] It claims that "multiple witnesses" will testify "they bought and held AtenCoin," an unspecified number of witnesses will testify they sold AtenCoin, and "reams of documentary evidence," together with those witnesses, will allow for "more than sufficient proof" for the jury to find that Mr. Andrade committed the prior acts.[15]

This undefined mass of "multiple witnesses" and "reams of documentary evidence" will add to what is already looking to be a trial that will go beyond the government's estimates. The government has provided Mr. Andrade with 966 exhibits it intends to introduce, plus the government also plans to offer twenty audio or video files. While it has yet to reveal how many witnesses it plans to call, it has already disclosed three experts, at least one of which will consume substantial time. The defense has disclosed four experts, at least two of which are likely

---

[10] Gov't Opp. at 4:6-25. Note the inadmissible character evidence contained in the anticipated testimony, namely, "they concluded that Mr. Andrade 'was a crook.'"
[11] Stefan Decl. at ¶ 22, Exhs. MM, NN, & OO.
[12] Stefan Decl. at ¶ 21, Exhs. FF, GG, HH, & II.
[13] Gov't Opp at 10:26-11:2.
[14] Dkt. 1 at 3:15-16.
[15] Gov't Opp. at 11:9-14.

7
Reply to United States' Opposition to Defendant's        Case Number: 3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

to do the same. There is more than enough trial, without another alleged fraud covering an even longer time period – not to mention Biogreen.

### B. The Facts in the Opposition Do Not Demonstrate That The Story of AML Bitcoin Would Be Incoherent or Incomprehensible If Told Without AtenCoin

Even if all the facts in the Opposition were sufficiently supported, the government would still need to demonstrate that its story of AML Bitcoin would be incoherent or incomprehensible if told without AtenCoin. The Opposition's fact statement uses the word "intertwined" once, when referencing a Dillman email that calls AML Bitcoin a rebranding of AtenCoin. It also suggests that some investors rolled their AtenCoins into AML Bitcoin tokens. Whether or not this shows that the two were "intertwined" (or just that a witness might mention AtenCoin), it makes no effort to explain why AtenCoin and AML Bitcoin are "*inextricabl*y intertwined." That is, it does not answer the statement in Mr. Andrade's Opening Brief (at 15:9-21) that the AML Bitcoin fraud claim can be presented without going into detail about AtenCoin, and that doing so would not render the claim "incoherent or incomprehensible." And the Opposition goes nowhere near explaining its claim that AtenCoin not only needs to be mentioned in some detail, but also *that it needs to be able to offer proof that AtenCoin was a fraud* in order to tell the story of AML Bitcoin – unless it needs to do so in order to show a propensity to engage in fraud.

### C. Global Algae Royalties, a/k/a Biogreen

The government presents a series of factual claims regarding Biogreen without relating them to facts concerning AML Bitcoin. The government asserts that "some Biogreen investors" said Mr. Andrade claimed to have developed a patented technology for Biogreen, but cites no evidence and does not address the fact that Mr. Andrade *did* have patents for AML Bitcoin.[16] Citation is made to an investor who claimed to have been pitched "units" of Biogreen, promised a return of his investment if not satisfied, denied said return upon request, and deprived of any return on investment, however, no similar facts are presented with respect to the charged AML

---

[16] Stefan Decl. at 6:16-7:9.

8

Reply to United States' Opposition to Defendant's
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

Case Number:  3:20-cr-00249-RS

Bitcoin project. Finally, the government cites speculative statements from R.M., a drug-using secretary who was unsure what the Biogreen project was, but did not think it was completed by the time she left the company.[17] As with AtenCoin, the government states that it seeks to introduce "a limited amount of evidence" from the Biogreen project, but provides no clarification regarding what that evidence will be. The government cites to the testimony of two witnesses and vaguely references "some Biogreen investors who have been interviewed by the FBI," without addressing which witnesses it will call.

