MICHAEL J. SHEPARD (Bar No. 91281)
*mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1200
Facsimile:     +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
*kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:     +1 202 626 3737

CINDY A. DIAMOND (SBN 124995)
*cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Avenue, #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>　　　　Defendant. | Case No. 3:20-CR-00249-RS (LBx)<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY OF ERIK MIN**<br><br>Judge:　　Hon. Richard Seeborg<br>Dept.:　　Courtroom 3 – 17th Floor<br><br>Date:　　TBD<br>Time:　　TBD |

Defense expert Erik Min is a well-qualified expert, addressing a relevant subject beyond the competence of most jurors – the state of AML Bitcoin's technology[1]; he was disclosed on the date disclosures were due; and the seven-page disclosure of his conclusions is fulsome.  With one already-resolved possible exception, the government's objections to the testimony of defense expert Erik Min have no merit whatsoever.

## I.   MR. MIN'S PROFFERED TESTIMONY

Erik Min is the Senior Director of the Blockchain & Digital Assets Practice at FTI Consulting, Inc., and has over 20 years of investigative and advisory experience across cryptocurrency, blockchain technologies, and other topics.  He holds numerous blockchain and cryptocurrency certifications through the Blockchain Council, including as a Certified Bitcoin Expert, Certified Blockchain Expert, and Certified Blockchain Developer, and is certified as a Crypto Research and Investigations Specialist by Crystal Intelligence, a Certified Investigator by TRM Labs, and an EnCase Certified Examiner.

In response to government accusations that Mr. Andrade and others "misrepresented the state of development of the [AML Bitcoin] technology and the viability and timeline for the final release of the functional AML Bitcoin cryptocurrency," Indictment, ECF No. 1, at 4, Mr. Min used all the records currently available to examine the development of AML Bitcoin's technology.  In addition to educating the jury about blockchain technology generally, the specific blockchain technology and other applications developed in connection with the AML Bitcoin cryptocurrency, and the architecture of AML Bitcoin, Mr. Min will report the conclusions from his examination, while also describing the limitations in the data currently available.

Among the more significant conclusions in his disclosure (attached for the Court's convenience as Exhibit A), are (1) that there was substantial and consistent development of the underlying verification software (and associated web and mobile applications) between March 2017 and November 2018 (a period that is the focus of the government's case); (2) that the significant amount, quality, and sophisticated work on source code during this period reflects the

---

[1] As noted in his disclosure, in the event the Court allows the government's proffered Rule 404(b) evidence about AtenCoin, he is also expected to address the state of the AtenCoin technology.

work of intelligent and qualified developers over at least several months, if not a year or more, prior to late 2018, and at least 18–24 months; (3) that work on establishing a custom software package to connect the CrossVerify technology [AML Bitcoin's biometric identification] with a mobile application interface began as early as March 16, 2017, and continued through at least May 2018; in addition to other records suggesting it was created (at least initially); (4) that development of CrossVerify's web-based application began as early as March 21, 2018, with testing of CrossVerify's ability to collect and store "know-your-customer"("KYC") data beginning as early as April 2018; (5) that based on the available data, AML Bitcoin technology was either substantially close or fully functional by the end of the project; and (6) that the development of the software was poorly managed, including an atypical number of development teams, missing documentation of key management functions, development protocols, architecture of the platform, and server management.

Needless to say, Mr. Min's testimony will not be presented in a vacuum. Rather, it will be accompanied by other evidence of what Mr. Andrade was told about the state of the technology at various times. Together with that evidence, Mr. Min's testimony will provide facts and context from which the jury can infer that any statements Mr. Andrade made about the state of AML Bitcoin's technology were made in good faith.

## II. THE GOVERNMENT'S COMPLAINTS ABOUT MR. MIN'S TESTIMONY ARE MERITLESS

The government makes complaints about process and complaints about the substance of Mr. Min's testimony. None come close to justifying the government's motion, and nearly all of them fail to withstand even the slightest scrutiny.

Complaints about process. The government repeatedly complains that Mr. Andrade "should have made a proper expert disclosure long ago" and lumps this together with other claimed improprieties, see, e.g., Gv't Motion at 3:4, 18-20 but provides no basis for the assertion that Mr. Andrade's disclosure was belated, other than that Mr. Min must have been working for a while. Mr. Min was disclosed on the date disclosures were required. No government experts were disclosed before the government's disclosures were due. Although those facts alone should

be more than enough to dismiss the government's complaint, Mr. Min did not finish his work until just before he was disclosed, making it especially unjustified to claim he should have been disclosed earlier – at a time the defense did not have his final conclusions.[2]

And when the government filed this Motion and noted the lack of production of the data on which Mr. Min relied, Mr. Andrade promptly produced the data. Had the government called after Mr. Min was disclosed and asked for the data – as the defense has done in response to delayed production of court-ordered material -- the production could have been promptly made. Its Motion fails to offer any harm it suffered during that short period, and does not even claim to have enlisted an expert to review any of the data.

<u>Substantive complaint.</u>  The government's sole substantive complaint about Mr. Min's proffered testimony is based on a claim that all Mr. Min is going to say is that "the project was 'substantially close or fully developed'" in or around April 2020. Gv't Motion 6:2-3.[3]  As a result, says the government, Min's testimony is nothing more than saying that purchasers of the coin would eventually be repaid, and is therefore irrelevant and impermissible.  Gv't Motion at 6:7:7-14.  But the only way to say so is to pretend that one or two lines in seven pages of disclosures is the entirety of Mr. Min's testimony.  Mr. Min's testimony shows that good people were doing good work throughout the period of the indictment, which (together with other evidence) provides context and basis on which the jury can infer Mr. Andrade's good faith.  The government has no argument that the rest of Mr. Min's testimony, or his testimony taken as a whole, is in any way

---

[2] The tone of the government's baseless complaints suggests concern that at this point it lacks time to engage its own technology expert.  But when it objected to the defense's disclosure of Kathy Johnson (the response to which is being filed separately), the government wrote that "certainly in this case it is reasonable to expect that Mr. Andrade and his counsel would understand the need for expert testimony" to explain Ms. Andrade's financial transactions to the jury.  ECF 462 at 4:16.   Whether that is true or not for a party without the burden of proof, it is unquestionably true of the government and the need to retain an expert to explain the state of Mr. Andrade's technology, given its burden to prove its allegations, which include lies about the state of the technology, beyond a reasonable doubt.  That it did not do so over the four and half years since it indicted this case is no basis to complain about timely defense disclosures.

[3] The government adds that April 20 is "more than 18 months after the fraud scheme as charged ended." Gv't Motion 6:3. This is a misstatement of the indictment, which alleges that the scheme continued "through a date unknown to the grand jury, but *to at least* December 2018" (emphasis added).  The government appears to choose its end date to suit: in its Motion to Admit Co-Conspirator Statements, the government chose a different end date, this time March 2019.  ECF 449 at 10:14.

- 5 -

irrelevant.

Dated: January 18, 2025                    **KING & SPALDING LLP**

                                           By:/s/
                                              MICHAEL J. SHEPARD
                                              KERRIE C. DENT

                                           Attorneys for Defendant
                                           ROWLAND MARCUS ANDRADE