UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROWLAND MARCUS ANDRADE,

Defendant.

Case No. 20-cr-00249-RS-1

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ALLEGATIONS OF UNCHARGED BAD ACTS**

## I. INTRODUCTION

Defendant Rowland Marcus Andrade has filed a motion *in limine* seeking exclusion of evidence related to uncharged bad acts. The government had sent a notice informing Defendant it would seek to introduce evidence and testimony about two of Andrade's past ventures, AtenCoin and Biogreen. Based on the briefing and the application of Federal Rules of Evidence 403 and 404(b), Defendant's motion is denied as to evidence related to his involvement with AtenCoin, another cryptocurrency created by Defendant. Defendant's motion to exclude is granted as to testimony and evidence regarding Biogreen.

## II. BACKGROUND

In 2009, the Defendant started a company initially called Global Algae Royalties, Inc., which later became Biogreen International. Biogreen was an agricultural business based on a technology meant to extract a rare chemical from algae. The noticed conduct ceased in 2010.

In 2014, Andrade began selling a cryptocurrency called AtenCoin through another of his

United States District Court
Northern District of California

companies, the National AtenCoin Foundation ("NAC Foundation). The NAC Foundation's marketing materials referred to AtenCoin as the predecessor of AML Bitcoin. AtenCoin purportedly had anti-money laundering ("AML") and know-your-customer ("KYC") technology, which would lead to its widespread adoption. These two features were also present in AML Bitcoin's later marketing. The government plans to present witnesses who purchased both AtenCoin and AML Bitcoin, which was also sold through the NAC Foundation.

On September 13, 2024, the government gave notice to Defendant of its intent to introduce evidence of two of Andrade's earlier business ventures, AtenCoin and Biogreen. The government noticed both categories of evidence as "other acts" admissible under Fed. Rule. Evid. 404(b) or as evidence inextricably intertwined with the fraud scheme alleged in the indictment.

On December 27, 2024, the Defendant filed a Motion to Exclude evidence of these prior acts. In its opposition to the Motion, the government argues testimony and evidence concerning AtenCoin is either inextricably intertwined with the charged offenses or admissible under Fed. R. Evid. 404(b) because it shows Andrade's knowledge, intent, motive, opportunity, and absence of mistake. The government contends evidence related to Biogreen is admissible under 404(b) because it demonstrates Andrade's planning, preparation, and knowledge of the charged AML Bitcoin conduct.

### III. LEGAL STANDARD

Rule 404(b)(1) provides: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." For such other act evidence to be admissible, it must meet the Ninth Circuit's four-part test. Evidence is admissible under that test when: (1) the evidence tends to prove a material element of the offense for which the defendant is now charged; (2) the other act is not too remote in time; (3) sufficient proof exists for the jury to find that the defendant committed the other acts, and; (4) in cases where prior act evidence is being introduced to prove intent, the other acts must be sufficiently similar to the charged conduct. *United States v Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020) (citing *United States v. Bailey*, 696 F. 3d, 794, 799 (9th Cir. 2012); *see also United States v. Smith*, 282 F.3d 758, 768 (9th Cir. 2002). The government "has

United States District Court
Northern District of California

the burden of proving that the evidence meets all of the above requirements." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993). If it meets these conditions, the evidence may be barred only if its probative value is outweighed by prejudice to the defendant. Fed. R. Evid. 403.

"Evidence should not be considered ... 'other act' evidence within the meaning of Rule 404(b) if the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) (internal quotation marks omitted). Accordingly, Rule 404(b) does not exclude evidence of an act that is "a part of the transaction that serves as the basis for the criminal charge," or that is "necessary ... to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 1178 (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995)).

Fed. R. Evid. 403 serves as a final hurdle to admissibility. Evidence which meets the requirements of Rule 404(b) can still be excluded if its probative value is substantially outweighed by the prejudicial impact. *Bailey*, 696 F.3d at 799 (citations omitted). Fed. R. Evid. 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presentation of cumulative evidence." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007).

## IV. DISCUSSION

### A. Atencoin

The evidence regarding AtenCoin is admissible, either as evidence inextricably intertwined with the charged conduct or under Rule 404(b). Andrade's conduct in creating, marketing, and selling AtenCoin is inextricably intertwined with the charged scheme regarding AML Bitcoin. Additionally, testimony and evidence related to AtenCoin bears on a material point – Defendant's planning and knowledge of the other potentially fraudulent scheme of AML Bitcoin.

The government first contends AtenCoin is inextricably intertwined with the charged scheme of AML Bitcoin. As the government tells it, AtenCoin was the clear predecessor to AML Bitcoin, and AML Bitcoin was merely a rebranding of the same investment scheme Andrade used

United States District Court
Northern District of California

1   for AtenCoin. Andrade used markedly similar sales pitches to sell AtenCoin and AML Bitcoin

2   tokens; namely, that both were AML and KYC compliant, and as such, would be widely adopted

3   by governments and industry. Notably, AtenCoin investors were given the opportunity and at

4   times had their AtenCoin investments rolled into AML Bitcoin investments. As such, the

5   government argues AtenCoin's investment scheme includes acts that "constitute part of the

6   transaction that serves as the basis for the criminal charge." *Vizcarra-Martinez*, 66 F.3d at 1012.

7   The government has offered "a sufficient contextual or substantive connection between the

8   proffered evidence and the alleged crime to justify exempting the evidence from the strictures of

9   Rule 404(b)." *See id.* at 1013. While Defendant argues AtenCoin was a distinct venture, enough so

10  that AtenCoin does not *directly* bear on the charged crimes related to AML Bitcoin, this argument

11  is unavailing. *See United States. v. Wells*, 879 F.3d 900, 929 (9th Cir. 2018). Using the same

12  company, sales tactics, purported technology, and preying on the same alleged victims, Andrade's

13  involvement with AtenCoin is essentially indistinguishable from his conduct regarding AML

14  Bitcoin. Therefore, AtenCoin is inextricably intertwined with AML Bitcoin and is admissible,

15  independent from the requirements of Rule 404(b).

16          Alternatively, testimony and evidence about AtenCoin can also be admitted under Rule

17  404(b). The government argues Andrade's involvement with AtenCoin proves a material point

18  about his planning, preparation, and knowledge of the AML Bitcoin fraud. Andrade allegedly used

19  many of the same marketing and sales techniques with AtenCoin as with AML Bitcoin, often

20  making similar misrepresentations about the technology available and the state of the venture.

21  AtenCoin and AML Bitcoin were both sold by Andrade through his company, the NAC

22  Foundation. Some AtenCoin purchasers even converted their investments into AML Bitcoin,

23  further underscoring the potential relevance of AtenCoin to Andrade's modus operandi as well as

24  his lack of mistake or accident. Andrade attempts to rebut the materiality and relevance of

25  AtenCoin, but NAC Foundation's own materials contradict these arguments.

26          The AtenCoin evidence deals with acts sufficiently close in time to the charged conduct.

27  Andrade sold AtenCoin from 2014 through 2016. He then began selling and marketing AML

28  Bitcoin one year later, in 2017. The government even argues the relevant AtenCoin conduct

overlaps with the charged acts because at the time Andrade began marketing AML Bitcoin, he helped past AtenCoin purchasers exchange their remaining investments for AML Bitcoin. Therefore, the AtenCoin conduct satisfies the temporal requirement of Rule 404(b).

On the third factor, sufficient proof exists for the jury to find Andrade committed the other conduct at issue with AtenCoin. *See United States v Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020). It is uncontested that Andrade was the creator, marketer, and seller of AtenCoin. The government is not relying on mere criminal or civil complaints or investigations, but rather introducing evidence of the actual potentially fraudulent cryptocurrency scheme. *See Bailey*, 696 F.3d at 802.

Fourth, Andrade's conduct related to AtenCoin is much like the offenses charged. Andrade vehemently disagrees, but for the reasons discussed previously, AML Bitcoin and AtenCoin have undeniable similarities. The defense relies on *United States v. Charley* to argue the government failed to "articulate a propensity-free chain of reasoning between the prior incidents and the charged offense." 1 F.4th 637, 650 (9th Cir. 2021). This reliance is misplaced because the prior uncharged bad acts in *Charley* had very little overlap with the conduct at issue. Notably, the assaults improperly admitted under 404(b) in *Charley* were committed against different victims in different contexts. Additionally, the government in that case relied upon prior assaults to establish Charley's motive to commit a further assault. This matter deals with Andrade's modus operandi and intent allegedly to defraud buyers of both AtenCoin and AML Bitcoin. The uncharged and charged acts are nearly identical and the proffered AtenCoin evidence does not speak to Andrade's motive. While it is true the government must articulate a sufficient chain of reasoning, without relying on mere character or propensity inferences, the government has done so. Therefore, evidence of Andrade's conduct in selling AtenCoin meets the requirements for admissibility under Rule 404(b).

Finally, the defense argues AtenCoin testimony and evidence should be excluded under Rule 403 because it is unduly prejudicial and would significantly expand the scope of trial. Although Defendant makes much of the disadvantage he faces because of potentially lost evidence, at core he argues the prejudicial impact of AtenCoin is based on its persuasive weight. This is not a reason for exclusion under Rule 403. *See United States v. Cruz-Garcia*, 344 F.3d 951,

1    956 (9th Cir. 2003). Blanket exclusion is not the proper solution at this stage when the defense

2    only has generalized concerns about access to AtenCoin records.

3          As to the scope of trial, many witnesses and exhibits address both AtenCoin and AML

4    Bitcoin. Given the similarities between the conduct alleged regarding AtenCoin and AML Bitcoin,

5    the probative value of AtenCoin evidence to Andrade's intent and modus operandi is high.

6    Therefore, the risk of further factual disputes does not weigh in favor of exclusion. Given the

7    value of this evidence outweighs the risk of prejudice to Andrade, the government's proffered

8    AtenCoin evidence is admissible.

9    **B.  Biogreen**

10          The uncharged conduct relating to Defendant's involvement with Biogreen is neither

11    inextricably intertwined with the charged offense, nor does it meet the Ninth Circuit's

12    requirements for admission under Rule 404(b). The government does not contend Andrade's

13    involvement in Biogreen is intertwined with the conduct laid out in the indictment. Instead, it

14    argues the Biogreen conduct is proper 404(b) evidence of Andrade's preparation, plan, knowledge,

15    and intent in the AML Bitcoin scheme. The government explains the Biogreen evidence tends to

16    prove a material point, which was Andrade's intent in marketing and selling AML Bitcoin, and

17    that his misstatements and misrepresentations in AML Bitcoin were not mistakes, but merely new

18    iterations of the same fraudulent playbook that Andrade employed in selling Biogreen. However,

19    the use of some of the same marketing and sales techniques is insufficient to meet the similarity

20    requirements under Rule 404(b). Additionally, Andrade's uncharged conduct related to Biogreen

21    occurred in 2009 and 2010, making it too distant temporally from the conduct at issue, which

22    began in 2017. Therefore, evidence of Andrade's involvement is inadmissible and Defendant's

23    motion to exclude testimony and evidence regarding Biogreen is granted.

24                                **V. CONCLUSION**

25          Defendant's motion to exclude uncharged conduct is granted as to his involvement with

26    Biogreen. However, Defendant's motion is denied as to conduct related to AtenCoin.

27

28

United States District Court
Northern District of California

1    **IT IS SO ORDERED**.

2

3    Dated: January 22, 2025

4    _____

5    RICHARD SEEBORG
     Chief United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

ORDER ON MOTION IN LIMINE
CASE NO. 20-cr-00249-RS-1