MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
 kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
 cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>    Defendant. | Case No. 3:2-cr-00249-RS<br><br>**DEFENDANT ANDRADE'S MOTION IN LIMINE TO EXCLUDE USE OF ATENCOIN RELATED FINANCIAL DATA FROM 2014 TO 2017, OR IN THE ALTERNATIVE, FOR CONTINUANCE**<br><br>Judge: Hon. Richard Seeborg, Chief Judge |

Defendant Rowland Marcus Andrade moves the Court for an order excluding the use by the government of any financial data from 2014 to 2017 related to Aten Coin, NAC Foundation and Aten Black Gold Coin, LLC, under FRCRP Rule 16(d), or in the alternative, continuing the trial date for at least 60 days. In support of this motion, Mr. Andrade states as follows:

1. Five days before the pretrial conference, the government produced 12.4 GB[1] – over 9,000 documents consisting of pdfs, electronic communications and word documents plus over 175 Excel Workbooks, both small and voluminous. As defense counsel advised the Court at the January 22 pretrial conference, these documents consist of financial data relating to Mr. Andrade's business, primarily covering the period from 2014 to 2017, when AtenCoin was in existence. In other words, most of the voluminous production relates to the time period covered by the Rule 404(b) evidence permitted by the Court in its January 22, 2025 order, ECF #493. The government concedes that it obtained these documents in 2020 but did not produce them until January 17, 2025. *See* Declaration of Dainec Stefan, ¶ 2. The records produced bore IRS Bates numbers matching none of the IRS documents previously provided to the defense. The production was not accompanied by any discovery letter or index detailing what was provided, from what source, and whether or to what extent anything provided was duplicative of prior productions. Stefan Decl. at ¶ 4.

2. What was produced is dense financial data. As defense counsel advised the Court at the pretrial conference, the defense provided the new production to its forensic accountant, Kathy Johnson, and asked Ms. Johnson, for assistance in assessing (1) whether the material was new, duplicative of prior productions, or a mixture of both, and (2) whether the material would be potentially helpful to Mr. Andrade's defense. After sampling and reviewing approximately 100 of the newly-produced documents for three hours, she reported three conclusions. First, that due to the production files not containing text filenames in their native form, and due to the

---

[1] Mr. Andrade, in ECF 486 at n. 1, provided a lower number for the gigabyte count. This lower number was the size of the compressed file. The uncompressed file is 12.4 gigabytes, and is comprised of 9,584 files. Review to date suggests that all are finance related except for 161 grand jury documents.

absence of any index or letter detailing the source of the produced documents, there is no efficient way to determine the extent of duplication within the production, and no way to determine whether the production duplicates material from any prior production. Review to make these determinations would require a document-by-document visual check of the newly produced records against previously produced documents. Second, that many of the documents she reviewed were ones she had not previously seen, in either the materials reviewed by the government's expert, or her own review. Third, that the produced materials include potentially valuable financial statement documents of which she was previously unaware, including General Ledger Account Activity, Profit and Loss Statements and business related invoices. Stefan Decl. at ¶3. At Ms. Johnson's current rate of review, and applying assumptions such as one-third of the documents in the production being duplicates, she will not come close to completing her review before trial, let alone in time to have prepared updated disclosures, or to have explained her conclusions to defense counsel.[2]

3.    Defense counsel have also performed a preliminary review of the January 17, 2025 production and, as best the defense can determine, the bulk of the documents are related to Aten Coin. Counsel for Mr. Andrade had received accounting records from Mr. Andrade's business accountant Mr. Ruzicka, but the data, while sizeable at 1.3 gigabytes (in 1,507 separate files), was significantly smaller than the government's January 17, 2025 production.[3] Just considering the difference in the data size of the government's 12.4 gigabytes of data compared to the 1.3 gigabytes Mr. Ruzicka provided to the defense, any of the government's January 17, 2025 production that the defense may already possess would comprise, at best, a small fraction of the government's production. For defense counsel to further identify documents that may be

---

[2] On Monday, Ms. Johnson informed defense counsel that she was adding another financial analyst to her team so the work she had started could continue, while she endeavored to review the new set of material. She is working with all possible speed to complete her review on the relevant materials in this case.

[3] Mr. Ruzicka informed defense counsel that the data he provided to them was most likely the same information he had given to the government in 2020, as he just copied the contents of his work folders for Mr. Andrade electronically, but as he did not have the documents he gave to the government in February of 2020 for a comparison, he could not be certain. Stefan Decl. at ¶ 5.

duplicative of prior government productions, or even identify documents it has obtained or could possibly obtain from accountants, banks, or businesses via subpoena, would require engagement in the same document-by-document review process described by Ms. Johnson. Were the defense counsel to review as quickly as Mr. Andrade's forensic accountant, at a rate of 100 documents every three hours, it would take approximately 280 hours *just* to determine the degree to which the government's production is duplicative of material in the defense's possession. This is not feasible given the time remaining before trial.

4. Given that Ms. Johnson, reviewing only 100 of the documents, identified some helpful records within the January 17th production, *see* #2 above, it is possible that there are many more. But it will take substantial time to identify all the documents that may have exculpatory value. To rebut the government's accusation that AtenCoin was a fraudulent entity designed only to line Mr. Andrade's pockets, it is vital that Ms. Johnson's team be given time to analyze, categorize and research all of the financial Workbooks and other documents to collect expenditures and/or render an expert opinion on whether and how much money NAC Foundation spent on business expenses to implement what Mr. Andrade understood what purchasers of AtenCoin were being told. To identify these and other potentially exculpatory documents requires the time-consuming document review Ms. Johnson undertook, only spread across as many as 9,367 documents rather than only 100.

5. The government has represented that its forensic accounting expert will not make use of the production, but, needless to say, this does not remedy the government's late production. The government is presenting financial (and other) testimony and documents about the Aten Coin period, in order to allege that funds taken in as payment were misused. The production may contain evidence refuting the government's claims. In addition, the production may contain exculpatory information. Without adequate time to review this evidence, Mr. Andrade will be deprived of his ability to present an effective defense.

6. Even if it were possible for Ms. Johnson to have completed her review before trial, counsel would not have time to incorporate her knowledge into the defense before trial

1  given the existing demands for their time on this case. Nor would the defense have the
2  opportunity to pursue leads generated by the production. The financial issues are at the core of
3  the government's allegation. The government should not be rewarded for its more than four
4  years of delay by putting the defendant in a position in which he must start trial, give an opening
5  statement, cross-examine government witnesses, and present his defense, without the opportunity
6  to have a complete understanding of core evidence in the case.

7.   Under Federal Rule of Criminal Procedure 16(d)(2), the court is empowered to "(B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (C) enter any other order that is just under the circumstance." At a minimum, this Court should remedy the government's delayed production by excluding all government AtenCoin-related financial evidence for the period between NAC's formation in 2014, and the beginning of AML Bitcoin Token pre-sales on August 1, 2017. Exclusion of evidence is a proper remedy for failing to make timely disclosures. *See, e.g., United States v. Garcia*, 730 F. Supp.2d 1159, 1167-1168 (C.D. Cal. 2010). In the alternative, the defense requests a 60-day continuance to afford Ms. Johnson sufficient time to analyze the data and for the defense to analyze, follow-up, and prepare any of the material for use at trial.[4] To do otherwise would be to deny Mr. Andrade his right to prepare an effective defense. *See Sherman v. Gittere*, 92 F.4th 868, 878-879 (9th Cir. 2024) ("The constitutional right to 'a meaningful opportunity to present a complete defense' is rooted in both the Due Process Clause and the Sixth Amendment.").

---

[4] This is not a case in which, leaving aside this belated production, either government or defense counsel are ready to go with time to spare. As one illustration, what the government has marked as "exhibits" can be overinclusive, in ways that will require both parties to devote substantial time before those exhibits could be presented at trial. For example, Prosecution Exhibits 393, 394, 395, 397, 398, 659, 869, and 879 each comprise of 800-1000 pages of emails between dozens of participants, replete with attachments. Once the government has selected which of those pages it will introduce and which it will not, the defense will need time to identify and present to the court any rule of completeness issues.

Respectfully submitted,

DATED: January 29, 2025

KING & SPALDING LLP

By: */s/ Michael J. Shepard*
　　MICHAEL J. SHEPARD
　　KERRIE C. DENT
　　CINDY A. DIAMOND

　　Attorneys for Defendant
　　ROWLAND MARCUS ANDRADE