MICHAEL J. SHEPARD (Bar No. 91281)
mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:   +1 415 318 1200
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:   +1 202 626 2394
Facsimile:    +1 202 626 3737

CINDY A. DIAMOND (SBN 124995)
cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Avenue, #350
San Francisco, CA 94127
Telephone:   +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>    Defendant. | Case No. 3:20-CR-00249-RS<br><br>**ANDRADE'S REPLY BRIEF IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING TO ADDRESS GOVERNMENT MISCONDUCT AND TO SEEK SANCTIONS**<br><br>Judge:   Hon. Richard Seeborg |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................... 5

II. THE OMISSIONS AND MISSTATEMENTS IN THE GOVERNMENT'S "FACTUAL BACKGROUND" ................................................................................ 5

    A. The Government's Suppression of Abramoff-Related Evidence ............................ 5

    B. The Government's Destruction of Exculpatory Evidence ....................................... 6

    C. The Government's Invasion of Mr. Andrade's Attorney-Client Privilege .............. 9

III. ARGUMENT ........................................................................................................ 12

    A. The Court Should Hold an Evidentiary Hearing ................................................... 12

    B. The Government's Misconduct Violated Mr. Andrade's Due Process Rights ..................................................................................................................... 13

    C. Even If No Due Process Violation Had Occurred, the Court Should Exercise Its Supervisory Powers to Dismiss the Indictment ................................. 18

    D. Alternatively, At a Minimum, The Court Should Order Other Relief .................. 19

    E. The Court Should Not Deny Any of Mr. Andrade's Motions Based on the Government's Claims that They Were "Filed Late" ............................................. 19

IV. CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In United States v. Conte*,
  2004 WL 2988567 (N.D. Cal. Dec. 28, 2004) .................................................................. 13, 15

*United States v. Abbit*,
  1999 WL 1074073 (D. Or. Oct. 29, 1999) (Gv't Opp. ) ......................................................... 13

*United States v. Babichenko*,
  2020 WL 4462497 (D. Idaho Aug. 3, 2020) ........................................................................... 17

*United States v. Balwani*,
  18-cr-258 ................................................................................................................................... 9

*United States v. Bergonzi*,
  216 F.R.D. 487 (N. D. Cal. 2003) ........................................................................................... 17

*United States v. Bundy*,
  968 F.3d 1019 (9th Cir. 2020) ................................................................................................ 15

*United States v. Castor*,
  937 F.2d 293 (7th Cir. 1991) .................................................................................................. 16

*United States v. Danielson*,
  325 F.3d 1054 (9th Cir. 2003) ................................................................................................ 16

*United States v. Haynes*,
  216 F.3d 789 (9th Cir. 2000) .................................................................................................. 16

*United States v. Hungerford*,
  2019 WL 1903212 (E.D. La. Apr. 29, 2019) ......................................................................... 14

*United States v. Irwin*,
  612 F.2d 1182 (1980) .............................................................................................................. 16

*United States v. Lazarevich*,
  147 F.3d 1061 (9th Cir. 1998) ........................................................................................... 14, 21

*United States v. Levy*,
  577 F.2d 200 (3d Cir. 1978) .................................................................................................... 15

*United States v. Lopez*,
  No. 2:23-CR-00055-CDS-DJA, 2025 WL 275523 (D.Nev. Jan. 22, 2025) ........................... 17

- 3 -
ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY
HEARING ON GOVERNMENT MISCONDUCT AND TO
SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

*United States v. Loud Hawk*,
  628 F.2d 1139 (9th Cir. 1979) (en banc) (Kennedy, J., concurring) ........................................ 20

*United States v. Neill*,
  952 F.Supp. 834 (D.D.C. 1997) ....................................................................................... 16, 17

*United States v. Rivera-Guerrero*,
  426 F.3d 1130 (9th Cir. 2005) ............................................................................................... 21

*United States v. Sophie*,
  900 F.2d 1064 (7th Cir. 1990) ............................................................................................... 14

*United States v. Voigt*,
  89 F.3d 1050 (3d Cir. 1996) ............................................................................................ 12, 13

*United States v. White*,
  879 F.2d 1509 (7th Cir. 1989) (14) ................................................................................. 15, 16

**Other Authorities**

Sixth Amendment ........................................................................................................................ 16

Discovery Order, Dkt. #165 .......................................................................................................... 8

Discovery Order, Dkt. #165 (Apr. 7, 2023) ................................................................................... 6

Discovery Order, Dkt. #292 ..................................................................................................... 9, 20

Rule 16 .......................................................................................................................................... 9

Statement of Johnathan C. Buma, ¶9 ............................................................................................ 6

Statement of Johnathan C. Buma to the U.S. Senate Committee on the Judiciary
  (July 15, 2023) ......................................................................................................................... 6

**Suspects**

714 F.3d at 1173 ......................................................................................................................... 20

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY
HEARING ON GOVERNMENT MISCONDUCT AND TO
SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

I.  **<u>Introduction</u>**

The government's Opposition cannot bring itself to address the facts that require, at a minimum, that this Court hold an evidentiary hearing to decide Mr. Andrade's Motion. Instead, it repeatedly elides over the facts that it cannot explain, or, on a few occasions, misstates them. It claims to have already produced what it allowed Abramoff to destroy when there is no question that it had not produced – and refused to produce – the vast bulk of what it allowed Abramoff to destroy. It claims that the privileged conversations it invaded were with Mr. Andrade's patent lawyer, despite the fact that the case agent had already been dealing with her about this investigation. It claims about Erickson's phone disregard contrary statements made by the prosecutors themselves.

Many more of these dodges are reported below; there are too many for an introduction. And the government does no better with its legal analysis, going so far as to omit language that undercuts its position. At a minimum, this Court should hold an evidentiary hearing to address the significant constitutional issues raised by this motion.

II.  **<u>The Omissions and Misstatements in the Government's "Factual background"</u>**

A.  <u>The Government's Suppression of Abramoff-Related Evidence</u>

Amidst its multiple complaints that Mr. Andrade's argument is "unsupported," Gov't Opp. at 12:25-26, the government ignores Special Agent Buma's Congressional testimony, as well as the circumstances connecting that testimony to Jack Abramoff. It treats all the other evidence of suppression and attempted suppression of information about Abramoff individually (not to mention incorrectly), and thereby ignores the corroboration of Special Agent Buma's sworn testimony from the collection of attempted and successful suppression of information about Abramoff (and his colleagues like Paul Erickson and Alexander Levin) in this case. It also ignores that the defense referenced a second witness and the expected testimony of that witness, based on conversations with the witness.

Bypassing this critical evidence, he government instead claims that the CHS with whom Buma met to discuss Abramoff's typed and handwritten notes "did not discuss Andrade, AML

- 5 -

Bitcoin, or anything related to AML Bitcoin at the meeting." Gov't Opp at 6:23-24. It bases this claim not on any sworn statement but rather on the fact that Buma's 302 does not mention Andrade or AML Bitcoin. Needless to say, this does not mean that those topics were not discussed, given that Buma has testified under oath that his intelligence reporting – which related to some of the same Russian and Ukrainian oligarchs with whom Abramoff engaged in money laundering, using AML Bitcoin to camouflage his activities – was suppressed by FBI management.[1] Only testimony from Buma at an evidentiary hearing will answer the question of what was discussed.

Similarly, the government asserts that Buma had "limited involvement in this case." Gov't Opp at 6  But in light of Buma's Congressional testimony, the fact that that defense counsel has been given only one 302 report authored by Buma does not mean there were not more, or that there would not have been more if he and others had not been told to suppress them. As detailed in Mr. Dent's Declaration, along with the basis for so stating, the defense expects that, if the Court holds an evidentiary hearing, Buma would testify that he spoke regularly with Mr. Andrade's case agents about the investigation into Abramoff and Mr. Andrade. Dent Decl. at ¶5. Notably, the government makes no representation in its opposition, let alone one under oath, about the state of Buma's involvement with Abramoff and information he has about Abramoff.

B.    The Government's Destruction of Exculpatory Evidence

Largely steering away from the specific evidence of suppression laid out in Mr. Andrade's Motion, the Opposition instead attempts to paint a picture that it "made enormous and exhaustive productions of discovery" and "proactively" remedied issues, Gv't Opp at 2, and that Mr. Andrade is asking the Court to "wade into complex discovery disputes that were resolved by Judge Beeler." Gov't Opp. at 1. The opposite is true. Much of what the government produced

---

[1] Statement of Johnathan C. Buma to the U.S. Senate Committee on the Judiciary (July 15, 2023), attached to Mr. Andrade's opening brief as Exhibit B. Buma explained that much of his work focused on billions of dollars of international money laundering being done at the behest of the Russian government. Statement of Johnathan C. Buma, ¶9. This money laundering, and Jack Abramoff's participation in it in ways that impacted Mr. Andrade's business and the allegations in the indictment, is an integral part of Mr. Andrade's defense – a defense that Judge Beeler, repeatedly and over the government's repeated objections, found to be material to the preparation of Mr. Andrade's defense. *See, e.g.*, Discovery Order, Dkt. #165 (Apr. 7, 2023).

was not based on its generosity; it was based on orders from Judge Beeler over its repeated objections, relating to at least fifteen different defense requests.[2] This Motion does not seek additional discovery or ask to relitigate any of discovery issues, but rather seeks an evidentiary hearing on the government's misconduct, some of which came to light during the discovery process, and some of which occurred wholly apart from discovery. The issues raised in Mr. Andrade's Motion – the specifics of which remain largely unanswered by the government – are addressed below.

*The mysterious disappearance of Erickson's phone.* As for the mysterious disappearance of Erickson's phone, the government deems "unsupported" Mr. Andrade's "belie[f] that another Erickson phone existed" (in addition to the one used by Maria Butina that was produced after one of the many successful defense motions to compel).[3] Gov't Opp. at 15:18. It instead insists that because it produced the phone used by Butina, it has produced everything. But the government never even tries to address its *own* statements, made first *in writing* in January, 2023, and confirmed orally in March, 2023 by a prosecutor assigned to this case, who told defense counsel

---

[2] Dent Decl. at 4. As an example of the government's effort to rewrite the discovery history, the Opposition claims that when defense counsel informed the prosecutors that the case agents had omitted relevant materials from the Cellebrite produced to Mr. Andrade, the government "produced the missing Levin-Abramoff WhatsApp messages." proactively remedied the situation." Gov't at 14:14-20. In fact, the government's conduct was the opposite of proactive. As set forth in more detail in Mr. Andrade's opening brief and supporting declaration, about three months after defense counsel explained the situation to the prosecutors and provided them with evidence that their Cellebrite of Abramoff's phone included messages omitted from Mr. Andrade's Cellebrite, defense counsel pointed out that the Cellebrite produced to Mr. Andrade also was missing messages between Abramoff and Ukrainian oligarch Gennadiy Bogolyubov (some of these messages, like some of the Levin messages, were important enough to the case agents that they had summarized them in a 302 report). Unable to determine what additional materials the case agents had omitted from the Cellebrite report produced to Mr. Andrade, the government determined that it would simply have to produce the entire phone. After twice promising defense counsel in March 2023 that it would produce the Abramoff phone, and after representing to the Court in a pleading that it need not order production of the Erickson, Butina, and Levin phones because it was going to produce the entire Abramoff phone to defense counsel, and after losing the motion to compel on April 7, 2023, the government did not produce Abramoff's phone. The prosecutor said he was not going to produce it after all. It was not until after Mr. Andrade filed yet another motion and won that the phone was produced. *See* Declaration of K. Dent in Support of Motion for Evidentiary Hearing at ¶¶ 17-18.

[3] The government produced a hard drive of Butina's devices after Judge Beeler ruled that "Mr. Andrade has established a connection to this case surrounding Mr. Abramoff's involvement with Ms. Butina and Messieurs Levin and Erickson, and limiting the production to references to Mr. Andrade and AML Bitcoin is too narrow. Mr. Andrade gives examples … about how a broader range of information is material. It is not just about Mr. Abramoff or Mr. Andrade and AML Bitcoin. It is about the larger context of the business model for cryptocurrency, whether Mr. Abramoff may have been working against Mr. Andrade, and how that affects Mr. Andrade's responsibility and scienter." Discovery Order, Dkt. #165 at 12:15-22.

that he was looking at an entry on the computer that indicated Erickson's phone was destroyed in "March 2022."[4] Motion at 8:19-11:17. By so doing, the government avoids the impossible task of reconciling the ever-shifting explanations it has offered for the disappearance of the phone that Erickson used (as opposed to the one he may have owned but Butina used).[5] It also avoids addressing in any way, let alone explaining, how it allowed the phone to be destroyed or when it was destroyed – a destruction that, as explained in Mr. Andrade's Opening Brief, likely occurred after Mr. Andrade had begun requesting Erickson information in discovery.

*The return of Abramoff's devices so he could destroy them.* The government makes no effort to explain its repeated refusal to coordinate its return to its cooperating witness Abramoff all of Abramoff's devices.[6] Its carefully worded justification for refusing to produce the Abramoff devices (which included three laptops, among other devices) – that the government had already "produced the material it *lawfully* seized," Gov't Opp. at 15:1 (emphasis added) -- is written in a way to hide the fact that it returned to Abramoff, and *allowed Abramoff to destroy, large portions of those devices that, as best the defense can determine, were never produced to Mr. Andrade.* Even assuming the correctness of the government's logic-defying claim that although it possessed those devices for more than 5 years, it did not do so "lawfully" for large portions of those devices,[7] that proposition cannot excuse its ignoring Mr. Andrade's numerous requests that it

---

[4] The Declaration in Support of Motion for an Evidentiary Hearing has a typographical error in ¶27, where it states that the government said the Erickson phone was destroyed in March 2020. The correct date, as indicated earlier in the declaration, is March 2022.

[5] See Declaration of Kerrie C. Dent in Support of Motion for Evidentiary Hearing, ¶¶25-29.

[6] All that Abramoff turned over in response to the defense subpoena was a single thumb drive containing a few pages, which Abramoff's lawyer said in a July 29, 2024 letter to defense counsel "was the only device in our client's possession upon receipt of the Subpoena." The government had produced in discovery Abramoff's iPhone 5, a Blue-Ray disk, an Oceana thumb drive, and a Seagate hard drive. Other devices the government returned Abramoff, and that Mr. Andrade should have had the opportunity to subpoena, included a Dell Inspiron Laptop (1B6), an ASUS UX31E Laptop, and Dell Latitude 7480 Laptop (1B8), and various hard drive.

[7] Far from claiming to have produced the portions of devices it claimed it did not lawfully possess, the government's position was that it could not access that material and therefore could not produce it. Gov't Opposition to Andrade's Third Motion to Compel, Dkt. #283 at 8:20-28(Feb. 15, 2024). The government justified this position based on language from *United States v. Balwani*, 18-cr-258, EJD (N.D.Cal. Apr. 8, 2022) and argued that although that it *did* possess entire devices, it only lawfully possessed the parts subject to its warrants. This is why Judge Beeler ordered the government to return the devices to Abramoff so the defense could subpoena them, and to coordinate the return to facilitate the subpoenas.

- 8 -

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY HEARING ON GOVERNMENT MISCONDUCT AND TO SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

coordinate the return of those devices to Abramoff so the defense could subpoena them and obtain the substantial portions that the government had not produced to the defense.[8] Abramoff will be the government's sole alleged co-conspirator to testify, and the one device of Abramoff's the defense received in full has yielded substantial exculpatory information, including information that goes far beyond the confines of the subjects covered by the government's search warrants.

### C.    The Government's Invasion of Mr. Andrade's Attorney-Client Privilege

*The seizure of privileged material, without taint procedures*.  The government proclaims that "there is no evidence in the record to support Andrade's claim that the government purposefully collected emails between Andrade and his attorneys," Gov't Opp. at 6, but that was never Mr. Andrade's claim.  Rather, his claim was that the government seized materials that contained privileged materials, and, in defiance of its own policies, apparently made no effort to wall off the prosecution team from those privileged materials.  By misreporting Mr. Andrade's claim, the government never explains why no taint procedures were employed.

What little the government does say on the subject of justifying its possession of privileged materials seized from Mr. Andrade is to complain that the defense did not identify those materials by Bates numbers.  Govt. Opp at 7:1-6. Not so. In the same email in which Ms. Dent provided Mr. Highsmith and Mr. Ward with a copy of her under seal declaration, she provided a detailed chart/index of every exhibit, a description of the exhibit, and the corresponding Bates number.  Dent Decl. at 5. Furthermore, Exhibits CC, DD, and EE, called out by the government in its opposition, have Bates numbers in the bottom right-hand corner of each page.

Next, the government attempts to dismiss its violation of the privilege as unimportant by

---

[8] In addition, Judge Beeler asked the government to return the devices to Mr. Abramoff or his lawyers precisely so that Mr. Andrade could subpoena them. Discovery Order, Dkt. #292 at 3:7-13 (Mar. 17, 2024) ("It cannot be that access to Rule 16 and *Brady* material — on devices controlled solely by the government — can evade discovery, merely because (1) Mr. Abramoff — implicated in the case in various roles — presumably has not requested return of his devices (assuming that is the situation) and (2) the government cannot lawfully access the information. Thus, at least as a first step, the government must return a copy of his devices to Mr. Abramoff. The defense can then subpoena information.").

writing that "patents are not in issue" and "the government is not contesting that Andrade held numerous patents," (P.7), but it does not even try to claim that the bulk of the privileged documents were about patents at all, and they were not. Rather, as explained in Ms. Dent's declaration, they go to the merits of the charges in the indictment. *See* Decl. of K. Dent in Support of Motion for Evidentiary Hearing at ¶30.

The government attempts to dismiss its using its cooperator DM to invade Mr. Andrade's privilege first by stating that "it *began* unprompted." Gov't Opp. at 7 (emphasis added). Even if true, this is beside the point because the FBI began directing DM's activities long before it sent him with topics for a discussion with Mr. Andrade and his counsel. The government's next attempt to pass off its conduct is to state that "Lawyer CP and her Firm DP did patent work for Andrade. They had no known role in the criminal investigation." Gov't Opp. at 8:6-8. This is not true. Not only was Lawyer CP the lead lawyer at the time for Mr. Andrade's criminal defense team,[9] but she and her colleagues had a telephone conference with case agent EQ on October 12, 2018 to talk about the investigation, including the seizure of materials from the search of Mr. Andrade's home – as well as privilege issues from the search, which the agents apparently ignored.[10] This conversation occurred the day before Agent KA promised cooperating witness DM that she would send him a list of topics for his meeting with Mr. Andrade, and occurred a few weeks before the meeting for which Agents KA and RW wired DM up so they could hear Mr. Andrade talk to the lawyer representing him in this investigation.

Especially in light of knowing that CP was Mr. Andrade's lawyer in this investigation, the government's attempt to pass this two hour recorded meeting off as merely as a "due diligence" exercise is completely meritless. The government makes no attempt to explain why Agent KA – a member of the FBI's counterintelligence division – was purportedly interested not in the criminal

---

[9] Her firm, DP, opened its matter "DOJ Inquiry into AML Bitcoin" on September 14, 2018, the day after the government searched Abramoff's home and Mr. Andrade's Las Vegas office. The firm billed hundreds of thousands of dollars to the matter from September to December 2018 alone.

[10] One of the 10/12/18 time entries states in part: Telephone conference with FBI Agent [EQ] regarding seizure of records in Las Vegas, the process for getting copies or getting the original hard drives after imaging and potential for privileged materials. Inquire as to agent's taint team and segregation of privileged communications. Draft summary of the conversation and circulate to team." Dent Decl. at 6 (citing USKISP0103_00956907).

- 10 -

investigation of Mr. Andrade. Gov't Opp. at 8:10-11. Rather, the government hopes that this Court will fall for the same ruse the government used to dupe Mr. Andrade when it suggests that the topics Special Agent KA sent its cooperating witness DM to address with Mr. Andrade when Mr. Andrade was meeting with his lawyer were merely to help Mata perform due diligence on whether to become CEO of the NAC Foundation, as if KA had a night job as a career counselor, rather than her day job as an FBI agent to gather evidence against Mr. Andrade. The circumstances strongly suggest that KA was engaged in her day job of gathering evidence against Mr. Andrade when she selected topics that happened to conform with what the government was at the time investigating and that later formed the essence of its charges against Mr. Andrade, rather than topics like DM's pay, role and support staff as CEO – the topics KA as career counselor would have listed. No declaration from KA was supplied to support the contrary theorizing in the Opposition, and the government did not even attempt to explain the reaction of Special Agent RW when what KA and DM had done sunk in. *See* Decl. of K. Dent at ¶40 (At the end of the evening on November 13, Agent RW asked: "Hmm. Was it really at the attorney's office? Really? What attorney?" He then ends the recording, after only 8 seconds.).

*The questioning of Mr. Andrade*. On two separate occasions, Gv't Opp. at 8, 21 n.6, the government purports to recite the facts of its questioning of Mr. Andrade while his home was being searched (and after his phone had been seized) in a way to justify questioning him after he said he wanted to call his lawyer. But on both occasions the government manages to skip over the pivotal facts that after Mr. Andrade told the agents he wanted to call his lawyer, the government gave him neither his lawyer's phone number, which he explained was on the seized phone and was needed to make the call, or his seized phone itself, which he also needed to make the call.[11]

---

[11] The government also states that "Andrade did not retain SM, and no ongoing attorney-client relationship ever existed." Gov't Opp. at 8:15-16. The government omits entirely the fact that in October 2018, and again in March 2020, SM and DM persuaded Mr. Andrade to hand over his confidential patent information by persuading him, and repeatedly assuring him, that SM was interested in being his patent lawyer and would treat the material as privileged. SM did so in 2018 by using an email address from Pillsbury, Winthrop, Shaw Pittman, one of Mr. Andrade's trusted law firms that had been handling patent work for him since 2016. He did so in 2020 by writing to Mr. Andrade: "[a]ll communications will be treated as privileged;" "Yes that is what I would like to do – be your counsel to get [the]

- 11 -

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY
HEARING ON GOVERNMENT MISCONDUCT AND TO
SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

### III. Argument

#### A. The Court Should Hold an Evidentiary Hearing

None of the cases the government cites remotely support its rejection of an evidentiary hearing on these facts, and instead suggest the contrary. *United States v. Voigt,* 89 F.3d 1050, 1057 (3d Cir. 1996), Gov't Opp. 11:12-15, for example, declined to remand for an evidentiary hearing on a claim that the government had interfered with the defendant's attorney client relationship, but it did so after declaring that the district court "should have conducted an evidentiary hearing" (and added that "conducting a hearing prior to trial would have been more prudent and the better practice"). The court determined that remand for a hearing was unnecessary only because it found that "the record developed at trial [where the trial court allowed the issues to be raised], taken together with Voigt's moving papers and the government's response [which included an affidavit from the agent] proved . . . an adequate basis" for the decision.

On the facts of this case, at a minimum, the Court should hold a hearing, and/or as appropriate thereafter allow the misconduct evidence to be presented at trial. An evidentiary hearing is required because Mr. Andrade has presented far more than "mere bald-faced allegations of misconduct, *United States v. Abbit,* 1999 WL 1074073 at *3 (D. Or. Oct. 29, 1999) (Gv't Opp. at 11:7-9) (citing *United States v. Sophie,* 900 F.2d 1064,1071, (7th Cir. 1990)), and has presented far more than "'reasonable suspicion' of prosecutorial misconduct." *Abbit*, 1999 WL 1074073 at *1 (citing *United States v. Soberon*, 929 F.2d 935, 941 (3d Cir, 1991

Most of the cases the government offers to the contrary are cases in which the defense did not present a colorable claim for relief, even if all the facts the defense alleged were true. *See, e.g., In United States v. Conte,* 2004 WL 2988567 (N.D. Cal. Dec. 28, 2004), (hearing denied because the defendant presented only argument and no evidence that any government agent was

---

monetization effort going;" "[p]lease provide any Black Gold Coin patents and patent related documents and I will treat them as attorney-client privileged documents, not to be shared with anyone outside my team unless and until authorized by yourself or your representative;" and "Go ahead and send whatever you feel comfortable with - it will remain confidential and privileged with me." *See* Decl. of Kerrie C. Dent in Support of Andrade's Motion for Evidentiary Hearing at 20, fn5.

- 12 -

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY HEARING ON GOVERNMENT MISCONDUCT AND TO SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

1  responsible for or endorsed the challenged actions); *Abbit*, 1999 WL 1074073 (defense motions
2  "are, essentially, that some of the government's informants are lying, or threatening witnesses or
3  committing other crimes," but there was an "absence of any evidence that the government has
4  acquiesced to, condoned or in any way encouraged the alleged misconduct"); *United States v.*
5  *Lazarevich*, 147 F.3d 1061, 1065 (9th Cir. 1998) (court determined, without describing the
6  defendant's argument, that the defendant did not meet his "burden of demonstrating a factual
7  basis for his motion to dismiss"); *United States v. Hungerford*, 2019 WL 1903212 (E.D. La. Apr.
8  29, 2019) (hearing denied because there was "no colorable claim for relief" in the moving papers
9  seeking dismissal based on interference with the attorney-client relationship where, among other
10 things, the government demonstrated "sensitivity to potential ethical problems," and "established
11 a taint team to review privileged documents," and the defendants "have not identified any
12 privileged information in the government's possession that the government extracted from
13 defendants' former attorneys or that resulted from a forced disclosure."); *United States v. Sophie*,
14 900 F.2d 1064, 1071 (7th Cir. 1990) (denying hearing based on alleged promise of a deal by
15 prosecutor when the defendant submitted evidence showing the prosecutor did not offer a deal but
16 instead said only that "I'll see what we can do," and "I cannot promise anything to you").

17 None of these cases help the government here because the government does not even try
18 to dispute that intentional suppression by the government of adverse information about Abramoff
19 is "a colorable claim for relief." And as addressed below, none of its arguments dispute that
20 willful invasion of the attorney-client privilege through seizure of privileged documents, or its
21 launching of DM into the defense, or its other conduct, constitute colorable claims.

22     B.     The Government's Misconduct Violated Mr. Andrade's Due Process Rights

23 The government proclaims that Mr. Andrade's claims "do not amount to *Brady* violations,
24 due process violations, or misconduct, Gv't Opp. at 12, but this proclamation appears to be based
25 on its incorrect recital of the facts, as it does not – nor could it – contest that systematic
26 suppression of exculpatory evidence, or deliberate intrusion into privileged information,
27 constitutes outrageous conduct. *See United States v. Levy,* 577 F.2d 200 (3d Cir. 1978) (finding

outrageous government conduct where the government deliberately eavesdropped on attorney-client consultations); *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) (dismissal of indictment based on late production of *Brady* material). It is difficult to conceive of a more deliberate intrusion than one in which a case agent wires up a cooperating witness, provides him with a list of topics (all of which relate directly to the matters being investigated), and then listens to the meetings with the cooperating witness, the defendant, and the defendant's lawyer, who represents him in connection with the ongoing criminal investigation. The government's general disclaimer of bad faith about the destruction of exculpatory evidence rings hollow in light of its failure to offer any explanation, let alone a declaration, for why it repeatedly ignored Mr. Andrade's efforts to get it to coordinate the return of Abramoff's devices so he would not destroy them, or why it laughed off Mr. Andrade's efforts to get the information one of the AUSAs described about the destruction of Erickson's phone in March 2022, likely after Mr. Andrade was requesting information about Erickson.

   Rather, the government tries to compare Mr. Andrade's showing to that of the defendant in *United States v. Conte,* 2004 WL 2988567 (N.D. Cal. Dec. 28, 2004), where the court denied a hearing. But in *Conte,* the defendant "presented only argument and no evidence" on the issue of the government's involvement in wrongdoing. This case is nothing like *Conte*: Mr. Andrade has offered Congressional testimony, plus reliable information about what two witnesses would say if the defense could subpoena them. In addition, Mr. Andrade has offered corroboration from the government's conduct in this case – the strength of which is underscored by the government's efforts in the Opposition, detailed above, to dodge rather than answer that evidence.

   Also of no help to the government (and instead helpful to the defense) is *United States v. White,* 879 F.2d 1509, 1514 (7th Cir. 1989) (14). After White was convicted, the Seventh Circuit, remanded for an evidentiary hearing the issue of whether the government had violated his attorney-client privilege by using for leads information the defendant had given to his attorney, regardless of the fact that the attorney had not testified at trial. As a result, *White* also refutes the Opposition's claim that not using DM as a witness and/or offering the evidence in the

- 14 -

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY HEARING ON GOVERNMENT MISCONDUCT AND TO SEEK SANCTIONS
                                          CASE NO. 3:20-CR-00249-RS

government's case in chief is a sufficient remedy. *See also United States v. Castor*, 937 F.2d 293, 297 (7th Cir. 1991) (noting potential claim if "the government acquired privileged information that enabled it to better investigate its case").[12] The point for which the government cites *White* related only to a Sixth Amendment argument rather than a due process argument, and in any event is inapplicable to this case because it was based on the fact that the attorney in *White* was not representing the defendant in the criminal investigation. *Id.* at 1513.

<u>*The government's prejudice argument is meritless*</u>. Equally wrong is the government's other answer, relating to privilege issues, that Mr. Andrade cannot show prejudice. This is no answer when the government has invaded attorney-client privileged advice and communications about the facts under investigation. As Ninth Circuit acknowledged about the practical problems facing a criminal defendant trying to show prejudice when the prosecution has obtained information about the defendant's trial strategy:

> The prosecution makes a host of discretionary and judgmental decisions in preparing its case. It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions.

*United States v. Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003).

The *Danielson* Court goes on to explain that, while it "is true that once the government has improperly interfered with the attorney-client relationship and thereby obtained privileged trial strategy information, *the prosecutor has the "heavy burden" of showing non-use. But the prosecution team can avoid this burden by not improperly intruding into the attorney-client relationship in the first place…*" *Danielson*, 325 F.3d 1054 (9th Cir. 2003) (emphasis added). *See United States v. Irwin*, 612 F.2d 1182, 1187 (1980) (substantial prejudice results from actions "designed to give the prosecution an unfair advantage at trial"); *United States v. Neill*, 952 F.Supp. 834, 842 (D.D.C. 1997) (substantial factual disclosures obtained through invasion of the privilege enabling the government to better investigate its case can be a

---

[12] *United States v. Haynes*, 216 F.3d 789 (9th Cir. 2000) does not advance the government's position because there was no derivative taint issue raised and the court determined on the facts of that case that any prejudice could be prevented by suppressing the evidence.

constitutional violation). As the court wrote in *United States v. Babichenko*, 2020 WL 4462497, *3 (D. Idaho Aug. 3, 2020), "the Ninth Circuit framework requires the Defendant to show the Government's intrusion into the privileged information was intentional, not that it caused irreparable harm."

*The government has not remedied taint.* Defying longstanding and uniform law on taint, the government proceeds as if its invasions of Mr. Andrade's attorney-client privilege are magically erased by a representation that the government's current prosecutors and case agent have not seen or heard the evidence obtained from those violations. Gov't Opp. at 16:23-24; 20:9-10. It accompanies these representations with nothing to disprove or even cast doubt on the likelihood that their predecessors did see and hear that evidence and passed the ill-gotten information (and/or the fruits of that information) along to the current trial team when the case was transitioned to them. *See, e.g., United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997) (government "bears the burden to rebut the presumption that tainted material was provided to the prosecution team"); *United States v. Babichenko,* 20 WL 4462947 (D. Idaho 2020) (government must show by a preponderance of the evidence that all of its trial strategy is derived from legitimate independent sources).

*Mr. Andrade reasonably believed he had a common interest with DM.* The government makes no effort to explain why Mr. Andrade, who had recently experienced the FBI searching his office in Las Vegas, and who knew that Abramoff's home had also been searched, would have a common interest in that investigation with DM, whom the government alleges to be his co-conspirator. *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N. D. Cal. 2003) (the common interest privilege, or joint defense privilege, applies where communications are made by separate parties with a common interest and does not require a "complete unity of interests"). Instead, the government cites *United States v. Lopez*, No. 2:23-CR-00055-CDS-DJA, 2025 WL 275523 at *5 (D.Nev. Jan. 22, 2025), suggests that there was a "due diligence phase" of a business deal in Lopez and on that basis compares it to this case, and then asserts that the government did not invade the attorney-client privilege. Gv't Opp. at 19. Once again, the government misses the

- 16 -

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY HEARING ON GOVERNMENT MISCONDUCT AND TO SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

elephant in the room: unlike Mr. Andrade, Lopez was not talking to someone who participated in the conduct for which Lopez was being investigated; rather, he was trying to sell his business to a third party and hired a consulting firm to help him do so by performing due diligence. The government sought those records. None of the parties to the communications (other than Lopez) were implicated in the matter for which Lopez was being investigated. As the court reasoned, under these circumstances, their interest in doing a deal "is simply not the sort of joint defense or strategy contemplated by the doctrine." (at *5).

*The government's excuse for suppressing the Butina evidence is meritless*. The government attempts to dismiss its suppression of the Butina evidence based on the fact that it produced a recording (among hundreds of others in 5TB of data) in which agents could be heard mentioning the existence of the Butina documents (but without discussing their content). This misstates the government's obligations as defined by the Supreme Court: *See Banks v. Dretke*, 540 U.S. 668, 695 (2004), *superseded by statute on other grounds* ("our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed."). In any event, the unsuccessful effort to bury the Butina documents was offered as one circumstance corroborating efforts at suppression, and nothing in the Opposition undermines that corroboration.[13]

*The government does not attempt to justify not allowing Mr. Andrade to call his counsel or providing the means by which he could do so*. Rather than defend the conduct of one of the

---

[13] The government recites that it produced the documents after a defense request, Gv't Opp. at 3, but omits that it refused until the defense threatened a motion to compel, and the Opposition does not even attempt to justify this initial refusal. See Declaration of K. Dent at ¶10. Especially in this context, the government's claim that it should be absolved because it produced a lengthy recording (among hundreds of others) containing an offhand comment referencing the documents (but not their exculpatory quality) sounds like arguments from defendants that the government typically dismisses with the assertion that people engaged in suppression get caught when offhand references slip through. Worse still is the government's claim that the case agent reviewed the Butina case file and drafted a report calling out Erickson's notes and the AML Bitcoin marketing materials, Gv't Opp. at 13-14. Agent EQ's 302 summarizing the materials seized during search of Butina's residence – prepared four and a half years after they were seized, and only after the defense requested them – identifies none of the exculpatory material and instead describes the Butina Documents as "digitally scanned copies of AML Bitcoin marketing materials, and handwritten notes which appear to be authored by Paul Erickson, taken from a meeting with Jack Abramoff on June 3, 2018." Exh. F (FBI-MAIN-0003830).

case agents in a custodial-adjacent interrogation, the government leaves out the key facts that Mr. Andrade asked to call his lawyer, and asked for his phone (which the government had seized), which not only had his lawyer's number but also the only technology he could use to contact the lawyer. The other case agent recognized the impropriety (but only after more than 35 minutes) and shut down the interview. *See* Dent Decl. in Support of Motion for Evidentiary Hearing at ¶43. (At 38:13 in the recording, Agent RW permitted Mr. Andrade to call his lawyer, and Agent EQ finally ended the recording an hour into the conversation, stating: "Marcus Andrade has an attorney so we won't be asking him any more questions. So I'm going to end this recording." 1:05:57).

### C. Even If No Due Process Violation Had Occurred, the Court Should Exercise Its Supervisory Powers to Dismiss the Indictment

The government argues that there is "no basis whatsoever" for the Court to exercise its supervisory powers to dismiss the indictment because its conduct was not "flagrant" and "prejudicial." Gov't Opp. at 22. This is based primarily on its dodging of the compelling facts identified by Mr. Andrade, which at least justify a hearing, as the government never disputes that systematic suppression of exculpatory evidence, for example, is "flagrant" and "prejudicial." Of less import is the government's back-patting about its discovery performance, Gv't Opp. at 23, which avoids acknowledging that Judge Beeler had to compel that performance on fifteen different issues.

In the end, what matters to a determination of whether the government's misconduct was flagrant and prejudicial are the facts the government omits from its discussion, such as: that the government told Mr. Andrade's counsel it destroyed Erickson's phone in March 2022 and then changed its story multiple times about how this happened; and that the government was ordered by Judge Beeler to return Abramoff's devices to his lawyers so that Mr. Andrade could subpoena them,[14] but instead those devices were destroyed and Mr. Andrade received nothing from them

---

[14] Discovery Order, Dkt. #292 at 3:12-13 ("[T]he government must return a copy of his devices to Mr. Abramoff. The defense can then subpoena information.") (Mar. 17, 2024).

- 18 -

but two copies of a speech former Congressman Rohrabacher gave, endorsing AML Bitcoin. And, among other things, if the Court holds an evidentiary hearing on the government's misconduct, then what will matter is the evidence provided about the government's systematic suppression of evidence relating to Jack Abramoff.

### D. Alternatively, At a Minimum, The Court Should Order Other Relief

For the lesser remedy of a remedial jury instruction, bad faith is not the appropriate legal standard. *Sivilla*, 714 F.3d at 1173. Instead, when evidence is lost or destroyed, the "principal concern is to provide the accused an opportunity to produce and examine all relevant evidence, to insure a fair trial," *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (en banc) (Kennedy, J., concurring) (proposing balancing "the quality of the Government's conduct" against "the degree of prejudice to the accused"). In an attempt to refute the notion that the Court should provide the jury with an adverse inference instruction, the government again falls back on its mantra that it has produced a "massive amount of material." Gov't Opp at 24:9. It therefore does not address the fact that whether a jury instruction is warranted is answered not by looking at what has been produced – or how many defense motions it took to pry that evidence from the government's hands -- but by what has not been put into evidence (because it has been destroyed or withheld). In addition, absent dismissal, the Court should exclude the statement made by Mr. Andrade to the FBI while his home was being searched.

### E. The Court Should Not Deny Any of Mr. Andrade's Motions Based on the Government's Claims that They Were "Filed Late"

With a brief citation to *United States v. Lazarevich,* 147 F.3d 1061 (9th Cir. 1991), the government asks the court to ignore all the significant constitutional issues raised in this motion. *Lazarevich* is of no help to the government because continuances in this case have not been the result of defense delays but rather have been the result of the belated and grudging production of discovery by the government, which required repeated motions before Judge Beeler and then motions to enforce Judge Beeler's orders. There can be no dispute that this case is extraordinarily and likely uniquely complex for a CJA assignment, and that Mr. Andrade's lawyers have worked

- 19 -

ANDRADE'S REPLY ISO MOTION FOR EVIDENTIARY HEARING ON GOVERNMENT MISCONDUCT AND TO SEEK SANCTIONS

CASE NO. 3:20-CR-00249-RS

diligently – and quite a bit more -- to zealously represent him.

Even though this motion is primarily not a motion in limine, and no motions in limine can ever address all objections that could be raised at trial, this motion would have been filed well in advance of the motion in limine date except for health issues of one of Mr. Andrade's senior lawyers. Dent Decl. at 7.  In any event, and although Mr. Andrade has not requested a continuance on this ground, if a continuance of a day or two is required to hear this motion, Mr. Andrade has already noted other reasons why this case is not ready for trial – again due to late discovery by the government.  See ECF 511, *passim* and n4. Significant constitutional issues will not go away should not be cast aside at this point based on one inapplicable citation from the government.  *See United States v. Rivera-Guerrero*, 426 F.3d 1130, 1138-39 (9th Cir. 2005).

**IV.    Conclusion**

For all of the foregoing reasons, and those set forth in his opening brief, Mr. Andrade respectfully requests that the Court grant his request for an evidentiary hearing on the government's misconduct.  If the Court does not hold a hearing, then Mr. Andrade requests that it dismiss the indictment based on the government's violation of Mr. Andrade's due process rights or, alternatively, provide the jury with an adverse inference instruction.

Respectfully Submitted,

Dated: February 3, 2025

**KING & SPALDING LLP**

By:  */s/ Michael J. Shepard*
MICHAEL J. SHEPARD
KERRIE C. DENT (Admitted *pro hac vice*)
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE