ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7230
    christiaan.highsmith@usdoj.gov
    david.ward@usdoj.gov
    matthew.chou2@usdojg.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | CASE NO. 20-CR-00249 RS <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE ALL OF DEFENDANT'S FINANCIAL DATA OR DELAY THE TRIAL** <br><br> Trial: Feb. 10, 2025 \| 9:00 a.m. <br> Court: Courtroom 3 \| 17th Floor <br> Judge: Hon. Richard Seeborg |

**CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 1

    A. Andrade Overstates the Volume of Documents and Likely Already Received Them from Mr. Ruzicka .......................................................................................... 1

    B. The Content of Ruzicka's Digital Documents and Physical Documents ............. 2

    C. Agent Who Maintained the IRS Case File and Ruzicka Documents Passed Away ....................................................................................................................... 3

    D. The USAO Thought It Had Produced the Ruzicka Documents in April 2024 ... 4

    E. The Government Audited Its Discovery Pretrial and Found the Ruzicka Documents ............................................................................................................. 4

III. ARGUMENT ..................................................................................................................... 5

    A. The Relatively Delayed Production Was Inadvertent and in Good Faith ........... 5

    B. The Ruzicka Documents Are Neither Exculpatory nor Material to the Defense ................. 6

    C. The Timing of the Ruzicka Production Does Not Prejudice Andrade ............... 7

        1. Andrade will have over a month to analyze his own financial documents ................................................................................................ 7

        2. The government will not introduce the documents in its case-in-chief .................. 8

        3. Courts permit disclosures that are even more delayed and disruptive .................... 8

    D. The Court Should Not Reconsider Admitting AtenCoin or Financial Evidence ............... 10

    E. The Defense Has Not Met Its Reciprocal Discovery Obligations ..................... 10

IV. CONCLUSION ............................................................................................................... 11

## I. INTRODUCTION

Defendant Andrade recently filed a motion and amended motion to exclude "any use of any of Mr. Andrade's financial data by the government, (now through 2019, in light of the index produced on January 30, 2025), or, in the alternative, a continuance" of 30 to 45 days. Dkt. 523 at 4 (amended motion); Dkt. 511 (original motion). Andrade claims the government has violated *Brady* by untimely producing accounting records stored and provided by defendant Andrade's former accountant, Karl Ruzicka.

The IRS obtained the records in February 2020; the IRS case agent who obtained and tracked them passed away in January 2023 after a battle with cancer; and the government produced the records recently after a pretrial audit of its discovery logs. This delay was not intentional. Nor has it prejudiced Andrade. He has received it at least weeks before his case-in-chief. And Andrade has likely obtained substantially the same records from Ruzicka, who has made himself available to the defense. The Court should deny Andrade's motion.

## II. BACKGROUND

### A. Andrade Overstates the Volume of Documents and Likely Already Received Them from Mr. Ruzicka

Before describing the Ruzicka documents and why they were belatedly produced, the government first seeks to clarify two threshold facts. First, the defense has overestimated the size of the production by several-fold by double- or triple-counting files the government provided in alternative formats for the defense's benefit. Specifically, the defense had asserted that the government produced over 9,000 documents. *See* Dkt. 511-1 ¶ 2. But this count includes several different file formats for the same unique files, provided at the defense's request, to aid the defense's review of the files on a discovery platform. To start, each unique digital file was produced as a *native*. Next, each page of every native was also produced as an *image* or placeholder. Furthermore, *extracted text* was created for each file based on optical character recognition (OCR). Lastly, the government created six "*load files*" that allow the defense to load the production into an e-discovery platform like Relativity. Thus, in total, there are only about 1,497 unique files of digital Ruzicka content, not over 9,000.

Second, it is likely that the defense has independently and previously received these files from Mr. Ruzicka. According to the defense, Ruzicka has provided the defense with about 1,507 files, and has stated that his production is "most likely the same information he had given to the government in 2020, as he just copied the contents of his work folders for Mr. Andrade electronically." Dkt. 511 at 3 & n.3. The defense's estimate of 1,507 files is close to the government's count of 1,497. And Mr. Ruzicka's representation reflects the government's understanding that Mr. Ruzicka had given the government his electronic working folders pertaining to Mr. Andrade. If this is true, as it appears to be, then essentially the only new files at issue are 273 pages of hard-copy Ruzicka documents that the government found and produced yesterday.

### B. The Content of Ruzicka's Digital Documents and Physical Documents

The records at issue are accounting records stored and provided by defendant Andrade's former accountant, Karl Ruzicka. Mr. Ruzicka worked on and off for Andrade, as an outside accountant, from about 2014 through 2019. In February 2020, Ruzicka spoke voluntarily with IRS-CI agents and produced the records in response to a subpoena.

The accounting records comprise, in summary, what appears to be Ruzicka's working file pertaining to Andrade. And the records span only parts of 2014 through 2019, consistent with Ruzicka's statements that he worked with Andrade only intermittently. The documents generally consist of copies of bank statements; financial statements such as balance sheets and profit-and-loss (P&L) statements; schedules showing numbers of shares sold and checks paid; emails to/from Marcus Andrade and Karl Ruzicka, copies of AtenCoin purchase agreements; and electronic notes with accounting questions, presumably written by Karl Ruzicka to Marcus Andrade.

The government has produced much of the content within the Ruzicka documents elsewhere. As the defense's proffered summary witness Kathy Johnson candidly concedes, her preliminary review has found that about one third of documents are duplicative of prior productions. *See* Dkt. 511-1 ¶¶ 2–3 (defense counsel's declaration). The government's review suggests that even more may be duplicative. For example, Ruzicka's documents contain bank records corresponding to at least seven bank accounts. The government had independently subpoenaed those banks and produced their records long ago.[1] And

---

[1] On the government's expedited review, the following are bank accounts cited in Ruzicka

the financial statements, such as the P&Ls, at least partially rely on bank records. To take another example, the Ruzicka documents contain AtenCoin Purchase Agreements from 2016. Most those purchase agreements were previously produced by the defendant himself in response to a grand jury subpoena, and found in the Bates range ANDRADE_DOJ00000_00006907–00007092.

Ruzicka also provided 273 pages of physical documents. These largely comprise printed emails to/from Marcus Andrade and Karl Ruzicka requesting payment of expenses; some invoices attached to the printed emails; some carbon copies of the cancelled checks; UPS shipping receipts; and check register for the aforementioned Wells Fargo bank account ending in -9155. Many of these physical documents, like the digital documents, had been produced previously. Emails to/from Andrade, for example, were seized from Andrade pursuant to a search warrant (and subpoenaed from him) and thereafter produced. *Compare, e.g.*, FBI-PHY3-0155077 (Sept. 24, 2018 email from Andrade instructing Ruzicka: "Please send me $10K to my personal account. Please write it down as payroll."), *with* Scanned Ruzicka Binder at 21 (same email).

The next two sections explain why the government inadvertently did not produce Ruzicka's digital records until January 17 and his 273 pages of physical records until yesterday, February 3.

**C.     Agent Who Maintained the IRS Case File and Ruzicka Documents Passed Away**

The government did not intentionally withhold Ruzicka's records. When IRS-CI obtained them, the IRS case agent at the time was Special Agent BW. Agent BW maintained the case file. Tragically, Agent BW fell ill shortly after indictment and passed away before trial preparation. Specifically, in about December 2020, Agent BW stated to colleagues he felt ill. In January 2021, Agent BW was diagnosed with cancer. Between August 2021 and January 2022, Agent BW entered temporary restricted duty (essentially paid leave) for cancer treatment. By June 2022, his cancer had returned. And by August 2022, Agent BW permanently retired. An exceptional public servant who tried to spend many of his last months in service, he passed away in January 2023.

---

documents and corresponding bank records that were previously produced: Chase -9891 (IRS-GJ 20138–20345); Chase -9113 (IRS-GJ 19436–19519); Citibank -5554 (IRS-GJ 24203–24498); Capital One -1839 (IRS-GJ 16450–17011); Wells Fargo -6362 (IRS-GJ 54777–54792, for Dec 2017–March 2018); Chase -7620 (IRS-GJ 18775–19423); Wells Fargo -9155 (IRS-GJ 55650–55936).

USA OPP'N TO DEF. MOT. TO EXCLUDE ALL FINANCIALS OR DELAY TRIAL
20-CR-00249 RS                                           3

### D. The USAO Thought It Had Produced the Ruzicka Documents in April 2024

Still, in mid-February 2024, the new IRS-CI case agent who had replaced Agent BW provided to the USAO what he understood to be Agent BW's casefile. This included all the Ruzicka records at issue *except* for the physical records discovered yesterday on February 3, 2025.

The government marked the Ruzicka records and other records in the IRS casefile for production. And indeed, on April 29, 2024, the USAO produced IRS-DOCS-00002925 through IRS-DOCS-00033656: what the USAO thought was all the records marked for production. This production contained, for example, the overt recording of Mr. Ruzicka's February 2020 interview with IRS. (And nearly four years before, in July 2020, the government had produced most of the bank records that form the basis for FBI FOA Theresa Chiu's financial analysis.) But unwittingly, the Ruzicka documents—one folder in the casefile—were neither Bates-stamped nor produced at that time. From what the government has been able to gather so far, it appears that unusual file extensions in the Ruzicka documents triggered a technical problem that prevented their processing on the government's discovery platform. This error went unnoticed until the pretrial discovery sweep/audit described in the next section.

### E. The Government Audited Its Discovery Pretrial and Found the Ruzicka Documents

In late August 2024, the IRS-CI agent who had accompanied Agent BW on the interview of Ruzicka rejoined the Andrade case and became IRS's assigned case agent. To prepare for trial, the government audited its discovery logs to double-check that all colorably discoverable records had in fact been produced. This audit included a careful manual comparison of over 1,000 filenames in the discovery index and Agent BW's records. The government's discovery audit found that the digital Ruzicka documents had not been Bates stamped or produced even though the USAO had marked them for production.

Accordingly, the government produced the digital Ruzicka documents to the defense on January 17, 2025. Without meeting and conferring or otherwise requesting clarification, the defense moved on January 29, 2025 to exclude AtenCoin financial data from 2014 to 2017 or, in the alternative, continue the trial (Dkt. 511). In response to the motion's complaint that the government had not provided a discovery index, the government provided the defense a discovery index the next day.

USA OPP'N TO DEF. MOT. TO EXCLUDE ALL FINANCIALS OR DELAY TRIAL
20-CR-00249 RS                                          4

After receiving their requested discovery index, the defense filed an amended motion on February 2, 2025 (Dkt. 523). The defense now accuses the government of violating Rule 16 and *Brady*, and asks the Court to either (A) exclude "any use of any of Mr. Andrade's financial data by the government, (now through 2019)"; or (B) continue the trial by 30 to 45 days.

The amended motion also stated that, according apparently to the defense's conversations with Ruzicka, Ruzicka had also provided IRS with *physical* records in February 2020. In response, the government searched Agent BW's physical records and found a one-inch-thick binder containing 273 pages of documents from Ruzicka. The government notified the defense immediately of this discovery; made the binder available for the defense's inspection in San Francisco; made digital copies of the binder's contents; and produced them later the same day.

The government did not and does not plan to introduce any of the belatedly disclosed Ruzicka documents at trial. If Andrade wishes to introduce the documents in case-in-chief through Karl Ruzicka or proffered summary witness Kathy Johnson, the government does not object.

Trial is currently set to start on February 10, 2025. The government estimates its case in chief will extend through about February 27, 2025. Thus, by the time Ms. Johnson testifies in the defense's case in chief, she will have had over a month to review the digital Ruzicka documents and several weeks to have reviewed the scanned hard-copy documents.

### III. ARGUMENT

Below, the government explains (A) how its delay in producing the Ruzicka documents was inadvertent and in good faith; (B) how the documents are neither exculpatory nor material to the defense; (C) how the timing of the production does not prejudice Andrade; (D) why the Court should not reconsider admitting financial evidence; and (E) why principles of reciprocity urge that the Court should pardon the government's relative delay.

#### A. The Relatively Delayed Production Was Inadvertent and in Good Faith

The government should have produced the Ruzicka documents sooner and regrets its oversight. As soon as the government trial team learned of the Ruzicka documents, the government sought to produce them immediately.

As detailed in the Background above, the government's delay was inadvertent. And unusual

circumstances, not negligence, contributed to the delay. To start, Agent BW's long battle with cancer shortly after indictment—followed by his untimely passing—made it unusually difficult to comprehensively track and transfer his case file. He had led the interview of Ruzicka and managed IRS's case file. Even so, by April 2024, the USAO received the digital Ruzicka documents and marked them for production. But apparent technical issues meant that the Ruzicka documents were never loaded into the USAO's discovery platform.

This went unnoticed until another pretrial discovery audit in December 2024. By this time, the agent who had accompanied Agent BW to the Ruzicka interview had been assigned to the Andrade case. By manually comparing over 1,000 files in the USAO's discovery index with Agent BW's archived records, she found that the Ruzicka digital documents had apparently not been produced. The government thus produced the digital documents (after encountering technical issues triggered by rare file extensions) on January 17, 2025. When the defense protested the lack of a discovery index, the government provided one within hours. And after the defense stated in its February 2, 2025 amended motion that Ruzicka had provided physical documents too (*see* Dkt. 523 at 2), the government immediately searched the archive of Agent BW's physical records and found the limited set of hard copy documents: 273 pages of content, much of which the government has previously produced elsewhere. The government immediately notified defense counsel of this finding, made the binder available for inspection in San Francisco, and produced a scan of the binder's contents the same day.

In sum, although the government should have produced the Ruzicka documents sooner, its delay was inadvertent and spurred by atypical and tragic circumstances. And the government tried in good faith to produce the Ruzicka documents last year.

### B. The Ruzicka Documents Are Neither Exculpatory nor Material to the Defense

Andrade's amended motion makes the alarming accusation that the government violated *Brady* and Rule 16 by disclosing the digital Ruzicka documents on January 17. But as a threshold matter, the content of the documents are neither exculpatory nor material to the defense, regardless of the timing of their disclosure.

As a general matter, "[t]he requirement of materiality when seeking discovery under Rule 16(b) signifies that the pre-trial disclosure of the evidence in question must enable the accused to *substantially*

*alter the quantum of proof in his favor.*" *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976) (emphasis added); *accord, e.g.*, *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (collecting cases). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)

Andrade argues that the Ruzicka documents are central to Kathy Johnson's defense testimony, because they "can rebut the government's claims that Mr. Andrade was a pump-and-dump artist without a legitimate business." Dkt. 523 at 4. But Andrade mischaracterizes the government's claim. The existence of his business and the transactions he made are not in dispute. The government does not claim that Andrade's business did not exist. Nor does the government claim that any transactions tracked by Karl Ruzicka did not happen. Indeed, the government has no reason to dispute the veracity of any records that Ruzicka, a licensed accountant, produced in response to a grand jury subpoena. If the defense wishes to call Ruzicka or Ms. Johnson to analyze how Ruzicka helped pay business expenses for Andrade and tracked some AtenCoin/AML Bitcoin distributions, the government can hardly imagine objecting.

At bottom, the government's case focuses on Andrade's misrepresentations to investors to induce them to buy AML Bitcoin tokens. Based on these misrepresentations, Andrade took funds from investors in exchange for (worthless) cryptocurrency tokens. And he used those investor funds not only to operate his business (*e.g.*, hiring employees, buying advertising, and paying sales commissions), but also to enrich himself with homes, a truck, and more.

Ruzicka helped track these business expenses and cryptocurrency sales which, again, the government does not dispute. Thus, the defense has failed to show that the Ruzicka documents are material, let alone exculpatory.

**C.    The Timing of the Ruzicka Production Does Not Prejudice Andrade**

**1.    Andrade will have over a month to analyze his own financial documents**

The government produced the digital Ruzicka documents on January 17, 2025 and the physical Ruzicka documents (273 scanned pages) on February 3. Still, given that the government's case-in-chief will extend through about February 27, that means that Andrade (and his summary witness Kathy

Johnson) will have weeks to analyze the documents for his case-in-chief. What's more, to the extent the defense's representations about an unusually long defense case hold true, Ms. Johnson could testify near the end of the defense case (as most summary witnesses do). This timing would give her yet more time to incorporate the Ruzicka documents, to the extent they are even material, into her analysis.

Further easing the potential burden are the facts that (1) Ruzicka has made himself available to the defense for pretrial conversations and potentially for trial testimony too; and (2) the documents at issue are those that Ruzicka and Andrade himself would be familiar with. This is not a situation where the government has produced novel records that the defendant must start from square one to comprehend; these are Andrade's own records that he likely already had access to or already obtained.

### 2.    The government will not introduce the documents in its case-in-chief

This is also not a case where the government seeks to introduce belatedly disclosed evidence against the defendant. As the government has previously represented, the government will not introduce the Ruzicka documents in its case-in-chief. Nor did the government's financial expert, FBI Forensic Accountant Theresa Chiu, use the documents to form the bases or reasons for her opinions. Rather, as the government disclosed to the defense weeks ago, the government's financial analysis rests on bank records previously produced records identified by Bates stamp. Indeed, many of these same bank statements were found in Ruzicka's documents too—underscoring that the financial analysis here should involve relatively undisputed transactions. Again, this is not a case against a fictitious business.

### 3.    Courts permit disclosures that are even more delayed and disruptive

Precedent confirms that Andrade is not unduly prejudiced here. Courts have permitted the government to produce discovery that is yet more delayed, voluminous, and disruptive. In *United States v. Herrera*, 51 F.4th 1226 (10th Cir. 2022), for example, the government produced a slew of evidence right before, *during*, and *after* trial, namely:

> 1. About two months before trial, the government disclosed over 60,000 audio recordings, totaling more than 15,000 hours.
>
> 2. About a month before trial, the government disclosed about 10,000 pages of new discovery and 6 more phone recordings.
>
> 3. Roughly 2 weeks before trial, the government disclosed more than 6,000 pages of discovery.
>
> 4. During voir dire, the government disclosed about 3,500 more pages.

> 5. After presenting its case-in-chief, the government disclosed almost 1,000 pages of [a cooperating co-defendant's] personal documents and almost 500 pages of FBI field notes from interviews of government witnesses.
>
> 6. About 3 months after the trial, the government disclosed over 50 audio recordings of calls from [that same cooperating co-defendant, Mario Rodriguez].

*Id.* at 1243. The Tenth Circuit flatly characterized these disclosures as "late." *Id.* And in this multi-defendant case, all appealing defendants argued that the evidence was favorable to them. One appealing defendant argued, much like Andrade does here, that the testifying *cooperator* was actually the "ringleader" of the conspiracy. *Id.* at 1242. Despite all these relatively belated disclosures, the Tenth Circuit held that "[t]he government's delay in producing information did not create a denial of due process." *Id.* at 1289.

The court of appeals reasoned, among other things, that "[f]or materiality, the evidence cannot just be 'cumulative,' or 'additional impeachment evidence[.]' To the contrary, the statements must 'significantly enhanc[e] the quality of the impeachment evidence.'" *Id.* at 1245 (citations omitted) (quoting four precedents). So too here. Indeed, the Tenth Circuit's case was a much harder case than Andrade's.

Likewise, the Ninth Circuit has confirmed there is a high bar for prejudice from late government disclosures. In *United States v. Alahmedalabdaloklah*, for instance, the government's case-in-chief relied on the overseas deposition testimony of an Iraqi insurgent. *See* 94 F.4th 782, 814–16 (9th Cir. 2024), *cert. denied*, No. 24-125, 2024 WL 5011718 (U.S. Dec. 9, 2024). "[T]he week before trial began"—and *after* the defense had already exhausted its opportunity to cross-examine the cooperating insurgent at the deposition—the government untimely moved to withhold discoverable information about this key cooperator under the Classified Information Procedures Act (CIPA). *Id.* at 810. The trial court largely denied the motion, resulting in an eve-of-trial, post-deposition disclosure of *Brady* and *Giglio* information to the defense. And on appeal, the government conceded that "the Government had a duty to produce [what was ordered produced] pursuant to *Brady* and *Giglio*." *Id.* at 828.

Even so, the Ninth Circuit held that the defendant had *not* suffered prejudice, agreed with the district court that a trial continuance had been unnecessary, and affirmed the defendant's conviction. *See*

*id.* Nothing remotely serious is at issue here with Ruzicka's documents. Other cases are in accord. *See, e.g.*, *United States v. Alvarez*, 358 F.3d 1194, 1210 (9th Cir. 2004) ("The government turned over notes or reports of debriefings of the co-conspirator witnesses on the first day of trial"); *United States v. Fuller*, 665 F. App'x 248, 251 (4th Cir. 2016) ("1,800 pages of Jencks/*Giglio* material five days before trial"); *United States v. Nazario*, 748 F. App'x 479, 481 (3d Cir. 2018) (rejecting *Brady* and materiality challenge even when the defendant learned only "the Friday afternoon before trial," that two cooperating co-defendants were excepted to testify against him, and would "contradict[] exculpatory testimony he anticipated eliciting"); *United States v. Ellison*, 804 F. App'x 153, 156 (3d Cir. 2020) (upholding conviction even though government had withheld impeachment material on cooperator and incorrectly asserted it had been destroyed); *United States v. Khan*, No. 1:20-CR-00007-02, 2022 WL 889400, at *1 (D. N. Mar. I. Mar. 28, 2022) (denying motion for continuance even though, less than a month before trial, "[defendant] received discovery that consisted of agent notes and grand jury testimony . . . that would demonstrate patent contradictions by the case agent").

In sum, Andrade does not and cannot meet the high bar for suppressing evidence or continuing the trial on the ground of late government discovery.

**D.   The Court Should Not Reconsider Admitting AtenCoin or Financial Evidence**

The Court rightly held, after extensive briefing and a hearing, that AtenCoin is inextricably intertwined with the AML Bitcoin scheme. The relatively belated production of additional AtenCoin/AML Bitcoin financial records—none of which the government will rely on or introduce—does not warrant the exclusion of AtenCoin financial data, let alone all of Andrade's financial data through 2019. *See, e.g.*, *Alahmedalabdaloklah*, 94 F.4th at 823–24 (affirming admission of deposition even though government's late disclosure prevented defense from cross-examining cooperator on "significant benefit for his cooperation" and connections to terrorism).

**E.   The Defense Has Not Met Its Reciprocal Discovery Obligations**

Rule 16(b) imposes reciprocal discovery obligations on the defendant. Yet Andrade has not met those obligations. He has sandbagged the government time and again. He has resisted requests to provide witness/exhibit lists. He has filed an overlength misconduct/*Brady* motion on the eve of trial (a motion has been in the works since at least May 2024, according to the defense's prior motion for

continuance, *see* Dkt. 311 at 14). The government had not seen until February 2, 2025 hundreds of exhibits on his belated exhibit list. In over four years since indictment, Andrade has sought tactical advantage, exhausted several appointed counsel, and delayed his victims' day in court. Andrade cannot shield himself with late disclosures while attacking the government for its January 17 disclosure of non-*Brady*, non-Rule 16 material.

**IV.   CONCLUSION**

The Court should deny, in its entirety, Andrade's Amended Motion to Exclude Financial Records Through 2019 or to Continue for Further Review Based on *Brady v. Maryland* Violation (Dkt. 523).

DATED:  February 4, 2025                                  Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
CHRISTIAAN HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys

MATTHEW CHOU
Special Assistant United States Attorney