MICHAEL J. SHEPARD (SBN 91281)
*mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
*kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:     +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
*cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:     +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | Case No. 3:2-cr-00249-RS <br><br> **DEFENDANT'S SUPPLEMENTAL RULE 16(b)(1)(C)(iii) DISCLOSURES REGARDING EXPERT ERIK MIN** <br><br> Judge: Hon. Richard Seeborg, Chief Judge |

Mr. Andrade hereby supplements his prior disclosures, made pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) and Federal Rule of Evidence 702, of expert witness Mr. Erik Min. In his prior disclosure, Mr. Andrade indicated that, should the court admit evidence related to AtenCoin, Mr. Min may be called to testify regarding AtenCoin and Mr. Min's disclosures

would be supplemented accordingly. ECF 463, n. 2. After admitting AtenCoin evidence, the Court granted Mr. Andrade until this date to provide the following supplemental disclosure. ECF 521.

I. <u>Qualifications & Prior Testimony</u>

Mr. Min's testimony will be based on his experience, education, and training, which render him an expert in cryptocurrency, blockchain technology, and digital forensics. Mr. Min incorporates by reference the detailing of his experience, education, training, and expert testimony articulated in ECF 448 at 1:1-14.

II. <u>Anticipated Testimony</u>

In connection with Mr. Andrade's Indictment for wire fraud under 18 U.S.C. § 1343, the government has successfully moved for the admission of allegations that Mr. Andrade's pitch for AtenCoin was "false in the same way" as the one he gave for AML Bitcoin, in that, "neither of Andrade [sic] cryptocurrencies in fact had the technological features he claimed." At trial, Mr. Min will educate the jury about the specific blockchain technology and other applications developed in connection with the AtenCoin cryptocurrency, including the scope and quality of development work and overall architecture of the AtenCoin project based on FTI's analysis of source code associated with AtenCoin.

At trial, Mr. Min will testify that AtenCoin was a cryptocurrency based on a fork of the Bitcoin blockchain and was developed to record the sending and receiving of AtenCoin tokens using the proprietary AtenCoin wallet application. Copyright date notices within the source code, for the AtenCoin source code itself, show that development of the AtenCoin application began as early as 2014. AtenCoin appears to have been a viable and sufficiently documented product, with a functioning blockchain and wallet application. The source code indicates that the AtenCoin software utilized at least one-third party ID verification service in its user onboarding process. The state of the source code indicates that it was a working product when run on the infrastructure systems current in the 2014-2015 timeframe. Mr. Min will testify that the AtenCoin architecture appears to have served as a basis for the AML Bitcoin application.

While the source code available is sufficient to ascertain that the underlying AtenCoin

blockchain and wallet software appears to have been a working product, there are certain limitations Mr. Min faced in performing his analysis largely attributable to the passage of time between AtenCoin's creation and Mr. Min's review. AtenCoin was developed on an infrastructure dated to the 2014-2015 timeframe or earlier, which creates challenges in bringing the source code to a functional level on modern, 2025 versioned infrastructure. Performing the work of making AtenCoin's dated software functional, at least ten years after its development, would prove costly in development team effort and time in troubleshooting the configuration for code implementation. Additionally, the repositories analyzed contain only source code and were without databases for further analysis of the application's development, testing, and use. Evidence in the source code and in the form of software developer-created slide presentations indicates that testing of the AtenCoin software and its integration with third party ID verification services was performed. Ideally, as with AML Bitcoin, Mr. Min would have access to local database storage containing said testing data from a development environment, optimally along with real data from the AtenCoin production environment, like user KYC/ID verification information, and transaction data stored on the blockchain (transaction hash, BGC amount, To/From addresses).

Despite these limitations, Mr. Min will describe the source code he reviewed for AtenCoin as comprising of well documented source code showing significant work by a competent development team. The software was programmed in C++, an advanced codebase indicating development by a well-educated and qualified group. The code is replete with clear notations and instructions. The codebase shows a viable workflow, design, and structure, and is reflective of a significant amount of work overtime. Well-documented instructions were created on how to build the application for different operating systems. Mr. Min utilized these instructions to build packages for the AtenCoin wallet application in attempts to run it for purposes of testing and review, which in the context of a 2015 infrastructure he anticipates would have already proved successful.

Mr. Min observes the source code he reviewed to contain relevant components of a viable crytopcurrency wallet application, including login, ID verification, a user interface, database

infrastructure, and blockchain integration. Mr. Min also observed evidence of two HTTPS gateway servers responsible for sending and receiving data between the AtenCoin wallet application and an as-yet-undetermined endpoint. Other evidence in the source code suggests that a purpose of the servers was to sign transactions for AtenCoins, and that the endpoint for the servers may be a third-party ID verification service.[1]

During review of the code, Mr. Min identified references to third party ID verification services Jumio and MiiCard suggesting integration with AtenCoin's wallet application. Particularly for MiiCard, evidence was found of the ID Checker service API URL, indicating that the AtenCoin software called the ID Checker web API for the purpose of MiiCard verification in authenticating a user's account.

To assist his testimony, Mr. Min may use demonstratives based on the AtenCoin source code reviewed by FTI. The defense will provide a copy of the demonstratives to the government prior to trial.

---

[1] Due to the challenges inherent in bringing the AtenCoin source code to a functional level on a 2025 infrastructure and the limited time in which Mr. Min has had to perform his evaluation, the analysis of AtenCoin has taken longer than expected, and it is anticipated that Mr. Min may be able to identify the endpoint referenced and ascertain additional information regarding the integration of third party ID verification software and the AtenCoin wallet. Should this occur, the defense will promptly make updates to this disclosure.

/s/ Erik Min
Erik Min
Senior Director, Blockchain & Digital Assets Practice
FTI Consulting

Respectfully submitted,

DATED: February 6, 2024

KING & SPALDING LLP

By: /s/ Michael J. Shepard
    MICHAEL J. SHEPARD
    KERRIE C. DENT
    CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE