PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    christiaan.highsmith@usdoj.gov
    david.ward@usdoj.gov
    matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>    Defendant. | CASE NO. 3:20-cr-00249-RS<br><br>**UNITED STATES' MOTION IN LIMINE TO EXCLUDE MOST HEARSAY OFFERED BY THE DEFENDANT**<br><br>Jury Trial:  8:30 a.m. thru ~Mar. 10, 2025<br>Court:  Courtroom 3 \| 17th Floor<br>Judge:  Hon. Richard Seeborg |

The Court ordered the parties to concisely and simultaneously brief, by Monday at 8:30am, whether the defense can introduce evidence of hearsay statements made directly to the defendant even if neither he nor statement's proponent takes the stand. *See* Tr. 1471:15–73:4 (Feb. 20, 2025 trial day); Tr. 1630:1–9 (Feb. 21, 2025). The answer is yes *if* he first clears at least five evidentiary hurdles. If Andrade does so, he may offer—with a limiting instruction—an out-of-court statement he received if it arguably "provided a good faith basis for [his] actions." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 89 (2d Cir. 2014) (holding that trial court erred when it excluded an email from government

official to defendant that showed the defendant acted in good faith); *see also United States v. Norwood*, 798 F.2d 1094, 1096 (7th Cir. 1986) (holding that percipient witnesses should have been allowed to testify about what they or others within earshot told defendant).

But to admit evidence on this limited basis, Andrade (1) cannot nest hearsay in a way that requires assuming Andrade truly received something; (2) cannot introduce his own statements; (3) must prove authenticity; (4) cannot blame victims for negligence or even intentional disregard; and (5) must pass Rule 403 balancing. The government thus moves in limine to exclude hearsay evidence that cannot meet all the requirements below:

**1.     Nested hearsay would improperly require an assumption that Andrade truly heard/received what is on the document or in testimony.** To start, Andrade cannot invoke effect on the listener if the face of a document fails to prove that he received it. Nor can he offer third-party testimony about what some out-of-court declarant purportedly told Andrade. In other words, Andrade cannot offer evidence from someone other than himself that another out-of-court declarant "gave defendant[] certain advice, and [he] relied on that advice," because such evidence would necessarily require assuming the truth of the matter asserted by the original hearsay declarant. *United States v. Bishop*, 291 F.3d 1100, 1110 (9th Cir. 2002).

    a.     For example, Andrade could not introduce out-of-court statements of Jack Abramoff, Richard Naimer, or any another person writing to someone else to show Andrade's state of mind. A writing like "I told Andrade XYZ," "Andrade believes XYZ," or "Andrade is so naïve" is inadmissible.

    b.     Nor could Andrade introduce an email thread that he is not on—but which *purports* to contain earlier emails/documents sent to him. (Take, for instance, emails forwarded from David Mata to FBI SSA Kate Ablett that purport to contain/quote emails Andrade received. *See, e.g.*, Dkt. 580 at 15 (Exhibit 2531); Exhibit 3202 (not on exhibit list).) Again, this content necessarily requires assuming the truth of the hearsay declarant: that the declarant is in fact quoting an email thread with Andrade. By contrast, the government often may introduce such writings against Andrade as an *opposing* party co-conspirator/employee/agency statement by the declarant. *See* Fed. R. Evid. 801(d)(2).

**2.    Andrade's own statements are inadmissible.** As the Court has rightly noted and the government previously briefed in limine, Andrade cannot admit his own self-serving hearsay statements, whether to show state of mind or something else. *See, e.g.*, *United States v. Sayakhom*, 186 F.3d 928, 937 (9th Cir.), *amended*, 197 F.3d 959 (9th Cir. 1999) (holding inadmissible an audio recording of a conversation between defendant and investigators, which she had offered to show her good faith state of mind). This is particularly true as to any statements Andrade may have made after September 13, 2018, when FBI agents executed a search warrant on the Las Vegas offices of the NAC Foundation and began interviewing co-conspirators. These overt investigative steps notified Andrade of the criminal investigation against him. Any statements by Andrade after this date are likely made in preparation for litigation and are thus inherently untrustworthy. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (explaining that the "precisely what the hearsay rule forbids" is the defendant "plac[ing] his exculpatory statements 'before the jury without subjecting himself to cross-examination'" (quoting *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988))).

**3.    Authenticity**. The defense's proffered evidence must be authentic. This poses a real hurdle here. Many defense exhibits either (1) were not disclosed or produced until shortly before trial and were gathered by undisclosed means; or (2) are still to-be-determined or yet-to-be-disclosed, as noted by the "RESERVED" label for many defense exhibit numbers. *See* Andrade's 2nd Amended Exhibit List, Dkt. 580 (Feb. 19, 2025). For example:

   a.    Exhibits lacking a government Bates stamp—such as those bearing the defense Bates prefix "USKISP"—were likely never obtained/verified by federal investigators.

   b.    The eleventh-hour appearance of certain documents conveniently helpful to the defendant casts further doubt on their authenticity. Specifically, documents created or dated after September 13, 2018 are likely self-serving and in preparation for litigation.. More suspect still is everything that Andrade had failed to produce in response to a June 7, 2019 grand jury subpoena. The subpoena demanded a comprehensive set of documents,[1] and in response, Andrade produced

---

[1] The grand jury subpoena sought records dated January 1, 2014 onward. The subpoena demanded 16 sets of documents, including "all financial records related to NAC Foundation, NAC Payroll Services, Inc., AtenCoin, or AML Bitcoin"; all correspondence related to business arrangements; all records and communications regarding negotiations with government entities; and "all records relating to AML

records on March 9, 2020 and April 15, 2020. Now Andrade offers many unproduced documents as exhibits.

    c.    This is not merely a theoretical concern. It appears the content comprising many if not most defense exhibits either (1) post-date September 13, 2018, when the investigation became overt; or (2) should have been produced in response to the June 2019 grand jury subpoena. To take one example, the "Date" column of the defense exhibit list shows that many exhibits contain content from after September 13, 2018. *See, e.g.*, Dkt. 580 at 7 (Exhibit 2232) (Deloitte executed agreement with patent list attached). To take another example, Defense Exhibit 2544 purports to be Andrade's "Undated" "Copyrighted Source Code." Andrade claims he worked on and received regular updates on this source code, at least as previewed in his opening statement and cross-examination of government witnesses. But Andrade failed to produce *any* source code in response to the grand jury subpoena. His first production of purported source code was on January 22, *2025* as part of Erik Min's expert disclosures. *See* Dkt. 503 (government's motion re Min disclosure). Indeed, Andrade's own three exhibit lists all candidly concede that Andrade had likely never produced the assertedly "Undated" "Copyrighted Source Code." *See, e.g.*, Andrade's 2nd Amended Exhibit List, Dkt. 580 at 16 (Feb. 19, 2025) (Exhibit 2544). The defense's exhibit lists state: "WAS THIS PRODUCED BY MA? CANNOT FIND IN DISCOVERY." *Id.*

    d.    In sum, Andrade must support authenticity of documents not produced by the government through sworn testimony or other procedures set forth in Rules 901 and 902.

    **4.**    **Controlling precedent categorically excludes all evidence of individual investor negligence, intentional disregard, or lack of reliance.** As the Court rightly held in limine, Andrade could "not stray into evidence of the behavior of individual [investors]," for there is a "[a] prophylactic rule against all evidence of individual lender [or investor] behavior." *United States v. Lindsey*, 850 F.3d 1009, 1012 (9th Cir. 2017) (holding inadmissible victims' "negligence," "or even intentional disregard" of misrepresentations in fraud prosecutions); *see* Dkt. 497 at 2 (holding same). This is a "bright-line

---

Bitcoin software development, including . . . any work product, source code, and testing reports."

rule" that does not even permit admission with a limiting instruction. *Id.* at 1017–18.

        a.     A defendant could not offer, for example, evidence that a particular investor intentionally disregarded a misrepresentation, such as evidence that an investor told the defendant that a misrepresentation was immaterial to the purchasing decision. *See id.* at 1016.

        b.     Again, defense exhibits, like purchase agreements, appear within this impermissible genre of victim negligence or disregard. *See, e.g.*, Dkt. 580 at 14 (Exhibits 2471–2474: lengthy terms and conditions on website that include buried disclaimers of liability, such as ¶ 15 on Exhibit 2471-004, which states "You have not purchased and have no intention of purchasing AML BitCoins and/or AML BitCoin Tokens for investment purposes and You [sic] expect no return on investment.").

**5.**    **Rule 403.** Lastly, even if Andrade's proffered evidence clears the four hurdles above, the Court has "great leeway" to exclude evidence under Rule 403. *United States v. Pendleton*, 884 F.2d 1396, at *2 (9th Cir. 1989) (unpublished). And courts regularly exclude evidence that—though probative of a defendant's purported good faith—pose a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]e generally will not disturb such a ruling unless it 'lies beyond the pale of reasonable justification under the circumstances.'" *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) (quoting *United States v. Pineda–Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010)) (affirming exclusion of defendant's legally relevant evidence).

        a.     As one example, "permitting legal materials into the jury room creates the potential for undue jury confusion concerning the governing law." *United States v. Payne*, 978 F.2d 1177, 1182 (10th Cir. 1992) (exclusion, in tax and false statements case, of defendant's previously annotated tax records that suggested he had acted in good faith; and collecting cases). Andrade's exhibits include legal materials that pose exactly this risk of confusion. *See, e.g.*, Dkt. 580 at 4 (Exhibits 2141, 2124) (emails regarding patents); *id.* at 8 (Exhibits 2273, 2274) (Randy Wooten memo re Aten Black Gold Coin security status; Fahy Memo saying ABTC not a security).

        b.     As another example, Rule 403 properly excludes evidence that the defendant

hoped or believed that investors would eventually be repaid, or that investors in fact suffered no loss because they were later repaid. *See, e.g.*, *United States v. Sindona*, 636 F.2d 792, 800 (2d Cir. 1980) (exclusion, in a complex fraud case, of evidence that defendant did not intend loss and in fact victim institution was repaid—even though the district court had permitted the defense to promise that evidence in its opening statement and later reversed course). Several defense exhibits appear within this inadmissible genre. *See, e.g.*, Dkt. 580 at 9 (Exhibit 2284: June 2018 email from Andrade to Foteh asking her to refund investors connected to Corey Jodoin); *id.* at 25 (Exhibit 2873: August 2014 email to Andrade on possible sources of Aten cash flow).

DATED: February 24, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/
CHRISTIAAN H. HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys

MATTHEW CHOU
Special Assistant United States Attorney