MICHAEL J. SHEPARD (Bar No. 91281)
*mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:   +1 415 318 1200
Facsimile:   +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
*kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:   +1 202 626 2394
Facsimile:   +1 202 626 3737

CINDY A. DIAMOND (SBN 124995)
*cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Avenue, #350
San Francisco, CA 94127
Telephone:   +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>　　　　　Defendant. | Case No. 3:20-CR-00249-RS (LBx)<br><br>**DEFENDANT ANDRADE'S BRIEF ON GOVERNMENT HEARSAY OBJECTIONS TO WEEKLY MANAGEMENT UPDATES, CONTRACTS, AND LEGAL MEMORANDA**<br><br>Judge:　Hon. Richard Seeborg<br>Dept.:　Courtroom 3 – 17th Floor |

This Brief addresses the admissibility of three sets of exhibits that the court has excluded based on the government's hearsay objections: "Weekly Management Updates;" a variety of offers and contracts; and two legal opinions.[1] In each instance, the Court's exclusion of the proffered evidence is contrary to hornbook law, and materially prejudices the effective presentation of Mr. Andrade's defense.

I.   **THE WEEKLY MANAGEMENT UPDATES SHOULD BE ADMITTED**

Nearly all of the "Weekly Management Updates" were shown to Mr. Abramoff during his testimony. Trial Transcript ("Tr.") at 1822:24-25 (Feb. 25, 2025). These Updates were sent from the team in London that was working on the AML Bitcoin technology to a distribution list that included Mr. Andrade (and sometimes Mr. Abramoff).[2] Like now-admitted Def. Exh. 3202 (reporting that "things are going well" and "the product is pretty much there"), the Updates contain favorable reports on the development of the technology. Mr. Andrade asks to admit four of the Updates – Defense Exhibits 2327, 2333, 2334, and 2337 – into evidence by defense counsel during the testimony of Jack Abramoff. not for their truth but for their effect on the listener – specifically, their effect on Mr. Andrade and his belief about when the technology would be completed.

It literally is hornbook law that statements offered for this purpose are not hearsay. VI Wigmore on Evidence (3d edition), section 1789, at 235 ("Whenever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned"); [2] McCormick on Evidence § 249.

---

[1] When the Court excluded the Updates, it allowed defense counsel to be heard on the issue again. Tr. 1827. Similarly, the court invited counsel to address the contract issue further. Tr. 2226:15-20. The Exhibits addressed herein are attached for the Court's convenience.

[2] While Mr. Abramoff effectively authenticated the Updates, the government and defense are discussing a stipulation that would also authenticate them, as they are among documents seized by the government and could therefore be authenticated by recalling Special Agent Quinn or one of his colleagues. Abramoff acknowledged seeing regular updates from the London team, which was directed by Richard Naimer, his trusted friend. Tr. at 1822:11-21. Mr. Abramoff conceded that he did not recall any other format for written reports other than the Weekly Management Updates. Tr. 1840:17-20.

- 2 -

For the reasons set forth more fully below, as well as those detailed in Mr. Andrade's Brief Regarding Admission of Defense Exhibit 3202, Dkt. #584 (Feb. 24, 2025) ("Exh. 3202 Brief"), the Updates should be admitted.

### A. The Status of the Development of the Technology is a Major Issue in This Case

As Mr. Andrade explained in his Exh. 3202 Brief the theme of "the lack of technology and progress in technology development has featured heavily in the government's presentation of its case." Mr. Ward said in opening: "The technology didn't work . . .and, you know, Marcus Andrade's cryptocurrency, AML Bitcoin, it was *never* what he said it was." Tr. at 202:25-206:3 (February 11, 2025) (emphasis added). The government has backed up Mr. Ward's claim with testimony from numerous witnesses, covering the state of the technology at various times. *See, e.g.,* Tr. 2-20-2025, 1412:9-13 (Government counsel elicited Mr. Hung Tran's guess that at the time he visited the Cross Verify team in London, they were 9 to 12 months away from being able to sell the product); Tr. 2-19-2025, 1264:1-5 (Government counsel elicited Mr. Evan Carlsen's testimony that his understanding was the technology would take six to eight months to build, in different phases).

It is critical to the defense to be able to respond to the government's evidence; the proffered response is to show what Mr. Andrade was being told by responsible people at the company. This evidence provides the basis for Mr. Andrade having a different – and exculpatory – understanding about the state of the technology. The Updates show, among other things, that a "minimum viable [Cross Verify] product version" was scheduled for release at the end of August, 2018, Def. Exh. 2333 (July 3, 2018 Update), and that "our 2.0.2 commercial release" timeline was 6-8 weeks. Def. Exh. 2334 (September 18, 2018 Update).[3]

---

[3] The Court also expressed concern about the variety of statements in the Updates. Although the entirety of the Updates are relevant and non-hearsay (mostly providing updates on business prospects), if the Court prefers, Mr. Andrade will redact all information from the Updates except for the identifying information (e.g., date, recipient, and relevant heading) and a full representation of the specific topic described in the citations above in the text and the remainder of this footnote; he will also limit his offer of Updates to the ones identified in the text above and the remainder of this footnote. To accompany Def. Exh. 2333, which is in the context of an "FCA sandbox"), Def. Exh. 2327 helps explain the sandbox. In addition, Def. Exh. 2337

B. <u>The Weekly Updates Are Admissible Because They Inform Mr. Andrade's State of Mind</u>

This Court got this very same issue right when it permitted the introduction of Def. Exh. 3302 (Mr. Naimer's email stating that "the product is developing nicely and on time"). Regardless of whether the information in the Updates is true, the Updates provide important evidence about Mr. Andrade's state of mind when he made the alleged statements about the status of the technology. Needless to say, Mr. Andrade's intent in making statements the government attributes to him about the AML Bitcoin technology is a "critical element" of the wire fraud charge in Count One. *See* Exh. 3202 Brief at 3:10-15, Dkt. #584 (Feb. 24, 2025).[4]

Numerous cases have followed the hornbook law and admitted evidence for its impact on the recipient. "[A]n out-of-court statement is *not* hearsay if offered for any purpose other than the truth of whatever the statement asserts." *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019). There is no question that this principle applies to statements impacting state of mind in criminal cases. *See* Exhibit 3202 Brief at 4:3-11.[5] Nor is there any question that this principle applies to evidence offered by the defendant. *United States v. Corona*, 41 F. App'x 33, 33 (9th Cir. 2002) (reversing conviction due to exclusion of statements offered by defendant that were "probative on the issue of government inducement, not for the truth of the out-of-court statements but to show the effect they had on Corona's state of mind"); *United States v. Sanchez-Estrada*, 394 F. App'x 428, 429 (9th Cir. 2010) (finding error, determined to be harmless, in excluding

---

provides an update on AML Bitcoin's listing on HitBTC, a subject that the government has raised several times.

[4] *See, e.g., United States v. Henny*, 527 F.2d 479, 484 (9th Cir. 1975) (intent is a "critical element[]" of wire fraud); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978) ("[T]raditional legal concepts . . . render intent a critical factor"). Without the requisite intent, there can be no crime. *Elonis v. United States,* 135 S. Ct. 2001, 2009 (2015) ("wrongdoing must be conscious to be criminal").

[5] *See, e.g., United States v. Lin*, No. 15-cr-00065-BLF-1, 2018 U.S. Dist. LEXIS 68194, *17 (N.D. Cal. April 23, 2018); *see generally Arthur v. Gallagher Bassett Servs., Inc.,* No. CV 09-4882 SVW (CWX), 2010 WL 11596468, at *7 (C.D. Cal. June 1, 2010) (admitting a number of contested exhibits for the non-hearsay purpose of showing defendants' state of mind); *United States v. Yagi,* No. CR-12-0483 EMC, 2013 WL 10570994, at *3 (N.D. Cal. Oct. 17, 2013) ("finding "statements not hearsay as they are not being offered for the truth of the matter asserted, but rather as circumstantial evidence of [the defendant's] state of mind").

statement offered by defendant showing that he was seeking out official restraint by calling the federal agent over to him and starting a discussion). And, as the Sixth Amendment would require, this principle also applies in cases in which the defendant chooses not to testify. *See United States v. Garcia-Villanueva*, 855 F.2d at *2. Equally beyond question is that the weekly updates are relevant: they have a "tendency to make a fact [here Mr. Andrade's intent to deceive or cheat] more or less probable than it would be without the evidence . . . [and] the fact is of consequence in determining the action." Fed. R. Evid. 401.

What should be especially telling to the Court is what the government's latest brief on this issue (ECF 585) does *not* say. It never contests that statements offered for their effect on the defendant's state of mind are *not* hearsay. It avoids defending any of the government's own specific hearsay objections. Nor does it offer any justification for any of the specific rulings made by the Court that excluded evidence on hearsay grounds. Rather, it merely offers a series of propositions that have no application to Mr. Andrade's requests, except for the last proposition, which has no merit whatsoever. *See* United States' Motion in Limine to Exclude Most Hearsay By the Defendant, ECF 585 at 2:4-8 (February 24, 2025).

The government's first proposition addresses "nested hearsay," which is "third party testimony about what some out-of-court declarant supposedly told the defendant," or documents that were not sent to him. The Updates were sent to Mr. Andrade and do not contain "nested hearsay." Nor do they contain Mr. Andrade's own statements, which is the second proposition in ECF 585; rather, they contain updates by those working on the technology. Similarly, there should be no dispute about the third proposition -- that the Updates are authentic. Equally inapplicable is the fourth proposition, which deals with individual investor negligence or lack of reliance; nothing in the Updates raise any such issue.

The fifth proposition -- that the Updates should be excluded under Rule 403 – has no basis when applied to the Updates. The government in ECF 585 offers as its Rule 403 authority *United States v. Espinoza-Baza,* 647 F.3d 1182, 1190 (9th Cir. 2011), an illegal reentry case in which the proffered evidence did not go to state of mind at all, was "only speculation," and its probative

value was "extremely small." There is nothing prejudicial at all about a statement in a management update reporting on the status of technology, let alone anything so prejudicial as to substantially outweigh it probative value. The probative value of the Updates is massive: they provide answers to a central government accusation. At most, the government would be suggesting that the jury will somehow be unable to follow an instruction to use the evidence only when considering Mr. Andrade's state of mind, but this argument is vapid on the facts of this case, in which the government has literally offered days of highly prejudicial Rule 404(b) evidence – including victims losing money, and a witness crying – all justified by an instruction to consider it only for list of the terms in the Rule. If the jury can follow an instruction to avoid misusing such powerfully prejudicial evidence, there is no doubt that it can follow an instruction limiting the use of a bland management update.[6]

Where the exclusion of non-hearsay evidence is prejudicial – as it would be here given that the evidence goes to the core of the defense on a critical issue – reversal is required if the exclusion is erroneous. *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013). Exclusion would also violate Mr. Andrade's right to present an effective defense. *See Sherman v. Gittere*, 92 F.4th 868, 879 (9th Cir. 2024) ("the exclusion of evidence is unconstitutional when it 'significantly undermine[s] fundamental elements of the defendant's defense.'").

## II. OFFERS AND CONTRACTS SHOULD BE ADMITTED

Mr. Andrade has moved (or attempted to move) to admit several contracts or offers, and, in each instance, although the exhibits have been authenticated and are relevant, the Court excluded the documents as hearsay. For example:

1. During Special Agent Quinn's cross-examination on February 27, 2025, the Court declined to admit Exh. 3355, an August 19, 2019 email from Mr. Andrade to Quinn offering to provide him with the source code for his cryptocurrency technology.

---

[6] The Court on at least one occasion expressed reservations to the introduction of such evidence based on the fact that the same language that bears on the mental state of the recipient could also be taken for the truth. This is inherent in all or nearly all evidence offered for its impact on the recipient. All of the cases cited above necessarily did not see this potential use as a bar to admissibility, given that the jury will be instructed on how to use (and not use) the evidence.

       Transcript, 02-27-2025, 2221:16-25 to 2222:1-16. The Court agreed to hear defense counsel on the issue. Tr. at 2226:15-20.

2. The Court held a sidebar during Special Agent Quinn's testimony and conditionally admitted the post-ICO binder, and asked the parties to brief the issue. Tr. 2268:12-15; 2269:2-4.

3. During John Fahy's testimony on February 28, 2025, Mr. Fahy authenticated Exh. 2232, an agreement between Deloitte and Mr. Andrade's company, Black Gold Coin, setting forth the $100 Million deal for Mr. Andrade's patents. Tr. 2396:4-12. In light of the court's prior rulings, defense counsel did not move to admit the document at that time, pending an opportunity to file this brief.

These exclusions are inconsistent with hornbook law, which establishes that contracts, offers and other verbal acts) are not hearsay. *See, e.g., Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay," quoting Thomas A. Mauet, Fundamentals of Trial Techniques 180 (2d ed. 1988)); Michael Williamson, Practical Evidence Manual, at 3 ("a written contract has independent legal significance and is not hearsay"), available at www.flmb.uscourts.gov/judges/tampa/williamson/practical_evidence.pdf?id=1; 2 John W. Strong, McCormick on Evidence § 249, at 100-01 (5th ed. 1999); Advisory Committee Notes to Federal Rule of Evidence 801(c) ("The effect [of Rule 801(c)] is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights"). That contracts are not hearsay is also settled law in the Ninth Circuit. *Stuart v. UNUM Life Ins. Co. of America,* 217 F.3d 1145, 1154 (9th Cir. 2000) (disability insurance policy is "excluded from the definition of hearsay and is admissible evidence because it is a legally operative document that defines the rights and liabilities of the parties in this case."); *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993); *United States v. Rubier,* 651 F.2d 628, 630 (9th Cir.

1981). Offers and acceptances, like contracts, are considered verbal acts and are not hearsay. *Steadman v. Green Tree Servicing, LLC*, 2015 WL 2085565, *6, n3 (N.D. Cal. May 5, 2015).

### III.   THE TWO PROFFERED LEGAL OPINIONS SHOULD BE ADMITTED

Similarly, the legal opinions identified and authenticated during the examination of defense witness John Fahy, Def. Exh. 2814 and 2274, should be admitted. Tr., 02-28-2025; 2375:22-25 to 2376:1-20; 2383:9-11. Like the Weekly Management Updates, they are offered (and should be admitted) not for their truth, but for their effect on Mr. Andrade, who was copied on both of them. As a result, they cannot be excluded as hearsay. *See, e.g.,* pp. 2 and 4, n.5 *supra*.[7]

None of the propositions asserted by the government in ECF 585 lend any support to denying admission of the opinions here. The only government citation remotely on point, *United States v Payne*, 978 F.2d 1177, 1182 (10th Cir. 1992), advances Mr. Andrade's position, not the government's. In *Payne*, while the district court did not allow the legal opinions to go to the jury, the Court of Appeals found this was not an abuse of discretion because the defendant was allowed to read the documents in their entirety to the jury, which was "far more probative on the issue of his good faith misunderstanding of the tax laws than the actual materials." *Id.* at 1182.

Dated: March 2, 2025

**KING & SPALDING LLP**

By:  */s/ Michael J. Shepard*
MICHAEL J. SHEPARD
KERRIE C. DENT

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

---

[7] Because wire fraud requires willfulness, a defendant's good faith belief that he was complying with the law is relevant. *See United States v. Amlani*, 111 F.3d 705, 717 (9th Cir. 1997) ("The good faith of a defendant is a complete defense to the charge of wire fraud ... because good faith on the part of the defendant is, simply, inconsistent with the intent to defraud…").