UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 20-cr-00249-RS-1<br><br>**ORDER ON DEFENSE MOTIONS *IN LIMINE* REGARDING ADMISSION OF REPORTS, PURCHASE AGREEMENTS, LEGAL OPINIONS, AND EXTRINSIC IMPEACHMENT EVIDENCE** |

### I. Hearsay Evidence

Defendant seeks to introduce three sets of exhibits previously excluded pursuant to government hearsay objections. Dkt. No. 597. These exhibits include (1) emails containing updates about the status of technology at the core of the case; (2) a variety of so-called "offers and contracts"; and (3) two legal opinions. According to Defendant, excluding this evidence contravenes the rules of evidence and materially prejudices his defense.

**A. Email Updates**

"An out-of-court statement is not hearsay if offered for any purpose other than the truth of whatever the statement asserts." *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019). "One common application of this principle is admitting a declarant's out-of-court statement for the purpose of establishing what effect it had on the listener." *Id.* (citing *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991)).

In *Payne*, the Ninth Circuit affirmed the introduction of certain non-hearsay statements. There, a witness testified that a crime victim's roommate had told that witness about abuse by the

defendant. The trial court overruled the defendant's hearsay objection and explained to the jury that "I want you to understand I'm overruling it so that the witness can explain why she did what she did after that, or to give meaning to what happened after that, not necessarily that what somebody told her was the truth." *Payne*, 944 F.2d at 1472.

Citing the case law described above, Defendant urges the court to admit four email threads containing technology updates that other people allegedly sent to him. The government largely opposes the motion. Recognizing the court's concerns about "the variety of statements in the Updates," Defendant offers to redact most of the information in the proposed exhibits. *See* Def. Br., Dkt. No. 597, at 3 n.3. If accepted, this would mean that the exhibits feature only (1) identifying information (*e.g.*, date, recipient, and relevant heading) and (2) "a full representation of the specific topic described [in Defendant's brief]." *Id.* With this understanding in mind, the motion is granted and part and denied in part as explained below.

1. **Exhibit 2327:** This exhibit contains an update from the week of April 29, 2018. *See* Dkt. No. 597-3 at 1. The government has no objection to the admission of this email. It is therefore admitted subject to the parameters in Defendant's brief: everything but the identifying information and specified topics (*i.e.*, "the sandbox") shall be redacted. For an out-of-court statement to be admitted for the effect on a listener, some evidence of that effect is usually required. In this instance, however, because the government does not object to admitting the email—and because Defendant only seeks to introduce the email so as to explain the "sandbox" component of the exhibit discussed *infra*—it is admissible even sans the evidence of any effect on Andrade.

2. **Exhibit 2333:** This exhibit contains an update from the week of July 3, 2018. *See* Dkt. No. 597-4 at 1. The government does not object to admitting the top email of the thread, which Andrade supposedly received, but urges the court to exclude Andrade's later email to Richard Naimer, in which he asks Naimer to remove Jack Abramoff from communications. Defendant only seeks to introduce information in the top email (*i.e.*, that a so-called "minimum viable product" version of the technology, to be implemented in the sandbox described *supra*, was

scheduled for release at the end of August), which the government does not object to introducing. The exhibit is therefore admitted. That said, everything but the identifying information and specified topic (in this case, that a "minimum viable [Cross Verify] product version" was scheduled for release at the end of August 2018) must be redacted pursuant to Defendant's brief.

It bears mention that, generally, admitting an out-of-court statement for its effect on the listener requires demonstrating that the listener actually heard the statement and reacted in some way. *See Payne*, 944 F.2d at 1472–73. Here, the proof that Andrade actually read the email and reacted (by asking Naimer to exclude Abramoff) is the same evidence that the government seeks to exclude. Nevertheless, because the government "has no objection to admission to the top email of the thread," Gov. Br., Dkt. No. 600 at 3, that email may be admitted for the limited purpose and in the limited format described in Defendant's brief.

3.     **Exhibit 2334:** This exhibit contains an update from the week of September 18, 2018. *See* Dkt. No. 597-5 at 1. Defendant apparently forwarded the update to some of his lawyers. *Id.* at 3. His act of forwarding the update demonstrates its effect on him. Defendant seeks to introduce this exhibit because it shows that somebody told him that "our 2.0.2 commercial release" timeline was 6–8 weeks. Def. Br., Dkt. No. 597 at 3; *see also* Dkt. No. 597-5 at 2.

The government objects to the admission of this evidence pursuant to Rule 403, arguing that, because it post-dates the FBI's searches of Andrade's office, Abramoff's house, and Dillman's house, the email thread speaks more to the alleged conspiracy's preparation for litigation than it does to Andrade's good faith beliefs. In this regard, the government contends, the evidence is untrustworthy and substantially more likely to cause unfair prejudice or confusion than it is to provide probative value.

Though a compelling rejoinder, the government's argument loses force in light of the fact that the email stems from a man named Nigel Quantick (not Andrade, Abramoff, or Dillman). Just because people referenced in the email or on the recipient list may have known of an ongoing federal investigation does not, on its own, undermine Quantick's messages—especially when those messages are not introduced for their truth, but rather, for their effect on Andrade. In

response to Quantick's email, Andrade forwarded it to his lawyers. Dkt. No. 597-5 at 3. Although the government likewise characterizes that email as inadmissible hearsay, it is admissible to demonstrate the effect that Quantick's message had on Andrade. As with the other exhibits discussed in this order, Exhibit 2334 is only admissible insofar as Defendant redacts it down to identifying information and specified topic (*i.e.*, that "our 2.0.2 commercial release" timeline was 6-8 weeks).

4. **Exhibit 2337:** This exhibit contains an update from the week of July 24, 2018. *See* Dkt. No. 597-6 at 1. Unlike the others, it comprises (1) an email update that (2) Andrade forwarded to David Mata, who then (3) forwarded the email to one of his other email accounts and ultimately (4) sent the chain to an FBI agent. Defendant seeks its admission with regard to a section about AML Bitcoin being listed on an exchange in roughly 3 weeks. *Id.* at 4–5 (describing HIT BTC listing); *see also* Def. Br., Dkt. No. 597, at 3–4 n.3.

The government opposes admitting this email, citing the nested hearsay rule and Rule 403. As with Exhibit 3202, discussed in a prior order, the nested hearsay problem is solvable. The metadata on the face of the exhibit demonstrates that Andrade forwarded the update to Mata. With no reason to doubt its authenticity, that metadata is sufficient to demonstrate that Andrade received the update. It is therefore unnecessary to admit Mata's statement to the FBI agent, which would only reinforce the information in the metadata (*i.e.*, that Andrade received an update and forwarded it to Mata). That statement will be redacted, as occurred with regard to Exhibit 3202 as well. *See* Tr. at 1801:08–1802:16.

**B. Offers and Contracts**

Defendant seeks to admit three documents, Ex. 3355, the "post-ICO binder," and Ex. 2232, arguing they are non-hearsay because they are contracts or other legally operative verbal acts. For the following reasons, all three documents are excluded.

1. **Exhibit 3355**: The defense moves again to admit an email from Andrade to Special Agent Quinn, purportedly offering Agent Quinn access to AML Bitcoin's source code. Labeling a communication as an "offer" is not a talisman against the rule against hearsay. Andrade's email to

Quinn has no independent legal significance. It is being offered for the truth of the matter, namely that Andrade volunteered access to the source code. *See United States v. Dougan*, 839 Fed. Appx. 81, 84 (9th Cir. 2020) (unpublished) (email offering IRS access to defendant's account info only has relevance as exculpatory evidence of his mental state if the jury accepted the statement made in the email as true). Andrade offers the email to show that he spoke the words and meant them. The statement is therefore not a verbal act because there is no relevance to a legal right or obligation. *See id.* (relying on *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004)). Without any other basis for its admission, the motion to admit this email is denied.

  2.  **post-ICO binder:** The defense also seeks to admit actual purchase agreements. While the defense may have cleared the hearsay hurdle for these documents, these are excluded under Fed. R. Evid. 403. While cross-examining Agent Quinn, the defense attempted to introduce a "post-ICO binder" containing purchase agreements post-dating the March 2019 ICO. While these purchase agreements may be verbal acts describing the legal rights and obligations of purchasers and the NAC foundation, their relevance is minimal, given the misrepresentations charged occurred in 2017 and 2018. Moreover, although the binder contains one purchase agreement of Dr. Witte, the rest of the purchasers, including Ben Boyer, did not sign post-ICO agreements with the NAC Foundation. The probative value of these documents is further undermined by defense counsel's own admission that Boyer already described the differences between his agreement with Block Bits and the NAC Foundation's agreements during his testimony. *See* Tr. 2264. Defendant has already demonstrated Dillman and Andrade offered distinct terms, thus undermining the government's contention the two conspired to defraud. Therefore, these documents would be merely cumulative of Boyer's testimony.

  While the defense insists it is not admitting these agreements to argue, essentially, "the purchasers should have known better," the minimal probative value of these additional, later agreements is outweighed by the risk of confusion and the impermissible *caveat emptor* defense. *See United States v. Lindsey*, 850 F.3d 1009, 1012, 1017–18 (9th Cir. 2017). Therefore, the post-ICO binder of agreements, which was conditionally admitted, is now excluded.

  3.  **Exhibit 2232:** Finally, the defense seeks admission of an agreement between

Deloitte and Andrade's company, Black Gold Coin. The government raises authenticity issues, as well as argues the agreement is merely a vehicle to prove an underlying fact – that Andrade received a $100 million offer for his patents. This appears to be the only reason the defense is offering this document, and therefore it is excluded as hearsay.

Andrade hired Deloitte in February 2020, well after the relevant period in which he made alleged misrepresentations. To the extent this document is meant to prove Andrade's good faith beliefs in 2017 and 2018, the probative value is weak. The hearsay exception for contracts does not allow the defense to admit a document to prove an underlying proposition of the contract as fact. Additionally, Rule 403 counsels against admission, as Deloitte's potential role as an advisor on the sale of Andrade's patents in February of 2020 does not tell the jury much, if anything, about Andrade's intent in 2017 and 2018, nor the state of the technology during that time. Given the risk of jury confusion and minimal relevance, Ex. 2232 is excluded.

**C. Legal Opinions**

Defendant also seeks to introduce two legal opinions, not for their truth, but for their effect on him, arguing that they should come in because he was copied on both of them.

As to the first, the government highlights that there is no evidence that Andrade actually read the letter—the evidence indicates only that one of Andrade's lawyers wrote the letter and addressed it to somebody else, who did not even work for Andrade's business. *See* Exh. 2274, Dkt. No. 597-2. As to the second, the government notes that, although it was addressed to Andrade, its authentication came via his lawyer's testimony that it "was provided to me." Tr. 2376:4–10; *see also* Ex. 2814, Dkt. No. 597-7.

These exhibits will not be admitted. There is no evidence that Andrade reviewed them, so they cannot speak to any effect on him. Moreover, as the government rightly highlights, the opinions are irrelevant—they concern whether AML Bitcoin and AtenCoin were securities, an issue that is tangential. Put another way: Andrade might be guilty if the coins were securities or if they were not securities, and any evidence indicating that he was led to believe one way or the other is not materially probative of any element in the charged offenses.

### II. Extrinsic Evidence for Impeachment

Defendant seeks to use extrinsic evidence of an alleged fraud committed against Defendant's proffered witness, Christine Lee, by Defendant's co-conspirator, Japheth Dillman. Dillman is not testifying in this matter, but the government has offered his statements into evidence via Federal Rule of Evidence 801(d)(2)(E). The defense contends the extrinsic evidence of an entirely unrelated fraud is necessary to impeach Dillman because Dillman is not subject to cross-examination. Excluding this testimony, the defense argues, would undermine the protections offered by Fed. R. Ev.d 806, which allows for the impeachment of an absent declarant. Defendant's argument oversteps Rule 806's scope and therefore Defendant's motion *in limine* is denied.

Defendant seeks to introduce impeachment evidence entirely barred by Fed. R. Evid. 608(b), which "prohibits the use of extrinsic evidence to prove specific instances of misconduct for the purpose of attacking a witness's credibility." *Bonin v. Calderon*, 59 F.3d 815, 829 (9th Cir. 1995). Rule 806 states: "When a hearsay statement – or a statement described in Rule 801(d)(2)(C),(D), or (E) – has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Nothing in Rule 806 overrides 608(b)'s explicit bar on this kind of extrinsic evidence. *See United States v. Saada*, 212 F.3d 210, 221 (3d Cir. 2000) ("Rule 806 does not modify Rule 608(b)'s ban on extrinsic evidence of prior bad acts in the context of hearsay declarants, even when those declarants are unavailable to testify."); *United States v. White*, 116 F.3d 903, 920 (D.C. Cir. 1997) (holding that counsel "could not have made reference to any extrinsic proof" to impeach hearsay declarant); *see also United States v. Little*, 2012 WL 2563796, at *4 (N.D. Cal. June 28, 2012) ("[T]he Court is persuaded by the reasoning in *White* and *Saada* and finds that Rule 801(d)(2)(E) does not modify Rule 608(b), and that under Rule 608(b), Defendant cannot rely on extrinsic evidence to impeach [hearsay] statements."); *but see United States v. Friedman*, 854 F.2d 535, 570 n.8 (2d Cir.1988) (suggesting in dicta that "resort to extrinsic evidence may be the only means of presenting" impeaching evidence against a hearsay

declarant).  The Ninth Circuit has not directly addressed whether a party can use extrinsic evidence when the witness is not subject to cross-examination.  However, previous orders from this district have endorsed the approach of the Third and the District of Columbia Circuits.  *See, e.g.*, *Little*, 2012 WL 2563796, at *4; *United States. v. Shayota*, No. 15-CR-00264-LHK, 2016 WL 6093237, at *7 (N.D. Cal. Oct. 19, 2016), *aff'd*, 784 Fed. Appx. 986 (9th Cir. 2019) (unpublished).

The defense would be unable to use this extrinsic evidence to impeach Dillman if Dillman were to testify.  Rule 806 does not then allow the defense to end-run around Rule 608(b), simply because Dillman is absent. *See* Wright & Miller 30B Fed. Prac. & Proc. Evid. § 7054 (2024 ed.) ("[T]he party attacking an unavailable hearsay declarant's credibility through Rule 806 receives something of a windfall if extrinsic evidence is allowed.").  Therefore, Defendant's motion *in limine* to introduce extrinsic impeachment evidence is denied.

**IT IS SO ORDERED**.

Dated: March 3, 2025

_____
RICHARD SEEBORG
Chief United States District Judge