## PURCHASE AGREEMENT

THIS AGREEMENT is made by and between **NAC FOUNDATION, LLC** ("NAC") and __Rene Acuna__ ("Coin Purchaser") and is effective this __20th__ day of __August__, 2015.

### RECITALS

WHEREAS, NAC is engaged in the creation and issuance of virtual coins;

WHEREAS, NAC has developed a new coin known as the ATEN "Black Gold" Coin which includes software to protect the virtual coins in a secure "wallet"; and

WHEREAS, the Coin Purchaser intends to acquire the ATEN "Black Gold" Coins in accordance with the terms of this Agreement;

WHEREAS Black Gold International Inc. hereby referred to as BGCI, promotes ATEN "Black Gold" Coins.

WHEREAS, the Coin Purchaser understands that BGCI, and NAC are two separate entities and that Black Gold Coin International, Inc., is solely an ATEN "Black Gold" Coin promotion company.

WHEREAS, the proceeds BGCI receives will not be shared with the Coin Holder.

WHEREAS, ATEN "Black Gold" Coin does not have any underlying collateral.

WHEREAS, NAC only guarantees that it will create a digital currency that is AML Compliant and will monitor all transactions in an effort to detect suspicious activities. The arbitrator(s) may allow additional discovery utilizing Art 34 of the U.S. Federal Rules of Civil Procedure as a guide. The supply of ATEN "Black Gold" Coin and NAC services through the NAC website are subject to United States and international export controls and economic sanctions requirements. By acquiring any ATEN "Black Gold" Coin through the NAC website, Coin Purchaser represents and warrants that his/her acquisition comports with and his/her use of the item will comport with those requirements.

### PURCHASER COVENANTS

1. Coin Purchaser acknowledges that Although NAC intends to provide accurate and timely information on the NAC website, the NAC website (including, without limitation, the content) may not always be entirely accurate, complete, or current and may also include technical inaccuracies or typographical errors. In an effort to continue to provide Coin Purchaser with as complete and accurate information as practicable, information may be

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**TRIAL EXHIBIT 0231**
CASE NO.:  CR 20-249 RS
DATE ENTERED_____
BY_____
DEPUTY CLERK

FBI-302-027423

EX231-001

changed or updated from time to time without notice, including without limitation information regarding our policies, products and services. Accordingly, you should verify all information before relying on it, and all decisions based on information contained on the NAC website are Coin Purchaser's sole responsibility and NAC shall have no liability for such decisions.

2. Total ATEN "Black Gold" Coins Purchased as of date above, 525,000 for a total purchase amount of $ 156,250.00 .

3. Coin Purchaser agrees to transfer U.S Dollars to NAC's bank account within 48 hours of the execution of this Agreement. Wiring instructions are to be included in the Welcome Email from NAC or its representative. All checks must be accompanied by a photo copy of a valid drivers' license and / or passport.

4. Coin Purchaser agrees to provide accurate identification information to NAC in connection with the creation of the ATEN "Black Gold" Coin wallet.

5. If Coin Purchaser provides NAC with inaccurate information, Coin Purchaser will promptly correct this information.

6. If his/her primary payment method does not have sufficient funds to cover the purchase price of any ATEN "Black Gold" Coin order or any other amounts owed by him/her to NAC hereunder, NAC may immediately reverse the transaction. NAC is under no obligation to attempt to fulfill his/her purchase using an alternative payment method should your primary payment method fail.

7. NAC reserves the right to refuse to process, or to cancel or reverse, any purchases or sales of ATEN "Black Gold" Coin in its sole discretion, even after funds have been debited from his/her account(s), including but not limited to instances where NAC reasonably suspects the transaction involves (or has a high risk of involvement in) money laundering, terrorist financing, fraud, or any other type of financial crime, in response to a subpoena, court order, or other government order, or if NAC reasonably suspects the transaction relates to any other Prohibited Use or a Prohibited Business as set forth herein. In such instances, NAC will reverse the transaction and NAC is under no obligation to allow Coin Purchaser to reinstate a purchase or ATEN "Black Gold" Coin transfer order at the same price or on the same terms as the cancelled transaction.

8. Coin Purchaser is responsible for any and all tax reporting. NAC is not responsible for this but reserves the right to report your information to the Internal Revenue Services or its' country's equivalent.

9. Coin Purchaser agrees, to the fullest extent provided by applicable law, to indemnify, defend, and shall hold harmless NAC, its subsidiaries, directors, officers, employees and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages"), to the extent that any such Damages are based upon or arise out of: (i) a misrepresentation by Coin Purchaser under

this agreement, (ii) a violation of any law for any nation or subdivision thereof with jurisdiction over Coin Purchaser.

## NAC REPRESENTATIONS

10. NAC is a duly authorized limited liability company formed under the laws of the State of Nevada, United States of America

## NAC OBLIGATIONS

11. A NAC representative will contact the Coin Owner to schedule a time and date for the wallet installation once this Agreement has been executed and payment has been received. In place of having a wallet maintained by NAC, the Coin Purchaser "Black Gold" Coins in a wallet on their own PC or MAC computer.

12. NAC's Customer Service Representatives will then contact the Coin Purchaser and schedule a date and time for NAC Technical Support Team to contact the Coin Purchaser and install the ATEN "Black Gold" Coin digital wallet along with the coins purchased.

13. If Coin Purchaser fails to correct the required information under Section 20 and 21 of this Agreement, NAC will repay Coin Purchaser its purchase amount less the equivalent of a US $25 dollar processing fee. Payment from NAC shall be due within 10 days of the termination of the ATEN "Black Gold" Coin digital wallet. NAC will only make payment to the payment systems account from which it received payment. Even after repayment, such former wallet accounts remain subject to the potential for NAC reporting suspicious activities to governmental authorities.

## MISCELLANEOUS PROVISIONS

14. SUCCESSION. This Agreement shall be binding upon and inure to the benefit of Coin Purchaser, NAC, and their respective successors and assigns.

15. ASSIGNMENT. The rights, benefits and obligations of Coin Purchaser under this Agreement and in Coin Purchaser's ATEN "Black Gold" Coin digital wallet shall not be assignable. Any purported assignment in violation of this Section 24 shall be null and void and of no force and effect. This provision does not bar the transfer or payment of ATEN "Black Gold" Coin to or from Coin Purchaser's ATEN "Black Gold" Coin digital wallet to or from another ATEN "Black Gold" Coin digital wallet.

16. RETROACTIVE. This Agreement shall be retroactive to the original date of purchase. If Aten "Black Gold" Coins were purchased at any prior date, then this agreement would not only supersede and nullify the former Agreement, but this agreement will be retroactive to the date of the original purchase.

FBI-302-027425

EX231-003

17. **AMENDMENT OR MODIFICATION.** NAC may amend or modify this Agreement by posting on the NAC website or emailing to you the revised Agreement and the revised Agreement shall be effective at such time. NAC may (a) modify or discontinue any portion of its services, and (b) suspend or terminate Coin Purchaser's access to the NAC services, at any time, and from time to time, without notice to Coin Purchaser in certain, limited circumstances described herein. Coin Purchaser agrees that NAC shall not be liable to him/her or any third party for any modification or termination of the NAC services, or suspension or termination of your access to the NAC services, except to the extent otherwise expressly set forth herein.

18. **ARBITRATION.** Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including the arbitrability of any controversy or claim, shall be settled by arbitration in accordance with the Commercial Arbitration Rules and the Optional Rules for Emergency Measures of Protection of the American Arbitration Association ("AAA"), and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any provisional remedy which would be available from a court of law shall be available from the arbitrator to the Parties to this Agreement pending arbitration. The arbitrator(s) shall be guided by AAA Rules in allowing discovery and all issues regarding compliance with discovery requests shall be decided by the arbitrator(s). The Federal Arbitration Act shall govern all arbitration proceedings under this Agreement. This Agreement shall in all other respects be governed and interpreted by the internal laws of the State of Nevada, United States of America, excluding any conflicts or choice of law rule or principles that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. The arbitration shall be conducted in Clark County, Nevada, United States of America. The arbitrator must be familiar with the operations of digital currencies. All fees and expenses of the arbitration shall be borne by the Parties equally. Each Party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs, however, the prevailing Party may, if the arbitrator(s) so provide, be entitled to an award of reasonable attorney's fees and expenses and such Party's share of the arbitration fees and expenses. This agreement to arbitrate shall survive the termination and repudiation of this Agreement. Any award rising from such arbitration shall be final and binding on the Parties and may be entered in any court of competent jurisdiction to the extent necessary for the enforcement thereof, and the prohibition against non-disclosure provided in this section shall not apply to such actions.

19. **INJUNCTIVE RELIEF.** Coin Purchaser agrees and understands that damages and legal remedies may be insufficient to protect NAC's interests. Notwithstanding the arbitration clause found in Section 27 of this Agreement above, Coin Purchaser agrees NAC may sue Coin Purchaser for injunctive relief and consents to venue in and the jurisdiction of the state or federal courts of Clark County, Nevada, United States of America for such purposes.

FBI-302-027426

EX231-004

20. GOVERNING LAW. In the event there is a dispute regarding this Agreement, it shall be governed by Nevada and United States of America law. The parties have considered and intend for this to be inclusive of any and all claims whether they arise out of statutory claims, tort claims, contract claims or in equity.

21. NOTICES. Any and all notices required under this Agreement shall be in writing and shall be hand-delivered or mailed, courier delivery service, certified mail, return receipt requested, faxed or emailed and addressed to:

    TO NAC:              via e-mail to notifications@atencoin.com

    TO COIN PURCHASER:   To the e-mail address of record for the Coin Holder.

22. INTERPRETATION. The preamble recitals to this Agreement are incorporated into and made a part of this Agreement; titles of paragraphs are for convenience only and are not to be considered a part of this Agreement.

23. SEVERABILITY. In the event any one or more provisions of this Agreement is declared judicially void or otherwise unenforceable, the remainder of this Agreement shall survive and such provision(s) shall be deemed modified or amended so as to fulfill the intent of the parties hereto.

24. ENTIRE AGREEMENT. This Agreement contains the entire agreement between Coin Purchaser and NAC, including all representations and warranties by NAC. This Agreement may only be modified in writing with the consent of the Coin Purchaser and NAC.

25. WAIVER. None of the terms of this Agreement, including this Section 42, or any term, right or remedy hereunder shall be deemed waived unless such waiver is in writing and signed by the party to be charged therewith and in no event by reason of any failure to assert or delay in asserting any such term, right or remedy or similar term, right or remedy hereunder.

26. ADDITIONAL CONSIDERATION. As additional consideration, Coin Purchaser agrees that his/her ATEN "Black Gold" Coins transactions will be monitored for suspicious activity in an effort to prevent money laundering and help fight against terrorist financing.

27. Coin Purchaser also agrees to the terms and conditions as stated on the atencoin.com website.

The parties acknowledge their acceptance of this agreement with their signatures below.

NAC FOUNDATION, LLC

By *Marcus Andrade*
—77F884048B1D433—

Its Founder

COIN PURCHASER

*Rene R Acuna*
—AE4F1C0E74CF4BB—

## KYC COMPLIANCE INFORMATION

FULL NAME (PRINT): Rene R Acuna

OCCUPATION: Physician

ADDRESS: [redacted]

CITY / STATE: Portland, Texas

DATE OF BIRTH: [redacted]/1955

PHONE NUMBER: [redacted]-2520

EMAIL ADDRESS: [redacted]