Dated November 1st, 2016

# MARCUS ANDRADE

- and -

# MICHAEL WITTE

## SHARE PURCHASE AGREEMENT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**TRIAL EXHIBIT 0677**
CASE NO.: CR 20-249 RS
DATE ENTERED _____
BY _____
DEPUTY CLERK

CONFIDENTIAL

ANDRADE_DOJ00000_00006835
ANDRADE_DOJ_00006835
EX677-001

## CONTENTS

### CLAUSE

1. Interpretation .................................................................................................. 1
2. Condition precedent ....................................................................................... 2
3. Sale and purchase ........................................................................................... 3
4. Purchase price ................................................................................................ 3
5. Completion ..................................................................................................... 4
6. Warranties ...................................................................................................... 4
7. Confidentiality and announcements ............................................................... 5
8. Further assurance ........................................................................................... 5
9. Assignment ..................................................................................................... 5
10. Entire agreement ............................................................................................ 5
11. Variation and waiver ...................................................................................... 6
12. Costs ............................................................................................................... 6
13. Notices ............................................................................................................ 6
14. Severance ....................................................................................................... 6
15. Counterparts ................................................................................................... 6
16. Third party rights ........................................................................................... 7
17. Governing law and jurisdiction ...................................................................... 7

**THIS AGREEMENT** is dated November 1st, 2016

**PARTIES**

(1) MARCUS ANDRADE of 7495 W. Azure Dr, Las Vegas, NV 89130, STE 110 USA (**Seller**).

(2) MICHAEL WITTE of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
_Cumming, Iowa_ ▮▮▮▮▮▮▮▮ (**Buyer**).

**BACKGROUND**

(A) The Seller has agreed to sell and the Buyer has agreed to buy the Sale Shares subject to and on the terms and conditions of this agreement.

**AGREED TERMS**

1. **INTERPRETATION**

1.1 The definitions and rules of interpretation in this clause apply in this agreement.

**Business Day**: a day other than a Saturday, Sunday or public holiday in England when banks in London are open for business.

**Claim**: a claim for breach of any of the Warranties.

**Company**: Aten Group Limited, a private company limited by shares incorporated and registered in England and Wales with company number 10025371 whose registered office is at 71-75 Shelton Street, London WC2H 9JQ with an issued share capital of 500,000,000 ordinary shares of £0.0001 each.

**Completion**: completion of the sale and purchase of the Sale Shares in accordance with this agreement.

**Completion Date**: the date which is 5 Business Days after the Longstop Date, unless the Condition has not been fully satisfied (or waived by the Seller in accordance with clause 2.6) on or before that date, in which event the Completion Date shall be:

(a) the tenth Business Day after the Condition has been fully satisfied or waived; or

(b) any other date agreed in writing by the Seller and the Buyer.

**Condition**: the condition to Completion, being the matter set out in clause 2.1.

**Confidential Information**: all information, Intellectual Property and Know How in whatever form (including, without limitation, in written, oral, visual or electronic form or on any magnetic or optical disk or memory and wherever located) relating to the business, customers, products, affairs and finances of the Company and/or the Group for the time being confidential to the Company and/or the Group and trade secrets including, without limitation, all technical and/or commercial data and know-how, specifications, inventions, processes or initiatives relating to the business of the Company, its Group or any of its or the Group's suppliers, customers, agents, distributors, shareholders, management or business contacts, and whether or not such information (if in anything other than oral form) is marked confidential.

**Encumbrance**: any interest or equity of any person (including any right to acquire, option or right of pre-emption) or any mortgage, charge, pledge, lien, assignment, hypothecation, security, interest, title, retention or any other security agreement or arrangement.

**Group**: the Company, any subsidiary and/or affiliate of the Company, any holding company of the Company and any subsidiary of any such holding company and "Group Company" shall be construed accordingly.

**Holding company**: shall have the meaning set out in section 1159 of the Companies Act 2006.

**Initial Payment**: the sum of USD 5,000. USD 10,000   _MW_

1

**Intellectual Property**: copyrights, trade and service marks, trade names, business and domain names, rights in goodwill or to sue for passing-off, rights in logos and get-up, inventions, confidential information, trade secrets and Know How, registered designs, design rights, database right, topography rights, moral rights, rights in confidential information, letters patent, utility models, semi-conductor topographies, all rights of whatsoever nature in computer software and data, and all intangible rights and privileges of a nature similar to any of the foregoing, in every case in any part of the world and whether or not registered; and including all granted registrations and all applications for registration, renewals or extensions in respect of any of the same.

**Know How**: any skills, knowledge, experience, technical information or techniques of whatsoever nature utilised or gained by the relevant person in the course of its business.

**Longstop Date**: the date which is 5 [10] days after the date of this agreement or such later date as may be agreed in writing by the Buyer and the Seller.

**Purchase Price**: the purchase price for the Sale Shares to be paid by the Buyer to the Seller in accordance with clause 4. The Purchase Price is a total of USD 5,000. [10,000] *mws*

**Sale Shares**: the 50,000 [100,000] ordinary shares of £0.0001 each in the Company.

**Subsequent Payment**: has the meaning given in clause 4.1(b).

**Subsidiary**: has the meaning given in section 1159 of the Companies Act 2006.

**Warranties**: the warranties set out in clause 6.

1.2   References to clauses and Schedules are to the clauses of, and Schedules to, this agreement and references to paragraphs are to paragraphs of the relevant Schedule.

1.3   A person includes a natural person, corporate or unincorporated body (whether or not having separate legal personality).

1.4   The Schedules form part of this agreement and shall have effect as if set out in full in the body of this agreement.

1.5   A reference to a **company** shall include any company, corporation or other body corporate, wherever and however incorporated or established.

1.6   A reference to a **holding company** or a **subsidiary** means a holding company or a subsidiary (as the case may be) as defined in section 1159 of the Companies Act 2006.

1.7   A reference to **writing** or **written** includes fax but not email (unless otherwise expressly provided in this agreement).

1.8   Any words following the terms **including, include, in particular, for example** or any similar expression shall be construed as illustrative and shall not limit the sense of the words, description, definition, phrase or term preceding those terms. Where the context permits, **other** and **otherwise** are illustrative and shall not limit the sense of the words preceding them.

1.9   References to a document in **agreed form** is to that document in the form agreed by the parties and initialled by them or on their behalf for identification.

1.10  A reference to a statute, statutory provision or subordinate legislation is a reference to it as it is in force as at the date of this agreement. A reference to a statute or statutory provision shall include all subordinate legislation made as at the date of this agreement under that statute or statutory provision.

2.    CONDITION PRECEDENT

2.1   Completion of the sale and purchase of the Sale Shares is subject to and conditional upon the Seller receiving the Purchase Price in full in accordance with clauses 4.1 and 4.2 and in any event on or before the Longstop Date.

2

2.2  If the Condition is not fully satisfied (or waived by the Seller in accordance with clause 2.6) by the Longstop Date, this agreement shall automatically terminate with immediate effect, except as provided in clause 2.3.

2.3  If this agreement terminates in accordance with clause 2.2, it will immediately cease to have any further force and effect except for:

(a) any provision of this agreement that expressly or by implication is intended to come into or continue in force on or after termination of this agreement (including clause 1 (Interpretation), clause 2.2 and this clause 2.3 (Condition precedent), clause 7 (Confidentiality and announcements) and clause 10 (Entire agreement) to clause 17 (Governing law and jurisdiction) (inclusive)), each of which shall remain in full force and effect; and

(b) any rights, remedies, obligations or liabilities of the parties that have accrued up to the date of termination, including the right to claim damages in respect of any breach of the agreement which existed at or before the date of termination.

2.4  The Buyer shall ensure that the Condition is satisfied as soon as practicable and in any event no later than the Longstop Date.

2.5  The Buyer and the Seller shall co-operate fully in all actions necessary to procure the satisfaction of the Condition including (but not limited to) the provision by the parties of all information reasonably necessary to make any payment and providing such other assistance as may reasonably be required.

2.6  The Seller may, to such extent as he thinks fit (in his absolute discretion), waive all or part of the Condition by notice in writing to the Seller, and may, without being obligated in any way whatsoever to do so, sell to the Buyer a proportion only of the Sale Shares pro rata to the amount of the Purchase Price received by the Longstop Date.

3. SALE AND PURCHASE

Subject to the Condition, the Seller shall sell with full title guarantee free from all Encumbrances and the Buyer shall buy the Sale Shares, together with all rights that attach (or may in the future attach) to them including, in particular, the right to receive all dividends and distributions declared, made or paid on or after the date of this agreement.

4. PURCHASE PRICE  *10,000* [initialled]

4.1 The Purchase Price is USD ~~5,000~~ 5,000, comprising:

(a) the Payment for USD ~~5,000~~ 5,000 shall be paid in in full on or before November 10th, 2016; and  *10,000* [initialled]

(b) there shall be no Subsequent Payment.

4.2 The Purchase Price shall be satisfied by the Buyer as follows:

(a) by the payment of the Purchase Price according to terms provided herein.  *100,000*
(b) Buyer shall then receive ~~50,000~~ shares.  [initialled]

4.3 All payments to be made to the Seller under this agreement shall be made in Unites States Dollars by electronic transfer of immediately available funds to such account as the Seller shall have specified in writing to the Buyer.

4.4 The Purchase Price shall be deemed to be reduced by the amount of any payment made to the Buyer for each and any Claim.

4.5 Save as required by law, each payment to be made by the Buyer under this agreement shall be made free and clear of all deductions, withholdings, counterclaims or set-off of any kind.

CONFIDENTIAL

ANDRADE_DOJ00000_00006839
ANDRADE_DOJ_00006839
EX677-005

4.6 The Seller shall be entitled to demand immediate payment of the Purchase Price in full (together with all accrued interest) if any of the following events occur:

    (a) the Buyer fails to pay an Initial Payment on the relevant Initial Payment Date or within 5 Business Days of such date;

    (b) the Buyer suspends or threatens to suspend payment of his debts, or is unable to pay or admits his inability to pay his debts as they fall due;

    (c) the Buyer commences negotiations, or enters into any composition, compromise, assignment or arrangement, with one or more of his creditors with a view to rescheduling any of his debts;

    (d) a moratorium is declared in respect of any financial indebtedness of the Buyer;

    (e) any action, proceedings, procedure or step is taken for:

        (i) the suspension of payments, a moratorium of financial indebtedness of the Buyer or the winding up, dissolution, administration or reorganisation of the Buyer;

        (ii) the composition, compromise, assignment or arrangement with any creditor of the Buyer; or

        (iii) the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of the Buyer or any of its assets;

    (f) any event occurs or proceeding is taken in relation to the Buyer in any jurisdiction to which he is subject that has an effect equivalent or similar to any of the events mentioned in clause 4.6(a) to clause 4.6(e) (inclusive); or

    (g) a creditor or encumbrancer attaches or takes possession of, or levies or enforces another legal process on or against, any of the Buyer's goods or assets, and such attachment, possession or process is not discharged or stayed within 14 days.

## 5. COMPLETION

5.1 Completion shall take place on the Completion Date at the offices of the Buyer (or at any other place as may be agreed in writing by the parties).

5.2 At Completion the Seller shall deliver or cause to be delivered:

    (a) transfers of the Sale Shares executed by the registered holders in favour of the Buyer;

    (b) the share certificates for the Sale Shares in the names of the registered holders;

5.3 On the Completion Date the Seller shall procure that the directors of the Company shall hold a board meeting at which the transfer of the Sale Shares (subject to stamping) to the Buyer shall be approved for registration in the Company's statutory register and provide the minutes of the meeting, signed by the chairman of the board of directors, to the Buyer.

5.4 At Completion the Buyer shall pay the Completion Payment in accordance with clauses 4.2, 4.3 and 4.5.

5.5 As soon as possible after Completion the Seller shall deliver to the Buyer all documents of title, records, correspondence, documents, files, memoranda and other papers relating to the Company not required to be delivered at Completion which are in its possession.

## 6. WARRANTIES

6.1 The Seller warrants to the Buyer that each of the Warranties set out in this clause 6 is true and accurate and not misleading at the date of this agreement:

4

CONFIDENTIAL

(a) the Seller is the sole legal and beneficial owner of the Sale Shares free from Encumbrances;

(b) the Seller has the requisite power and authority to enter and perform this agreement and the documents referred to in it (to which it is a party), and they constitute valid, legal and binding obligations on the Seller with their respective terms;

(c) the execution and performance by the Seller of this agreement and the documents referred to in it will not breach or constitute a default under any agreement, instrument, order, judgement or other restriction which binds the Seller;

(d) the Sale Shares are free from all Encumbrances and there is no agreement or commitment given to create an Encumbrance affecting the Sale Shares;

(e) no right has been granted to any person to require the Company to issue any share capital and no Encumbrance has been created and no commitment has been given to create an Encumbrance in favour of any person affecting any unissued shares or debentures or other unissued securities of the Company;

7. CONFIDENTIALITY AND ANNOUNCEMENTS

7.1 Except to the extent required by law or any legal or regulatory authority of competent jurisdiction:

(a) neither party shall at any time disclose to any person (other than its professional advisers) the terms of this agreement or any trade secret or other Confidential Information relating to the Company or its Group, or to the other party, or make any use of such information other than to the extent necessary for the purpose of exercising or performing its rights and obligations under this agreement; and

(b) subject to clause 7.2, neither party shall make, or permit any person to make, any public announcement, communication or circular concerning this agreement without the prior written consent of the other party.

7.2 Each of the parties may, at any time after Completion, announce the acquisition of the Sale Shares to any employees, clients, customers or suppliers of the Company or any other member of its Group.

8. FURTHER ASSURANCE

The Seller shall (at its own expense) promptly execute and deliver such documents, perform such acts and do such things as the Buyer may reasonably require from time to time for the purpose of giving full effect to this agreement.

9. ASSIGNMENT

This agreement is personal to the parties and neither party shall assign, transfer, mortgage, charge, declare a trust of, or deal in any other manner with any of its rights and obligations under this agreement without the prior written consent of the other party.

10. ENTIRE AGREEMENT

This agreement (together with the documents referred to in it) constitutes the entire agreement between the parties and supersedes and extinguishes all previous discussions, correspondence, negotiations, drafts, agreements, promises, assurances, warranties, representations and understandings between them, whether written or oral, relating to its subject matter.

CONFIDENTIAL                                                                                                                  ANDRADE_DOJ00000_00006841
                                                                                                                              ANDRADE_DOJ_00006841
                                                                                                                              EX677-007

11. **VARIATION AND WAIVER**

11.1 No variation of this agreement shall be effective unless it is in writing and signed by the parties (or their authorised representatives).

11.2 No failure or delay by a party to exercise any right or remedy provided under this agreement or by law shall constitute a waiver of that or any other right or remedy, nor shall it prevent or restrict the further exercise of that or any other right or remedy. No single or partial exercise of such right or remedy shall prevent or restrict the further exercise of that or any other right or remedy. A waiver of any right or remedy under this agreement or by law is only effective if it is in writing.

11.3 Except as expressly provided in this agreement, the rights and remedies provided under this agreement are in addition to, and not exclusive of, any rights or remedies provided by law.

12. **COSTS**

12.1 Except as expressly provided in this agreement, each party shall pay its own costs and expenses incurred in connection with the negotiation, preparation and execution of this agreement (and any documents referred to in it).

12.2 Without prejudice to any other right or remedy the Seller may have, the Buyer shall indemnify the Seller against all costs and expenses incurred by the Seller in the event that this agreement terminates and ceases to have effect in accordance with clause 2.2 because the Condition has not been fully satisfied or waived.

13. **NOTICES**

13.1 A notice given to a party under or in connection with this agreement shall be in writing and shall be delivered by hand or by pre-paid first-class post, recorded delivery or special delivery in each case to that party's registered office, or sent by fax to that party's main fax number (or to such other address or fax number as that party may notify to the other party in accordance with this agreement).

13.2 Delivery of a notice is deemed to have taken place if delivered by hand, at the time the notice is left at the address, or if sent by fax, at the time of transmission, or if sent by post on the [second] Business Day after posting, unless such deemed receipt would occur outside business hours (meaning 9.00 am to 5.30 pm Monday to Friday on a day that is not a public holiday in the place of deemed receipt), in which case deemed receipt will occur when business next starts in the place of receipt (and all references to time are to local time in the place of receipt).

13.3 This clause 12 does not apply to the service of any proceedings or other documents in any legal action.

14. **SEVERANCE**

If any provision or part-provision of this agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted. Any modification to or deletion of a provision or part-provision under this clause shall not affect the validity and enforceability of the rest of this agreement.

15. **COUNTERPARTS**

This agreement may be executed in any number of counterparts, each of which when executed shall constitute a duplicate original, but all the counterparts shall together constitute the one agreement.

CONFIDENTIAL                                                                                                                                                    ANDRADE_DOJ00000_00006842
ANDRADE_DOJ_00006842
EX677-008

16. **THIRD PARTY RIGHTS**

   No one other than a party to this agreement, their successors and permitted assignees, shall have any right to enforce any of its terms.

17. **GOVERNING LAW AND JURISDICTION**

   17.1 This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the law of England.

   17.2 Each party irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this agreement or its subject matter or formation (including non-contractual disputes or claims).

This agreement has been entered into on the date stated at the beginning of it.

Signed by MARCUS ANDRADE   _[signature]_ 11/8/16

Signed by MICHAEL WITTE   _[signature]_ Nov. 07, 2016

7

CONFIDENTIAL                    ANDRADE_DOJ00000_00006843
                                ANDRADE_DOJ_00006843
                                EX677-009