DocuSign Envelope ID: 6F8D6926-78AD-43B5-8778-808B647D0930

# PURCHASE AGREEMENT

This Agreement is made by and between NAC Foundation, LLC ('NAC"), Marcus Andrade ("Andrade") and _Boruch Lichter____ ("Coin Purchaser") and is effective as of setpember 9, 2017.

## Recitals

A. NAC is engaged in the creation and issuance of virtual coins;

B. NAC has developed and is now upgrading a new coin known as the AML Bitcoin which includes software to protect the virtual coins in a secure "wallet";

C. Andrade owns and can make available from his own account AML Tokens than can be exchanged for AML Bitcoins; and

D. Coin Purchaser desires to and intends to acquire the AML Bitcoin when it becomes available in accordance with the terms of this Agreement by exchanging AML Tokens for AML Bitcoins.

## Agreement

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, Coin Purchaser, Andrade and NAC agree as follows:

1. **Purchase; Price; Wallet.**

(a) Coin Purchaser agrees to purchase and Andrade agrees to sell 22,222.22____ [number] of AML Tokens that may and will be exchanged for AML Bitcoins for a purchase price of $.45 per coin (45 cents) for a total purchase price of $10,000.00____ (the "Purchase Price"), each AML Token being exchangeable for one AML Bitcoin, i.e., one for one.

(b) Coin Purchaser shall pay the Purchase Price by the transfer to an account specified by Andrade in U.S. Dollars within 48 hours of the execution and delivery by NAC and Andrade of this Agreement to Coin Purchaser.

(c) Concurrent with Purchaser's execution and delivery of this Agreement, Coin Purchaser, if an individual, shall deliver to NAC (or its representative) a copy of a government issued identification (as more particularly described in subparagraph (l) below.

(d) The AML Bitcoins will be delivered to and maintained in an electronic "wallet" (being a secure digital wallet used to store, send, and receive digital currency) maintained by Coin Purchaser or its designee. NAC shall deliver to Purchaser technical information to enable Coin Purchaser to obtain and maintain a wallet for the AML Token(s) purchased and shall provide all technical support to assist Coin Purchaser in that regard.

(e) Coin Purchaser understands that the AML Bitcoin is in the process of being upgraded to be compliant with anti-money laundering laws, and that NAC anticipates that process to be completed in approximately three to six months.

(f) Upon the availability of the AML Bitcoin, NAC shall deliver to Coin Purchaser all information, including technical information, necessary to enable Coin Purchaser to obtain said wallet to store, maintain, exchange and transfer the AML Bitcoins, including the mandatory I.D. Verification; and NAC shall provide all technical support to assist Coin Purchaser in that regard. The technical support personnel shall be highly trained, skilled and competent regarding all technology necessary to maintain, exchange, and trade in digital- or e-commerce, including digital international commerce, cyber currencies and digital coins in general and AML Bitcoins in particular. NAC shall provide on-going technical support available, at a minimum, during the hours that cyber currency and digital coin exchanges are open and available for the conduct of business. NAC understands and acknowledges that Coin Purchaser may not have a high level of technical sophistication sufficient to independently set up a wallet to receive, store, send and receive digital currency without the assistance of and technical support provided by NAC.

(g) Coin Purchaser agrees to provide accurate identification information to NAC in connection with the creation of the AML Bitcoin wallet. Should any such information be inaccurate, Coin Purchaser will promptly deliver correct information to NAC.

(h) If Coin Purchaser's payment is insufficient to cover the entire Purchase Price for the number of AML Tokens set forth in subparagraph (a) above, Andrade shall have no obligation to sell and deliver a lesser number of AML Tokens; and NAC and Andrade may immediately reverse the transaction, crediting and returning to Coin Purchaser that part of the Purchase Price that was credited to Andrade's account or to NAC.

(i) Upon the completion of the upgrade of the AML Bitcoin and the delivery of information necessary to affect an exchange of the AML Tokens for the AML Bitcoins, Andrade, Coin Purchaser and NAC/ will exchange Coin Purchaser's AML Tokens for the AML Bitcoins on a one to one basis.

(j) If Coin Purchaser does not initiate the exchange of the AML Tokens to the AML Bitcoins within 6 months after the AML Bitcoins become available, NAC or Andrade may terminate, rescind, and cancel the purchase of AML Tokens and repay to Coin Purchaser the Purchase Price, less the equivalent of a US $25-dollar processing fee. In the event NAC or Andrade so terminates, rescinds, or cancels, NAC or Andrade shall notify Coin Purchaser of such termination, rescission, or cancellation within 24 hours and shall return the Purchase Price to Coin Purchaser within 10 business days. NAC will make payment to Coin Purchaser using the payment systems account from which payment had been received. Even after repayment, Coin Purchaser's former account(s) remains subject to the potential for NAC reporting suspicious activities to governmental authorities.

(k) Coin Purchaser hereby agrees to comply with and be bound by all conditions, policies, rules and regulations on NAC's Website and of all exchanges in which the AML Bitcoin may be offered, transferred, exchanged or sold.

(l) No AML Token may be exchanged for an AML Bitcoin unless Coin Purchaser's legal identity is confirmed. In the case of an individual this shall require providing a copy of government issued identification that has a photograph of the individual, such as a Driver's License or Passport; in the case of a corporation, limited liability company, or partnership, the verification shall be such a document of the managing member, managing or general partner, or president, in the case of a

trust, the verification shall be such a document of the trustee of the trust.

(m)NAC shall operate its computer systems and website and maintain them in such a manner as a reasonably prudent person in the business of conducing transactions based on a sophisticated computer networking system and shall exercise due care and good faith, including employing technicians and personnel highly skilled in the operation of such a highly sophisticated computer and software based technologies; and NAC shall employ and utilize the most sophisticated and safest methods of internet and computer security available sufficient to assure that at all times its computer network provides a safe and secure environment for the conduct of the business anticipated by this Agreement.

(n) The purchase in this Agreement shall also be governed by the terms and conditions of the website, "atencoin.com", which terms and conditions are incorporated herein. To the extent of a conflict between the terms and conditions in such website and this Agreement relating to the operation and the technical aspects of conducting transactions on said website, the terms and conditions in said website control. To the extent of a conflict between the terms and conditions on said website and this Agreement pertaining to the purchase of AML Tokens, the AML Bitcoins, the price, NAC's liability, indemnity, Coin Purchaser's representations, and obligations undertaken by NAC to Coin Purchaser, this Agreement controls.

2. **NAC's Right to Cancellation and Rescission**. In the event NAC receives or possesses information that would lead to a reasonable and good faith suspicion that a transaction in the AML Bitcoin or AML Token is violating or is about to violate money laundering, anti-terrorist financing, or anti-fraud laws of the United States or of any nation or that the use of AML Bitcoins or AML Tokens is or is about to be used to facilitate a violation of such laws or a financial crime, or is in violation of a validly issued court order or other valid governmental order, NAC may refuse to process, or may rescind, cancel or reverse, any purchase or sale of AML Tokens or AML Bitcoins. Such right shall exist even after funds have been debited from Coin Purchaser's account(s). So long as NAC's suspicion was reasonable and in good faith, NAC shall not be obligated to allow Coin Purchaser to reinstate a purchase or AML token exchange or AML Bitcoin transfer order at the same price or on the same terms as the cancelled transaction.

3. **Representations, Warranties, and Covenants.**

a. NAC represents and Coin Purchaser understands, acknowledges and agrees that Black Gold International Inc. (BGCI") promotes AML Bitcoins; BGCI and NAC are two separate and distinct entities; and BGCI's role is to act solely as a third party to assist in the promotion of the AML Bitcoin as a cybercurrency.

b. NAC represents and Coin Purchaser understands, acknowledges and agrees that Coin Purchaser has no right to and will not share or participate in any way with BGCI's revenue, profit, or losses earned in connection with its activities concerning the AML Bitcoin.

c. NAC represents and Coin Purchaser understands, acknowledges and agrees AML Bitcoin does not have any underlying collateral; the AML Bitcoin is merely an unsecured cyber currency or digital coin.

d. NAC represents that it will use its best efforts to create a digital (or cybercurrency) that will be

compliant with the laws, statutes, rules, regulations, and procedures of the United States and other jurisdictions in which such currency may be used or exchanged that protect against money-laundering and terrorist financing (hereinafter "AML Laws"), i.e. AML Bitcoin will be AML Compliant.

e. NAC will use its best efforts to monitor all the transactions (purchases, exchanges, sales) of AML Bitcoins in an effort to detect suspicious activities that may violate AML Laws.

f. NAC and Coin Purchaser acknowledge and agree that the supply of AML Bitcoin and NAC services through the NAC website are subject to United States and international export controls and economic sanctions requirements.

g. Coin Purchaser understands, acknowledges and agrees that it is not purchasing the AML Bitcoin through the NAC website or from Andrade for the purpose of facilitating any illegal or unlawful activities, and the AML Bitcoin will not be used for such purpose.

h. Coin Purchaser understands, acknowledges and agrees that it intends to comply with all laws and regulations of the United States governing currency transmission activity, all State laws governing such, and all laws governing such in Coin Purchaser's jurisdiction.

i. Coin Purchaser understands, acknowledges and agrees that AML Bitcoin will not be redeemed by NAC and Coin Purchaser is not relying upon NAC to be a source of liquidity for Purchaser and Purchaser's AML Bitcoin.

j. Coin Purchaser understands, acknowledges and agrees that AML Bitcoins are mediums of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving the participation of Coin Purchaser and NAC or its affiliates.

k. Coin Purchaser understands, acknowledges, and agrees that it has not purchased the AML Bitcoins for investment purposes and expects no return on investment.

l. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoin and the AML Token are not securities and are not subject to the securities laws of any governmental entity.

m. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoins are intended to be and are solely an Internet based exchange medium.

n. Coin Purchaser understands, acknowledges and agrees that by purchasing the AML Tokens and exchanging them for AML Bitcoins or by purchasing, selling, exchanging, and transferring AM Bitcoins, and by using the wallet, or obtaining and using technical information and technical support provided by NAC, Coin Purchaser is not participating in and not becoming a member or investor in any pooled interest, business entity, common enterprise, or business venture with Andrade, NAC or any of its or their affiliates.

o. Coin Purchaser understands, acknowledges and agrees that this Agreement does not create or constitute a debt of NAC to Coin Purchaser and that NAC is not obligated to pay Coin Purchaser, except as may be otherwise specifically provided in this Agreement.

DocuSign Envelope ID: 6F8D6926-78AD-43B5-8778-808B647D0930

p. Coin Purchaser understands, acknowledges and agrees that NAC and its affiliates can, without notice, purchase AML Bitcoins or AML Tokens on the secondary market after the initial issuance, and that they can resell the AML Bitcoins or AML Tokens they purchased. NAC and Andrade represent and agree that such sales will not be such as to detrimentally harm the market for AML Bitcoins, such that the economic interests of Coin Purchasers will be harmed.

q. NAC is a limited liability company duly organized and existing under the laws of the State of Nevada and NAC has its principal place of business in Las Vegas, Nevada.

r. Coin Purchaser represents that in making the purchase in this Agreement it is relying solely on its own judgment, belief and knowledge as to the nature of the currency and the cyber coin or digital market and industry and Coin Purchaser is not relying on any statements made by Andrade or NAC, made in any NAC advertising or marketing materials, or made on NAC's website; and Coin Purchaser acknowledges and agrees that it shall not assert any claims against NAC or Andrade based on information on the NAC website having been modified, changed or updated.

4. **Taxation**. NAC shall have no obligation to prepare, provide, or file any financial or transactional information, tax returns, or information forms to Coin Purchaser in connection with Coin Purchaser's reporting of any income to tax authorities within Coin Purchaser's jurisdiction. Notwithstanding the foregoing, should tax authorities require NAC to provide such information, NAC shall do so.

5. **Limitations on Liability**.

a. NAC intends to track AML Bitcoin to identifiable persons and business entities and, if required by law, will file suspicious activity or similar reports with relevant governmental agencies in nations where it does business. In filing such reports NAC shall exercise reasonable care and act in good faith based on the information it has and that is provided to it. Coin Purchaser acknowledges that, notwithstanding NAC's exercise of reasonable care and good faith, such reports may be erroneous or contain incomplete or inaccurate information. Coin Purchaser acknowledges that generally such reports to governmental agencies that are required to be made are privileged communications, as a result of which, NAC would not be subject to a claim for damages in the event that NAC makes an incorrect or incomplete report having exercised reasonable care and good faith.

b. In the event, NAC has a reasonable and good faith belief that Coin Purchaser is engaging in conduct in violation of laws, rules, or regulations concerning anti-money laundering, anti-terrorist financing, or anti-financial fraud, NAC may, without liability to Coin Purchaser, suspend or terminate Coin Purchaser's access to the NAC website or services. In that event, NAC shall not be liable to Coin Purchaser or to any third party as a result of such suspension or termination. of the NAC services, or suspension or termination of your access to the NAC services, except to the extent otherwise expressly set forth herein.

c. In the event of an attack on NAC's website or computer system, a virus or malicious code in NAC's computer system, notwithstanding NAC's compliance with paragraph 1(m), or in the event NAC is required to suspend, modify, discontinue all or a portion of its services, or terminate its services by a court order or governmental order or direction, NAC shall not be liable to Coin Purchaser for any damage to Coin Purchaser as a result of such suspension, modification, discontinuance, or termination.

d. Coin Purchaser's AML Bitcoin digital wallet may be subject to attempted impersonation and or cyber-attack which could result in the material diminution, theft or transfer of Coin Purchaser's AML Bitcoin digital wallet. So long as NAC has complied with paragraph 1(m) in this Agreement, NAC shall not be liable for any damage caused to Coin Purchaser as a result of the use of NAC's computer system or website, including direct, indirect, or consequential damages, whether such damage is caused by a hack, data breach, malicious code, computer virus or criminal conduct.

e. Coin Purchaser acknowledges that although NAC intends to provide accurate and timely information on the NAC website, the NAC website (including, without limitation, the content) may not always be entirely accurate, complete, or current and may also include technical inaccuracies or typographical errors. In an effort to continue to provide Coin Purchaser with as complete and accurate information as practicable, information may be changed or updated from time to time without notice, including without limitation information regarding NAC's policies, products and services. Accordingly, Coin Purchaser agrees to verify that the information necessary to conduct transactions in AML Bitcoins is current before relying on information on the NAC website. NAC will not be liable for a transaction though the NAC website if the inability to complete or execute the transaction is based on Coin Purchaser's use of outdated technical information.

6. **Indemnity**. Coin Purchaser agrees, to the fullest extent provided by applicable law, to indemnify, defend, and hold harmless NAC, its subsidiaries, directors, officers, employees and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages") to the extent that any such Damages are based upon or arise out of a misrepresentation by Coin Purchaser under this agreement or Coin Purchaser's violation of any law, statute, rule, or regulation of a nation or subdivision thereof having jurisdiction over Coin Purchaser.

7. **Succession**. Except as otherwise provided in this Agreement, this Agreement shall be binding upon and inure to the benefit of Coin Purchaser, NAC, and their respective heirs, successors and assigns.

8. **Assignment**. The rights, benefits and obligations of Coin Purchaser under this Agreement and in Coin Purchaser's AML Bitcoin digital wallet shall not be assignable; except Coin Purchaser may transfer ownership to an entity wholly owned by Coin Purchaser, or from a wholly owned entity to that entity's owner, to a trust in which Coin Purchaser is a trustor, for estate planning purposes, or by (or as a result of intestate or testate succession. Any other purported assignment in violation of this Agreement Section shall be null and void and of no force and effect.

9. **Retroactive.** This Agreement shall be retroactive to the date of Coin Purchaser's original purchase.

10. **Amendment and Modification.** To the extent necessary for NAC to comply with laws, statutes, regulations, and rules pertaining to anti-money laundering, anti-terrorist financing, know your customer rules, anti-financial fraud provisions, or to modify any technical aspects of the website to assure a safe and secure and government compliant system to transact transfers or exchanges in AML Bitcoins (or AML Tokens), NAC may, without advance notice to Coin Purchaser, amend and modify the terms and conditions on its website by posting same thereon and/or by sending notice to Coin Purchaser via email, and such amended terms and modified terms and conditions shall be effective at such time.

DocuSign Envelope ID: 6F8D6926-78AD-43B5-8778-808B647D0930

11. **Arbitration**. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including the arbitrability of any controversy or claim, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules and the Optional Rules for Emergency Measures of Protection of the American Arbitration Association ("AAA"). Any provisional remedy which would be available from a court of law shall be available from the arbitrator to the parties to this Agreement pending arbitration. The arbitrator(s) shall be guided by AAA Rules in allowing discovery and all issues regarding compliance with discovery requests shall be decided by the arbitrator(s). The arbitrator(s) may allow additional discovery utilizing Rule 34 of the U.S. Federal Rules of Civil Procedure as a guide. The Federal Arbitration Act shall govern all arbitration proceedings under this Agreement. This Agreement shall in all other respects be governed and interpreted by the internal laws of the State of Nevada United States of America, excluding any conflicts or choice of law rule or principles that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. The arbitration shall be conducted in Clark County, Nevada, United States of America, and such venue shall be considered mandatory and not permissive. The arbitrator must be familiar with the operations of digital currencies. All fees and expenses of the arbitration shall be borne by the parties equally. Each Party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs, however, the prevailing Party may, if the arbitrator(s) so determines, be entitled to an award of reasonable attorney's fees and expenses and such party's share of the arbitration fees and expenses. This agreement to arbitrate shall survive the termination and repudiation of this Agreement. Any award rendered in such arbitration shall be final and binding on the parties and may be entered in any court of competent jurisdiction to the extent necessary for the enforcement thereof.

12. **Injunctive Relief**. Coin Purchaser, NAC and Andrade each agree and understand that under certain circumstances, damages and legal remedies may be insufficient to protect the parties' interests. Accordingly, the parties agree that notwithstanding the arbitration provision in this Agreement, they may pursue claims for injunctive relief in court and outside of the arbitration forum, and in that regard, each party consents to jurisdiction in the courts in Clark County, Nevada and each of the parties agrees that only the federal or state courts in Clark County, Nevada shall have venue over such disputes between the parties seeking injunctive relief.

13. **Governing Law**. This Agreement and all claims related to or arising from it or arising from the parties' relationship shall be governed by and construed in accordance with the laws of the State of Nevada and to the extent applicable, the United States, irrespective of Nevada's choice-of-law principles.

14. **Interpretation**. The recitals to this Agreement are incorporated into and made a part of this Agreement; titles of paragraphs are for convenience only and are not to be considered a part of this Agreement.

15. **Severability**. In the event any one or more of the provisions of this Agreement is declared to be void or otherwise unenforceable, the remainder of this Agreement shall survive and such provision(s) shall be deemed modified or amended so as to fulfill the intent of the parties hereto.

16. **Entire Agreement**. This Agreement is the final written expression of, and the complete and exclusive statement of, all the agreements, conditions, promises and covenants between the parties with respect to the purchase contemplated by this Agreement and the use of NAC website, as modified by the terms

and conditions thereof. This Agreement supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. Coin Purchaser declares, represents, acknowledges, and warrants that no promise, inducement, understanding, or agreement not expressed in this Agreement or in the website, subject to modifications thereof as set forth elsewhere in this Agreement, has been made to Coin Purchaser.

17. **Waiver**. None of the terms of this Agreement or any term, right or remedy hereunder shall be deemed waived unless such waiver is in writing and signed by the party to be charged therewith and in no event by reason of any failure to assert or delay in asserting any such term, right or remedy or similar term, right or remedy hereunder.

18. **Notices**. Any and all notices required or permitted under this Agreement shall be in writing and shall be hand-delivered or mailed, courier delivery service, certified mail, return receipt requested, or emailed and addressed to:

If to NAC or Andrade:
via e-mail:

To a street address

If to Coin Purchaser:
via email: to the e-mail address of record for the Coin Purchaser or to the email address specified here:

To a street address:
:

The parties acknowledge their acceptance of this agreement with their signatures below.

NAC FOUNDATION, LLC

DocuSigned by:

0038A9134E1442B...

Its Founder & CEO

MARCUS ANDRADE

COIN PURCHASER

Boruch Lichter

DocuSign Envelope ID: 6F8D6926-78AD-43B5-8778-808B647D0930

COIN PURCHASER INFORMATION (and if Coin Purchaser is an entity, then this information shall be provided as to the managing member, managing or general partner, president, or trustee of such

FULL NAME (PRINT): Boruch Lichter

ADDRESS:

CITY / STATE:

DATE OF BIRTH:

CLIENT REP NAME:

PHONE NUMBER:

EMAIL ADDRESS:

Additionally, with respect to a Coin Purchaser who is an entity:

If a corporation of limited liability company:
Name:
Type of entity:
State of Incorporation or creation:
Address for mailing:
Employer ID:
Number of shareholders, partners, or members:
Identify of all shareholders and members
(name, address, birthdate)
(attach additional pages if necessary to
list all such information):

If a partnership:
Name:
Address of the General Partner:
Employer ID no., if any:
Number of partners (include
all general and limited partner, if any):
Identify all partners (name, address, birthdate)
(attach additional pages if necessary to
list all such information):

# VALIDATION & QUALITY ASSURANCE FORM

This form is to be asked to the client by the office staff when calling the client and scheduling his or her Wallet Instillation and/or verifying a purchase, return, or other transaction. A copy of this completed form must be in the file of every client.

Client Name: Baruch Lichter

Staff Members Name: Christopher Ruz

**All questions below must be asked to the Client by the Staff Member. The client must be informed that the call will be recorded for Validation & Quality Assurances.**

1. How many AML Tokens or Coins are you purchasing? 85,714 / 23,223
   (Confirm the amount on the Purchase Agreement)

2. What is the price per AML Token or Coin at which you are purchasing? $.35 / $.43
   (Confirm the price per Coin or Token on the Client's Purchase Agreement)

3. As stated in your Purchase Agreement, you do understand that there is no asset underlying the AML Token or Coin? (Y) N

   *(If the Client has stated that he or she was told that any other asset underlies the Token or Coin, you will need to tell him or her that it is not. Tell the Client that they can get a full refund if they wish minus a $25 dollar processing fee. If the Client decides to do so, notify their Client Representative and the Compliance Officer.)*

4. Are you the one who completed and sent us the Purchase Agreement? (Y) N
   *(If Client did not complete the Purchase Agreement himself or herself, then tell the Client that they need to fill it out themselves, or to send us a copy of a Power of Attorney specifically identifying the signatory to the Purchase Agreement, signed and notarized by both the Client and that signatory." If they refuse to, provide them a full refund minus the $25 dollar processing fee.)*

EX3170-075

5. Do you understand that the Purchase Agreement is a legal document outlining the different conditions and terms that are related to the sale of goods? (Y) N
(If the Client says no(?), then offer him or her a full refund.)

6. Do you feel that your Client Representative is honest and has integrity? (Y) N
7. What is your intended use of the Token or Coin(s) that you have purchased?
(If the Client's response to this question is inconsistent with any other information available in the client's file, notify the Compliance Officer once the questions have concluded.)

If No on questions 3, 4, 5, or 6 is selected, then offer the Client a full refund and write down why the client felt that way in the space below. Then notify the Compliance Officer immediately.

Comments

Intended use – early access to Foundation products

Client estimated number of tokens purchased

EX3170-076

Staff Member Signature

Dec 11 2018
Date

EX3170-077

1B085-AML BITCOIN PRE ICO-000077

6-David Lapin

EX3170-078

1B085-AML BITCOIN PRE ICO-000078

# PURCHASE AGREEMENT

This Agreement is made by and between NAC Foundation, LLC ('NAC"), Marcus Andrade ("Andrade") and B. DAVID LAPIN ("Coin Purchaser") and is effective as of AUGUST 8, 2017.

## Recitals

A. NAC is engaged in the creation and issuance of virtual coins;

B. NAC has developed and is now upgrading a new coin known as the AML Bitcoin which includes software to protect the virtual coins in a secure "wallet";

C. Andrade owns and can make available from his own account AML Tokens than can be exchanged for AML Bitcoins; and

D. Coin Purchaser desires to and intends to acquire the AML Bitcoin when it becomes available in accordance with the terms of this Agreement by exchanging AML Tokens for AML Bitcoins.

## Agreement

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, Coin Purchaser, Andrade and NAC agree as follows:

1. **Purchase; Price; Wallet.**

(a) Coin Purchaser agrees to purchase and Andrade agrees to sell 57,143 [number] of AML Tokens that may and will be exchanged for AML Bitcoins for a purchase price of $.35 per coin (35 cents) for a total purchase price of $ 20,000 (the "Purchase Price"), each AML Token being exchangeable for one AML Bitcoin, i.e., one for one.

(b) Coin Purchaser shall pay the Purchase Price by the transfer to an account specified by Andrade in U.S. Dollars within 48 hours of the execution and delivery by NAC and Andrade of this Agreement to Coin Purchaser.

(c) Concurrent with Purchaser's execution and delivery of this Agreement, Coin Purchaser, if an individual, shall deliver to NAC (or its representative) a copy of a government issued identification (as more particularly described in subparagraph (l) below.

(d) The AML Bitcoins will be delivered to and maintained in an electronic "wallet" (being a secure digital wallet used to store, send, and receive digital currency) maintained by Coin Purchaser or its designee. NAC shall deliver to Purchaser technical information to enable Coin Purchaser to obtain and maintain a wallet for the AML Token(s) purchased and shall provide all technical support to assist Coin Purchaser in that regard.

(e) Coin Purchaser understands that the AML Bitcoin is in the process of being upgraded to be compliant with anti-money laundering laws, and that NAC anticipates that process to be completed in approximately three to six months.

BDL

(f) Upon the availability of the AML Bitcoin, NAC shall deliver to Coin Purchaser all information, including technical information, necessary to enable Coin Purchaser to obtain said wallet to store, maintain, exchange and transfer the AML Bitcoins, including the mandatory I.D. Verification; and NAC shall provide all technical support to assist Coin Purchaser in that regard. The technical support personnel shall be highly trained, skilled and competent regarding all technology necessary to maintain, exchange, and trade in digital- or e-commerce, including digital international commerce, cyber currencies and digital coins in general and AML Bitcoins in particular. NAC shall provide on-going technical support available, at a minimum, during the hours that cyber currency and digital coin exchanges are open and available for the conduct of business. NAC understands and acknowledges that Coin Purchaser may not have a high level of technical sophistication sufficient to independently set up a wallet to receive, store, send and receive digital currency without the assistance of and technical support provided by NAC.

(g) Coin Purchaser agrees to provide accurate identification information to NAC in connection with the creation of the AML Bitcoin wallet. Should any such information be inaccurate, Coin Purchaser will promptly deliver correct information to NAC.

(h) If Coin Purchaser's payment is insufficient to cover the entire Purchase Price for the number of AML Tokens set forth in subparagraph (a) above, Andrade shall have no obligation to sell and deliver a lesser number of AML Tokens; and NAC and Andrade may immediately reverse the transaction, crediting and returning to Coin Purchaser that part of the Purchase Price that was credited to Andrade's account or to NAC.

(i) Upon the completion of the upgrade of the AML Bitcoin and the delivery of information necessary to affect an exchange of the AML Tokens for the AML Bitcoins, Andrade, Coin Purchaser and NAC/ will exchange Coin Purchaser's AML Tokens for the AML Bitcoins on a one to one basis.

(j) If Coin Purchaser does not initiate the exchange of the AML Tokens to the AML Bitcoins within 6 months after the AML Bitcoins become available, NAC or Andrade may terminate, rescind, and cancel the purchase of AML Tokens and repay to Coin Purchaser the Purchase Price, less the equivalent of a US $25-dollar processing fee. In the event NAC or Andrade so terminates, rescinds, or cancels, NAC or Andrade shall notify Coin Purchaser of such termination, rescission, or cancellation within 24 hours and shall return the Purchase Price to Coin Purchaser within 10 business days. NAC will make payment to Coin Purchaser using the payment systems account from which payment had been received. Even after repayment, Coin Purchaser's former account(s) remains subject to the potential for NAC reporting suspicious activities to governmental authorities.

(k) Coin Purchaser hereby agrees to comply with and be bound by all conditions, policies, rules and regulations on NAC's Website and of all exchanges in which the AML Bitcoin may be offered, transferred, exchanged or sold.

(l) No AML Token may be exchanged for an AML Bitcoin unless Coin Purchaser's legal identity is confirmed. In the case of an individual this shall require providing a copy of government issued identification that has a photograph of the individual, such as a Driver's License or Passport; in the case of a corporation, limited liability company, or partnership, the verification shall be such a document of the managing member, managing or general partner, or president, in the case of a

EX3170-080

trust, the verification shall be such a document of the trustee of the trust.

(m) NAC shall operate its computer systems and website and maintain them in such a manner as a reasonably prudent person in the business of conducing transactions based on a sophisticated computer networking system and shall exercise due care and good faith, including employing technicians and personnel highly skilled in the operation of such a highly sophisticated computer and software based technologies; and NAC shall employ and utilize the most sophisticated and safest methods of internet and computer security available sufficient to assure that at all times its computer network provides a safe and secure environment for the conduct of the business anticipated by this Agreement.

(n) The purchase in this Agreement shall also be governed by the terms and conditions of the website, "atencoin.com", which terms and conditions are incorporated herein. To the extent of a conflict between the terms and conditions in such website and this Agreement relating to the operation and the technical aspects of conducting transactions on said website, the terms and conditions in said website control. To the extent of a conflict between the terms and conditions on said website and this Agreement pertaining to the purchase of AML Tokens, the AML Bitcoins, the price, NAC's liability, indemnity, Coin Purchaser's representations, and obligations undertaken by NAC to Coin Purchaser, this Agreement controls.

2. **NAC's Right to Cancellation and Rescission**. In the event NAC receives or possesses information that would lead to a reasonable and good faith suspicion that a transaction in the AML Bitcoin or AML Token is violating or is about to violate money laundering, anti-terrorist financing, or anti-fraud laws of the United States or of any nation or that the use of AML Bitcoins or AML Tokens is or is about to be used to facilitate a violation of such laws or a financial crime, or is in violation of a validly issued court order or other valid governmental order, NAC may refuse to process, or may rescind, cancel or reverse, any purchase or sale of AML Tokens or AML Bitcoins. Such right shall exist even after funds have been debited from Coin Purchaser's account(s). So long as NAC's suspicion was reasonable and in good faith, NAC shall not be obligated to allow Coin Purchaser to reinstate a purchase or AML token exchange or AML Bitcoin transfer order at the same price or on the same terms as the cancelled transaction.

3. **Representations, Warranties, and Covenants.**

a. NAC represents and Coin Purchaser understands, acknowledges and agrees that Black Gold International Inc. (BGCI") promotes AML Bitcoins; BGCI and NAC are two separate and distinct entities; and BGCI's role is to act solely as a third party to assist in the promotion of the AML Bitcoin as a cybercurrency.

b. NAC represents and Coin Purchaser understands, acknowledges and agrees that Coin Purchaser has no right to and will not share or participate in any way with BGCI's revenue, profit, or losses earned in connection with its activities concerning the AML Bitcoin.

c. NAC represents and Coin Purchaser understands, acknowledges and agrees AML Bitcoin does not have any underlying collateral; the AML Bitcoin is merely an unsecured cyber currency or digital coin.

d. NAC represents that it will use its best efforts to create a digital (or cybercurrency) that will be

BJ

compliant with the laws, statutes, rules, regulations, and procedures of the United States and other jurisdictions in which such currency may be used or exchanged that protect against money-laundering and terrorist financing (hereinafter "AML Laws"), i.e. AML Bitcoin will be AML Compliant.

e. NAC will use its best efforts to monitor all the transactions (purchases, exchanges, sales) of AML Bitcoins in an effort to detect suspicious activities that may violate AML Laws.

f. NAC and Coin Purchaser acknowledge and agree that the supply of AML Bitcoin and NAC services through the NAC website are subject to United States and international export controls and economic sanctions requirements.

g. Coin Purchaser understands, acknowledges and agrees that it is not purchasing the AML Bitcoin through the NAC website or from Andrade for the purpose of facilitating any illegal or unlawful activities, and the AML Bitcoin will not be used for such purpose.

h. Coin Purchaser understands, acknowledges and agrees that it intends to comply with all laws and regulations of the United States governing currency transmission activity, all State laws governing such, and all laws governing such in Coin Purchaser's jurisdiction.

i. Coin Purchaser understands, acknowledges and agrees that AML Bitcoin will not be redeemed by NAC and Coin Purchaser is not relying upon NAC to be a source of liquidity for Purchaser and Purchaser's AML Bitcoin.

j. Coin Purchaser understands, acknowledges and agrees that AML Bitcoins are mediums of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving the participation of Coin Purchaser and NAC or its affiliates.

k. Coin Purchaser understands, acknowledges, and agrees that it has not purchased the AML Bitcoins for investment purposes and expects no return on investment.

l. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoin and the AML Token are not securities and are not subject to the securities laws of any governmental entity.

m. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoins are intended to be and are solely an Internet based exchange medium.

n. Coin Purchaser understands, acknowledges and agrees that by purchasing the AML Tokens and exchanging them for AML Bitcoins or by purchasing, selling, exchanging, and transferring AM Bitcoins, and by using the wallet, or obtaining and using technical information and technical support provided by NAC, Coin Purchaser is not participating in and not becoming a member or investor in any pooled interest, business entity, common enterprise, or business venture with Andrade, NAC or any of its or their affiliates.

o. Coin Purchaser understands, acknowledges and agrees that this Agreement does not create or constitute a debt of NAC to Coin Purchaser and that NAC is not obligated to pay Coin Purchaser, except as may be otherwise specifically provided in this Agreement.

p. Coin Purchaser understands, acknowledges and agrees that NAC and its affiliates can, without notice, purchase AML Bitcoins or AML Tokens on the secondary market after the initial issuance, and that they can resell the AML Bitcoins or AML Tokens they purchased. NAC and Andrade represent and agree that such sales will not be such as to detrimentally harm the market for AML Bitcoins, such that the economic interests of Coin Purchasers will be harmed.

q. NAC is a limited liability company duly organized and existing under the laws of the State of Nevada and NAC has its principal place of business in Las Vegas, Nevada.

r. Coin Purchaser represents that in making the purchase in this Agreement it is relying solely on its own judgment, belief and knowledge as to the nature of the currency and the cyber coin or digital market and industry and Coin Purchaser is not relying on any statements made by Andrade or NAC, made in any NAC advertising or marketing materials, or made on NAC's website; and Coin Purchaser acknowledges and agrees that it shall not assert any claims against NAC or Andrade based on information on the NAC website having been modified, changed or updated.

4. **Taxation**. NAC shall have no obligation to prepare, provide, or file any financial or transactional information, tax returns, or information forms to Coin Purchaser in connection with Coin Purchaser's reporting of any income to tax authorities within Coin Purchaser's jurisdiction. Notwithstanding the foregoing, should tax authorities require NAC to provide such information, NAC shall do so.

5. **Limitations on Liability**.

a. NAC intends to track AML Bitcoin to identifiable persons and business entities and, if required by law, will file suspicious activity or similar reports with relevant governmental agencies in nations where it does business. In filing such reports NAC shall exercise reasonable care and act in good faith based on the information it has and that is provided to it. Coin Purchaser acknowledges that, notwithstanding NAC's exercise of reasonable care and good faith, such reports may be erroneous or contain incomplete or inaccurate information. Coin Purchaser acknowledges that generally such reports to governmental agencies that are required to be made are privileged communications, as a result of which, NAC would not be subject to a claim for damages in the event that NAC makes an incorrect or incomplete report having exercised reasonable care and good faith.

b. In the event, NAC has a reasonable and good faith belief that Coin Purchaser is engaging in conduct in violation of laws, rules, or regulations concerning anti-money laundering, anti-terrorist financing, or anti-financial fraud, NAC may, without liability to Coin Purchaser, suspend or terminate Coin Purchaser's access to the NAC website or services. In that event, NAC shall not be liable to Coin Purchaser or to any third party as a result of such suspension or termination. of the NAC services, or suspension or termination of your access to the NAC services, except to the extent otherwise expressly set forth herein.

c. In the event of an attack on NAC's website or computer system, a virus or malicious code in NAC's computer system, notwithstanding NAC's compliance with paragraph 1(m), or in the event NAC is required to suspend, modify, discontinue all or a portion of its services, or terminate its services by a court order or governmental order or direction, NAC shall not be liable to Coin Purchaser for any damage to Coin Purchaser as a result of such suspension, modification, discontinuance, or termination.

d. Coin Purchaser's AML Bitcoin digital wallet may be subject to attempted impersonation and or cyber-attack which could result in the material diminution, theft or transfer of Coin Purchaser's AML Bitcoin digital wallet. So long as NAC has complied with paragraph 1(m) in this Agreement, NAC shall not be liable for any damage caused to Coin Purchaser as a result of the use of NAC's computer system or website, including direct, indirect, or consequential damages, whether such damage is caused by a hack, data breach, malicious code, computer virus or criminal conduct.

e. Coin Purchaser acknowledges that although NAC intends to provide accurate and timely information on the NAC website, the NAC website (including, without limitation, the content) may not always be entirely accurate, complete, or current and may also include technical inaccuracies or typographical errors. In an effort to continue to provide Coin Purchaser with as complete and accurate information as practicable, information may be changed or updated from time to time without notice, including without limitation information regarding NAC's policies, products and services. Accordingly, Coin Purchaser agrees to verify that the information necessary to conduct transactions in AML Bitcoins is current before relying on information on the NAC website. NAC will not be liable for a transaction though the NAC website if the inability to complete or execute the transaction is based on Coin Purchaser's use of outdated technical information.

6. **Indemnity**. Coin Purchaser agrees, to the fullest extent provided by applicable law, to indemnify, defend, and hold harmless NAC, its subsidiaries, directors, officers, employees and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages") to the extent that any such Damages are based upon or arise out of a misrepresentation by Coin Purchaser under this agreement or Coin Purchaser's violation of any law, statute, rule, or regulation of a nation or subdivision thereof having jurisdiction over Coin Purchaser.

7. **Succession**. Except as otherwise provided in this Agreement, this Agreement shall be binding upon and inure to the benefit of Coin Purchaser, NAC, and their respective heirs, successors and assigns.

8. **Assignment**. The rights, benefits and obligations of Coin Purchaser under this Agreement and in Coin Purchaser's AML Bitcoin digital wallet shall not be assignable; except Coin Purchaser may transfer ownership to an entity wholly owned by Coin Purchaser, or from a wholly owned entity to that entity's owner, to a trust in which Coin Purchaser is a trustor, for estate planning purposes, or by (or as a result of intestate or testate succession. Any other purported assignment in violation of this Agreement Section shall be null and void and of no force and effect.

9. **Retroactive.** This Agreement shall be retroactive to the date of Coin Purchaser's original purchase.

10. **Amendment and Modification.** To the extent necessary for NAC to comply with laws, statutes, regulations, and rules pertaining to anti-money laundering, anti-terrorist financing, know your customer rules, anti-financial fraud provisions, or to modify any technical aspects of the website to assure a safe and secure and government compliant system to transact transfers or exchanges in AML Bitcoins (or AML Tokens), NAC may, without advance notice to Coin Purchaser, amend and modify the terms and conditions on its website by posting same thereon and/or by sending notice to Coin Purchaser via email, and such amended terms and modified terms and conditions shall be effective at such time.

BR

11. **Arbitration**. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including the arbitrability of any controversy or claim, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules and the Optional Rules for Emergency Measures of Protection of the American Arbitration Association ("AAA"). Any provisional remedy which would be available from a court of law shall be available from the arbitrator to the parties to this Agreement pending arbitration. The arbitrator(s) shall be guided by AAA Rules in allowing discovery and all issues regarding compliance with discovery requests shall be decided by the arbitrator(s). The arbitrator(s) may allow additional discovery utilizing Rule 34 of the U.S. Federal Rules of Civil Procedure as a guide. The Federal Arbitration Act shall govern all arbitration proceedings under this Agreement. This Agreement shall in all other respects be governed and interpreted by the internal laws of the State of Nevada United States of America, excluding any conflicts or choice of law rule or principles that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. The arbitration shall be conducted in Clark County, Nevada, United States of America, and such venue shall be considered mandatory and not permissive. The arbitrator must be familiar with the operations of digital currencies. All fees and expenses of the arbitration shall be borne by the parties equally. Each Party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs, however, the prevailing Party may, if the arbitrator(s) so determines, be entitled to an award of reasonable attorney's fees and expenses and such party's share of the arbitration fees and expenses. This agreement to arbitrate shall survive the termination and repudiation of this Agreement. Any award rendered in such arbitration shall be final and binding on the parties and may be entered in any court of competent jurisdiction to the extent necessary for the enforcement thereof.

12. **Injunctive Relief**. Coin Purchaser, NAC and Andrade each agree and understand that under certain circumstances, damages and legal remedies may be insufficient to protect the parties' interests. Accordingly, the parties agree that notwithstanding the arbitration provision in this Agreement, they may pursue claims for injunctive relief in court and outside of the arbitration forum, and in that regard, each party consents to jurisdiction in the courts in Clark County, Nevada and each of the parties agrees that only the federal or state courts in Clark County, Nevada shall have venue over such disputes between the parties seeking injunctive relief.

13. **Governing Law**. This Agreement and all claims related to or arising from it or arising from the parties' relationship shall be governed by and construed in accordance with the laws of the State of Nevada and to the extent applicable, the United States, irrespective of Nevada's choice-of-law principles.

14. **Interpretation**. The recitals to this Agreement are incorporated into and made a part of this Agreement; titles of paragraphs are for convenience only and are not to be considered a part of this Agreement.

15. **Severability**. In the event any one or more of the provisions of this Agreement is declared to be void or otherwise unenforceable, the remainder of this Agreement shall survive and such provision(s) shall be deemed modified or amended so as to fulfill the intent of the parties hereto.

16. **Entire Agreement**. This Agreement is the final written expression of, and the complete and exclusive statement of, all the agreements, conditions, promises and covenants between the parties with respect to the purchase contemplated by this Agreement and the use of NAC website, as modified by the terms

and conditions thereof. This Agreement supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. Coin Purchaser declares, represents, acknowledges, and warrants that no promise, inducement, understanding, or agreement not expressed in this Agreement or in the website, subject to modifications thereof as set forth elsewhere in this Agreement, has been made to Coin Purchaser.

17. **Waiver**. None of the terms of this Agreement or any term, right or remedy hereunder shall be deemed waived unless such waiver is in writing and signed by the party to be charged therewith and in no event by reason of any failure to assert or delay in asserting any such term, right or remedy or similar term, right or remedy hereunder.

18. **Notices**. Any and all notices required or permitted under this Agreement shall be in writing and shall be hand-delivered or mailed, courier delivery service, certified mail, return receipt requested, or emailed and addressed to:

If to NAC or Andrade:
via e-mail:

To a street address

If to Coin Purchaser:
via email: to the e-mail address of record for the Coin Purchaser or to the email address specified here:

To a street address:

The parties acknowledge their acceptance of this agreement with their signatures below.

NAC FOUNDATION, LLC

By_______________________

Its _______________________

COIN PURCHASER

EX3170-086

COIN PURCHASER INFORMATION (and if Coin Purchaser is an entity, then this information shall be provided as to the managing member, managing or general partner, president, or trustee of such

FULL NAME (PRINT): BERRIL DAVID LAPIN

ADDRESS:

CITY / STATE:

DATE OF BIRTH:

CLIENT REP NAME:

PHONE NUMBER:

EMAIL ADDRESS:

Additionally, with respect to a Coin Purchaser who is an entity:

<u>If a corporation of limited liability company</u>:
Name:
Type of entity:
State of Incorporation or creation:
Address for mailing:
Employer ID:
Number of shareholders, partners, or members:
Identify of all shareholders and members (name, address, birthdate) (attach additional pages if necessary to list all such information):

<u>If a partnership</u>:
Name:
Address of the General Partner:
Employer ID no., if any:
Number of partners (include all general and limited partner, if any):
Identify all partners (name, address, birthdate) (attach additional pages if necessary to list all such information):



EX3170-088

1B085-AML BITCOIN PRE ICO-000088

7 Thomas Bowen

EX3170-089

# PURCHASE AGREEMENT

This Agreement is made by and between NAC Foundation, LLC ('NAC"), Marcus Andrade ("Andrade") and Thomas H Bowen Jr. ("Coin Purchaser") and is effective as of August 8, 2017.

## Recitals

A. NAC is engaged in the creation and issuance of virtual coins;

B. NAC has developed and is now upgrading a new coin known as the AML Bitcoin which includes software to protect the virtual coins in a secure "wallet";

C. Andrade owns and can make available from his own account AML Tokens than can be exchanged for AML Bitcoins; and

D. Coin Purchaser desires to and intends to acquire the AML Bitcoin when it becomes available in accordance with the terms of this Agreement by exchanging AML Tokens for AML Bitcoins.

## Agreement

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, Coin Purchaser, Andrade and NAC agree as follows:

1. **Purchase; Price; Wallet**.

(a) Coin Purchaser agrees to purchase and Andrade agrees to sell 28,571 [number] of AML Tokens that may and will be exchanged for AML Bitcoins for a purchase price of $.35 per coin (35 cents) for a total purchase price of $10,000 (the "Purchase Price"), each AML Token being exchangeable for one AML Bitcoin, i.e., one for one.

(b) Coin Purchaser shall pay the Purchase Price by the transfer to an account specified by Andrade in U.S. Dollars within 48 hours of the execution and delivery by NAC and Andrade of this Agreement to Coin Purchaser.

(c) Concurrent with Purchaser's execution and delivery of this Agreement, Coin Purchaser, if an individual, shall deliver to NAC (or its representative) a copy of a government issued identification (as more particularly described in subparagraph (l) below.

(d) The AML Bitcoins will be delivered to and maintained in an electronic "wallet" (being a secure digital wallet used to store, send, and receive digital currency) maintained by Coin Purchaser or its designee. NAC shall deliver to Purchaser technical information to enable Coin Purchaser to obtain and maintain a wallet for the AML Token(s) purchased and shall provide all technical support to assist Coin Purchaser in that regard.

(e) Coin Purchaser understands that the AML Bitcoin is in the process of being upgraded to be compliant with anti-money laundering laws, and that NAC anticipates that process to be completed in approximately three to six months.

(f) Upon the availability of the AML Bitcoin, NAC shall deliver to Coin Purchaser all information, including technical information, necessary to enable Coin Purchaser to obtain said wallet to store, maintain, exchange and transfer the AML Bitcoins, including the mandatory I.D. Verification; and NAC shall provide all technical support to assist Coin Purchaser in that regard. The technical support personnel shall be highly trained, skilled and competent regarding all technology necessary to maintain, exchange, and trade in digital- or e-commerce, including digital international commerce, cyber currencies and digital coins in general and AML Bitcoins in particular. NAC shall provide on-going technical support available, at a minimum, during the hours that cyber currency and digital coin exchanges are open and available for the conduct of business. NAC understands and acknowledges that Coin Purchaser may not have a high level of technical sophistication sufficient to independently set up a wallet to receive, store, send and receive digital currency without the assistance of and technical support provided by NAC.

(g) Coin Purchaser agrees to provide accurate identification information to NAC in connection with the creation of the AML Bitcoin wallet. Should any such information be inaccurate, Coin Purchaser will promptly deliver correct information to NAC.

(h) If Coin Purchaser's payment is insufficient to cover the entire Purchase Price for the number of AML Tokens set forth in subparagraph (a) above, Andrade shall have no obligation to sell and deliver a lesser number of AML Tokens; and NAC and Andrade may immediately reverse the transaction, crediting and returning to Coin Purchaser that part of the Purchase Price that was credited to Andrade's account or to NAC.

(i) Upon the completion of the upgrade of the AML Bitcoin and the delivery of information necessary to affect an exchange of the AML Tokens for the AML Bitcoins, Andrade, Coin Purchaser and NAC/ will exchange Coin Purchaser's AML Tokens for the AML Bitcoins on a one to one basis.

(j) If Coin Purchaser does not initiate the exchange of the AML Tokens to the AML Bitcoins within 6 months after the AML Bitcoins become available, NAC or Andrade may terminate, rescind, and cancel the purchase of AML Tokens and repay to Coin Purchaser the Purchase Price, less the equivalent of a US $25-dollar processing fee. In the event NAC or Andrade so terminates, rescinds, or cancels, NAC or Andrade shall notify Coin Purchaser of such termination, rescission, or cancellation within 24 hours and shall return the Purchase Price to Coin Purchaser within 10 business days. NAC will make payment to Coin Purchaser using the payment systems account from which payment had been received. Even after repayment, Coin Purchaser's former account(s) remains subject to the potential for NAC reporting suspicious activities to governmental authorities.

(k) Coin Purchaser hereby agrees to comply with and be bound by all conditions, policies, rules and regulations on NAC's Website and of all exchanges in which the AML Bitcoin may be offered, transferred, exchanged or sold.

(l) No AML Token may be exchanged for an AML Bitcoin unless Coin Purchaser's legal identity is confirmed. In the case of an individual this shall require providing a copy of government issued identification that has a photograph of the individual, such as a Driver's License or Passport; in the case of a corporation, limited liability company, or partnership, the verification shall be such a document of the managing member, managing or general partner, or president, in the case of a

trust, the verification shall be such a document of the trustee of the trust.

(m) NAC shall operate its computer systems and website and maintain them in such a manner as a reasonably prudent person in the business of conducing transactions based on a sophisticated computer networking system and shall exercise due care and good faith, including employing technicians and personnel highly skilled in the operation of such a highly sophisticated computer and software based technologies; and NAC shall employ and utilize the most sophisticated and safest methods of internet and computer security available sufficient to assure that at all times its computer network provides a safe and secure environment for the conduct of the business anticipated by this Agreement.

(n) The purchase in this Agreement shall also be governed by the terms and conditions of the website, "atencoin.com", which terms and conditions are incorporated herein. To the extent of a conflict between the terms and conditions in such website and this Agreement relating to the operation and the technical aspects of conducting transactions on said website, the terms and conditions in said website control. To the extent of a conflict between the terms and conditions on said website and this Agreement pertaining to the purchase of AML Tokens, the AML Bitcoins, the price, NAC's liability, indemnity, Coin Purchaser's representations, and obligations undertaken by NAC to Coin Purchaser, this Agreement controls.

2. **NAC's Right to Cancellation and Rescission**. In the event NAC receives or possesses information that would lead to a reasonable and good faith suspicion that a transaction in the AML Bitcoin or AML Token is violating or is about to violate money laundering, anti-terrorist financing, or anti-fraud laws of the United States or of any nation or that the use of AML Bitcoins or AML Tokens is or is about to be used to facilitate a violation of such laws or a financial crime, or is in violation of a validly issued court order or other valid governmental order, NAC may refuse to process, or may rescind, cancel or reverse, any purchase or sale of AML Tokens or AML Bitcoins. Such right shall exist even after funds have been debited from Coin Purchaser's account(s). So long as NAC's suspicion was reasonable and in good faith, NAC shall not be obligated to allow Coin Purchaser to reinstate a purchase or AML token exchange or AML Bitcoin transfer order at the same price or on the same terms as the cancelled transaction.

3. **Representations, Warranties, and Covenants.**

a. NAC represents and Coin Purchaser understands, acknowledges and agrees that Black Gold International Inc. (BGCI") promotes AML Bitcoins; BGCI and NAC are two separate and distinct entities; and BGCI's role is to act solely as a third party to assist in the promotion of the AML Bitcoin as a cybercurrency.

b. NAC represents and Coin Purchaser understands, acknowledges and agrees that Coin Purchaser has no right to and will not share or participate in any way with BGCI's revenue, profit, or losses earned in connection with its activities concerning the AML Bitcoin.

c. NAC represents and Coin Purchaser understands, acknowledges and agrees AML Bitcoin does not have any underlying collateral; the AML Bitcoin is merely an unsecured cyber currency or digital coin.

d. NAC represents that it will use its best efforts to create a digital (or cybercurrency) that will be

compliant with the laws, statutes, rules, regulations, and procedures of the United States and other jurisdictions in which such currency may be used or exchanged that protect against money-laundering and terrorist financing (hereinafter "AML Laws"), i.e. AML Bitcoin will be AML Compliant.

e. NAC will use its best efforts to monitor all the transactions (purchases, exchanges, sales) of AML Bitcoins in an effort to detect suspicious activities that may violate AML Laws.

f. NAC and Coin Purchaser acknowledge and agree that the supply of AML Bitcoin and NAC services through the NAC website are subject to United States and international export controls and economic sanctions requirements.

g. Coin Purchaser understands, acknowledges and agrees that it is not purchasing the AML Bitcoin through the NAC website or from Andrade for the purpose of facilitating any illegal or unlawful activities, and the AML Bitcoin will not be used for such purpose.

h. Coin Purchaser understands, acknowledges and agrees that it intends to comply with all laws and regulations of the United States governing currency transmission activity, all State laws governing such, and all laws governing such in Coin Purchaser's jurisdiction.

i. Coin Purchaser understands, acknowledges and agrees that AML Bitcoin will not be redeemed by NAC and Coin Purchaser is not relying upon NAC to be a source of liquidity for Purchaser and Purchaser's AML Bitcoin.

j. Coin Purchaser understands, acknowledges and agrees that AML Bitcoins are mediums of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving the participation of Coin Purchaser and NAC or its affiliates.

k. Coin Purchaser understands, acknowledges, and agrees that it has not purchased the AML Bitcoins for investment purposes and expects no return on investment.

l. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoin and the AML Token are not securities and are not subject to the securities laws of any governmental entity.

m. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoins are intended to be and are solely an Internet based exchange medium.

n. Coin Purchaser understands, acknowledges and agrees that by purchasing the AML Tokens and exchanging them for AML Bitcoins or by purchasing, selling, exchanging, and transferring AM Bitcoins, and by using the wallet, or obtaining and using technical information and technical support provided by NAC, Coin Purchaser is not participating in and not becoming a member or investor in any pooled interest, business entity, common enterprise, or business venture with Andrade, NAC or any of its or their affiliates.

o. Coin Purchaser understands, acknowledges and agrees that this Agreement does not create or constitute a debt of NAC to Coin Purchaser and that NAC is not obligated to pay Coin Purchaser, except as may be otherwise specifically provided in this Agreement.

p. Coin Purchaser understands, acknowledges and agrees that NAC and its affiliates can, without notice, purchase AML Bitcoins or AML Tokens on the secondary market after the initial issuance, and that they can resell the AML Bitcoins or AML Tokens they purchased. NAC and Andrade represent and agree that such sales will not be such as to detrimentally harm the market for AML Bitcoins, such that the economic interests of Coin Purchasers will be harmed.

q. NAC is a limited liability company duly organized and existing under the laws of the State of Nevada and NAC has its principal place of business in Las Vegas, Nevada.

r. Coin Purchaser represents that in making the purchase in this Agreement it is relying solely on its own judgment, belief and knowledge as to the nature of the currency and the cyber coin or digital market and industry and Coin Purchaser is not relying on any statements made by Andrade or NAC, made in any NAC advertising or marketing materials, or made on NAC's website; and Coin Purchaser acknowledges and agrees that it shall not assert any claims against NAC or Andrade based on information on the NAC website having been modified, changed or updated.

4. **Taxation**. NAC shall have no obligation to prepare, provide, or file any financial or transactional information, tax returns, or information forms to Coin Purchaser in connection with Coin Purchaser's reporting of any income to tax authorities within Coin Purchaser's jurisdiction. Notwithstanding the foregoing, should tax authorities require NAC to provide such information, NAC shall do so.

5. **Limitations on Liability**.

a. NAC intends to track AML Bitcoin to identifiable persons and business entities and, if required by law, will file suspicious activity or similar reports with relevant governmental agencies in nations where it does business. In filing such reports NAC shall exercise reasonable care and act in good faith based on the information it has and that is provided to it. Coin Purchaser acknowledges that, notwithstanding NAC's exercise of reasonable care and good faith, such reports may be erroneous or contain incomplete or inaccurate information. Coin Purchaser acknowledges that generally such reports to governmental agencies that are required to be made are privileged communications, as a result of which, NAC would not be subject to a claim for damages in the event that NAC makes an incorrect or incomplete report having exercised reasonable care and good faith.

b. In the event, NAC has a reasonable and good faith belief that Coin Purchaser is engaging in conduct in violation of laws, rules, or regulations concerning anti-money laundering, anti-terrorist financing, or anti-financial fraud, NAC may, without liability to Coin Purchaser, suspend or terminate Coin Purchaser's access to the NAC website or services. In that event, NAC shall not be liable to Coin Purchaser or to any third party as a result of such suspension or termination. of the NAC services, or suspension or termination of your access to the NAC services, except to the extent otherwise expressly set forth herein.

c. In the event of an attack on NAC's website or computer system, a virus or malicious code in NAC's computer system, notwithstanding NAC's compliance with paragraph 1(m), or in the event NAC is required to suspend, modify, discontinue all or a portion of its services, or terminate its services by a court order or governmental order or direction, NAC shall not be liable to Coin Purchaser for any damage to Coin Purchaser as a result of such suspension, modification, discontinuance, or termination.

d. Coin Purchaser's AML Bitcoin digital wallet may be subject to attempted impersonation and or cyber-attack which could result in the material diminution, theft or transfer of Coin Purchaser's AML Bitcoin digital wallet. So long as NAC has complied with paragraph 1(m) in this Agreement, NAC shall not be liable for any damage caused to Coin Purchaser as a result of the use of NAC's computer system or website, including direct, indirect, or consequential damages, whether such damage is caused by a hack, data breach, malicious code, computer virus or criminal conduct.

e. Coin Purchaser acknowledges that although NAC intends to provide accurate and timely information on the NAC website, the NAC website (including, without limitation, the content) may not always be entirely accurate, complete, or current and may also include technical inaccuracies or typographical errors. In an effort to continue to provide Coin Purchaser with as complete and accurate information as practicable, information may be changed or updated from time to time without notice, including without limitation information regarding NAC's policies, products and services. Accordingly, Coin Purchaser agrees to verify that the information necessary to conduct transactions in AML Bitcoins is current before relying on information on the NAC website. NAC will not be liable for a transaction though the NAC website if the inability to complete or execute the transaction is based on Coin Purchaser's use of outdated technical information.

6. **Indemnity**. Coin Purchaser agrees, to the fullest extent provided by applicable law, to indemnify, defend, and hold harmless NAC, its subsidiaries, directors, officers, employees and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages") to the extent that any such Damages are based upon or arise out of a misrepresentation by Coin Purchaser under this agreement or Coin Purchaser's violation of any law, statute, rule, or regulation of a nation or subdivision thereof having jurisdiction over Coin Purchaser.

7. **Succession**. Except as otherwise provided in this Agreement, this Agreement shall be binding upon and inure to the benefit of Coin Purchaser, NAC, and their respective heirs, successors and assigns.

8. **Assignment**. The rights, benefits and obligations of Coin Purchaser under this Agreement and in Coin Purchaser's AML Bitcoin digital wallet shall not be assignable; except Coin Purchaser may transfer ownership to an entity wholly owned by Coin Purchaser, or from a wholly owned entity to that entity's owner, to a trust in which Coin Purchaser is a trustor, for estate planning purposes, or by (or as a result of intestate or testate succession. Any other purported assignment in violation of this Agreement Section shall be null and void and of no force and effect.

9. **Retroactive.** This Agreement shall be retroactive to the date of Coin Purchaser's original purchase.

10. **Amendment and Modification.** To the extent necessary for NAC to comply with laws, statutes, regulations, and rules pertaining to anti-money laundering, anti-terrorist financing, know your customer rules, anti-financial fraud provisions, or to modify any technical aspects of the website to assure a safe and secure and government compliant system to transact transfers or exchanges in AML Bitcoins (or AML Tokens), NAC may, without advance notice to Coin Purchaser, amend and modify the terms and conditions on its website by posting same thereon and/or by sending notice to Coin Purchaser via email, and such amended terms and modified terms and conditions shall be effective at such time.

11. **Arbitration**. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including the arbitrability of any controversy or claim, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules and the Optional Rules for Emergency Measures of Protection of the American Arbitration Association ("AAA"). Any provisional remedy which would be available from a court of law shall be available from the arbitrator to the parties to this Agreement pending arbitration. The arbitrator(s) shall be guided by AAA Rules in allowing discovery and all issues regarding compliance with discovery requests shall be decided by the arbitrator(s). The arbitrator(s) may allow additional discovery utilizing Rule 34 of the U.S. Federal Rules of Civil Procedure as a guide. The Federal Arbitration Act shall govern all arbitration proceedings under this Agreement. This Agreement shall in all other respects be governed and interpreted by the internal laws of the State of Nevada United States of America, excluding any conflicts or choice of law rule or principles that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. The arbitration shall be conducted in Clark County, Nevada, United States of America, and such venue shall be considered mandatory and not permissive. The arbitrator must be familiar with the operations of digital currencies. All fees and expenses of the arbitration shall be borne by the parties equally. Each Party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs, however, the prevailing Party may, if the arbitrator(s) so determines, be entitled to an award of reasonable attorney's fees and expenses and such party's share of the arbitration fees and expenses. This agreement to arbitrate shall survive the termination and repudiation of this Agreement. Any award rendered in such arbitration shall be final and binding on the parties and may be entered in any court of competent jurisdiction to the extent necessary for the enforcement thereof.

12. **Injunctive Relief**. Coin Purchaser, NAC and Andrade each agree and understand that under certain circumstances, damages and legal remedies may be insufficient to protect the parties' interests. Accordingly, the parties agree that notwithstanding the arbitration provision in this Agreement, they may pursue claims for injunctive relief in court and outside of the arbitration forum, and in that regard, each party consents to jurisdiction in the courts in Clark County, Nevada and each of the parties agrees that only the federal or state courts in Clark County, Nevada shall have venue over such disputes between the parties seeking injunctive relief.

13. **Governing Law**. This Agreement and all claims related to or arising from it or arising from the parties' relationship shall be governed by and construed in accordance with the laws of the State of Nevada and to the extent applicable, the United States, irrespective of Nevada's choice-of-law principles.

14. **Interpretation**. The recitals to this Agreement are incorporated into and made a part of this Agreement; titles of paragraphs are for convenience only and are not to be considered a part of this Agreement.

15. **Severability**. In the event any one or more of the provisions of this Agreement is declared to be void or otherwise unenforceable, the remainder of this Agreement shall survive and such provision(s) shall be deemed modified or amended so as to fulfill the intent of the parties hereto.

16. **Entire Agreement**. This Agreement is the final written expression of, and the complete and exclusive statement of, all the agreements, conditions, promises and covenants between the parties with respect to the purchase contemplated by this Agreement and the use of NAC website, as modified by the terms

DocuSign Envelope ID: 32CFE273-AB62-40C6-851D-BE1DA8F95F57

and conditions thereof. This Agreement supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. Coin Purchaser declares, represents, acknowledges, and warrants that no promise, inducement, understanding, or agreement not expressed in this Agreement or in the website, subject to modifications thereof as set forth elsewhere in this Agreement, has been made to Coin Purchaser.

17. **Waiver**. None of the terms of this Agreement or any term, right or remedy hereunder shall be deemed waived unless such waiver is in writing and signed by the party to be charged therewith and in no event by reason of any failure to assert or delay in asserting any such term, right or remedy or similar term, right or remedy hereunder.

18. **Notices**. Any and all notices required or permitted under this Agreement shall be in writing and shall be hand-delivered or mailed, courier delivery service, certified mail, return receipt requested, or emailed and addressed to:

If to NAC or Andrade:
via e-mail:

To a street address

If to Coin Purchaser:
via email: to the e-mail address of record for the Coin Purchaser or to the email address specified here:

To a street address:
: Thomas H. Bowen Jr.

The parties acknowledge their acceptance of this agreement with their signatures below.

NAC FOUNDATION, LLC

DocuSigned by:
B
0038A9134E14428...

Its Founder & CEO

MARCUS ANDRADE

COIN PURCHASER

DocuSign Envelope ID: 32CFE273-AB62-40C6-851D-BE1DA8F95F57

COIN PURCHASER INFORMATION (and if Coin Purchaser is an entity, then this information shall be provided as to the managing member, managing or general partner, president, or trustee of such

FULL NAME (PRINT): Thomas H. Bowen Jr.

ADDRESS:

CITY / STATE:

DATE OF BIRTH:

CLIENT REP NAME:

PHONE NUMBER:

EMAIL ADDRESS:

Additionally, with respect to a Coin Purchaser who is an entity:

If a corporation of limited liability company:
Name:
Type of entity:
State of Incorporation or creation:
Address for mailing:
Employer ID:
Number of shareholders, partners, or members:
Identify of all shareholders and members (name, address, birthdate) (attach additional pages if necessary to list all such information):

If a partnership:
Name:
Address of the General Partner:
Employer ID no., if any:
Number of partners (include all general and limited partner, if any):
Identify all partners (name, address, birthdate) (attach additional pages if necessary to list all such information):

DocuSign Envelope ID: 32CFE273-AB62-40C6-851D-BE1DA8F95F57

Download our app and deposit checks with your mobile device. With just a few taps, you can deposit a check any time, from practically anywhere.

Deposits may not be available for immediate withdrawal, please refer to the Deposit Availability Disclosure

Deposit

Business Date 08/09/2017
Calendar Date 08/09/2017
Time 10:34:12 AM

Account Number ******1839

| | |
|---|---|
| Cash | $0.00 |
| Check Amount | $0.00 |
| Less Cash | $0.00 |
| Deposit Amount | $10,000.00 |

REF: [redacted]

Thank you for banking with Capital One Bank - Jesus

Capital One, N.A.
Member FDIC



8- Airey Enterprises
- Latiana George

EX3170-100

1B085-AML BITCOIN PRE ICO-000100

**PURCHASE AGREEMENT**

THIS AGREEMENT is made by and between **NAC FOUNDATION, LLC** ("NAC") and Airey Enterprises,LLC ("Coin Purchaser") and is effective this 9 day of August, 2017.

RECITALS

WHEREAS, NAC is engaged in the creation and issuance of virtual coins;

WHEREAS, NAC has developed and is now upgrading a new coin known as the AML Bitcoin which includes software to protect the virtual coins in a secure "wallet"; and

WHEREAS, the Coin Purchaser intends to acquire the AML Bitcoin when it becomes available s in accordance with the terms of this Agreement;

WHEREAS Black Gold International Inc. hereby referred to as BGCI, promotes AML Bitcoins..

WHEREAS, the Coin Purchaser understands that BGCI, and NAC are two separate entities and that Black Gold Coin International, Inc., is solely an AML Bitcoin promotion company.

WHEREAS, the proceeds BGCI receives will not be shared with the Coin Holder.

WHEREAS, AML Bitcoin does not have any underlying collateral.

WHEREAS, NAC only represents that it will create a digital currency that is AML Compliant and will monitor all transactions in an effort to detect suspicious activities. The supply of AML Bitcoin and NAC services through the NAC website are subject to United States and international export controls and economic sanctions requirements.

WHEREAS, NAC represents that it will issue AML Tokens to the Coin Purchaser until the AML Bitcoin is fully upgraded within the next 3 to 6 months. Afterwards the Coin Holder will give NAC there AML Tokens in return for the AML Bitcoins.

**COIN PURCHASER REPRESENTATIONS, WARRANTIES, AND ACKNOWLEDGMENTS**

1. Coin Purchaser acknowledges that no coin transfer from AML Token to AML Bitcoin will be done without the Coin Holder first confirming his or her legal identity.

2. Coin Purchaser represents and warrants that he/she is not purchasing the AML Bitcoin through the NAC website for the purpose of facilitating any illegal activities.

EX3170-101

1B085-AML BITCOIN PRE ICO-000101

3. Coin Purchaser represents and warrants that he/she intends to comply with all state and federal regulations governing currency transmission activity.

4. Coin Purchaser acknowledges that although NAC intends to provide accurate and timely information on the NAC website, the NAC website (including, without limitation, the content) may not always be entirely accurate, complete, or current and may also include technical inaccuracies or typographical errors. In an effort to continue to provide Coin Purchaser with as complete and accurate information as practicable, information may be changed or updated from time to time without notice, including without limitation information regarding our policies, products and services. Accordingly, you should verify all information before relying on it, and all decisions based on information contained on the NAC website are Coin Purchaser's sole responsibility and NAC shall have no liability for such decisions.

5. Coin Purchaser acknowledges that the AML Bitcoin will not be redeemed by NAC and that NAC should not be relied upon to be a source of liquidity for Purchaser and Purchaser's AML Bitcoin..

6. Coin Purchaser acknowledges that AML Bitcoins are mediums of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving the participation of Coin Purchaser and NAC or its affiliates. Coin Purchaser further acknowledges that it has not purchased the AML Bitcoins for investment purposes and expects no return on investment. Finally, Coin Purchaser acknowledges that AML Bitcoin and the AML Token are not securities and are not subject to the securities laws of any governmental entity.

7. Coin Purchaser acknowledges that this Agreement does not create or constitute a debt for NAC and that NAC is not obligated to pay Coin Purchaser except as stated under Section 22 of this Agreement.

8. Coin Purchaser acknowledges that NAC intends to track AML Bitcoin to identifiable persons and business entities and will file suspicious activity or similar reports with relevant governmental agencies in nations where it does business. Purchaser acknowledges that such reports could be based on misunderstandings and contain inaccurate information. Further, Purchaser acknowledges that reports to governmental agencies under a rule of law that requires making and delivering such reports are generally not subject to legal causes of action for defamation, libel, false light or similar claims in many nations, including the United States.

9. Coin Purchaser acknowledges that AML Bitcoin s are intended to be a solely Internet-based exchange medium. Thus, Coin Purchaser's AML Bitcoin digital wallet may be subject to attempted impersonation and or cyber-attack which could result in the material diminution, theft or transfer of the Coin Puchaser's AML Bitcoin digital wallet. In no

case shall NAC bear any liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation of the AML Bitcoin Transaction Network or AML Bitcoin Wallet as a result of a hack, data breach or any criminal activity. This includes any liability to our computer systems, software, or programs. NAC will not be liable for any harm caused by any sort of malicious code or computer virus.

10. Coin Purchaser acknowledges that NAC and its affiliates can, without notice, purchase AML Bitcoins or AML Tokens on the secondary market after the initial issuance, that it can resell the AML Bitcoins or AML Tokens it has purchased.

**PURCHASER COVENANTS**

11. Coin Purchaser agrees to purchase 57,143 AML Tokens that will be exchanged over to AML Bitcoins for for $ 0.35 each for a total purchase amount of $ $20,000.00.

12. Coin Purchaser agrees to transfer U.S Dollars to NAC's bank account within 48 hours of the execution of this Agreement. Wiring instructions are to be included in the Welcome Email from NAC or its representative. All checks must be accompanied by a photo copy of a valid drivers' license and / or passport.

13. Coin Purchaser agrees to provide accurate identification information to NAC in connection with the creation of the AML Bitcoin wallet.

14. If Coin Purchaser provides NAC with inaccurate information, Coin Purchaser will promptly correct this information.

15. If his/her primary payment method does not have sufficient funds to cover the purchase price of any AML Token order or any other amounts owed by him/her to NAC hereunder, NAC may immediately reverse the transaction. NAC is under no obligation to attempt to fulfill his/her purchase using an alternative payment method should your primary payment method fail.

16. NAC reserves the right to refuse to process, or to cancel or reverse, any purchases or sales of AML Tokens or AML Bitcoins in its sole discretion, even after funds have been debited from his/her account(s), including but not limited to instances where NAC reasonably suspects the transaction involves (or has a high risk of involvement in) money laundering, terrorist financing, fraud, or any other type of financial crime, in response to a subpoena, court order, or other government order, or if NAC reasonably suspects the transaction relates to any other Prohibited Use or a Prohibited Business as set forth herein. In such instances, NAC will reverse the transaction and NAC is under no obligation to allow Coin Purchaser to reinstate a purchase or AML Bitcoin transfer order at the same price or on the same terms as the cancelled transaction.

17. Coin Purchaser is responsible for any and all tax reporting. NAC is not responsible for this but reserves the right to report your information to the Internal Revenue Services or its country's equivalent.

18. Coin Purchaser agrees, to the fullest extent provided by applicable law, to indemnify, defend, and shall hold harmless NAC, its subsidiaries, directors, officers, employees and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages"), to the extent that any such Damages are based upon or arise out of: (i) a misrepresentation by Coin Purchaser under this agreement, (ii) a violation of any law for any nation or subdivision thereof with jurisdiction over Coin Purchaser.

19. Counterparts and Electronic Signatures. This Agreement and any Ancillary Agreements may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to be one and the same agreement or document. A signed copy of this Agreement or any Ancillary Agreement transmitted by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original executed copy of this Agreement or such Ancillary Agreement for all purposes.

**NAC REPRESENTATIONS**

20. NAC is a duly authorized limited liability company formed under the laws of the State of Nevada, United States of America

**NAC OBLIGATIONS**

21. In place of having a wallet maintained by NAC, the Coin Purchaser of AML Bitcoins will retain his/her coins in his/her own digital wallet on Purchaser's own PC or MAC. A NAC representative will provide them with documentation on how to obtain a wallet for the AML Token. After the AML Bitcoin becomes available, NAC will also provide the Coin Holder on how to obtain that wallet and how to complete the mandatory I.D. Verification. NAC will also provide technical support as needed. This will occur once this Agreement has been executed and payment has been received, approved, and processed. Once the wallet has been established and the AML Token deposited into it, Coin Purchaser may make transfers of AML Token to or from Coin Purchaser's AML Token digital wallet.

22. If Coin Purchaser does not initiate the exchange from the AML Token to the AML Bitcoin within 6 months after the AML Bitcoin becomes available, , as provided for in the prior section, NAC may terminate the purchase of AML Tokens and repay Coin Purchaser his/her purchase price less the equivalent of a US $25 dollar processing fee. Payment by NAC will be made to Coin Purchaser within 10 days of the termination of the decision to cancel the purchase.. NAC will only make payment to the payment systems account from which it received payment. Even after repayment, such former accounts remain subject to the potential for NAC reporting suspicious activities to governmental authorities.

**MISCELLANEOUS PROVISIONS**

23. SUCCESSION. This Agreement shall be binding upon and inure to the benefit of Coin Purchaser, NAC, and their respective successors and assigns.

24. ASSIGNMENT. The rights, benefits and obligations of Coin Purchaser under this Agreement and in Coin Purchaser's AML Bitcoin digital wallet shall not be assignable. Any purported assignment in violation of this Section 24 shall be null and void and of no force and effect.

25. RETROACTIVE. This Agreement shall be retroactive to the original date of purchase. If AML Tokens or AML Bitcoins were purchased at any prior date, then this agreement would not only supersede and nullify the former Agreement, but this agreement will be retroactive to the date of the original purchase.

26. AMENDMENT OR MODIFICATION. NAC may amend or modify this Agreement by posting on the NAC website or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time. NAC may (a) modify or discontinue any portion of its services, and (b) suspend or terminate Coin Purchaser's access to the NAC services, at any time, and from time to time, without notice to Coin Purchaser in certain, limited circumstances described herein. Coin Purchaser agrees that NAC shall not be liable to him/her or any third party for any modification or termination of the NAC services, or suspension or termination of your access to the NAC services, except to the extent otherwise expressly set forth herein.

**27. ARBITRATION. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including the arbitrability of any controversy or claim, shall be settled by arbitration in accordance with the Commercial Arbitration Rules and the Optional Rules for Emergency Measures of Protection of the American Arbitration Association ("AAA"), and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any provisional remedy which would be available from a court of law shall be available from the arbitrator to the Parties to this Agreement pending arbitration. The arbitrator(s) shall be guided by AAA Rules in allowing discovery and all issues regarding compliance with discovery requests shall be decided by the arbitrator(s).The arbitrator(s) may allow additional discovery utilizing Art 34 of the U.S. Federal Rules of Civil Procedure as a guide. The Federal Arbitration Act shall govern all arbitration proceedings under this Agreement. This Agreement shall in all other respects be governed and interpreted by the internal laws of the State of Nevada United States of America, excluding any conflicts or choice of law rule or principles that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. The arbitration shall be conducted in Clark County, Nevada, United States of America. The arbitrator must be familiar with the operations of digital currencies. All fees and expenses of the arbitration shall be borne by the Parties equally. Each Party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs, however, the prevailing Party may, if the arbitrator(s) so provide, be entitled to an award of reasonable attorney's fees and expenses and such Party's share of the**

**arbitration fees and expenses. This agreement to arbitrate shall survive the termination and repudiation of this Agreement. Any award rising from such arbitration shall be final and binding on the Parties and may be entered in any court of competent jurisdiction to the extent necessary for the enforcement thereof, and the prohibition against non-disclosure provided in this section shall not apply to such actions.**

28. INJUNCTIVE RELIEF. Coin Purchaser agrees and understands that damages and legal remedies may be insufficient to protect NAC's interests. Notwithstanding the arbitration clause found in Section 26 of this Agreement, Coin Purchaser agrees NAC may sue Coin Purchaser for injunctive relief and consents to venue in and the jurisdiction of the state or federal courts of Clark County, Nevada, United States of America for such purposes.

29. GOVERNING LAW. In the event there is a dispute regarding this Agreement, it shall be governed by Nevada and United States of America law. The parties have considered and intend for this to be inclusive of any and all claims whether they arise out of statutory claims, tort claims, contract claims or in equity.

30. NOTICES. Any and all notices required under this Agreement shall be in writing and shall be hand-delivered or mailed, courier delivery service, certified mail, return receipt requested, faxed or emailed and addressed to:

TO NAC: via e-mail to [redacted]

TO COIN PURCHASER: To the e-mail address of record for the Coin Holder.

31. INTERPRETATION. The preamble recitals to this Agreement are incorporated into and made a part of this Agreement; titles of paragraphs are for convenience only and are not to be considered a part of this Agreement.

32. SEVERABILITY. In the event any one or more provisions of this Agreement is declared judicially void or otherwise unenforceable, the remainder of this Agreement shall survive and such provision(s) shall be deemed modified or amended so as to fulfill the intent of the parties hereto.

33. ENTIRE AGREEMENT. This Agreement contains the entire agreement between Coin Purchaser and NAC, including all representations and warranties by NAC. This Agreement may only be modified in writing with the consent of the Coin Purchaser and NAC.

34. WAIVER. None of the terms of this Agreement or any term, right or remedy hereunder shall be deemed waived unless such waiver is in writing and signed by the party to be charged therewith and in no event by reason of any failure to assert or delay in asserting any such term, right or remedy or similar term, right or remedy hereunder.

35. ADDITIONAL CONSIDERATION. As additional consideration, Coin Purchaser agrees that his/her AML Bitcoins transactions will be monitored for suspicious activity in an effort to prevent money laundering and help fight against terrorist financing.

36. WEBSITE TERMS AND CONDITIONS. Coin Purchaser also agrees to the terms and conditions as stated on the atencoin.com website.

The parties acknowledge their acceptance of this agreement with their signatures below.

| NAC FOUNDATION, LLC | COIN PURCHASER |
|---|---|
| By____________________ | ____________________ |
| Its ____________________ | |

COIN PURCHASER INFORMATION

FULL NAME (PRINT): ____________________

ADDRESS: ____________________

CITY / STATE: ____________________

DATE OF BIRTH: ____________________

CLIENT REP NAME: ____________________

PHONE NUMBER: ____________________

EMAIL ADDRESS: ____________________

EX3170-107

1B085-AML BITCOIN PRE ICO-000107

COIN PURCHASER INFORMATION (and if Coin Purchaser is an entity, then this information shall be provided as to the managing member, managing or general partner, president, or trustee of such

FULL NAME (PRINT): Latasha George

ADDRESS:

CITY / STATE:

DATE OF BIRTH:

CLIENT REP NAME:

PHONE NUMBER:

EMAIL ADDRESS:

Additionally, with respect to a Coin Purchaser who is an entity:

If a corporation of limited liability company:
Name: Airey Enterprises, LLC
Type of entity: Limited Liability Company
State of Incorporation or creation:
Address for mailing:
Employer ID:
Number of shareholders, partners, or members:
Identify of all shareholders and members (name, address, birthdate) (attach additional pages if necessary to list all such information):

If a partnership:
Name:
Address of the General Partner:
Employer ID no., if any:
Number of partners (include all general and limited partner, if any):
Identify all partners (name, address, birthdate) (attach additional pages if necessary to list all such information):

THIS PAGE

INTENTIONALLY LEFT

BLANK

PURCHASE AGREEMENT PAGE 8 of 9

EX3170-109

1B085-AML BITCOIN PRE ICO-000109

DocuSign Envelope ID: A45D97C7-77F3-44DC-BCB4-8CB02F2432E2

# PURCHASE AGREEMENT

This Agreement is made by and between NAC Foundation, LLC ('NAC"), Marcus Andrade ("Andrade") and Airey Enterprises, LLC ("Coin Purchaser") and is effective as of Oct 1, 2017.

## Recitals

A. NAC is engaged in the creation and issuance of virtual coins;

B. NAC has developed and is now upgrading a new coin known as the AML Bitcoin which includes software to protect the virtual coins in a secure "wallet";

C. Andrade owns and can make available from his own account AML Tokens than can be exchanged for AML Bitcoins; and

D. Coin Purchaser desires to and intends to acquire the AML Bitcoin when it becomes available in accordance with the terms of this Agreement by exchanging AML Tokens for AML Bitcoins.

## Agreement

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, Coin Purchaser, Andrade and NAC agree as follows:

1. **Purchase; Price; Wallet.**

(a) Coin Purchaser agrees to purchase and Andrade agrees to sell 22,222 [number] of AML Tokens that may and will be exchanged for AML Bitcoins for a purchase price of $.45 per coin (45 cents) for a total purchase price of $10,000 (the "Purchase Price"), each AML Token being exchangeable for one AML Bitcoin, i.e., one for one.

(b) Coin Purchaser shall pay the Purchase Price by the transfer to an account specified by Andrade in U.S. Dollars within 48 hours of the execution and delivery by NAC and Andrade of this Agreement to Coin Purchaser.

(c) Concurrent with Purchaser's execution and delivery of this Agreement, Coin Purchaser, if an individual, shall deliver to NAC (or its representative) a copy of a government issued identification (as more particularly described in subparagraph (l) below.

(d) The AML Bitcoins will be delivered to and maintained in an electronic "wallet" (being a secure digital wallet used to store, send, and receive digital currency) maintained by Coin Purchaser or its designee. NAC shall deliver to Purchaser technical information to enable Coin Purchaser to obtain and maintain a wallet for the AML Token(s) purchased and shall provide all technical support to assist Coin Purchaser in that regard.

(e) Coin Purchaser understands that the AML Bitcoin is in the process of being upgraded to be compliant with anti-money laundering laws, and that NAC anticipates that process to be completed in approximately three to six months.

EX3170-110

(f) Upon the availability of the AML Bitcoin, NAC shall deliver to Coin Purchaser all information, including technical information, necessary to enable Coin Purchaser to obtain said wallet to store, maintain, exchange and transfer the AML Bitcoins, including the mandatory I.D. Verification; and NAC shall provide all technical support to assist Coin Purchaser in that regard. The technical support personnel shall be highly trained, skilled and competent regarding all technology necessary to maintain, exchange, and trade in digital- or e-commerce, including digital international commerce, cyber currencies and digital coins in general and AML Bitcoins in particular. NAC shall provide on-going technical support available, at a minimum, during the hours that cyber currency and digital coin exchanges are open and available for the conduct of business. NAC understands and acknowledges that Coin Purchaser may not have a high level of technical sophistication sufficient to independently set up a wallet to receive, store, send and receive digital currency without the assistance of and technical support provided by NAC.

(g) Coin Purchaser agrees to provide accurate identification information to NAC in connection with the creation of the AML Bitcoin wallet. Should any such information be inaccurate, Coin Purchaser will promptly deliver correct information to NAC.

(h) If Coin Purchaser's payment is insufficient to cover the entire Purchase Price for the number of AML Tokens set forth in subparagraph (a) above, Andrade shall have no obligation to sell and deliver a lesser number of AML Tokens; and NAC and Andrade may immediately reverse the transaction, crediting and returning to Coin Purchaser that part of the Purchase Price that was credited to Andrade's account or to NAC.

(i) Upon the completion of the upgrade of the AML Bitcoin and the delivery of information necessary to affect an exchange of the AML Tokens for the AML Bitcoins, Andrade, Coin Purchaser and NAC/ will exchange Coin Purchaser's AML Tokens for the AML Bitcoins on a one to one basis.

(j) If Coin Purchaser does not initiate the exchange of the AML Tokens to the AML Bitcoins within 6 months after the AML Bitcoins become available, NAC or Andrade may terminate, rescind, and cancel the purchase of AML Tokens and repay to Coin Purchaser the Purchase Price, less the equivalent of a US $25-dollar processing fee. In the event NAC or Andrade so terminates, rescinds, or cancels, NAC or Andrade shall notify Coin Purchaser of such termination, rescission, or cancellation within 24 hours and shall return the Purchase Price to Coin Purchaser within 10 business days. NAC will make payment to Coin Purchaser using the payment systems account from which payment had been received. Even after repayment, Coin Purchaser's former account(s) remains subject to the potential for NAC reporting suspicious activities to governmental authorities.

(k) Coin Purchaser hereby agrees to comply with and be bound by all conditions, policies, rules and regulations on NAC's Website and of all exchanges in which the AML Bitcoin may be offered, transferred, exchanged or sold.

(l) No AML Token may be exchanged for an AML Bitcoin unless Coin Purchaser's legal identity is confirmed. In the case of an individual this shall require providing a copy of government issued identification that has a photograph of the individual, such as a Driver's License or Passport; in the case of a corporation, limited liability company, or partnership, the verification shall be such a document of the managing member, managing or general partner, or president, in the case of a

trust, the verification shall be such a document of the trustee of the trust.

(m) NAC shall operate its computer systems and website and maintain them in such a manner as a reasonably prudent person in the business of conducing transactions based on a sophisticated computer networking system and shall exercise due care and good faith, including employing technicians and personnel highly skilled in the operation of such a highly sophisticated computer and software based technologies; and NAC shall employ and utilize the most sophisticated and safest methods of internet and computer security available sufficient to assure that at all times its computer network provides a safe and secure environment for the conduct of the business anticipated by this Agreement.

(n) The purchase in this Agreement shall also be governed by the terms and conditions of the website, "atencoin.com", which terms and conditions are incorporated herein. To the extent of a conflict between the terms and conditions in such website and this Agreement relating to the operation and the technical aspects of conducting transactions on said website, the terms and conditions in said website control. To the extent of a conflict between the terms and conditions on said website and this Agreement pertaining to the purchase of AML Tokens, the AML Bitcoins, the price, NAC's liability, indemnity, Coin Purchaser's representations, and obligations undertaken by NAC to Coin Purchaser, this Agreement controls.

2. **NAC's Right to Cancellation and Rescission**. In the event NAC receives or possesses information that would lead to a reasonable and good faith suspicion that a transaction in the AML Bitcoin or AML Token is violating or is about to violate money laundering, anti-terrorist financing, or anti-fraud laws of the United States or of any nation or that the use of AML Bitcoins or AML Tokens is or is about to be used to facilitate a violation of such laws or a financial crime, or is in violation of a validly issued court order or other valid governmental order, NAC may refuse to process, or may rescind, cancel or reverse, any purchase or sale of AML Tokens or AML Bitcoins. Such right shall exist even after funds have been debited from Coin Purchaser's account(s). So long as NAC's suspicion was reasonable and in good faith, NAC shall not be obligated to allow Coin Purchaser to reinstate a purchase or AML token exchange or AML Bitcoin transfer order at the same price or on the same terms as the cancelled transaction.

3. **Representations, Warranties, and Covenants.**

a. NAC represents and Coin Purchaser understands, acknowledges and agrees that Black Gold International Inc. (BGCI") promotes AML Bitcoins; BGCI and NAC are two separate and distinct entities; and BGCI's role is to act solely as a third party to assist in the promotion of the AML Bitcoin as a cybercurrency.

b. NAC represents and Coin Purchaser understands, acknowledges and agrees that Coin Purchaser has no right to and will not share or participate in any way with BGCI's revenue, profit, or losses earned in connection with its activities concerning the AML Bitcoin.

c. NAC represents and Coin Purchaser understands, acknowledges and agrees AML Bitcoin does not have any underlying collateral; the AML Bitcoin is merely an unsecured cyber currency or digital coin.

d. NAC represents that it will use its best efforts to create a digital (or cybercurrency) that will be

DocuSign Envelope ID: A45D97C7-77F3-44DC-BCB4-8CB02F2432E2

compliant with the laws, statutes, rules, regulations, and procedures of the United States and other jurisdictions in which such currency may be used or exchanged that protect against money-laundering and terrorist financing (hereinafter "AML Laws"), i.e. AML Bitcoin will be AML Compliant.

e. NAC will use its best efforts to monitor all the transactions (purchases, exchanges, sales) of AML Bitcoins in an effort to detect suspicious activities that may violate AML Laws.

f. NAC and Coin Purchaser acknowledge and agree that the supply of AML Bitcoin and NAC services through the NAC website are subject to United States and international export controls and economic sanctions requirements.

g. Coin Purchaser understands, acknowledges and agrees that it is not purchasing the AML Bitcoin through the NAC website or from Andrade for the purpose of facilitating any illegal or unlawful activities, and the AML Bitcoin will not be used for such purpose.

h. Coin Purchaser understands, acknowledges and agrees that it intends to comply with all laws and regulations of the United States governing currency transmission activity, all State laws governing such, and all laws governing such in Coin Purchaser's jurisdiction.

i. Coin Purchaser understands, acknowledges and agrees that AML Bitcoin will not be redeemed by NAC and Coin Purchaser is not relying upon NAC to be a source of liquidity for Purchaser and Purchaser's AML Bitcoin.

j. Coin Purchaser understands, acknowledges and agrees that AML Bitcoins are mediums of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving the participation of Coin Purchaser and NAC or its affiliates.

k. Coin Purchaser understands, acknowledges, and agrees that it has not purchased the AML Bitcoins for investment purposes and expects no return on investment.

l. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoin and the AML Token are not securities and are not subject to the securities laws of any governmental entity.

m. Coin Purchaser understands, acknowledges, and agrees that AML Bitcoins are intended to be and are solely an Internet based exchange medium.

n. Coin Purchaser understands, acknowledges and agrees that by purchasing the AML Tokens and exchanging them for AML Bitcoins or by purchasing, selling, exchanging, and transferring AM Bitcoins, and by using the wallet, or obtaining and using technical information and technical support provided by NAC, Coin Purchaser is not participating in and not becoming a member or investor in any pooled interest, business entity, common enterprise, or business venture with Andrade, NAC or any of its or their affiliates.

o. Coin Purchaser understands, acknowledges and agrees that this Agreement does not create or constitute a debt of NAC to Coin Purchaser and that NAC is not obligated to pay Coin Purchaser, except as may be otherwise specifically provided in this Agreement.

DocuSign Envelope ID: A45D97C7-77F3-44DC-BCB4-8CB02F2432E2

p. Coin Purchaser understands, acknowledges and agrees that NAC and its affiliates can, without notice, purchase AML Bitcoins or AML Tokens on the secondary market after the initial issuance, and that they can resell the AML Bitcoins or AML Tokens they purchased. NAC and Andrade represent and agree that such sales will not be such as to detrimentally harm the market for AML Bitcoins, such that the economic interests of Coin Purchasers will be harmed.

q. NAC is a limited liability company duly organized and existing under the laws of the State of Nevada and NAC has its principal place of business in Las Vegas, Nevada.

r. Coin Purchaser represents that in making the purchase in this Agreement it is relying solely on its own judgment, belief and knowledge as to the nature of the currency and the cyber coin or digital market and industry and Coin Purchaser is not relying on any statements made by Andrade or NAC, made in any NAC advertising or marketing materials, or made on NAC's website; and Coin Purchaser acknowledges and agrees that it shall not assert any claims against NAC or Andrade based on information on the NAC website having been modified, changed or updated.

4. **Taxation**. NAC shall have no obligation to prepare, provide, or file any financial or transactional information, tax returns, or information forms to Coin Purchaser in connection with Coin Purchaser's reporting of any income to tax authorities within Coin Purchaser's jurisdiction. Notwithstanding the foregoing, should tax authorities require NAC to provide such information, NAC shall do so.

5. **Limitations on Liability**.

a. NAC intends to track AML Bitcoin to identifiable persons and business entities and, if required by law, will file suspicious activity or similar reports with relevant governmental agencies in nations where it does business. In filing such reports NAC shall exercise reasonable care and act in good faith based on the information it has and that is provided to it. Coin Purchaser acknowledges that, notwithstanding NAC's exercise of reasonable care and good faith, such reports may be erroneous or contain incomplete or inaccurate information. Coin Purchaser acknowledges that generally such reports to governmental agencies that are required to be made are privileged communications, as a result of which, NAC would not be subject to a claim for damages in the event that NAC makes an incorrect or incomplete report having exercised reasonable care and good faith.

b. In the event, NAC has a reasonable and good faith belief that Coin Purchaser is engaging in conduct in violation of laws, rules, or regulations concerning anti-money laundering, anti-terrorist financing, or anti-financial fraud, NAC may, without liability to Coin Purchaser, suspend or terminate Coin Purchaser's access to the NAC website or services. In that event, NAC shall not be liable to Coin Purchaser or to any third party as a result of such suspension or termination. of the NAC services, or suspension or termination of your access to the NAC services, except to the extent otherwise expressly set forth herein.

c. In the event of an attack on NAC's website or computer system, a virus or malicious code in NAC's computer system, notwithstanding NAC's compliance with paragraph 1(m), or in the event NAC is required to suspend, modify, discontinue all or a portion of its services, or terminate its services by a court order or governmental order or direction, NAC shall not be liable to Coin Purchaser for any damage to Coin Purchaser as a result of such suspension, modification, discontinuance, or termination.

d. Coin Purchaser's AML Bitcoin digital wallet may be subject to attempted impersonation and or cyber-attack which could result in the material diminution, theft or transfer of Coin Purchaser's AML Bitcoin digital wallet. So long as NAC has complied with paragraph 1(m) in this Agreement, NAC shall not be liable for any damage caused to Coin Purchaser as a result of the use of NAC's computer system or website, including direct, indirect, or consequential damages, whether such damage is caused by a hack, data breach, malicious code, computer virus or criminal conduct.

e. Coin Purchaser acknowledges that although NAC intends to provide accurate and timely information on the NAC website, the NAC website (including, without limitation, the content) may not always be entirely accurate, complete, or current and may also include technical inaccuracies or typographical errors. In an effort to continue to provide Coin Purchaser with as complete and accurate information as practicable, information may be changed or updated from time to time without notice, including without limitation information regarding NAC's policies, products and services. Accordingly, Coin Purchaser agrees to verify that the information necessary to conduct transactions in AML Bitcoins is current before relying on information on the NAC website. NAC will not be liable for a transaction though the NAC website if the inability to complete or execute the transaction is based on Coin Purchaser's use of outdated technical information.

6. **Indemnity**. Coin Purchaser agrees, to the fullest extent provided by applicable law, to indemnify, defend, and hold harmless NAC, its subsidiaries, directors, officers, employees and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages") to the extent that any such Damages are based upon or arise out of a misrepresentation by Coin Purchaser under this agreement or Coin Purchaser's violation of any law, statute, rule, or regulation of a nation or subdivision thereof having jurisdiction over Coin Purchaser.

7. **Succession**. Except as otherwise provided in this Agreement, this Agreement shall be binding upon and inure to the benefit of Coin Purchaser, NAC, and their respective heirs, successors and assigns.

8. **Assignment**. The rights, benefits and obligations of Coin Purchaser under this Agreement and in Coin Purchaser's AML Bitcoin digital wallet shall not be assignable; except Coin Purchaser may transfer ownership to an entity wholly owned by Coin Purchaser, or from a wholly owned entity to that entity's owner, to a trust in which Coin Purchaser is a trustor, for estate planning purposes, or by (or as a result of intestate or testate succession. Any other purported assignment in violation of this Agreement Section shall be null and void and of no force and effect.

9. **Retroactive.** This Agreement shall be retroactive to the date of Coin Purchaser's original purchase.

10. **Amendment and Modification.** To the extent necessary for NAC to comply with laws, statutes, regulations, and rules pertaining to anti-money laundering, anti-terrorist financing, know your customer rules, anti-financial fraud provisions, or to modify any technical aspects of the website to assure a safe and secure and government compliant system to transact transfers or exchanges in AML Bitcoins (or AML Tokens), NAC may, without advance notice to Coin Purchaser, amend and modify the terms and conditions on its website by posting same thereon and/or by sending notice to Coin Purchaser via email, and such amended terms and modified terms and conditions shall be effective at such time.