UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROWLAND MARCUS ANDRADE,

Defendant.

Case No. 20-cr-00249-RS-1

**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL AND DENYING MOTION FOR NEW TRIAL**

# I. INTRODUCTION

Defendant Rowland Marcus Andrade files this motion seeking a judgment of acquittal, or in the alternative, a new trial. After a multi-week trial, a jury convicted Andrade of one count of wire fraud and one count of money laundering. Andrade asserts multiple deficiencies during trial violated his rights as a criminal defendant. Defendant contends that errors in the jury instructions, the introduction of misleading testimony, and various evidentiary rulings merit some form of relief from the verdict of guilty. However, none of these decisions were actually erroneous, and if any were, they were at most harmless. Therefore, Andrade fails to demonstrate entitlement to a new trial or a judgment of acquittal. The defense motion is denied.

# II. BACKGROUND AND LEGAL STANDARDS

This case centered on Defendant Rowland Marcus Andrade's misrepresentations, made to public and private entities and in service of his scheme to defraud. The factual background is set out in greater detail in previous orders and the full trial record and will not be restated here. Suffice it to say, this trial was hard fought over more than four weeks. After each side presented

numerous witnesses and documents, the jury returned a verdict of guilty on Count One (wire fraud) and guilty on Count Two (money laundering).

The defense now raises over forty alleged erroneous decisions made by this Court on pre-trial motions or during trial. These errors fall into four categories: defense objections to the jury instructions, misleading testimony from a government witness, evidentiary rulings made before and during trial, and the denial of Defendant's request to continue trial. Defendant argues these errors merit multiple, alternative forms of relief: a judgment of acquittal on both counts under Rule 29 of the Federal Rules of Criminal Procedure, a new trial under Fed. R. Crim. P. 33, or a new trial under *Napue v. Illinois*, 360 U.S. 264 (1959).

Upon the defendant's motion, the court may vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial under Rule 33 may be granted for an error such as failure to give proper jury instructions; however, an instructional error alone is insufficient. To succeed on a motion for a new trial, the defendant must show an error affected his substantial rights. *See* Fed. R. Crim. P. 52(a); *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020).

A defendant can also move under Rule 29 for a judgment of acquittal. Fed. R. Crim. P. 29(c). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (internal quotation omitted). If no rational jury could have found the defendant guilty, Rule 29 requires a court to enter a judgment of acquittal. *See id*; Fed. R. Crim. P. 29. "In ruling on a Rule 29(c) motion, a district court must bear in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.'" *Alarcon-Simi*, 300 F.3d at 1176 (quoting *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977). Accordingly, if the evidence was sufficient to support a rational jury's determination of guilt, a court must not substitute its judgment for that of the jury. *See id.*

### III. JURY INSTRUCTIONS

Defendant claims there were three errors made in the jury instructions. The defense advocated for its preferred formulation of each of these instructions leading up to trial and briefed the issues well before the instructions were delivered.

**A. Legal Standard**

An error in misdescribing or omitting an element of the offense in a jury instruction is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *U.S. v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009) (citing *Neder v. United States,* 527 U.S. 1, 18 (1999)). When applying this standard, a court should consider "the jury instructions and the trial record as a whole." *United States v. Espino*, 892 F.3d 1048, 1053 (9th Cir. 2018). Where the evidence presented at trial and "other language in the jury instructions" assures the court that the jury could not have based its verdict on the erroneous language in the instruction, the Ninth Circuit determined that error is harmless. *Miller*, 953 F.3d at 1103; *see also Espino*, 892 F.3d at 1053; *United States v. Perez*, 116 F.3d 840, 847 (9th Cir. 1997) ("Even though an element of the offense is not specifically mentioned [in the jury instructions], it remains possible the jury made the necessary finding.").

**B. Discussion**

Andrade contests the Count Two instruction on money laundering, the good faith instruction, and the denial of Defendant's request to deliver an instruction on "multiple schemes." None of these instructional decisions constitute error. Even assuming any of the instructions at issue were delivered improperly or should have been delivered, a rational jury would have found Andrade guilty based on the evidence presented and other instructions given. Therefore, Andrade's motion for a new trial or judgment of acquittal based on the instructions provided to the jury fails.

*1. Money Laundering Conduct*

Andrade argues the jury instruction on money laundering allowed the jury to convict him for conduct not charged by the grand jury. The jury was instructed that to convict Andrade of

ORDER DENYING NEW TRIAL, DENYING JUDGMENT OF ACQUITTAL
CASE NO. 20-cr-00249-RS-1

money laundering, they must find "the defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of wire fraud." Tr. 2963. Andrade argues the failure to direct the jury to the specific transaction alleged in the indictment and its date "destroy[ed] [Andrade's] substantial right to be tried only on charges presented in an indictment." *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)). Ninth Circuit precedent does not support Defendant's argument he was entitled to greater specificity in this instruction. Additionally, the evidence presented to the jury and the other instructions negated any possibility the jury convicted based on unindicted conduct.

The jury received the Ninth Circuit pattern instruction for money laundering, which refers to only "a financial transaction." *See, e.g.*, Ninth Circuit Model Jury Instruction No. 18.4 (revised May 2023); *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir.), *amended*, 197 F.3d 959 (9th Cir. 1999) (approving of similar model instruction to affirm conviction on seven money laundering counts); *but see United States v. Warren*, 984 F.2d 325, 327 n.3 (9th Cir. 1993) (explaining that "[u]se of a model jury instruction does not preclude a finding of error"). During trial, the defense proposed an instruction which would require the jury to find that "the defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of the wire fraud charged in Count One, that is, the purchase of a cashier's check drawn on an account held in the name of Fintech Fund Family LP involving $600,000 in United States Currency later deposited in an account in the name of Marcus Andrade[.]" Dkt. 480, at 49:12-16. The government objected, correctly arguing the defense's proposal constructively narrowed the indictment and collapsed Count One (wire fraud) with Count Two (money laundering).

As a threshold matter, Count Two of the indictment did not limit the specified unlawful activity ("SUA") to Count One's specific wire fraud. Instead, the grand jury found probable cause that the SUA was simply "wire fraud in violation of Title 18, United States Code, Section 1343." Dkt. 1, at 6. As the government explained in its briefing on the proposed instructions, this charging language permits any wire fraud, not just Count One, to satisfy the first money laundering element. Where, as here, "the money laundering count[] do[es] not define 'specified unlawful

ORDER DENYING NEW TRIAL, DENYING JUDGMENT OF ACQUITTAL
CASE No. 20-cr-00249-RS-1
4

activity' in terms of the [] fraud activities described in [other counts of the indictment], this court is not limited to considering only those activities." *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) (quoting *United States v. Tencer*, 107 F.3d 1120, 1131 (5th Cir. 1997)) (mail fraud and money laundering case).

Regardless, in money laundering cases, "the defendant need not actually commit the alleged specified unlawful activity." *United States v. Yagman*, No. CR 06-227(A) SVW, 2007 WL 9724388, at *20 (C.D. Cal. May 3, 2007) (quoting *United States v. Martinelli*, 454 F.3d 1300, 1312 (11th Cir. 2006) and collecting cases). The jury could have acquitted Andrade of wire fraud while properly convicting him of money laundering. *See, e.g.*, *United States v. Lazarenko*, 564 F.3d 1026, 1037 (9th Cir. 2009) (upholding money laundering convictions despite reversal of underlying wire fraud counts and government's reliance on those counts in closing argument); *Tencer*, 107 F.3d at 1130–31 (similar after acquittals at trial). Thus, the government's proposed instruction—which tracked the language of the indictment—properly instructed the jury on the first element of money laundering, without reference to a specific time period or transaction. *See* 18 U.S.C. § 1956(a)(1)(A), (B) (making no reference to time-bounded conduct); *cf. United States v. Laykin*, 886 F.2d 1534, 1543 (9th Cir. 1989) ("Time is a material element of an offense only if made so by statute."). Therefore, the law does not support Defendant's version of the jury instruction.

Moreover, the record shows the jury voted to convict Andrade in Count Two based on the transaction at issue. The government, in detailing the money laundering charge to the jury, presented evidence only as to the Count One transaction, namely Andrade's purchase of a $600,000 cashier's check. The government, when discussing money laundering, even presented the jury with a physical poster, also provided in a slide, showing how the money traveled from Ben Boyer, through the NAC Foundation, to a cashier's check Andrade used to purchase property. Accordingly, any error would be harmless because the jury made its findings on the evidence presented, and thus based on that transaction. *See, e.g.*, *United States v. DuShane*, 623 Fed. App'x 332, 333 (9th Cir. 2015).

*2. Good Faith*

Andrade next argues the omission of his preferred jury instruction on good faith violated his substantive rights. Although Defendant was not entitled to any jury instruction on good faith, one was provided to the jury, appended to the elements of wire fraud. Ninth Circuit precedent forecloses Defendant's argument, and a new trial is not warranted on this ground.

As a threshold matter, a defendant is not entitled to a good faith instruction when the jury is properly instructed on the intent element. *See, e.g.*, *United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir. 2004) ("Our case law is well settled that a criminal defendant has 'no right' to *any* good faith instruction when the jury has been adequately instructed with regard to the intent required to be found guilty of the crime charged, notwithstanding the normal rules governing 'theory of defense' requests.")); *United States v. Belcher*, 857 F. App'x 390, 392 (9th Cir. 2021) ("There was no abuse of discretion in the district court's refusal to give the defendants' requested instructions on good faith, because the jury instructions adequately laid out the crimes' intent requirements.").

Andrade points out that a criminal defendant is entitled to a jury instruction "on any defense which provides a legal defense to the charge against him, and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Sotelo-Murillo*, 887 F.2d 176, 178 (9th Cir. 1989) (quoting *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir. 1988)). The defense relies on cases where *no* instruction was given to the jury on an affirmative defense. These cases are inapposite, primarily because the jury here *was* instructed as to the possibility of Andrade's good faith.

The jury was instructed that:

"If the defendant acted in good faith, then he lacked the intent to defraud required to prove the offense of wire fraud as charged in Count One. The defendant acted in good faith if, at the time, he honestly believed in the truth of the representations or promises that the government has charged as being false or fraudulent. However, a defendant's belief that the victims of the fraud will be paid in the future or will sustain no economic loss is not a defense to the crime."

Dkt. 612. This instruction was more than adequate to instruct the jury on this issue. Andrade has no support for his argument he is entitled to put forth a good faith instruction exactly as he sees fit.

The defense relies heavily on the unpersuasive case *United States v. Gianandrea,* 38 Fed. Appx. 434, 436 (9th Cir. 2002) (unpublished). *Gianandrea* was a bankruptcy fraud case, and the government was required by binding precedent to disprove a good faith defense. The district court in *Gianandrea* disregarded Supreme Court precedent and model instructions from the Circuit on this burden and failed to instruct the jury accordingly. *See id.* Such a requirement to clarify the burden of proof is not present here. The jury was instructed given the Circuit-approved model and Andrade's preferred language went far beyond what is necessary in a wire fraud case.

Moreover, any error in the good faith instruction would have been harmless. The jury was instructed as to the intent element, meaning they were aware of what a good faith belief would mean for their reasoning. *See* Dkt. 612 (in Count One, instructing the jury to enter a verdict of guilty only if "the defendant acted with the intent to defraud, that is, the intent to deceive and cheat"). They also were instructed as to the government's burden throughout the case. *See* Dkt. 612 ("The government has the burden of proving every element of the charges beyond a reasonable doubt."). Andrade had ample opportunity to convince the jury he acted in good faith, but the jury rejected this argument. His proposed formulation of a good faith instruction, even if it reiterated the government's burden of proof, would not have changed the verdict.

3. *Multiple Conspiracies*

Finally, Andrade argues he is entitled to a new trial or alternatively a judgment of acquittal because the jury was not instructed on multiple schemes. While in some cases, a multiple conspiracies instruction is proper, s*ee, e.g., United States v. Anguiano*, 873 F.2d 1314, 1318 (9th Cir. 1989), Andrade provides no caselaw or Ninth Circuit model for his multiple "schemes" instruction. The government did not charge Andrade with conspiracy and therefore a multiple conspiracy instruction was not necessary. Despite Andrade's contentions, the government did not introduce evidence of distinct schemes and therefore a multiple schemes instruction was also unnecessary.

"A multiple conspiracies instruction is warranted where a jury could reasonably interpret the evidence presented at trial to show separate conspiracies and there is a risk that the defendant may be convicted on the basis of acts committed by those in a conspiracy of which he was not a part." *United States v. Ocegueda-Ruiz*, 663 F. App'x 560, 561 (9th Cir. 2016). Again, Andrade was not charged nor convicted of conspiracy. More importantly, trying a single defendant on his own "tends to negate the risks that would be present if the proof showed multiple conspiracies." *Ocegueda-Ruiz*, 663 Fed. App'x at 561 ("The risks associated with multiple conspiracies are generally absent where a defendant is tried alone.") (citing *Anguiano*, 873 F.2d at 1318). The caselaw Andrade relies on makes clear that a multiple conspiracy instruction is not necessary when the government goes to trial against a single defendant on a single wire fraud charge. *See, e.g.*, *Anguiano*, 873 F.2d at 1318; *Ocegueda-Ruiz*, 663 Fed. App'x at 561. This is because the multiple conspiracy instruction "is needed in order to mitigate the problem of transference or spillover of guilt from one co-defendant to another." *United States v. Moe*, 781 F.3d 1120, 1127 (9th Cir. 2015) (internal citation and quotation omitted). "In contrast, a multiple conspiracy instruction is not required when a defendant stands trial alone because there is no problem of spillover." *Id.* (internal citation and quotation omitted).

The jury did not need a separate multiple schemes instruction because Dillman and Abramoff's conduct, where relevant, was in soliciting money to further the scheme of AML Bitcoin and the NAC Foundation. The government presented evidence only of Andrade's scheme to defraud investors using AML Bitcoin. The defense's argument that Dillman somehow solicited Boyer's money in furtherance of Dillman's own scheme is contradicted by the record. Andrade hired Dillman to work for AML Bitcoin, and specifically to sell AML Bitcoin tokens. The jury saw evidence Dillman wired the full amount of Boyer's payment directly to NAC Foundation, Andrade's company. While Dillman may have had other schemes or participated in separate conspiracies, none of that is relevant given the charges brought against only Andrade and the evidence presented to the jury.

As to Abramoff, the defense presented evidence of his alleged other schemes or

conspiracies in an attempt to muddy the water. However, the government presented no evidence of these alleged separate schemes and Abramoff's testimony did not raise a risk of spillover. The government correctly points out Andrade does not (and cannot) argue that the jury could have convicted Andrade based on Abramoff's purported money laundering. Therefore, any alleged separate conspiracy or scheme which went entirely unmentioned in this case does not merit a multiple schemes instruction.

Dillman and Abramoff may have had separate plans that cut against Andrade's interests; however, these were not remotely relevant to the question answered by the jury. The jury was instructed "only to determine whether the defendant is guilty or not guilty of the charges in the indictment," and were told "[t]he defendant is not on trial for any conduct or offense not charged in the indictment." Dkt. 612. The jury heard evidence of one scheme, of which Andrade was indisputably a critical part. There was no risk a juror could reasonably have concluded Andrade was involved in a separate fraud scheme unrelated to the single fraud scheme charged in the indictment. Additionally, there was no risk that the jury could have convicted Andrade based on spillover evidence from a separate, uncharged conspiracy furthered by Dillman or Abramoff. Therefore, a new trial is not warranted on the grounds the jury did not receive this instruction. Accordingly, Andrade is also not entitled to a judgment of acquittal on this basis.

## IV. *NAPUE* CLAIM

Andrade also claims the government presented misleading testimony at trial, violating his right to due process. Defendant fails to establish a *Napue* violation and therefore cannot justify the post-conviction relief sought.

**A. Legal Standard**

To prevail under *Napue*, a defendant must show (1) that [the witness's] testimony was false, (2) that the testimony was material, meaning there is a reasonable likelihood that the false testimony could have affected the judgment of the jury; and (3) that the prosecution knew that the testimony was false. *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014) (citing *United States v. Houston,* 648 F.3d 806, 814 (9th Cir. 2011) and *Napue v. Illinois*, 360 U.S. 264 (1959)).

ORDER DENYING NEW TRIAL, DENYING JUDGMENT OF ACQUITTAL
CASE NO. 20-cr-00249-RS-1

9

*Napue* can be triggered by false or misleading testimony, if "the testimony, taken as a whole, gives the jury a false impression." *Panah v. Chappell*, 935 F.3d 657, 664 (9th Cir. 2019), *quoting Alcorta v. Texas*, 355 U.S. 28, 31 (1957).

**B. Discussion**

The defense fails to meet its burden of establishing a *Napue* violation. Andrade claims that the government violated *Napue* when the government introduced Exhibit 805 through the testimony of one of the case agents, Special Agent Ethan Quinn. Exhibit 805 was a photograph, seized from Andrade's phone, of a piece of paper containing a list of social media accounts used by Andrade and the NAC Foundation, along with usernames and passwords beginning with the initials "MA."

To meet his burden of establishing a violation requiring reversal or a new trial, a defendant must first establish that the witness's testimony was actually false or gave the jury a false impression. *Renzi*, 769 F.3d. at 751; *Panah*, 935 F.3d at 664. Andrade concedes Quinn's testimony was "literally true." The core of Andrade's *Napue* claim therefore is that the government pulled a "fast one" by presenting Exhibit 805 via Agent Quinn's testimony. The defense asserts Exhibit 805 was both misleading and a critical component in the jury's belief Andrade had access to and control over the Twitter and other social media accounts for AML Bitcoin when those accounts disseminated misrepresentations. Neither assertion survives scrutiny.

The defense has not shown Agent Quinn's testimony was misleading enough to given the jury a false impression. Agent Quinn's testimony, taken as a whole, gave the impression Andrade directed the social media accounts of AML Bitcoin. The defense now attempts to raise points about the strength of Exhibit 805 and argue the jury *should* not have drawn the inference from this exhibit that Andrade controlled the account passwords. These arguments as to the probative weight of Exhibit 805 should have been made to or were already rejected by the jury. Accordingly, these contentions do not constitute a *Napue* violation.[1]

---

[1] The defense asserts two more *Napue* violations in a footnote. For the foregoing reasons, the testimony of Agent Quinn was not misleading. Additionally, the testimony of Ben Boyer was not

ORDER DENYING NEW TRIAL, DENYING JUDGMENT OF ACQUITTAL
CASE NO. 20-cr-00249-RS-1

Moreover, Exhibit 805 and Agent Quinn's testimony were not the sole pieces of evidence demonstrating Andrade was responsible for misrepresentations posted on AML Bitcoin's social media accounts. The overwhelming evidence at trial was that Andrade did control the social media accounts when the misrepresentations were made. Multiple witnesses employed by Andrade all testified that Andrade controlled access to the social media sites, reviewed and approved postings to those sites, and was aware of and at times directed the posting of false and fraudulent statements on the social media accounts during the relevant period of the scheme. Therefore, the jury did not receive a false impression, but rather credited the government's circumstantial evidence despite the defense's efforts.

Additionally, the defense's attempts to relitigate discovery motions are unsuccessful. None of these accusations of misconduct in discovery succeeded in the pretrial stages because Andrade has no evidence beyond his conclusory statements. The defense attempts to reopen these disputes, claiming anew the government continues its "deceptions" and failed to produce evidence required by the assigned Magistrate Judge. The government has met its production burden and explained technical reasons for failing to produce cell phone captures in the exact format the defense insists it needs. This Court and the Magistrate Judge have heard these issues again and again, settling them all before the start of trial. Andrade has no basis to revive those arguments now.

## V. EVIDENTIARY RULINGS

A new trial may be warranted on the basis of an incorrect evidentiary ruling, but only if the ruling substantially prejudiced a party. *See United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992). Andrade contends there were multiple erroneous and prejudicial evidentiary rulings, categorized into six kinds of evidence improperly admitted or excluded: (1) versions of the terms and conditions provided on Andrade's website to AML Bitcoin investors; (2) excerpts of Andrade's recorded conversation with undercover FBI agent Bryant Ling; (3) documents

---

rendered misleading by his potentially mistaken claim he took a screenshot of a post and sent it to the government. Therefore, neither of these meet the standard for a *Napue* claim.

ORDER DENYING NEW TRIAL, DENYING JUDGMENT OF ACQUITTAL
CASE NO. 20-cr-00249-RS-1

11

pertaining to Jack Abramoff's alleged separate scheme; (4) WhatsApp messages between Abramoff and Carlos De La Guardia about Panama's ship registry and the Panama Maritime Authority; (5) messages between Abramoff and an out-of-court declarant named Moshe Lapin about the Super Bowl; and (6) redacted parts of the email updates Andrade received from CrossVerify employees in London. Much ink has already been spilled on these issues. The defense also attacks broad swathes of government evidence admitted into the record. Andrade revives his opposition to the admission of AtenCoin evidence, impeachment evidence, and government witness evidence admitted without foundation. Defendant presents nothing which would warrant revisiting the extensive pretrial rulings or the decisions rendered after mid-trial argument and briefing. The previous decisions excluding and admitting certain pieces of evidence stand. *See, e.g.*, Dkt. 496, 497, 514, 535, 541, 601.

The verdicts rendered by the jury are amply supported by the admissible evidence in this case and any errors are at best harmless in light of the substantial showing of Andrade's guilt of the conduct charged. The defense presented numerous pieces of evidence going to his good faith, Abramoff's alleged separate schemes, and other defense attempts to undermine the government's case. At core, the defense takes issue with the government's closing argument exhortation to the jury to examine numerous specific documents. Nothing in the evidentiary rulings prevented the defense from doing the same. Even assuming some of the evidence was erroneously included or excluded, the defense fails to explain how these evidentiary rulings sufficiently prejudiced Andrade. Therefore, any potential error was harmless.

## VI. DENIAL OF CONTINUANCE

Andrade also seeks to relitigate the denial of a further continuance. Again, these issues were decided before trial and the defense offers no reason to undermine previous rulings. *See* Dkt. 541. In order to merit a new trial, the defense must establish prejudice resulting from the denial of the continuance. *United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010). "Where the denial of a continuance prevents the introduction of specific evidence, the prejudice inquiry focuses on the significance of that evidence." *United States v. Rivera–Guerrero*, 426 F.3d 1130, 1142 (9th

Cir. 2005) (quoting *United States v. Mejia*, 69 F.3d 309, 317 (9th Cir. 1995)).

While the government concedes the late production of documents from Andrade's accountant, Karl Ruzicka, this error was not adequate grounds for yet another continuance. The defense still offers no evidence of prejudice it suffered from the late production. *See United States v. Wilkes*, 662 F.3d 524, 543 (9th Cir. 2011) ("[Defendant] has failed to establish that actual prejudice resulted from the denial because he has not shown that his verdict would have been different had the district court granted his request for continuance); *see also Armant v. Marquez*, 772 F.2d 552, 556–57 (9th Cir. 1985) ("At a minimum ... in order to succeed, [a defendant] must show some prejudice from the court's denial."). The defense gestures at potentially exculpatory material that might have been gleaned from Ruzicka if not for the late disclosure. Given the time since trial, Andrade's access to Ruzicka and his records for the years before trial, and the weeks the defense had with the Ruzicka documents before trial began, these vague possibilities do not entitle Andrade to a new trial.

## VII. CUMULATIVE ERRORS

Andrade is correct that cumulative errors can support a new trial. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996) ("In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."). For the foregoing reasons, the defense has failed to establish error in the jury instructions, any *Napue* violation, or any evidentiary decision that prejudiced him.

Even assuming any of the above decisions were truly errors, these errors were harmless individually and together. In contrast to the cases cited by Defendant, the government's proof was vigorously tested by the defense but remained strong in this case. *See Wilkes*, 662 F.3d at 543 (no cumulative error where the government presented ample evidence of defendant's guilt). The defense had five years and over four weeks to prepare and present its case to the jury. This jury saw numerous pieces of evidence and heard extensive testimony both undermining the government's case and presenting the defense's affirmative theories about Andrade's good faith,

diminished capacity, and potentially cross-cutting schemes devised by Andrade's co-conspirators. The defense chased down every lead in order to undermine the government's case and to bolster Defendant's explanation of the events. Despite these efforts, the jury convicted Andrade on both counts. Nothing presented by Defendant merits overturning this well-reasoned decision by the trier of fact.

### VIII. CONCLUSION

Defendant fails to establish any error, taken separately or together, that warrants a new trial. Furthermore, Defendant is not entitled to a judgment of acquittal. Therefore, Defendant's motion is denied.

**IT IS SO ORDERED**.

Dated: June 25, 2025

_____

RICHARD SEEBORG
Chief United States District Judge