# United States v. Andrade

# Defendant's Reply to Government's Sentencing Memorandum

# ATTACHMENT-1

## SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT (this "Agreement") is dated as of March 26, 2025 ("**Effective Date**"), by and between Marcus Andrade, 9414 Plaza Point Drive, Missouri City, Texas 77459 ("Andrade") and Rene Blanchette (the "Subscriber"), an individual residing at 329 Frontenac Crescent, Timmins, Ontario, P4N 7M2 Canada

(collectively, the "Parties").

      WHEREAS, Andrade, and the Subscriber are executing and delivering this Agreement in reliance upon an exemption from securities registration afforded by the provisions of Section 4(2), Section 4(6) and/or Regulation D ("**Regulation D**") as promulgated by the United States Securities and Exchange Commission (the "**Commission**") under the Securities Act of 1933, as amended (the "**1933 Act**").

      WHEREAS, the Parties desire that, upon the terms and subject to the conditions contained herein, Andrade will convey and sell to the Subscriber 325,000 Black Gold Coin, Inc. stock shares in an amount equal to Twenty-Five Hundredths Percent (0.75%) of the outstanding equity interest in Black Gold Coin, Inc., (the "**Securities**") as provided herein, and the Subscriber shall purchase in a firm commitment, in the aggregate, a purchase price of THIRTY-FIVE THOUSAND DOLLARS ($35,000) ("**Purchase Price**").

      WHEREAS, Black Gold Coin, Inc. is a Wyoming for-profit corporation, located at 1621 Central Ave., Cheyenne, WY 82001 (the "Company").

      NOW, THEREFORE, in consideration of the mutual covenants and other agreements contained in this Agreement the Company and the Subscriber hereby agree as follows:

      1. Closing. The "**Closing Date**" shall be the date that the Purchase Price is transmitted by wire transfer or otherwise credited to or for the benefit of Andrade and the Company. The consummation of the transactions contemplated herein shall take upon the satisfaction or waiver of all conditions to closing set forth in this Agreement. Subject to the satisfaction or waiver of the terms and conditions of this Agreement, on the Closing Date, Subscriber shall purchase, and the Company shall sell to Subscriber, the Securities.

      2. Subscriber Representations and Warranties. Subscriber hereby represents and warrants to and agrees with the Company with respect only to such Subscriber that:

      (a)    Organization and Standing of the Subscriber. Subscriber, to the extent applicable, is an individual who is free to enter into this Agreement who is absent any conflicts to the contrary.

      (b)    Authorization and Power. Subscriber has the requisite power and authority to enter into and perform this Agreement (collectively "**Transaction Documents**") and the other Transaction Documents and to purchase the Securities being sold to it hereunder. This Agreement and the other Transaction Documents have been duly authorized and executed and when delivered by Subscriber shall constitute valid and binding obligation of Subscriber, enforceable against Subscriber in

2

*M.A.*

accordance with the terms thereof.

(c) <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents and the consummation by Subscriber of the transactions contemplated hereby and thereby or relating hereto do not and will not (i) conflict with nor constitute a default (or an event which with notice or lapse of time or both would become a default) under any agreement to which Subscriber is a party, nor (ii) result in a violation of any law, rule, or regulation, or any order, judgment or decree of any court or governmental agency applicable to Subscriber or its properties (except for such conflicts, defaults and violations as would not, individually or in the aggregate, have a material adverse effect on Subscriber). Subscriber is not required to obtain any consent, authorization or order of, or make any filing or registration with, any court or governmental agency in order for it to execute, deliver or perform any of its obligations under this Agreement and the other Transaction Documents nor to purchase the Securities in accordance with the terms hereof, provided that for purposes of the representation made in this sentence, Subscriber is assuming and relying upon the accuracy of the relevant representations and agreements of the Company herein.

(d) <u>Information on Company</u>. Subscriber has been furnished by the Company such other information as Subscriber has requested in writing and considered all factors Subscriber deems material in deciding on the advisability of purchasing the Securities.

(e) <u>Information on Subscriber</u>. Subscriber is, and will be at the time of the Effective Date, an "**accredited investor**", as such term is defined in Regulation D promulgated by the Commission under the 1933 Act, is experienced in investments and business matters, has made investments of a speculative nature and has purchased securities of United States publicly-owned companies and private placements in the past and, with its representatives, has such knowledge and experience in financial, tax and other business matters as to enable Subscriber to utilize the information made available by the Company to evaluate the merits and risks of and to make an informed investment decision with respect to the proposed purchase, which represents a speculative investment. Subscriber has the authority and is duly and legally qualified to purchase and own the Securities. Subscriber is able to bear the risk of such investment for an indefinite period and to afford a complete loss thereof.

(f) Subscriber represents and warrants that is has fully complied various non-disclosure agreements it has entered with the Company and that he has not violated any of them.

(g) <u>Acknowledgement of Marcus Andrade's legal matters.</u> Subscriber understand and acknowledges that Marcus Andrade is subject to the following pending legal matters:

1) Criminal Case – USA v. Rowland Marcus Andrade, Case No. CR20-249 RS filed in the U.S. District Court for the Northern District of California, San Francisco, alleging violations of 18 U.S.C. §1843 (wire fraud), 18 U.S.C. §2 (aiding and abetting), 18

*M.A.*

3

U.S.C. §1956(a)(1) (money laundering), 18 U.S.C. §981(a)(1)(c) and 28 U.S.C. §2461(c) (forfeiture allegation). The Department of Justice has also filed a related forfeiture action.

2) Civil Case - SEC v. NAC Foundation LLC and Rowland Marcus Andrade, Case No. 3:20-cv-04188 filed in the U.S. District Court for the Northern District of California, San Francisco, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder and Sections 5(a), 5(c), 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act of 1933.

(h) <u>Subscriber's acknowledgement of information received and lack of information regarding Black Gold Coin, Inc:</u> Subscriber has done its own investigation into the Company. Subscriber acknowledges that neither Andrade nor Company has made any representations about the Company's financial conditions or prospects, Subscriber acknowledges that due to the above-referenced government actions that the Company's plans and attempts to monetize its intellectual property assets, whether through sale or licensing, have been, to date, unsuccessful and the Company has suffered distress as a result. Subscriber acknowledges that neither Company nor Andrade has made any representations about the validity and legality of the Company's assets, other than representations that Company is the lawful owner of such intellectual property referenced above in this section.

(i) <u>Compliance with Securities Act</u>. Subscriber understands and agrees that the Securities have not been registered under the 1933 Act or any applicable state securities laws, by reason of their issuance in a transaction that does not require registration under the 1933 Act or any applicable state securities laws (based in part on the accuracy of the representations and warranties of the Subscriber contained herein), and that such Securities must be held indefinitely unless a subsequent disposition is registered under the 1933 Act or any applicable state securities laws or is exempt from such registration. In any event, and subject to compliance with applicable securities laws, the Subscriber may enter into lawful hedging transactions in the course of hedging the position they assume and the Subscriber may also enter into lawful short positions or other derivative transactions relating to the Securities, or interests in the Securities, and deliver the Securities, or interests in the Securities, to close out their short or other positions or otherwise settle other transactions, or loan or pledge the Securities, or interests in the Securities, to third parties who in turn may dispose of these Securities.

(j) <u>Common Stock Legend</u>. The Black Gold Coin, Inc. stock certificates subject to this Agreement shall bear the following legend:

> "**NEITHER THE ISSUANCE AND SALE OF THE BLACK GOLD COIN, INC., (A WYOMING CORPORATION) COMMON STOCK ("SECURITIES") HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THESE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE**

4

*M.A.*

ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL (WHICH COUNSEL SHALL BE SELECTED BY THE HOLDER), IN A GENERALLY ACCEPTABLE FORM, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT SEC RULE 144 OR SEC RULE 144A UNDER SAID ACT. FURTHER, THROUGH AUGUST 30, 2025 THE SECURITIES, AS THAT TERM IS DEFINED HEREIN, MAY NOT BE TRANSFERRED AS SUCH STOCK IS SUBJECT TO REPURCHASE RIGHTS AS STATED IN SECTION 4 OF THIS AGREEMENT

(k) <u>Communication of Offer</u>. The offer to sell the Securities was directly communicated to Subscriber and not through a broker. At no time was Subscriber presented with or solicited by any leaflet, newspaper or magazine article, radio or television advertisement, or any other form of general advertising or solicited or invited to attend a promotional meeting otherwise than in connection and concurrently with such communicated offer.

(l) <u>Restricted Securities</u>. Subscriber understands that the Securities have not been registered under the 1933 Act and Subscriber will not sell, offer to sell, assign, pledge, hypothecate or otherwise transfer any of the Securities unless pursuant to an effective registration statement under the 1933 Act, or unless an exemption from registration is available. Notwithstanding anything to the contrary contained in this Agreement, Subscriber may transfer (without restriction and without the need for an opinion of counsel) the Securities to its Affiliates (as defined below) provided that each such Affiliate is an "accredited investor" under SEC Regulation D and such Affiliate agrees to be bound by the terms and conditions of this Agreement. For the purposes of this Agreement, an "**Affiliate**" of any person or entity means any other person or entity directly or indirectly controlling, controlled by or under direct or indirect common control with such person or entity. For purposes of this definition, "**control**" means the power to direct the management and policies of such person or firm, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise.

(m) <u>No Governmental Review</u>. Subscriber understands that no United States or Canadian federal, state, or provincial agency or any other governmental or state agency has passed on or made recommendations or endorsement of the Securities or the suitability of the investment in the Securities nor have such authorities passed upon or endorsed the merits of the offering of the Securities.

(n) <u>Correctness of Representations</u>. Subscriber represents that the foregoing representations and warranties are true and correct as of the date hereof and, unless Subscriber otherwise notifies the Company prior to the Closing Date, shall be true and correct as of the Closing Date.

*M.A.*

5

(o) <u>Survival</u>. The foregoing representations and warranties shall survive the Closing Date.

3. <u>Andrade Representations and Warranties.</u>

(a) <u>Due Authority</u>. Andrade is over 21 years of age, of sound mind and is capable of entering this Agreement.

(b) <u>Authority; Enforceability</u>. This Agreement and any other agreements delivered or required to be delivered together with or pursuant to the Transaction Documents have been duly authorized, executed and delivered by Andrade are valid and binding agreements of Andrade enforceable in accordance with their terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights generally and to general principles of equity. Andrade has full power and authority necessary to enter into and deliver the Transaction Documents and to perform his obligations thereunder.

(c) <u>No Violation or Conflict</u>. Assuming the representations and warranties of the Subscriber in Section 2 are true and correct, neither the issuance nor sale of the Securities nor the performance of the Company's obligations under this Agreement and all other agreements entered into by the Company relating thereto by the Company will:

(i) violate, conflict with, result in a breach of, or constitute a default (or an event which with the giving of notice or the lapse of time or both would be reasonably likely to constitute a default) under any agreement, stock option or other similar plan, indenture, lease, mortgage, deed of trust or other instrument to which the Company or any of its Affiliates is a party, by which the Company or any of its Affiliates is bound, or to which any of the properties of the Company or any of its Affiliates is subject; or

(ii) result in the activation of any anti-dilution rights or a reset or repricing of any debt, equity or security instrument of any creditor or equity holder of the Company, or the holder of the right to receive any debt, equity or security instrument of the Company nor result in the acceleration of the due date of any obligation of the Company.

(d) <u>No General Solicitation</u>. Neither the Company, nor any of its Affiliates, nor to its knowledge, any person acting on its or their behalf, has engaged in any form of general solicitation or general advertising (within the meaning of Regulation D under the 1933 Act) in connection with the offer or sale of the Securities.

(e) <u>Ownership of Shares</u>. Andrade warrants and represents he owns the Securities. More specifically and for the avoidance of doubt, Andrade warrants and represents he does hold legal title to at least 325,000 shares of the Company and that these 325,000 shares comprise 0.75% of the outstanding stock of the Company.

4. <u>Purchase of Securities.</u> Pursuant to this Agreement, Subscriber hereby purchases the Securities in exchange for the Purchase Price as of the Effective Date. Subscriber may not resell

6

*M.A.*

any of the purchased Securities without the consent of Andrade or the majority shareholder of the Company. Subscriber confirms that the funds used in this transaction did not derive from any illegal activity or from anyone who is directly or indirectly hostile to, or operating in bad faith against, Andrade. **Additionally, Andrade reserves the power to repurchase the Securities at anytime from Subscriber for the Purchase Price paid by Subscriber. This repurchase power shall lapse on August 30, 2026.**

5. <u>Release.</u> Subscriber releases the Company and the remaining shareholders of the Company, from all liability and claims related to Subscriber's purchase of Andrade's shares. Subscriber acknowledges that neither the Company nor remaining shareholders are a party to the transaction described in this Agreement other than where specifically referenced.

6. <u>Miscellaneous</u>.

    (a)    <u>Notices</u>. All notices, demands, requests, consents, approvals, and other communications required or permitted hereunder shall be in writing and, unless otherwise specified herein, shall be (i) personally served, (ii) deposited in the mail, registered or certified, return receipt requested, postage prepaid, (iii) delivered by reputable air courier service with charges prepaid, or (iv) transmitted by hand delivery, telegram, or facsimile, addressed as set forth below or to such other address as such party shall have specified most recently by written notice. Any notice or other communication required or permitted to be given hereunder shall be deemed effective (a) upon hand delivery or delivery by facsimile, with accurate confirmation generated by the transmitting facsimile machine, at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be: (i) if to Marcus Andrade, 9414 Plaza Point Drive, Missouri City, Texas 77459, e-mail amlbitcoin@protonmail.com with a copy (which shall not constitute notice) to: Axel Lindholm, Lindholm Law, PLLC, 7322 Southwest Freeway Suite 803, Houston, Texas 77074. E-mail Axel@Lindholm-Law.com, and (ii) if to the Subscriber, to Rene Blanchette, 329 Frontenac Crescent, Timmins, Ontario, P4N 7M2 Canada, e-mail: rene.blanchette@yahoo.ca

    (b)    <u>Entire Agreement; Assignment</u>. This Agreement and other documents delivered in connection herewith represent the entire agreement between the parties hereto with respect to the subject matter hereof and may be amended only by a writing executed by both parties. Neither the Company nor the Subscriber has relied on any representations not contained or referred to in this Agreement and the documents delivered herewith. No right or obligation of the Company shall be assigned without prior notice to and the written consent of the Subscriber.

    (c)    <u>Counterparts/Execution</u>. This Agreement may be executed in any number of counterparts and by the different signatories hereto on separate counterparts, each of which, when

*M.A.*

so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument. This Agreement may be executed by facsimile signature and delivered by electronic transmission.

(d) <u>**Arbitration Clause.**</u> **If a dispute, controversy or claim, of any kind and every kind or type, whether based on contract, tort, statute, regulations, or otherwise, arising out of, or connected with, or relating in any way to this Agreement, or the relationship of the parties, or the obligations of the parties, or the operations carried out under this Agreement, including without limitation, any dispute as to the existence, validity, construction, interpretation, negotiation, performance, non-performance, breach, termination, or enforceability of this Agreement, or the breach thereof, including claims against the Company, Marcus Andrade, and Company directors, officers and shareholders (any one of which constituting the "Dispute"), and if the Dispute cannot be settled through direct discussions (in the opinion of any party), the parties agree to first endeavor to settle the Dispute in an amicable manner by mediation under the Commercial Mediation Rules of the American Arbitration Association ("AAA"), before resorting to arbitration. If the Dispute is not settled by mediation within thirty (30) days of written request for mediation by any party to AAA, then and thereafter any unresolved Dispute, including the arbitrability of any unresolved Dispute, shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with the then current Commercial Arbitration with the award being final and binding. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any provisional remedy which would be available from a court of law shall be available from the arbitrator(s) to the parties to this Agreement pending arbitration. Civil discovery shall be permitted for the production of documents and taking of depositions. The arbitrator(s) shall be guided but not controlled by the Texas Rules of Civil Procedure in allowing discovery and all issues regarding compliance with discovery requests shall be decided by the arbitrator(s). The arbitrator(s) may impose sanctions and take other actions regarding the parties that the arbitrator(s) deem appropriate to the same extent that a judge could pursuant to the Texas Rules of Civil Procedure. The Federal Arbitration Act shall govern all arbitration proceedings under this Agreement. This Agreement shall in all other respects be governed and interpreted by the laws of the State of Texas, including its statutes of limitation but excluding any conflicts or choice of law rule or principles that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. The arbitration shall be conducted in Harris County, Texas, by one neutral arbitrator chosen by AAA according to its Commercial Arbitration Rules if the amount of the claim, exclusive of interest and costs, is one million dollars ($1,000,000.00) or less or by three neutral arbitrators chosen by AAA in the same manner as the one neutral arbitrator if the amount of the claim, exclusive of interest and costs, is more than one million dollars ($1,000,000.00). Neither party nor the arbitrator(s) may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. All fees and expenses of the arbitration shall be borne by the parties equally who shall make deposits as requested by AAA of each party's share of the deposits requested. Failure or refusal by a party to pay its share of the requested deposits shall constitute a waiver by the non-paying party of its rights to be heard, present evidence, cross-examine witnesses, and assert counterclaims in the arbitration. Informing the arbitrator(s) of a party's failure to pay its share of the requested deposits for the purpose**

*M.A.*



of implementing this waiver provision shall not be deemed to affect the arbitrator's impartiality, neutrality, independence, or ability to proceed with the arbitration. However, each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs. This agreement to arbitrate shall survive the termination or repudiation of this Agreement. <u>**ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS NO PARTY MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER SHAREHOLDER OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**</u>

(e) <u>Law Governing this Agreement</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to principles of conflicts of laws. Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the civil state courts of Texas located in Harris County, Texas or in the federal courts located in Harris County, Texas. The parties to this Agreement hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon *forum non conveniens*. **The parties executing this Agreement and other agreements referred to herein or delivered in connection herewith on behalf of the Company agree to submit to the *in personam* jurisdiction of such courts and hereby irrevocably waive trial by jury.** The parties shall pay their own attorney's fees and costs.

(f) <u>Maximum Payments</u>. Nothing contained herein or in any document referred to herein or delivered in connection herewith shall be deemed to establish or require the payment of a rate of interest or other charges in excess of the maximum permitted by applicable law. In the event that the rate of interest or dividends required to be paid or other charges hereunder exceed the maximum permitted by such law, any payments in excess of such maximum shall be credited against amounts owed by the Company to the Subscriber and thus refunded to the Company. The Company agrees that it may not and actually waives any right to challenge the effectiveness or applicability of this Section 6(f).

(g) <u>Captions: Certain Definitions</u>. The captions of the various sections and paragraphs of this Agreement have been inserted only for the purposes of convenience; such captions are not a part of this Agreement and shall not be deemed in any manner to modify, explain, enlarge, or restrict any of the provisions of this Agreement. As used in this Agreement the term "<u>person</u>" shall mean and include an individual, a partnership, a joint venture, a corporation, a limited liability company, a trust, an unincorporated organization and a government or any department or agency thereof.

(h) <u>Severability</u>. In the event that any term or provision of this Agreement shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by an authority having jurisdiction and venue, that determination shall not impair or otherwise affect the validity, legality or enforceability: (i) by or before that authority of the remaining terms and provisions of this Agreement, which shall be enforced as if the unenforceable term or provision were deleted, or (ii) by or before any other authority of any of the terms and provisions of this Agreement.

*M.A.*

    (i)    <u>Successor Laws</u>. References in the Transaction Documents to laws, rules, regulations and forms shall also include successors to and functionally equivalent replacements of such laws, rules, regulations and forms.

Agreed to as of the Effective Date by signing below.

**SUBSCRIBER**
Rene Blanchette

e-mail: rene.blanchette@yahoo.ca

_____
(Signature)
By: Rene Blanchette

Date Signed: 3-27-2025

**PURCHASE PRICE**
$35,000 for 325,000 shares of Black Gold Coin, Inc., a Wyoming corporation from Marcus Andrade equal to twenty-five hundredths percent (0.75%) of the equity interest in Black Gold Coin, Inc.

*M.A.*

10

## SIGNATURE PAGE TO SUBSCRIPTION AGREEMENT

Please acknowledge your acceptance of the foregoing Subscription Agreement by signing and returning a copy to the undersigned whereupon it shall become a binding agreement between us.

**Rene Blanchette**                                **Marcus Andrade**

                                                  *Marcus Andrade*

By: Rene Blanchette                               Dated: March 26, 2025

By: _[signature]_
Dated: 3-27-2025

11