1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  CHRISTIAAN HIGHSMITH (CABN 296282)
   DAVID WARD (CABN 239504)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7230
8      christiaan.highsmith@usdoj.gov
       david.ward@usdoj.gov
9
                              UNITED STATES DISTRICT COURT
10
                             NORTHERN DISTRICT OF CALIFORNIA
11
                                     SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,              ) NO. CR 20-00249 RS
                                           )
14         Plaintiff,                      )
                                           )
15     v.                                  ) DECLARATION OF FBI FORENSIC
                                           ) ACCOUNTANT THERESA CHIU IN SUPPORT
                                           ) OF UNITED STATES' PROPOSED FORFEITURE
16                                         ) AND RESTITUION ORDERS AND OPPOSITION
    ROWLAND MARCUS ANDRADE                 ) TO DEFENDANT'S OPENING BRIEF
17                                         ) REGARDING RESTITUTION & FORFEITURE
           Defendant.                      )
18  _____)

19
           I, Theresa Chiu, hereby declare and say:
20
        1. I am a Certified Public Accountant and a Certified Fraud Examiner and am currently
21
           employed as a Forensic Accountant by the Federal Bureau of Investigation (FBI). I have over
22
           14 years of financial accounting experience and worked as an FBI Forensic Accountant since
23
           2019. In my role with the FBI, I have experience in reviewing, compiling, and examining
24
           financial data, reporting mine findings, and preparing summary charts. I am focused on
25
           investigating fraud, public corruption, and other complex financial litigation matters, with a
26
           specific focus on the forensic accounting portion of such investigations.
27

28                                                    1
    THERESA CHIU DECLARATION
    CR 20-00249 RS

2. I submit this declaration in support of the Government's proposed forfeiture and restitution orders in the case against Rowland Marcus Andrade (Andrade). In this document I will summarize the work I performed to identify the total amount of restitution due to victims of Mr. Andrade. I also discuss some of the work I conducted to calculate investor losses in this case.

3. I base the statements contained in this declaration upon my personal knowledge, my review of documents and information available to me from open sources and in my official capacity, and information furnished to me by other employees and law enforcement officers of the FBI.

4. On or about May 7, 2025, the FBI created a website for the purpose of seeking victim information related to the marketing and sale of Andrade's cryptocurrency products (Aten Black Gold Coin, Aten Coin, AML Bitcoin, AML Bitcoin Token, and ABTC). The website was publicly available at the following URL: https://www.fbi.gov/how-we-can-help-you/victim-services/seeking-victim-information/seeking-victim-information-related-to-the-marketing-and-sale-of-aml-bitcoin. The website contained a link to a questionnaire for victims of Andrade's cryptocurrency scheme to complete. The questionnaire was publicly available at the following URL: https://forms.fbi.gov/victims/seeking-victim-information-related-to-the-marketing-and-sale-of-aml-bitcoin. The purpose of this questionnaire was to compile a large number of victim impact statements into one document. Therefore, I refer to the data collected from the questionnaires as the victim impact statements. The victim impact statements were compiled into an Excel workbook, attached hereto as Exhibit 1. The first tab in Exhibit 1 is labeled "1. All Victims Report."

### 1. All Victims Report

5. As of September 3, 2025, the FBI had received 305 questionnaire responses or victim impact statements. A compilation of these victim impact statements is included within the Exhibit 1 spreadsheet in the tab labeled "1. All Victims Report." In this spreadsheet, columns A through AF are the compiled victim impact statements from the 305 questionnaire responses. I redacted the respondent's date of birth, phone number, and IP location.

6. I added columns AG, AH, and AI to the victim impact statements. Column AH includes a unique identifying number for each victim-respondent. Column AI captures the loss amount entered by the victim-respondents in column V in a standard numerical format. The total for

column AI represents the total loss reported by all persons who submitted victim impact statements, which totaled $4,642,066.75. If the victim-respondent provided an amount that was not in U.S. dollars, or did not provide a loss amount, then their amounts were not included. I identified those instances with an entry that states "Victim did not provide USD amounts."

**2. Duplicate and Uncorroborated Victim Impact Statements**

7. During my review of the 305 victim impact statements, I noted 31 duplicate entries submitted by respondents to the questionnaire. I identified these duplicate responses based on their first and last names, email addresses, and physical addresses. After removing duplicates, I calculated 274 unique potential victim impact statements. I then worked to validate that the 274 respondents were victims of Andrade's cryptocurrency fraud. I corroborated the victim-respondents' first and last names and/or email addresses against three types of documents: 1) bank statements for approximately 12 accounts controlled by Mr. Andrade and one account held by Block Bits Capital for the time period January 1, 2014 to October 31, 2018;[1] 2) trial exhibit 1470; and 3) supporting documentation provided by the victim-respondents to the FBI. Based on this review, I identified and excluded an additional 11 respondents because I was unable to corroborate that they were victims of Andrade's cryptocurrency fraud based on my review of bank statements and trial exhibit 1470 and because they did not provide supporting documentation for their purchase of Andrade's cryptocurrency products. I documented the list of 31 duplicate entries and 11 uncorroborated victim impact statements

---

[1] I reviewed records for one Block Bits Capital bank account because those records reflected that some investors, such as Benjamin Boyer, invested in AML Bitcoin via Block Bits Capital and Block Bits Capital transferred those victim's investments to bank accounts controlled by Andrade.

I reviewed fewer bank accounts for the restitution analysis described in this declaration than I did for the investor loss analysis presented during trial. For trial, I also reviewed Andrade's personal accounts, but I did not include his personal accounts for this restitution analysis because investors did not transfer funds directly into Andrade's personal accounts, they transferred funds into his business accounts. Andrade then transferred some investor funds from his business accounts to his personal accounts.

For this restitution analysis I reviewed the following bank accounts records and associated trial exhibit number: Exhibits 1219, 1223-1227, 1248, 1415 (Salmon JP Morgan Chase x7620), Exhibits 1229-1309, 1398 (Fintech Wells Fargo x8065), Exhibits 1229, 1316-1324, 1398 (Fintech Wells Fargo x8252), Exhibits 1372-1384, 1393, 1395-1398 (Fintech Wells Fargo x9668), Exhibits 1173-1191, 1209-1210 (Andrade/Wooten Capital One x1839), Exhibits 1264-1267, 1269 (Sunkin Comerica Bank x7567), Exhibits 1367-1371, 1393, 1397-1398 (NAC Wells Fargo x0458), Exhibits 1255-1256, 1262 (NAC Citbank x5554), Exhibits 1240-1246, 1250 (NAC JP Morgan Chase x9891), Exhibits 1284-1291 (NAC Nevada State Bank x0964), Exhibits 1332-1348, 1394-1398 (NAC Payroll Wells Fargo x9155), Exhibits 1161-1165, 1172 (NAC Payroll Bank of America x6488), and Exhibits 1219-1222, 1248 (Block Bits JP Morgan Chase x8602).

3

THERESA CHIU DECLARATION
CR 20-00249 RS

in Exhibit 1, within the spreadsheet tab labeled "2. Duplicate & Uncorroborated". Column AI in this spreadsheet tab captures the loss amount entered by the duplicate and uncorroborated respondents. The total Victim Reported Loss Amount for the duplicate and uncorroborated victim-respondents in column AI totaled $621,327.16. This amount was removed from my analysis. In column AJ, I included the reason I excluded each victim impact statement with the entry "Duplicate entry" or "Unable to corroborate".

### 3. Corroborated Victims Report & 4. Bank Statement Summary

8. Removing the 31 duplicates and 11 uncorroborated victim impact statements, left a total of 263 unique victim-respondent impact statements. I added the losses reported by these 263 victim-respondents and calculated a total reported loss amount of $4,020,739.59 for these victims. This spreadsheet tab—"3. Corroborated Victims Report"—provides this total unique loss amount in column AI.

9. I attempted to corroborate what the 263 victim-respondents reported as their loss amount. I did this by checking column AI, entitled "the Victim Report Loss Amount" against three types of source documents: 1) bank statements for the 13 bank accounts listed in footnote 1 above, 2) supporting documentation provided by victims, and 3) trial exhibit 1470.

10. Exhibit 1's spreadsheet tab labeled "3. Corroborated Victims Report" contains column AJ. This column represents my effort to trace the 263 victims' reported loss amount to the 12 bank accounts controlled by Andrade and one account controlled by Block Bits Capital. Investor deposits and transfers into these 13 bank accounts are summarized in the Exhibit 1 spreadsheet tab labeled "4. Bank Statement Summary". This spreadsheet summarizes all the deposits (including transfers) into the 12 Andrade controlled bank accounts and one Block Bits Capital account. Where I was able to trace a victim's first and last name to an investor's name in this bank statement summary spreadsheet, I documented the loss amount in column AJ of the Exhibit 1 spreadsheet tab labeled "3. Corroborated Victims Report".

11. I also relied on supporting documentation submitted by victims to calculate the corroborated loss amount. Some victims submitted to the FBI via email documentation supporting their purchase of Andrade's digital currency products in addition to filling out a victim impact statement. The supporting documentation submitted by victims included bank/wire transfer documents or other evidence that they purchased Andrade's digital currency products via another cryptocurrency (i.e. Bitcoin, Etherum, Litecoin, or Bitcoin Cash). In cases where

4

THERESA CHIU DECLARATION
CR 20-00249 RS

victims provided evidence that they utilized cryptocurrency to purchase Andrade's digital currency products, I calculated their cryptocurrency loss by multiplying the amount of legitimate cryptocurrency by that cryptocurrency's historical closing price as of the date reflected in the victim's documents for the purchase. For historical cryptocurrency price information, I used the daily closing price listed on a public website: www.exchangerates.org.uk/crypto-currencies. I documented this calculation in column AK of the Exhibit 1 spreadsheet tab labeled "3. Corroborated Victims Report". Column AK is entitled "Source: Supporting Documentation Provided by Victim". The supporting documentation provided by victims to the FBI is attached to this declaration as Exhibit 2.

12. For victim-respondents who sent records of a cryptocurrency purchase of Andrade's digital currency products, I only included losses where those records indicated that payment had been made to an Andrade-related entity.

### 5. Trial Exhibit 1470

13. Trial Exhibit 1470. This document was a spreadsheet introduced at trial. Tr. 957. Per trial testimony Exhibit 1470 was a record of AML Bitcoin token purchases by customer. Tr. 958-59. Exhibit 1 spreadsheet tab labeled "5. Trial Exhibit 1470" is a copy of Ex. 1470. If I was able to trace a victim's email addresses to the Trial Exhibit 1470 spreadsheet, then I copied the purchase amount included within Column P of Trial Exhibit 1470 tab into column AL of the spreadsheet tab labeled "3. Corroborated Victims Report". This represented one possible source to corroborate a victim-respondent's reported loss amount.

### FBI Corroborated Restitution Amount

14. Ultimately, I utilized the three methods described above to calculate a restitution amount for each unique victim who submitted a victim impact statement. I refer to these amounts as corroborated restitution amounts which are documented within column AM of Exhibit 1's spreadsheet tab labeled "3. Corroborated Victims Report". In many instances, the victim's reported loss is supported by all three source documents (bank statements, victim supporting documents, and trial exhibit 1470), but the source documents often listed different loss amounts. In determining the FBI Corroborated Restitution Amount for each unique victim, I determined the loss amount from the Bank Statement Summary as the most reliable source of information, as these amounts came from independent third-party entities. I attempted to utilize that amount as the corroborated restitution amount for each victim whenever possible.

In cases where victims also utilized cryptocurrency to purchase Andrade's digital currency products and provided evidence supporting their purchases, I added these purchases to the bank statement summary amounts to arrive at a corroborated restitution amount for each victim. If the victim did not provide sufficient supporting documentation and I was unable to trace their investment to the bank statement summary, I utilized the loss amount included within Trial Exhibit 1470 as the victim's corroborated restitution amount. Using the above methodology, the total FBI Corroborated Restitution Amount for the 263 victims is $3,101,800.29. This calculation is documented in column AM of the Exhibit 1 spreadsheet tab labeled "3. Corroborated Victims Report". The source document used to corroborate each victim's loss amount is listed in column AN of the Exhibit 1 spreadsheet tab labeled "3. Corroborated Victims Report".

**Additional Information About Investors' Who Used Cryptocurrency to Purchase Andrade's Digital Currency Products**

15. Andrade claims that the government double-counted $770,357.98 in cryptocurrency income. Dkt. 728, at 11. Andrade states that Block Bits Capital held Andrade's cryptocurrency and at times liquidated it. *Id.* Andrade further states that Block Bits Capital transferred a total of $770,357.98 to Andrade in May, June, and July 2018, which represented the proceeds of Block Bits selling some of cryptocurrency they held for Andrade. *Id.* I did not include the $770,357.98 in my restitution calculations or in my calculations of investor transfers introduced at trial. This is because the May, June, and July 2018 transfers failed my methodology for calculating investment into Andrade's digital currency products. I did not include these transfers because there was no indication that they represented the proceeds of or investments in Andrade's digital currency products.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2025.

_Theresa Chiu_
Theresa Chiu, Forensic Accountant, FBI

THERESA CHIU DECLARATION
CR 20-00249 RS

6