MICHAEL J. SHEPARD (SBN 91281)
 *mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

CINDY A. DIAMOND (SBN 124995)
 *cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:     +1 408 981 6307

DAINEC P. STEFAN (admitted *pro hac vice*)
 *dstefan@kslaw.com*
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Telephone:     +1 212 556 2291

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cr-00249-RS |
| Plaintiff, | **DEFENDANT'S REPLY REGARDING RESTITUTION AND FORFEITURE** |
| v. | |
| ROWLAND MARCUS ANDRADE, | Judge: Hon. Richard Seeborg, Chief Judge |
| Defendant. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    THE GOVERNMENT'S REQUESTED FORFEITURES ARE INSUFFICIENTLY
       PROVEN AND EXCESSIVE ........................................................................... 2

       A.    The Government's Estimates are Unreliable at Best ............................... 2

       B.    The Government Erroneously Included Funds Beyond the Crime of Conviction.. 2

       C.    The Government Erroneously Double-Counted Cryptocurrency Income ............. 4

       D.    The Government's Proposed Forfeiture Erroneously Includes Funds That Did Not
             Come to Rest with Mr. Andrade ............................................................ 5

       E.    The Government's Proposed Forfeiture Erroneously Includes Criminal Activity
             Mr. Andrade Did Not Agree to Undertake ............................................. 6

III.   THE GOVERNMENT'S REQUESTED RESTITUTION IS INSUFFICIENTLY
       PROVEN AND EXCESSIVE ........................................................................... 8

       A.    No Restitution Should Be Awarded........................................................ 8

       B.    If the Court Nonetheless Awards Restitution, It Should Award Far Less than the
             Government's Demand ........................................................................... 9

IV.    THERE IS NO STATUTORY BASIS FOR A MONEY JUDGMENT FORFEITURE
       AND ANY SUCH JUDGMENT IS UNCONSITUTIONAL ............................ 12

V.     ANY FORFEITURE OR RESTITUTION AWARD WOULD BE UNTIMELY ......... 13

       A.    Any Forfeiture Order from the Court is Untimely.................................. 13

       B.    The Government's Proposed Restitution is Untimely ............................ 15

VI.    THE GOVERNMENT'S COMBINED AND OVERLAPPING FORFEITURE AND
       RESTITUTION DEMANDS VIOLATE THE EIGHTH AMENDMENT.................... 15

VII.   ANY FORFEITURE OR RESTITUTION ORDERS SHOULD BE STAYED PENDING
       APPEAL ........................................................................................................ 16

VIII.  CONCLUSION................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Her Majesty the Queen in Right of Canada,*
    785 F.3d 1273 (9th Cir. 2015) ................................................................10

*Honeycutt v. United States,*
    581 U.S. 443 (2017) ................................................................................13

*United States v. Babichenko,*
    2025 WL 404461 (D. Idaho Feb. 4, 2025) ..............................................16

*United States v. Bailey,*
    973 F.3d 548 (6th Cir. 2020) .............................................................7, 12

*United States v. Beecroft,*
    825 F.3d 991 (9th Cir. 2016) ..................................................................16

*United States v. Brandel,*
    2019 WL 2110504 (D. Nev. 2019) .........................................................10

*United States v. Burns,*
    843 F.3d 679 (7th Cir. 2016) ....................................................................3

*United States v. Dadyan,*
    76 F.4th 955 (9th Cir. 2023) .............................................................10, 11

*United States v. Feldman,*
    853 F.2d 648 (9th Cir. 1988) ....................................................................5

*United States v. Fujinaga,*
    2022 WL 671018 (9th Cir. Mar. 7, 2022) ................................................5

*United States v. Gossi,*
    608 F.3d 574 (9th Cir. 2010) ....................................................................4

*United States v. Grant,*
    2008 WL 4376365 (S.D.N.Y. Sept. 25, 2008) .........................................3

*United States v. Holmes,*
    673 F. Supp. 3d 1049 (N.D. Cal. 2023), *aff'd*, 129 F.4th 636 (9th Cir. 2025) ..........................9

*United States v. Kennedy,*
    643 F.3d 1251 (9th Cir. 2011) ..................................................................9

*United States v. King*,
    231 F. Supp. 3d 872 (W.D. Okla. 2017) ........................................................5

*United States v. Lo*,
    839 F.3d 777 (9th Cir. 2016) ...........................................................2, 10

*United States v. Loreng*,
    956 F.Supp. 2d 213 (D.D.C. 2013) ...............................................15

*United States v, May*,
    706 F.3d 1209 (9th Cir. 2013) ......................................................10, 11

*United States v. Nejad*,
    933 F.3d 1162 (9th Cir. 2019) .......................................................13

*United States v. Noel*,
    2020 WL 2569996 (E.D. Ky. May 21, 2020) .................................3

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016) ........................................................4

*United States v. Robbins*,
    2011 WL 3862054 at *5 (N.D. Iowa Aug. 11, 2011) .....................2

*United States v Salas-Fernandez*,
    620 F.3d 45 (1st Cir. 2010) ...........................................................12

*United States v. Thompson*,
    990 F.3d 680 (9th Cir. 2021) .................................................5, 6, 13

*United States v. Waknine*,
    543 F.3d 546 (9th Cir. 2008).........................................................10

*United States v. Wiltberger*,
    18 U.S. 76 (1820).............................................................................13

*United States v. Yalincak*,
    30 F.4th 115 (2d Cir. 2022) ...........................................................12

**Statutes**

18 U.S.C. 981 ...............................................................................3, 12, 13

18 U.S.C. 982 ........................................................................................12

18 U.S.C. 3663A ..........................................................................1, 10, 11

18 U.S.C. 3664 ............................................................................12, 14, 15

21 U.S.C. 853(a) ...........................................................................................................3

28 USC 2461(c) ...........................................................................................................14

**Other Authorities**

Fed. R. Crim. Pro. 32.2(b)(1)(B) ...............................................................................5

Fed. R. Crim. Pro. 32.2(b)(4)(B) .............................................................................14

Rule 36-3..........................................................................................................................5

Rule 404(b) ....................................................................................................................11

## I.    INTRODUCTION

Actions speak louder than words.  The government protests that its estimates are reliable, but substitutes new restitution estimates, one of which – the only one it claims to have corroborated, as opposed to the one that it demonstrated was inaccurate – is close to *one-third lower* than what the government insisted the Court impose at sentencing, which was long *after* it was supposed to have a final number.  *See* Government Sentencing Memo, ECF 709 at 27:9-12. Nowhere does the government acknowledge that it previously insisted on a number more than 10% higher than its currently highest (and unsupportable) estimate, let alone explain how it erred or why it can be trusted now.

The numbers that the government now proffers as correct remain inexplicable.  It claims that it did not double count proceeds in calculating forfeiture, but, to the extent the defense can follow the government's calculations, the government cannot have reached its total without double counting, and double counting is not the only problem with the government's numbers. Although Mr. Andrade called out the lack of verifiability in his brief, the government offers a declaration that does not supply any data or calculations from which its proffered forfeiture totals can be checked and verified.  Despite its huge prior misses, slanted numbers, and unwillingness to show its work, it asks the Court to disregard precedent and take its word that a number that cannot be verified is somehow correct.

No better is the rest of the government's brief.  Faced with adverse cases, it ignores them. Faced with adverse facts, it skips over them.  The government's brief underscored the accuracy of Mr. Andrade's earlier contention that the government has not put the Court in a position to award forfeiture or restitution, leaving the government with nothing better to argue than that the Court cannot refuse them, *see* Government's Brief in Support of Restitution and Forfeitures, ECF 732 at 24:3, even though precedent and statutes say the contrary, *see* 18 U.S.C. 3663A(c)(3)(B), ECF 728 at 12:1-6, especially when the government's work has been as sloppy and unreliable as it has been in this case.

## II.    THE GOVERNMENT'S REQUESTED FORFEITURES ARE INSUFFICIENTLY PROVEN AND EXCESSIVE

### A.  The Government's Estimates are Unreliable at Best

Mr. Andrade's Opening Brief laid out some of the reasons why the government's forfeiture figure is unreliable: it purports to be based on estimates, without any explanation of the process by which the estimates were made and without any identification of the specific numbers from which the estimates were formed.  Defendant's Opening Brief, ECF 728 at 1:7-12.  For example, money came into the accounts used in Ms. Chiu's analysis during the relevant period in payment for matters other than AtenCoin, Cross Verify, or AML Bitcoin, and without more it is impossible to know if those funds were (wrongly) included.[1]  The government's response makes no effort to address those concerns, and instead adds to them by suggesting that the "estimates" consist of *adding* to raw numbers, the derivation of which remains unexplained.[2]

### B.  The Government Erroneously Included Funds Beyond the Crime of Conviction

In his opening brief, Mr. Andrade demonstrated that forfeiture cannot be awarded for conduct before July 2017, which the indictment alleges was the start of the scheme for which Mr. Andrade was convicted.  ECF 728 at 2-3; *United States v. Robbins*, 2011 WL 3862054 at *5 (N.D. Iowa Aug. 11, 2011), *report and recommendation adopted*, 2011 WL 3844094 (N.D. Iowa 2011).  In so arguing, Mr. Andrade expressly distinguished *United States v. Lo,* 839 F.3d 777 (9th Cir. 2016), on the ground that in *Lo*, the defendant's contention addressed whether forfeiture could be awarded only for amounts traceable to the three specific uses of wires to which he pled guilty, and the Court instead held that forfeiture could be awarded for any funds obtained as a result of the scheme to which he pled guilty.  At best for the government, applying *Lo* would make Mr. Andrade liable for all funds obtained as a result of the scheme alleged in the

---

[1] For example, *see* Attach-3 IRS-DOCS-00037830 Excerpt 1.

[2] *See* ECF 732 (providing rounded-up "approximation" of cryptocurrency purchases); 2:26-3:19 (leaving unexplained what daily price she used to arrive at her cryptocurrency figures—was it the daily low, high, average, or closing price – which can vary 5-10% or more on a daily, regular basis.  *See* Appendix A, Bitcoin Market Data).

1    indictment, which began in July 2017 and ended in October, 2018 – as the government itself

2    acknowledged when it told the Court that forfeiture from Mr. Andrade must be based on the

3    activity "for which he was convicted at trial." ECF 711 at 5:27-6:2.

4          Having no answer for this distinction or the precedent adverse to its position, the

5    government can do nothing more than quote language from *Lo* that it likes, and refer to two out

6    of circuit cases, both of which are distinguishable on the same ground as *Lo*.  Faced with the

7    argument raised by Mr. Andrade, other courts have distinguished *Ventrella* on this same ground.

8    *See, e.g., United States v. Noel,* 2020 WL 2569996 (E.D. Ky. May 21, 2020), citing *United*

9    *States v. Nava,* 404 F.3d 1119, 1129 & n.5 (holding that the defendant must obtain the proceeds

10   *from the crime of conviction* in order to subject them to forfeiture).  To hold otherwise would be

11   to expand the express terms of 18 U.S.C. 981(a)(1)(D),[3] which limits forfeiture to the receipts

12   obtained, directly or indirectly, from the wire fraud violation, and the government cites no case

13   in which any court ordered forfeiture for proceeds obtained outside the scope of the specific

14   scheme charged in the indictment on which the defendant was convicted.

15         Just as it makes no effort to address how *Lo* is distinguishable,[4] the government offers no

16   answer to the fact that the offer to purchase Cross Verify shares was not fraudulent – Cross

17

18   _____

     [3] While the forfeiture statutes applicable to these drug cases, 21 U.S.C. 853(a), is not the exact
19   same as 18 U.S.C. 981(D), their language is near-identical in stating that the property to be
     seized must be "obtained, directly or indirectly" from the violation in question (or in the case of
20   21 U.S.C. 853(a), property used or intended to be used to commit a violation).

     [4] *See United States v. Ventrella*, 585 F.3d 1013 (7th Cir, 2009) (rejecting defense claim that
21   forfeiture should be limited to amounts associated with the mail fraud counts of conviction,

22   reasoning that the mail fraud scheme to which the defendant pled guilty "does not adequately
     account for the *proceeds obtained from their crime of conviction*") (emphasis added); *United*
23   *States v. Capoccia*, 503 F.3d 103 (2d Cir. 2007) (court rejects forfeiture for violation of 18 USC
     2314 for pre-indictment conduct, explains that "the violation on which the forfeiture is based
24   must be the specific violations of which [the defendant] was convicted, not some other, separate
     2314 violations, and includes – "all proceeds of the racketeering enterprise *forming the basis of*
25   *his conviction.*").  In this case the non-fraudulent AtenCoin sales were *not* part of the AML
26   Bitcoin scheme – either substantively or temporally -- that was charged in the indictment and for
27   which the jury convicted Mr. Andrade.

28

     _____

Verify had real technology, and any statements Mr. Andrade made about it were not fraudulent. ECF 728 at 10.  The only evidence the government offers in response is evidence that one of the uses of Cross Verify was that it would provide biometric identification for AML Bitcoin.  ECF 732 at 10.  It makes no effort to provide any authority suggesting that proceeds from a separate, non-fraudulent business in which Mr. Andrade had no leadership role, *id.,* can be a basis for forfeiture, and principles from other cases preclude any such claim.  *See generally United States v. Grant,* 2008 WL 4376365, at *2 n. 1 (S.D.N.Y. Sept. 25, 2008) (requiring proof that proceeds constitute property the defendant would not have had but for the criminal offense); *United States v. Burns*, 843 F.3d 679, 686 (7th Cir. 2016) (district court erred in failing to deliver a clear ruling on proximate cause in determining victim loss).

No better is the government's claim that Mr. Andrade's argument that the forfeiture includes funds beyond the crime of conviction (and several other arguments made in Mr. Andrade's brief) are somehow improper efforts to "relitigate" what the Court decided at sentencing.  It cites no authority for this proposition and there is none, because forfeiture, restitution, and the far broader loss calculation in the sentencing guidelines based on "relevant conduct" all have separate standards, so that the results are not necessarily the same.  *See, e.g., United States v. Nosal*, 844 F.3d 1024, 1046 (9th Cir. 2016); *United States v. Gossi,* 608 F.3d 574, 582 (9th Cir. 2010).  As a result, the Court cannot include in the forfeiture any funds from outside the July 2017-October 2018 period in the indictment, or from the sale of AtenCoins or Cross Verify shares – a total of $2.1 million.

### C.  The Government Erroneously Double-Counted Cryptocurrency Income

Responding to Mr. Andrade's contention that it double-counted cryptocurrency income, the government says it didn't.  The problem with this response is that, as best the defense can determine, the government's numbers do not add up without double counting.  *See* Declaration of Laurie Bartis-Callaghan at 2.  The defense cannot check the government's work because, despite the fact that this omission has been called out repeatedly, the government offers no insight into the specific numbers that went into its calculations, and even the slightest scrutiny

1  reveals material errors and dramatic shifts in the government's numbers.[5]  The government has

2  therefore not provided the Court with enough to award forfeiture, at least without a reduction of

3  a minimum of $770,257.98, and, if the Court concludes otherwise, an evidentiary hearing at

4  which the defense can contest the government's numbers.  *See United States v. Feldman,* 853

5  F.2d 648, 662 (9th Cir. 1988); Fed. R. Crim. Pro. 32.2(b)(1)(B); *United States v. King*, 231 F.

6  Supp. 3d 872, 984, 915, 953 (W.D. Okla. 2017) (government must offer "reliable reference

7  points").[6]

8  **D.  The Government's Proposed Forfeiture Erroneously Includes Funds That Did**

9  **Not Come to Rest with Mr. Andrade**

10  The Ninth Circuit expressly limits forfeiture to funds that "come to rest with the

11  defendant."  ECF 728 at 12; *United States v. Thompson*, 990 F.3d 680, 691-92 (9th Cir. 2021).

12  Seeking to evade *Thompson*, the government first offers a series of out-of-circuit cases, as if the

13  Court could and should follow them instead of *Thompson,* and then tops that effort by offering

14  one Ninth Circuit case, as if it overruled *Thompson* even though it "is not precedent."[7]

15

16  [5] Apart from double-counting cryptocurrency sales, the government also erroneously added

17  $884,050.53 in proceeds from Mr. Andrade's separate, personal share sales, *see* ECF 728 at 4:3-6, provided inconsistent figures in its submission to probation, *see* Defendant's Sentencing

18  Memo, ECF 713 at n.49, submitted a grossly inaccurate initial restitution claim of $4.597 million in its sentencing memo, *see* Government's Sentencing Memo, ECF 709 at 25:27-28, and now

19  offers the Court two wildly divergent options: $4.0 million in unsubstantiated claims or $3.1 million of substantiated claims from both eligible and ineligible claimants, Government's Brief

20  in Support of Forfeiture and Restitution, ECF 732 at 10:7-14:14.

21  [6] It is no answer to claim that Mr. Andrade did not contest the accuracy of these numbers at trial,

22  ECF 732 at 11 (although in impeachment, as he does here, Mr. Andrade noted the lack of backup and verifiability).  Whether the government correctly calculated the amount of the fraud has no

23  bearing on guilt, but it is central to a forfeiture proceeding.  The government offers no authority for its proposition that not wasting the jury's time to contest the amounts has any bearing

24  whatsoever on this motion, and there is none.  That the government fills its brief with this sort of

25  argument is a measure of how little it has to say to justify its requested forfeiture.

26  [7] *United States v. Fujinaga*, 2022 WL 671018 (9th Cir. Mar. 7, 2022).  The exceptions to

27  *Fujinaga* not being precedent, as provided in Circuit Rule 36-3, are "under the doctrines of the law of the case, res judicata, or collateral estoppel," none of which apply here.

28

Defendant's Reply Regarding Restitution and    Case Number:  3:20-cr-00249-RS - Page 5
Forfeiture

Not only must the Court follow *Thompson*, but that case also gives the back of its hand to the purported distinctions offered in the government's out-of-circuit and non-precedential cases. Vassily Thompson, the lead defendant in *Thompson,* owned several of the accounts into which the proceeds of their "advance pay" scheme went, and controlled and directed the other account; no other defendant was alleged to have controlled any account. *Id.* at 682, 685. Nonetheless, the Ninth Circuit reversed, requiring the district court to "make findings denoting approximately how much of the proceeds of the crime came to rest with each of the three conspirators." *Id.* at 691-92. It expressly rejected the government's theory "that because the swindlers directed the money to the escrow accounts, they each received all the money." *Id.* at 691.

As a last ditch effort, the government asserts that the *Thompson* court "conceded that the result would be different if one defendant had 'the unfettered right to enjoy the whole [of the proceeds'"], ECF 732 at 13, but the opinion says something quite different: that "*if the money came to rest* in a joint account, or property owned jointly or as tenants by the entirety, the swindlers would each have an unfettered right to enjoy the whole." 990 F.3d at 691 (emphasis added). In other words, even if the government had proven that Mr. Andrade had some "unfettered right to enjoy the whole," what was pivotal for the court was nothing more or less than where the money "came to rest." This Court should therefore deduct $1,583,987.25 from the forfeiture, because those funds did not come to rest with Mr. Andrade. *See* ECF 728 at Appendix A.

### E.  The Government's Proposed Forfeiture Erroneously Includes Criminal Activity Mr. Andrade Did Not Agree to Undertake

Without disputing the authority on which it is based, ECF 728 at 15-16, the government seeks to avoid the principle that forfeiture cannot include the proceeds of criminal activity that Mr. Andrade did not agree to undertake, first arguing that Mr. Andrade is somehow improperly seeking to "relitigate" the issue, and then arguing that the notion that Mr. Andrade did not agree to undertake some of the activity "strains credulity." Both efforts fail.

As discussed in Part IIB above, there is nothing improper about litigating an issue when it matters rather than doing so in front of the jury when it does not – or litigating a forfeiture issue when forfeiture standards apply for the first time.  Needless to say, the government offers no authority that suggests in any way that Mr. Andrade cannot now raise the question of whether the proposed forfeiture erroneously includes the proceeds of criminal activity that Mr. Andrade did not agree to undertake.

The remainder of the government's argument carefully avoids the specific facts that were the basis of Mr. Andrade's objection: that some of the money that came to Mr. Andrade from Block Bits, unbeknownst to Mr. Andrade at the time, originated with Ben Boyer, who sent it to Block Bits as part of an investment in Block Bits that was hidden from Mr. Andrade, that was used by Block Bits to cheat Mr. Andrade, and that undermined a central tenet of Mr. Andrade's business.  ECF 728 at 15.  The government attempts to dismiss this argument by characterizing it as Mr. Andrade claiming he received funds he never wanted, and nonetheless did not return them.  But while Dillman and Mata were cheating him behind his back, Mr. Andrade did not know at the time that he was being cheated and his business undermined – making his not returning the funds irrelevant.

And if he were somehow required to show that he would have returned the money had he known, there was ample evidence he would have done so, starting with his turning down $100 million for his patents because he did not like the terms, and continuing with his insistence on compliance with terms that Dillman and Mata were *violating* without his knowledge.  *See* Defendant's Corrected Motion for New Trial, ECF 656 at 18-11:4. Given that $1,563,380 – some but not all of the funds that originated with Ben Boyer, and funds from Dillman and Mata – came from part of Dillman and Mata's separate fraud scheme that Mr. Andrade did not agree to undertake, the forfeiture should not include those funds.  *See United States v. Bailey*, 973 F.3d 548, 574-75 (6th Cir. 2020) (holding that "criminal activity for sentencing guidelines purposes is not as broad as conspiracy liability," and defendants "can only be held accountable for 'the criminal that [they] agreed to jointly undertake. . .'").

III.    **THE GOVERNMENT'S REQUESTED RESTITUTION IS INSUFFICIENTLY
PROVEN AND EXCESSIVE**

A.  **No Restitution Should Be Awarded**

The government has at last made an effort – long after advocating for a facially erroneous amount of restitution it writes as if it never proffered – to eliminate obvious pranksters, duplicates, and other inaccuracies from its restitution figure.[8]  But it continues to ignore every other overarching problem with its restitution claim: it makes no effort to demonstrate direct and proximate causation, *see* ECF 728 at 10:20-11:2, no effort to demonstrate reliance, *see id.*, and, now with two exceptions, it makes no effort to show what the alleged victims *lost,* as opposed to merely showing what they spent.

For Dr. Witte and Dr. Acuna, the government at least offered evidence that they tried but did not succeed in selling their tokens.  Subject to other objections above and below, this may make them eligible for restitution, but it does not help any of the other claimants given the

---

[8] One of the many low points in the government's brief is its criticism of Mr. Andrade's challenge to the $100,000 claimed by Kelly C.  *See* ECF 732 at n.4.  The government's criticism is based solely on the fact that its *current* restitution demand for Kelly C is $35,979.54, as computed by Ms. Chiu in her declaration filed on September 6, 2025.  *Id.*  But this is confirmation of, rather than criticism of Mr. Andrade and his calling out that the government's calculation was unreliable, given that Mr. Andrade pointed out the error in his filing on August 23, 2025, when the government was insisting on nearly $4.6 million of restitution that included the $100,000 claimed by Kelly C.  *See* ECF 728 at Appendix A.  This was only one of *many* instances of inconsistency within the government's provided evidence.  *See* ECF 728 at 13:15-21.

Another instance of the government's unreliability is in ECF 732 at 20 n.5, where the government claims that its "bank records analysis does not reflect when Daniel A. purchased his AML Bitcoin," so it instead uses a NAC document to set the date within the time period of the indictment, despite the fact that the May 17, 2018 date is not corroborated by any bank record -- bank records *do* have dates and apparently none of them show a transaction by Daniel A on or about that date.  To make matters even more confounding, rather than offering an actual number – which is what bank records and NAC records contain – the government offers as its amount the peculiar term "nearly $197,447.33."  In the end, the government has created a mystery as to how it concluded that the amount was "nearly $197,447.33," what that phrase even means, or why it lacks an exact number.

---

unrebutted evidence laid out in Mr. Andrade's opening brief that many others were able to sell their coins and tokens on exchanges and get value in return.  *See* ECF 728 at 17 n.15.  Contrary to the government's claim that there "was no concrete evidence of any meaningful sales activity" on the exchanges, *see* ECF 732 at 13:13-15, in addition to the facts in Mr. Andrade's opening brief, the government's own lead victim witness on the scheme charged in the indictment, Ben Boyer, purchased $444,529 worth of tokens on the exchanges, *see* Tr. 584:6-8; ECF 716-7 at 3 – about as far from "no concrete evidence of any meaningful sales activity" as can be imagined.

The result is that all claimants except Drs. Witte and Acuna have failed to satisfy the most basic element of restitution: establishing how much they lost.  The Court lacks that information because (despite its bald assertion that it has presented "self-reported losses," ECF 732 at 16:24), the government asked only how much the claimants *spent,* rather than how much they *lost* – despite the defense repeatedly calling out this issue.  *See* Reply to Government's Sentencing Memo, ECF 716 at 20:15-21:6; ECF 728 at 11:10-17.  Not only did purchasers sell coins and tokens on exchanges, but some received refunds.[9]  Because the government asked only about purchases, it left the court far short of what it needs to order restitution to anyone other than Drs. Witte and Acuna: enough evidence to allow the court to estimate the 'full amount of the victim's losses' with 'some reasonable certainty,'" *United States v. Holmes*, 673 F. Supp. 3d 1049, 1054 (N.D. Cal. 2023), *aff'd*, 129 F.4th 636 (9th Cir. 2025); *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011).  This Court is not permitted to 'engage in ... arbitrary calculations' to determine the . . . victims' losses," s*ee Kennedy*, 643 F.3d at 1261, such as guessing whether or not a victim sold on an exchange, or obtained refunds.  The restitution figure should therefore be reduced by $3,360,080.88.  The only alternative would be for the Court to hold a hearing and question each of the other claimants, and Mr. Andrade again so requests if the Court concludes that the government met its burden.

**B.  If the Court Nonetheless Awards Restitution, It Should Award Far Less than the Government's Demand**

---

[9] *See* Attach-2 IRS-DOCS-00037830 Excerpt 1

1   The government purports to give the Court a choice of two figures for restitution, both of

2   which are substantially lower than what it previously asked the Court to award:  $4,020,739.59,

3   or $3,101,800.29.  Whatever face-saving the government is seeking by offering two different

4   figures, the Court need not spend any time considering the first one because it is based on

5   unsupported claims that records show to be inaccurate.  ECF 732-1.  Such claims cannot be a

6   basis for a restitution award.  *United States v. Waknine,* 543 F.3d 546, 557-58 (9th Cir. 2008)

7   (even affidavits from victims "were too summary and too conclusory to be sufficiently reliable in

8   the face of [the defendant's] objections")

9   But even the lower $3.1 million total is far too high.  It includes claimants who are

10  ineligible for restitution, primarily because any losses they sustained did not flow from "the

11  specific conduct that is the basis of the offense of conviction," as required by *United States v,*

12  *May,* 706 F.3d 1209, 1214 (9th Cir. 2013) – a case cited in Mr. Andrade's opening brief and

13  ignored by the government.  *See also* 18 U.S.C. 3663A ("the court shall order . . .that the

14  defendant make restitution to the victim *of the offense*") (emphasis added).[10]

15  *AtenCoin purchasers.*  Bypassing *May's* teaching and the express terms of Section

16  3663A, the government erroneously attempts to conjure up a different answer based on *United*

17  *States v. Dadyan*, 76 F.4th 955 (9th Cir. 2023).  The government's erroneous reading of *Dadyan*

18  is the same misreading it made of *Lo* in its argument about forfeitures.  *See* Part IIB *supra.*  The

19  *Dadyan* defendants did not contend, as Mr. Andrade does here, that restitution is limited to the

20  scheme that is charged in the indictment; rather, they sought a much narrower limitation, arguing

21  "that the district court erred as a matter of law by imposing restitution in the full amount of loss

22  caused by the conspiracy instead of just the loss caused by the fraudulent loan applications they

23  personally played a role in submitting."  *Id.* at 958.[11]

---

24  [10] The government suggests doubts should be resolved in favor of victims, ECF 732 at 15:26-28,
25  but what are in effect civil judgments cannot be awarded without due process or in ways beyond
    what the statutes permit.
26  [11] Similar to *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016), is the government's citation to
27  *United States v. Brandel,* 2019 WL 2110504 (D. Nev. 2019), in which "the victims were directly

28

1    The government does not even try to argue that AtenCoin was charged in the indictment;

2    not only is AtenCoin not mentioned in the indictment, but it falls outside the time period of the

3    indictment, and the government effectively acknowledged it was not included in the indictment

4    when it authored a Rule 404(b) notice in order to get the AtenCoin story into evidence.

5    Defendant Andrade's Motion in Limine to Exclude Allegations and Evidence of Uncharged Bad

6    Acts, ECF 425 at Appendix A.  As a result, the government's restitution figure should be

7    reduced by $851,646.51.  *See* ECF 728 at Appendix I.[12]

8    *Cross Verify share purchasers.*  All these same arguments apply to the government's

9    attempt to include losses from the purchase of shares in Cross Verify, an attempt that also suffers

10   from the fact that the sale of Cross Verify shares was not a fraud – an argument the government

11   concedes by its unwillingness to join issue.  Therefore, $95,000 should be deducted from the

12   restitution award.  *See* ECF 728 at Appendix I.[13]

13   *Purchasers outside the time period of the indictment.*  As demonstrated in Mr. Andrade's

14   opening brief, "every circuit that has addressed the issue has looked at it the same way, [that] [i]f

15   the indictment alleges that a conspiracy began on a certain date, they all say, a defendant may not

16   be held responsible for losses that occurred before that date."  ECF 728 at 21:15-18.  That so

17   many circuits have come to the same conclusion follows from the terms of the statute, which

18   directs the court to order "that the defendant make restitution to the victim *of the offense.*"  18

19   _____

20   harmed by the entire scheme and conspiracy in which [the defendants] participated extensively
     *and were convicted*."  (emphasis added).  The government cites other cases using the phrase

21   "related but uncharged conduct," but those cases at best for the government are ambiguous:
     none of them allow inclusion of 404(b) evidence, and instead use the quoted phrase to refer to

22   the scheme for which the defendant was convicted.  *See, e.g., In re Her Majesty the Queen in*
     *Right of Canada,* 785 F.3d 1273 (9th Cir. 2015) (allowing recovery for conduct for the same

23   scheme, even if it occurred prior to the effective date of the MVRA).  This is far from enough to

24   countermand *May* and the express words of 3663A.

     [12] The government observes that "the PSR treated Andrade's cryptocurrency products as being

25   part of a single fraud scheme," ECF 732 at 20:8-9, but offers no reason why such treatment

26   trumps the case law and statutory limitations identified above.

27   [13] Note that these figures overlap with the deductions for AtenCoin shares within Appendix I, and
     are included within those deductions.

28

U.S.C. 3663A (emphasis added).  In response, the government can only cite back to *Dadyan* and the other cases addressed above, which are at best ambiguous, and cannot override *May,* Section 3663A, and the weight of every circuit that has addressed the issue, especially when none of government's cases appear to have ordered restitution for losses resulting from conduct preceding the time period of the indictment.  As a result, the government's requested forfeiture should be reduced by $50,000.  *See* ECF 728 at Appendix J.

*Some of Boyer's purchases.*  The government does not contest the facts in Mr. Andrade's opening brief that demonstrate that some of Boyer's purchases were "beyond the criminal activity that [Mr. Andrade] agreed to jointly undertake."  ECF 728 at 22:12-23:2.  Rather, it returns to its canard that this issue has already been litigated, again without acknowledging that sentencing-related determinations are governed by different standards than a determination of guilt.  *See Bailey,* 973 F.3d at 575 (noting that guidelines for jointly undertaken criminal activity are not as broad as conspiracy liability and that the "defendant can only be held accountable for 'the criminal activity that the particular defendant agreed to jointly undertake'").  On this basis, the government's restitution amount should be reduced by $1,105,000.  *See* ECF 728 at Appendix J.

*Any remaining restitution should be apportioned.*  The government resists apportioning liability based on the "impracticality" of doing so.  ECF 732 at 21:16-20.  Exactly why it would be impractical is unexplained, given the discretion vested in the court by the governing statute, 18 U.S.C. 3664(h) and the fact that many courts have found a way to apportion the liability.  *See, e.g., United States v. Yalincak*, 30 F.4th 115 (2d Cir. 2022); *United States v Salas-Fernandez*, 620 F.3d 45 (1st Cir. 2010).  One basis on which it can do so is the economic circumstances of each defendant, *see* 18 U.S.C. 3664(h), which the Court should use in this case.

## IV.    THERE IS NO STATUTORY BASIS FOR A MONEY JUDGMENT FORFEITURE AND ANY SUCH JUDGMENT IS UNCONSITIONAL

To justify a money judgment forfeiture in this case requires a series of judicial creations that go well beyond what the governing statutes authorize.  The statute governing forfeitures as

part of sentencing in criminal cases, 18 U.S.C. 982, does not provide for forfeiture for wire fraud violations, except for frauds relating to certain financial institutions.  The government's Motion for a Forfeiture Money Judgment, ECF 711, instead proceeds under 18 U.S.C. 981, civil forfeiture.  Section 981 may include by reference all wire frauds, but it provides for forfeiture only of "any property, real or personal, which constitutes or is derived from proceeds traceable to [a wire fraud] violation."  18 U.S.C. 981(a)(1)(C).  Nowhere does it give the Court the authority, as part of a criminal sentencing or otherwise, to enter a "forfeiture money judgment," especially one not directed only at property that is or is derived from proceeds traceable to the wire fraud.

Because it has long been established that only Congress, and not the courts, can authorize criminal punishment, *United States v. Wiltberger*, 18 U.S. 76, 95 (1820), this judicially invented collection of statutory leaps is unconstitutional and unauthorized for the reasons set forth above. The government offers no explanation for how courts can create criminal punishments, but notes that the Ninth Circuit approved this house of cards in *United States v. Nejad*, 933 F.3d 1162 (9th Cir. 2019) and a series of earlier cases.  *See id.* at 1165-66 (explaining that nothing in *Honeycutt v. United States,* 581 U.S. 443 (2017) allowed a three-judge panel to overrule the prior cases).

Since then, the Ninth Circuit in *Thompson,* after an analysis of the history of the law of forfeiture, correctly wrote that "[t]here is nothing in the text of Section 981 that extends forfeiture to property of a defendant that is not traceable to the proceeds of the crime (outside the procedures set forth in Section 853(p))."  990 F.3d at 690.  This language should open the door to allow this Court to consider the unconstitutional judicial leaps that turned a civil forfeiture statute permitting the forfeiture of proceeds to become permission as part of a criminal sentencing to award a money judgment regardless of whether it is in any way connected to the proceeds of the crime of conviction.

## V.    ANY FORFEITURE OR RESTITUTION AWARD WOULD BE UNTIMELY

### A.  Any Forfeiture Order from the Court is Untimely

The government asserts that Mr. Andrade argued that the Court cannot bifurcate sentencing.  ECF 732 at 18:3-5.  Not so.  What went wrong, and what Mr. Andrade argued, is not

that the Court is holding a separate forfeiture hearing, but that the Court entered its judgment on July 31, 2025, in ECF 719, apparently based on what was either unclear or bad advice from the government at the start of the sentencing proceeding. *See* ECF 728 at 26:21-27:27. Once the Court entered that judgment, it cannot change or modify it unless expressly allowed by a rule or statute, ECF 728 at 26:25-27:10, but no rule or statute permits such a modification. Although this argument was unambiguously laid out in Mr. Andrade's opening brief, the government did not answer it directly, and there is no answer to it.

The government nibbles at the issue at ECF 732 at 23 n.7, (and in one sentence in text), but does not solve the problem. Its footnote 7 seeks solace in the Preliminary Order of Forfeiture, ECF 711, claiming that the Court's preliminary order, ECF 721, "stated that the amount of a forfeiture money judgment shall be determined by the Court at the restitution hearing," ECF 732 at n.7, but the preliminary order does not so state. *See* ECF 721. Even if it had so stated, because forfeiture is part of the sentencing (as the government concedes), *see* ECF 732 at 23:13; *see also* 28 USC 2461(c); Fed. R. Crim. Pro. 32.2(b)(4)(B), whatever is in the preliminary order is beside the point.

Only briefly addressing this Court's Judgment, the government observes that ECF 719, in defining "the defendant's interest in the following property" to be forfeited to the United States – which is not the "forfeiture money judgment" the government is seeking – says that such property is "to be determined in conjunction with restitution." To this, the government adds that the Court ruled that "an Amended Judgment would be issued after the September 16 restitution hearing and forfeiture hearing," ECF 732:10-12, but the Court's actual language refers only to restitution, not forfeiture. ECF 719 at 6. Even if the language included forfeiture and a "forfeiture money judgment," it would merely underscore how the government is going around in circles, because, as Mr. Andrade explained in his opening brief, a statute *does* allow the *restitution* determination to be addressed after the Judgement in a Criminal Case is entered, 18 U.S.C. 3664(d)(5), but there is no provision allowing the sentence in this case to be amended for forfeiture after the Judgment. The government's few words, or whatever language the Judgment

1    contains, do not therefore provide any escape from that prohibition.  ECF 728 at 27:1-11.

2        **B.  The Government's Proposed Restitution is Untimely**

3        Due to the government, the Court remains well short of a position in which it can reliably

4    determine restitution. This is because the government continues to defy the rules.  Sixty days

5    prior to the date originally set for sentencing (which works out to May 23, 2025), the government

6    was required to list the amounts subject to restitution.  18 U.S.C. 3664(d)(1).  It did not do so.  It

7    first provided some information on May 19, 2025, has continued to provide information as late

8    as September 3, 2025, and on September 6, 2025, it completely redid its proposal.  Compare

9    Government's Sentencing Memo, ECF 709 at 25:27-28 to ECF 732 at 16:17-19:14.  To make

10   matters worse, it accuses Mr. Andrade of "misleadingly" quoting Section 3664(d)(1), ECF 732 at

11   22 n.6, without ever stating what was misleading about the accurate quotation in Mr. Andrade's

12   brief.

13       This sloppiness is prejudicial to both Mr. Andrade and the victims.  The Court is left with

14   numbers that do not add up, *see* Declaration of Laurie Bartis-Callaghan, and with no way to

15   assess the accuracy of the government's totals absent a laborious cross examination.  *See id.*;

16   ECF 732-1.  This is untenable.  *See United States v. Loreng,* 956 F.Supp. 2d 213 (D.D.C. 2013)

17   (ordering no restitution due to failure to supply calculation until just before sentencing and

18   failure to properly address court's calculation issues).

19   **VI.    THE GOVERNMENT'S COMBINED AND OVERLAPPING FORFEITURE AND**

20           **RESTITUTION DEMANDS VIOLATE THE EIGHTH AMENDMENT**

21       Contrary to the government's characterization, Mr. Andrade's "only articulated rationale"

22   (ECF 732 at 23:22) for contending that forfeiture and restitution violate the Eighth Amendment

23   was not that they would sentence him to "life terms of impoverishment or living off the books, or

24   both."  While that impoverishment for him, his wife, and his two daughters is an important

25   consideration that was identified in Mr. Andrade's opening brief, he also urged the Court to

26   consider the amount of money Mr. Andrade returned to the business in an effort to make it

27   succeed, ECF 718 at 28:13-14; the fact that the amount of the requested forfeiture bears "no

28

1   articulable correlation to any injury suffered by the government," *Id.* at 28:18-29:1; and the

2   government's own misconduct, against which the Court must be vigilant given the government's

3   incentive to impose forfeitures so it can obtain more funds.  *Id.* at 29:2-6.  Forfeiture and

4   restitution are mandatory, ECF 732 at 24:3, but it is still subject to the Eighth Amendment,

5   *United States v. Beecroft,* 825 F.3d 991, 1000 & n.9 (9th Cir. 2016), and the government's

6   proposal is not in compliance with it.

7   **VII.    ANY FORFEITURE OR RESTITUTION ORDERS SHOULD BE STAYED**

8   **PENDING APPEAL**

9        The government suggests that the Court should deny these requests because the Court has

10  already denied Mr. Andrade's new trial motion, and because, according to the government, Mr.

11  Andrade is unlikely to succeed on appeal.  ECF 732 at 26:3-6.  But the government does not

12  suggest that this is the standard, and it should not be.  *See, e.g., United States v. Babichenko*,

13  2025 WL 404461 at *3 (D. Idaho Feb. 4, 2025) (employing the lesser standard, as in bond

14  pending appeal, of whether the defense arguments "raise a substantial question of law or fact,

15  which, if resolved in their favor, is likely to result in a new trial").  Mr. Andrade will be filing

16  next week his motion for bond pending appeal, and suggests that the court resolve this request

17  when it resolves Mr. Andrade's motion for bond pending appeal.

18  **VIII.   CONCLUSION**

19       The government proved that the demand it made at sentencing was wrong, and its new

20  proposal is still legally incorrect and factually dubious. The requests should be denied in their

21  entirety, or if not, substantially reduced**,** and/or an evidentiary hearing should be granted.

22  DATED:  September 11, 2025

23                                        Respectfully Submitted,

24                                         /s/ Michael J. Shepard
                                          _____
25                                        MICHAEL J. SHEPARD,
                                          CINDY A. DIAMOND, and
26                                        DAINEC STEFAN
                                          Attorneys for Defendant
27                                        ROWLAND MARCUS ANDRADE

28

**Appendix A - Bitcoin Market Data**

| Date | Open | High | Low | Close | Adj Close | % Change | Volume |
|---|---|---|---|---|---|---|---|
| 28-Feb-18 | 10,687.20 | 11,089.80 | 10,393.10 | 10,397.90 | 10,397.90 | -2.71 | 6,936,189,952 |
| 27-Feb-18 | 10,393.90 | 10,878.50 | 10,246.10 | 10,725.60 | 10,725.60 | 3.19 | 6,966,179,840 |
| 26-Feb-18 | 9,669.43 | 10,475.00 | 9,501.73 | 10,366.70 | 10,366.70 | 7.21 | 7,287,690,240 |
| 25-Feb-18 | 9,796.42 | 9,923.22 | 9,407.06 | 9,664.73 | 9,664.73 | -1.34 | 5,706,939,904 |
| 24-Feb-18 | 10,287.70 | 10,597.20 | 9,546.97 | 9,813.07 | 9,813.07 | -4.61 | 6,917,929,984 |
| 23-Feb-18 | 9,937.07 | 10,487.30 | 9,734.56 | 10,301.10 | 10,301.10 | 3.66 | 7,739,500,032 |
| 22-Feb-18 | 10,660.40 | 11,039.10 | 10,005.00 | 10,005.00 | 10,005.00 | -6.15 | 8,040,079,872 |
| 21-Feb-18 | 11,372.20 | 11,418.50 | 10,479.10 | 10,690.40 | 10,690.40 | -6.00 | 9,405,339,648 |
| 20-Feb-18 | 11,231.80 | 11,958.50 | 11,231.80 | 11,403.70 | 11,403.70 | 1.53 | 9,926,540,288 |
| 19-Feb-18 | 10,552.60 | 11,273.80 | 10,513.20 | 11,225.30 | 11,225.30 | 6.37 | 7,652,089,856 |
| 18-Feb-18 | 11,123.40 | 11,349.80 | 10,326.00 | 10,551.80 | 10,551.80 | -5.14 | 8,744,009,728 |
| 17-Feb-18 | 10,207.50 | 11,139.50 | 10,149.40 | 11,112.70 | 11,112.70 | 8.87 | 8,660,880,384 |
| 16-Feb-18 | 10,135.70 | 10,324.10 | 9,824.82 | 10,233.90 | 10,233.90 | 0.97 | 7,296,159,744 |
| 15-Feb-18 | 9,488.32 | 10,234.80 | 9,395.58 | 10,166.40 | 10,166.40 | 7.15 | 9,062,540,288 |
| 14-Feb-18 | 8,599.92 | 9,518.54 | 8,599.92 | 9,494.63 | 9,494.63 | 10.40 | 7,909,819,904 |
| 13-Feb-18 | 8,926.72 | 8,958.47 | 8,455.41 | 8,598.31 | 8,598.31 | -3.68 | 5,696,719,872 |
| 12-Feb-18 | 8,141.43 | 8,985.92 | 8,141.43 | 8,926.57 | 8,926.57 | 9.64 | 6,256,439,808 |
| 11-Feb-18 | 8,616.13 | 8,616.13 | 7,931.10 | 8,129.97 | 8,129.97 | -5.64 | 6,122,189,824 |
| 10-Feb-18 | 8,720.08 | 9,122.55 | 8,295.47 | 8,621.90 | 8,621.90 | -1.13 | 7,780,960,256 |
| 9-Feb-18 | 8,271.84 | 8,736.98 | 7,884.71 | 8,736.98 | 8,736.98 | 5.62 | 6,784,820,224 |
| 8-Feb-18 | 7,637.86 | 8,558.77 | 7,637.86 | 8,265.59 | 8,265.59 | 8.22 | 9,346,750,464 |
| 7-Feb-18 | 7,755.49 | 8,509.11 | 7,236.79 | 7,621.30 | 7,621.30 | -1.73 | 9,169,280,000 |
| 6-Feb-18 | 7,051.75 | 7,850.70 | 6,048.26 | 7,754.00 | 7,754.00 | 9.96 | 13,999,800,320 |
| 5-Feb-18 | 8,270.54 | 8,364.84 | 6,756.68 | 6,955.27 | 6,955.27 | -15.90 | 9,285,289,984 |
| 4-Feb-18 | 9,175.70 | 9,334.87 | 8,031.22 | 8,277.01 | 8,277.01 | -9.79 | 7,073,549,824 |
| 3-Feb-18 | 8,852.12 | 9,430.75 | 8,251.63 | 9,174.91 | 9,174.91 | 3.65 | 7,263,790,080 |
| 2-Feb-18 | 9,142.28 | 9,142.28 | 7,796.49 | 8,830.75 | 8,830.75 | -3.41 | 12,726,899,712 |
| 1-Feb-18 | 10,237.30 | 10,288.80 | 8,812.28 | 9,170.54 | 9,170.54 | -10.42 | 9,959,400,448 |