1   MICHAEL J. SHEPARD (SBN 91281)
      *mshepard@kslaw.com*
2   **KING & SPALDING LLP**
    50 California Street, Suite 3300
3   San Francisco, California 94111
    Telephone:    +1 415 318 1221
4

5   CINDY A. DIAMOND (SBN 124995)
      *cindy@cadiamond.com*
6   **ATTORNEY AT LAW**
    58 West Portal Ave #350
7   San Francisco, CA 94127
    Telephone:    +1 408 981 6307
8

9   DAINEC P. STEFAN (admitted *pro hac vice*)
      *dstefan@kslaw.com*
10  **KING & SPALDING LLP**
    1185 Avenue of the Americas
11  34th Floor
    New York, NY 10036
12  Telephone:    +1 212 556 2291

13
    Attorneys for Defendant
14  ROWLAND MARCUS ANDRADE

15

16                    **UNITED STATES DISTRICT COURT**

17                  **NORTHERN DISTRICT OF CALIFORNIA**

18                        **SAN FRANCISCO DIVISION**

19

20  UNITED STATES OF AMERICA,            Case No. 3:2-cr-00249-RS

21                  Plaintiff,           **DEFENDANT'S MOTION FOR BOND
                                         PENDING APPEAL AND RELATED**
22          v.                           **RELIEF**

23  ROWLAND MARCUS ANDRADE,              Judge: Hon. Richard Seeborg, Chief Judge
                                         Date:  9-30-2025
24                  Defendant.           Time:  2:30 (via Zoom)

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

    A.    Mr. Andrade ................................................................................. 2

    B.    Indictment, trial, and bond ........................................................... 3

III.  ARGUMENT ............................................................................................ 4

    A.    Legal Standard ............................................................................. 4

    B.    Mr. Andrade Will Not Flee or Pose a Danger if Released...................... 5

    C.    Mr. Andrade's Appeal is Not for Purposes of Delay but rather Raises Substantial Questions of Law or Fact That Are Likely to Result a New Trial.......................... 5

        1.    The instructions allowed the jury to convict Mr. Andrade of money laundering for conduct other than that charged by the grand jury ............... 5

        2.    The instructions created confusion about the burden of proof on good faith7

        3.    A multiple scheme instruction should have been given in light of evidence that the lone wire did not further the scheme charged in the indictment ..... 8

        4.    The testimony of FBI Special Agent Quinn, and the argument of the government about, Exhibit 805 violated *Napue v. Illinois*, 360 U.S. 264 (1959) ......................................................................................... 10

        5.    Exculpatory evidence was excluded based on the erroneous application of hearsay rules ................................................................................ 11

        6.    Damaging testimony offered by the government was admitted without any semblance of a foundation........................................................... 11

        7.    Rule 404(b) and other unfairly prejudicial evidence was erroneously admitted .................................................................................... 12

        8.    The defense's evidence of government misconduct was at least sufficient to require a hearing ........................................................................... 12

        9.    A short continuance was required for due process after the government's five-year-delayed, eve-of-trial production of voluminous and probative financial information ................................................................... 13

        10.   The cumulation of multiple errors requires reversal ................................ 14

    D.    The Court Should Also Consider Mr. Andrade's Extraordinary Circumstances.. 15

    E.    For the Same Reasons, the Enforcement of Any Forfeiture or Restitution Orders Should Also Be Stayed Pending Appeal......................................... 15

IV.   CONCLUSION........................................................................................ 16

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5   *Drake v. Portuono*,
      553 F.3d 230 (2d Cir. 2009)........................................................................10

6

7   *Hayes v. Brown*,
      399 F.3d 972 (9th Cir. 2002) (en banc) ........................................................10, 11

8   *Luce v. United States*,
      469 U.S. 38 (1984)........................................................................13

9

10  *Napue v. Illinois*,
      360 U.S. 264 (1959)........................................................................2, 10

11

12  *United States v. Babichenko*,
      2025 WL 404461 at *3 (D. Idaho Feb. 4, 2025) ........................................16

13

14  *United States v. Balthazard*,
      360 F.3d 309 (1st Cir.2004)........................................................................9

15  *United States v. DuShane*,
      623 Fed. App'x 332 (9th Cir. 2015)........................................................6

16

17  *United States v. Frederick*,
      78 F.3d 1370 (9th Cir.1996) ........................................................14

18

19  *United States v. Garcia*,
      340 F.3d 1013 (9th Cir. 2003) ........................................................2, 4, 15

20  *United States v. Garner*,
      507 F.3d 399 (6th Cir. 2007) ........................................................14

21

22  *United States v. Gianandrea*,
      38 Fed. App'x 434 (9th Cir. 2002)........................................................7

23

24  *United States v. Handy*,
      761 F.2d 1279 (9th Cir. 1985) ........................................................1, 4, 8

25  *United States v. Job*,
      871 F.3d 852 (9th Cir. 2017) ........................................................9

26

27  *United States v. Johnson*,
      459 F.3d 990 (9th Cir. 2006)........................................................9

28

*United States v. LaPage*,
   231 F.3d 488 (9th Cir 2000) ................................................................11

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) ..............................................................9

*United States v. Notaro*,
   363 F.2d 169 (9th Cir. 1966) ................................................................8

*United States v. Ocegueda-Ruiz*,
   663 F. App'x 560 (9th Cir. 2016) .........................................................9

*United States v. Perry*,
   550 F.2d 524 (9th Cir. 1997) ..............................................................10

*United States v. Soberon*,
   929 F.2d 935 (3d Cir. 1991) ...............................................................12

*United States v. Winsor*,
   890 F. Supp. 2d 1257 (D. Or. 2012) .................................................1, 4

**Statutes**

18 U.S.C. 3143 ..................................................................................1, 2

18 U.S.C. 3143(b)(1)(B) .........................................................................1

18 U.S.C. 3143(b)(1)(B)(i)-(iv) ...........................................................1, 4

18 U.S.C. § 3143(b)(1)(A) .......................................................................4

18 U.S.C. § 3145(c) ..............................................................................15

Bail Reform Act, 18 U.S.C. § 3143(b)(1) ........................................2, 4, 7

**Other Authorities**

PENN STATE L. REV. 331, 334 .............................................................10

Fed. R. Crim. Pro. 32.2(d) ...................................................................15

Fed. R. Crim. Pro. 38(e) ......................................................................15

Fed R. Evid. 404(b) ..........................................................................2, 12

# I.      INTRODUCTION

Defendant Rowland Marcus Andrade requests that the Court allow him to remain on bond pending the resolution of his appeal.  He meets all the standards for release while his appeal is pending: he is not a flight risk or a danger, and rather than being filed only for purposes of delay, his appeal raises substantial questions that, if decided in his favor, would result at least in a new trial or another favorable outcome described in the governing statute, 18 U.S.C. 3143.

In the more than five years that he has been on bond, Mr. Andrade has been present for all of the many court appearances and has never violated any condition of his release.  He remains a devoted husband and father who lives with his wife and young daughters.  As the Probation Office recognized in deeming him worthy of voluntary surrender – a recommendation the government did not contest – Mr. Andrade, will not flee or be a danger to the community.  Moreover, Mr. Andrade has recently begun his psychological treatment and counseling and will benefit from having a solid beginning with stabilized medication levels before he begins his years of incarceration.

This motion therefore turns on whether he raises at least one substantial issue as described in 18 U.S.C. 3143(b)(1)(B)(i)-(iv).  If he does, the Court "shall order" his release pending appeal.  18 U.S.C. 3143(b)(1)(B).  Mr. Andrade identifies ten such issues below.   To find that any one of these questions is substantial, the Court need not view the question as "close," *United States v. Handy*, 761 F.2d 1279, 1282 n.2 (9th Cir. 1985), "need not find that its ruling was wrong," *United States v. Winsor*, 890 F. Supp. 2d 1257, 1259 (D. Or. 2012), and need not determine that Mr. Andrade "will probably prevail on appeal." *Handy*, 761 F.2d at 1280. All the question needs to be is one that is "fairly debatable" and not frivolous.  *Id.* at 1281, 1283. The issues that Mr. Andrade intends to raise satisfy this standard, either alone or in combination:

- Whether the instructions allowed the jury to convict Mr. Andrade of money laundering for conduct other than that charged by the grand jury.

- Whether the instructions created confusion about the burden of proof on the good faith issue.

- Whether a multiple scheme instruction should have been given in light of evidence that the lone wire did not further the scheme charged in the indictment.
- Whether the testimony of FBI Special Agent Quinn and the argument of the government about Exhibit 805 violated *Napue v. Illinois*, 360 U.S. 264 (1959).
- Whether exculpatory evidence was excluded based on erroneous application of hearsay rules
- Whether damaging testimony offered by the government was admitted without any semblance of a foundation
- Whether Rule 404(b) and other unfairly prejudicial evidence was erroneously admitted
- Whether the defense's evidence of government misconduct was at least sufficient to require a hearing
- Whether a short continuance was required for due process after the government's five-year-delayed, eve-of-trial production of voluminous and probative financial information
- Whether the cumulation of multiple errors requires reversal, even if any individual error might not

Mr. Andrade respectfully suggests that his appeal meets the standards of 18 U.S.C. 3143 and that he should not be incarcerated before these substantial questions are resolved by the Court of Appeals. He has met the statutory conditions: release pending appeal is mandatory. *See* 18 USC 3143(a)(1) ("If the judicial officer makes such a finding, such judicial officer shall order the release of the person . . ."). Rather than lock him up immediately, the Court should allow him to stay with his family and continue his psychotherapy while his appeal is pending. Not only will doing so be justified under the Bail Reform Act, but the Court should also take into account Mr. Andrade's psychiatric conditions, which would "render the hardships of prison unusually harsh" for him and therefore provide an additional reason to allow him to remain on release. *Cf. United States v. Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Mr. Andrade

1    Mr. Andrade is 47-years old and resides with his wife and two young daughters.  Other

2 than through this case, he has no convictions, and has no history of alcohol or drug abuse.  ECF

3 706 at 21.  He is very close with his family and actively involved in raising his daughters.  *Id*. at

4 27.

5    The details of Mr. Andrade's horrific upbringing are detailed in ECF 706 at 23-25.  He

6 suffers from serious medical issues, *id.* at 28-29, and significant psychiatric conditions, including

7 autism spectrum disorder, attention deficit hyperactivity disorder, obsessive compulsive disorder,

8 bipolar disorder, and anxiety, *id.* at 29, and experiences bouts of paranoia daily.  *Id.* at 30.  A

9 prison expert with experience about how inmates with similar neurodivergent diagnoses fare in

10 custody determined that Mr. Andrade is likely to suffer "risks for assaults or exploitation" while

11 in custody at a higher rate than inmates without similar psychological disabilities.  *See* ECF 713-

12 1, at 6-8.  Due to his psychological makeup, Mr. Andrade will also have a much harder time

13 adjusting to being in custody than will most inmates.  *Id.*  Furthermore, Mr. Andrade has just

14 begun psychological counseling, integrated with medications supervised by a psychiatrist. The

15 medication levels have to be monitored closely at the outset and will take months to reach the

16 desired and medically-appropriate levels.  Additional time in community treatment will greatly

17 assist Mr. Andrade in managing his psychological conditions in a carceral setting, optimally

18 setting him on the best possible course for the rehabilitation that he, the government and the

19 Court seek.

20    **B.  Indictment, trial, and bond**

21    On June 22, 2020, Mr. Andrade was indicted on one count of wire fraud and one count of

22 money laundering.  ECF 1.  At his initial appearance, he was placed on a $75,000 unsecured

23 bond, ECF 12.  He has remained on bond since that date, made all his court appearances, and has

24 faced no allegations that he violated any terms of his pretrial release.

25    After a trial of close to four weeks, the jury convicted him on both counts.  The Court

26 sentenced Mr. Andrade to 84-months' incarceration on July 29, 2025, and set his surrender date

27 for October 31, 2025.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    ARGUMENT

### A.  Legal Standard

The Bail Reform Act, 18 U.S.C. § 3143(b)(1), requires this Court to permit a defendant to remain on bond pending appeal if the court finds "by clear and convincing evidence, defendant is not likely to flee or pose a danger to the safety of any other person or the community"  18 U.S.C. § 3143(b)(1)(A); and, "that the appeal is not for the purpose of delay and raises a substantial question of law" that is likely to result in a reversal, new trial, or other favorable outcomes.  18 U.S.C. 3143 (b)(1)(B)(i)-(iv).

A substantial question is one that is "novel," "has not been decided by controlling precedent," or is "fairly debatable."  *Handy*, 761 F.2d at 1282 & n.2 (emphasis added) (quoting and adopting standard in *United States v. Miller*, 753 F.2d 19, 22-23 (3d Cir. 1985)). . . . "[A] substantial question is one of more substance than would be necessary to a finding that it was not frivolous."  *Handy*, 761 F.2d at 1283 (internal quotation marks and citations omitted); the question need not be "close," nor must the appellant show she "will probably prevail on appeal." *Id.* at 1282 n.2.  Although the Court considered and rejected Mr. Andrade's arguments when it resolved his new trial motion, the Court is not required to "certify that it believes its ruling[s] to be erroneous" to grant the instant motion.  *Handy*, 761 F.2d at 1281; *see also Winsor*, 890 F. Supp. 2d at 1259 ("The court need not find that its ruling was wrong, just that it is 'fairly debatable.'")

The requirement that resolution of the question on appeal result in reversal, a new trial, or other favorable outcomes, as described in 18 U.S.C. 3143(b)(1)(B)(i) through (iv), "concerns only the type of question that meets the requirement; it does not involve assessing the likelihood that a reversal will occur in the particular case." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003) (citing *Handy*, 761 F.2d at 1280) (emphasis in original).  Mr. Andrade, "in other words, need not, under Handy, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions." *Id.*  As discussed in Section C below, ten questions

identified by Mr. Andrade meet this requirement, either individually or collectively, or both.

**B.  Mr. Andrade Will Not Flee or Pose a Danger if Released**

Mr. Andrade will not flee or pose a danger to another person or the community if he is released.  He is devoted to his family, closely attached to his wife and daughters, and does not pose a danger.  Mr. Andrade has no other convictions.  He has been on bond for over five years, with an unblemished record of appearing when required and complying with the Court's orders.  This was confirmed by the Probation Office, which recognized that he was neither a flight risk nor a danger when it recommended that he be allowed to self-surrender to the designated institution, ECF 706 at -45, and this Court agreed.  If allowed on bond pending appeal, he will continue living with his family, and continue to engage in the helpful course of psychotherapy that he recently began.

**C.  Mr. Andrade's Appeal is Not for Purposes of Delay but rather Raises Substantial Questions of Law or Fact That Are Likely to Result a New Trial**

In his appeal, Mr. Andrade will raise numerous issues that meet the "fairly debatable" standard, both individually and collectively:

> 1.  The instructions allowed the jury to convict Mr. Andrade of money laundering for conduct other than that charged by the grand jury

Rather than repeat this argument, Mr. Andrade refers the Court to where it was previously made, at ECF 656 at 2-5 and ECF 684 at 1-4.  The Court did not find this argument sufficient to justify a new trial, reasoning that any error was harmless because "the record shows the jury voted to convict Andrade in Count Two based on the transaction at issue."  ECF 694 at 5.  This reasoning is "fairly debatable."  At trial, the government introduced evidence of a collection of at least ten different financial transactions that it said were related to the flow of money from Boyer to the purchase of real estate and an automobile, only one of which was the purchase of the $600,000 cashier's check charged by the grand jury.  *See* ECF 656 at 2:4-3:11 and n.2; ECF 684 3:9-4:3 and nn.2-3.

1    While the government did specifically refer to the $600,000 cashier's check as the

2  charged transaction on a few occasions, *see* Tr. 1963:8-14, 1964:4-6, 3025:19-21, 3030:2-5,

3  these references were diluted and swamped in a four-week trial with a 3,167 page transcript that

4  included far more frequent citation and reference by the government to the ten related but

5  uncharged transactions—references made during its opening statement (while citing to strings of

6  uncharged transactions),[1] expert testimony,[2] and closing argument.[3]  Reliance on *United States v.*

7  *DuShane,* 623 Fed. App'x 332, 333 (9th Cir. 2015) is also fairly debatable; while the *DuShane*

8  court declined to reverse a conviction when the instructions, unlike the indictment in that case,

9  did not include a date of the offense, "*the only evidence introduced at trial* regarding the

10  identified victim was gathered after [the defendant's] arrest on  that date."  *Id.* (emphasis added).

11  Here not only was the date omitted, but so was any reference in the instructions to the charged

12  transaction, and the government introduced evidence at trial of many different transactions in the

13  same chain of events as the charged transaction.  *See supra* nn.1-4; ECF 656 at 2 and n.2; and

14  ECF 684 3:9-4:3 and nn.2-3.

---

15

16  [1]  In its opening statement, the government cited seemingly every transaction except the charged
one, including the purchase of a "$500,000 house," a "$200,000 property," a "$60,000 . . . Ford

17  F250 for himself," and "another $69,000 . . . Cadillac Escalade for his wife," "thousands of
dollars spent on international travel," and "fancy meals [at] Morton's steakhouse."  *See* Tr.

18  215:9-216:6.

19  [2]  The government's money laundering expert James Carfora testified about uncharged cashier's
checks while displaying them to the jury, *see* Tr. 2042:23-2044:8 and Tr. Ex. 1411:172; Tr.

20  2044:9-25 and Tr. Ex. 1411-181, and the government repeatedly referred Carfora to the purchase

21  of cashier's *checks* without directing him to the charged transaction. *See* Tr. 2045:4-2046:23. It
also ran its financial expert Theresa Chiu down segues into Mr. Andrade's purchase of vehicles,

22  *see* Tr. 1962:13-20 and 1966:1-11, and uncharged cashier's checks, *see* Tr. 1966:1-3.

23  [3]  In closing argument, the government mixed the charged transaction, with a string of entirely

24  unrelated transactions.  *See* Tr. 3028:14-3029:2 ("Rather than transferring the funds in the
normal, traceable, easy way of electronic funds and not having to walk around with a check that's

25  basically $600,000 you could lose, he did it this way because he knew and he wanted – he
attempted to hide the AML BitCoin investor proceeds. . . . And what did Marcus Andrade do

26  with those funds? Well, a legitimate entrepreneur keeps his office lights on and takes a half-

27  baked product and turns it into a real one. A fraudster cashes out with homes, Cadillac Escalade,
and with strip clubs.").

28

---

1    The Court's reasoning that the government's argument limited the jury's decision-making

2    is fairly debatable as well, both factually and legally.  Portions of the government's closing

3    argument, as well as the opening, relied on transactions other than the one charged in the

4    indictment as the government's proof of money laundering.  *See* ECF 684 at 3-4 n.3; n.3 *supra*.

5    In any event, the Supreme Court has established that lawyer argument is not a substitute for a

6    jury instruction, *see* ECF 684 at 3-4; ECF 656 at 5 n.4, and no case has apparently ever

7    determined that argument by the government, even if it expressly disclaimed reliance on

8    anything other than evidence of what was actually charged – which the government did not do

9    here – can remedy the failure to let the jury know what transaction the grand jury charged.

10   Because permitting conviction on a transaction not charged in the indictment is an error of

11   constitutional dimension, ECF 656 at 3 & n.4, harmless error analysis is unavailable, or, even if

12   not, an extremely high bar.  ECF 656 at 4.  It is, at a minimum, fairly debatable that a new trial

13   on Count Two is itself sufficient to require bond pending appeal under the express terms of 18

14   U.S.C. § 3143(b)(1), which provides that when a defendant who meets all the other standards

15   raises a substantial question of law likely [with "likely" defined by the precedent to mean "fairly

16   debatable"] to result in "an order for a new trial, "the judicial officer *"shall* order the release of

17   the person . . .") (emphasis added).

18        2.  The instructions created confusion about the burden of proof on good faith

19        Rather than repeat this argument, Mr. Andrade refers the Court to where it was

20   previously made, at ECF 656 at 5-8 and ECF 684 at 4-6.  The Court did not find this argument

21   sufficient to justify a new trial, reasoning that even though the Ninth Circuit does not require a

22   good faith instruction,[4] the jury was adequately instructed about good faith and intent.  ECF 694

---

[4] ECF 694 emphasizes that *United States v. Gianandrea*, 38 Fed. App'x 434, 436 (9th Cir. 2002),
a case cited by Mr. Andrade, was a bankruptcy case, in which "the government was required by
binding precedent to disprove a good faith defense."  *Id.*  This underscores the substantial nature
for the Ninth Circuit of the issue of whether a good faith instruction should be given, because the
Ninth Circuit pattern bankruptcy instruction has the same elements as wire fraud (except that
instead of a wire, a false statement in relation to a bankruptcy proceeding is required), and the
comments to the pattern report that "this statute is modeled after the mail and wire fraud
statutes."  *See* Ninth Circuit Model Jury Instructions, Criminal, 15.46.

at 6-7.  But whether the jury was adequately instructed about good faith and intent is fairly debatable.

The jury in this case was expressly told about good faith, but was not expressly told which party had the burden of proving good faith, or that the jury must acquit if Mr. Andrade acted in good faith.  None of the Court's other instructions on what the government was required to prove beyond a reasonable doubt had omitted such language, and in the Ninth Circuit cases finding no reversible error when good faith was mentioned, the instructions at least directly told the jury either that "if the evidence leaves you with a reasonable doubt whether the defendant entertained such good faith, you must then find that defendant not guilty," or that if the defendant acted in good faith, "the defendant must then be acquitted," coupled with "the burden of proof never shifts from the government throughout the trial."  ECF 656 at 7.  *See* June 24, 2025 transcript at 7 (after counsel notes that the instructions in cases rejecting the defense argument were more defense-friendly than the instruction given in this case, Court responds that "reasonable minds can differ").

Whether the existence of Ninth Circuit cases saying a good faith instruction is not required means that a district court can mention good faith but not make it unmistakably clear which party bears the burden on that issue (or that the defendant must be acquitted if he acted in good faith) is fairly debatable.  *See generally United States v. Notaro*, 363 F.2d 169, 175 (9th Cir. 1966) (explaining that "the desire of a careful judge to avoid language which to him may seem unnecessarily repetitive should yield to the paramount requirement that the jury in a criminal case be guided by instructions framed in language which is unmistakably clear," and reversing conviction when one paragraph of entrapment instructions stated burden of proof and another did not).

3.   <u>A multiple scheme instruction should have been given in light of evidence that the lone wire did not further the scheme charged in the indictment</u>

Rather than repeat this argument, Mr. Andrade refers the Court to where it was previously made, at ECF 656 at 8-13, and ECF 684 at 6-8.  The Court did not find this argument

1  sufficient to justify a new trial or a judgment of acquittal, reasoning that Mr. Andrade was not

2  charged with conspiracy, that he was tried alone, and that the defense argument that Dillman

3  solicited Boyer's money in furtherance of Dillman's own scheme "is contradicted by the record."

4  ECF 694 at 7-9.  Applied to the facts of this case, all these reasons are fairly debatable.

5      That the proposed instruction should not have been given because Mr. Andrade was not

6  charged with conspiracy is fairly debatable given precedent importing conspiracy principles into

7  mail and wire fraud schemes, *see, e.g., United States v. Lothian*, 976 F.2d 1257, 1262-63 (9th Cir.

8  1992), and given the lack of any reason why a scheme should be treated differently than a

9  conspiracy for these purposes.  The same is true for the fact that Mr. Andrade was tried by

10 himself, given authority that a multiple conspiracy instruction can be warranted even if a

11 defendant is tried alone.  *See, e.g., United States v. Ocegueda-Ruiz*, 663 F. App'x 560, 561 (9th

12 Cir. 2016) (the fact that defendant was tried alone negated the risk of multiple conspiracies only

13 because the government presented no evidence that was separate from the one with which he was

14 charged).

15     While the Court cited to evidence supporting the government's claim that Dillman and

16 Mr. Andrade were part of the same conspiracy, such evidence does not refute that it is fairly

17 debatable that there was also evidence suggesting that Dillman was engaged in a separate scheme

18 when he solicited the only wire charged in the case (and that Abramoff was involved in a

19 separate scheme as well).  *See* ECF 656 at 9-11.  The quantum of evidence needed to trigger a

20 defense instruction is quite low.  *See United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006)

21 (defense entitled to instruction "even if his evidence is weak, insufficient, inconsistent, or of

22 doubtful credibility); *United States v. Job*, 871 F.3d 852, 867 (9th Cir. 2017) ("some foundation

23 in the evidence"); *see generally United States v. Balthazard,* 360 F.3d 309, 315 (1st Cir.2004)

24 ("a court should instruct on the issue [of multiple conspiracies] 'if, on the evidence adduced at

25 trial, a reasonable jury could find more than one such illicit agreement, or could find an

26 agreement different from the one charged").

27

28

1    As the comments to the Ninth Circuit's pattern instructions reflect, the instruction Mr.

2 Andrade requested is the instruction to use "when the indictment charges a single conspiracy and

3 the evidence indicates two or more possible conspiracies. *See United States v. Perry*, 550 F.2d

4 524, 533 (9th Cir. 1997)." Ninth Circuit Model Instructions, Criminal, 8.22. This alone suggests

5 that it is "fairly debatable" that Mr. Andrade was entitled to the instruction.

6    4.    The testimony of FBI Special Agent Quinn, and the argument of the

7          government about, Exhibit 805 violated *Napue v. Illinois*, 360 U.S. 264 (1959)

8    Rather than repeat this argument, Mr. Andrade refers the Court to where it was

9 previously made, at ECF 656 at 13-1 9, and ECF 684 at 8-12. The Court did not find this

10 argument sufficient to justify a new trial, reasoning that the defense argued that Mr. Andrade did

11 not control the social media accounts and the jury disagreed, June 24, 2025 transcript at 11, and

12 that there was overwhelming evidence that Mr. Andrade controlled the social media accounts

13 when the misrepresentations were made. ECF 694 at 11.

14    This reasoning, too, is fairly debatable. Presenting false or misleading testimony that the

15 government knew or should have known was false or misleading – something that the

16 government has never denied or even tried to explain, under oath or otherwise – is a fundamental

17 due process violation. *See Drake v. Portuono*, 553 F.3d 230, 240 (2d Cir. 2009) ("a conviction

18 obtained through testimony the prosecutor knows to be false is repugnant to the Constitution . . .

19 because in order to reduce the danger of false convictions we rely on prosecutors"); *Hayes v.*

20 *Brown*, 399 F.3d 972, 988 (9th Cir. 2002) (en banc) ("Nowhere in the Constitution or in the

21 Declaration of Independence, nor for that matter in the Federalist or in any other writing of the

22 Founding Fathers, can one find a single utterance that could justify a decision by any oath-

23 beholden servant of the law to look the other way when confronted by the real possibility of

24 being complicit in the wrongful use of false evidence to secure a conviction in court"); Anne

25 Bowen Poulin, Convictions Based on Lies: Defining Due Process Protection, 116 PENN STATE L.

26 REV. 331, 334 ("when false testimony is given at trial the truth finding process is fundamentally

27 corrupted").

28

1    While the government did present other evidence to support its claim that Mr. Andrade

2    controlled the social media accounts and argued that claim extensively, *see, e.g.*, Tr. 2972-73,

3    2986, ECF 684 n.10, its evidence (other than the misimpression created by its use of Exhibit

4    805) primarily came from witnesses whose knowledge dated from a time after the alleged

5    misrepresentations, or from witnesses who did not deal directly with Mr. Andrade.  ECF 684 at

6    10-11.  In any event, given the fundamental nature of the due process violation, reversal is

7    "virtually automatic," *Hayes,* 399 F.3d at 978, and is required unless the testimony was

8    "harmless beyond a reasonable doubt."  *United States v. LaPage*, 231 F.3d 488, 491 (9th Cir

9    2000).[5]

10              5.  <u>Exculpatory evidence was excluded based on the erroneous application of</u>

11                  <u>hearsay rules</u>

12    Rather than repeat this argument, Mr. Andrade refers the Court to where it was

13    previously made, at ECF 656 at 19-29, and ECF 684 at 12-19.  These issues are also fairly

14    debatable, even though the jury decided against Mr. Andrade based on the evidence that was

15    admitted, *see* ECF 694 at 11-12; June 24, 2025 Tr. at 15; because the jury was erroneously

16    deprived of numerous pieces of critical exculpatory evidence, ECF 656 at 19-29, such as the fact

17    that market making activity was disclosed and that Abramoff was engaged in separate scheme.

18              6.  <u>Damaging testimony offered by the government was admitted without any</u>

19                  <u>semblance of a foundation</u>

20    Rather than repeat this argument, Mr. Andrade refers the Court to where it was

21

22    [5] *LaPage* also directs that due process was violated even if the defense knew of the falsity, *id.* at
     491-492 ("the government's duty to correct perjury by its witnesses is not discharged merely
23    because defense counsel knows"), but here the defense, in addition to all the usual trial tasks,
     was devoting attention to chasing down Special Agent Quinn's other deception about Mr.
24    Andrade not producing source code, *see* Andrade's Corrected Motion for New Trial and
     Judgment of Acquittal, ECF 656 at n.24; Tr. 2851:24-2853:5, sorting through 1507 often very
25    lengthy exhibits on the government's exhibit list, *see* United States' Exhibit List, ECF 465-1 – of
     which only 130 were introduced – plowing through the mountain of financial data that the
26    government had withheld for five years and produced shortly before trial, *see* Andrade's Motion
     for Continuance, ECF 523, at 2:11-3:22, and still other government-created quicksand and
27    shenanigans.  ECF 684 at 34:17-36:6.

28

1  previously made, at ECF 656 at 29-31, and ECF 684 at 19-21  The extent to which this erroneous

2  admission prejudiced Mr. Andrade, see ECF 694 at 12, is fairly debatable given the lack of other

3  evidence on key government claims such as that Mr. Andrade lacked funds to pay for a Super

4  Bowl advertisement, or that anyone actually engaged in any market making activity.

5         7.  <u>Rule 404(b) and other unfairly prejudicial evidence was erroneously admitted</u>

6        Rather than repeat this argument, Mr. Andrade refers the Court to where it was

7  previously made, at ECF 656 at 33-34, and ECF 684 at 23-25.  The propriety of the admission of

8  unfairly prejudicial Rule 404(b) evidence about Aten Coin is fairly debatable given that the

9  government did not even respond to the defense argument that the government showed only that

10  Aten Coin was inextricably intertwined with AML Bitcoin and did not show Aten Coin was a

11  fraud; whether such a showing is sufficient to justify admission of a torrent of victim testimony

12  and tears appears to be a question of first impression.  In addition, the Court's determination that

13  the cumulation of these errors were harmless, ECF 694 at 13, is fairly debatable because the

14  defense, unlike the government, was "prevented from . . .exhort[ing] . . . the jury to examine

15  numerous specific documents" (which the jury said was vitally important), ECF 694 at 12, as a

16  result of erroneous rulings excluding defense documents while admitting government evidence

17  that lacked foundation.

18         8.  <u>The defense's evidence of government misconduct was at least sufficient to</u>

19             <u>require a hearing</u>

20        Rather than repeat this argument, Mr. Andrade refers the Court to where it was

21  previously made, at ECF 499, 527, 548, and accompanying declarations.  That Mr. Andrade's

22  showing met the standard for an evidentiary hearing – "reasonable suspicion of prosecutorial

23  misconduct, *United States v. Soberon*, 929 F.2d 935, 941 (3d Cir. 1991) – is at the least "fairly

24  debatable" based on some or all of the incidents in his motion, such as the evidence he presented

25  from a well-placed and reputable witness (who had willingly signed a declaration and was within

26  the subpoena power of the Court) that the government systematically suppressed evidence about

27  international money laundering by its cooperating witness and alleged co-conspirator, Jack

28

1   Abramoff, including about topics relating to Mr. Andrade's case, *see, e.g.,* ECF 548 at 2:9-18;

2   ECF 498-3 at 1:20-9:2; ECF 529 at 1:9-15, as well as evidence from the prosecutors themselves

3   that contradicted the Court's conclusions about the destruction by the government, despite its

4   known relevance, of the phone of Paul Erickson. *See, e.g.,* ECF 527 at 7:8-9:6;[6] ECF 498-3 at

5   11:24-15:4.

6           9.   A short continuance was required for due process after the government's five-

7                year-delayed, eve-of-trial production of voluminous and probative financial

8                information

9           Rather than repeat this argument, Mr. Andrade refers the Court to where it was

10  previously made, at ECF 511, 523, 538, 684 at 33:24-35:25, and 656 at 51:3-53:13, and

11  accompanying declarations.  It is "fairly debatable" that Mr. Andrade was not prejudiced by the

12  government's production, starting only five days before the pretrial conference, of 12.4 GB of

13  financial data, much of which was not in readable formats, and over 175 Excel Workbooks,

14  many of which were voluminous, containing essential financial data that the government had

15  seized from his accountant over *five years earlier*. Whether or not the production contained

16  exculpatory information,[7] its long-delayed disclosure degraded the memory of the only witness

17  who could speak to it,[8] deprived the defense of the ability to follow up on apparent helpful leads

18  _____

19  [6] The Court' order denying Mr. Andrade's motion also made mention of the deadline for motions
    in limine, ECF 535 at 4:18-19, but Mr. Andrade's Motion for a Evidentiary Hearing to Address

20  Government Misconduct was not a motion in limine.  *Luce v. United States*, 469 U.S. 38, 40 n.2
    (1984) (explaining that the term motion in limine is used "in a broad sense to refer to any

21  motion, whether made before or during trial, to exclude anticipated prejudicial evidence before
    the evidence is actually offered").

22

23  [7] There is evidence that it did, or could have, with time, lead to admissible evidence that did. *See,
    e.g.,* Attachment-1, Aware Invoice Receipt (documenting payment to one of the third party ID

24  verification services).

25  [8] Karl Ruzicka, Mr. Andrade's business accountant, gave all Mr. Andrade's electronic and
    physical records to the IRS in response to a subpoena served in February 2020. Tr. 2359.  At that

26  time Ruzicka, a CPA, was advised by the IRS that if he disclosed information about the

27  subpoena to anyone it might be considered interference in the law enforcement investigation. Tr.

28

and witnesses identified in the production given the eleventh hour of its provision, *see, e.g.,* ECF
684 at 28:5-16; ECF 656 at 41:1-42:7; ECF 656-2 at 6, and unfairly limited the time the defense
could devote to review of the government's over 1500 designated exhibits (only 130 of which
ever got introduced), and to chase down the government's use of false and misleading testimony,
*see supra* n.5, while still keeping up with all the other filings and preparation required in the days
leading up to and during trial.[9]  *See generally United States v. Garner*, 507 F.3d 399, 408 (6th
Cir. 2007) ("A reasonable time for adequate preparation of the accused's defense is the first
essential of trial fairness . . . and 'a myopic insistence upon expeditiousness in the face of a
justifiable request for delay can render the right to defend with counsel an empty formality'")
(*quoting Ungar v. Sarafite,* 376 U.S. 575, 589 (1964).

10.    <u>The cumulation of multiple errors requires reversal</u>

Rather than repeat this argument, Mr. Andrade refers the Court to where it was
previously made, at ECF 656 at 52:14-54:27, and 511, 523, 538.  Whether all these errors were
harmless when taken together because, in the Court's words, "the government's proof was
vigorously tested by the defense but remained strong in this case," ECF 694 at 13:20-22, is fairly
debatable because any remaining strength in the government's proof was the product of
potentially good defenses that were eviscerated by repeated rejections of admissible exculpatory
evidence, were overrun by a mass of inadmissible and unfairly prejudicial government evidence,
and were lost in the absence of necessary instructions that the Court declined to give.  *See United
States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996) ("In some cases, although no single trial

---

2357.  Ruzicka heeded the IRS warning and failed to tell Mr. Andrade that his business records
had been seized.  Tr. 2358.  Ruzicka requested the records be returned to him, but the IRS never
complied with his request.  Tr. 2360. When he testified in 2025, Ruzicka's memory repeatedly
failed him.  See Tr. 2351, 2356, 2359, 2364.

[9] The Court's order referenced that this case was "oft-continued," ECF 541 at 7:8, but these
continuances were due to the fact that the government wrongly resisted five motions to compel
discovery or compliance with Court discovery orders, *see* ECF 120, 192, 275, 297, and 339,
delaying the production (and review) of huge volumes of the roughly 5 TB that were ultimately
produced and reviewed. *See* Discovery Orders, ECF 165, 292, 235, 250, 256, 309, 332, 347, and
359.

---

1    error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of

2    multiple errors may still prejudice a defendant.").

3          **D.  The Court Should Also Consider Mr. Andrade's Extraordinary Circumstances**

4          For violent offenders, which Mr. Andrade is not, the Ninth Circuit in *United States v.*

5    *Garcia*, 340 F.3d 1013, 1019-20 (9th Cir. 2003), invited the district court to "consider

6    circumstances that would render the hardship of prison unusually harsh for a particular

7    defendant," such as if "incarceration would impose exceptional risks on a defendant involving

8    his physical or mental well-being."  This invitation is one of the factors listed for consideration

9    in 18 U.S.C. § 3145(c), which governs applications for release by people convicted of crimes of

10   violence.

11         These hardship circumstances should also be considered in determining whether Mr.

12   Andrade should be allowed to remain on bond pending appeal, where his crime is not a violent

13   one, and his request for bond on appeal should require a *lesser* showing than that required for a

14   violent offender.  Mr. Andrade has previously described his psychological and physical health

15   issues, which this Court recognized and used as a basis for its downward variance.  ECF 720 at 2

16   and 4.  That Mr. Andrade faces exceptional risks to his mental well-being in prison is established

17   by ECF 713-1.  As *Garcia* reasoned, "[a]lthough a defendant may ultimately be forced to serve a

18   prison sentence regardless of his health, it may be unreasonable to force him to begin his

19   sentence prior to the resolution of his appeal."  *Id.* at 1020.  Mr. Andrade faces lifelong

20   psychological and physical challenges, and the more progress he has made with his treatment,

21   the more stable his medication levels will be, and the greater Mr. Andrade's chances will be to

22   adjust to his surroundings in a prison environment.  *See* ECF 713-1.

23         **E.  For the Same Reasons, the Enforcement of Any Forfeiture or Restitution Orders**

24              **Should Also Be Stayed Pending Appeal.**

25         Just as with Mr. Andrade's release, this Court has authority to stay any forfeiture or

26   restitution orders pending appeal.  *See* Federal Rule of Criminal Procedure 32.2(d) (forfeiture);

27   38(e) (restitution).  The standard for doing so is the same as that required for bond pending appeal.

28

*See, e.g., United States v. Babichenko,* 2025 WL 404461 at *3 (D. Idaho Feb. 4, 2025) (employing the lesser standard, as in bond pending appeal, of whether the defense arguments "raise a substantial question of law or fact, which, if resolved in their favor, is likely to result in a new trial").  Issues such as whether the government sufficiently proved losses (as opposed to monies paid), whether forfeiture money judgments are permissible, and whether forfeiture can be ordered for money that came to rest with Mr. Andrade's alleged co-conspirators, are "fairly debatable" for the reasons in ECF 711 and 737.  As also argued in Mr. Andrade's briefing on the restitution and forfeiture issues, the Court should stay such orders pending appeal based on the substantial statutory, constitutional, and other issues raised in this filing, in Mr. Andrade's misconduct motion, and in Mr. Andrade's new trial motion.  Once paid, particularly to private individuals, were Mr. Andrade to prevail on appeal the monies could not easily be recovered and returned to Mr. Andrade. The Court is capable of fashioning an order to include creation of an escrow to hold any funds Mr. Andrade is able to pay while the appeal is pending, to prevent dissipation of assets.  Since Mr. Andrade is unemployed, he asks that any payments required be paid in installments.

## IV.    CONCLUSION

For the reasons stated above, Mr. Andrade requests that he be released on bond pending his appeal (and that the Court stay any restitution and forfeiture issues).

DATED:  September 16, 2025

Respectfully Submitted,

/s/

_____

MICHAEL J. SHEPARD,
CINDY A. DIAMOND, and
DAINEC STEFAN
Attorneys for Defendant
ROWLAND MARCUS ANDRADE