UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 20-cr-00249-RS-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR BOND PENDING APPEAL** |

Rowland Marcus Andrade was convicted by a jury of one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (B)(i). After filing a notice of appeal, he moved for a bond pending appeal under 18 U.S.C. § 3143(b). Dkt. 742. Because he fails to establish the statutory requirements for a bond pending appeal, the motion is denied.

**I. BACKGROUND**

In 2020, a grand jury indicted Andrade on one count of wire fraud and one count of money laundering. Broadly, the Indictment alleged that Andrade defrauded investors out of more than $10 million by misrepresenting the commercial and technological viability of his cryptocurrency project, AML Bitcoin, which he claimed was anti-money laundering and know-your-customer compliant. *See* Dkt. 1. A jury convicted Andrade on both counts, *see* Dkt. 615, and he was sentenced to an 84-month term of imprisonment, *see* Dkt. 719. He was ordered to surrender to serve his sentence on October 31, 2025. *See id.*

After Andrade's motion for a new trial was denied, *see* Dkt. 694, he filed a notice of appeal

of the judgment of conviction, *see* Dkt. 724. He then moved for a bond pending appeal. *See* Dkt. 742. Consistent with the statutory requirements, Andrade argues that he is neither a flight risk nor a danger to the community. *See* 18 U.S.C. § 3143(b)(1)(A). He also identifies a slew of arguments for appeal that he contends are "substantial" enough to justify a bond. *See id.* § 3143(b)(1)(B). Those arguments were universally considered and rejected at various points before, during, and after the trial. None were particularly close. Therefore, Andrade has not carried his burden to establish entitlement to a bond pending appeal.

## II. LEGAL STANDARD

To obtain a bond pending appeal, a defendant must show:

(A) by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

    (i)    reversal,

    (ii)    an order for a new trial,

    (iii)    a sentence that does not include a term of imprisonment, or

    (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). In enacting these requirements, Congress created a presumption *against* post-conviction release and placed the burden of demonstrating that release is appropriate on the defendant. *See United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985).

The final statutory requirement—that the defendant present a "substantial question" that is "likely to result in" particular relief—contains two separate showings. The first goes to the merit of the appellate argument. To show that the question is "substantial," the defendant must establish that it is "fairly debatable" or "fairly doubtful." *See United States v. Handy*, 761 F.2d 1279, 1281–82 (9th Cir. 1985). Included within that definition are questions that are "novel," those "not plainly covered by the controlling precedents," or those that "involve important questions concerning the scope and meaning of decisions of the Supreme Court." *Id.* at 1281 (quoting

Case 3:20-cr-00249-RS   Document 781   Filed 10/07/25   Page 3 of 11

*D'Aguino v. United States*, 180 F.2d 271, 272 (11th Cir. 1950)). However, a defendant does not need to show that reversal is more likely than not to demonstrate that a question is substantial. *See id.* at 1280–81.

The second goes to the centrality of the question to the defendant's conviction and sentence. *See Handy*, 761 F.2d at 1280 ("'[L]ikely to result in reversal or an order for a new trial' defines the *type of question* that must be presented." (emphasis in original)). The defendant must establish that, if the court of appeals agrees with his argument, the relief specified in the statute is "likely." *See Miller*, 753 F.3d at 23. A question—even a "substantial" question—that is harmless, lacks prejudicial effect, or was insufficiently preserved does not compel a bond pending appeal. *See id.*

## III. DISCUSSION

### A. Flight Risk

Andrade has adequately demonstrated that he is not a flight risk. As he points out, he has an exemplary record of appearing for court appearances and complying with court orders. He has strong ties to the community through his wife and children. Even after conviction, Andrade was permitted to self-surrender to the Bureau of Prisons, and there has been no indication that he has initiated plans to go abroad. *Compare United States v. Holmes*, 2023 WL 2899525, at *2 (explaining that defendant booking an international one-way flight schedule to depart a few weeks after the jury's verdict weighed in favor of finding defendant to be a flight risk).

### B. Danger to the Community

Andrade has also adequately demonstrated that he is not a danger to the community. He was convicted of a non-violent crime that required an elaborate web of lies and deception. It is unlikely that he would be able to re-spin that web (or something similar) during the pendency of his appeal even if he wanted to. In addition, he has no other criminal history to suggest that this conviction will fail to deter future criminality.

The government rightly points out that economic harm constitutes a danger to the community, but its contention that Andrade might do harm while released relies almost entirely on

a recitation of what he did in the past. The only forward-looking risk the government identifies is Andrade's continued participation in cryptocurrency projects through Black Gold Coin, Inc. *See* Dkt. 761, at 6. The government, however, does not explain how remanding Andrade during the pendency of his appeal will prevent the harm caused by a project that it concedes already exists, even if that project is (as the government implies) fraudulent.

**C. Questions for Appeal**

Andrade raises various questions that he intends to appeal. Those questions are all either not substantial, inconsequential, or both.

*i.     Jury Instruction on Money Laundering*

Andrade intends to argue on appeal, as he did during and after trial, that the jury instructions on the money laundering charge were defective. The jury was instructed that to convict Andrade of money laundering, they must find he "conducted or intended to conduct a financial transaction involving property that represented the proceeds of wire fraud." Tr. 2963. Andrade requested an instruction that would have required the jury to find this financial transaction was the purchase of a cashier's check in the amount of $600,000 and that the wire fraud which produced the proceeds was that charged in Count One of the Indictment.

As explained in the order denying Andrade's motion for a new trial, *see* Dkt. 694, at 3–5, Andrade's assertion of error stems from a misreading of the Indictment. Count Two of the Indictment did not limit the unlawful activity which produced the funds that were then laundered to the wire fraud charged in Count One. Rather, it alleged that proceeds of "wire fraud in violation of [18 U.S.C. § 1343]" were used in a financial transaction. Dkt. 1, at 6. Even assuming Andrade is correct that the jury instructions should have specified the precise transaction that constituted money laundering, his instruction was properly rejected because it would have also required the jury to find that the source of the funds used in that transaction was the wire fraud alleged in Count One—an allegation the government never made.

Even if the Ninth Circuit were to disagree, Andrade would still face penal exposure from the wire fraud conviction, and a new sentence would not "likely" contain a prison term shorter

than the sum of time served and the expected length of the appellate process. *See* 18 U.S.C. § 3143(b)(1)(B)(iii), (iv). Under the Sentencing Guidelines, the wire fraud conviction grouped with the money laundering conviction, so Andrade's base offense level would have been the same without the latter conviction. *See* USSG § 2S1.1(a)(1). Indeed, the only change to the Guidelines calculation would be the omission of a two-point increase specifically for the money laundering conviction. *See* USSG §2S1.1(b)(2)(B). Eliminating that increase would reduce the Guidelines range from 210-262 months to 168-210 months. The bottom end of that range is still double the 84-month term of imprisonment actually imposed. Even assuming (without, of course, committing to) a proportional downward variance from the Guidelines midpoint on resentencing, Andrade would be left with a roughly 67-month term of imprisonment. That vastly exceeds the sum of time served and the expected duration of the appellate process.

    *ii.*    *Jury Instructions: Good Faith*

Andrade intends to argue on appeal that the jury instructions were defective because the good faith instruction was unclear about who bore the burden of proof. This argument is not substantial.

The instruction stated that "[i]f the defendant acted in good faith, then he lacked the intent to defraud required to prove the offense of wire fraud as charged in Count One." Dkt. 612, at 22. Read alongside the other wire fraud instructions, it was perfectly clear that the government bore the burden of demonstrating, beyond a reasonable doubt, that Andrade did not act in good faith. The wire fraud instructions told the jury that "the government must prove . . . beyond a reasonable doubt . . . the defendant acted with the intent to defraud, that is, the intent to deceive and cheat." *Id.* If, as the instructions said, the existence of good faith defeats the intent to defraud, then it follows that the government cannot show an intent to defraud beyond a reasonable doubt without showing the lack of good faith beyond a reasonable doubt.

In any event, the instructions gave Andrade more than to which he was legally entitled. In the Ninth Circuit, it is "well settled that a criminal defendant has 'no right' to *any* good faith instruction when the jury has been adequately instructed with regard to the intent required to be

found guilty of the crime charged, notwithstanding the normal rules governing 'theory of defense' requests." *United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir. 2004) (emphasis in original). Nowhere in any of his papers on this point has Andrade acknowledged—much less grappled with—that settled case law.

  *iii.*  *Jury Instructions: Multiple Schemes*

  Andrade intends to argue on appeal that the jury instructions were erroneous because they did not include, as he requested, a multiple schemes instruction. That instruction would have told the jury that they must acquit "[i]f [they] find that the scheme charged did not exist . . . even though you may find that some other scheme existed" and that they must acquit "[i]f [they] find that the defendant was not a member of the charged scheme . . . even though that defendant may have been a member of some other scheme." Dkt. 480, at 43:3–6.

  This argument is also not substantial. Though Andrade relies exclusively on case law discussing the propriety of multiple conspiracies instructions. *See, e.g.*, *United States v. Moe*, 781 F.3d 1120, 1127 (9th Cir. 2015); *United States v. Fernandez*, 388 F.3d 1199, 1247 (9th Cir. 2004), he is correct that the Ninth Circuit has recognized considerable overlap between participation in a conspiracy and participation in a fraudulent scheme, *see United States v. Lothian*, 976 F.2d 1257, 1262–63 (9th Cir. 1999). Multiple conspiracies instructions are used to mitigate the possibility of spillover—the risk that a jury finds one defendant culpable for the conduct of the other defendants in the case. *See United States v. Anguiano*, 873 F.2d 1314, 1317–18 (9th Cir. 1989). Therefore, it is at least "fairly debatable" that, when the government charges multiple individuals with wire fraud stemming from several schemes involving different configurations of the defendants, a multiple schemes instruction is necessary to mitigate the same spillover risk.

  The problem for Andrade is that he was tried alone, and "there is no problem of spillover when, as in this case, the defendant stands trial alone." *Anguiano*, 873 F.2d at 1318. That is because the jury was only asked to assess the guilt of one individual: Andrade. It could not have accidentally imported the guilt of Dillman or Abramoff to Andrade because the guilt of Dillman or Abramoff was not simply before it.

*iv.   Violation of* Napue

Next, Andrade claims that he will argue on appeal that the government violated his Fifth Amendment right to due process by knowingly introducing false or misleading testimony. *See Napue v. Illinois*, 360 U.S. 264 (1959). Specifically, Andrade contends that trial exhibit 805, introduced through the testimony of Special Agent Quinn, incorrectly left the jury with the impression that he controlled various social media accounts from which falsehoods were posted about AML Bitcoin. Trial exhibit 805 was an image, stored of Andrade's phone, of a piece of paper with a list of accounts, usernames, and passwords beginning with the initials "MA."

This argument is not substantial. Trial exhibit 805, supplemented by Special Agent Quinn's testimony, was neither false (a point Andrade concedes) nor misleading. The jury could have reasonably inferred from that evidence Andrade enjoyed dominion over AML Bitcoin's social media accounts—a conclusion supported by ample evidence in the record. *See* Tr. 895 (Testimony of Bernadette Tran, one of Andrade's office assistants: "[Andrade] had to approve everything that went out. So everything, we'd probably, like, send him a version, and then he would say yes or not and then we would post it."); Tr. 1051 (Testimony of Melanie Cowan, a marketing employee of Andrade: Q: "And was it your practice to review the updates to the Twitter post with Marcus Andrade before they went up? A: When I was with Republic One, it was with Melissa and then with Marcus, yes.").

Andrade complains that the image was created *after* many of the misrepresentations were made and that the passwords were changed shortly before that, so the image possessed little probative value as to who controlled AML Bitcoin's social media activity during the critical period. Maybe so—Andrade was free to expose that weakness on cross-examination and make the argument to the jury during closing statements. Neither the image nor the accompanying testimony precluded that construction of the evidence.

*v.   Evidentiary Rulings*

On appeal, Andrade intends to revive a slew of the evidentiary objections. He, for example, contends that important exculpatory evidence was erroneously excluded as hearsay, that damaging

testimony was offered by the government without a foundation, and that prejudicial evidence of prior bad acts was erroneously admitted.

Andrade mostly incorporates the arguments he made in his motion for a new trial, *see* Dkt. 742, at 11–12, which itself rehashed the arguments presented before and during trial. Those arguments have now been considered and rejected multiple times in prior orders and proceedings.

To the extent Andrade attempts to argue that particular evidentiary decisions were close—and thus that his argument on appeal would be "substantial"—his efforts are unavailing. Consider, for instance, his brief discussion of purportedly "exculpatory evidence." Dkt. 742, at 11. Andrade claims "these issues are fairly debatable . . . because the jury was erroneously deprived of numerous pieces of critical exculpatory evidence." *Id.* That fails. Andrade cannot establish that an adverse decision was close by reasserting that it was wrong.

Andrade's discussion of certain government evidence that he claims was admitted without a proper foundation is equally unpersuasive. He contends that the extent to which the purportedly erroneous admissions prejudiced him is "fairly debatable," but he makes no effort to show that the decisions themselves were close calls (except by asserting that they were erroneous). The showing required to demonstrate personal knowledge is not demanding. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) ("[T]he requirement of personal knowledge imposes only a minimal burden on a witness; if reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible." (internal quotation marks omitted)). Therefore, Andrade must show that it is "fairly debatable" that *no reasonable person* could have thought the various witnesses had personal knowledge of the matters to which they testified. Now as before, he cannot do so.

Andrade's complaint about the admission of AtenCoin evidence fares no better. Andrade appears to contend that it is unsettled under existing law whether "other acts" evidence can be admitted as "inextricably intertwined" to the charged conduct without a showing that the other acts were also criminal. However, in fraud cases, conduct undertaken as part of the same scheme is admissible under the "inextricably intertwined" doctrine even if the government did not charge

that conduct or fully prove its illegality. *See United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016). Indeed, Andrade's argument is squarely refuted by *United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999). There, the government charged the defendant with fraud arising from the sale of life insurance through an entity called AAC. *See id.* at 933. After the government shut down AAC, the defendant began a new life insurance operation through an entity called MAPS. *See id.* at 937. Though the conduct related to MAPS was not charged, the government was permitted to introduce it because "MAPS was simply a disguise for [the defendant's] continued sale of unauthorized insurance products." *Id.* at 938. So too here. The government presented compelling evidence that AML Bitcoin was nothing more than a rebrand of AtenCoin—a "disguise" for Andrade's continued scheme to defraud investors. Andrade's assertion that the evidentiary ruling rested on an unsettled principle of law is, in truth, just a disagreement about whether the evidence shows that AtenCoin and AML Bitcoin were part of one underlying scheme to defraud. That is not enough to make the argument substantial.

    *vi.*    *Prosecutorial Misconduct*

Andrade intends to argue on appeal he was entitled to an evidentiary hearing based on claims of prosecutorial misconduct because he created a "reasonable suspicion" of misconduct. However, "reasonable suspicion" requires evidence, and Andrade has none. For example, as to his claim that the government suppressed evidence about Abramoff, Andrade offered only the declaration of his counsel that Johnathan Buma, a former FBI counterintelligence officer, could testify. That declaration lacked any foundation for Buma's ability to testify to the government's handling of information about Abramoff relevant to this case.

Andrade's other complaints were thoroughly dealt with in the order denying an evidentiary hearing. *See* Dkt. 535. His arguments as to the purported invasion of attorney-client privilege were universally meritless. So too were his arguments about the government's participation in the destruction of evidence. Those arguments stemmed from a misrepresentation of the facts (as in the case of the Erickson phone) or specious inferences that the government facilitated the destruction of evidence by not reminding defense counsel to subpoena it (as in the case of the Abramoff

phone). It is not "fairly debatable" whether those assertions of misconduct warranted an evidentiary hearing.

True, Andrade did identify some government obstinance in producing certain evidence. *See* Dkt. 535, at 6 (noting multiple instances in which the government produced evidence only after a motion to compel or a threat of a motion to compel). However, a viable suppression claim (or a viable prosecutorial misconduct claim premised on suppression) requires, naturally, suppression. The evidence Andrade identified was eventually produced, and his defense team had it all with plenty of time remaining before trial.

  *vii.*  *Denial of a Final Continuance*

Andrade intends to argue on appeal that he ought to have been granted a continuance to process what he describes as an "eve-of-trial dump of records that the government seized from Mr. Andrade's accountant Karl Ruzicka." Dkt. 656, at 41. This argument is not substantial.

As explained at length in the order denying the motion for a continuance, Andrade has failed to establish that the documents produced by the government established anything new in the case. *See* Dkt. 541, at 5. Rather, the documents had either already been produced to Andrade through other rounds of discovery or Andrade had access to the facts contained in the documents through other means. *See id.* Andrade does not genuinely contest that finding in the instant motion. If the documents would not have revealed anything new, there was no error in denying a continuance for the sole purpose of examining those documents in more detail—especially considering the tremendous latitude district courts enjoy in scheduling matters, *see Morris v. Slappy*, 461 U.S. 1, 11 (1983).

With the benefit of hindsight, it is now even clearer that Andrade suffered no prejudice from the tardy disclosure. Ruzicka made himself available to Andrade before and during trial, and Andrade in fact called him during the defense case. *See* Tr. 2329:5–2369:17. Andrade was also ultimately fully able to cross examine FBI Forensic Accountant Theresa Chiu about the documents. *See, e.g.*, Tr. 1992:17. Andrade continues to claim that he *might* have done something different at trial with earlier production of these documents, but even now he does not identify

with precision what that something would have been.

*viii.    Cumulative Error*

Finally, Andrade intends to argue that all the previously identified errors cumulatively prejudiced him, even if none individually did. As explained, Andrade has not presented a substantial argument for appeal, so there are no errors to cumulate. Even if there were, they would not amount to prejudice. Andrade's conviction is amply supported by the wealth of admissible evidence offered by the government. The jury heard evidence on a number of defense theories—including good faith, diminished capacity, and cross-cutting schemes—and it rejected them all. Andrade had more than five years to prepare his case and four weeks of trial to present it. That it did not work is not the result of legal errors, but of the realities of his case.

## IV. CONCLUSION

For the foregoing reasons, Andrade's motion for a bond pending appeal is denied.

**IT IS SO ORDERED**.

Dated: October 7, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER DENYING BOND PENDING APPEAL
CASE NO. 20-cr-00249-RS-1