Charles C. Morgan
*Pro Hac Vice*
Cmorganwwt@gmail.com
Charles C. Morgan Law Practice, LLC
4151 Pelicans Nest Drive
Bonita Springs, FL 34134
Tel. 609-636-0544
*Attorney for Defendant*
*Rowland Marcus Andrade*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA` | § | Case No. 3:2-cr-00249-RS |
| | § | |
| *Plaintiff,* | § | |
| | § | OPPOSITION TO APPLICATION OF THE |
| v. | § | UNITED STATES FOR ORDER ISSUING |
| | § | FORFEITURE MONEY JUDGMENT |
| ROWLAND MARCUS ANDRADE | § | |
| | § | Judge: Hon. Richard Seeborg, Chief Judge |
| *Defendant.* | § | |

It should shock the conscience of this Court to consider any monetary forfeiture given the sorry state of the record clearly justifying the appeal in this matter. See Defendant's Opposition to the Application of the United States for Order Issuing Forfeiture Money Judgment (ECF 762), and the arguments made in Section II.E. of his Corrected Defendant's Reply Regarding Bond Pending Appeal and Related Relief (ECF 777) at pages 25-27 (pages 20-22 of the document as paginated in the lower right corner).[1]

It should also shock the conscience of this Court to consider the grievous conduct of the government in the multiple ways in which it has treated Mr. Andrade as an object rather than a human being. It was harassment of the highest degree to bring an indictment in California, a *forum non conveniens* of the first order, rather than Texas where Mr. Andrade lives, forcing him to expend his limited resources on travel to California. At the same time, the government has been fighting Andrade in the United Stated District Court for the Southern District of Texas, Houston Division in Misc. Action No. 4:24-MC-00248, appealed to the Fifth Circuit Court of Appeals No. 24-20376, and now subject to a Petition to the Supreme Court for a writ of certiorari (yet to be filed), trying to justify service on Andrade's banks of pieces of paper purporting to be summonses which fail to meet the essential components of a civil summons.[2] Therefore, Andrade has lost a lot

---

[1] It goes without saying that any forfeiture before a final ruling in this matter unquestionably will have an inequitable, material, adverse impact on Andrade, not to mention his family members who hold joint assets with him, given the government's financial miscalculations. Issuance of a forfeiture order that affects the joint assets of others denies those other persons their right to be heard in court, a fundamental denial of due process.

[2] It appears that senior Internal Revenue Service personnel in Northern California were instrumental in the issuance of the civil summonses at issue in the Federal District Court for the Southern District of Texas, Houston Division. Andrade is concerned that information obtained by the government in the Texas proceedings has found its way into these California criminal proceedings. Before Andrade's trial, the government provided evidence labeled "63-1911-0009-C," which gives rise to the inference that the civil process in Texas was being used to circumvent the Federal Rules of Criminal Procedure, which raises concerns about fruit of the poisonous tree being used in this criminal matter. Andrade's defense team requests that this court order additional discovery to pursue that avenue of inquiry and preserve any documentation found during that process.

of his assets and income. Andrade is essentially financially broken because of the Government's actions. Moreover, this counsel for Andrade, having not been paid in more than a year, is working essentially *pro bono* since Andrade now is appealing the decision in this court, Andrade has asked Counsel to assist in this matter that will also require significant time demands on Counsel. Counsel is committed to representing Andrade as best he can.

If it must issue an order of forfeiture, this court must exercise its discretionary authority to stay that order of forfeiture "on terms appropriate to ensure that the property remains available" pending the appeal in this matter since appropriate terms address any possible concerns on the part of the government, given that Federal Rule of Criminal Procedure 32.2 provides that:

> If a defendant appeals from a conviction or an order of forfeiture, **the court may stay the order of forfeiture on terms appropriate** to ensure that the property remains available pending appellate review.[3]

The United States District Court for the Western District of Washington CASE NO. CR22-0197JLR Decided; July 31, 2024 tells us that

> The Ninth Circuit has not adopted criteria for district courts to consider when ruling on a motion to stay forfeiture pending appeal, but other courts have examined the following factors:
>> 1) the likelihood of success on appeal; 2) whether the forfeited asset is likely to depreciate over time; 3) the forfeited asset's intrinsic value to defendant (i.e., the availability of substitutes); and 4) the expense of maintaining the forfeited property.
>
> *United States v. Grote*, 961 F.3d 105, 123 (2d Cir. 2020) (quoting *United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016)); *see also United States v. Riedl*, 214 F. Supp. 2d 1079, 1082 (D. Haw. 2001) (examining the same four factors).[4]

---

[3] Fed. R. Crim. P. 32.2(d) (emphasis added).

[4] United States v. Ruiz-Hernandez, 2024 U.S. Dist. LEXIS 135629, *3.

In this case, the likelihood of success on appeal is high as set forth in ECF 777, Andrade's assets are not likely to depreciate over time, and the expense of maintaining Andrade's property on terms appropriate to ensure that the property remains available is *de minimis* if not nonexistent.

This court must also consider all the miscalculations set out in ECF 716, 728, and 737. While the government "does not have to prove forfeiture amounts with to-the-penny precision (or even anything very close to that)," the court must reject the government's proposal when it is excessive or is shown to be inaccurate. *United States v. King,* 231 F. Supp 3d 872, 984, 915, 953 (W.D. Okla. 2017) (noting the need for government to use "some semblance of intellectual rigor," and to offer "reliable reference points"); *see generally United States v. Griffin,* 76 F. 4th 724, 750 (7th Cir. 2023) (for restitution, if the defendant is able to create real doubt about reliability, the burden shifts to the government to demonstrate accuracy). The government bears the burden of proof on forfeiture by preponderance of the evidence, including on issues relating to joint and several liability. *King,* 231 F. Supp. 3d at XXX. *See generally United States v. Haleamau,* 887 F. Supp. 2d 1051, 1058 (D. Haw. 2012) (requiring the government to prove that seized funds were traceable to the illegal structuring; *United States v. Garcia-Guizar*, 160 F.3d 511, 518 (9th Cir. 1998) (finding that the government failed to prove that all the recovered money from the defendants were proceeds of drug activity). On both fronts, this court must consider what the government offered as a declaration, and the lack of evidence offered by the government. Andrade should not be responsible, for example, with respect to proceeds from illegal schemes that may have been authorized by the government, were tied to Coconspirator Jack Abramoff, and used to purchase Aml Tokens.[5]

---

[5] See ECF 780 at pg. 2 at 9-17 and pg. 3 at 1-10.

Another factor that must be considered by this court is Andrade's Constitutional rights under the Texas Constitution since the Texas Constitution contains "rules of decision" which are relevant to an order of forfeiture by this court.

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.[6]

While that statutory provision is limited to civil actions, the essential concept must weigh heavily on this court as it considers whether to exercise its discretion in ordering a forfeiture of Andrade's assets *at this time pending a decision on appeal*, especially since there are third parties who have unqualified interests in many of those assets, if not all of them.

The Texas Open Courts provisions declaring Andrade's constitutional rights are these:

> **Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted.** All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.[7]
>
> **No citizen of this State shall be** deprived of life, liberty, property, privileges or immunities, or **in any manner disfranchised**, except by the due course of the law of the land.[8]

The Supreme Court of Texas has spoken eloquently about this provision which is worth quoting here at length:

> The provision's wording and history demonstrate the importance of the right of access to the courts. The provision's wording indicates the high value the drafters and ratifiers placed on the right of access to the courts. First, the language is mandatory: "*shall* be open" and "*shall* **have remedy by due course of law.**" Further, it is **all-inclusive:** "*all* courts" are to be open; "for *every* person"; **for *all* interests, "lands" (real property), "goods" (personal

---

[6] 28 USC § 1652.

[7] Tex. Const. Art. I, § 13 (emphasis added).

[8] Tex. Const. Art. I, § 19 (emphasis added).

> **property), "person" (body and mind), and "reputation" (good name)**; *at all times,* since there is no emergency exception. ***
>
> The open courts provision's history also reflects its significance. It originates from Chapter 40 of Magna Carta, the great charter of English liberties obtained from King John in 1215: **"To none will we** sell, to none **deny or delay, right or justice."** Colonists brought to America and then to Texas their belief in the historic rights guaranteed by Magna Carta. The right of access to the courts has been at the foundation of the American democratic experiment.
> ***
> Besides the open courts provision, every Texas constitution has also included a separate due process provision, presently Article I, § 19;[7] Logically, our constitutions have included both provisions because they serve different purposes.[8] The open courts provision must have been intended to provide rights in addition to those in the due process provision or the former would be surplusage.
>
> Furthermore, the due process provision's general guarantees contrast with the open courts provision's specific guarantee of a right of access to the courts. Furthermore, the due process provision's general guarantees contrast with the open courts provision's specific guarantee of a right of access to the courts.
> ***
> The open courts provision specifically guarantees all litigants the right to redress their grievances—to use a popular and correct phrase, **the right to their day in court. This right is a substantial state constitutional right.** Because a substantial right is involved, the legislature cannot arbitrarily or unreasonably interfere with a litigant's right of access to the courts. Thus, the general open courts provision test balances the legislature's actual purpose in enacting a law against that law's interference with the individual's right of access to the courts. The government has the burden to show that the legislative purpose outweighs the interference with the individual's right of access.
>
> > [7]Art. I, sec. 19 reads: "No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of law of the land." It is "the traditional due process guarantee."
> > [8]Thirty-seven states, plus Texas, have in addition to their traditional due process clauses open courts provisions to specifically guarantee the right of access to the courts.[9]

That description weighs equally with respect to rights in criminal proceedings as well as civil proceedings. Consequently, this court must exercise its discretionary authority to stay an order

---

[9] *LeCroy v. Hanlon*, 713 S.W.2d 335, 339-341 (Tex. 1986) (emphasis added, internal citations omitted). Note: in fact, there are forty states in addition to Texas have open courts provisions to specifically guarantee the right of access to the courts.

of forfeiture pending the appeal in this matter in support of Andrade's right to his day in court, a right that is a substantial state constitutional right of Andrade's. Otherwise, this court will deny Andrade constitutional right that he *shall* have remedy by due course of law since *all* courts are to be open for *every* person for *all* interests, lands (real property), goods (personal property), person (body and mind), and reputation (good name), *at all times.*

An order of forfeiture by this court would ignore the foundational principles in Chapter 40 of Magna Carta by denying "right or justice" for Mr. Andrade.

Mr. Andrade respectfully requests that this court decline to issue an order of forfeiture but, in the event that it must issue an order of forfeiture, stay the order of forfeiture on terms appropriate to ensure that the property remains available pending resolution of the appeal in this matter since appropriate terms can address any possible concerns on the part of the government.

Dated: OCTOBER 9, 2025               Respectfully submitted,

                                     *[signature]*
                                     Charles C. Morgan
                                     *Pro Hac Vice*
                                     Attorney for Defendant
                                     ROWLAND MARCUS ANDRADE

### Certificate of Service

I certify that on October 9, 2025, I electronically filed this document on the Court's CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys of record.

*[signature]*
Charles C. Morgan