IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant | CASE No. 3:20-cr-00249-RS-1<br><br>**DECLARATION OF ROWLAND MARCUS ANDRADE IN SUPPORT OF MOTION OF ADMINISTRATIVE RELIEF TO EXTEND SURRENDER DATE AND NINTH CIRCUIT UPDATE**<br><br>Judge:  Hon. Richard Seeborg |

# EXHIBIT - C

## DECLARATION OF ROWLAND MARCUS ANDRADE

John M. Pierce (Bar No. 250443)
jpierce@johnpiercelaw.com
**JOHN PIERCE LAW P.C.**
21550 Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
Tel. (321) 961-1848

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 3:20-CR-00249-RS<br><br>**DECLARATION OF ROWLAND MARCUS ANDRADE IN SUPPORT OF ADMINISTRATIVE RELIEF TO EXTEND SELF-SURRENDER DATE**<br><br>Judge:   Hon. Richard Seeborg |

DECLARATION OF ROWLAND MARCUS ANDRADE IN SUPPORT OF
ADMINISTRATIVE RELIEF TO EXTEND SELF-SURRENDER DATE MOTION

This declaration incorporates by reference all the facts set forth in the previous declaration as set forth in docket number 788-2. I Rowland Marcus Andrade declare as follows:

1. The left ankle surgery is a Dwyer osteotomy with anterior capsulotomy and osteophyte excision to correct a high-arched (cavovarus) foot deformity and address associated structural problems.

2. On October 8, my A1C level was above the threshold at 8.7. When I was retested on

November 6, 2023, I had reduced my A1C to 7.5. I was informed that I needed to reduce my A1C level to below 7, which was hard, but I was able to accomplish it just before Thanksgiving. I got to a 6.9. I was also notified that I may have Angina Pectoris, which I learned is related to my heart not receiving enough oxygen. The doctors confirmed this through "Chart Review." The VA referred me to a specialist in Houston, Texas, where I underwent a 2D echocardiogram — essentially a sonogram of the heart. I have not yet received the test results which is needed in order to find out what the underlying issue is.

3. On December 10, I met with my surgeon and was informed that my surgery date is set for January 26, 2026. The doctors can still proceed with the surgery despite the Angina Pectoris issue, but they will need to take certain precautions, such as potentially using a nerve block. I have an appointment on December 30, 2025 to review the precautions in detail. I was also informed that I will be in a cast for six weeks following the surgery.

4. I made vigorous efforts to schedule my left-ankle surgery in November and December but was unable to do so. The doctors allowed me to take multiple A1C tests within a 45-day period to bring my A1C level down, which was necessary to schedule my surgery. While A1C tests are typically conducted every 90 to 120 days, the doctors made an exception due to the urgency of my situation, ensuring that my blood sugar levels were adequately controlled so I could move forward with scheduling my surgery. I attempted to schedule my surgery for this month but was unable to, as the orthopedic surgeons at the Veterans Administration (VA) only operate on Wednesdays

- 2 -

DEFENDANT MARCUS ANDRADE'S MOTION FOR ADMINISTRATIVE RELIEF TO EXTEND SURRENDER DATE AND 9TH CIRCUIT UPDATE.

CASE NO. 3:20-CR-00249-RS

due to their commitments at other hospitals, and their schedule was fully booked until January 26, 2026.

5. I will help my appellate counsel understand the case before my surrender date, given the size of the matter, the nearly 800 docket entries, and the substantial amount of evidence in the record which includes data that was way too big to efile so it had to be shipped to the Court. I can be able to assist the counsel since doing so is in my best interest and that I need to get the counsel up to date quickly so that he can also file my appeal on the denial of the motion for me to remain on bond and so that he can properly understand all aspects of the case in order for counsel to be effective.

6. If I were to flee — which I will not — my family and I will lose our interest in all of our assets. Such an action would have devastating consequences for my family and I. Not only financially, but my two young daughters, ages 6 and 10, would endure significant emotional strain and would be further traumatized by this. I am deeply committed to my family and would never take any action that would endanger their mental state or their well-being.

7. I hold an ownership interest in my home, jointly with my wife, as well as joint-stock in biometric-based and digital wallet-based, patent-protected intellectual property that I developed in 2015. These assets have a potential joint value in the tens of millions, if not hundreds of millions, of dollars. A portion of these assets is individually sufficient to satisfy the full amount of the forfeiture judgment. The government is aware of this, and the attached damages report, prepared by an experienced industry expert who regularly testifies in patent litigation, confirms that one company alone owes the

- 3 -

patent company between $2.7 million (on the low end) and $40.8 million (on the high end) per year. And this is just one company. See Attachment 1 to this declaration. Aside from their international money laundering activities conducted behind my back, these patents were exactly what Abramoff and his associates were after. The government is aware of this, as well as the value of the technology, as evidenced in the record (NDCA Case No. 20-cr-000249 at Dkt. 777, p. 8:1-3, p. 9, footnote 1, and p. 10:14-18; 9th Cir. No. 25-5095 at Dkt. 27-2, p. 14 of 37).

8. I have fully complied with all conditions of my bond and release, have appeared at every hearing, and have remained in regular communication with Probation and counsel. I pose no flight risk or danger to the community. If the Court deems it appropriate, I consent to release conditions, including home detention or GPS monitoring, during any period of extension.

9. My wife is currently studying for an exam that will allow her to obtain employment in February or early March of 2026 so she can help provide financial support for herself and our daughters. Although my surgeries will prevent me from walking, I will still be able to assist by caring for the children while she continues studying and begins working until my surrender date.

I declare under penalty of perjury under the laws of the United States that the forefoing is true and correct. Executed on December 16, 2025.

/s/ Marcus Andrade
/s/ Rowland Marcus Andrade

- 4 -

DEFENDANT MARCUS ANDRADE'S MOTION FOR ADMINISTRATIVE RELIEF TO EXTEND SURRENDER DATE AND 9TH CIRCUIT UPDATE.                           CASE NO. 3:20-CR-00249-RS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant | CASE No. 3:20-cr-00249-RS-1<br><br>**DECLARATION OF ROWLAND MARCUS ANDRADE IN SUPPORT OF MOTION OF ADMINISTRATIVE RELIEF TO EXTEND SURRENDER DATE AND NINTH CIRCUIT UPDATE**<br><br>Judge: Hon. Richard Seeborg |

# EXHIBIT - 1

# PATENT RELATED ASSETS

### (In Support of Declaration of Marcus Andrade, ¶ 7)

*Preliminary Assessment:*

**Preliminary Estimate**

**For the Period March 20, 2023 through December 31, 2027** [1]

Schedule 1.0

| (in millions) | Estimated U.S. Blockchain Revenues [2] | % Utilizing Patented Features [3] | Total Potentially Accused Revenues [4] | 1% Royalty | 5% Royalty | 10% Royalty |
|---|---|---|---|---|---|---|
| Low Scenario | $ 544.4 | 50% | $ 272.2 | $ 2.7 | $ 13.6 | $ 27.2 |
| High Scenario | $ 544.4 | 75% | $ 408.3 | $ 4.1 | $ 20.4 | $ 40.8 |

**Sources/Notes:**

[1]

[2] See Schedule 2.0.

*Preliminary Assessment:*

*(in millions)*

| | Total U.S. Blockchain Market [2] | *Multiply:* | Estimated U.S. Blockchain Revenues [3] |
|---|---|---|---|
| **Pre-Complaint** | | | |
| Mar. 20 – Dec. 2023 | $ 3,743.9 | 0.55% | $ 20.6 |
| 2024 | 8,041.7 | 0.55% | 44.2 |
| Jan. – Jun. 30, 2025 | 7,005.4 | 0.55% | 38.5 |
| Subtotal | $ 18,791.0 | | $ 103.4 |
| **Post-Complaint to Trial** | | | |
| Jul. – Dec. 2025 | $ 7,121.5 | 0.55% | $ 39.2 |
| 2026 | 25,773.7 | 0.55% | 141.8 |
| 2027 | 47,293.4 | 0.55% | 260.1 |
| Subtotal | $ 80,188.7 | | $ 441.0 |
| **Grand Total** | $ 98,979.7 | | $ 544.4 |

***Sources/Notes:***

[1]

[2] See Schedule 3.0.

*Preliminary Assessment:* ▮▮▮                                                                                                Schedule 3.0

## Summary of U.S. Blockchain Market, by Application Type [1]

| (in millions) | Payments | Exchanges | Smart Contracts | Documentation | Digital Identity | Governance, Risk, & Compliance | Other | Total U.S. Blockchain Market |
|---|---|---|---|---|---|---|---|---|
| | $ 2,283 | $ 473 | $ 420 | $ 639 | $ 236 | $ 444 | $ 267 | $ 4,761 |
| | 3,912 | 797 | 701 | 1,091 | 389 | 738 | 414 | 8,042 |
| | 6,973 | 1,394 | 1,218 | 1,938 | 666 | 1,275 | 663 | 14,127 |
| | 12,903 | 2,534 | 2,197 | 3,574 | 1,184 | 2,286 | 1,094 | 25,774 |
| | 24,009 | 4,633 | 3,986 | 6,630 | 2,118 | 4,123 | 1,795 | 47,293 |
| | 45,040 | 8,541 | 7,289 | 12,400 | 3,815 | 7,496 | 2,926 | 87,507 |

*Sources/Notes:*