1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney

2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  CHRISTIAAN HIGHSMITH (CABN 296282)
   Assistant United States Attorneys

5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       FAX: (415) 436-7230
        christiaan.highsmith@usdoj.gov

8
   Attorneys for United States of America

9
                        UNITED STATES DISTRICT COURT

10
                      NORTHERN DISTRICT OF CALIFORNIA

11
                           SAN FRANCISCO DIVISION

12

13  UNITED STATES OF AMERICA,            )  Case No. 20-CR-00249 RS
                                         )
14        Plaintiff,                     )  **UNITED STATES' OPPOSITION TO**
                                         )  **DEFENDANT'S MOTION TO POSTPONE**
15     v.                                )  **SELF-SURRENDER DATE [DKT. 808]**
                                         )
16  ROWLAND MARCUS ANDRADE,              )  Hon. Richard Seeborg
                                         )
17        Defendant.                     )
                                         )
18

19  **I.      INTRODUCTION**

20         The United States respectfully submits this opposition to Defendant Andrade's motion to

21  postpone his January 9, 2026, self-surrender date. This is Andrade's second such motion. The Court

22  previously extended Andrade self-surrender date from October 31, 2025, to January 9, 2026, based on

23  Andrade's earlier motion. Dkts. 788 & 790. Andrade offers two reasons for the instant motion to

24  postpone self-surrender: (1) to facilitate his efforts to retain specialized appellate counsel and to provide

25  that counsel with assistance in preparing the appeal; and (2) to permit him to address medical issues out-

26  of-custody rather than via the medical professionals at BOP. *See generally* Def. Andrade's Mot. to

27  Extend Surrender Date, Dkt. 808. Andrade seeks to postpone his self-surrender date indefinitely. He

28  offers no date certain for his self-surrender. And he offers no valid rationale to extend his self-surrender

US OPPO. TO MOT. TO CONT. SELF-SURRENDER   1
20-CR-00249 RS

1    date. Andrade has been on notice of needing appellate counsel since his conviction nine months ago. He

2    has already cycled through multiple appellate counsel since his conviction, and he presents no evidence

3    that he will obtain his desired appellate counsel in any reasonable amount of time. Further, Andrade

4    motion – with no date certain for self-surrender – incentivizes Andrade to continue delaying medical

5    treatment so that he can stay out of custody. And he offers no basis to conclude that he will be unable to

6    obtain the required medical care in Bureau of Prisons custody. The Court should deny the motion and

7    order him to surrender on January 9, 2026.

8    **II.    STATEMENT OF FACTS**

9        On July 29, 2025, Andrade was sentenced to a term of 84 months in custody following his March

10   12, 2025, conviction by jury of one count of wire fraud and one count of money laundering. Dkt. 717. At

11   sentencing, the Court ordered Andrade to self-surrender on October 31, 2025. *Id.* On September 16,

12   2025, Andrade filed a motion for bond pending appeal, Dkt. 742, which the government opposed, Dkt.

13   761. On October 7, 2025, the Court denied Andrade's motion for bond pending appeal. Dkt. 781. The

14   next day, October 8, Andrade told his doctor that "he wants to explore surgical options for left ankle as

15   it hurts too bad now." Declaration of AUSA Highsmith ("Highsmith Decl.") ¶ 4, Exhibit 1.

16       On October 13, five days later, Andrade filed a motion to continue his self-surrender date to

17   January 31, 2026, "to accommodate (1) time-sensitive medical evaluations, scheduling, and recovery

18   from left-ankle surgery, and (2) his essential assistance in the transition to new counsel for appellate and

19   forfeiture preparations in this complex case." Dkt. 788, at 1. Andrade's motion was not supported by any

20   medical records, only his declaration.[1] Andrade indicated – without any supporting medical records –

21   that ankle surgery had been scheduled for August 6, 2025, but that the surgery was deferred in favor of a

22   cortisone injection. *Id.* at 2. Andrade claimed that his ankle injury was "a chronic injury causing

23   excruciating pain and abnormal gait," but he provided no explanation for why he had not planned

24   surgery for earlier than August 6, nor did he provide any reasonable explanation for why he deferred

25   surgery in favor of a cortisone injection. *Id.* Andrade's motion and declaration provided no explanation

26

27

28

---

[1] Similarly, Andrade's instant motion is not supported by any medical records. The defense, however, did email approximately 23 pages of medical records – with redactions – to the government on December 15, 2025. *See* Highsmith Decl. ¶ 4.

US OPPO. TO MOT. TO CONT. SELF-SURRENDER    2
20-CR-00249 RS

1  for why he had not sought treatment for ankle pain prior to his sentencing hearing. The next day, the

2  Court extended Andrade's self-surrender date to January 9, 2026. Dkt. 790.

3       Meanwhile, since sentencing, Andrade has cycled through numerous appellate counsel, and he

4  and continues searching for counsel that meets his unique criteria. On August 19, 2025, Andrade asked

5  the Ninth Circuit for CJA-funded appellate counsel and stated that he could not afford counsel. *United*

6  *States v. Andrade*, Case No. 25-5095 (9th Cir. Aug. 19, 2025) (Dkt. 4). Andrade received CJA counsel

7  ten days later. *Id.* at Dkts. 14 & 15. Approximately three weeks later, however, Andrade replaced CJA

8  counsel with retained counsel, Attorney Pierce. *Id.* at Dkts. 17 & 18. Then, on October 24, 2025,

9  Andrade filed a motion with the Ninth Circuit seeking appointment of specialized CJA counsel and

10  stated that retained counsel would withdraw once specialized CJA counsel had been appointed. *Id.* at

11  Dkt. 23. On November 14, 2025, the second CJA counsel was appointed, and retained counsel was

12  terminated. *Id.* at Dkts. 24, 25, 26. However, CJA counsel did not meet Andrade's standards, and

13  Andrade filed a motion for appointment of different CJA counsel who could meet his criteria. *Id.* at Dkt.

14  27. Andrade's motion stated that Attorney Pierce would be available to help screen candidates. *Id.* The

15  Court of Appeals granted Andrade's motion to relieve his second CJA counsel and terminated her from

16  the docket. *Id.* at Dkts. 28 & 29. The Court of Appeals reinstated Attorney Pierce and granted Andrade's

17  request "to stay briefing for 90 days to enable appellant to locate suitable replacement counsel." *Id.* at

18  Dkt. 28; *see also id.* at Dkt. 30. The Court of Appeals' order did not discuss Andrade's custody status.

19  Indeed, Andrade has been out of custody and able to screen candidates to serve as his appellate counsel

20  since his conviction nine months ago.

21       The Bureau of Prisons has designated Andrade to the Federal Medical Center (FMC) Fort Worth

22  in Texas. *See* Highsmith Decl. ¶ 5.

23  **III.    ARGUMENT**

24       **A.    LEGAL AUTHORITY**

25       Detention is mandatory and routine for any defendant following conviction and imposition of a

26  custodial sentence. *See* 18 U.S.C. § 3143(b)(1). "Once a person has been convicted and sentenced to jail,

27  there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence

28  of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) (quoting H. Rep.

US OPPO. TO MOT. TO CONT. SELF-SURRENDER    3
20-CR-00249 RS

1    No. 907, 91st Cong., 2d Sess. 186–87 (1970) (discussing model for § 3143 within the Act)). Otherwise,

2    "release of a criminal defendant into the community, even after conviction," runs the risk of

3    "destroy[ing] whatever deterrent effect remains in the criminal law." *Id.*

4          The district court has broad discretion, "[i]f the circumstances warrant," to "delay the imposition

5    of sentence or extend the time to surrender to the BOP." *United States v. Fower*, 30 F.4th 823, 827 (9th

6    Cir. 2022).

7          **B.**     **Andrade's Continued Search for Specialized Appellate Counsel Does Not Warrant Delaying His Self-Surrender Date**

8

9          Andrade provides no evidence or legal argument that warrants a second extension of his self-

10   surrender date. He first argues that the Court should extend his self-surrender date so that he can remain

11   out of custody while searching for specialized appellate counsel. Specifically, Andrade asks the Court to

12   extend his self-surrender date "[45] days from the date [he] either is financially able to pay or is

13   appointed appellate counsel, consistent with the Ninth Circuit's order granting a 90-day stay to locate

14   replacement counsel." Dkt. 808, at 2. In effect, this request seeks an indefinite extension of Andrade's

15   self-surrender date. Andrade will have no self-surrender date if he has not raised the necessary funds

16   and/or located what he deems to be suitable appellate counsel within the 90-day stay in the briefing

17   schedule ordered by the Ninth Circuit. And given the factual record to date, it is unlikely that Andrade

18   will raise the necessary funds or locate what he deems to be suitable appellate counsel. Andrade

19   provides no reliable evidence that an extension of his self-surrender deadline will enable him to obtain

20   appellate counsel that meet his requirements. The Court of Appeals has already appointed two separate

21   CJA-funded appellate attorneys, and Andrade apparently has rejected them both. *United States v.*

22   *Andrade*, Case No. 25-5095 (9th Cir. Aug. 19, 2025) (Dkts. 18 & 29) (replacing or terminating CJA-

23   funded appellate counsel).

24         Further, Andrade cites no caselaw to support his argument that the search for specialized

25   appellate counsel requires an extension of his self-surrender date. Instead, the factual record suggests

26   that Andrade is engaging in delay tactics. Andrade has had more than nine months – since his March 12,

27   2025, conviction – to locate appellate counsel that meet his requirements. More time is unlikely to result

28   in Andrade locating the specific appellate counsel he purportedly seeks. And his request for an indefinite

US OPPO. TO MOT. TO CONT. SELF-SURRENDER    4
20-CR-00249 RS

1  extension of his self-surrender deadline until he secures counsel that meets his detailed requirements

2  suggests that he will remain out of custody for a significant amount of time, thus delaying justice and

3  contradicting Congress's explicit instruction that convicted defendants be detained.

4      Andrade next implies that extending his self-surrender dates comports with the Ninth Circuit's

5  November 17 order permitting Andrade extra time to file his appeal so that he can search for appellate

6  counsel. Dkt. 808, at 2-3 & n.2 (citing *United States v. Andrade*, Case No. 25-5095, Dkt. 28 (Circuit

7  Order)). Any such implication is wrong. Maintaining the current self-surrender date does not conflict

8  with the Ninth Circuit's order granting Andrade's "motion to stay briefing for 90 days to enable

9  appellant to locate suitable replacement counsel." *United States v. Andrade*, Case No. 25-5095, at Dkt.

10  28. The order did not address Andrade's custody status. Andrade has been out of custody for nine

11  months since his conviction and has not located appellate counsel that meet his requirements. He can

12  continue searching for suitable appellate counsel while in custody. Permitting him to remain out of

13  custody beyond his January 9, 2026, self-surrender date would result in an unreasonable and perhaps

14  indefinite extension of Andrade's self-surrender date.

15      Andrade next argues that his self-surrender date should be extended indefinitely so that he can

16  sell "certain joint-stock assets" and "conduct a public fundraiser." Dkt. 808, at 2. Again, Andrade cites

17  no caselaw to support this argument. Andrade declares that he owns "joint-stock in biometric-based and

18  digital wallet-based, patent-protected intellectual property that [he] developed in 2015." Declaration of

19  Rowland Marcus Andrade, Dkt. 808-3, at 3. Andrade further asserts that "[t]hese assets have a potential

20  joint value in the tens of millions, if not hundreds of millions, of dollars." *Id.*

21      Given the record, it is highly unlikely that whatever joint-stock Andrade purports to own has any

22  significant value. The damages report Andrade attached to his motion, *see* Dkt. 808-3, Exhibit 1, which

23  Andrade claims to be a valuation of his joint-stock assets, is completely unreliable. Further, Andrade

24  does not address why he did not sell these assets earlier. Presumably, he did not sell them earlier because

25  he could not sell them in any meaningful amount. This suggests that he will not be able to sell them in

26  the future either. Andrade cites no evidence to suggest that these purported assets are more valuable or

27  marketable now than months or years ago. Nor does Andrade address why he must remain out of

28  custody to sell these assets. He could attempt to sell these assets while in BOP custody. Andrade's

1    attempt to extend his self-surrender date so that he can sell purported joint-stock assets appears to be

2    another tactic to delay his surrender. Without any specific self-surrender date, Andrade could continue to

3    attempt to sell his joint-stock indefinitely and thus avoid ever reporting to BOP.

4         Andrade's final argument related to appellate counsel is that his self-surrender date should be

5    extended so that he can help his future appellate counsel understand the complex case record. Dkt. 808,

6    at 4-5. Andrade cites no caselaw to support this argument. Andrade can work with appellate counsel

7    from BOP. Andrade makes no argument to the contrary. Further, the fact that Andrade has cycled

8    through multiple counsel prior to his self-surrender date – rather than working with any given counsel to

9    understand the record – indicates that Andrade seeks to delay self-surrender rather than work with

10   counsel on his appeal. The Court should deny his request to extend his self-surrender date.

11        **C.    Andrade's Medical Issues Do Not Warrant Delaying His Self-Surrender Date a
                  Second Time**

12

13        Andrade asks the Court to delay his January 9, 2026, self-surrender date so that he can he have

14   orthopedic ankle surgery out of custody on January 26, 2026. Andrade does not address why he must

15   remain out of custody to obtain this treatment, and he makes no claim that BOP cannot provide

16   treatment. Andrade has not submitted to the government any medical information indicating that his

17   treatment must take place outside of BOP. The Court should deny Andrade's motion, and Andrade

18   should seek medical care and treatment through BOP.

19        The Bureau of Prisons carefully considers an inmate's health as part of the assessment to

20   determine where to house him or her. *See* Legal Resource Guide to the Federal Bureau of Prisons,

21   https://www.bop.gov/resources/pdfs/legal_guide_march_2019.pdf, at 27. "In making determinations

22   regarding the appropriate institution in which to house an offender, the BOP carefully considers the

23   offender's health status. As the BOP provides extensive medical services, a defendant's medical

24   condition generally will not preclude a sentence to BOP custody." *Id.* BOP frequently addresses even

25   complex medical issues for inmates who are incarcerated. Even if Andrade's designated facility – FMC

26   Fort Worth – does not provide the necessary treatment, BOP can send him to a local hospital for care.

27   "Community medical professionals are consulted as needed, and inmates are sent to community

28   hospitals should medically necessary care be unavailable at the institution." *Id.*

US OPPO. TO MOT. TO CONT. SELF-SURRENDER   6
20-CR-00249 RS

1    The record indicates that Andrade is using his medical condition to delay his self-surrender date.

2    Andrade claims that he has a chronic ankle injury "causing excruciating pain and abnormal gait." Dkt.

3    808, at 3; Dkt. 788, at 2. But the medical records Andrade provided to the government indicate that he

4    did not seek ankle surgery until the day after the Court denied his motion for bail pending appeal. *See*

5    Exhibit 1, Orthopedic Surgery Note, October 8, 2025 ("[Patient] reports he wants to explore surgical

6    options for his left ankle as it hurts too bad now."). On October 13, 2025, Andrade moved to extend his

7    self-surrender date beyond October 31 based on a claim that he needed ankle surgery in November or

8    December. Dkt. 788. Now, Andrade claims that he was unable to schedule surgery prior to his January

9    9, 2026, self-surrender date and asks for a second continuance. Andrade states that he was unable to

10    obtain ankle surgery in December "because his surgical team at the Veterans Administration (VA) only

11    operates on Wednesdays…." Dkt. 808, at 4. Andrade's explanation is non-sensical, and he does not

12    support it with any relevant medical records. Similarly, Andrade claims to have additional medical

13    appointments both before and after his scheduled surgery. But Andrade provides no medical records to

14    corroborate those appointments, nor does he provide any records to indicate why BOP could not provide

15    the necessary treatment. Andrade fails to provide sufficient evidence to warrant a second continuance of

16    his self-surrender date beyond January 9, 2026.

17    **IV.    CONCLUSION**

18    For the foregoing reasons, the Court should deny Defendant Andrade's motion, and it should

19    direct him to report to his designated Bureau of Prisons facility on January 9, 2026, as it ordered

20    previously.

21    DATED: December 23, 2025                        Respectfully submitted,

22                                                                CRAIG H. MISSAKIAN
                                                                    United States Attorney
23

24
                                                                       /s/
25                                                                CHRISTIAAN HIGHSMITH
                                                                    Assistant United States Attorney
26

27

28