CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHRISTIAAN H. HIGHSMITH (CABN 296282)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    christiaan.highsmith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-CR-00249 RS |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT ANDRADE'S RENEWED MOTION FOR BOND PENDING APPEAL** |
| v. | |
| ROWLAND MARCUS ANDRADE, | Hearing Date: March 17, 2026<br>Hearing Time: 9:30 a.m.<br>Courtroom: Courtroom 3 – 17th Floor |
| Defendant. | |
| | Hon. Richard Seeborg |

I.    INTRODUCTION

Defendant Rowland Marcus Andrade again asks the Court to release him on bond pending appeal. Dkt. 822. He claims that new information exists which did not exist when he filed his original motion for release pending appeal, dkt. 742, which the Court denied, 781. The Court should deny Andrade's renewed motion. "Congress created a presumption *against* post-conviction release and placed the burden of demonstrating that release is appropriate on the defendant." Order Denying Def.'s Mot. for Bond Pending Appeal (Dkt. 781), at 1. Andrade's purported new claims fail to satisfy that burden and fail to overcome the presumption in favor of post-conviction detention. First, Andrade's CIPA question

does not present "a substantial question of law or fact likely to result in ... reversal." 18 U.S.C. § 3143(b)(1)(B)(i). Second, § 3143(b) does not permit release pending appeal based solely on a claim that BOP is unable to provide timely and necessary medical care. And even if the law did permit such a claim to warrant release, Andrade fails to make a sufficient factual showing to meet his burden of proof for release pending appeal. Third, Andrade's claim that he must be released because BOP is not allowing him to communicate confidentially with counsel fails because it is neither supported by the law nor the facts proffered by Andrade.

## II.  FACTUAL BACKGROUND

On August 12, 2025, following conviction at trial, sentencing, and entry of judgment, Andrade filed a notice of appeal. Dkt. 724. On September 16, he moved for a bond pending appeal. Dkt. 742. Andrade argued that he was neither a flight risk nor a danger to the community. He further argued that he had identified a number of arguments for appeal that were substantial enough to justify a bond. This Court denied Andrade's motion for a bond pending appeal, ruling that the arguments Andrade identified for appeal "were universally considered and rejected at various points before, during, and after the trial" and that "[n]one were particularly close." Dkt. 781, at 2. The Court concluded that the issues Andrade intended to raise on appeal were "either not substantial, inconsequential, or both." *Id.* at 4. Accordingly, the Court ruled that "Andrade has not carried his burden to establish entitlement to a bond pending appeal." *Id*. at 2.

On October 13, Andrade filed a motion to continue his October 31, 2025 self-surrender date to January 31, 2026. Dkt. 788. The Court continued Andrade's self-surrender date to January 9, 2026. Dkt. 790. On December 16, 2025, Andrade filed a motion to further continue his self-surrender date, which the Court denied. Dkts. 808 (Motion), 814 (Order). On December 31, Andrade filed a motion to reconsider, which the Court denied. Dkts. 815 (Mot. to Reconsider), 816 (Order).

On January 3, 2026, Andrade filed an emergency motion in the Ninth Circuit to stay his self-surrender date. Case No. 25-5095, App. Dkts. 41, 42. On January 8, the Ninth Circuit denied Andrade's motion. *Id.* at App. Dkt. 49.

Andrade now files a renewed motion seeking a bond pending appeal. He raises three new questions not raised in his first motion.

## III. LEGAL STANDARD

To obtain a bond pending appeal, a defendant must show:

>(A) by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and
>
>(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>>(i) reversal,
>>
>>(ii) an order for a new trial,
>>
>>(iii) a sentence that does not include a term of imprisonment, or
>>
>>(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "In enacting these requirements, Congress created a presumption *against* post-conviction release and placed the burden of demonstrating that release is appropriate on the defendant." Dkt. 781, at 2 (citing *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985)).

"The final statutory requirement—that the defendant present a 'substantial question' that is 'likely to result in' particular relief—contains two separate showings." *Id.* "The first goes to the merit of the appellate argument." *Id.* "To show that the question is 'substantial,' the defendant must establish that it is 'fairly debatable' or 'fairly doubtful.'" *Id.* (citing *United States v. Handy*, 761 F.2d 1279, 1281–82 (9th Cir. 1985)). Substantial questions "are questions that are 'novel,' those 'not plainly covered by the controlling precedents,' or those that 'involve important questions concerning the scope and meaning of decisions of the Supreme Court.'" *Id.* at 2-3 (quoting *Handy*, 761 F.2d at 1281, and *D'Aguino v. United States*, 180 F.2d 271, 272 (11th Cir. 1950)). "However, a defendant does not need to show that reversal is more likely than not to demonstrate that a question is substantial." *Id.* at 3 (citing *Handy*, 761 F.2d at 1280–81).

The second showing "goes to the centrality of the question to the defendant's conviction and sentence." *Id.* (citing *Handy*, 761 F.2d at 1280 ("'[L]ikely to result in reversal or an order for a new trial' defines the *type of question* that must be presented." (emphasis in original)). "The defendant must establish that, if the court of appeals agrees with his argument, the relief specified in the statute is

1  'likely.'" *Id.* (citing *Miller*, 753 F.3d at 23). "A question—even a 'substantial' question—that is
2  harmless, lacks prejudicial effect, or was insufficiently preserved does not compel a bond pending
3  appeal." *Id.* (citing *Miller*, 753 F.3d at 23).

4  **IV.    ARGUMENT**

5      This Court has already ruled that Andrade is neither a flight risk nor a danger to the community.
6  *Id.* at 3-4. Accordingly, Andrade's motion turns on whether he can satisfy his burden of demonstrating
7  that the new questions he intends to raise on appeal are substantial and consequential. He cannot.

8      **A.    Andrade Fails to Present a Substantial and Consequential CIPA Question**

9      As a preliminary matter, Andrade essentially concedes that no substantial CIPA question exists
10 that is likely to result in reversal. He admits: "CIPA expressly authorizes the in camera, ex parte
11 procedures for the Government's Section 4 submissions here…." Dkt. 822, at 5:25.

12     Andrade claims that a substantial CIPA questions exists for appellate review because this Court
13 failed "to place [itself] in the shoes of defense counsel" and assess whether the CIPA submission was
14 "relevant and helpful to the defense of the accused." *Id.* at 8:7-8, 8:15-18. Andrade's claims are not
15 supported by the record or by any reasonable inferences that can be drawn from the record. This Court
16 "carefully considered" the record, including the government's motion and supporting memorandum,
17 accompanying attachments, classified declaration(s), and the defendant's ex parte CIPA submission.
18 Dkt. 367, at 2:1 ("The Court, having *carefully considered* [the aforementioned collection of
19 materials]….") (emphasis added). Based on its "carefully considered" review, the Court ruled that "none
20 of the classified information is exculpatory." *Id.* at 2:12. Further, the Court specifically stated that its
21 ruling relied on the "relevant and helpful to the defense of the accused" standard and relevant caselaw.
22 *Id.* (citing and quoting *Roviaro v. United States*, 353 U.S. 53 1957); *United States v.*
23 *Alahmedalabdaloklah*, 94 F.4th 782 (9th Cir. 2024); *United States v. Klimavicius-Viloria*, 144 F.3d
24 1249, 1261 (9th Cir. 1998); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)).

25     Andrade next mischaracterizes the record when he asserts that "it does not appear that any
26 substitute evidence or statement was provided." Dkt. 822, at 8:19. The Court specifically stated that it
27 reviewed "the Government's Motion and the classified declaration(s)" and "finds that the classified
28 information referenced in the Government's Motion implicates the Government's classified information

privilege because the information is properly classified and its disclosure could cause serious damage to the national security of the United States." Dkt. 367, at 2:8-11. Again, Andrade fails to make any legitimate showing that the record before the Court lacked sufficient substitute evidence or statements. And nothing in the record indicates whatsoever that the Court conducted an improper review based on an insufficient submission. Nor does Andrade make any showing that his defense was hampered by the absence of classified evidence, which, this Court ruled, was not exculpatory or relevant and helpful to his defense. Andrade had a mountain of evidence regarding Abramoff. And the defense cross-examined Abramoff extensively at trial, including about his prior crimes and cooperation with the government. Contrary to Andrade's claims, the record establishes that Andrade was able to – and in fact did – amply attack Abramoff's criminal history and cooperation with the government.

Andrade next asserts that because the CIPA caselaw is underdeveloped, it necessarily presents a substantial and consequential question for appeal. Andrade is wrong. the "helpful to the defense of the accused" standard is not "fairly debatable" or "fairly doubtful" in the Ninth Circuit. The relevance and helpfulness of exculpatory and impeachment evidence are well-established through *Brady*, *Giglio*, and their progeny. Further, the "relevant and helpful" standard has already been elucidated by the Supreme Court and the Ninth Circuit in multiple decisions. *See, e.g.*, *Roviaro*, 353 U.S. 53; *Alahmedalabdaloklah*, 94 F.4th at 811 ("If the court determines that the information is discoverable and the state-secrets privilege applies, the court next must determine whether the evidence is 'relevant and helpful' to the defense of the accused."); *Klimavicius-Viloria*, 144 F.3d at 1261 (disclosure of classified information is not required when that information is not relevant and helpful to the defense of the accused). Andrade fails to show that a novel CIPA question exists.

Nor has Andrade made a sufficient showing that further development of the standard would be consequential – i.e., likely to result in reversal or a new trial. This Court has already determined that the classified information was not exculpatory and was not relevant and helpful. The record contains no support for Andrade's allegations that the government authorized Abramoff to engage in otherwise illegal activity. Additional development of the "relevant and helpful" standard is not likely to be consequential to the outcome of Andrade's case.

//

## B. Andrade's Medical Condition and BOP's Medical Care Does Not Warrant Release

Andrade claims that his purported health complications and the purported danger that his illness presents to his physical safety in BOP constitute an independent basis for his release. Dkt. 822, at 10 (citing *United States v. Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003); *United States v. Wetselaar*, No. 17-10322, 2017 WL 6514650 (9th Cir. Nov. 7, 2017) (unreported)). Andrade is wrong both legally and factually.

First, Andrade incorrectly relies on the "exceptional reasons" provision of 18 U.S.C. § 3145(c) in claiming that his medical condition warrants a bond pending appeal. The "exception reasons" provision does not apply to Andrade because he was not convicted of a violent crime or a drug trafficking offense. *See Garcia*, 340 F.3d at 1015 (explaining that under the Mandatory Detention Act of 1990, defendants convicted of violent offenses and serious drug crimes "are not eligible for release simply because they meet [the § 3143(b)(1)] requirements"—these defendants must also show "that there are exceptional reasons why [their] detention would not be appropriate"). Because Andrade fails to meet his burden of showing that his appeal raises a substantial and consequential question, his motion fails regardless of the purported exceptional reasons. *See Garcia*, 340 F.3d at 1015 (analyzing "exceptional reasons" under § 3145(c) only because the district court found, and the government did not dispute, that the defendants had satisfied the § 3143(b)(1) factors); *Wetselaar*, 2017 WL 6514650, at *1 (only reaching "exceptional reasons" issue after appellant had "shown that the appeal raises a 'substantial question' of law or fact that is 'fairly debatable,' and … likely to result in reversal or … a new trial").

Even if exceptional reasons could somehow permit his bond pending appeal, Andrade has not made a sufficient factual showing about exceptional medical conditions. Andrade's claims are based solely on his unsupported, self-serving declaration, which is insufficient to satisfy his burden of showing that post-conviction release is warranted. *See* Dkt. 822-3, at 2-4. Further, as this Court has already observed, Andrade's statements regarding his medical condition and need for release to attend to his medical condition should be viewed with skepticism because they "reek[] of opportunism." Dkt. 814, at 3:5. Andrade states, "I have arthritis on both ankles that causes me pain when walking, standing, and getting into bed and out of bed…." *Id.* at 822-3, at 2. But there is no reason to believe that Andrade's ankle pain is greater in BOP custody than out of custody. And while out of custody, Andrade never took

the steps necessary to obtain ankle surgery. In fact, it appears that he delayed scheduling ankle surgery until he knew his self-surrender date and only sought a specific surgery date falling after his self-surrender deadline. *See* Dkt. 814, at 3. As this Court previously found, "Andrade has created an inference that his reliance on his medical problems is in bad faith." *Id*.

Andrade next claims release is warranted because BOP is not providing adequate pain medication. Dkt. 822, at 10:16. He states, "I have not been given the proper pain medication while incarcerated. The replacements I have been given for both pain and anxiety have been ineffective." Dkt. 822-3, at 3. But Andrade provides no detail or explanation about his medication or symptoms. He does not dispute that he is receiving both pain and anxiety medication. He has access to medical care, and he does not contest that he can request different medication and different dosages. Similarly, Andrade states that he wants an MRI and echocardiogram, and he claims without evidence that the wait time is six months. Andrade does not, however, claim that BOP is blocking him from those procedures, nor does he state that the VA system could provide those services any faster. Put simply, Andrade's declaration does not establish inadequate medical care. That Andrade wants different care, without more evidence, does not warrant his post-conviction release.

Likewise, Andrade's claim that his physical safety is at risk does not, without more, satisfy the burden necessary for a bond pending appeal. Andrade declares, "I fear for my physical safety." Dkt. 822-3, at 4. He claims that "[a] few inmates … assumed that I have millions of dollars and demanded that I make payments to them. When I refused, they almost attacked me in the shower." *Id.* These unsupported assertions do not warrant release. Even if taken as true, and there is ample reason to doubt the veracity of Andrade's statements, this incident does not establish that Andrade is unsafe in prison. Andrade says nothing about reporting the incident to BOP officials or about asking BOP to take additional precautions. Andrade appears to have taken no proactive steps other than to say – self-servingly – that he should be released. Andrade has failed to reasonably establish that his claims are either factually true or, even if true, that they rise to the level of necessitating his post-conviction release.

**C. Detention Does Not Interfere with Andrade's Right to Adequate Legal Representation**

Finally, Andrade argues that he should be released pending appeal because BOP is materially and unconstitutionally interfering with his ability to communicate confidentially with counsel and

participate meaningfully in his appeal. Andrade cites no relevant caselaw to support his claim. And his factual assertions, without more, do not amount to an unconstitutional deprivation.

The law governing post-conviction release pending appeal is governed by 18 U.S.C. § 3143(b). None of the cases Andrade cites support the proposition that the remedy for BOP interference with attorney-client communication is release on bond pending appeal. Dkt. 822, at 11:13-19 (citing *Mangiaracina v. Penzone*, 849 F.3d 1191, 1195-96 (9th Cir. 2017) (reversing district court's dismissal of civil § 1983 claim and holding that prisoners have a right to be present when legal mail related to a criminal matter is inspected); *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1208 (9th Cir. 2017) (discussing, in case involving civil claim under § 1983, prisoners' First Amendment interest in having legal mail opened in their presence); *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (holding, in civil lawsuit to enjoin correctional officers from reading inmates' legal mail, that reading legal mail rather than merely inspecting it violated the Sixth Amendment); *United States v. Yandell*, Case No. 19-cr-107 KJM, 2019 WL 5587291, at *2 (E.D. Cal. Oct. 30, 2019) (unpublished, tentative ruling regarding conditions of pretrial confinement that defendants preparing for trial have a "right to unmonitored phone calls with their attorneys"). Instead, Andrade cites cases that stand for a different proposition: that Andrade may, if indeed there is a constitutional violation, be able to bring a civil claim under § 1983. None of the cases Andrade cites, however, empower this Court to release Andrade from BOP.

In addition, Andrade's factual claims fail to satisfy his burden required to warrant post-conviction release. Andrade states that BOP does not provide sufficient time for him to speak on the telephone with his attorneys. Dkt. 822-3, at 3. He states that BOP only permits him to talk to his attorneys in 15-minute segments. *Id.* And he states that all prison booth calls are recorded. *Id.* But Andrade does not provide any additional evidence to support his assertion. He does not say whether he asked BOP officials for longer telephone calls or unrecorded calls with his attorneys, and he does not provide BOP's response. This omission is telling is suggests that Andrade is mischaracterizing conditions inside BOP. Similarly, Andrade states that a prison counselor was present in a room with him while he made a call with his attorney and that the counselor refused to leave the room when asked by Andrade. Again, Andrade does not state whether he raised this issue with the counselor's supervisor or with other prison officials. Andrade does not state whether he filed an official complaint with BOP. And

he provides no response from BOP to any complaints or appeals within BOP. Without more, Andrade's claims are factually insufficient to warrant release, even if he could somehow overcome the fact that the law does not permit release pending appeal as a remedy for BOP interference with attorney-client communications.

Next, Andrade contends that he should be released because BOP is not ensuring confidential in-person meetings with his attorneys. Dkt. 822, at 11:22-24. Again, Andrade cites no law to support release as a remedy. Moreover, Andrade's factual proffer is insufficient. Even taking his declaration as true and correct, he does not say whether he raised the issue of confidential attorney-client meetings with BOP officials, nor does he state whether he filed an official complaint through regular BOP channels. He admits that he met for three hours with his attorney. Dkt. 822-2, at 1. And Andrade's attorney admits that they met for approximately three hours in private. Dkt. 822-1, at ¶¶ 5-9 (describing approximately three-hour attorney-client meeting in the "fishbowl"). Neither Andrade nor the attorney allege that the visit was monitored. Contrary to Andrade's claim that BOP is prohibiting confidential attorney-client meetings, Andrade's own filings show that BOP provided Andrade and his attorney a three-hour confidential meeting on the day requested by Andrade's attorney, February 6, 2026. Dkt. 822-1, at ¶¶ 2, 5-9.

Andrade has not established that BOP is depriving him of confidential communications with his attorneys. And even if he somehow could make such a showing, Andrade fails to cite any legal authority supporting his claim that he should be released from BOP pending appeal because BOP is failing to permit confidential attorney-client communications.

//
//
//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, the United States respectfully submits that this Court should deny Defendant Andrade's Renewed Motion for Release on Bond Pending Appeal.

DATED: March 2, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____/s/_____
CHRISTIAAN H. HIGHSMITH
Assistant United States Attorney