### III.     REPLY TO ANALYSIS

**A. The Government Fails to Establish That the Biogreen and AtenCoin Evidence is "Part of the Same Transaction" or "Necessary…to Offer a Coherent and Comprehensible Story."**

The government claims ipse dixit that it cannot "fairly offer a coherent and comprehensible story" of the charged offenses without venturing into the earlier AtenCoin "investment scheme" evidence, which it asserts "includes acts that 'constitute part of the transaction that serves as the basis for the criminal charge.'"[18] The government fails, however, to articulate how evidence of a so-called AtenCoin "investment scheme" is part of "a single criminal transaction" with AML Bitcoin, *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995), focusing instead on claimed similarities in the sales pitch for AtenCoin and AML Bitcoin. Even if true – and Mr. Andrade vigorously disputes the matter – mere similarities across two schemes do not make them inextricably intertwined. The government appears to be conflating the Ninth Circuit's test for admission of evidence under Fed. R. Evid. 404(b), which does include a similarity requirement, with the different standard for admission of evidence as relevant because it is inextricably intertwined with the charged offense, "involv[ing] near

---

[17] Ward Decl. at ¶ 8, Exh. H.

[18] The Opposition apparently abandons its earlier argument that AtenCoin should be admitted as inextricably intertwined, defending only its argument that Biogreen evidence should be admitted under Rule 404(b).

9

Reply to United States' Opposition to Defendant's         Case Number:  3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

contemporaneous acts of the defendant ." *United States v. Giacomini*, 2022 WL 393194 at *9 (N.D. Cal. 2022).

No better is the government's argument that the AtenCoin evidence is necessary to "offer a coherent and comprehensible story of the commission of the crime" because it will show "how AtenCoin investors became AML Bitcoin investors and eventual victims." Proving the charged offense does not require a victim origin story; it requires proving that the alleged victims, wherever they came from, relied on intentional misstatements by Mr. Andrade *regarding AML Bitcoin* when deciding to purchase – whether outright or by rolling over their AtenCoin purchases – into *AML Bitcoin*. There is nothing inextricable about any connection between AtenCoin and AML Bitcoin.

Even if evidence about the existence of the AtenCoin currency and its conversion to AML Bitcoin were necessary to avoid telling an "incoherent and incomprehensible story" about the crime charged, there is no reason that evidence of an alleged but uncharged fraud in relation to AtenCoin should also be necessary. That is, even if the government's story about AML Bitcoin somehow needs a prequel, the prequel could be provided by explaining that the witness previously owned AtenCoin and was given the opportunity to convert it to AML Bitcoin; there is no reason to add to the story that AtenCoin was also a fraud. As a result, attempting to prove that AtenCoin was a fraud would fail to pass muster under Rule 403, regardless of whether or not it was inextricably intertwined with AML Bitcoin.

As with all evidence the Court might determine to be relevant, inextricably intertwined evidence is subject to the Fed. R. Evid. 403 balancing test. *See United States v. Cuenca*, 692 F. App'x 857, 858 (9th Cir. 2017) (after finding uncharged transactions were "inextricably intertwined" with the charged offenses, the district court properly performed a Rule 403 balancing test to the evidence); *see also United States v. Smothers*, 652 F.Supp.3d 271, 285 (E.D.N.Y. 2023) ("Although evidence may be relevant as directly probative of, or inextricably intertwined with, the defendant's charged conduct, this evidence may nonetheless be inadmissible pursuant to [Rule] 403."). As explained below, adding a substantial, separate fraud,

10

Reply to United States' Opposition to Defendant's  
Motion in Limine to Exclude Evidence of Uncharged  
Bad Acts

Case Number: 3:20-cr-00249-RS

and attempting to prove its similarity and the existence of people who were allegedly victimized twice, would be extremely prejudicial, to a degree that far outweighs the nonexistent probative value. It would also create the forbidden propensity inference that because Mr. Andrade previously committed fraud with AtenCoin, he is more likely to have done so with AML Bitcoin. To avoid falling foul of Fed. R. Evid. 403, at a minimum, the government's evidence regarding AtenCoin must at most be limited to evidence of its existence and the fact that Mr. Andrade offered his purchasers the opportunity to convert their AtenCoins to AML Bitcoin tokens.

**B. The Government Fails to Provide a Propensity-Free Chain of Reasoning for Why the Biogreen and AtenCoin Evidence Should Be Admitted Under Fed. R. Evid. 404(b).**

The government relies largely on stale case law for its articulation of the Ninth Circuit's standard for admission of Fed. R. Evid. 404(b). In particular, the government ignores the Ninth Circuit's teaching that it must "articulate a propensity-free chain of reasoning between the prior incidents and the charged offenses" in order to justify admission of the Biogreen and AtenCoin evidence. *United States v. Charley*, 1 F.4th 637, 650 (9th Cir. 2021). Doing precisely what *Charley* counsels against, the government instead recites a rote list of bases for admission under Fed. R. Evid. 404(b) and states, in conclusory fashion, that the Biogreen and AtenCoin evidence is admissible, without actually explaining the propensity-free logic supporting the admission. In the absence of more probing analysis where the government has the burden of proving the admissibility of the evidence under Fed. R. Evid. 404(b), *see American Home Assur. Co. v. American President Lines, Ltd.*, 44 F.3d 774, 778 (9th Cir. 1994), the only available conclusion is that the government has declined to provide a propensity-free chain of reasoning because to do so is impossible. This inference is confirmed by its own brief, in which, following its listing of words from Rule 404(b), it proclaims that Biogreen, AtenCoin, and AML Bitcoin are part of "the

11

Reply to United States' Opposition to Defendant's    Case Number:  3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

same fraudulent playbook,"[19] with AML Bitcoin and AtenCoin purchasers "stuck on an investment train 'going nowhere,'"[20]

Although Mr. Andrade's Opening Brief cited the standard the government needs to meet in order to claim that evidence should be admitted to show "*modus operandi*," the government repeats its "*modus operandi*" claim without ever attempting to show anything that qualifies as "peculiar, unique or bizarre." *Parker v. United States*, 400 F.2d 248, 252 (9th Cir. 1968). That Mr. Andrade allegedly sought to promote his business ventures by advertising their "revolutionary" capabilities and "widespread adoption," including by high profile institutional customers – in other words, typical sales puffery – is hardly unique and does not satisfy the standard to constitute *modus operandi* evidence.

**C. The Government Refuses to Engage with Concerns Regarding Availability of Evidence.**

The government does not deny Mr. Andrade's contention that due to the government's intentional delay in bringing its Biogreen and AtenCoin allegations, Mr. Andrade has lost access to evidence that could help his defense. *See, e.g., United States v. Barket,* 530 F.2d 189 (8th Cir, 1976). It says nothing, for example, about the loss of emails and messages between Jack Abramoff and Mr. Andrade for the period between 2015 and 2017, which would shed light on Mr. Andrade's role, knowledge, and state of mind at the time.[21] Nor does it question that data and witnesses helpful to answering the allegations are no longer available, including potentially critical bank records, and the testimony of at least one central participant in the activity. Rather, it merely offers a claim that makes matters worse: that *the government* has a low bar in

---

[19] Gov't Opp. at 15:11-12.
[20] Got't Opp. at 10:23-24.
[21] In his Motion in Limine, Mr, Andrade stated that the defense had no records from three bank accounts related to AtenCoin, and no records from any bank accounts related to Biogreen. Since then, following the government's expert disclosure for its accountant and provision of a list of the accounts said expert relied upon, the defense located records from two of the three accounts related to AtenCoin. As a result, the defense has no records from one account related to AtenCoin and no records for all accounts related to Biogreen.

12
Reply to United States' Opposition to Defendant's                Case Number: 3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

establishing the sufficiency of its Rule 404(b) evidence.[22] If the government is right, this means that with the assertedly inculpatory evidence it maintained, it can get these prejudicial accusations into evidence, and leave Mr. Andrade without access to bank records, exculpatory communications, and witnesses that could help refute the government's claims. None of the cases it lists finding no abuse of discretion in admitting old other crimes evidence raised any similar issue about the loss of evidence.[23]

### D. The Government's Proffered Evidence Fails the Rule 403 Balancing Test

Fed. R. Evid. 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other concerns, "wasting time" and "unfair prejudice." The government's noticed evidence promises to do both.

Despite the Ninth Circuit requirement, set out in *Charley*, that Fed. R. Evid. 404(b) evidence be "narrowly circumscribed and limited," the government offers no information showing that its proof of the alleged AtenCoin and/or Biogreen frauds would satisfy *Charley*. In its brief engagement with the issue of how introduction of Biogreen and AtenCoin evidence will impact the trial's length, the government only offers vague assurances that some of the exhibits and witnesses overlap for AtenCoin and AML Bitoin, that AtenCoin "may add some amount of time to the trial," and that the Biogreen evidence will be "limited" and "not…unduly time-consuming." However, the government does not offer any quantifiable details about what percentage of the AtenCoin and AML Bitcoin evidence and witnesses will overlap, let alone how much time they anticipate the Biogreen and AtenCoin evidence will consume. Much of the evidence set out in the Opposition regarding AtenCoin has little or no overlap with AML Bitcoin, including statements from witnesses B.J., C.J.,[24] and B.D.[25] As for the assurance that the

---

[22] Gov't Opp. at 13:1-8.
[23] Gov't Opp. at 12:16-21.
[24] Ward Decl. at ¶ 4, Exh. D, p. 5-6. C.J. and B.J.'s total experience with AML Bitcoin was receiving a "generic email" to convert their coins to AML Bitcoin and observing the AML Bitcoin website.
[25] Ward Decl. at ¶ 5, Exh. E-2, p. 6, where B.D. states "AML Bitcoin was one of Andrade's Twitter accounts. It seemed like Andrade was re-branding Aten Coin to AML Bitcoin, but Darrow wasn't involved with AML Bitcoin." In Exh. E-1, p. 8, B.D. speaks only to hearing through a third party that AtenCoin was rebranded to AML Bitcoin.

13
Reply to United States' Opposition to Defendant's        Case Number: 3:20-cr-00249-RS
Motion in Limine to Exclude Evidence of Uncharged
Bad Acts

Biogreen evidence will not be "unduly time-consuming," given that the Biogreen allegations are over fifteen years old, there is *no* overlap between the Biogreen and AML Bitcoin evidence and every minute spent on Biogreen will unduly consume time. As a result, it is impossible to conclude from the government's unsubstantiated and undefined estimates that the Biogreen and AtenCoin evidence will truly be "narrowly circumscribed and limited," as opposed to wasting the Court's time and resources during an already complex and lengthy trial.

Not only will the Rule 404(b) evidence require a substantial and wasteful time commitment, but it will be extremely prejudicial. The makings of the prejudice are unmistakable on the face of the government's brief, which continually reverts to various ways to say that Biogreen, AtenCoin, and AML Bitcoin were "merely new iterations of the same fraudulent playbook."[26] This is precisely the sort of prejudice that goes to the essence of the fairness of criminal trials – that prior wrongdoing "is said to weigh too much with the jury and to overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a criminal charge." *Michaelson v United States*, 335 U.S. 469, 475-76 (1948); see *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (Rule 404(b) was crafted to preclude "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged.").

And if the government is correct that Biogreen, AtenCoin and AML Bitcoin are so similar, this only "heightens" the prejudice, making it exponentially worse. "When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *United States v. Archer*, 910 F.3d 854, 860, (6th Cir. 1994) This heightened risk of unfair prejudice must be weighed against the government's threadbare rationale for admission. The government could only provide a rote recital of possible bases for admissibility (preparation, plan, knowledge, and modus operandi), and a laundry list of prejudice-inviting alleged similarities. It failed to

---

[26] Gov't Opp. at 15:11-12. p. 12, ll-12.

14

Reply to United States' Opposition to Defendant's  
Motion in Limine to Exclude Evidence of Uncharged  
Bad Acts

Case Number:  3:20-cr-00249-RS

articulate "precisely the *evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence," *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added), let alone a propensity-free one. Without this "evidential hypothesis," demonstrating a "clear and logical connection between the earlier alleged . . . misconduct and the case being tried," *see United States v. Biswell*, 700 F.2d 1310, 1317-18 (10th Cir. 1983), the alleged similarities between Mr. Andrade's prior acts and his charged acts can only serve to "lure the factfinder into an impermissible propensity line of reasoning." *Archer*, 910 F.3d at 862.

Respectfully submitted,

DATED: January 15, 2024

KING & SPALDING LLP

By: /s/ Michael J. Shepard
    MICHAEL J. SHEPARD
    KERRIE C. DENT
    CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE